## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SAKS GLOBAL ENTERPRISES LLC, *et al.*,[1] | Case No. 26-90103 (ARP) |
| Debtors. | (Joint Administration Requested)<br>(Emergency Hearing Requested) |

**DEBTORS' JOINT <u>EMERGENCY</u> MOTION FOR ORDER
(I) APPROVING DEBTORS' PROPOSED ADEQUATE
ASSURANCE OF FUTURE PAYMENT FOR UTILITY
SERVICES; (II) PROHIBITING UTILITY COMPANIES FROM
ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES;
(III) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY
UTILITY COMPANIES AND DETERMINING ADDITIONAL ADEQUATE
ASSURANCE OF PAYMENT; (IV) AUTHORIZING CERTAIN FEE PAYMENTS
<u>FOR SERVICES PERFORMED; AND (V) GRANTING RELATED RELIEF</u>**

**Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (prevailing Central Time) on January 14, 2026.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on January 14, 2026, at 4:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002.**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Saks. The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281. Bradley Arant Boult Cummings LLP is proposed counsel for the following Debtors: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively, the "<u>SO5 Digital Debtors</u>"). Haynes and Boone, LLP and Willkie Farr & Gallagher LLP are proposed counsel for the remaining Debtors (collectively, the "<u>Global Debtors</u>").

> **Judge Pérez's conference room number is 282694.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Pérez's homepage.  The meeting code is "Judge Pérez".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Pérez's homepage.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Saks Global Enterprises LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"),[2] respectfully represent as follows in support of this motion (the "Motion"):[3]

## RELIEF REQUESTED

1.      The Debtors respectfully request the entry of an order, substantially in the form attached hereto (the "Proposed Order"): (a) determining that the Adequate Assurance Procedures

---

[2]    For the avoidance of doubt, "Debtors" means, collectively, the Global Debtors and the SO5 Digital Debtors.  In 2021, the Global Debtors and the SO5 Digital Debtors entered into a series of agreements that resulted in the SO5 Digital Debtors effectively operating as a standalone company within the broader Saks corporate group. Notwithstanding, certain operations remain consolidated within one or more of the Global Debtors.  Consequently, from time to time in the ordinary course of business, the Global Debtors make certain payments for the benefit of or allocable to the SO5 Digital Debtors for which the SO5 Digital Debtors remit reimbursement to the applicable Global Debtor.  To the extent the Global Debtors make any payments for the benefit of or allocable to the SO5 Digital Debtors, in accordance with the Approved Budget set forth in the Global Debtors' DIP Orders, the Global Debtors shall be entitled to assert an administrative priority claim against the applicable SO5 Digital Debtor(s); provided that all rights and defenses of all parties in interest shall be fully preserved with respect to any payments for the benefit of or allocable to the SO5 Digital Debtors (and whether or not such payments are for the benefit of or allocable to the SO5 Digital Debtors) after the earlier of (i) the second interim hearing on the SO5 Digital Debtors' motion for use of cash collateral or (ii) fourteen (14) days after the Petition Date, or such other date as may be agreed by the Global Debtors, the SO5 Digital Debtors, the SO5 Digital Debtors prepetition agent, the DIP Agents, and the DIP Lenders (as defined in the Global Debtors' DIP Orders).

[3]    Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the *Declaration of Mark Weinsten in Support of Chapter 11 Petitions and First Day Pleadings*, the *Declaration of Andrew D.J. Hede in Support of SO5 Digital Debtors' Chapter 11 Petitions and First Day Pleadings* (together, the "First Day Declarations"), or the *Global Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Global Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*, each filed concurrently herewith and incorporated by reference. The First Day Declarations describe in more detail the relationship between the Global Debtors and the SO5 Digital Debtors.

(as defined below) provide the Utility Companies (as defined below) with adequate assurance of payment within the meaning of section 366 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"); (b) prohibiting the Utility Companies from altering, refusing, or discontinuing services; (c) approving the Adequate Assurance Procedures for resolving any dispute in the event that a Utility Company is not satisfied with the Debtors' proposed adequate assurance; (d) authorizing payment of prepetition fees to certain third-party administrators for the payment of utility fees; and (e) granting related relief.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order in connection with this Motion.

3.      Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and legal predicates for the relief sought herein are sections 105(a) and 366 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and Section B of the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures").

## BACKGROUND

5.      On January 13, 2026 (the "Petition Date") and January 14, 2026, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.

