IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SAKS GLOBAL ENTERPRISES LLC, *et al.*,[1] | Case No. 26-90103 (ARP) |
| Debtors. | (Joint Administration Requested) (Emergency Hearing Requested) |

DEBTORS' JOINT <u>EMERGENCY</u> MOTION
FOR ORDER (I) AUTHORIZING DEBTORS
TO PAY CERTAIN PREPETITION TAXES AND FEES
AND RELATED OBLIGATIONS; (II) AUTHORIZING BANKS
TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER
<u>REQUESTS RELATED THERETO; AND (III) GRANTING RELATED RELIEF</u>

**Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (prevailing Central Time) on January 14, 2026.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on January 14, 2026, at 4:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002.**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Pérez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Pérez's homepage. The meeting code is "Judge Pérez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the <u>"Electronic Appearance"</u> link on Judge Pérez's**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Saks. The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281. Bradley Arant Boult Cummings LLP is proposed counsel for the following Debtors: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively, the "<u>SO5 Digital Debtors</u>"). Haynes and Boone, LLP and Willkie Farr & Gallagher LLP are proposed counsel for the remaining Debtors (collectively, the "<u>Global Debtors</u>").

**homepage.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Saks Global Enterprises LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"),[2] respectfully represent as follows in support of this motion (the "Motion"):[3]

## **RELIEF REQUESTED**

1. The Debtors request that the Court enter an order, substantially in the form attached hereto (the "Proposed Order"), (a) authorizing, but not directing, the Debtors, in their discretion, to pay (or, if applicable, use tax credits to offset) certain prepetition taxes and fees and related obligations that are payable to certain local, state, and federal taxing and regulatory authorities, including any obligations arising on account of an audit and/or assessment, without regard to whether such obligations accrued or arose before, on, or after the Petition Date, (b) authorizing the Debtors' banks

---

[2] For the avoidance of doubt, "Debtors" means, collectively, the Global Debtors and the SO5 Digital Debtors.  In 2021, the Global Debtors and the SO5 Digital Debtors entered into a series of agreements that resulted in the SO5 Digital Debtors effectively operating as a standalone company within the broader Saks corporate group. Notwithstanding, certain operations remain consolidated within one or more of the Global Debtors. Consequently, from time to time in the ordinary course of business, the Global Debtors make certain payments for the benefit of or allocable to the SO5 Digital Debtors for which the SO5 Digital Debtors remit reimbursement to the applicable Global Debtor.  To the extent the Global Debtors make any payments for the benefit of or allocable to the SO5 Digital Debtors, in accordance with the Approved Budget set forth in the Global Debtors' DIP Orders, the Global Debtors shall be entitled to assert an administrative priority claim against the applicable SO5 Digital Debtor(s); provided that all rights and defenses of all parties in interest shall be fully preserved with respect to any payments for the benefit of or allocable to the SO5 Digital Debtors (and whether or not such payments are for the benefit of or allocable to the SO5 Digital Debtors) after the earlier of (i) the second interim hearing on the SO5 Digital Debtors' motion for use of cash collateral or (ii) fourteen (14) days after the Petition Date, or such other date as may be agreed by the Global Debtors, the SO5 Digital Debtors, the SO5 Digital Debtors prepetition agent, the DIP Agents, and the DIP Lenders (as defined in the Global Debtors' DIP Orders).

[3] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the *Declaration of Mark Weinsten in Support of Chapter 11 Petitions and First Day Pleadings*, the *Declaration of Andrew D.J. Hede in Support of SO5 Digital Debtors' Chapter 11 Petitions and First Day Pleadings* (together, the "First Day Declarations"), or the *Global Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Global Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*, each filed concurrently herewith and incorporated by reference.  The First Day Declarations describe in more detail the relationship between the Global Debtors and the SO5 Digital Debtors.

and other financial institutions (collectively, the "Banks") to honor and process checks and electronic transfer requests related to the foregoing; and (c) granting related relief.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the Order of Reference to Bankruptcy Judges from the United States District Court for the Southern District of Texas, entered May 24, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Court's entry of a final order by the Court in connection with this Motion.

3.      Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the Procedures for Complex Cases in the Southern District of Texas.

