**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| SAKS GLOBAL ENTERPRISES LLC, *et al.*,[1] | Case No. 26-90103 (ARP) |
| Debtors. | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' JOINT**
**EMERGENCY MOTION FOR ENTRY**
**OF ORDER (I) AUTHORIZING DEBTORS**
**TO CONTINUE THEIR INSURANCE PROGRAMS,**
**INCLUDING THEIR INSURANCE PREMIUM FINANCE**
**PROGRAM, SURETY COVERAGE, AND LETTERS OF CREDIT**
**ENTERED INTO PREPETITION AND TO PAY ALL OBLIGATIONS**
**IN RESPECT THEREOF; (II) AUTHORIZING BANKS AND OTHER**
**FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND**
**TRANSFERS RELATED THERETO; AND (III) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (prevailing Central Time) on January 14, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on January 14, 2026, at 4:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Pérez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on**

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Saks. The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281. Bradley Arant Boult Cummings LLP is proposed counsel for the following Debtors: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively, the "SO5 Digital Debtors"). Haynes and Boone, LLP and Willkie Farr & Gallagher LLP are proposed counsel for the remaining Debtors (collectively, the "Global Debtors").

> **Judge Pérez's homepage.  The meeting code is "Judge Pérez".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "<u>Electronic Appearance</u>" link on Judge Pérez's homepage.  Select the case name, complete the required fields and click "<u>Submit</u>" to complete your appearance.**

Saks Global Enterprises LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>"),[2] respectfully represent as follows in support of this motion (the "<u>Motion</u>"):[3]

## **RELIEF REQUESTED**

1.     The Debtors request entry of an order, substantially in the form attached hereto (the "<u>Proposed Order</u>"), (a) authorizing the Debtors to (i) maintain insurance coverage entered into prepetition, including surety coverage and letters of credit, and satisfy prepetition and postpetition

---

[2]   For the avoidance of doubt, "<u>Debtors</u>" means, collectively, the Global Debtors and the SO5 Digital Debtors.  In 2021, the Global Debtors and the SO5 Digital Debtors entered into a series of agreements that resulted in the SO5 Digital Debtors effectively operating as a standalone company within the broader Saks corporate group. Notwithstanding, certain operations remain consolidated within one or more of the Global Debtors. Consequently, from time to time in the ordinary course of business, the Global Debtors make certain payments for the benefit of or allocable to the SO5 Digital Debtors for which the SO5 Digital Debtors remit reimbursement to the applicable Global Debtor.  To the extent the Global Debtors make any payments for the benefit of or allocable to the SO5 Digital Debtors, in accordance with the Approved Budget set forth in the Global Debtors' DIP Orders, the Global Debtors shall be entitled to assert an administrative priority claim against the applicable SO5 Digital Debtor(s); <u>provided</u> that all rights and defenses of all parties in interest shall be fully preserved with respect to any payments for the benefit of or allocable to the SO5 Digital Debtors (and whether or not such payments are for the benefit of or allocable to the SO5 Digital Debtors) after the earlier of (i) the second interim hearing on the SO5 Digital Debtors' motion for use of cash collateral or (ii) fourteen (14) days after the Petition Date, or such other date as may be agreed by the Global Debtors, the SO5 Digital Debtors, the SO5 Digital Debtors prepetition agent, the DIP Agents, and the DIP Lenders (as defined in the Global Debtors' DIP Orders).

[3]   Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the *Declaration of Mark Weinsten in Support of Chapter 11 Petitions and First Day Pleadings*, the *Declaration of Andrew D.J. Hede in Support of SO5 Digital Debtors' Chapter 11 Petitions and First Day Pleadings* (together, the "<u>First Day Declarations</u>"), or the *Global Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Global Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*, each filed concurrently herewith and incorporated by reference.  The First Day Declarations describe in more detail the relationship between the Global Debtors and the SO5 Digital Debtors.

obligations[4] related thereto in the ordinary course of business, (ii) renew, amend, supplement, extend, or purchase insurance coverage in the ordinary course of business on a postpetition basis, (iii) satisfy payment of prepetition obligations on account of and continue to pay amounts due and owing to the insurance brokers, and (b) granting related relief.

2.      The Debtors also request that the Court authorize the Debtors' banks and other financial institutions (collectively, the "Banks") to receive, honor, process, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtors relating to the Insurance Policies or the Insurance Obligations, the Surety Coverage, and the Letters of Credit, as applicable.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas (the "Court"), entered May 24, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Court's entry of a final order by the Court in connection with this Motion.

4.      Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rule 6003, rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the

---

[4]   For the avoidance of doubt, the Debtors are seeking to pay premiums in connection with their Workers Compensation Insurance Policies, if any, pursuant to the *Debtors' Joint Emergency Motion for Entry of Order (I) Authorizing Debtors to (A) Pay Certain Compensation and Benefits Obligations and (B) Maintain Compensation and Benefits Programs and (II) Granting Related Relief*, filed contemporaneously herewith.

Southern District of Texas (the "Local Rules"), and the *Procedures for Complex Cases for the Southern District of Texas*.

## **BACKGROUND**

6.      On January 13, 2026 (the "Petition Date") and January 14, 2026, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court. The Debtors are operating their businesses and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

8.      No official committee has been appointed in these Chapter 11 Cases and no request has been made for the appointment of a trustee or an examiner.

9.      Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declarations.

## **THE INSURANCE POLICIES AND RELATED OBLIGATIONS**[5]

### **I.   The Insurance Policies**

10.     In connection with the operation of their businesses, the Debtors maintain 154 comprehensive insurance policies (each, an "Insurance Policy" and, collectively, the "Insurance Policies") through several different insurance carriers (collectively, the "Insurance Carriers").[6]

---

[5]   The descriptions of the Insurance Policies provided herein is intended only as a summary, and the actual terms of the foregoing shall govern in the event of any inconsistency with the descriptions set forth herein.

[6]   A list of the Insurance Policies and Insurance Carriers is attached hereto as **Exhibit A** and is incorporated herein by reference.  Although **Exhibit A** is intended to be comprehensive, the Debtors may have inadvertently omitted Insurance Policies from **Exhibit A**.  The Debtors request authority to honor existing Insurance Policies and renew Insurance Policies, as applicable, regardless of whether the Debtors inadvertently failed to include a particular

The Insurance Policies provide coverage for liabilities relating to, among other things, commercial general liability, commercial property liability (including terrorism and jewelry), foreign package liability, commercial automobile liability and garage keepers liability, workers' compensation and employment liability, environmental liability, business travel accident liability, special risks liability, punitive damage liability, lead layer liability, directors' and officers' liability, flood liability, ocean and air cargo liability, earthquake liability, crime liability, and cyber security liability (collectively, the "Insurance Obligations").  Continuation and renewal, if applicable, of the Insurance Policies is essential to the operation of the Debtors' businesses and preserving the value of the Debtors' business, properties, and assets.  Moreover, in many cases, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, as well as the Bankruptcy Code and the requirements of the United States Trustee for Region 7 as provided in the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines").  The Debtors request the Court's authority to maintain the existing Insurance Policies, pay prepetition obligations (if any) related thereto upon entry of the Proposed Order, and renew, supplement, or enter into new Insurance Policies in the ordinary course of business on a postpetition basis upon entry of the Proposed Order.

## II.  The Insurance Premium Payments and Premium Financing Agreements

11.     In the ordinary course of business, the Debtors are required to pay premiums under the Insurance Policies based upon rates established by the applicable Insurance Carrier.  For the 2025-2026 policy period, the annual premiums for the Insurance Policies totaled approximately

---

Insurance Policy on **Exhibit A**, and any such omitted Insurance Policy is hereby included in the defined term "Insurance Policies" as used herein and in the Proposed Order.

$41,250,000.00.  Payments made in connection with the Insurance Policies are either paid annually, upon inception, or in installments throughout the year, subject to the applicable payment terms under each Insurance Policy.  The Debtors estimate that, as of the Petition Date, the Debtors owe approximately $73,900.00[7] in connection with the Insurance Policies.  The Debtors seek authority to pay any amounts owed in connection with the Insurance Policies, whether arising prior to the Petition Date or postpetition, in the ordinary course of the Debtors' businesses, and to continue their Insurance Program on a postpetition basis consistent with their past practices.

12.    Certain of the Insurance Policies require the Debtors to prepay the full premium amount for the applicable coverage period upon inception of the Insurance Policy.  To lessen the financial burden that would be imposed on the Debtors by prepaying the full amount of premiums, the Debtors have historically financed the premiums for certain of their Insurance Policies through Premium Funding Associates, Inc. ("Premium Funding") and Aon Premium Finance, LLC ("Aon" and, together, the "Insurance Lenders").  The Debtors finance the premiums for eighty-two of the Insurance Policies through four premium financing agreements: (i) that certain *Premium Financing Agreement for the Umbrella Taxes and Fees Policy* with Premium Funding, dated March 26, 2025 (the "Umbrella PFA");[8] (ii) that certain *Premium Financing Agreement for the Property Policy* with Premium Funding, dated April 16, 2025, (the "Property PFA");[9] (iii) that

---

[7]    This reflects the amount owed under the standalone Insurance Policies that are not otherwise covered under the Premium Financing Agreements (as defined below).  Amounts outstanding in connection with the Premium Financing Agreements are set forth in Section II.

[8]    Pursuant to the Umbrella PFA, Premium Funding agreed to prepay the aggregate annual amount in premiums, taxes, and fees due on account of certain of the Debtors' Insurance Policies—up to $449,450.00—in exchange for the Debtors' down payment of $134,835.00, which the Debtors paid in March 2025, and nine installment payments totaling $326,183.04, or $36,242.56 per monthly installment.  The monthly installment payments are due on the first of each month, commencing on April 1, 2025.  The premiums owed under the Umbrella PFA were paid in full on December 1, 2025.

[9]    Pursuant to Property PFA, Premium Funding agreed to prepay the aggregate annual amount in premiums, taxes, and fees due on account of certain of the Debtors' Insurance Policies—up to $16,997,139.82—in exchange for

certain *Premium Financing Agreement for the Cyber Liability Policy* with Premium Funding, dated July 16, 2025 (the "Cyber Policy"); and (iv) that certain *Premium Financing Agreement for the Directors and Officers Policy* with Aon, dated December 3, 2025 (the "D&O PFA"[10] and, collectively with the Umbrella PFA, Property PFA, and Cyber Policy, the "Premium Financing Agreements").

13.    Pursuant to the Cyber Policy, Premium Funding agreed to prepay the aggregate annual amount in premiums, taxes, and fees due on account of certain of the Debtors' Insurance Policies—up to $1,808,327.50—in exchange for the Debtors' down payment of $543,812.22, which the Debtors paid in June 2025, and nine installment payments totaling $1,310,097.42, or $145,566.38 per monthly installment.  The monthly installment payments are due on the twenty-eighth of each month, commencing on July 28, 2025.

