## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SAKS GLOBAL ENTERPRISES LLC *et al.*,[1] | Case No. 26-90103 (ARP) |
| Debtors. | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' JOINT <u>EMERGENCY</u> MOTION FOR ENTRY OF
ORDER (I) ESTABLISHING NOTICE AND HEARING PROCEDURES FOR
TRANSFERS OF EQUITY INTERESTS IN DEBTORS AND DECLARATIONS
OF WORTHLESSNESS WITH RESPECT TO EQUITY INTERESTS IN
SAKS GLOBAL HOLDINGS LLC; (II) ESTABLISHING RECORD DATE
FOR NOTICE AND SELL-DOWN PROCEDURES FOR TRANSFERRING
<u>CLAIMS AGAINST THE DEBTORS; AND (III) GRANTING RELATED RELIEF</u>**

**Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (prevailing Central Time) on January 14, 2026.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on January 14, 2026, at 4:00 p.m. (prevailing Central Time) in in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002.**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Pérez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Pérez's home page. The meeting code is "Judge Pérez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Saks.  The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281.  Bradley Arant Boult Cummings LLP is proposed counsel for the following Debtors: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively, the "<u>SO5 Digital Debtors</u>").  Haynes and Boone, LLP and Willkie Farr & Gallagher LLP are proposed counsel for the remaining Debtors (collectively, the "<u>Global Debtors</u>").

> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Pérez's homepage.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Saks Global Enterprises LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"),[2] respectfully represent as follows in support of this motion (the "Motion"):[3]

## RELIEF REQUESTED

1.     The Debtors seek entry of an order, substantially in the form attached hereto (the "Proposed Order"), establishing: (a) notice and hearing procedures that must be satisfied before certain transfers of equity interests in the Debtors (the "Equity Interests") or of any beneficial interest therein, or declarations of worthlessness for U.S. federal or state tax purposes with respect to the equity interests in Saks Global Holdings LLC ("Saks" and such equity interests, the "Saks Equity"), or of any beneficial interest therein are deemed effective; (b) the record date (the "Record Date") for notice and sell-down procedures for transferring any debt claims against the Debtors (collectively, the "Debt Claims"); and (c) granting related relief.  The procedures for transfers of Equity Interests, or claiming a worthless securities deduction with respect to Saks Equity and establishing the Record Date are necessary to protect the potential value of the Debtors' U.S. federal and state tax attributes, including, but not limited to, significant U.S. federal net

---

[2]     For the avoidance of doubt, "Debtors" means, collectively, the Global Debtors and the SO5 Digital Debtors.

[3]     Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the *Declaration of Mark Weinsten in Support of Chapter 11 Petitions and First Day Pleadings*, the *Declaration of Andrew D.J. Hede in Support of SO5 Digital Debtors' Chapter 11 Petitions and First Day Pleadings* (together, the "First Day Declarations"), or the *Global Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Global Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*, each filed concurrently herewith and incorporated by reference.  The First Day Declarations describe in more detail the relationship between the Global Debtors and the SO5 Digital Debtors.

2

operating loss carryforwards (the "NOLs," and collectively with any capital losses, unrealized built-in losses, certain tax credits, disallowed interest deduction carryforwards, and other tax attributes, the "Tax Attributes").

2.     If no restrictions on transferring or claiming worthless securities deductions are imposed by the United States Bankruptcy Court for the Southern District of Texas (the "Court"), such activity could severely limit or even eliminate the Debtors' ability to use their Tax Attributes, which could lead to significant negative consequences for the Debtors, their estates, creditors, stakeholders, and other parties in interest.  Similarly, if the Court does not establish a Record Date in the near term, it is unlikely that the Debtors will be able to implement sell-down procedures enabling them to maximize the value of the Tax Attributes.  To preserve, to the fullest extent possible, the flexibility to maximize the use of the Tax Attributes, the Debtors seek immediate procedural relief that will enable them to closely monitor certain transfers of Equity Interests or certain declarations of worthlessness for U.S. federal or state tax purposes with respect to Saks Equity so as to be in a position to act expeditiously, if necessary, to preserve their Tax Attributes. In addition, the procedures requested herein impact a very limited universe of individuals.

## JURISDICTION AND VENUE

3.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the *Order of Reference to Bankruptcy Judges* of the United States District Court for the Southern District of Texas dated May 24, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion.

4.     Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3

5.      The statutory and legal predicates for the relief requested herein are sections 105(a), 362(a)(3), and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 3001, 6003 and 6004, rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the *Procedures for Complex Cases for the Southern District of Texas*.

## BACKGROUND

6.      On January 13, 2026 (the "Petition Date") and January 14, 2026, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.  The Debtors are operating their businesses and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

8.      No official committee has been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

9.      Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration.

## THE DEBTORS' TAX ATTRIBUTES

10.      A substantial portion of the Debtors' Tax Attributes, including NOLs, are booked at Saks and its subsidiaries that are members of a consolidated group for U.S. federal income tax purposes, of which Saks is the common parent.  Saks is wholly owned by Debtors HBC I LP and Saks Global Investor LP, which together are treated as a single partnership for U.S. federal income tax purposes (the "Parent Partnership").  The equity interests in the Parent Partnership are held by

4

affiliated Debtors HBSFA Holdings, Mercury Aggregator LP, and HBC GP LLC, as well as individual holders or other third parties.  Transfers of Equity Interests could trigger an ownership change of Saks, for U.S. federal income tax purposes, thereby potentially impacting the ability of the Debtors to utilize their Tax Attributes.

