IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>SAKS GLOBAL ENTERPRISES LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-90103 (ARP)<br><br>(Joint Administration Requested) |

**DEBTORS' JOINT FIRST
OMNIBUS MOTION FOR ENTRY
OF ORDER, PURSUANT TO SECTIONS
105(a), 365(a), AND 554 OF THE BANKRUPTCY
CODE, AUTHORIZING DEBTORS TO (I) REJECT
CERTAIN (A) UNEXPIRED LEASES OF NONRESIDENTIAL
REAL PROPERTY AND (B) EXECUTORY CONTRACTS, EFFECTIVE
AS OF THE PETITION DATE; AND (II) ABANDON PERSONAL PROPERTY**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **ANY PARTY RECEIVING THIS MOTION SHOULD LOCATE ITS NAME AND ITS REJECTED LEASE OR REJECTED CONTRACT IDENTIIFED ON SCHEDULE 1 OR SCHEDULE 2, RESPECTIVELY, TO THE PROPOSED ORDER ATTACHED HERETO.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Saks. The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281. Bradley Arant Boult Cummings LLP is proposed counsel for the following Debtors: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively, the "SO5 Digital Debtors"). Haynes and Boone, LLP and Willkie Farr & Gallagher LLP are proposed counsel for the remaining Debtors (collectively, the "Global Debtors").

Saks Global Enterprises LLC and its debtor affiliates, as debtors and debtors in possession in the above captioned cases (collectively, the "Debtors"),[2] respectfully represent as follows in support of this motion (the "Motion"):[3]

## RELIEF REQUESTED

1. The Debtors request entry of an order, substantially in the form attached hereto (the "Proposed Order"), authorizing the Debtors to (a) reject, effective as of January 13, 2026 (the "Petition Date"), those certain (i) unexpired leases for non-residential real property, including, without limitation, any amendments, modifications, subleases, termination agreements, Subordination, Non-Disturbance, and Attornment Agreement, or other ancillary documents related thereto, set forth on **Schedule 1** to the Proposed Order (such leases, collectively, the "Rejected Leases"), and (ii) executory contracts set forth on **Schedule 2** to the Proposed Order (such contracts, collectively, the "Rejected Contracts" and, together with the Rejected Leases, the "Rejected Agreements"), and (b) abandon any personal property of the Debtors, including, but not limited to, furniture, fixtures, and equipment (collectively, the "Personal Property") that remains, as of the Petition Date, in any of the Global Debtors' locations they previously leased pursuant to the Rejected Leases (collectively, the "Rejected Premises") to the extent the Rejected Agreements were not already terminated as of the Petition Date and are subject to assumption or rejection under section 365 of the Bankruptcy Code.

---

[2] For the avoidance of doubt, "Debtors" means, collectively, the Global Debtors and the SO5 Digital Debtors.

[3] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the *Declaration of Mark Weinsten in Support of Chapter 11 Petitions and First Day Pleadings*, the *Declaration of Andrew D.J. Hede in Support of SO5 Digital Debtors' Chapter 11 Petitions and First Day Pleadings* (together, the "First Day Declarations"), or the *Global Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Global Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*, each filed concurrently herewith and incorporated by reference. The First Day Declarations describe in more detail the relationship between the Global Debtors and the SO5 Digital Debtors.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas (the "Court"), entered May 24, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Court's entry of a final order by the Court in connection with this Motion.

3. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief sought herein are sections 105(a), 365, and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 6004, 6006, and 6007, rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the *Procedures for Complex Cases for the Southern District of Texas*.

**BACKGROUND**

**I.  General**

5. On the Petition Date, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court. The Debtors are operating their businesses and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

7. No official committee has been appointed in these Chapter 11 Cases and no request has been made for the appointment of a trustee or an examiner.

8. Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration.

## II. The Rejected Agreements

9. As further described in the First Day Declaration, the Debtors are a premier destination for luxury fashion, delivering a one-of-a-kind and highly curated shopping experience for each of its customers. Since its inception over 100 years ago, the Debtors' in-store and, subsequently, its online presence, have featured broad selections of apparel, handbags, shoes, cosmetics, and precious and designer jewelry from premier luxury and fashion designers. The Debtors' business segments include a diverse collection of highly recognized, market-leading, and emerging retail brands, including: Saks Fifth Avenue, Neiman Marcus, Bergdorf Goodman, and Saks OFF 5TH. Across all brands, the Debtors have over 150 total retail store locations and operations spanning across the globe. To complement its store footprint, the Debtors operate a large luxury e-commerce platform. Additionally, the Debtors buy directly from manufacturers under certain private label programs and sell directly to customers through multiple online platforms.