The Debtors are operating their businesses and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

7.      No official committee has been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

8.      Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declarations.

## THE UTILITY COMPANIES AND UTILITY SERVICES

9.      In connection with the operation of their businesses and management of their properties, the Debtors historically obtain internet, data, telephone, electricity, natural gas, water, garbage disposal, and other similar services (collectively, the "Utility Services") from various utility companies (each, a "Utility Company" and, collectively, the "Utility Companies").[4]  To manage the Debtors' payments owed to certain of their Utility Companies, the Debtors contract with various third-party administrators (the "Administrators") to process utility invoices and related payments.  In the ordinary course of business, the Debtors pay to the Administrators the amounts invoiced for the Utility Services managed by the applicable Administrator, plus a monthly

---

[4]     The Debtors have endeavored to identify all of the Utility Companies and list them on **Exhibit 1** attached to the Proposed Order.  However, inadvertent omissions may have occurred, and the omission from **Exhibit 1** of any entity providing Utility Services to the Debtors shall not be construed as an admission, waiver, acknowledgement, or consent that section 366 of the Bankruptcy Code does not apply to such entity, and the Debtors reserve the right to assert that any such entity is required to continue to furnish services to the Debtors notwithstanding the filing of these Chapter 11 Cases.  In addition, the Debtors reserve the right to assert that any of the entities now or hereafter included on the Utility Service List are not "utilities" within the meaning of section 366(a) of the Bankruptcy Code.

fee (each, a "Service Fee" and, collectively, the "Service Fees").[5]   Specifically, the Debtors

contract with the following Administrators:

| Administrator | Utility Services Administered | Monthly Service Fee |
|---|---|---|
| ENGIE Insight Services, Inc. | Electricity, natural gas, water, and garbage disposal, among other similar services | $10,000 |
| Asignet USA Inc. | Internet, data, and telecommunication services | $14,000 |
| Global Sourcing Group, Inc. | Internet, data, and telecommunication services | $14,000 |
| Digital Mobile Innovations, LLC | Mobile and handheld device management | $35,000-40,000, depending on volume |

10.    As of the Petition Date, the Debtors estimate that they owe approximately

$668,000[6] to the Administrators.  Accordingly, the Debtors seek authority to pay any outstanding

Service Fees and to continue to honor their obligations to the Administrators as they come due in

the ordinary course of business on a postpetition basis, consistent with past practice.

11.    Pursuant to several of the Debtors' lease agreements, certain Utility Services are

billed directly to the Debtors' landlords and passed through to the Debtors as part of the Debtors'

lease payments.  The relief requested herein is with respect to all Utility Companies providing

Utility Services to the Debtors.[7]

12.    Uninterrupted Utility Services are essential to the Debtors' ongoing business

operations and the overall success of these Chapter 11 Cases.  As of the Petition Date, the Debtors'

---

[5]   The Service Fees do not include any amounts paid directly by the Debtors to the Utility Companies.

[6]   For the avoidance of doubt, this number reflects Services Fees owed to the Administrators as well as certain charges due and owing on account of Utility Services.

[7]   The Debtors intend to continue paying their landlords in the ordinary course postpetition.   However, notwithstanding any current or future nonpayment, deferral, waiver, or other compromise of rent, the Debtors respectfully submit that such landlords be required to continue to pay for Utility Services in the ordinary course until the effective date of the rejection of the applicable lease agreement, if any, pursuant to section 365 of the Bankruptcy Code.

operations take place across numerous locations, including their corporate offices in New York, New York and Dallas, Texas.  These locations require the Utility Services to function.  Section 366(a) of the Bankruptcy Code prevents utility companies from discontinuing, altering, or refusing service to a debtor during the first twenty days of a bankruptcy case.  However, a utility company has the option of terminating its services thirty days from the debtor's petition date pursuant to section 366(c)(2) of the Bankruptcy Code if the debtor has not furnished adequate assurance of payment.[8]  Should any Utility Company refuse or discontinue its service, even for a brief period, the Debtors' business operations would be severely disrupted and such disruption would jeopardize the Debtors' reorganization efforts and ability to administer these Chapter 11 Cases.  It is essential that the Utility Services continue uninterrupted during these Chapter 11 Cases.

13.     On average, the Debtors pay approximately $5.8 million each month for Utility Services.  Based on historical averages, the Debtors estimate that their cost for Utility Services during the next thirty days will be approximately $5.8 million.