## BACKGROUND

5.      On January 13, 2026 (the "Petition Date") and January 14, 2026, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court. The Debtors are operating their businesses and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

7.      No official committee has been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

8.      Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declarations.

## THE TAXES AND FEES

9.      In the ordinary course of business, the Debtors collect, withhold, incur, and pay a variety of taxes, including, without limitation, (a) sales and use taxes, (b) liquor taxes, (c) income and franchise taxes, (d) license and regulatory taxes and fees, (e) property taxes, and (f) customs duties (collectively, the "Taxes").[4]   The Debtors also incur various fees owed to the Taxing Authorities (defined below) in connection with the operation of their businesses, including with respect to annual reporting fees and regulatory fees, among others (collectively, the "Fees," and, together with the Taxes, the "Taxes and Fees").   On a periodic basis and in the ordinary course of their businesses in accordance with applicable law, the Debtors remit the Taxes and Fees to local, state, federal, and international authorities (collectively, the "Taxing Authorities"), a schedule of which is annexed to the Proposed Order as **Exhibit 1** (the "Taxing Authorities List").[5]

---

[4]     By the Motion, the Debtors do not seek the authority to collect and remit state and federal employee-related withholding taxes. Such relief is requested in the *Debtors' Joint Emergency Motion for Entry of Order (I) Authorizing Debtors to (A) Pay Certain Prepetition Employment Obligations and Compensation Obligations and (B) Maintain Employee Benefits Programs and Compensation Obligations and (II) Granting Related Relief*, filed contemporaneously herewith.

[5]     The List of Taxing Authorities attached to the Proposed Order reflects the Debtors' good faith efforts to identify all applicable Taxing Authorities.  The inclusion or exclusion of any person or entity from the List of Taxing Authorities is not intended to be determinative of whether such person or entity is a Taxing Authority to whom Taxes and Fees may be owed.  The Debtors request authority, but not direction, to pay all Taxes and Fees owed to any Taxing Authority, regardless of such Taxing Authority's inclusion or exclusion on the List of Taxing Authorities, and reserve the right, in their sole discretion, to add or remove any Taxing Authority from the List of Taxing Authorities.

10.     The Debtors estimate that, as of the Petition Date, the aggregate amount of prepetition Taxes and Fees currently owed to the Taxing Authorities does not exceed approximately $134,963,000.  The Taxes and Fees are comprised of current tax obligations and are not in respect of "catch-up" payments.  The Debtors seek authority, but not direction, to pay prepetition Taxes and Fees that are due and payable as of the Petition Date, including outstanding prepetition amounts, and to continue to pay Taxes and Fees owed to the Taxing Authorities as they come due in the ordinary course of business on a postpetition basis, consistent with past practice. In addition, for the avoidance of doubt, the Debtors seek authority to pay Taxes and Fees accrued or incurred postpetition and Taxes and Fees of so-called "straddle" periods.[6]

11.     Specifically, the Debtors estimate that they owe the following accrued amounts on account of the following categories of Taxes and Fees:

| Category | Estimated Amount |
| --- | --- |
| Sales and Use Taxes | $105,000,000 |
| Income and Franchise Taxes | $6,160,000 |
| License and Regulatory Taxes and Fees | $143,000 |
| Property Taxes | $23,660,000 |
| Customs Duties | *de minimis* |

12.     The Taxes and Fees typically are remitted and paid by the Debtors through checks and electronic transfers that are processed through their banks and other financial institutions or service providers.  The Debtors also request that the Banks through which checks to third parties are drawn and/or electronic payments are made pursuant to this Motion be authorized to receive, process, honor, and pay any and all such checks (whether issued or presented prior to or after the

---

[6]     Claims for so-called "straddle" Taxes and Fees may be entitled to administrative claim treatment pursuant to Section 503(b)(1)(B) of the Bankruptcy Code.  Because the Debtors could be subject to late payment penalties and interest in the event they do not pay such "straddle" Taxes and Fees and a court ultimately concludes that such taxes are entitled to administrative treatment, the Debtors are seeking the authority to pay such "straddle" Taxes and Fees as they become due under applicable law.  The Debtors reserve their rights with respect to the proper characterization of such "straddle" Taxes and Fees and to seek reimbursement of any portion of a payment that was made that ultimately is not entitled to administrative or priority treatment.