14.    Payments made in connection with the Premium Financing Agreements (collectively, the "Insurance Finance Obligations") are secured obligations.  The terms of the financing agreement typically grant an insurance lender a security interest in (a) all money that is or may be due to the insured because of a loss under any such policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee); (b) any unearned premium under each such policy; (c) dividends which may become due to the insured in connection with any such policy; and (d) interests arising under a state guarantee fund

---

the Debtors' down payment of $5,951,267.76, which the Debtors paid in March 2025, and nine installment payments totaling $11,405,154.96, or $1,267,239.44 per monthly installment.  The monthly installment payments are due on the seventeenth of each month, commencing on April 17, 2025.  The premiums owed under the Property PFA were paid in full on December 17, 2025.

[10]    Pursuant to the D&O PFA, Aon has agreed to prepay the aggregate annual amount in premiums, taxes, and fees due on account of certain of the Debtors' Insurance Policies—up to $2,449,819.13—in exchange for the Debtors' down payment of $857,436.70, which has already been paid in December 2025, and seven installment payments totaling $1,625,675.80, or $232,239.40 per monthly installment.  The monthly installment payments are due on the third of each month, commencing on December 3, 2025.  However, prior to the Petition Date, the premiums owed under the D&O PFA were paid in full on December 31, 2025.

(collectively, the "Insurance Collateral").   Furthermore, in the event of non-payment, the Insurance Lenders are typically appointed as attorney-in-fact for all named insureds under the applicable Insurance Policies, and are granted the authority to, among other things, cancel the applicable Insurance Policies.

15.     As of the Petition Date, the Debtors believe that they owe approximately $436,700.00 to the Insurance Lenders under the Premium Finance Agreements.  The Debtors seek authority, but not direction, to honor any obligations under the Premium Financing Agreements on a postpetition basis and consistent with past practice.

III.   **Captive Insurance Entity**

16.     Debtor Saks Global Enterprises LLC wholly-owns non-Debtor subsidiary Saks Global US Assurance LLC (f/k/a HBC US Assurance LLC) ("Saks Global Assurance" or the "Captive Insurance Entity"), a pure captive insurance company that maintains terrorism, sabotage, and active assailant insurance policies for the Debtors and certain non-Debtor affiliates in connection with the Debtors' US-based properties.  Saks Global Assurance was formed in February 2021, is domiciled in Washington, D.C., and maintains an insurance license issued by the District of Columbia, Department of Insurance, Securities and Banking.  Non-Debtor Saks Global Assurance only provides insurance coverage to the Debtors and certain non-Debtor affiliates and operates a separate bank account at Bank of America ("Bank of America").  This arrangement allows the Debtors to secure more favorable policy terms, reduce insurance costs, and increases pricing stability and control over claims management.  Willis Towers Watson Management (Vermont), Ltd. ("WTW") serves as non-Debtor Saks Global Assurance's captive insurance manager, and manages the operations of the entity in its entirety.  Non-Debtor Saks Global Assurance receives reinsurance premiums from WTW into its bank account.  Periodically,

non-Debtor Saks Global Assurance issues dividends from its bank account to Debtor Saks Global Enterprises LLC.  Likewise, the Debtors remit quarterly service fees from non-Debtor Saks Global Assurance's bank account to WTW on account of its services.  The terrorism, sabotage, and active assailant policies incur an annual premium in the aggregate amount of approximately $1,532,406.00.  Such premiums are refinanced through the Property PFA.

17.     The Captive Insurance Entity is critical to the Debtors' operations.  It allows the Debtors to manage the various risks associated with their operations in a cost-effective manner.  Accordingly, the Debtors seek authority, but not direction, to fulfill the obligations of the Captive Insurance Entity in the ordinary course, including honoring all obligations that may come due, whether arising prepetition or postpetition.

## IV.   Insurance Broker Fees

18.     In the ordinary course of business, the Debtors obtain brokerage services from Willis Towers Watson Northeast Inc. and Aon Risk Services Southwest (together, the "Insurance Brokers").  The Insurance Brokers assist the Debtors in obtaining comprehensive insurance coverage by, among other things, managing renewal data, assisting the Debtors with the procurement and negotiation of the Insurance Policies, marketing the Insurance Policies, enabling the Debtors to obtain such policies on advantageous terms at competitive rates, and providing ongoing support throughout the applicable policy periods.

19.     The Insurance Brokers collect fees for services rendered, in addition to certain Insurance Finance Obligations, either directly from the Debtors or from the Insurance Carriers or the Insurance Lenders, as applicable.  As of the Petition Date, the Debtors do not have any outstanding prepetition amounts due and owing to the Insurance Brokers.  The Debtors include this description out of an abundance of caution to ensure that the Insurance Brokers continue to

provide uninterrupted services and request authority, but not direction, to pay all outstanding prepetition amounts, if any, as they become due and payable and to continue making such payments on a postpetition basis in the ordinary course of the business and consistent with past practice.

**THE SURETY COVERAGE AND SURETY OBLIGATIONS**[11]

### I.   The Surety Coverage and Surety Obligations

20.     In the ordinary course of business, the Debtors maintain 40 surety bonds (each, a "Surety Bond" and, collectively, the "Surety Bonds") in the approximate amount of $11,600,000.00 issued by Berkley Insurance Company, Lexon Insurance Company, and Endurance Assurance Corporation (Sompo) (each, a "Surety" and, collectively, the "Sureties") to secure the Debtors' payment or performance of certain obligations (the "Surety Coverage"), a schedule of which is attached hereto as **Exhibit B**.[12]   These obligations relate to (a) utilities, (b) customs, (c) taxes, (d) co-venture permits and security deposits, and (e) liquor licenses, among other obligations.

21.     The Debtors make premium payments to the Sureties on account of the Surety Bonds (the "Surety Obligations") through the Surety Brokers (as defined below).  Such payments are remitted on an annual basis on or about the renewal date of each Surety Bond.  In 2025, the Debtors paid approximately $157,400.00 on account of the Surety Obligations.

---

[11]   The descriptions of the Surety Obligations provided herein is intended only as a summary, and the actual terms of the foregoing shall govern in the event of any inconsistency with the descriptions set forth herein.

[12]   Although **Exhibit B** is intended to be comprehensive, the Debtors may have inadvertently omitted Surety Bonds from **Exhibit B**.  The Debtors request authority to honor existing Surety Bonds and renew Surety Bonds, as applicable, regardless of whether the Debtors inadvertently failed to include a particular Surety Bond on **Exhibit B**, and any such omitted Surety Bond is hereby included in the defined term "Surety Bonds" as used herein and in the Proposed Order.

22.     As of the Petition Date, the Debtors owe approximately $13,500.00 on account of the Surety Obligations, approximately $840.00 of which is expected to become due within the first twenty-one days of these Chapter 11 Cases.  The Debtors must maintain Surety Bonds to operate their businesses and effectuate their chapter 11 objectives.  Failing to provide, maintain, or timely replace their Surety Bonds may prevent the Debtors from undertaking essential functions related to their operations.  Accordingly, the Debtors seek authority to renew, supplement, or modify the Surety Bonds as needed, and to enter into new surety bonds on a postpetition basis in the ordinary course of business and consistent with past practice.

## II.  Surety Broker

23.     The Debtors' outstanding Surety Bonds are arranged by Rosenberg & Parker Surety, Aon Surety, and C.A. Shea & Company (the "Surety Brokers," and, together with the Insurance Brokers, the "Brokers").  The Surety Brokers play a critical role in helping the Debtors: (a) obtain comprehensive surety coverage to meet the needs of their operations; (b) negotiate the terms, provisions, and premiums of the Surety Bonds; and (c) provide ongoing support throughout the life of each Surety Bond.  The commissions payable to the Surety Brokers (the "Surety Broker Commissions") vary by Surety Bond and are paid directly by the applicable Surety in connection with the issuance of the relevant Surety Bond.  Accordingly, as of the Petition Date, the Debtors do not believe that they owe any amounts on account of the Surety Broker Commissions.  The Debtors include this description out of an abundance of caution to ensure that the Surety Brokers continue to provide uninterrupted services and request authority, but not direction, to pay all outstanding prepetition amounts, if any, on account of the Surety Broker Commissions as they become due and payable and to continue making such payments on a postpetition basis in the ordinary course of the business and consistent with past practice.

11

## LETTERS OF CREDIT

24.     The Global Debtors also maintain various letters of credit for the benefit of third parties to support their obligations related to, among other things:  the Workers' Compensation Programs, property leases, inventory, and transportation/logistics, among other obligations (each, a "Letter of Credit" and, collectively, the "Letters of Credit").  Further, the Global Debtors maintain certain Letters of Credit in connection with their asset-based revolving credit facility with Bank of America (such facility, the "ABL Credit Facility").  A schedule of the Global Debtors' Letters of Credit is attached hereto as **Exhibit C**.[13]  As of the Petition Date, the Global Debtors have 18 Letters of Credit issued by Bank of America and Evolution Credit Opportunity Master Fund III-A LP and Evolution Credit Partners Trade Finance Onshore Holdings, LLC (collectively, "Evolution") in an aggregate amount of approximately $89,317,911.00.  Ten Letters of Credit, totaling approximately $40,926,373.00, back historical Workers' Compensation Programs.  One Letter of Credit, outstanding in the amount of approximately $4,250,000.00, backs one of the Global Debtors' Surety Bonds issued by Berkley Insurance Company.  The remaining Letters of Credit, totaling approximately $44,141,538.00, pertain to certain real estate and property leases, inventory, and transportation/logistics throughout the Global Debtors' supply chain.

25.     The Global Debtors generally pay fees in connection with the Letters of Credit on a quarterly basis (the "Letters of Credit Fees").  The Letters of Credit Fees may be paid in arrears or in advance depending on the terms of the relevant Letter of Credit.  The Letters of Credit Fees paid on Letters of Credit issued under the ABL Credit Facility are remitted to Bank of America

---

[13]   Although **Exhibit C** is intended to be comprehensive, the Global Debtors may have inadvertently omitted Letters of Credit from **Exhibit C**.  The Global Debtors request authority to honor existing Letters of Credit and renew Letters of Credit, as applicable, regardless of whether the Global Debtors inadvertently failed to include particular Letters of Credit on **Exhibit C**, and any such omitted Letters of Credit are hereby included in the defined term "Letters of Credit" as used herein and in the Proposed Order.  Further, to be comprehensive, the Global Debtors included one letter of credit by a non-Global Debtor entity, LT 12 Oaks LLC in **Exhibit C**.