11.     Similarly, the acquisition of Debt Claims by creditors after the Petition Date could hinder the Debtors' use of their NOLs and other Tax Attributes.  Accordingly, the Debtors might ultimately seek an order (a "Sell-Down Order") requiring creditors who have acquired Debt Claims during the Chapter 11 Cases entitling them to receive, directly, indirectly, or constructively, more than 4.5% of the stock of the Debtors in connection with the Chapter 11 Cases (collectively, the "Substantial Claimholders"), to sell all or a portion of the Debt Claims acquired during the Chapter 11 Cases to the extent necessary to allow the Debtors to maximize the value of the Tax Attributes.

12.     The Debtors have generated a significant amount of Tax Attributes for U.S. federal income tax purposes.  As of February 1, 2025, the Debtors believe they have approximately $1.68 billion of NOLs (a substantial portion of which are not subject to the limitations set forth in the IRC (defined below)) and $1.74 billion of disallowed interest carryforwards, as well as other valuable Tax Attributes, such as state net operating losses and certain tax credits.  The Debtors' Tax Attributes are valuable assets because the Debtors generally can carry forward their Tax Attributes to reduce or eliminate their income tax liability, thereby potentially freeing up funds to meet working capital requirements and service debt.  In particular, the Tax Attributes may be available to the Debtors to offset taxable income generated by ordinary course activity and other transactions completed during the course of these Chapter 11 Cases.  Additionally, the Debtors can carry forward the NOLs, disallowed interest and credits to reduce their future tax liability,

thereby potentially recovering cash for the benefit of their estates.  See 26 U.S.C. §§ 39, 163(j), 172(b).  Accordingly, while the value of the Debtors' Tax Attributes is contingent upon the amount of the Debtors' taxable income that may be offset by the Tax Attributes before they expire, the Debtors' NOLs and other Tax Attributes could translate into significant future tax savings for the Debtors.

13.     Absent any intervening limitations, the Tax Attributes are valuable assets that could substantially reduce the Debtors' U.S. federal income tax liability for current and future periods. The Tax Attributes, therefore, could translate into future cash and tax savings over time, and any such savings could enhance the Debtors' cash position for the benefit of the Debtors and all parties in interest.  Accordingly, the value of the Tax Attributes will inure to the benefit of all of the Debtors' stakeholders.

14.     Transfers of Debt Claims could be a hurdle to the Debtors' estates realizing the full value of the Tax Attributes.  That is because, as explained below, a company's use of its NOLs and other Tax Attributes may be limited if it undergoes an "ownership change" as defined under section 382 of title 26 of the United States Code ("Section 382"), the Internal Revenue Code of 1986, as amended (the "IRC").  However, the IRC allows a company to use its NOLs and other Tax Attributes (subject to certain exceptions) notwithstanding an ownership change if the change occurs under a plan of reorganization that results in historic shareholders and certain creditors owning a sufficient amount of the reorganized entity's equity, subject to certain requirements. Currently, the Debtors do not know to what extent their creditors may receive equity under a plan or whether those creditors meet the IRC's requirements.  But the Debtors want to prevent transfers of Debt Claims during these cases from resulting in their creditors no longer meeting these requirements for the benefit of their estates.  As a result, in connection with a plan of

reorganization, the Debtors might seek a Sell-Down Order to preserve their Tax Attributes.  This Motion is intended to provide notice of that possibility by establishing the Record Date and ensure that the Debtors have notice of, and can object to, any potential transfers of Equity Interests or declarations of worthlessness related to Saks Equity that could potentially impact the Debtors' ability to preserve and utilize the Tax Attributes.

## POTENTIAL LIMITATIONS ON THE USE
## OF THE DEBTORS' TAX ATTRIBUTES

15.     As a general matter, if a corporation undergoes an "ownership change," Section 382 could severely limit or eliminate such corporation's ability to use its NOLs and certain other tax attributes to offset future taxable income.  Under Section 382, an ownership change occurs when the percentage, by value, of a company's equity held by one or more persons holding five percent or more of the securities (in certain cases, taking into account Options to acquire such securities, as defined below) (the "5% Holders") has increased by more than fifty percentage points over the lowest percentage of equity owned by such holders at any time during the preceding three-year period or since the last ownership change, as applicable (the "Testing Period").[4]  If there has been a prior ownership change, the Testing Period for determining whether another ownership change has occurred begins on the first day following the date of the prior ownership change. Section 383 of the IRC ("Section 383") imposes a similar limitation on certain tax credits of a

---

[4]     For example, assume (a) an individual ("A") owns 50.1% of the stock of corporation XYZ ("XYZ") and (b) A sells her 50.1% interest in XYZ to another individual ("B"), who currently owns 5% of XYZ's stock.  Under Section 382, an ownership change has occurred upon B's acquisition of A's 50.1% interest in XYZ because the percentage of XYZ stock held by B has increased more than fifty percentage points (from 5% to 55.1%) during the Testing Period. The same result would follow even if B owned no XYZ stock prior to the transaction with A because B both becomes a "5-percent shareholder" and increases the percentage of XYZ stock B holds by more than fifty percentage points during the Testing Period. To be clear, a "5-percent shareholder" increasing its holding by 50 percent (i.e., from 5% to 7.5%) as opposed to 50 percentage points would not, in and of itself, result in an "ownership change" under Section 382.  Any subsequent ownership change with respect to XYZ would be determined based only on equity transfers that occur subsequent to the ownership change resulting from the transaction between A and B described immediately above.