10. The Global Debtors operate a substantial majority of their store locations pursuant to real property lease agreements between the Debtors and the applicable landlords. After careful review, the Global Debtors have determined that the Rejected Premises are no longer necessary for their business operations, are not beneficial to their estates, and the Rejected Leases subject the Global Debtors to unnecessary and burdensome rent and related liabilities. As of the Petition Date,

the Global Debtors do not occupy any of the Rejected Premises and have surrendered the Rejected Premises to the applicable landlords. Therefore, the Global Debtors have determined that rejecting the Rejected Leases, effective as of the Petition Date, is an appropriate exercise of their business judgment and in the best interest of their estates.

11. In addition to the Rejected Leases, after consulting their books and records, the Debtors have identified the Rejected Contracts as contracts that are non-essential to their go-forward business operations and uneconomic, including, but not limited to, (a) agreements that relate to logistics and services, (b) agreements that pertain to marketing, brand, and commerce arrangements, (c) employment agreements that would hereafter be burdensome and not beneficial to the Debtors' estates or long term business plan, and (d) certain corporate housekeeping agreements. Under the Rejected Contracts, the Debtors incur costs on account of services that no longer provide them with commensurate benefits. As a result, the Debtors have determined that maintaining the Rejected Contracts would be burdensome to their estates.

### III. Remaining Personal Property at the Rejected Premises

12. In connection with the rejection of the Rejected Leases, it is possible that some Personal Property will remain on the Rejected Premises as of the Petition Date. The Global Debtors expect that any remaining Personal Property at the Rejected Premises will be difficult or expensive to remove and/or store, such that the economic benefits of removal of the Personal Property will be exceeded by the attendant costs. Therefore, in connection with abandoning and surrendering the Rejected Premises as of the Petition Date, the Global Debtors intend to abandon the Personal Property and request the Court's approval to do so.

**BASIS FOR RELIEF**

**I.    Rejection of the Rejected Agreements is a Sound Exercise of the Debtors' Business Judgment.**

13.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  "This provision allows a [debtor] to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co., 83 F.3d 735, 741 (5th Cir. 1996) (citing In re Murexco Petroleum, Inc., 15 F.3d 60, 62 (5th Cir. 1994)); see also N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984) (superseded by statute on other grounds) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.").

14.     "Section 365(a) enables the debtor (or its trustee), upon entering bankruptcy, to decide whether the contract is a good deal for the estate going forward." Mission Prod. Holdings, Inc. v. Tempnology, LLC, 587 U.S. 370, 373 (2019).  Generally, "[a] bankruptcy court reviews a debtor's decision to assume or reject an executory contract under the deferential 'business judgment' standard." In re J. C. Penney Direct Mktg. Servs., L.L.C., 50 F.4th 532, 534 (5th Cir. 2022) (citing Tempnology, LLC, 587 U.S. at 373 and Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1308–09 (5th Cir. 1985)); see also In re Mirant Corp., 378 F.3d 511, n. 5 (5th Cir. 2004) ("The rejection decision under § 365 is generally left to the business judgment of the bankruptcy estate.") (citations omitted); In re Pisces Energy, LLC, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and

6

the decision be based on sound business judgment."); In re Tex. Sheet Metals, Inc., 90 B.R. 260, 264 (Bankr. S.D. Tex. 1988) ("The traditional business judgement standard governs the rejection of ordinary executory contracts.").