**I.     The Proposed Adequate Assurance.**

14.     The Debtors intend to pay undisputed postpetition charges for the Utility Services when due in the ordinary course of business.  Nonetheless, to provide adequate assurance of

---

[8]     There is an apparent discrepancy between subsections (b) and (c) of section 366 of the Bankruptcy Code because these two subsections set forth different time periods during which a utility is prohibited from altering, refusing, or discontinuing utility service. Specifically, section 366(b) of the Bankruptcy Code allows a utility to alter, refuse, or discontinue service "if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment," while section 366(c)(2) of the Bankruptcy Code allows a utility in "a case filed under chapter 11 . . . to alter, refuse or discontinue service" to a chapter 11 debtor "if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service…." (emphasis added).

Under the statutory construction canon *lex specialis derogut legi generali* ("specific language controls over general"), the language of section 366(c)(2) controls here because the Debtors filed a petition under chapter 11 of the Bankruptcy Code. *See* Alan N. Resnick & Henry J. Sommer, 3 *Collier on Bankruptcy* ¶ 366.03 (16th ed.) ("It is unclear how the 30-day period [in section 366(c)(2) of the Bankruptcy Code] meshes with the normal 20-day period in section 366(b). The better view is that, because section 366(c) is more specifically applicable to chapter 11 cases, the 30-day period, rather than the 20-day period in section 366(b), should apply.").

payment for future services to the Utility Companies, the Debtors propose to deposit $2.9 million (the "Utility Deposit") into a newly created segregated account (the "Utility Deposit Account") within twenty days of the Petition Date, to be maintained during the pendency of these Chapter 11 Cases in the manner provided for herein and in the Proposed Order. The Utility Deposit represents approximately one-half of the Debtors' estimated monthly cost of the Utility Services subsequent to the Petition Date (the "Adequate Assurance Deposit"). Prior to the Petition Date, the Debtors have provided deposits to certain of the Utility Companies. The Debtors reserve the right to include any such prepetition deposits in the calculation of the Adequate Assurance Deposit. The amount allocated for, and payable to, each Utility Company shall be equal to the amount set forth on the Utility Service List or as otherwise agreed upon.

15. In the event that the Debtors close a utility services account with any of the Utility Companies, the Debtors request authority to reduce the Utility Deposit Account and amend the Utility Service List upon termination of Utility Services from a particular Utility Company in an amount equal to or less than the amount allocated to such Utility Company in the Utility Deposit Account provided, that the Debtors either (a) obtain the affected Utility Company's consent to reduce the Utility Deposit; or (b) serve a notice upon the affected Utility Company of the Debtors' intent to reduce the Utility Deposit within fourteen days thereof and receive no response thereto.[9] If such Utility Company objects to such removal, the Debtors may either (i) resolve such dispute consensually without the need for further order of the Court or (ii) request a hearing before the Court regarding such objection.

---

[9] In the event that the Debtors have multiple utility services accounts with a particular Utility Company, the Debtors' reduction of the Utility Deposit upon termination of Utility Services from a particular Utility Company will be based on those utility services accounts actually terminated.

16.     The portion of the Adequate Assurance Deposit attributable to each Utility Company shall be returned to the Debtors upon the earlier of: (a) reconciliation and payment by the Debtors of the relevant Utility Company's final invoice in accordance with applicable non-bankruptcy law following the Debtors' termination of the Utility Services from such Utility Company, (b) the closing of a sale of substantially all of the Debtors' assets, (c) the effective date of a chapter 11 plan for the Debtors, or (d) such other time as these Chapter 11 Cases may be closed.

17.     The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Companies in satisfaction of section 366 of the Bankruptcy Code.  If any Utility Company believes additional assurance is required, it may request such additional assurance pursuant to the procedures described below.

## II.     The Proposed Adequate Assurance Procedures.

18.     The Debtors submit that the Proposed Adequate Assurance constitutes sufficient adequate assurance to the Utility Companies.  However, the Debtors recognize that the Utility Companies have the right to evaluate the Proposed Adequate Assurance on a case-by-case basis. As a result, the Debtors propose to establish the procedures below (the "Adequate Assurance Procedures"), pursuant to which a Utility Company may request additional adequate assurance of payment (an "Additional Assurance Request") if it believes additional assurance is required.

      a.     The funds in the Utility Deposit Account shall constitute adequate assurance of payment for the purpose of section 366 of the Bankruptcy Code for each Utility Company in the amount set forth for such Utility Company in the column labeled "Adequate Assurance Deposit" on the Utility Service List, attached as **Exhibit 1** to the Proposed Order, and may be amended or modified in accordance with the Proposed Order.