Petition Date) and electronic payments, and to rely on the representations of the Debtors as to which checks are authorized to be paid.

13.     From time to time, the Debtors also receive tax credits or overpayments or refunds in respect of Taxes or Fees.  The Debtors use these credits in the ordinary course of business to offset against future Taxes or Fees, or have such amounts refunded to the Debtors.

**I.     Sales and Use Taxes**

14.     The Debtors incur, collect, and remit sales and use Taxes (collectively, the "Sales and Use Taxes") to state and local Taxing Authorities in all states in which the Debtors operate. The Debtors pay these Taxes in connection with the sale and purchase of materials, supplies, products, inventory, services, or other goods that are necessary for the operation of their businesses.  Specifically, the Debtors collect and remit Sales and Use Taxes to certain Taxing Authorities in connection with the sale and distribution of products in their stores and through their online platforms.  Sales taxes are generally charged to the purchaser and collected by the seller when a product or service is sold, and are typically set by the applicable Taxing Authority as a percentage of the retail price of the product.  The Debtors also purchase a variety of goods, materials, and supplies from vendors that may not operate, or may not be registered or required to collect Taxes, in the jurisdiction where the goods or services are to be delivered or performed.  As a result, such vendors do not charge the Debtors Sales Taxes in connection with such purchases; instead, the Debtors pay Use Taxes to the applicable Taxing Authorities in connection with such purchases.  Sales and Use Taxes are generally paid in arrears on a monthly or quarterly basis, depending on the relevant Taxing Authority.  Some Taxing Authorities require prepayment of Sales and Use Taxes based on prior level of taxes over a given time period.

15.     As of the Petition Date, the Debtors estimate that they have incurred or collected approximately $105,000,000 in Sales and Use Taxes that have not been remitted to the relevant Taxing Authorities.

## II.     Liquor Taxes

16.     The Debtors pay Taxes and Fees to certain Taxing Authorities in connection with liquor sales made at the Debtors' restaurants and in connection with operating in certain states (collectively, the "Liquor Taxes").  The Liquor Taxes are remitted in connection with the Debtors' Sales and Use Taxes for the relevant jurisdiction.  Accordingly, as of the Petition Date, the Debtors believe that there are no amounts due and owing on account of Liquor Taxes.  The Debtors include this description out of an abundance of caution and seek authority, but not direction, to pay any prepetition obligations that may be due and owing on account of Liquor Taxes as of the Petition Date.

## III.     Income and Franchise Taxes

17.     The Debtors are statutorily required to pay federal and state income taxes and franchise taxes in the states in which they conduct business, as applicable (together, the "Income and Franchise Taxes").  Similarly, the Debtors have historically paid business and occupation Taxes in the ordinary course of business (the "B&O Taxes").  Generally, Income and Franchise Taxes are paid in arrears to the applicable Taxing Authority on a quarterly or annual basis as they come due, depending on the jurisdiction.

18.     As of the Petition Date, the Debtors estimate that they have incurred approximately $6,160,000 in Income and Franchise Taxes and B&O Taxes that have not been remitted to the relevant Taxing Authorities.

IV.     **License and Regulatory Taxes and Fees**

19.     The Debtors incur, in the ordinary course of business, certain regulatory assessments, registration, licensing, annual reports, and other operational fees as required in order to conduct business across certain states and remain in good standing with relevant governmental and Taxing Authorities (collectively, the "License and Regulatory Taxes and Fees").

20.     The methods for calculating the License and Regulatory Taxes and Fees, and the deadlines for paying such amount, vary by type of Tax and Fee and/or by jurisdiction or Taxing Authority.  The Debtors estimate that they have incurred approximately $143,000 in License and Regulatory Taxes and Fees that have not been remitted to the relevant Taxing Authorities.