(the administrative agent) and the issuing bank.  The Letters of Credit Fees are approximately 2.375%-2.875% in the aggregate per annum of the aggregate outstanding amount of Letters of Credit or approximately $2,000,000.00 annually and are remitted on the first day of each fiscal quarter in respect of Letters of Credit outstanding in the preceding fiscal quarter under the ABL Credit Facility.  The Letters of Credit Fees paid to Evolution are approximately 2.875% per quarter, or 11.5% per annum, of the outstanding amount of Letters of Credit under the Evolution agreement. As of the Petition Date, the Global Debtors owe Letter of Credit Fees to Evolution in the approximate amount of $941,300.00 and to Bank of America in the approximate amount of $481,900.00.

26.     The Global Debtors must maintain the Letters of Credit to operate their businesses and effectuate their chapter 11 objectives.  Failing to provide, maintain, or timely replace Letters of Credit may prevent the Global Debtors from undertaking essential functions related to their operations.  If a beneficiary draws on a letter of credit, the letter of credit issuer is typically entitled to recover from the applicant.  Accordingly, the Global Debtors seek authority, but not direction, to honor any outstanding prepetition amounts owed in connection with the Letters of Credit, to renew, supplement, or modify the Letters of Credit as needed, and to enter into new letters of credit on a postpetition basis in the ordinary course of business and consistent with past practice.

## BASIS FOR RELIEF

**I.     Maintaining the Insurance Policies Is Required by the Bankruptcy Code and U.S. Trustee Operating Guidelines.**

27.     Pursuant to section 1112(b)(4)(C) of the Bankruptcy Code and the Guidelines for Debtors-in-Possession issued by the United States Trustee for Region 7 (the "U.S. Trustee"), the Debtors are obligated to remain current with respect to their Insurance Policies.  See 11 U.S.C. § 1112(b)(4)(C); see also Operating Guidelines and Reporting Requirements of the United States

Trustee for Chapter 11 Debtors in Possession and Chapter 11 Trustees (the "Operating Guidelines") § II.B. (requiring maintenance of appropriate insurance coverage). Section 1112(b)(4)(C) provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" constitutes "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). Additionally, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the Operating Guidelines issued by the U.S. Trustee. The Debtors believe that it is essential to their estates, as well as consistent with the Bankruptcy Code and the Operating Guidelines, that they maintain and continue to make all payments required under their Insurance Policies, and have the authority to supplement, amend, extend, renew, or replace their Insurance Policies as necessary, in their business judgment, without further order of the Court. Accordingly, by this Motion, the Debtors seek authority pursuant to sections 105(a) and 363 of the Bankruptcy Code to honor their Insurance Obligations and continue their Insurance Policies without interruption, as such programs were in effect as of the Petition Date.

## II. Cause Exists to Authorize the Continuation of the Debtors' Insurance Policies, Surety Coverage, and Letters of Credit and the Payment of the Debtors' Insurance Obligations, Surety Obligations, and Letters of Credit Pursuant to Sections 105(a), 363(c)(1), and 363(b)(1) of the Bankruptcy Code.

28.     Pursuant to section 363(c)(1) of the Bankruptcy Code, the Debtors may "enter into transactions . . . in the ordinary course of business" and "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). See In re Topco, Inc., 894 F.2d 727, 739 n. 17 (5th Cir. 1990) (discussing the ordinary course principle); In re Patriot Place, Ltd., 486 B.R. 773, 792 (Bankr. W.D. Tex. 2013) ("[U]nder § 363(c)(1) of the Bankruptcy Code, [a debtor in possession] may engage in transactions within (or "inside") the ordinary course of … business … without prior bankruptcy court approval.").

29.     The Debtors' continuation, and postpetition renewal, as needed, of their Insurance Policies, Surety Bonds, and Letters of Credit on a postpetition basis are consistent with their prepetition practices and consistent with the practice of companies in the retail industry. Accordingly, the Debtors respectfully submit that no court authorization is needed to pay postpetition amounts due pursuant to the Insurance Obligations, Surety Obligations, and Letters of Credit or to renew or obtain new policies, bonds, and letters, as applicable.

30.     To the extent that the Court determines that the Debtors' continuation or renewal of the Insurance Policies, Surety Bonds, and/or Letters of Credit is outside of the ordinary course of business, section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor, in the exercise of its sound business judgment and "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b)(1), courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business upon the debtor showing that sound business reasons support the proposed use of property. See, e.g., In re BNP Petroleum Corp., 642 F. App'x 429, 434–35 (5th Cir. 2016) (noting that section 363 "requires that a sale of the estate's assets be supported by an articulated business justification, good business judgment, or sound business reasons") (internal quotation and citation omitted); In re ASARCO L.L.C., 650 F.3d 593, 601 (5th Cir. 2011) ("Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard. . . . The business judgment standard in Section 363 is flexible and encourages discretion."); In re Cont'l Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (internal citation

omitted); <u>see also</u> <u>In re Crutcher Res. Corp.</u>, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); <u>In re Terrace Gardens Park P'ship</u>, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (internal citation omitted).  When applying the "business judgment" standard, courts show great deference to the debtor's decision making. <u>See</u> <u>Richmond Leasing Co. v. Cap. Bank, N.A.</u>, 762 F.2d 1303, 1309 (5th Cir. 1985).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." <u>In re Johns-Manville Corp.</u>, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  Thus, if a transaction satisfies the business judgment rule, it should be approved under section 363(b)(1) of the Bankruptcy Code.

31.     The Debtors submit that continuing to honor the Insurance Obligations, Surety Obligations, and Letters of Credit enables them to avoid potentially significant liabilities and, therefore, represents a sound exercise of their business judgment.  More specifically, any interruption in coverage would expose the Debtors to a number of operational and financial risks, including potentially: (a) incurring direct liability for the payment of claims that otherwise would have been covered by the Insurance Policies; (b) incurring material costs and other losses that otherwise would have been reimbursed, such as attorneys' fees for certain covered claims; (c) being unable to obtain similar types and levels of insurance coverage, surety bonds, or letters of credit on equally favorable terms as the present coverage; and (d) incurring higher costs for re-establishing lapsed Insurance Policies, Surety Bonds, or Letters of Credit or for obtaining new

replacement policies.  Accordingly, the Debtors respectfully submit that the requirements of section 363(b) are satisfied.

32.      Furthermore, to the extent that there are prepetition Insurance Obligations, Surety Obligations, or obligations under Letters of Credit outstanding, honoring such obligations is necessary and appropriate.  The Debtors respectfully submit that payment of such obligations should be authorized under sections 105(a) and 363(b) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that a court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a), bankruptcy courts may "authorize the payment of pre-petition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization."  See In re Just for Feet, Inc., 242 B.R. 821, 824 (Bankr. D. Del. 1999).  Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.  As a result, the Debtors submit that the use of estate funds for payment of the Insurance Obligations, Surety Obligations, or obligations under Letters of Credit is permitted under sections 105(a) and 363(b) of the Bankruptcy Code as necessary costs of preserving the estates.

33.      Courts in the Fifth Circuit and elsewhere have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  See In re Tusa-Expo Holdings, Inc., No.

08-45057-DML-11, 2008 WL 4857954, at *2-4 (Bankr. N.D. Tex. Nov. 7, 2008); In re CEI Roofing, Inc., 315 B.R. 50, 56 (Bankr. N.D. Tex. 2004); In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  See, e.g., In re Scotia Dev., LLC, No. 07-20027-RSS, 2007 WL 2788840, at *1 (Bankr. S.D. Tex. Sept. 21, 2007) (acknowledging the doctrine of necessity); In re Oxford Mgmt., Inc., 4 F.3d 1329, 1333 (5th Cir. 1993) ("Section 105(a) authorizes a bankruptcy court to fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code."); In re Mirant Corp., 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (authorizing the debtors to pay certain prepetition claims without advanced court approval because "the court d[id] not wish Debtors' businesses seriously damaged"); In re Equalnet Commc'ns Corp., 258 B.R. 368, 369 (Bankr. S.D. Tex. 2000).  The rationale for the "doctrine of necessity" is consistent with the paramount goal of chapter 11: facilitating the continued operation of the debtor.  See In re Equalnet Commc'ns Corp., 258 B.R. at 369 n. 2 (citing In re Ionosphere Clubs, Inc., 98 B.R. 174 (Bankr.S.D.N.Y.1989)).

34.     The Debtors submit that the payment of the Insurance Obligations, Surety Obligations, and obligations under Letters of Credit is necessary because, as noted above, continuation of such programs and policies is essential to continuing uninterrupted operations and preserving the value of the Debtors' businesses, properties, and assets of the estates.  The nature of the Debtors' businesses and the extent of their operations make it essential for the Debtors to maintain their Insurance Policies, Surety Bonds, and Letters of Credit on an ongoing and uninterrupted basis.  The non-payment of any premiums or related fees due and owing under the Insurance Policies, Surety Bonds, or Letters of Credit could result in one or more of the Insurance

Carriers, Sureties, or parties to a Letter of Credit terminating the Debtors' existing policies and/or programs, declining to renew the Debtors' policies and/or programs, or refusing to enter into new insurance agreements, surety bonds, and/or letters of credit with the Debtors in the future. The Insurance Policies protect the Debtors and other parties in interest from losses caused by, among other things, casualty or other unforeseen events. If the Insurance Policies are allowed to lapse without renewal, the Debtors could be exposed to substantial liability for damages resulting to persons and property of the Debtors and others. Additionally, continuing the Surety Coverage and Letters of Credit are necessary to maintain the Debtors' current business operations, as well as the Debtors' existing relationships with the Sureties and parties to the relevant Letter of Credit. The fees and expenses associated with the Surety Coverage and Letters of Credit are necessary to ensure compliance with statutes and regulations requiring the bonds to remain in place while the Debtors operate in that jurisdiction. Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Court is empowered to grant the relief requested herein. Thus, it is imperative that the Debtors be able to renew, supplement, or purchase insurance coverage, surety bonds, and letters of credit on a postpetition basis in the ordinary course of business.

**III.    To the Extent the Court Determines that the Surety Coverage and Letters of Credit are Extensions of Credit, Relief is Appropriate under Section 364 of the Bankruptcy Code.**

35.    Under section 364(c) of the Bankruptcy Code, a debtor may obtain unsecured credit in the ordinary course of business or obtain secured credit (a) with priority over administrative expenses, (b) secured by a lien on unencumbered estate assets, or (c) secured by a junior lien on previously encumbered assets. 11 U.S.C. § 364(c). To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor must demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis. In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1986). In light of the Debtors' current financial circumstances, the

Debtors will likely be unable to obtain financial accommodations on an unsecured basis or administrative expense basis comparable to those offered by the Sureties and/or parties to the relevant Letters of Credit.  To the extent that the relevant Letters of Credit are and/or Surety Bond is deemed an extension of credit, or the Debtors are required to post new or additional collateral or issue letters of credit in connection therewith, section 364 of the Bankruptcy Code provides the Debtors with ample authority to renew such existing Surety Bonds and/or Letters of Credit, or procure new ones, whether on an unsecured basis or, if necessary, on a secured basis.