7

corporation. For clarity, this discussion refers only to Section 382, but the rules, principles, and policies discussed therein are generally applicable to the Section 383 limitation on a corporation's use of credits after an ownership change and are incorporated by reference into Section 383 by the IRC and the Treasury Regulations promulgated thereunder. See IRC § 383(e); 26 C.F.R. § 1.383-1(g).

16.     An "ownership change" can also occur as a result of a "worthless securities deduction" claimed by any "50-percent shareholder." A 50-percent shareholder is any person that held Beneficial Ownership (as defined herein) of fifty percent or more of a corporation's stock "at any time during the 3-year period ending on the last day of the taxable year" with respect to which the worthless securities deduction is claimed. IRC § 382(g)(4)(D). If the 50-percent shareholder still owns the corporation's stock at the end of the year, Section 382 essentially treats the person as newly purchasing the stock on the first day of the next taxable year. The deemed purchase causes an "ownership change" for the purpose of Section 382, because the 50-percent shareholder would be deemed to have a fifty percentage point increase in its stock ownership.

17.     The general purpose of Section 382 is to prevent a company with taxable income from reducing its tax obligations by acquiring control of another corporation with NOLs, unrealized built-in losses ("Built-in Losses") or certain other tax attributes. To achieve this objective, Section 382 limits the amount of taxable income that can be offset by a pre-change loss to an amount equal to the product of the long-term tax-exempt rate (as published monthly by the U.S. Department of the Treasury) as of the ownership change date and the value of the equity of the loss corporation immediately before the ownership change (a "Section 382 Limitation").[5]

---

[5]     For ownership changes occurring in January 2026, the applicable long-term tax-exempt rate will be 3.51% percent. If a corporation has a "net unrealized built-in gain" in its assets as of the time of the ownership change, the Section 382 Limitation may be increased in certain circumstances. If a corporation has a "net unrealized built-

Built-in Losses recognized during the five-year period after the ownership change may be subject to similar limitations.

## PROPOSED PROCEDURES FOR TRANSFERS OF EQUITY INTERESTS AND DECLARATIONS OF WORTHLESSNESS WITH RESPECT TO EQUITY INTERESTS

18.     By establishing procedures for continuously monitoring transfers of Equity Interests and declarations of worthlessness of Saks Equity, the Debtors can preserve their ability to seek substantive relief at the appropriate time, particularly if it appears that additional transfers or declarations of worthlessness may jeopardize the Debtors' use of their Tax Attributes. Accordingly, the Debtors request that the Court enter the Proposed Order establishing the below procedures:[6]

### *Procedures for Transferring Equity Interests*

a.     Any purchase, sale, or other direct or indirect transfer of Equity Interests (including Options to acquire such interests), whether voluntary or involuntary (a "Transfer") in violation of the procedures set forth herein (including the notice requirements set forth in paragraphs 24 and 25) shall be null and void *ab initio* as an act in violation of the automatic stay under sections 105(a) and 362 of the Bankruptcy Code.

b.     Any person or entity (as defined in Treasury Regulations Section 1.382-3(a)(1)) (an "Entity") who currently is or becomes a Substantial Holder (as defined below) shall file with the Court, and serve on counsel to the Debtors and the Notice Parties (as defined herein), a notice of such status, in the form of **Exhibit A-1** attached to the Proposed Order on or before the later of (i) twenty calendar days after the date of the Procedures Notice (as defined below in paragraph 24) and (ii) ten calendar days after becoming a Substantial Holder.

c.     At least fourteen calendar days prior to effectuating any Transfer of Beneficial Ownership (as defined below) of any Equity Interests (including

---

in loss" in its assets as of the time of the ownership change, any recognized built-in losses during the five-year period beginning on the date of the ownership change will be subject to the Section 382 Limitation.

[6]     With respect to the procedures set forth herein, the Debtors request that the Court permit the Debtors to waive any and all restrictions, stays, and notification procedures contained in this Motion or in any order entered with respect hereto should the Debtors conclude in their sole discretion that any such restriction, stay or notification procedure is not necessary to protect their Tax Attributes; provided, however, the Debtors shall provide notice of any such waiver to the U.S. Trustee in writing within five business days.