15. The business judgment rule is a presumption that, in making a business decision, the directors of a corporation acted "on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." ASARCO LLC v. Americas Mining Corp., 396 B.R. 278, 405 (S.D. Tex. 2008) (citations omitted). To satisfy the "business judgement" standard, a debtor merely has to show that the rejection of an unexpired lease or executory contract will benefit its estate. See In re J. C. Penney Direct Mktg. Servs., L.L.C., 50 F.4th at 534 ("The correct inquiry under the business judgment standard is whether the debtor's decision regarding executory contracts benefits the debtor. . . ."); In re Idearc Inc., 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) aff'd, 662 F.3d 315 (5th Cir. 2011) (explaining that the "'business judgement test' … requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgement"). "As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." Richmond Leasing Co., 762 F.2d at 1309 (citation omitted); see also In re Idearc Inc., 423 B.R. at 162 ("In the absence of a showing of bad faith or an abuse of business discretion, the debtor's business judgment will not be altered") (quotations and citation omitted); In re Hilltop SPV, LLC, 667 B.R. 110, 118 (Bankr. W.D. Tex. 2025) (finding that section 365 of "[t]he Code tells us a chapter 11 debtor can reject *any* executory contract so long as the Court approves … [a]nd the Court is only to withhold approval of the chapter 11 debtor's decision if such decision is not in the best interest of the estate or constitutes bad business judgment") (internal

citation omitted). Consequently, a debtor's business judgment will be upheld unless it is devoid of any rational purpose. See In re J. C. Penney Direct Mktg. Servs., L.L.C., 50 F.4th at 534 (describing shedding "onerous or unprofitable" agreements as the "long-standing purpose" of allowing debtors to reject contracts).

16. Here, the Debtors' rejection of the Rejected Leases and the Rejected Contracts is a sound exercise of their business judgment and in the best interests of their estates. The Rejected Leases are lease agreements for certain brick-and-mortar stores that, as of the Petition Date, the Global Debtors no longer occupy or use in the course of their businesses. In other words, the Rejected Leases provide no benefit to the Global Debtors and their estates, while subjecting the Global Debtors to burdensome rent and related liabilities. Moreover, the Debtors have determined that the Rejected Contracts are uneconomic and that the services provided to the Debtors under such contracts are no longer necessary to their business operations. Absent rejection, the Debtors and their estates would continue to incur administrative costs under the Rejected Agreements in exchange for no meaningful benefits.

**II.     The Court Should Deem the Rejected Agreements Rejected Effective as of the Petition Date.**

17. The Debtors' rejection of the Rejected Agreements should be approved effective as of the Petition Date. Pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, bankruptcy courts may grant retroactive rejection of an executory contract or unexpired lease based on a balancing of the equities of the case. See In re Cafeteria Operators, L.P., 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (approving lease "rejection retroactive to the later of 1) the date Debtors' Motions were filed or 2) the date the leased space was vacated" because the debtors were not receiving any "benefit from the leased properties and by vacating the leased locations, the landlords had unequivocal notice of Debtors' intent to reject prior to the filing of the Motions"); see also In re

8

Amber's Stores, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) ("[N]othing precludes a bankruptcy court, based on the equities of the case, from approving" retroactive rejection); In re Stonebridge Techs., Inc., 430 F.3d 260, 273 (5th Cir. 2005) ("[W]e note that most courts have held that lease rejection may be retroactively applied."). Moreover, courts permit retroactive rejection when retroactive rejection would allow a debtor to avoid "unnecessary administrative costs for Contracts and the Leases that do not provide any benefits to the Debtor and its estate," In re SVB Fin. Grp., Case No. 23-10367 (MG) (Bankr. S.D.N.Y. May 17, 2023) [Docket No. 249], and also when the non-debtor party to the contract or lease was given "unequivocal notice of [the debtor's] intent to reject," In re Cafeteria Operators, L.P., 299 B.R. at 394.

18.     Here, for the following reasons, the balance of the equities favors the Debtors' rejection of the Rejected Agreements effective as of the Petition Date. *First*, absent retroactive rejection, the Debtors would incur unnecessary administrative charges for contracts and leases that are not necessary to their business operations or chapter 11 efforts. As discussed, the Rejected Premises are closed stores and therefore generate no revenue or benefits for the Global Debtors. Moreover, the services provided to the Debtors under the Rejected Contracts are non-essential and no longer necessary to the operation of their businesses. Requiring the Debtors' continued performance under the Rejected Agreements after the Petition Date would impose administrative costs on the Debtors and their estates in exchange for no meaningful benefits.

19.     *Second*, the Debtors have provided or will provide the counterparties to the Rejected Agreements with unequivocal notice of their intent to reject the agreements as of the Petition Date. Specifically, the Debtors filed this Motion contemporaneously with the Petition Date and served it on the affected counterparties and/or their agents or representatives by first class mail and/or electronic mail, as applicable, in accordance with applicable rules. Additionally, the

Debtors have concurrently sent communications to such counterparties by electronic mail, thereby advising such counterparty that the Debtors intend to reject the Rejected Agreements effective as of the Petition Date. Moreover, with respect to the Rejected Leases, the Global Debtors relinquished the keys to the Rejected Premises to the applicable landlords on or before the Petition Date and indicated to the landlords that they were unequivocally surrendering possession of the Rejected Premises.