8

b. The Debtors will serve copies of the Proposed Order as required by the Bankruptcy Rules and Local Rules on all Utility Companies identified on the Utility Service List no later than five business days following entry of the Proposed Order.  For the avoidance of doubt, this Motion will be served with the Proposed Order.  In the event that any Utility Company has been omitted from the Utility Service List, the Debtors shall supplement this list and shall promptly (and, in any event, no later than five business days following entry of the Proposed Order) serve copies of (i) this Motion and (ii) the Proposed Order (as proposed or as entered, as applicable) on such Utility Company upon learning of such omission.

c. Any Utility Company that believes it requires additional adequate assurance must serve an Additional Assurance Request at least seven days prior to the Determination Hearing (as defined in subsection (g) below) via mail or email upon: (i) proposed co-counsel for the Global Debtors, (x) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Betsy L. Feldman, Esq. (bfeldman@willkie.com) and Jessica Graber, Esq. (jgraber@willkie.com) and (y) Haynes and Boone, LLP, 1221 McKinney Street Suite 4000, Houston, TX 77010, Attn: Kelli Stephenson Norfleet, Esq. (kelli.norfleet@haynesboone.com) and Kenric D. Kattner, Esq. (kenric.kattner@haynesboone.com); (ii) proposed counsel for the SO5 Digital Debtors, Bradley Arant Boult Cummings, LLP, 600 Travis Street, Suite 5600, Houston, TX 77006, Attn: Jarrod B. Martin, Esq. (jmartin@bradley.com) and Michael K. Riordan, Esq. (mriordan@bradley.com); (iii) counsel to the DIP Lenders, (x) Paul, Weiss Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064, Attn: Andrew Rosenberg, Esq. (arosenberg@paulweiss.com), Robert Britton, Esq. (rbritton@paulweiss.com), and Christopher Hopkins, Esq. (chopkins@paulweiss.com) and (y) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, TX 77002, Attn: John Higgins (jhiggins@porterhedges.com), M. Shane Johnson (sjohnson@porterhedges.com) and Megan Young-John (myoung-john@porterhedges.com); and (iv) counsel to any official committee appointed in these Chapter 11 Cases.

d. Any Additional Assurance Request must (i) be made in writing; (ii) set forth all location(s) for which Utility Services are provided and the relevant account number(s); (iii) set forth the numerical amount that the Utility Company believes equals one-half of the Debtors' estimated monthly utility payments to the Utility Company subsequent to the Petition Date; and (iv) include a proposal for what would constitute adequate assurance of future payment from the Debtors, along with an explanation of (x) why such proposal is reasonable and (y) the basis of the Utility Company's proposed adequate assurance requirement under section 366(c)(2) of the Bankruptcy Code.

e.  Upon the Debtors' receipt of any Additional Assurance Request at the addresses set forth above, the Debtors shall promptly negotiate with such Utility Company to resolve such Utility Company's Additional Assurance Request.

f.  The Debtors may, in their discretion and in consultation with the DIP Lenders, resolve any Additional Assurance Request by mutual agreement with the Utility Company and without further order of the Court and may, in connection with any such agreement, in their discretion, provide a Utility Company with additional adequate assurance of future payment, including, but not limited to, cash deposits, prepayments, and/or other forms of security, without further order of the Court if the Debtors believe such additional assurance is reasonable.

g.  If the Debtors determine that the Additional Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Company, then the Debtors shall, upon reasonable notice, calendar the matter (the "<u>Determination Hearing</u>"), unless the Court orders otherwise, to determine the adequacy of assurance of payment pursuant to section 366(c)(3) of the Bankruptcy Code.

h.  Until such time that the Proposed Order is entered by the Court, any Utility Company that does not make an Additional Assurance Request in accordance with the Adequate Assurance Procedures shall be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors, subject to such Utility Company's right to seek modification of the Proposed Adequate Assurance under section 366(c)(3) of the Bankruptcy Code, unless otherwise ordered by the Court.

i.  Pending resolution of an Additional Assurance Request, at any such Determination Hearing or otherwise, and entry of a final, non-appealable order thereon finding that the Utility Company is not adequately assured of future payment, such Utility Company shall be prohibited from discontinuing, altering, or refusing service to, or otherwise discriminating against, the Debtors on account of the commencement of these Chapter 11 Cases, any unpaid charges for prepetition services, or any objections to the Proposed Adequate Assurance.  Any Utility Company that fails to comply with the Adequate Assurance Procedures shall be bound by any order entered by the Court granting this Motion.