V.      **Property Taxes**

21.     The Debtors are subject to personal property and real estate taxes (the "Property Taxes") for all tangible real and personal property owned and/or leased across their facilities and in areas in which the Debtors have business operations.  The Debtors also lease a significant number of their store locations.  Many of these leases require the Debtors to remit Property Taxes directly to the relevant landlord and, in turn, the landlord remits the Property Taxes to the applicable Taxing Authority on the Debtors' behalf.  Such amounts are included in the Debtors' rent payable to the applicable landlord.  For other leases, the Debtors pay Property Taxes directly to the applicable Taxing Authority.

22.     The failure to pay Property Taxes may give rise to liens on the Debtors' properties in favor of the relevant Taxing Authorities and could also result in additional fees and penalties being assessed on the Debtors.  Property Taxes are typically paid annually or in periodic installments depending on how the relevant Tax is assessed.

23.     As of the Petition Date, the Debtors estimate that they have incurred approximately

$23,660,000 in Property Taxes that have not been remitted to the relevant Taxing Authorities.

## VI.    Customs Duties

24.     The Debtors incur customs duties in connection with the importation of inventory and products sold by the Debtors in the operation of their businesses (collectively, the "Customs Duties").  Specifically, the Debtors pay Customs Duties on a periodic basis directly to the United States Customs and Border Protection in order to import goods from foreign countries into the United States from certain private label vendors.  The Debtors are generally not responsible for taxes or fees in foreign countries on account of goods exported from foreign countries because these amounts are covered by vendors from which the goods are purchased.  Accordingly, as of the Petition Date, the Debtors believe that the amounts due and owing in Customs Duties that have not been remitted to the relevant Taxing Authorities are *de minimis*.  The Debtors include this description out of an abundance of caution and seek authority, but not direction, to pay any prepetition obligations that may be due and owing on account of Customs Duties as of the Petition Date.

## VII.    Audits

25.     The Debtors are currently subject to sixteen ongoing audit investigations: two in California, one in Louisiana, one in Illinois, one in Pennsylvania, five in Texas and six in New York.  From time to time, the Debtors' Taxes and Fees may be subject to further investigations on account of tax returns and/or tax obligations in prior years (collectively, the "Audits") and the Audits may result in additional prepetition Taxes and Fees being assessed against the Debtors (such additional Taxes and Fees, the "Assessments").[7]  As of the Petition Date, the Debtors'

---

[7]   Nothing in this Motion or any related order constitutes, or should be construed as, an admission of liability with respect to any Audit or Assessment.  The Debtors expressly reserve all rights with respect to any Audit and the right to contest any Assessments claimed to be due as a result of any Audit.

expected payment on account of the Assessments is approximately $3,613,000, comprised of approximately $1,338,000 on account of Sales and Use Taxes and approximately $2,275,000 on account of Income and Franchise Taxes.  Accordingly, the Debtors seek authority, but not direction, to pay tax obligations on account of Audits as they arise in the ordinary course of the Debtors' businesses, including as a result of any settlements of issues addressed in an Audit.

## BASIS FOR RELIEF REQUESTED

### I.    Payment of the Taxes and Fees Is Necessary and Appropriate.

26.    The Debtors' payment of Taxes and Fees in the ordinary course of business is justified because, among other things, (a) certain Taxes and Fees may constitute secured or priority claims; (b) certain of the amounts held by the Debtors for Taxes and Fees are not property of the Debtors' estates pursuant to section 541(d) of the Bankruptcy Code; (c) such relief is warranted under the doctrine of necessity; and (d) the Debtors' directors and officers may be held personally liable for the nonpayment of the Taxes or Fees or certain Taxing Authorities could take adverse action for such nonpayment, which would distract the Debtors from their efforts to reorganize.

### A.    Certain of the Taxes and Fees May Constitute Priority Claims Entitled to Special Treatment Under the Bankruptcy Code.