36.      Maintaining the Surety Obligations and Letters of Credit are necessary to properly maintain the Debtors' business operations.  The Debtors may also be required to provide Surety Bonds and/or Letters of Credit to certain third parties to secure payment or performance of obligations.  As a result, the Debtors seek authority, but not direction, to maintain the Surety Obligations and Letters of Credit.

**IV.    Payment of Any Insurance Finance Obligations and Entry into New Premium Financing Agreements During these Chapter 11 Cases Is Proper Pursuant to Sections 361, 362(d), 363(e), and 364 of the Bankruptcy Code.**

37.      Security interests created by insurance premium financing agreements, such as the Umbrella PFA, are generally recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements.  See, e.g., In re St. James Inc., 402 B.R. 209, 213-15 (Bankr. E.D. Mich. 2009); In re JII Liquidating, Inc., 344 B.R. 875, 882-84 (Bankr. N.D. Ill. 2006).  Sections 361 and 363(e) of the Bankruptcy Code require that "adequate protection" be given to secured parties to the extent of the diminution in value of such a secured creditor's collateral.  See 11 U.S.C. §§ 361, 363(e).  To the extent of its secured claim, an insurance premium financing counterparty is entitled to seek adequate protection of the Insurance Collateral, or even to seek relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to cancel the Insurance Policies in accordance with the terms of the

applicable premium financing agreement.  See In re Silver State Helicopters, LLC, 403 B.R. 849, 861-63 (Bankr. D. Nev. 2009) (recognizing that a default under the financing arrangement justified relief from the automatic stay).

38.     Pursuant to section 362(d)(1) of the Bankruptcy Code, a court shall grant a secured creditor relief from the stay for cause, which includes the lack of adequate protection of such secured creditor's interest in certain collateral.  See 11 U.S.C. § 362(d)(1).  The passage of time and the Debtors' continued use of the Insurance Policies decrease the value of the Insurance Collateral for the Insurance Lenders.  However, this loss in value is accounted for by the Debtors' payment of the Insurance Finance Obligations.  Accordingly, the Insurance Lenders are entitled to the continued payment of the Insurance Finance Obligations because such payments constitute adequate protection of their interests in the Insurance Collateral under sections 361 and 363(e) of the Bankruptcy Code.

39.     Even if the Debtors were successful in preventing the Insurance Lenders from lifting the automatic stay to pursue their remedies, such litigation likely would be contested and thus, very costly to the estates.  More importantly, if unsuccessful in any automatic stay litigation, the Debtors may be unable to find another carrier willing to provide them with similar insurance coverage or a company willing to finance the premiums without charging significantly higher premiums and fees.  Thus, the Debtors respectfully submit that continuation of the Premium Financing Agreements, payment of the Insurance Finance Obligations is proper pursuant to sections 361, 362(d), and 363(e) of the Bankruptcy Code.

40.     The Court may also authorize the Debtors to enter into new premium finance agreements pursuant to section 364(c)(2) of the Bankruptcy Code.  Section 364(c)(2) authorizes, after notice and a hearing, a debtor in possession to obtain debt secured by a lien on property of

the estate.  11 U.S.C. § 364(c)(2).  Under any new premium finance agreement, the counterparty would likely require that the Debtors grant a security interest in the unearned premiums under the financed policies.  See generally In re Schwinn Bicycle Co., 200 B.R. 980, 982 (Bankr. N.D. Ill. 1996) (describing insurance premium financing agreements).

41.     Section 364(c) authorizes a debtor, in the exercise of its business judgment, to incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estates.  See, e.g., In re Estrada, No. 16-80003-G3-11, 2016 WL 745536, at *3 (Bankr. S.D. Tex. Feb. 24, 2016) ("In determining whether to approve a motion to obtain credit, courts generally permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties."); In re N. Bay Gen. Hosp., Inc., No. 08-20368 (Bankr. S.D. Tex. July 11, 2008) [Docket No. 21] (order approving postpetition financing on an interim basis as exercise of debtors' business judgment).  Because a borrowing to maintain essential insurance coverage is in the best interests of the Debtors' estates, the Court should authorize the Debtors to renew the Premium Finance Agreements and/or execute new premium finance agreements postpetition in the ordinary course of business consistent with the Debtors' prepetition practices.

## V.     Authorization for the Banks to Honor and Pay Checks Issued and Electronic Funds Transfers Requested to Pay Insurance Obligations, Surety Obligations, and Obligations in Connection with the Letters of Credit Is Warranted.

42.     The Debtors further request that this Court authorize and direct the Banks to receive, process, honor, and pay any and all checks drawn or electronic funds transfers requested to pay Insurance Obligations, Surety Obligations, and Obligations in Connection with the Letters of Credit whether such checks were presented prior to or after the Petition Date; provided, however, that such checks or electronic funds transfers are identified by the Debtors as relating directly to the authorized payment of the Insurance Obligations Surety Obligations, and/or

22

Obligations in Connection with the Letters of Credit.  The Debtors also seek authority to issue new postpetition checks, or effect new electronic funds transfers, on account of such claims to replace any prepetition checks or electronic funds transfer requests that may be dishonored or rejected as a result of the commencement of these Chapter 11 Cases.

## EMERGENCY CONSIDERATION

43.    Pursuant to Local Rule 9013-1, the Debtors request emergency consideration of this Motion under Bankruptcy Rule 6003.  Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief "is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).  For the reasons discussed above and in the First Day Declarations, an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations.  The requested relief is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of their operations, and maximize the value of their estates for the benefit of all stakeholders.  The Debtors have demonstrated that the requested relief "is needed to avoid immediate and irreparable harm" as contemplated by Bankruptcy Rule 6003, and, as a result, the Debtors request that the Court approve the relief requested in this Motion on an emergency basis.

## WAIVER OF BANKRUPTCY RULE 6004

44.    The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than

cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estate.  Accordingly, the Debtors respectfully request that the Court waive the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

45.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## RESERVATION OF RIGHTS

46.     Nothing in the Proposed Order or this Motion (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors, their estates, or any other party in interest with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors, their estates, or any other party in interest with respect to any and all claims or causes of action; or (d) shall be construed as a promise to pay a claim.  The Debtors expressly reserve their right to contest any invoice with respect to the Insurance Policies or the Insurance Obligations under applicable non-bankruptcy law.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' right to dispute such claim subsequently.

47.     Nothing in the Proposed Order or this Motion shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of any Debtor that did not exist as of

the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

48.     Nothing in the Proposed Order or this Motion shall create, nor is intended to create, any rights in favor of or enhance the priority or status of any claim held by any party.

### NOTICE

*49.*     Notice of this Motion has been or will be provided to:  (a) the U.S. Trustee; (b) the United States Attorney's Office for the Southern District of Texas; (c) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates; (d) counsel to the DIP Agents; (e) counsel to the DIP Lenders; (f) the Internal Revenue Service; (g) the Banks; (h) the Insurance Carriers; (i) the Insurance Lenders; (j) the Insurance Brokers; (k) the Surety Brokers; (l) the Sureties, (m) counsel to the SO5 Digital Debtors' term loan lender; and (n) parties to the Letters of Credit.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Houston, Texas
Dated: January 14, 2026

/s/ Kelli Stephenson Norfleet

**HAYNES AND BOONE, LLP**
Kelli Stephenson Norfleet (TX Bar No. 24070678)
Kenric D. Kattner (TX Bar No. 11108400)
Arsalan Muhammad (TX Bar No. 24074771)
Kourtney P. Lyda (TX Bar No. 24013330)
David Trausch (TX Bar No. 24113513)
1221 McKinney Street, Suite 4000
Houston, TX 77010
Telephone:  (713) 547 2000
Facsimile:  (713) 547 2600
Email:      kelli.norfleet@haynesboone.com
            kenric.kattner@haynesboone.com
            arsalan.muhammad@haynesboone.com
            kourtney.lyda@haynesboone.com
            david.trausch@haynesboone.com

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (*pro hac vice* pending)
Robin Spigel (*pro hac vice* pending)
Allyson B. Smith (*pro hac vice* pending)
Betsy L. Feldman (*pro hac vice* pending)
Jessica D. Graber (*pro hac vice* pending)
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
Email:      dsinclair@willkie.com
            rspigel@willkie.com
            absmith@willkie.com
            bfeldman@willkie.com
            jgraber@willkie.com

-and-

Jennifer J. Hardy (TX Bar No. 24096068)
600 Travis Street
Houston, TX 77002
Telephone:  (713) 510-1766
Facsimile:  (713) 510-1799
Email:      jhardy2@willkie.com

-and-

Ryan Blaine Bennett (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, IL 60654
Telephone:  (312) 728-9123
Facsimile:  (312) 728-9199
Email:      rbennett@willkie.com

*Proposed Co-Counsel to the Global Debtors*
*and Global Debtors in Possession*

*Proposed Co-Counsel to the Global Debtors*
*and Global Debtors in Possession*

*/s/ Jarrod B. Martin*

**BRADLEY ARANT BOULT CUMMINGS LLP**

Jarrod B. Martin (TX Bar No. 24070221)
Michael K. Riordan (TX Bar No. 24070502)
600 Travis Street, Suite 5600
Houston, TX 77002
Telephone: (713) 576-0300
Facsimile: (713) 547-0301
Email:      jbmartin@bradley.com
            mriordan@bradley.com

-and-

James Bailey (TX Bar No. 24108289)
1819 Fifth Avenue N.
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 488-6913
Email:      jbailey@bradley.com

*Proposed Counsel to the SO5 Digital Debtors and SO5 Digital Debtors in Possession*

## Certificate of Accuracy

In accordance with Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency with respect to the Global Debtors are true and accurate to the best of my knowledge.

*/s/ Kelli Stephenson Norfleet*
Kelli Stephenson Norfleet

## Certificate of Accuracy

In accordance with Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency with respect to the SO5 Digital Debtors are true and accurate to the best of my knowledge.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

## Certificate of Service

I certify that on the date hereof, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas. Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' claims agent.