Options to acquire such interests, as defined in paragraph 19 below) that would result in an increase in the amount of Equity Interests beneficially owned by a Substantial Holder or would result in a person or Entity becoming a Substantial Holder, such Substantial Holder (or person or Entity that may become a Substantial Holder) shall file with the Court, and serve on counsel to the Debtors and the Notice Parties, advance written notice, in the form of **Exhibit A-2** attached to the Proposed Order of the intended Transfer of Beneficial Ownership (including Options to acquire such interests).

d.      At least fourteen calendar days prior to effectuating any Transfer of Equity Interests (including Options to acquire such interests) that would result in a decrease in the amount of Equity Interests beneficially owned by a Substantial Holder or would result in a person or Entity ceasing to be a Substantial Holder, such Substantial Holder shall file with this Court, and serve on counsel to the Debtors and the Notice Parties, advance written notice, in the form of **Exhibit A-3** attached to the Proposed Order, of the intended Transfer of Equity Interests (the notices required to be filed and served under paragraph (c) and this paragraph (d), each a "Notice of Proposed Transfer").

e.      The Debtors and the Notice Parties shall have seven calendar days after receipt of a Notice of Proposed Transfer to file with this Court and serve on such Substantial Holder (or person or Entity that may become a Substantial Holder) an objection to any proposed Transfer of Equity Interests described in the Notice of Proposed Transfer on the grounds that such Transfer may adversely affect the Debtors' ability to utilize their Tax Attributes. If the Debtors or Notice Parties file an objection, such transaction will not be effective unless approved by a final and non-appealable order of the Court. If the Debtors or Notice Parties do not object within such seven-day period, such transaction may proceed solely as set forth in the Notice of Proposed Transfer. Further transactions within the scope of this paragraph (e) must be the subject of additional notices as set forth herein, with an additional seven-day waiting period.

### *Procedures for Declarations of Worthlessness of Saks Equity*

a.      Any person or Entity that is currently or that becomes a 50-Percent Holder must file with the Court and serve upon counsel to the Debtors and the Notice Parties, a notice of status (the "Notice of Status") as a 50-Percent Holder, in the form of **Exhibit A-5** attached to the Proposed Order, on or before the later of (i) twenty calendar days after the date of the Procedures Notice, and (ii) ten calendar days after becoming a 50-Percent Holder; provided that, for the avoidance of doubt, the other procedures set forth herein shall apply to any 50-Percent Holder even if no Notice of Status as a 50-Percent Holder has been filed.

b.      At least fourteen days prior to filing any U.S. federal or state tax return, or any amendment to such a return, that claims any deduction for worthlessness of Saks Equity for a tax year ending before the Debtors' emergence from chapter 11, such 50-Percent Holder must file with the Court and serve upon counsel to the Debtors and the Notice Parties a Declaration of Intent to Claim a Worthless Securities Deduction, substantially in the form of **Exhibit A-6** attached to the Proposed Order.

c.      The Debtors and Notice Parties shall have seven calendar days after receipt of a Declaration of Intent to Claim a Worthless Securities Deduction to file with the Court and serve on such 50-Percent Holder an objection to any proposed claim of worthlessness described in the Declaration of Intent to Claim a Worthless Securities Deduction on the grounds that such claim might adversely affect the Debtors' ability to utilize their Tax Attributes.

d.      If the Debtors or Notice Parties timely object to the proposed claim of worthlessness, the filing of the tax return or amendment thereto with such claim will not be permitted unless approved by a final and non-appealable order of the Court, unless the Debtors withdraw such objection.

e.      If the Debtors or Notice Parties do not object to the proposed claim of worthlessness within such seven-day period, the filing of the return or amendment with such claim will be permitted solely as described in the Declaration of Intent to Claim a Worthless Securities Deduction. Additional returns and amendments within the scope of this section must be the subject of additional notices as set forth herein, with an additional seven-day waiting period.

19.    For purposes of the procedures set forth above:

a.      A "Substantial Holder" is any person or entity (as defined in Treasury Regulations Section 1.382-3(a)(1)) which owns Equity Interests and has Beneficial Ownership of at least 4.5% of Saks Equity (equal to, as of December 1, 2025, approximately 12,038,524 units in Saks based on 267,522,753 units outstanding).

b.      A "50-Percent Holder" is any person or Entity that any time since the Petition Date has owned fifty percent or more of the Beneficial Ownership of Saks Equity (determined in accordance with section 382(g)(4)(D) of the IRC and the applicable Treasury Regulations thereunder).

c.      "Beneficial Ownership" of Saks Equity shall be determined in accordance with applicable rules under Section 382, Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct, indirect, and constructive ownership (e.g., a holding company would be considered to beneficially own all equity interests

11

owned or acquired by its subsidiaries), (ii) ownership by the holder's family members and persons acting in concert with the holder to make a coordinated acquisition of stock, and (iii) ownership of an Option to acquire Equity Interests or Saks Equity, but only to the extent such Option is treated as exercised under Treasury Regulations Section 1.382-4(d).

d.   An "Option" to acquire a security includes all interests described in Treasury Regulations Section 1.328-4(d)(9), including any contingent purchase, warrant, convertible debt, put, security subject to risk of forfeiture, contract to acquire security, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

## RECORD DATE AND SUMMARY OF POTENTIAL SELL-DOWN PROCEDURES

20.   The Debtors will determine whether to seek a Sell-Down Order once they determine that compliance with the Section 382(l)(5) Exception (as defined below) requires Substantial Claimholders to reduce their holdings in connection with the proposed plan of reorganization.  This motion therefore does not request entry of a Sell-Down Order, but rather only seeks to establish the Record Date, which the Debtors propose as the date of the entry of the Proposed Order.