20. *Third*, the Debtors have sought the relief requested on the first day of these Chapter 11 Cases, and have not caused any undue delay on their own part. Based on this factual record, no party can assert that the Debtors seek to write any "revisionist history." See <u>Roman Catholic Archdiocese of San Juan, P.R. v. Acevedo Feliciano</u>, 589 U.S. 57, 65 (2020) ("Federal courts may issue *nunc pro tunc* orders, or 'now for then' orders [] to reflect the reality of what has already occurred [but not as a] vehicle for . . . creating 'facts' that never occurred . . .") (internal citations omitted).

21. This Court has previously authorized retroactive relief similar to the relief requested herein. <u>In re Anthology Inc.</u>, Case No. 25-90498 (ARP) (Bankr. S.D. Tex. Nov. 16, 2025) (ECF No. 424) (authorizing rejection of unexpired leases *nunc pro tunc* to the petition date); <u>In re Worldwide Machinery Grp., Inc.</u>, Case No. 25-90379 (CML) (Bankr. S.D. Tex. Oct. 14, 2025) (ECF No. 185) (same); <u>In re LifeScan Global Corp.</u>, Case No. 25-90259 (ARP) (Bankr. S.D. Tex. Sept. 29, 2025) (ECF No. 383) (authorizing rejection of executory contracts effective as of the date of the rejection motion); <u>In re Desktop Metal, Inc.</u>, Case No. 25-90268 (CML) (Bankr. S.D. Tex. Sept. 23, 2025) (ECF No. 385) (authorizing rejection of unexpired leases to specified dates prior to the entry of the rejection order); <u>In re Sunnova Energy Int'l Inc.</u>, Case No. 25-90160 (ARP)

(Bankr. S.D. Tex. July 2, 2025) (ECF No. 320) (authorizing rejection of executory contracts and unexpired leases *nunc pro tunc* to the petition date).

22. Rejection of the Rejected Agreements effective as of the Petition Date is in the best interests of their estates, does not negatively impact the public interest, and the equities balance in favor of rejection. Accordingly, the Debtors respectfully request that the Rejected Agreements are deemed rejected effective as of the Petition Date.

### III. Authorizing the Global Debtors to Abandon Any Personal Property Remaining at the Rejected Premises as of the Petition Date Is Appropriate.

23. In the event that any Personal Property remains on the Rejected Premises as of the Petition Date, the Global Debtors request authority to abandon that Personal Property (collectively, the "Abandoned Personal Property") pursuant to section 554(a) of the Bankruptcy Code.

24. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Courts generally give a debtor great deference with respect to its decision to abandon property. See, e.g., In re Vel Rey Props., Inc., 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters."). Unless property is harmful to the public, once a debtor has shown that it is burdensome or of inconsequential value to the estate, a court should approve the abandonment. Id.

25. Here, the Global Debtors submit that the Abandoned Personal Property is of inconsequential value and expensive or burdensome to the Global Debtors' estates to remove. Among other things, the Global Debtors believe that the cost of retrieving, storing, marketing, and reselling the Abandoned Personal Property—to the extent there is any—outweighs any recovery that the Global Debtors and their estates could reasonably hope to attain for such Abandoned

11

Personal Property. Moreover, the Global Debtors have determined that the Abandoned Personal Property does not pose a threat to public health or safety. As a result, the Global Debtors have determined, in their business judgment, that the abandonment of any Abandoned Personal Property, effective as of the Petition Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Global Debtors, their estates, and creditors.