19.  The Debtors request that any security deposits that were in place prior to the Petition Date shall remain in place and shall continue to be held by those Utility Companies holding the same, except upon either (a) written agreement(s) between the Debtors and a Utility Company without further order of the Court, or (b) further order(s) of the Court.

20.    The Debtors also request authorization to adjust periodically the amount in the Utility Deposit Account to reflect the following factors: (a) the termination of Utility Services by the Debtors, and (b) the entry into any agreements between the Debtors and the applicable Utility Companies.

### III.    Subsequent Modifications to the Utility Service List.

21.    Moreover, it is possible that, despite the Debtors' efforts, certain Utility Companies have not yet been identified by the Debtors or included on the Utility Service List (each, an "Additional Utility Company," and, collectively, the "Additional Utility Companies").  To the extent that the Debtors identify Additional Utility Companies, the Debtors seek authority to amend or supplement the Utility Service List.  Thus, promptly upon the discovery of an Additional Utility Company, the Debtors will increase the Utility Deposit by an amount equal to approximately one-half of the Debtors' estimated monthly utility expense for each Additional Utility Company identified subsequent to the Petition Date.  In addition, the Debtors request that the Additional Utility Companies be subject to the terms of the Proposed Order (including the Adequate Assurance Procedures) once entered by the Court, regardless of when such Utility Company is added to the Utility Service List.

22.    The Debtors submit that their proposed method of furnishing adequate assurance of payment for postpetition Utility Services is not prejudicial to the rights of any Utility Company and is in the best interests of the Debtors' estates and creditors.  Because uninterrupted Utility Services are vital to the success of these Chapter 11 Cases, the relief requested herein is necessary and in the best interests of the Debtors' estates and creditors.  Such relief provides the Utility Companies and the Debtors with an orderly and fair procedure for determining adequate assurance of payment.

23.     For the foregoing reasons, the relief requested herein is appropriate and in the best interests of the Debtors' estates and their creditors.

### BASIS FOR RELIEF REQUESTED

24.     Section 366(a) of the Bankruptcy Code protects a debtor against the immediate termination of utility services after it files for bankruptcy.  11 U.S.C. § 366(a).  Section 366(c) of the Bankruptcy Code (a) defines the forms of adequate assurance of payment that a debtor may employ in providing adequate assurance of payment to include cash deposits, letters of credit, certificates of deposit, surety bonds, prepayments of utility consumption, or another form of security that is mutually agreed on between the utility company and the debtor; (b) excludes from the definition of adequate assurance the availability of an administrative expense claim; and (c) provides that a court may not consider certain facts in determining the amount of assurance that is adequate.  11 U.S.C. §§ 366(c)(1)(A)–(B), (c)(3)(B).

25.     Although section 366 of the Bankruptcy Code does clarify what forms adequate assurance of payment may take and what factors the court should consider when determining whether such assurance is adequate, the Bankruptcy Code still requires courts to determine what amount, if any, is necessary to provide adequate assurance of payment.  Congress did not set a minimum adequate assurance amount, but rather vested discretion in the courts to determine the appropriate level of adequate assurance required in each case.  Accordingly, section 366 of the Bankruptcy Code does not give utility companies a blank check or the right to extract from debtors an unlimited amount of adequate assurance.  Under section 366(c) of the Bankruptcy Code, there is nothing to prevent a court from deciding that, on the facts of the case before it, the amount required of a debtor to adequately assure payment to utility companies is nominal or is zero.