27.    It is likely that some of the Taxes and Fees are entitled to priority status under the Bankruptcy Code.  See 11 U.S.C. § 507(a)(8).  If the Taxes are deemed to be entitled to priority status, section 1129(a)(9)(C) of the Bankruptcy Code requires that they be paid through regular installment payments (a) of a total value, as of the effective date of the plan, equal to the allowed amount of each such claim; (b) over a period not exceeding five years after the Petition Date; and (c) in a manner no less favorable than the most favored nonpriority claim provided for by a debtor's chapter 11 plan, if any.  See 11 U.S.C. § 1129(a)(9)(C).  In other words, to the extent that the Taxes and Fees are entitled to priority status under section 507(a)(8) of the Bankruptcy Code, they must

be paid in full under any chapter 11 plan before any of the Debtors' general unsecured obligations may be satisfied.  Moreover, since the Debtors expect to pay priority claims in full, the Debtors' payment of the Taxes and Fees at this juncture would only affect the timing of such payments, not the amounts ultimately received by the Taxing Authorities, while also reducing the amount of Taxes and Fees owed if later paid under a plan (due to the high interest rates and late fees attributable to delinquent payments).  Therefore, other creditors and parties in interest would not be prejudiced if the relief sought herein were granted by the Court at this time.

**B.  Certain of the Taxes and Fees May Not Be Property of the Estates.**

28.     Further, certain of the Taxes and Fees may be so-called "trust fund" taxes under section 541(d) of the Bankruptcy Code that the Debtors are required to collect from third parties and hold in trust for the benefit of the Taxing Authorities.  Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).

29.     To the extent that the Debtors collect Taxes and Fees on behalf of the Taxing Authorities—or "trust fund" taxes—such Taxes and Fees may not constitute property of the Debtors' bankruptcy estates.  See Begier v. I.R.S., 496 U.S. 53, 57-60 (1990) (holding that trust fund taxes are not property of the estate); In re Shank, 792 F.2d 829, 833 (9th Cir. 1986) (holding that a sales tax required by state law to be collected by seller from their customers is a "trust fund" tax and not released by bankruptcy discharge); In re Equalnet Commc'ns Corp., 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("[C]ertain prepetition tax claims, such as sales taxes, could be trust fund claims.").  Further, to the extent that the Taxes and Fees are "trust fund" taxes and the funds

representing such Taxes and Fees can be adequately identified and traced, the Debtors would have no equitable interest in such funds. See 11 U.S.C. § 541(d). Accordingly, the Debtors submit that the Court should authorize them to pay any of the Taxes and Fees that constitute trust fund taxes, and, further, that payment of such Taxes and Fees would not prejudice the rights of any of the Debtors' creditors or other parties in interest.

### C. Payment of the Taxes and Fees Is Warranted Under the Business Judgment Standard and Doctrine of Necessity.

30.     The Court may authorize the Debtors to pay any prepetition amounts related to Taxes and Fees pursuant to section 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain prepetition claims where a sound business purpose exists for doing so, such as to preserve or enhance the value of a debtor's estate for the benefit of all creditors. Under section 363(b), courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside the ordinary course of business upon the debtor showing that sound business reasons support the proposed use of property. See, e.g., In re BNP Petroleum Corp., 642 F. App'x 429, 434–35 (5th Cir. 2016) (requiring "an articulated business justification, good business judgment, or sound business reasons") (quotations and citations omitted); In re ASARCO L.L.C., 650 F.3d 593, 601 (5th Cir. 2011) ("Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard. . . . The business judgment standard in Section 363 is flexible and encourages discretion."); In re Cont'l Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986)) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property

outside the ordinary course of business.") (citations omitted).

31.     When applying the "business judgment" rule, courts show great deference to the debtor's decision making.  See Richmond Leasing Co. v. Cap. Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985).  The payment of the Taxes and Fees requested herein is not only critical to minimizing disruptions to the Debtors' operations, but also necessary to prevent the irreparable harm that would result from non-payment of such Taxes and Fees (including, but not limited to, being forced to cease business operations in certain jurisdictions due to the failure to pay Taxes and Fees).  The Debtors believe there exists a sound business purpose to permit the Debtors to honor payment of the Taxes and Fees because payment of such Taxes and Fees is essential to the Debtors' businesses and doing so is in the best interests of their estates, creditors, and all parties in interest.

32.     In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations that are essential to preserve the value of the debtor's estate for the benefit of all creditors.  See, e.g., Miltenberger v. Logansport, C. & S. W. R. Co., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim permitted to prevent "stoppage of [crucial] business relations"); In re Bos. & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtor's continued operation).