*/s/ Kelli Stephenson Norfleet*
Kelli Stephenson Norfleet

# EXHIBIT A[1]

**List of Insurance Policies and Insurance Carriers**

---

[1]   For the avoidance of doubt, the Debtors request authorization to honor existing and renew existing Insurance Policies regardless of whether the Debtors have inadvertently failed to identify a particular Insurance Policy in this **Exhibit A** and any such omitted Insurance Policy is hereby included in the defined term "Insurance Policies" as used in the Order.

| Debtor | Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Annual Gross Premium | Covered by Premium Financing Agreement? |
|---|---|---|---|---|---|---|
| Saks Global Enterprise LLC | COMMERCIAL GENERAL LIABILITY | SAFETY NATIONAL CASUALTY CORPORATION | GL4052602 | 3/01/2025 - 3/01/2026 | $ 1,206,768 | |
| Saks Global Enterprise LLC | COMMERCIAL AUTOMOBILE LIABILITY & GARAGEKEEPERS LIABILITY | SAFETY NATIONAL CASUALTY CORPORATION | CA6675536 | 3/01/2025 - 3/01/2026 | $ 155,691 | |
| Saks Global Enterprise LLC | WORKERS' COMPENSATION & EMPLOYERS LIABILITY - AOS & RETRO | SAFETY NATIONAL CASUALTY CORPORATION | LDS4052599 | 3/01/2025 - 3/01/2026 | $ 1,105,876 | |
| Saks Global Enterprise LLC | EXCESS WORKERS' COMPENSATION - OH | SAFETY NATIONAL CASUALTY CORPORATION | SP4066322 | 3/01/2025 - 3/01/2026 | $ 25,930 | |
| Saks Global Enterprise LLC | SAKS FIFTH AVENUE LLC OHIO WORKERS' COMPENSATION | SELF-INSURED | 20005374 | 3/01/2025 - 3/01/2026 | $ - | |
| Saks Global Enterprise LLC | COMMERCIAL UMBRELLA - LEAD LAYER | AWAC | 3094629 | 3/01/2025 - 3/01/2026 | $ 449,450 | Y |
| Saks Global Enterprise LLC | COMMERCIAL UMBRELLA - PUNITIVE DAMAGE LIABILITY / PUNITIVE WRAP | AWAC | C022890/008 | 3/01/2025 - 3/01/2026 | $ 44,945 | |
| Saks Global Enterprise LLC | EXCESS LIABILITY - 1ST LAYER - $15M (GLOBAL) | LIBERTY | 1000047463-18 | 3/01/2025 - 03/01/2026 | CAD 111,793 | |
| Saks Global Enterprise LLC | EXCESS LIABILITY - 2ND LAYER - $12M (GLOBAL) | AIG | 27713175 | 3/01/2025 - 03/01/2026 | CAD 63,251 | |
| Saks Global Enterprise LLC | EXCESS LIABILITY - 3RD LAYER - $13M (GLOBAL) | AXIS | CTX/772174/01/2024 | 3/01/2025 - 03/01/2026 | CAD 61,220 | |
| Saks Global Enterprise LLC | EXCESS LIABILITY - 4th LAYER - $150M (GLOBAL) | PROTA SHARE- XL, Allianz, CAN, RSA, MARKEL, BERKSHIRE, HDI | WC 4469 | 3/01/2025 - 03/01/2026 | CAD 272,415 | |
| Saks Global Enterprise LLC | EXCESS LIABILITY - 5TH LAYER - $50M (GLOBAL) | QUOTA SHARE: Everest/Munich Re/HDI/Markel | WC4470 | 3/01/2025 - 03/01/2026 | CAD 0 | |
| Saks Global Enterprise LLC | EXCESS LIABILITY - 6TH LAYER - $50M (GLOBAL) | Revau | 871266U02 | 3/01/2025 - 03/01/2026 | CAD 88,500 | |
| Saks Global Enterprise LLC | MARINE CARGO (GLOBAL) | TRAVELERS | ZOC-71N25182-24-ND | 3/01/2025 - 03/01/2026 | $ 270,000 | |
| Saks Global Enterprise LLC | FINE ARTS (GLOBAL) | AXA INSURANCE COMPANY | UMA0016074SP25A | 3/01/2025 - 3/01/2026 | $ 100,739 | |
| Saks Global Enterprise LLC | AIRCRAFT HULL & LIABILITY | NATIONAL UNION FIRE INS. CO. OF PITT., PA | GM 015031580-11 | 3/01/2025 - 3/01/2026 | $ 47,154 | |
| Saks Global Enterprise LLC | TERRORISM (GLOBAL) US & CAD- CONVERTED INTO USD | UNDERWRITERS AT LLOYD'S, LONDON | B080114136L25; B080115957L25; B080116436L25 | 3/01/2025 - 3/01/2026 | $ 1,216,746 | |

| Debtor | Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Annual Gross Premium | Covered by Premium Financing Agreement? |
|---|---|---|---|---|---|---|
| Saks Global Enterprise LLC | STOCKTHROUGHPUT- JEWELRY (GLOBAL) PRIMARY | LLOYDS OF LONDON | B1262SS0494725 | 3/18/2025 - 3/18/2026 | $    518,716 | |
| Saks Global Enterprise LLC | STOCKTHROUGHPUT- JEWELRY (GLOBAL) EXCESS- US Location - 611 Fifth Avenue, New York, NY 10022 | LLOYDS OF LONDON | B1262SS0515225 | 3/18/2025 - 3/18/2026 | $     52,098 | |
| Saks Global Enterprise LLC | ENVIROMENTAL (GLOBAL)- US POLICY | IRONSHORE | ISPILLSCD8YU001 | 9/30/2024 - 9/30/2027 | $     78,816 | |
| Saks Global Enterprise LLC | BUSINESS TRAVEL ACCIDENT | FEDERAL INS. CO. | ADD N11213157 | 3/01/2024 - 3/01/2027 | $    182,544 | |
| Saks Global Enterprise LLC | SPECIAL RISKS | GREAT AMERICAN | MD70371CR | 3/01/2025 - 3/01/2028 | $     42,963 | |
| Saks Global Enterprise LLC | FLOOD - 1450 ALA MOANA BLVD, STE 1401 HONOLULU HI 96814 | WRIGHT INSURANCE GROUP | 1152593124 01 | 6/19/2025 -6/19/2026 | $      9,595 | |
| Saks Global Enterprise LLC | FLOOD - 4 WILLOWBROOK BLVD, AKA 1400 WILLOWBROOK MALL, WAYNE NJ 07470 | WRIGHT INSURANCE GROUP | 291152593191 01 | 6/19/2025 - 6/19/2026 | $     11,829 | |
| Saks Global Enterprise LLC | FLOOD - 6401 W MARANA CENTER BLVD, TUCSON AZ 85742 | WRIGHT INSURANCE GROUP | 1151452372 07 | 4/26/2025 - 4/26/2026 | $      1,188 | |
| Saks Global Enterprise LLC | FLOOD - 4135 9TH ST N, N TAMIAMI TRAIL, NAPLES FL 34103 | WRIGHT INSURANCE GROUP | 1151452373 07 | 4/26/2025 - 4/26/2026 | $      1,659 | |
| Saks Global Enterprise LLC | FLOOD - 81 SW 8th St., Miami FL 33130 | WRIGHT INSURANCE GROUP | 1151452374 06 | 4/26/2025 - 4/26/2026 | $      1,999 | |
| Saks Global Enterprise LLC | FLOOD -8 Walden Ave, Cheektowaga, NY | WRIGHT INSURANCE GROUP | 1150993487 10 | 10/28/2025 - 10/28/2026 | $      4,773 | |
| Saks Global Enterprise LLC | FLOOD - 1330 GREAT MALL DR, MILPITAS CA 95035 | WRIGHT INSURANCE GROUP | 1151406255 09 | 11/09/2025 - 11/09/2026 | $      4,163 | |
| Saks Global Enterprise LLC | FLOOD -2200 PETALUMA BLVD N STE 1300, PETALUMA CA 94952 | WRIGHT INSURANCE GROUP | 1151406356 09 | 11/09/2025 - 11/09/2026 | $      2,006 | |
| Saks Global Enterprise LLC | FLOOD -3310 PARAGON OUTLETS DR, LIVERMORE CA 94551 | WRIGHT INSURANCE GROUP | 1151406405 09 | 11/09/2025 - 11/09/2026 | $      1,587 | |
| Saks Global Enterprise LLC | FLOOD -12801 W SUNRISE BLVD, SUNRISE FL 33323 | WRIGHT INSURANCE GROUP | 1151406342 09 | 11/09/2025 - 11/09/2026 | $        858 | |
| Saks Global Enterprise LLC | FLOOD -10801 CORKSCREW RD STE 353, ESTERO FL 33928 | WRIGHT INSURANCE GROUP | 1151406365 09 | 11/09/2025 - 11/09/2026 | $      1,656 | |
| Saks Global Enterprise LLC | FLOOD -18701 BISCAYNE BLVD STE 714, AVENTURA FL 33180 | WRIGHT INSURANCE GROUP | 1151406367 09 | 11/09/2025 - 11/09/2026 | $      2,072 | |

| Debtor | Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Annual Gross Premium | Covered by Premium Financing Agreement? |
|---|---|---|---|---|---|---|
| Saks Global Enterprise LLC | FLOOD -9700 COLLINS AVE, BAL HARBOUR FL 33154 | WRIGHT INSURANCE GROUP | 1151406374 07 | 11/09/2025 - 11/09/2026 | $ 1,738 | |
| Saks Global Enterprise LLC | FLOOD -7687 N KENDALL DR, MIAMI FL 33156 | WRIGHT INSURANCE GROUP | 1151406387 07 | 11/09/2025 - 11/09/2026 | $ 1,378 | |
| Saks Global Enterprise LLC | FLOOD -5800 GLADES RD, BOCA RATON FL 33431 | WRIGHT INSURANCE GROUP | 1151542900 07 | 11/09/2025 - 11/09/2026 | $ 889 | |
| Saks Global Enterprise LLC | FLOOD - 7 Backus Ave, Danbury, CT 06810 | WRIGHT INSURANCE GROUP | 1152297191 01 | 4/29/2025 - 4/29/2026 | $ 2,872 | |
| Saks Global Enterprise LLC | FLOOD - 1825 PALISADES CENTER DR, WEST NYACK NY 10994 | WRIGHT INSURANCE GROUP | 1151030123 10 | 2/28/2025 - 2/28/2026 | $ 1,340 | |
| Saks Global Enterprise LLC | FLOOD - 9629 Destiny USA DR, Syracuse, NY 13204 | WRIGHT INSURANCE GROUP | 1151763893 05 | 4/08/2025 - 4/08/2026 | $ 5,202 | |
| Saks Global Enterprise LLC | CYBER SECURITY LIABILITY | AIG SPECIALTY INSURANCE COMPANY | 01-581-67-60 | 06/28/2025 - 06/28/2026 | $ 518,750 | Y |
| Saks Global Enterprise LLC | CYBER SECURITY LIABILITY $10M x $10M | GREENWICH INSURANCE COMPANY | MTE9048994 00 | 06/28/2025 - 06/28/2026 | $ 300,000 | Y |
| Saks Global Enterprise LLC | CYBER SECURITY LIABILITY $10M x $20M | AXIS SURPLUS INSURANCE COMPANY | P-001-001693428-01 | 06/28/2025 - 06/28/2026 | $ 259,375 | Y |
| Saks Global Enterprise LLC | CYBER SECURITY LIABILITY $10M x $30M | SAFETY NATIONAL CASUALTY CORPORATION | CY 6676917 | 06/28/2025 - 06/28/2026 | $ 210,000 | Y |
| Saks Global Enterprise LLC | CYBER SECURITY LIABILITY $10M x $40M | STARR SURPLUS LINES INSURANCE COMPANY | 1001213767251 | 06/28/2025 - 06/28/2026 | $ 183,015 | Y |
| Saks Global Enterprise LLC | CYBER SECURITY LIABILITY $10M x $50M | ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY | CVX30091462800 | 06/28/2025 - 06/28/2026 | $ 155,625 | Y |
| Saks Global Enterprise LLC | CYBER SECURITY LIABILITY $10M x $60M | LLOYDS | B080157170P25 | 06/28/2025 - 06/28/2026 | $ 181,563 | Y |
| Saks Global Enterprises LLC | EPL Primary | Midvale Indemnity Company (Bowhead) | BCP-012657-02 | 11-3-2025 - 11-3-2026 | $ 131,928 | |
| Saks Global Enterprises LLC | FID Primary | Allianz Global | USF01506425 | 11-3-2025 - 11-3-2026 | $ 90,496 | Y |
| Saks Global Enterprises LLC | FID Excess 5M x 5M | Hudson Insurance Co | SXS31210855 | 11-3-2025 - 11-3-2026 | $ 54,567 | Y |
| Saks Global Enterprises LLC | FID Excess 5M x 10M | Endurance American Insurance Co | FLX30102390400 | 11-3-2025 - 11-3-2026 | $ 41,175 | Y |