21.   In the event the Debtors ultimately seek entry of a Sell-Down Order, the Debtors anticipate requesting that the Court approve procedures requiring a person or entity that has acquired Claims after the Record Date entitling that claimholder to receive, directly, indirectly, or constructively, more than 4.5% of the stock in the Debtors in connection with a debt-for-stock recapitalization (the "Threshold Amount") to provide the Debtors with limited information regarding their Debt Claims, including the date(s) such Debt Claims were acquired. The amount of Debt Claims held by a claimholder as of the Record Date would constitute the "Protected Amount."  The Debtors would not ask that Substantial Claimholders be required to sell-down Debt Claims below the greater of the Threshold Amount or the Protected Amount.  Therefore, the Sell-Down Order would only impact persons or entities that acquire Debt Claims above the Threshold Amount after the Record Date.

22.     If the Debtors seek entry of a Sell-Down Order, the Debtors would seek to require Substantial Claimholders to provide information on their Debt Claims within a reasonable time after requesting such information.  Based on updated holdings information, the Debtors would determine to what extent, if any, Substantial Claimholders must sell-down a portion of their holdings so that the Debtors qualify for the Section 382(l)(5) Exception (as defined below).[7]

23.     Establishing the Record Date at this early stage of the Chapter 11 Cases will provide claimholders with notice that any Debt Claims purchased after the Record Date may be subject to the sell-down procedures.

### THE PROCEDURES NOTICE AND THE RECORD DATE NOTICE

24.     To ensure parties in interest receive appropriate notice of these procedures and the Record Date, the Debtors request that the Court approve the following notice provisions.  As soon as reasonably practicable following entry of the Proposed Order granting this Motion, the Debtors propose to send, or cause to be sent, notices in substantially the forms attached to the Proposed Order as **Exhibit A-4** (the "Procedures Notice") and **Exhibit B-1** (the "Record Date Notice") to (a) the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"); (b) the United States Attorney's Office for the Southern District of Texas; (c) those creditors holding the thirty largest unsecured claims against the Debtors' estates; (d) counsel to the DIP Agents; (e) counsel to the DIP Lenders; (f) the Internal Revenue Service; (g) counsel to any statutory committee appointed in these Chapter 11 Cases; (h) with respect to the Procedures Notice, each holder of Equity Interests, including Saks Equity; and (i) with respect to the Record

---

[7]     If the Debtors seek entry of a Sell-Down Order, the Debtors would provide adequate notice and an opportunity, to the extent reasonably practicable, for claimholders to sell-down their Claims without triggering an unreasonable adverse impact on the value of such Claims.

Date Notice, the known registered holders of Debt Claims (with instructions to serve down to the beneficial holders of Debt Claims, as applicable) (collectively, the "Notice Parties").

25.     Any person or entity (or broker or agent acting on their behalf) who sells at least 4.5% of all issued and outstanding Equity Interests (or an Option with respect thereto) to another person or entity shall be required to provide notification of the existence of the Proposed Order, as applicable, or their contents to such purchaser (or any broker or agent acting on their behalf), to the extent reasonably feasible.  The Procedures Notice and the Record Date Notice will provide information as to the procedures to be followed in transferring the Equity Interests and the Record Date, respectively.

26.     To the extent confidential information is required in any declaration described in the procedures, such confidential information may be filed and served in redacted form; provided that any such declarations served on the Debtors shall not be in redacted form.  The Debtors shall keep all information provided in such declarations strictly confidential and shall not disclose the contents thereof to any person except to the extent (a) necessary to respond to a petition or objection filed with the Court, (b) otherwise required by law, or (c) that the information contained therein is already public; provided that the Debtors may disclose the contents thereof to their professional advisors, who shall keep all such declarations strictly confidential and shall not disclose the contents thereof to any other person, subject to further Court order.  If confidential information is necessary to respond to an objection filed with the Court, such confidential information shall be filed under seal or in a redacted form.

27.     The Debtors also seek authorization to waive, in writing and in their sole and absolute discretion, any and all restrictions, stays, and notification procedures contained in the

Proposed Order; <u>provided</u>, <u>however</u>, that the Debtors will provide notice of any such waiver to the U.S. Trustee in writing within five business days thereafter.

**BASIS FOR RELIEF REQUESTED**

**I.      The Significance of the Debtors' Tax Attributes and the Provisions of Section 382**

28.      As a result of past and current operations, the Debtors have accrued significant NOLs available to offset taxable income.  These NOLs, along with any Built-in Losses and other favorable Tax Attributes the Debtors currently hold, may increase during the course of these Chapter 11 Cases and could translate into significant future U.S. federal income tax savings for the Debtors.  As discussed above, Section 172(b) of the IRC permits corporations to carry forward NOLs to offset future taxable income, thereby significantly improving such corporations' cash position in the future.  Absent the relief requested herein, however, transfers of Equity Interests or declarations of worthlessness with respect to Saks Equity during the pendency of these Chapter 11 Cases could severely limit the Debtors' ability to utilize their Tax Attributes, to the potential detriment of their creditors.

29.      As described above, Section 382 limits the amount of taxable income that can be offset by a corporation's NOLs and Built-in Losses in taxable years (or portions thereof) following an ownership change.  If an ownership change were to occur during the course of these Chapter 11 Cases, Section 382 would limit the amount of taxable income that the Debtors could offset by their pre-change losses in taxable years (or portions thereof) to an annual amount equal to the value of the corporation prior to the ownership change multiplied by the long-term tax-exempt rate.  <u>See</u> 26 U.S.C. § 382(b).  Pre-change losses would include (a) NOLs and (b) Built-in Losses (as defined in IRC § 382(h)(3)).  This formulaic limitation under Section 382 can severely restrict a company's ability to use pre-change losses because the value of the equity of a distressed company may be quite low.