### IV. The Motion Satisfies the Requirements of Bankruptcy Rules 6006(e) and 6006(f)

26. Under Bankruptcy Rule 6006(e)(2), a debtor may join requests for authority to reject multiple executory contracts or unexpired leases in one motion, subject to Rule 6006(f). See Fed. R. Bankr. P. 6006(e)(2). Motions to assume or reject multiple executory contracts or unexpired leases must satisfy six procedural requirements, namely, they must:

1. state in a conspicuous place that the parties' names and their contracts or leases are listed in the motion;
2. list parties alphabetically and identify the corresponding contract or lease;
3. specify the terms, including how a default will be cured, for each requested assumption or assignment;
4. specify the terms, including the assignee's identity and the adequate assurance of future performance by each assignee, for each requested assignment;
5. be numbered consecutively with other omnibus motions to reject, assume, or assign executory contracts or unexpired leases; and
6. be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f). This Motion, together with the schedules of Rejected Agreements attached to the Proposed Order, satisfies the procedural requirements of Bankruptcy Rule 6006(f).[4] Accordingly, the omnibus rejection of the Rejected Agreements should be approved.

---

[4] Bankruptcy Rules 6006(f)(3) and 6006(f)(4) are inapplicable to the relief requested in this Motion because the Debtors do not seek to assume any of the contracts or leases listed on the schedules of Rejected Agreements.

**RESERVATION OF RIGHTS**

27. Nothing in the Proposed Order or the Motion (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors, their estates, or any other party in interest with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors, their estates, or any other party in interest with respect to any and all claims or causes of action; or (d) shall be construed as a promise to pay a claim.

28. Nothing in the Proposed Order or this Motion shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of any Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

29. Nothing in the Proposed Order or this Motion shall create, nor is intended to create, any rights in favor of or enhance the priority or status of any claim held by any party.

**NOTICE**

30. Notice of this Motion has been or will be provided to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the United States Attorney's Office for the Southern District of Texas; (c) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates; (d) counsel to the DIP Agents; (e) counsel to the DIP Lenders; (f) counsel to the SO5 Digital Debtors' term loan lender; and (g) the counterparties to the Rejected Agreements (by first class mail and/or electronic mail).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Houston, Texas
Dated: January 14, 2026

*/s/ Kelli Stephenson Norfleet*
**HAYNES AND BOONE, LLP**
Kelli Stephenson Norfleet (TX Bar No. 24070678)
Kenric D. Kattner (TX Bar No. 11108400)
Arsalan Muhammad (TX Bar No. 24074771)
Kourtney P. Lyda (TX Bar No. 24013330)
David Trausch (TX Bar No. 24113513)
1221 McKinney Street, Suite 4000
Houston, TX 77010
Telephone:  (713) 547 2000
Facsimile:  (713) 547 2600
Email:  kelli.norfleet@haynesboone.com
        kenric.kattner@haynesboone.com
        arsalan.muhammad@haynesboone.com
        kourtney.lyda@haynesboone.com
        david.trausch@haynesboone.com

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (*pro hac vice* pending)
Robin Spigel (*pro hac vice* pending)
Allyson B. Smith (*pro hac vice* pending)
Betsy L. Feldman (*pro hac vice* pending)
Jessica D. Graber (*pro hac vice* pending)
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
Email:  dsinclair@willkie.com
        rspigel@willkie.com
        absmith@willkie.com
        bfeldman@willkie.com
        jgraber@willkie.com

-and-

Jennifer J. Hardy (TX Bar No. 24096068)
600 Travis Street
Houston, TX 77002
Telephone:  (713) 510-1766
Facsimile:  (713) 510-1799
Email:  jhardy2@willkie.com

-and-

Ryan Blaine Bennett (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, IL 60654
Telephone:  (312) 728-9123
Facsimile:  (312) 728-9199
Email:  rbennett@willkie.com

*Proposed Co-Counsel to the Global Debtors and Global Debtors in Possession*

*Proposed Co-Counsel to the Global Debtors and Global Debtors in Possession*

/s/ Jarrod B. Martin
**BRADLEY ARANT BOULT CUMMINGS LLP**
Jarrod B. Martin (TX Bar No. 24070221)
Michael K. Riordan (TX Bar No. 24070502)
600 Travis Street, Suite 5600
Houston, TX 77002
Telephone: (713) 576-0300
Facsimile: (713) 547-0301
Email: jbmartin@bradley.com
mriordan@bradley.com

-and-

James Bailey (TX Bar No. 24108289)
1819 Fifth Avenue N.
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 488-6913
Email: jbailey@bradley.com

*Proposed Counsel to the SO5 Digital Debtors and SO5 Digital Debtors in Possession*

**Certificate of Service**

    I certify that on the date hereof, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas. Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' claims agent.

                                                                      /s/ *Kelli Stephenson Norfleet*
                                                                      Kelli Stephenson Norfleet