26.     In addition, section 366(b) requires only that a utility's assurance of payment be "adequate."   Courts have long recognized that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay.   See, e.g., In re Heard, 84 B.R. 454, 459 (Bankr. W.D. Tex. 1987) (noting that since the utility had not had any difficulty with the debtors during 14 years of service, "the utility need[ed] no adequate assurance"); In re Caldor, Inc.-NY, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires [a] [b]ankruptcy [c]ourt to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'"), aff'd sub nom. Virginia Elec. & Power Co. v. Caldor, Inc.- NY, 117 F.3d 646 (2d Cir. 1997); In re New Rochelle Tel. Corp., 397 B.R. 633, 639 (Bankr. E.D.N.Y. 2008); In re Steinebach, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . . [A]ll § 366(b) requires is that a utility be protected from an unreasonable risk of non-payment."); In re Adelphia Bus. Sols., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment."); In re Penn Jersey Corp., 72 B.R. 981, 982 (Bankr. E.D. Pa. 1987), abrogated on other grounds in In re Lease-A-Fleet, Inc., 131 B.R. 945, 950 n.1 (Bankr. E.D. Pa. 1991) (stating that section 366(b) of the Bankruptcy Code "contemplates that a utility receive only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's financial circumstances").

27.     Furthermore, in this analysis, courts have recognized that "[i]n deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must 'focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" Virginia Elec. &

Power Co., 117 F.3d at 650 (quoting Penn Jersey, 72 B.R. at 985); see also In re Penn Cent. Transp.

Co., 467 F.2d 100, 103–04 (3d Cir. 1972) (upholding lower court's decision that no utility deposits

were necessary where such deposits "would jeopardize the continuing operation of the [debtor]

merely to give further security to suppliers who already are reasonably protected"); New Rochelle

Tel. Corp., 397 B.R. at 639 ("[D]eciding what constitutes adequate assurance, a bankruptcy court

must focus on the utility's need for assurance with the debtor's scarce financial resources."); In re

Ascend Performance Materials Holdings Inc., Case No. 25-90127 (CML) (Bankr. S.D. Tex. Apr.

22, 2025) [Docket No. 86] (approving adequate assurance deposit equal to approximately half of

the debtors' monthly utility expenses and procedures for resolving utility providers' requests for

additional adequate assurance on a final basis).

28.     Based upon the foregoing, the Debtors believe the Utility Companies have adequate

assurance of payment even without recourse to the Adequate Assurance Deposit.  The Debtors

anticipate having sufficient resources to pay, and intend to pay, all valid postpetition obligations

for Utility Services in a timely manner.  In addition, the Debtors' reliance on such Utility Services

for not only the operation of their business, but also the preservation of the value of their assets,

provides the Debtors with a powerful incentive to stay current on their utility obligations.  These

factors, which the Court may consider when determining the amount of any adequate assurance

payments, justify finding that the Debtors are not required to make any additional adequate

assurance payments in these Chapter 11 Cases.  In light of the foregoing, the Debtors respectfully

submit that the Proposed Adequate Assurance is more than sufficient to assure the Utility

Companies of future payment.

29.     Absent the approval of the proposed procedures, the Utility Companies could

discontinue service, without warning, thirty-one days after the Petition Date if they claim they

have not yet received a "satisfactory" adequate assurance payment.  The Debtors could then be forced to address numerous requests by the Utility Companies in an unorganized manner at a critical period in these Chapter 11 Cases when their efforts should be focused elsewhere, such as on maximizing value for all of their stakeholders.  See In re Pilgrim's Pride Corp., No. 08-45664 (DML), 2009 WL 7313309, at *2 (Bankr. N.D. Tex. Jan. 4, 2009) ("The consequences of an unexpected termination of utility service to . . . [the debtors] could be catastrophic.").  By offering the Proposed Adequate Assurance and the additional Adequate Assurance Procedures, the Debtors seek to implement an organized process that facilitates the determination of the amount of assurance of payment that is adequate.  The orderly process contemplated by the additional Adequate Assurance Procedures is necessary for a smooth transition by the Debtors into chapter 11.  Moreover, the proposed procedures will ensure that all parties act in good faith by establishing a fair process.

30.     Finally, this Court has the authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that a court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code and, in particular, section 366 thereof.  Accordingly, because the Adequate Assurance Procedures are reasonable and in accordance with the purpose of section 366 of the Bankruptcy Code, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve the relief requested herein.

## EMERGENCY CONSIDERATION

31.     Pursuant to Local Rule 9013-1, the Debtors request emergency consideration of this Motion under Bankruptcy Rule 6003.  Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief "is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).  For the reasons discussed above and in the First Day Declarations, an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations.  The requested relief is necessary for the Debtors to operate their business in the ordinary course, preserve the ongoing value of their operations, and maximize the value of their estates for the benefit of all stakeholders.  The Debtors have demonstrated that the requested relief "is needed to avoid immediate and irreparable harm" as contemplated by Bankruptcy Rule 6003, and, as a result, the Debtors request that the Court approve the relief requested in this Motion on an emergency basis.