33.     Likewise, section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Generally, this principle permits bankruptcy courts to exercise their equitable power in limited circumstances to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  See, e.g., In re NVR L.P., 147 B.R. 126, 127

(Bankr. E.D. Va. 1992) (citing In re Ionosphere Clubs, Inc., 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)) (acknowledging that that "[u]nder [section] 105, the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor"); In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").

34.    Courts in the Fifth Circuit and elsewhere have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the value of the debtor's estate, including an operating business' going-concern value.  See In re Tusa-Expo Holdings, Inc., No. 08-45057-DML-11, 2008 WL 4857954, at *2-4 (Bankr. N.D. Tex. Nov. 7, 2008); In re CEI Roofing, Inc., 315 B.R. 50, 56 (Bankr. N.D. Tex. 2004); In re CoServ, L.L.C., 273 B.R. at 497.  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  See, e.g., In re Oxford Mgmt., Inc., 4 F.3d 1329, 1333 (5th Cir. 1993) ("Section 105(a) authorizes a bankruptcy court to fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code."); In re Scotia Dev., LLC, No. 07-20027-RSS, 2007 WL 2788840, at *1 (Bankr. S.D. Tex. Sept. 21, 2007) (acknowledging the doctrine of necessity); In re Mirant Corp., 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (authorizing the debtors to pay certain prepetition claims without advanced court approval because "the court d[id] not wish Debtors' businesses seriously damaged").  The rationale for the "doctrine of necessity" is consistent with the paramount goal of chapter 11: facilitating the continued operation of the debtor.  See In re Equalnet Commc'ns Corp., 258 B.R. at 369 n. 2 (citing In re Ionosphere Clubs, Inc., 98 B.R. 174 (Bankr. S.D.N.Y. 1989)).  Here, the Debtors'

failure to pay the Taxes and Fees could have a material adverse impact on their ability to operate in the ordinary course to the detriment of the value of the estates as well as all creditors, as the Taxing Authorities could, among other things, attempt to prevent or delay the Debtors' operations by revoking business licenses if the Taxes and Fees are not paid.

**D. Payment of the Taxes and Fees Will Avoid Unnecessary Distractions in These Chapter 11 Cases.**

35.     Any regulatory dispute or delinquency that affects the Debtors' ability to conduct business could have a wide-ranging and adverse impact on the Debtors' operations as a whole. Specifically, the Debtors' failure to pay the Taxes and Fees could adversely affect their business operations because, among other things: (a) the Taxing Authorities could audit the Debtors or distract the Debtors from continuing their businesses, which would unnecessarily divert the Debtors' attention from the Debtors' restructuring efforts; (b) the Taxing Authorities could attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and pursue other remedies that will harm the estates; and (c) in many states, officers and directors of a debtor may be held personally liable even if a failure to pay such Taxes or Fees is not a result of their own malfeasance, which would undoubtedly distract such persons from their duties when their immediate and full-time attention should be directed towards the Debtors' chapter 11 process.  As a result, it is in the best interest of the Debtors' estates to remit payment of the Taxes and Fees in a timely manner, thereby eliminating the possibility of such time-consuming and potentially damaging distractions and loss of focus on the part of the Debtors' directors and officers resulting from the risk of personal liability or audits.

**II. Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.**

36.     The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business.  Additionally, under the Debtors' existing cash management system,

the Debtors represent that checks or electronic payment requests can be readily identified as relating to an authorized payment with respect to the Taxes and Fees.  Accordingly, the Debtors believe that checks or electronic payment requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable financial institutions should be authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks or electronic payment requests with respect to the Taxes and Fees, whether issued or presented prior to or after the Petition Date, to the extent that there are sufficient funds in the applicable accounts to make such payments.

## EMERGENCY CONSIDERATION

37.     Pursuant to Local Rule 9013-1, the Debtors request emergency consideration of this Motion under Bankruptcy Rule 6003.  Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief "is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).  For the reasons discussed above and in the First Day Declarations, an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations.  The requested relief is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of their operations, and maximize the value of their estates for the benefit of all stakeholders.  The Debtors have demonstrated that the requested relief "is needed to avoid immediate and irreparable harm" as contemplated by Bankruptcy Rule

16

6003, and, as a result, the Debtors request that the Court approve the relief requested in this Motion on an emergency basis.

### WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

38.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

39.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

### RESERVATION OF RIGHTS

40.     Nothing in the Proposed Order or this Motion (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors, their estates, or any other party in interest with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors, their estates, or any other party in interest with respect to any and all claims or causes of action; or (d) shall be construed as a promise to pay a claim.

41.     Nothing in the Proposed Order or this Motion shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of any Debtor that did not exist as of the Petition Date; or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

42.     Nothing in the Proposed Order or this Motion shall create, nor is intended to create, any rights in favor of or enhance the priority or status of any claim held by any party.

### <u>NOTICE</u>

43.     Notice of this Motion has been or will be provided to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the United States Attorney's Office for the Southern District of Texas; (c) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates; (d) counsel to the DIP Agents; (e) counsel to the DIP Lenders; (f) the Internal Revenue Service; (g) the Banks; (h) counsel to the SO5 Digital Debtors' term loan lender; and (i) the Taxing Authorities.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

WHEREFORE, the Debtors request that the Court enter the Proposed Order, granting the

relief requested herein and such other and further relief as is just and proper.

Houston, Texas
Dated: January 14, 2026

*/s/ Kelli Stephenson Norfleet*
**HAYNES AND BOONE, LLP**
Kelli Stephenson Norfleet (TX Bar No. 24070678)
Kenric D. Kattner (TX Bar No. 11108400)
Arsalan Muhammad (TX Bar No. 24074771)
Kourtney P. Lyda (TX Bar No. 24013330)
David Trausch (TX Bar No. 24113513)
1221 McKinney Street, Suite 4000
Houston, TX 77010
Telephone:  (713) 547 2000
Facsimile:  (713) 547 2600
Email:        kelli.norfleet@haynesboone.com
                 kenric.kattner@haynesboone.com
                 arsalan.muhammad@haynesboone.com
                 kourtney.lyda@haynesboone.com
                 david.trausch@haynesboone.com

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (*pro hac vice* pending)
Robin Spigel (*pro hac vice* pending)
Allyson B. Smith (*pro hac vice* pending)
Betsy L. Feldman (*pro hac vice* pending)
Jessica D. Graber (*pro hac vice* pending)
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
Email:        dsinclair@willkie.com
                 rspigel@willkie.com
                 absmith@willkie.com
                 bfeldman@willkie.com
                 jgraber@willkie.com

-and-

Jennifer J. Hardy (TX Bar No. 24096068)
600 Travis Street
Houston, TX 77002
Telephone:  (713) 510-1766
Facsimile:  (713) 510-1799
Email:        jhardy2@willkie.com

-and-

Ryan Blaine Bennett (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, IL 60654
Telephone:  (312) 728-9123
Facsimile:  (312) 728-9199
Email:        rbennett@willkie.com

*Proposed Co-Counsel to the Global Debtors*
*and Global Debtors in Possession*

*Proposed Co-Counsel to the Global Debtors*
*and Global Debtors in Possession*

*/s/ Jarrod B. Martin*

**BRADLEY ARANT BOULT CUMMINGS LLP**
Jarrod B. Martin (TX Bar No. 24070221)
Michael K. Riordan (TX Bar No. 24070502)
600 Travis Street, Suite 5600
Houston, TX 77002
Telephone: (713) 576-0300
Facsimile: (713) 547-0301
Email:       jbmartin@bradley.com
             mriordan@bradley.com

-and-

James Bailey (TX Bar No. 24108289)
1819 Fifth Avenue N.
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 488-6913
Email:       jbailey@bradley.com

*Proposed Counsel to the SO5 Digital Debtors and SO5 Digital Debtors in Possession*

## Certificate of Accuracy

In accordance with Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency with respect to the Global Debtors are true and accurate to the best of my knowledge.

*/s/ Kelli Stephenson Norfleet*
Kelli Stephenson Norfleet

## Certificate of Accuracy

In accordance with Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency with respect to the SO5 Digital Debtors are true and accurate to the best of my knowledge.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

## Certificate of Service

I certify that on the date hereof, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas. Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' claims agent.

*/s/ Kelli Stephenson Norfleet*
Kelli Stephenson Norfleet