| Debtor | Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Annual Gross Premium | Covered by Premium Financing Agreement? |
|---|---|---|---|---|---|---|
| Saks Global Enterprises LLC | FID Excess 5M x 15M | Berkshire Hathaway | 47-EMC-344984-01 | 11-3-2025 - 11-3-2026 | $ 35,675 | Y |
| Saks Global Enterprises LLC | CCR Primary | Beazley Insurance Co | V31C91240401 | 11-3-2025 - 11-3-2026 | $ 96,380 | Y |
| Saks Global Enterprises LLC | CCR Excess 12M x 10M | Berkley Insurance Company | BCCR-45005025-24 | 11-3-2025 - 11-3-2026 | $ 42,375 | Y |
| Saks Global Enterprises LLC | ELP Primary | Federal Insurance Company (Chubb) | J06973000 | 11-3-2025 - 11-3-2026 | $ 27,703 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property | Lloyds of London | B080113656U25 | 3-17-2025 - 3-17-2026 | $ 441,975 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property (With Wind) | AXIS Surplus Insurance Company | P-001-003627933 01 | 3-17-2025 - 3-17-2026 | $ 539,500 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property (With Wind) | Ironshore Specialty Insurance Company | 1000383156-06 | 3-17-2025 - 3-17-2026 | $ 368,313 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property | Columbia Casualty Company | RMP - 7093005880 | 3-17-2025 - 3-17-2026 | $ 648,438 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property | Lloyds of London | B080123193U25 | 3-17-2025 - 3-17-2026 | $ 269,750 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property | National Fire & Marine Insurance Co | 42-PRP-301152-11 | 3-17-2025 - 3-17-2026 | $ 913,000 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property | Zurich American Insurance Company | ERP 0122438-08 | 3-17-2025 - 3-17-2026 | $ 1,379,000 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property (With Wind) | Canopius US Insurance, Inc. | CUS74000118-00 | 3-17-2025 - 3-17-2026 | $ 309,855 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property | Everest Indemnity Insurance Co | RP5P000114-251 | 3-17-2025 - 3-17-2026 | $ 846,600 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property | Lloyds of London | B080123138U25P1 | 3-17-2025 - 3-17-2026 | $ 363,125 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property | Starr Surplus Lines Insurance Company | SLSTPTY12479725 | 3-17-2025 - 3-17-2026 | $ 778,125 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property | International General Insurance Company (Uk) Ltd | B080121236U25 | 3-17-2025 - 3-17-2026 | $ 519,749 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property | Beazley Excess and Surplus Insurance Inc. | D348A5250301 | 3-17-2025 - 3-17-2026 | $ 467,848 | Y |

| Debtor | Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Annual Gross Premium | Covered by Premium Financing Agreement? |
|---|---|---|---|---|---|---|
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | Lloyds of London | B080121239U25P1 | 3-17-2025 - 3-17-2026 | $ 492,813 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | ACE American Insurance Company | CX D37748559015 | 3-17-2025 - 3-17-2026 | $ 684,807 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Hamilton Re, Ltd. | B080123135U25 | 3-17-2025 - 3-17-2026 | $ 394,250 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | Lloyds of London | B080119143U25 | 3-17-2025 - 3-17-2026 | $ 505,781 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | Lloyds of London | B080123136U25 | 3-17-2025 - 3-17-2026 | $ 455,203 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | Tokio Marine America Insurance Company | LCP6481054-08 | 3-17-2025 - 3-17-2026 | $ 397,382 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | Lancashire Insurance Company (UK) Ltd | B080121239U25P2 | 3-17-2025 - 3-17-2026 | $ 162,628 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | Aviva Insurance Limited | B080123200U25 | 3-17-2025 - 3-17-2026 | $ 93,219 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | Kinsale Insurance Company | 0100231528-2 | 3-17-2025 - 3-17-2026 | $ 176,388 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | Westfield Specialty Insurance Company | XAR-00004V4-03 | 3-17-2025 - 3-17-2026 | $ 235,522 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Starstone Specialty Insurance Company | CSP00099485P-01 | 3-17-2025 - 3-17-2026 | $ 110,494 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | MS Transverse Insurance Company | EPR0000030 001 | 3-17-2025 - 3-17-2026 | $ 77,831 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | Convex Insurance UK Limited | B080118604U25 | 3-17-2025 - 3-17-2026 | $ 303,469 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | Nautilus Insurance Company | ZA663F25A000 | 3-17-2025 - 3-17-2026 | $ 145,250 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | QBE Specialty Insurance Co | ASRU000517-05 | 3-17-2025 - 3-17-2026 | $ 38,707 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Obsidian Specialty Insurance Company | AWP-XS-000000517-05 | 3-17-2025 - 3-17-2026 | $ 10,557 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Western World Insurance Company | SSC0010562 | 3-17-2025 - 3-17-2026 | $ 10,557 | Y |

| Debtor | Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Annual Gross Premium | Covered by Premium Financing Agreement? |
|---|---|---|---|---|---|---|
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Covington Specialty Ins Co | VES-000517-05 | 3-17-2025 - 3-17-2026 | $ 10,557 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Princeton Excess & Surplus Lines Ins Co | 3VA3PP0000687-04 | 3-17-2025 - 3-17-2026 | $ 10,557 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Partner Reinsurance Co Ltd | TRK00074-01 | 3-17-2025 - 3-17-2026 | $ 1,478 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Superior Specialty Insurance Co | TJD000157-01 | 3-17-2025 - 3-17-2026 | $ 1,971 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Palomar Excess and Surplus Insurance Company | PSC00615-01 | 3-17-2025 - 3-17-2026 | $ 1,478 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Lloyds of London | IFA0001957 | 3-17-2025 - 3-17-2026 | $ 2,710 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Dellwood Specialty Insurance Company | DPS0001957 | 3-17-2025 - 3-17-2026 | $ 985 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Western World Insurance Company | SSC0001957 | 3-17-2025 - 3-17-2026 | $ 13,300 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Lloyds of London | BTE0001957 | 3-17-2025 - 3-17-2026 | $ 2,710 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Evanston Insurance Company | MKLV1XPR001178 | 3-17-2025 - 3-17-2026 | $ 48,005 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Starstone Specialty Insurance Company | CSP00099487P-01 | 3-17-2025 - 3-17-2026 | $ 98,044 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Mitsui Sumitomo Insurance Co of America | EXP7000271 | 3-17-2025 - 3-17-2026 | $ 91,015 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property (With Wind) | Ironshore Specialty Insurance Company | 1000383157-06 | 3-17-2025 - 3-17-2026 | $ 47,206 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | Lloyds of London | B080123137U25 | 3-17-2025 - 3-17-2026 | $ 74,700 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | Lloyds of London | B080123138U25P2 | 3-17-2025 - 3-17-2026 | $ 12,969 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Property | Canopius US Insurance, Inc. | CUS74000119-00 | 3-17-2025 - 3-17-2026 | $ 1,881 | Y |
| Saks Global Enterprises LLC<br>Saks Global Holdings LLC<br>HBC US Holdings LLC | Terrorism | Lloyds of London | B080115050L25 | 3-17-2025 - 3-17-2026 | $ 31,903 | Y |