15

30.     If holders of Equity Interests transfer their interests, or if holders of Saks Equity make claims of worthlessness, such transfers or claims of worthlessness may trigger an ownership change that would not fall within the ambit of special relief provisions applicable to an ownership change resulting from a confirmed chapter 11 plan because such an ownership change would not occur pursuant to a confirmed bankruptcy plan, and therefore would not be eligible for special bankruptcy relief provisions of Section 382(l)(5) or Section 382(l)(6), as discussed in further detail below.   An ownership change occurring during the pendency of these Chapter 11 Cases is of particular concern because it could likely result in a Section 382 Limitation of zero or nominal amount.   Subsequent to such an ownership change, the Debtors' ability to use their NOLs both during and after the pendency of these Chapter 11 Cases could be limited.

31.     The Debtors seek the ability to monitor and object to transfers of Equity Interests and declarations of worthlessness related to Saks Equity so that they may prevent an ownership change during the pendency of these Chapter 11 Cases, preserving their ability to utilize their NOLs to offset taxable income and any potential prepetition tax claims that may be asserted.   In short, the Debtors seek to maximize their ability to reduce U.S. federal income taxes by offsetting their income earned during these Chapter 11 Cases and after confirmation of a chapter 11 plan with their current Tax Attributes.

## II.     Special Section 382 Bankruptcy Rules

32.     To qualify for the bankruptcy relief provisions set forth in sections 382(l)(5) and (l)(6) of the IRC, an ownership change must occur pursuant to the consummation of a plan of reorganization.   Under section 382(l)(5), a Section 382 Limitation will not apply to an ownership change resulting from consummation of a chapter 11 plan, provided that under the plan, the debtor's pre-change shareholders (i.e., persons or entities who owned the debtor's stock immediately before such ownership change) or certain qualified creditors emerge from the

reorganization owning at least 50% of the total value and voting power of the debtor's stock immediately after the ownership change as a result of being Holders or qualified creditors immediately before such change.  Section 382(l)(6) provides that if a corporation undergoes an ownership change pursuant to a plan of reorganization in chapter 11 and section 382(l)(5) does not apply (either because the corporation elects out of that provision or because its requirements are not satisfied), then under section 382(l)(6), the value of the equity of the corporation for purposes of calculating the Section 382 Limitation shall reflect the increase (if any) in value of the old loss corporation resulting from any surrender or cancellation of creditors' claims in the transaction. Thus, assuming the value of the Debtors' equity increases as a result of a reorganization, section 382(l)(6) will provide for a higher annual limitation than would result under the general rules of Section 382 and could allow the Debtors to use a greater portion of their Tax Attributes to offset any post-change income.  Accordingly, it is in the best interests of the Debtors and their estates to obtain the requested relief so as to prevent an ownership change prior to consummation of a chapter 11 plan in these Chapter 11 Cases.

33.    Additionally, Section 382 provides significant relief to a debtor in the context of an ownership change effectuated through a debt-for-stock recapitalization *pursuant to* a confirmed chapter 11 plan and certain requirements are satisfied.  In such case, a debtor corporation is not subject to the general limitation imposed by Section 382 for an ownership change if, as a result of the transactions contemplated by a bankruptcy plan, historic stockholders or the corporation's "qualified creditors" (or both) own at least 50% of the corporation's stock (measured by value and voting power) (the "Section 382(l)(5) Exception").

34.    Under section 382(l)(5)(E) of the IRC, a "qualified creditor" is generally one who (a) has held its claim continuously since at least 18 months prior to the date of the bankruptcy

filing or (b) has, at all times, held a claim incurred in the ordinary course of the debtor's trade or business since the claim was incurred. Importantly, under Treasury Regulations Section 1.382-9(d)(3), a debtor generally may "treat indebtedness as always having been owned by the beneficial owner of the indebtedness immediately before the ownership change if the beneficial owner is not, immediately after the ownership change, either a 5-percent shareholder or an entity through which a 5-percent shareholder owns an indirect ownership interest" in the debtor. In other words, such a claimholder will generally be considered a "qualified creditor" for purposes of the Section 382(1)(5) Exception unless the particular claim that it holds neither arose in the ordinary course of the issuing debtor's business nor was in existence 18 months before the filing of the bankruptcy petition.

35.     Accordingly, because an ownership change likely would occur for these purposes in the context of a debt-for-stock recapitalization, the Debtors may need to seek the entry of a Sell-Down Order to enable them to meet the requirements for, and benefit from, the Section 382(l)(5) Exception, if such exception is available. So that creditors who may be impacted by a Sell-Down Order have adequate notice and to maximize the Debtors' ability to preserve their Tax Attributes in connection with a debt-for-stock recapitalization, the Debtors seek to set and provide notice of the Record Date.

## III.    Tax Attributes Are Property of the Debtors' Estates and Are Entitled to Court Protection

36.     Courts have uniformly held that a debtor's NOLs constitute property of the estate under section 541 of the Bankruptcy Code and, as such, courts have the authority to implement certain protective measures to preserve the NOLs. The seminal case articulating this rule is In re Prudential Lines, Inc., in which the United States Bankruptcy Court for the Southern District of New York held that a "debtor's potential ability to utilize NOLs is property of an estate."