## RESERVATION OF RIGHTS

32.     Nothing in the Proposed Order or this Motion (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors, their estates, or any other party in interest with respect to the validity, priority, or amount of any claim against the Debtors and their

estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors, their estates, or any other party in interest with respect to any and all claims or causes of action; or (d) shall be construed as a promise to pay a claim.

### WAIVER OF BANKRUPTCY RULES 6004(a) and (h)

33.    The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

34.    To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

### NOTICE

35.    Notice of this Motion has been or will be provided to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the United States Attorney's Office for the Southern District of Texas; (c) those creditors holding the thirty largest unsecured claims against the Debtors' estates; (d) counsel to the DIP Agents; (e) counsel to the DIP Lenders; (f) counsel to the SO5 Digital Debtors' term loan lender; (g) the Internal Revenue Service; (h) the Utility Companies; and (i) the Administrators.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order

granting the relief requested herein and such other and further relief as is just and proper.

Houston, Texas
Dated: January 14, 2026

/s/ Kelli Stephenson Norfleet

**HAYNES AND BOONE, LLP**
Kelli Stephenson Norfleet (TX Bar No. 24070678)
Kenric D. Kattner (TX Bar No. 11108400)
Arsalan Muhammad (TX Bar No. 24074771)
Kourtney P. Lyda (TX Bar No. 24013330)
David Trausch (TX Bar No. 24113513)
1221 McKinney Street, Suite 4000
Houston, TX 77010
Telephone:  (713) 547 2000
Facsimile:  (713) 547 2600
Email:       kelli.norfleet@haynesboone.com
                kenric.kattner@haynesboone.com
                arsalan.muhammad@haynesboone.com
                kourtney.lyda@haynesboone.com
                david.trausch@haynesboone.com

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (*pro hac vice* pending)
Robin Spigel (*pro hac vice* pending)
Allyson B. Smith (*pro hac vice* pending)
Betsy L. Feldman (*pro hac vice* pending)
Jessica D. Graber (*pro hac vice* pending)
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
Email:       dsinclair@willkie.com
                rspigel@willkie.com
                absmith@willkie.com
                bfeldman@willkie.com
                jgraber@willkie.com

-and-

Jennifer J. Hardy (TX Bar No. 24096068)
600 Travis Street
Houston, TX 77002
Telephone:  (713) 510-1766
Facsimile:  (713) 510-1799
Email:       jhardy2@willkie.com

-and-

Ryan Blaine Bennett (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, IL 60654
Telephone:  (312) 728-9123
Facsimile:  (312) 728-9199
Email:       rbennett@willkie.com

*Proposed Co-Counsel to the Global Debtors*
*and Global Debtors in Possession*

*Proposed Co-Counsel to the Global Debtors*
*and Global Debtors in Possession*

*/s/ Jarrod B. Martin*

**BRADLEY ARANT BOULT CUMMINGS  LLP**
Jarrod B. Martin (TX Bar No. 24070221)
Michael K. Riordan (TX Bar No. 24070502)
600 Travis Street, Suite 5600
Houston, TX 77002
Telephone:  (713) 576-0300
Facsimile:  (713) 547-0301
Email:      jbmartin@bradley.com
            mriordan@bradley.com

-and-

James Bailey (TX Bar No. 24108289)
1819 Fifth Avenue N.
Birmingham, AL 35203
Telephone:  (205) 521-8000
Facsimile:  (205) 488-6913
Email:      jbailey@bradley.com

*Proposed Counsel to the SO5 Digital Debtors and SO5 Digital Debtors in Possession*

**Certificate of Accuracy**

In accordance with Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency with respect to the Global Debtors are true and accurate to the best of my knowledge.

*/s/ Kelli Stephenson Norfleet*
Kelli Stephenson Norfleet

**Certificate of Accuracy**

In accordance with Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency with respect to the SO5 Digital Debtors are true and accurate to the best of my knowledge.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

**Certificate of Service**

I certify that on the date hereof, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.  Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' claims agent.

*/s/ Kelli Stephenson Norfleet*
Kelli Stephenson Norfleet