| Debtor | Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Annual Gross Premium | Covered by Premium Financing Agreement? |
|---|---|---|---|---|---|---|
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Terrorism | Lloyds of London | B080115049L25 | 3-17-2025 - 3-17-2026 | $ 126,057 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Terrorism | Lloyds of London | B080115051L25 | 3-17-2025 - 3-17-2026 | $ 157,700 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property | Factory Mutual Insurance Company | 1145823 | 3-17-2025 - 3-17-2026 | $ 2,401,287 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Property | Lloyds of London | B080125959U25 | 3-17-2025 - 3-17-2026 | $ 103,750 | Y |
| Saks Global Enterprises LLC Saks Global Holdings LLC HBC US Holdings LLC | Terrorism | Lloyds of London | HBCA-TERR-2025 | 3-17-2025 - 3-17-2026 | $ 1,216,746 | Y |
| NMG Holding Company Inc | Business Auto Coverage \| Automobile Liability-DB | Liberty Mutual Ins Co | AS5-611-004216-465 | 08/01/2025 - 03/01/2026 | $ 116,360 | |
| NMG Holding Company Inc | General Liability Coverage \| General Liability | Liberty Mutual Ins Co | TB2-C11-004216-545 | 08/01/2025 - 03/01/2026 | $ 324,544 | |
| NMG Holding Company Inc | Workers Compensation \| Workers Comp (AOS) | Liberty Mutual Ins Co | WA5-61D-004216-325 | 08/01/2025 - 03/01/2026 | $ 375,559 | |
| NMG Holding Company Inc | Umbrella Liability \| 01-Umb Primary-$10M | American International Companies (AIG) | 016319196 | 08/01/2025 - 03/01/2026 | $ 112,714 | |
| NMG Holding Company Inc | Excess Liability Coverage \| 02-Excess $15M xs $10M (AWAC) | Allied World National Assurance Company | 0313-9420 | 08/01/2025 - 03/01/2026 | $ 69,515 | |
| NMG Holding Company Inc | Excess Liability Coverage \| 03-Excess $25M xs $25M | Hartford Insurance Group | 46HVZBR7W1U | 08/01/2025 - 03/01/2026 | $ 90,608 | |
| NMG Holding Company Inc | Excess Liability Coverage \| 04a- 10M PO $20M x $50M Great American | Great American Professional Risk Ins Svs | EXC5867749 | 08/01/2025 - 03/01/2026 | $ 17,400 | |
| NMG Holding Company Inc | Excess Liability Coverage \| 04b- 10M PO $20M x $50M Nationwide | Scottsdale Insurance Co (Nationwide) | ECO2509036 | 08/01/2025 - 03/01/2026 | $ 17,574 | |
| NMG Holding Company Inc | Excess Liability Coverage \| 05-XS Liab-$15M xs $70M | Liberty Agency Underwriters | ECO2658078901 | 08/01/2025 - 03/01/2026 | $ 25,250 | |
| NMG Holding Company Inc | Excess Liability Coverage \| 06- XS Liab $15M xs $85M | CNA Insurance Companies | 6078780217 | 08/01/2025 - 03/01/2026 | $ 22,210 | |
| NMG Holding Company Inc | Commercial Package Policy- Foreign | American International Companies (AIG) | WS11016729 | 08/01/2025 - 03/01/2026 | $ 3,448 | |
| NMG Holding Company Inc | Ocean/Air Cargo - Marine | Affiliated FM Ins Co | CUSA0042242 | 12/1/2025 - 3/17/2026 | $ 34,095 | |

| Debtor | Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Annual Gross Premium | Covered by Premium Financing Agreement? |
|---|---|---|---|---|---|---|
| Neiman Marcus Group LTD LLC | Commercial Property Coverage | Factory Mutual Ins Company | 1141346 | 12/1/2025 - 3/17/2026 | $ 8,357,949 | |
| NMG Holding Company Inc | Earthquake Coverage - Property | R-T Specialty, LLC | TSARDC000012101 | 12/1/2025 - 3/17/2026 | $ 157,600 | |
| NMG Holding Company Inc | Excess Earthquake | R-T Specialty, LLC | BPP2389008 | 12/1/2025 - 3/17/2026 | $ 98,500 | |
| NMG Holding Company Inc | Excess Earthquake | R-T Specialty, LLC | TR00014861832724 | 12/1/2025 - 3/17/2026 | $ 101,632 | |
| NMG Holding Company Inc | Excess Earthquake | R-T Specialty, LLC | B1180D2405153170 | 12/1/2025 - 3/17/2026 | $ 39,400 | |
| NMG Holding Company Inc | Environmental Storage Tank Liability | ACE American Insurance Company | G21864638019 | 10-10-2025 - 10-10-2026 | $ 1,199 | |
| NMG Holding Company Inc | Flood Coverage - Property -503 GARDEN STATE PLZ, PARAMUS NJ 07652 | WRIGHT INSURANCE GROUP | 29 1152779928 00 | 10-27-2025 - 10-27-2026 | $ 7,391 | |
| NMG Holding Company Inc | Flood Coverage - Property -1450 ALA MOANA BLVD, HONOLULU HI 96814 | WRIGHT INSURANCE GROUP | 52 1152779930 00 | 10-27-2025 - 10-27-2026 | $ 9,430 | |
| NMG Holding Company Inc | Flood Coverage - Property - 2600 POST OAK BLVD, HOUSTON TX 77056 | WRIGHT INSURANCE GROUP | 42 1152779929 00 | 10-27-2025 - 10-27-2026 | $ 8,321 | |
| NMG Holding Company Inc | Flood Coverage - Property - 4170 CONROY RD, ORLANDO FL 32839 | WRIGHT INSURANCE GROUP | 09 1152779931 00 | 10-27-2025 - 10-27-2026 | $ 4,318 | |
| NMG Holding Company Inc | Flood Coverage - Property - 5860 GLADES RD, BOCA RATON FL 33431 | WRIGHT INSURANCE GROUP | 09 1152779927 00 | 10-27-2025 - 10-27-2026 | $ 4,645 | |
| NMG Holding Company Inc | Flood Coverage - Property - 9700 COLLINS AVE, BAL HARBOUR FL 33154 | WRIGHT INSURANCE GROUP | 09 1152779925 00 | 10-27-2025 - 10-27-2026 | $ 9,219 | |
| NMG Holding Company Inc | Flood Coverage - Property - 12801 W SUNRISE BLVD, SUNRISE FL 33323 | WRIGHT INSURANCE GROUP | 09 1152779926 00 | 10-27-2025 - 10-27-2026 | $ 2,370 | |
| NMG Parent LLC | Directors & Officers-Run-Off | D&O Primary RUN OFF | HCC Global Financial Products, LLC | 14MGU17A42177 | 10-31-2020 - 10-31-2027 | $ 1,000,000 | |
| NMG Parent LLC | Directors & Officers-Run-Off | 1st XS D&O 10Mxs10M RUN OFF | Berkley Professional Liability | BPRO8028938 | 10-31-2020 - 10-31-2027 | $ 800,000 | |
| NMG Parent LLC | Directors & Officers-Run-Off | 2nd XS D&O 10Mxs20M RUN OFF | Starr Indemnity & Liability Company | 1000620570171 | 10-31-2020 - 10-31-2027 | $ 589,000 | |
| NMG Parent LLC | Directors & Officers-Run-Off | 3rd XS D&O 10Mxs30M RUN OFF | ACE American Insurance Company | G25116501004 | 10-31-2020 - 10-31-2027 | $ 500,900 | |

| Debtor | Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Annual Gross Premium | Covered by Premium Financing Agreement? |
|---|---|---|---|---|---|---|
| NMG Parent LLC | Directors & Officers-Run-Off \| 4th XS D&O 10Mxs40M RUN OFF | AXIS Insurance Company | MLN777335012017 | 10-31-2020 - 10-31-2027 | $ 387,175 | |
| NMG Parent LLC | Directors & Officers-Run-Off \| 5th XS DIC Side A Only $25Mxs$50M RUN OF | Aon UK Limited | FSUSC1901944 | 10-31-2020 - 10-31-2027 | $ 624,750 | |
| NMG Parent LLC | Directors & Officers-Run-Off \| 6th XS DIC Side A Only $15M RUN OFF | Aon UK Limited | FSUSC1902691 | 10-31-2020 - 10-31-2027 | $ 194,996 | |
| HBC 1 LP | Directors & Officers Liability | SOMPO - Endurance Assurance Company | MAP30101855300 | 11-3-2025 - 11-3-2026 | $ 315,675 | Y |
| HBC 1 LP | 01 D&O Excess 5M XS 5M | Hiscox Insurance Company | FSGDO2503373 | 11-3-2025 - 11-3-2026 | $ 245,525 | Y |
| HBC 1 LP | 02 D&O Excess 5M XS 10M | IQUW Syndicate Limited Management Limited | FSGDO2503381 | 11-3-2025 - 11-3-2026 | $ 182,238 | Y |
| HBC 1 LP | 03 D&O Excess 5M x 15M | Berkshire Hathaway | 47-EMC-344803-01 | 11-3-2025 - 11-3-2026 | $ 140,675 | Y |
| HBC 1 LP | 04 D&O Excess 5M x 20M | Allianz Global Corporate & Specialty SE | USF05532825 | 11-3-2025 - 11-3-2026 | $ 120,675 | Y |
| HBC 1 LP | 05 D&O Excess 5M x 25M | Convex Insurance Limited UK | XDO000186-1125 | 11-3-2025 - 11-3-2026 | $ 105,970 | Y |
| HBC 1 LP | 06 D&O Excess 5M x 30M | Tokio Marine | 14-MG-25-A17103 | 11-3-2025 - 11-3-2026 | $ 99,237 | Y |
| HBC 1 LP | 07 D&O Excess 5M x 35M | Encore - Preferred Professional Insurance Company | ENC-PPIC-000139-25 | 11-3-2025 - 11-3-2026 | $ 85,675 | Y |
| HBC 1 LP | 08 D&O Excess 5M x 40M | Orion- Palomar Excess & Surplus Insurance Company | OII-954-DOX-1-2025-0-P | 11-3-2025 - 11-3-2026 | $ 87,866 | Y |
| HBC 1 LP | 09 D&O Excess 5M x 45M | Celerity Risk | CRDO-0000069-00 | 11-3-2025 - 11-3-2026 | $ 83,975 | Y |
| HBC 1 LP | 10 D&O Excess 5M x 50M - Side A Only | AXIS Insurance Company | P-001-001816742-01 | 11-3-2025 - 11-3-2026 | $ 175,675 | Y |
| HBC 1 LP | 11 D&O Excess 5M x 55M - Side A Only | SOMPO - Endurance Assurance Company | ADX30101992900 | 11-3-2025 - 11-3-2026 | $ 125,675 | Y |
| HBC 1 LP | 12 D&O Excess 5M x 60M - Side A Only | Allianz Global Corporate & Specialty SE | USF05713525 | 11-3-2025 - 11-3-2026 | $ 105,675 | Y |
| HBC 1 LP | 13 D&O Excess 5M x 65M - Side A Only | Encore - Preferred Professional Insurance Company | ENX-PPIC-000135-25 | 11-3-2025 - 11-3-2026 | $ 95,675 | Y |

| Debtor | Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Annual Gross Premium | Covered by Premium Financing Agreement? |
|--------|------------------------|----------------------|---------------|-------------|---------------------|------------------------------------------|
| HBC I LP | 14 D&O Excess 5M x 70M - Side A Only | Ascot Insurance Company | MLXS2510002330-01 | 11-3-2025 - 11-3-2026 | $    91,238 | Y |