In re Prudential Lines, Inc., 107 B.R. 832, 839 (Bankr. S.D.N.Y. 1989), aff'd, 119 B.R. 430 (S.D.N.Y. 1990), aff'd, 928 F.2d 565 (2d Cir. 1991), cert. denied 502 U.S. 821 (1991); see also In re Delta Air Lines, Inc., No. 05-17923 (PCB) (Bankr. S.D.N.Y. Sept. 16, 2005) [Docket No. 195] (finding net operating losses are property of debtors' estate); In re Forman Enters., Inc., 273 B.R. 408, 415 (Bankr. W.D. Pa. 2002) (same); In re White Metal Rolling & Stamping Corp., 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them.").  Because the Debtors' NOLs are property of their estates, the Court has the authority under section 362 of the Bankruptcy Code to enforce the automatic stay by restricting the transfer of equity securities in the Debtors that could jeopardize the existence or value of this asset.  See In re Phar-Mor, Inc., 152 B.R. 924, 927 (Bankr. N.D. Ohio 1993) (holding that section 362 of the Bankruptcy Code prohibited the sale of stock in the debtors as an exercise of control of the debtors' NOLs, which were property of the debtors' estates; In re Grossman's, Inc., No. 97-695 (PJW), 1997 WL 33446314, at *1 (Bankr. D. Del. Oct. 9, 1997) (holding that net operating losses were property of debtors' estates and protected by automatic stay).

37.      The Debtors' Tax Attributes are potentially valuable assets of their estates that will inure to the benefit of their stakeholders.  Unrestricted transfers of Equity Interests or declarations of worthlessness with respect to Saks Equity with no advance warning of such transfers or declarations of worthlessness jeopardizes these assets and could impair the value of the Debtors' estates.  The Debtors respectfully submit that the Proposed Order will play an important role in the Debtors' success both during the pendency of, and upon emergence from, their Chapter 11 Cases, and there is an immediate need to establish the notice and hearing provisions regarding transfers of Equity Interests and declarations of worthlessness with respect to Saks Equity.

## IV.     The Requested Relief Is Narrowly Tailored

38.     The requested relief is narrowly tailored.  *First*, the procedures do not bar all transfers of Equity Interests.  At this early juncture, the Debtors seek to establish procedures enabling them only to monitor those types of transfers of Equity Interests that pose a serious risk under the Section 382 ownership change test to preserve their ability to seek substantive relief if it appears that a proposed trade of Equity Interests will jeopardize the use of their Tax Attributes. The procedures requested by the Debtors in this Motion would permit most transfers in Equity Interests to continue subject only to Bankruptcy Rules 3001(e) and 3002 and applicable securities, corporate, and other laws.

39.     *Second*, setting the Record Date would not constitute approval of the Sell-Down Order or any sell-down procedures, nor would it restrict trading of Debt Claims.  Rather, the requested relief simply would provide notice to holders of Debt Claims and claims traders (a) of the Record Date, (b) that the Threshold Amounts will be measured as of the Record Date, and (c) that the Debt Claims may be subject to sell-down if the Debtors determine that a Sell-Down Order is necessary to best preserve the value of the Tax Attributes.  If the Debtors determine that a Sell-Down Order is necessary, the Debtors will file a separate motion requesting entry of a Sell-Down Order applicable to certain Debt Claims traded on or after the Record Date.

40.     The foregoing notice procedures satisfy due process and the strictures of Bankruptcy Rule 9014 by providing the affected parties with notice and an opportunity to object and attend a hearing.  See, e.g., Flynn v. Eley (In re Colorado Mountain Cellars, Inc.), 226 B.R. 244, 246 (D. Colo. 1998) (noting that a hearing is not required to satisfy Bankruptcy Rule 9014). Furthermore, the proposed notice procedures protect the due process rights of the parties in interest without unnecessarily exposing the Debtors' estates to unwanted administrative expenses.

**V.      The Requested Relief Is Necessary to Avoid Irreparable Harm to the Debtors**

41.      Once a Tax Attribute is limited under Section 382, its use may be limited forever. The relief sought herein is necessary to avoid an irrevocable loss or reduction in the availability of the Tax Attributes and the irreparable harm which could be caused by unrestricted transfers of Equity Interests or declarations of worthlessness with respect to Saks Equity and the Debtors' resulting inability to offset taxable income freely with their Tax Attributes.

42.      If the Court does not establish a Record Date in the near term, the Debtors may not be able to implement sell-down procedures enabling them to maximize the value of the Tax Attributes.  Regardless of whether the Debtors ever seek a Sell-Down Order, setting the Record Date now is critical to protect the Debtors' option to choose to preserve the value of the Tax Attributes through procedures that require holders to sell Debt Claims later in the Chapter 11 Cases.  Thus, the Debtors and their estates could suffer immediate and irreparable harm without the requested relief.  If the Court does not grant the relief sought in this Motion, the Record Date would not be established for trading in Debt Claims, risking the Debtors' ability to use their Tax Attributes to maximize value of their estates.  The Debtors accordingly request that the Record Date be approved immediately on an emergency basis.