**EXHIBIT B**[1]

**List of Surety Bonds**[2]

| Bond Number | Issuing Carrier | Debtor Entity | Beneficiary | Effective Date | Expiration Date |
|---|---|---|---|---|---|
| 0242008 | BERKLEY INSURANCE COMPANY | Saks & Company LLC d/b/a Saks OFF 5TH | Gulf Power/Florida Power and Light | 11/18/2021 | 11/18/2026 |
| 0232490 | BERKLEY INSURANCE COMPANY | Saks & Company LLC | FLORIDA POWER & LIGHT COMPANY | 12/7/2025 | 12/7/2026 |
| 0236816 | BERKLEY INSURANCE COMPANY | Saks & Company LLC | BUREAU OF CUSTOMS AND BORDER PROTECTION | 2/3/2024 | 2/3/2026 |
| 0232493 | BERKLEY INSURANCE COMPANY | Saks Incorporated/Saks Fifth Avenue | SOUTHERN CALIFORNIA EDISON COMPANY | 2/21/2021 | 2/21/2026 |
| 0232494 | BERKLEY INSURANCE COMPANY | Saks Incorporated/Saks OFF 5TH | SOUTHERN CALIFORNIA EDISON COMPANY | 2/21/2021 | 2/21/2026 |
| 0237157 | BERKLEY INSURANCE COMPANY | Saks Incorporated/Saks OFF 5TH | COMMONWEALTH EDISON COMPANY | 3/18/2021 | 3/18/2026 |
| 0237156 | BERKLEY INSURANCE COMPANY | Saks Incorporated | COMMONWEALTH EDISON COMPANY | 3/18/2021 | 3/18/2026 |
| 0176208 | BERKLEY INSURANCE COMPANY | Saks Fifth Avenue Inc./Saks OFF 5TH | GEORGIA POWER COMPANY, Noncash Securities Bin 80003 | 6/10/2013 | 6/10/2026 |
| 0248120 | BERKLEY INSURANCE COMPANY | SFA Holdings Inc. | United States District Court for the Northern District of Illinois - Clerk of Court | 6/5/2023 | 6/5/2026 |
| 0176201 | BERKLEY INSURANCE COMPANY | Saks & Company | NEVADA DEPARTMENT OF TAXATION | 7/21/2013 | 7/21/2026 |
| 0176205 | BERKLEY INSURANCE COMPANY | Saks Fifth Avenue | PALMETTO ELECTRIC COOPERATIVE, INC. | 7/21/2013 | 7/21/2026 |

[1]   For the avoidance of doubt, the Debtors request authorization to honor existing and renew existing Surety Bonds regardless of whether the Debtors have inadvertently failed to identify a particular Surety Bond in this **Exhibit B** and any such omitted Surety Bond is hereby included in the defined term "Surety Bonds" as used in the Order.

[2]   For the avoidance of doubt, in February 2022 Saks Incorporated was renamed SFA Holdings Inc.

| Bond Number | Issuing Carrier | Debtor Entity | Beneficiary | Effective Date | Expiration Date |
|---|---|---|---|---|---|
| 0237163 | BERKLEY INSURANCE COMPANY | Saks & Company | SRP COMMERCIAL | 7/21/2021 | 7/21/2026 |
| 0237164 | BERKLEY INSURANCE COMPANY | Saks Incorporated | SRP COMMERCIAL | 7/21/2021 | 7/21/2026 |
| 0237165 | BERKLEY INSURANCE COMPANY | Saks & Company/Saks Fifth Avenue | FLORIDA POWER & LIGHT COMPANY | 7/21/2021 | 7/21/2026 |
| 0237166 | BERKLEY INSURANCE COMPANY | Saks & Company/Saks OFF 5TH | FLORIDA POWER & LIGHT COMPANY | 7/21/2021 | 7/21/2026 |
| 0176204 | BERKLEY INSURANCE COMPANY | Saks & Company d/b/a Saks Fifth Avenue | PALM BEACH COUNTY | 7/22/2013 | 7/22/2026 |
| 0178398 | BERKLEY INSURANCE COMPANY | Saks Fifth Avenue, Inc. | PROGRESS ENERGY CAROLINAS, INC. | 8/15/2013 | 8/15/2026 |
| 0176214 | BERKLEY INSURANCE COMPANY | Saks Fifth Avenue | ENTERGY NEW ORLEANS, INC. | 8/20/2013 | 8/20/2026 |
| 0176215 | BERKLEY INSURANCE COMPANY | Saks & Company LLC d/b/a Saks OFF 5TH | VIRGINIA ELECTRIC AND POWER COMPANY, D/B/A DOMINION ENERGY VIRGINIA | 8/20/2013 | 8/20/2026 |
| 0237175 | BERKLEY INSURANCE COMPANY | Saks & Company LLC d/b/a Saks OFF 5TH | Orlando Utilities Commission | 9/10/2021 | 9/10/2026 |
| 0178399 | BERKLEY INSURANCE COMPANY | Saks Incorporated | GEORGIA POWER COMPANY, Noncash Securities Bin 80003 | 9/19/2003 | 9/19/2026 |
| 0242078 | BERKLEY INSURANCE COMPANY | Saks.com LLC | BUREAU OF CUSTOMS AND BORDER PROTECTION | 1/7/2026 | 1/7/2027 |
| 0236822 | BERKLEY INSURANCE COMPANY | Saks OFF 5TH LLC | BUREAU OF CUSTOMS AND BORDER PROTECTION | 10/15/2021 | 10/15/2026 |
| 0237173 | BERKLEY INSURANCE COMPANY | Saks OFF 5TH LLC | UGI Utilities, INC.- GAS DIVISION | 8/26/2021 | 8/26/2026 |
| 9826604 | Lexon Insurance Company | The Neiman Marcus Group LLC | PECO Energy Company | 7/24/2025 | 7/24/2026 |
| EACX4020585 | Endurance Assurance Corp | Bergdorf Goodman, LLC | State of New York | 11/24/2022 | 11/27/2027 |
| EACX4003687 | Endurance Assurance Corp | The Neiman Marcus Group LLC | State of New York | 10/31/2025 | 10/31/2027 |

| Bond Number | Issuing Carrier | Debtor Entity | Beneficiary | Effective Date | Expiration Date |
|---|---|---|---|---|---|
| EACX4003688 | Endurance Assurance Corp | The Neiman Marcus Group LLC | State of New York | 10/31/2025 | 10/31/2027 |
| EACX4003689 | Endurance Assurance Corp | The Neiman Marcus Group LLC | State of New York | 10/31/2025 | 10/31/2027 |
| EACX4020588 | Endurance Assurance Corp | The Neiman Marcus Group LLC | State of New York | 4/17/2024 | 4/17/2026 |
| EACX4005591 | Endurance Assurance Corp | The Neiman Marcus Group LLC | State of New York | 2/1/2024 | 2/1/2026 |
| 9825508 | Lexon Insurance Company | Neiman Marcus Group, LLC | State of Alabama | 9/9/2025 | 9/9/2026 |
| 9825489 | Lexon Insurance Company | The Neiman Marcus Group LLC | Duke Energy Carolinas LLC | 7/1/2025 | 7/1/2026 |
| EACX4020584 | Endurance Assurance Corp | The Neiman Marcus Group LLC | State of Massachusetts | 12/31/2025 | 12/31/2026 |
| EACX4020583 | Endurance Assurance Corp | The Neiman Marcus Group LLC | TECO (Tampa Electric) | 9/13/2025 | 9/13/2026 |
| 9825507 | Lexon Insurance Company | The Neiman Marcus Group LLC | SDGE | 8/8/2025 | 8/20/2026 |
| EACX4020582 | Endurance Assurance Corp | The Neiman Marcus Group LLC | Salt River Project | 7/20/2025 | 7/20/2026 |
| EACX140000253 | Endurance Assurance Corp | The Neiman Marcus Group LLC | Long Island Lighting Co | 5/1/2025 | 5/1/2026 |
| EACX4001728 | Endurance Assurance Corp | The Neiman Marcus Group LLC | Florida Power & Light | 7/6/2025 | 7/6/2026 |
| 21C0011FN | Lexon Insurance Company | The Neiman Marcus Group LLC | US Customs - 21C0011FN | 7/30/2025 | 7/30/2026 |

**EXHIBIT C[1]**

**List of Letters of Credit[2]**

| Global Debtor | Beneficiary Name | Amount | Expiration Date | Provider |
|---|---|---|---|---|
| Saks Global Enterprises LLC | Safety National Casualty | $  4,470,000 | 2/27/2026 | Bank of America, N.A. |
| Saks & Company LLC | San Fran Post Street LP | $  4,195,268 | 1/31/2026 | Bank of America, N.A. |
| Saks & Company LLC | Berkley Insurance Company | $  4,250,000 | 6/5/2026 | Bank of America, N.A. |
| SFA Holdings Inc. | Arch Insurance Company Harborside 3 | $     209,845 | 5/5/2026 | Bank of America, N.A. |
| Saks Global Enterprises LLC | Zurich American Insurance Company | $     200,000 | 7/17/2026 | Bank of America, N.A. |
| Saks Global Enterprises LLC | Liberty Mutual Insurance Company | $       66,600 | 10/10/2026 | Bank of America, N.A. |
| LT Twelve Oaks LLC[3] | City of Novi - Treasurers Office | $       10,000 | 10/11/2026 | Bank of America, N.A. |
| Saks Global Enterprises LLC | TR Apparel LLC (The Row) | $  1,586,234 | 7/1/2027 | Bank of America, N.A. |
| Saks.com LLC | OBLC Building D LLC (Olive Branch) | $  3,250,000 | 6/30/2026 | Bank of America, N.A. |
| NMG Holding Company Inc. | Liberty Mutual Insurance Company | $  3,238,830 | 8/31/2026 | Bank of America, N.A. |
| Neiman Marcus Group LLC | Kering Americas Inc. | $  1,500,000 | 5/31/2026 | Bank of America, N.A. |
| Saks Global Enterprises LLC | Hilldun Corporation | $ 27,500,000 | 9/30/2026 | Bank of America, N.A. |
| Saks Global Enterprises LLC | Blackhawk | $  6,100,000 | 10/1/2026 | Bank of America, N.A. |
| Saks Global Enterprises LLC | Fendi | $             36 | 4/30/2026 | Bank of America, N.A. |
| Saks Incorporated | Safety National | $ 17,880,000 | 10/23/2026 | Evolution Credit Partners |
| NMG Holding Company Inc. | Liberty Mutual Insurance Company | $ 12,955,319 | 10/16/2026 | Evolution Credit Partners |
| SFA Holdings Inc. | Arch Insurance Company Harborside 3 | $     839,379 | 10/28/2026 | Evolution Credit Partners |
| Saks Global Enterprises LLC | Zurich American Insurance Company | $     800,000 | 10/23/2026 | Evolution Credit Partners |
| Saks Global Enterprises LLC | Liberty Mutual Insurance Company | $     266,400 | 10/17/2026 | Evolution Credit Partners |

---

[1]   For the avoidance of doubt, the Global Debtors request authorization to honor existing Letters of Credit and renew Letters of Credit, as applicable, regardless of whether the Global Debtors have inadvertently failed to identify a particular Letter of Credit in this **Exhibit C** and any such omitted Letter of Credit is hereby included in the defined term "Letters of Credit" as used in the Order.

[2]   For the avoidance of doubt, in February 2022 Saks Incorporated was renamed SFA Holdings Inc.

[3]   LT Twelve Oaks LLC is a non-Global Debtor affiliate.