## EMERGENCY CONSIDERATION

43.      Pursuant to Local Rule 9013-1, the Debtors request emergency consideration of this Motion under Bankruptcy Rule 6003.  Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the filing of the petition regarding a motion to "use, sell, lease, [or otherwise] incur an obligation regarding property of the estate" only if such relief "is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34,

36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001). For the reasons discussed above and in the First Day Declaration, an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. The requested relief is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of their operations, and maximize the value of their estates for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief "is needed to avoid immediate and irreparable harm" as contemplated by Bankruptcy Rule 6003, and, as a result, the Debtors request that the Court approve the relief requested in this Motion on an emergency basis.

## **WAIVER OF REQUIREMENTS OF BANKRUPTCY RULE 6004**

44. To successfully implement the relief the Debtors request in this Motion, the Debtors also request that the Court waive the notice requirements of Bankruptcy Rule 6004(a) and the stay imposed by Bankruptcy Rule 6004(h) to the extent applicable to the requested relief. As discussed above, the relief requested herein must be granted without delay in order for the Debtors to continue operating their businesses and for preservation of the estates. Therefore, the Debtors respectfully request that the notice and stay requirements imposed by Bankruptcy Rules 6004(a) and 6004(h) be waived.

## **NOTICE**

45. Notice of this Motion has been or will be provided to: (a) the U.S. Trustee; (b) the United States Attorney's Office for the Southern District of Texas; (c) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates; (d) counsel to DIP Lenders; (e) counsel to the DIP Agents; (f) counsel to the SO5 Digital Debtors' term loan lender; (g) the Internal Revenue Service; (h) each holder of Equity Interests, including Saks Equity; and (i) the known registered holders of Debt Claims. In light of the nature of the relief requested herein, the

Debtors submit that no other or further notice is necessary.  No previous motion for the relief sought herein has been made to the Court or any other court.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders,

granting the relief requested herein and such other and further relief as is just and proper.

Houston, Texas
Dated: January 14, 2026

*/s/ Kelli Stephenson Norfleet*

| | |
|---|---|
| **HAYNES AND BOONE, LLP** | **WILLKIE FARR & GALLAGHER LLP** |
| Kelli Stephenson Norfleet (TX Bar No. 24070678) | Debra M. Sinclair (*pro hac vice* pending) |
| Kenric D. Kattner (TX Bar No. 11108400) | Robin Spigel (*pro hac vice* pending) |
| Arsalan Muhammad (TX Bar No. 24074771) | Allyson B. Smith (*pro hac vice* pending) |
| Kourtney P. Lyda (TX Bar No. 24013330) | Betsy L. Feldman (*pro hac vice* pending) |
| David Trausch (TX Bar No. 24113513) | Jessica D. Graber (*pro hac vice* pending) |
| 1221 McKinney Street, Suite 4000 | 787 Seventh Avenue |
| Houston, TX 77010 | New York, NY 10019 |
| Telephone:  (713) 547 2000 | Telephone:  (212) 728-8000 |
| Facsimile:  (713) 547 2600 | Facsimile:  (212) 728-8111 |
| Email:  kelli.norfleet@haynesboone.com | Email:  dsinclair@willkie.com |
|   kenric.kattner@haynesboone.com |   rspigel@willkie.com |
|   arsalan.muhammad@haynesboone.com |   absmith@willkie.com |
|   kourtney.lyda@haynesboone.com |   bfeldman@willkie.com |
|   david.trausch@haynesboone.com |   jgraber@willkie.com |

-and-

Jennifer J. Hardy (TX Bar No. 24096068)
600 Travis Street
Houston, TX 77002
Telephone:  (713) 510-1766
Facsimile:  (713) 510-1799
Email:   jhardy2@willkie.com

-and-

Ryan Blaine Bennett (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, IL 60654
Telephone:  (312) 728-9123
Facsimile:  (312) 728-9199
Email:   rbennett@willkie.com

| | |
|---|---|
| *Proposed Co-Counsel to the Global Debtors* | *Proposed Co-Counsel to the Global Debtors* |
| *and Global Debtors in Possession* | *and Global Debtors in Possession* |

24

*/s/ Jarrod B. Martin*

**BRADLEY ARANT BOULT
CUMMINGS  LLP**
Jarrod B. Martin (TX Bar No. 24070221)
Michael K. Riordan (TX Bar No. 24070502)
600 Travis Street, Suite 5600
Houston, TX 77002
Telephone:          (713) 576-0300
Facsimile:          (713) 547-0301
Email:     jbmartin@bradley.com
                mriordan@bradley.com

-and-

James Bailey (TX Bar No. 24108289)
1819 Fifth Avenue N.
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 488-6913
Email: jbailey@bradley.com

*Proposed Counsel to the SO5 Digital Debtors and
SO5 Digital Debtors in Possession*

**Certificate of Accuracy**

In accordance with Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency with respect to the Global Debtors are true and accurate to the best of my knowledge.

*/s/ Kelli Stephenson Norfleet*
Kelli Stephenson Norfleet

**Certificate of Accuracy**

In accordance with Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency with respect to the SO5 Digital Debtors are true and accurate to the best of my knowledge.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

**Certificate of Service**

I certify that on the date hereof, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas. Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' claims agent.

*/s/ Kelli Stephenson Norfleet*
Kelli Stephenson Norfleet