# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| SAKS GLOBAL ENTERPRISES LLC *et al.*,[1] | Case No. 26-90103 (ARP) |
| Debtors. | (Joint Administration Requested)<br>(Emergency Hearing Requested) |

**SO5 DIGITAL DEBTORS' <u>EMERGENCY</u> MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING SO5 DIGITAL DEBTORS' USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED CREDITORS, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b), AND (V) GRANTING RELATED RELIEF**

**EMERGENCY RELIEF HAS BEEN REQUESTED.  RELIEF IS REQUESTED NOT LATER THAN 4:00 P.M. (PREVAILING CENTRAL TIME) ON JANUARY 14, 2026.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH.  OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON JANUARY 14, 2026, AT 4:00 P.M. (PREVAILING CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002.**

**PARTICIPATION AT THE HEARING WILL ONLY BE PERMITTED BY AN AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510.  ONCE CONNECTED, YOU**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Saks.  The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281.  Bradley Arant Boult Cummings LLP is proposed counsel for the following Debtors: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively, the "<u>SO5 Digital Debtors</u>").  Haynes and Boone, LLP and Willkie Farr & Gallagher LLP are proposed counsel for the remaining Debtors (collectively, the "<u>Global Debtors</u>").

> **WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE PÉREZ'S CONFERENCE ROOM NUMBER IS 282694. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE PÉREZ'S HOMEPAGE. THE MEETING CODE IS "JUDGE PÉREZ". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE PÉREZ'S HOMEPAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

The SO5 Digital Debtors, as debtors and debtors in possession in the above-captioned cases, respectfully represent as follows in support of this motion (the "Motion"):

## RELIEF REQUESTED

1.     By this Motion, pursuant to sections 105, 361, 362(d), 363(c), 363(e), 503(b), and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Bankruptcy Cases (the "Complex Case Procedures") promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "Court"), the SO5 Digital Debtors request entry of an interim order, substantially in the form annexed hereto as **Exhibit A** (the "Interim Order"), providing, among other things:

    a.     authorizing the SO5 Digital Debtors to use Prepetition Collateral and Postpetition Collateral[2], including all property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code) of the Prepetition Lenders (the "Cash Collateral"), that the SO5 Digital Debtors are holding or may obtain, pursuant to sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and 6004 and in accordance with the Approved Budget;

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Interim Order.

4921-6823-1816.6

b.      authorizing the Prepetition Obligors to provide adequate protection to the Prepetition Secured Creditors, including with respect to the extent of any Diminution in Value, which adequate protection shall include certain adequate protection liens, claims, and payments described herein and in the Interim Order;

c.      approving certain stipulations by the SO5 Digital Debtors with respect to the Prepetition Credit Documents and the Prepetition Collateral as set forth herein and in the Interim Order;

d.      waiving any applicable stay and provisions for immediate effectiveness of this Interim Order;

e.      modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order; and

f.      scheduling a second interim hearing (the "Second Interim Hearing") to consider further interim approval of the use of Cash Collateral pursuant to a proposed second interim order (the "Second Interim Order"); and

g.      scheduling a final hearing (the "Final Hearing") to consider final approval of the use of Cash Collateral pursuant to a proposed Final order (the "Final Order").

## SUMMARY OF TERMS OF USE OF CASH COLLATERAL

2.      In accordance with Bankruptcy Rules 4001(b)–(d) and Complex Case Procedures as incorporated by Bankruptcy Local Rule 1075-1, the below chart summarizes the material terms of the Interim Order:

| Provision and Applicable Bankruptcy Rule | Material Terms | Location |
|---|---|---|
| **Parties asserting an Interest in Cash Collateral**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(i) | Callodine Commercial Finance, LLC, as administrative agent and collateral agent (in such capacities, the "Prepetition Agent"), for its own benefit and the benefit of the lenders from time to time party under the Prepetition Facility (and together with the Prepetition Agent, the "Prepetition Lenders," and together with the Prepetition Agent, the "Prepetition Secured Creditors"). | Interim Order ¶ F(i). |

| | | |
|---|---|---|
| **Purposes for Use of Cash Collateral**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(ii) | The SO5 Digital Debtors' use of the Cash Collateral will be to administer the Chapter 11 Cases and fund operations. | Interim Order ⁋ G |
| **Budget Provisions**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The use of Cash Collateral must be in accordance with the Approved Budget, which is attached as <u>Exhibit 3</u> to the Interim Order. | Interim Order, Ex. 4, ⁋ G(iv), ⁋ 5 |
| **Duration of Use of Cash Collateral / Termination Date**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | Until the effectiveness of a Termination Event. | Interim Order, ⁋ 11-12 |
| **Event of Default and/ or Termination Events**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | Unless consented to or waived (as applicable) by the Prepetition Agent in advance, in writing, in its sole and absolute discretion shall constitute an Event of Default and/or a Cash Collateral Termination Event under the Interim Order:<br><br>i.    The failure of the SO5 Digital Debtors to perform, in any respect, any of the material terms, provisions, conditions, covenants, or obligations under the Interim Order;<br><br>ii.    The failure to achieve any Milestone;<br><br>iii.    The filing of a motion or any plan of reorganization or disclosure statement attendant thereto by any of the SO5 Digital Debtors: (i) to obtain financing under section 364(d) of the Bankruptcy Code not otherwise permitted pursuant to this Interim Order or that does not satisfy the Prepetition Secured Obligations in full at the time of closing of such financing; (ii) to grant any lien other than Prepetition Permitted Liens upon or affecting any Postpetition Collateral; or (iii) except as provided in this Interim Order, to use Cash Collateral under section 363(c) of the Bankruptcy Code; | Interim Order Ex. 1 |

iv.     The entry of an order amending, supplementing, staying, vacating or otherwise modifying the Interim Order or the Cash Management Order, the filing by the SO5 Digital Debtors of a motion for reconsideration with respect to the Interim Order or the Cash Management Order, or the Interim Order shall cease to be in full force and effect;

v.      The payment of, or application by the SO5 Digital Debtors for authority to pay, any prepetition claim unless in accordance with an order of the Court and the Approved Budget;

vi.     The appointment of an interim or permanent trustee in the Cases or any Successor Cases;

vii.    The entry of an order approving, relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor (other than the Prepetition Agent) to execute upon or enforce a lien on any Prepetition Collateral or Postpetition Collateral, (ii) approving any settlement or other stipulation with any secured creditor of any Prepetition Obligor providing for payments as adequate protection or otherwise to such secured creditor, or (iii) with respect to any lien on or the granting of any lien on any Prepetition Collateral or Postpetition Collateral to any federal, state or local environmental or regulatory agency or authority;

viii.   The entry of any order of the Court authorizing any claims or charges, entitled to superpriority administrative expense claim status pursuant to section 364 of the Bankruptcy Code *pari passu* with or senior to the claims of the Prepetition Secured Creditors under this Interim Order, or there shall arise or be granted by the Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code or (ii) any lien on the Prepetition Collateral or Postpetition

Collateral having a priority senior to or *pari passu* with the liens and security interests referenced in the Interim Order, except, in each case, as expressly provided in the Interim Order;

ix.   The SO5 Digital Debtors shall file a motion for entry of an order materially adversely impacting the rights and interests of the Prepetition Secured Creditors;

x.   Any of the SO5 Digital Debtors shall challenge, support or encourage a challenge of any payments made with respect to the Prepetition Secured Obligations;

xi.   The entry of any order by the Court granting, or the filing by any of the SO5 Digital Debtors of any motion or other request with the Court seeking authority for, the use of cash proceeds of any Prepetition Collateral or Postpetition Collateral other than as set forth in this Interim Order or to obtain any financing under section 364(d) of the Bankruptcy Code not otherwise permitted under the Interim Order or that does not satisfy the Prepetition Secured Obligations in full at the time of closing of such financing;

xii.   Any of the SO5 Digital Debtors or any person on behalf of any of the SO5 Digital Debtors shall file any motion seeking authority to consummate a sale of Prepetition or Postpetition Collateral outside the ordinary course of business not otherwise permitted hereunder or without the consent of the Prepetition Agent; and

xiii.   Any of the SO5 Digital Debtors shall make any payment of principal or interest or otherwise provide any credit on account of any prepetition indebtedness or payables other than payments (i) under customary "first day orders" or other order of the Court as approved by the Prepetition Agent in writing, and (ii) payments approved by the Prepetition Agent in writing, in each case in accordance with the Approved Budget.

| | | |
|---|---|---|
| | | |
| **Liens, Cash Payments or Adequate Protection Provided for Use of Cash Collateral**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iv) | Adequate Protection Liens on the Prepetition Collateral and Postpetition Collateral of the Prepetition Obligors, Adequate Protection Superpriority Claims, and Adequate Protection Payments comprising: (i) prepetition and postpetition reasonable and documented fees of the advisors to the Prepetition Agent, Morgan, Lewis & Bockius LLP and Bracewell LLP, and (ii) within three (3) days of the entry of the Interim Order, including an adequate protection payment in the amount of $2.5 million, in each case in accordance with the procedures set forth in the Interim Order. | Interim Order ¶ 4 |
| **Liens on Avoidance Actions**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iv) | Upon entry of an Interim Order, Postpetition Collateral includes the proceeds of actions brought under section 549 of the Bankruptcy Code to recover any postpetition transfer of Postpetition Collateral.<br><br>Subject to entry of a Final Order (other than with respect to proceeds of actions brought under section 549 of the Bankruptcy Code which shall become Postpetition Collateral upon entry of the Interim Order) Postpetition Collateral includes the proceeds of actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents. | Interim Order n.3 (defining "Postpetition Collateral"). |
| **Carve Out**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | Scope of Carve Out:<br><br>(i)    All fees required to be paid to Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to 31 U.S.C. § 3717;<br><br>(ii)    all reasonable and documented fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and | Interim Order, ¶ 15 |

(iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, but subject in all instances to and capped by the Approved Budget, all unpaid fees and expenses, other than any restructuring, sale, success, or other transaction fee (the "Allowed Professional Fees") incurred by Persons or firms retained by the SO5 Digital Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and any Committee appointed pursuant to section 328 or 1103 of the Bankruptcy Code in the SO5 Digital Debtors cases (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first Business Day following delivery by the Prepetition Agent of a Carve Out Trigger Notice, whether allowed by this Court prior to or after delivery of a Carve Out Trigger Notice (the amounts set forth in clauses (i) through (iii), the "Pre-Carve Out Trigger Notice Cap"); and

(iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $320,000 incurred on and after the first Business Day following delivery by the Prepetition Agent of a Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in clauses (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Agent to the SO5 Digital Debtors, their restructuring counsel, the U.S. Trustee, and counsel to any Committee, which notice may be delivered only following

| | | |
|---|---|---|
| | the occurrence and during the continuation of an Event of Default or Cash Collateral Termination Event on the Termination Declaration Date. | |
| **Waiver or Modification of the Automatic Stay**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(ii) | The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to permit the SO5 Digital Debtors to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claims. | Interim Order ¶ 6 |
| **Section 506(c) Waiver**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | Upon entry of the Final Order, and subject to approval by this Court therein, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or Successor Cases at any time shall be charged against the Prepetition Lenders, the Prepetition Agent, or the Postpetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise and all rights to surcharge the Prepetition Lenders, the Prepetition Agent, and/or the Postpetition Collateral under section 105 or 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the SO5 Digital Debtors and all parties in interest in the Chapter 11 Cases or any Successor Case. | Interim Order ¶ 19 |
| **Section 552(b)(1) Waiver**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The Prepetition Agent and Prepetition Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  Upon entry of the Final Order, and subject to approval by this Court therein, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agent and Prepetition Lenders with respect to proceeds, products, offspring, or profits of any of the Postpetition Collateral. | Interim Order ¶ 21 |

| | | |
|---|---|---|
| **Stipulations of the SO5 Digital Debtors**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The Interim Order contains stipulations of fact by the SO5 Digital Debtors, including those related to the validity and enforceability of the SO5 Digital Debtors' Prepetition Secured Obligations.<br><br>Subject to the following and certain other provisions in ¶ 26 of the Interim Order, immediately upon entry of this Interim Order, the stipulations (including the SO5 Digital Debtors' Stipulations), terms and provisions of this Interim Order (including, without limitation, the Adequate Protection Liens, Adequate Protection Payments, and the Adequate Protection Superpriority Claims) shall become valid and binding upon and inure to the benefit of the SO5 Digital Debtors, the Prepetition Secured Creditors, all other creditors of any of the SO5 Digital Debtors, the Committee, if any, and all other parties in interest and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases or any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case, unless, and solely to the extent that:  (a) a party in interest that has sought and obtained standing and the requisite authority to commence a Challenge[3] (other than the SO5 Digital Debtors, as to which any Challenge is hereby irrevocably waived and relinquished) and has timely commenced a Challenge by the date that is seventy-five (75) days from the date of entry of this Interim Order (the "<u>Challenge Deadline</u>"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Agent or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline. | Interim Order ¶ F, ¶ 14, ¶ 26 |

---

[3]   "<u>Challenge</u>" as used in the Interim Order means an adversary proceeding or contested matter (subject to the limitations contained herein) (a) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens, or (b) asserting or prosecuting any Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses against any Prepetition Secured Creditors or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof in connection with or related to the Prepetition Credit Documents, the Prepetition Secured Obligations, the Prepetition Liens and the Prepetition Collateral.

| Release, Waivers or Limitation on any Claim or Cause of Action<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | Each of the SO5 Digital Debtors, on their own behalf and on behalf of each of their past, present, and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably releases, discharges, and acquits each of the Prepetition Agent, the other Prepetition Secured Creditors, solely in their capacities as such, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, advisors, sub-fund advisors, and collateral managers, and each of their respective heirs, predecessors, successors, and assigns (collectively, the "Released Parties") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), actions, suits, controversies, proceedings, losses, damages, injuries, debts, liens, actions, judgments, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, pending, or threatened, arising under, in connection with, or relating to the Prepetition Secured Obligations or the Prepetition Credit Documents, including, without limitation: (a) any so-called "lender liability" or equitable subordination claims or defenses; (b) Claims and causes of action arising under the Bankruptcy Code; and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the | Interim Order, ¶ F (vii) |

<table>
<tr><td></td><td>Prepetition Secured Obligations, the Prepetition Credit Documents, or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Secured Obligations that the SO5 Digital Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order; provided, that nothing in this Interim Order shall release any Released Party from any claim arising from such Released Party's gross negligence, fraud, or willful misconduct</td><td></td></tr>
</table>

**STATEMENT REGARDING SIGNIFICANT PROVISIONS**

3.      The Interim Order contains certain of the provisions (the "**Significant Provisions**")[4] identified under Rule 8 of the Complex Case Procedures, as set forth below

| Term | Relief Requested |
|---|---|
| **Sale or Plan Confirmation Milestones**<br><br>Complex Case Procedures ¶ 8(a) | The SO5 Digital Debtors' consensual use of Cash Collateral shall be subject to the timely satisfaction of the following Milestones, which may be extended from time to time with the consent of the Prepetition Agent.<br><br>Solicitation of Liquidation Sale Proposals Begins. On or before the Petition date, the SO5 Digital Debtors shall solicit proposals ("Liquidation Sale Proposals") as more fully described in Exhibit 2 of the Interim Order.<br><br>Filing of Cash Collateral Motion. On the Petition Date, the SO5 Digital Debtors shall file a motion seeking approval of the use of Cash Collateral, in form and substance acceptable to the Prepetition Agent.<br><br>Entry of the Interim Cash Collateral Order. On or before three (3) business days after the Petition Date, the Interim Order shall have been entered by the Court.<br><br>Solicitation of Liquidation Sale Proposals Closes. On or before seven (7) days after the Petition Date, the SO5 Digital Debtors shall receive all |

---

[4]     Significant Provisions consist of: (a) Sale or plan confirmation milestones; (b) Cross-collateralization; (c) Roll ups; (d) Liens on avoidance actions or proceeds of avoidance actions; (e) Default provisions and remedies; (f) Releases of claim against lender or others; (g) Limitations on fees for advisors to official committees; (h) Priming liens; and (i) any other provision that limits the ability of estate fiduciaries to fulfill their duties under the Bankruptcy Code and applicable law.

4921-6823-1816.6

|  | Liquidation Sale Proposals. |
|---|---|
|  | <u>Filing of Liquidation Sale Procedures</u>. On or before the earlier of (a) fourteen (14) days after the Petition Date, or (b) the day before the Second Interim Hearing, the SO5 Digital Debtors shall, in consultation with the Prepetition Agent, select one or more Liquidation Sale Proposals and file a motion (in form and substance acceptable to the Prepetition Agent) with the Court for approval of an order (or interim and final order) authorizing (a) the SO5 Digital Debtors' entry into the approved Liquidation Sale Proposal, and (b) the procedures for the SO5 Digital Debtors' self-liquidating sale of inventory (the "<u>Liquidation Sale Procedures</u>"). |
|  | <u>Entry of Second Interim Cash Collateral Order.</u> On or before fourteen (14) days after the Petition date, the SO5 Digital Debtors shall have obtained the Court's approval of a second interim order approving the Motion, subject to Court availability. |
|  | <u>Entry of the Interim Liquidation Sale Procedure Order</u>. On or before seventeen (17) days after the Petition date, the SO5 Digital Debtors shall have obtained the Court's approval of the interim order approving the Liquidation Sale Procedures, subject to the Court availability. |
|  | <u>Justification</u>: These Milestones are appropriate given that the SO5 Digital Debtors do not anticipate seeking or obtaining third-party postpetition financing, and instead intend to finance these Chapter 11 Cases by, among other things, selling inventory, a core component of the Prepetition Secured Creditors' collateral, and using those cash proceeds in accordance with the Interim Cash Collateral Order. The Milestones ensure that such sales will be conducted in consultation with an experienced liquidator to ensure that they will be well-paced and value maximizing, protecting the Prepetition Secured Debtors from diminution in value of key collateral. |
| **Cross-Collateralization**<br><br>Complex Case Procedures, ¶ 8(b) | The Interim Order does not provide for cross collateralization. |
| **Roll ups**<br><br>Complex Case Procedures, ¶ 8(c) | The Interim Order does not provide for any roll up of prepetition debt. |

| | |
|---|---|
| **Liens on Avoidance Actions or Proceeds of Avoidance Actions**<br><br>Complex Case Procedures, ¶ 8(d) | <u>Section 549 Proceeds – Interim Order</u>.  The Interim Order grants the Prepetition Secured Creditors Adequate Protection Liens proceeds of actions brought under section 549 of the Bankruptcy Code to recover any postpetition transfer of Postpetition Collateral.<br><br><u>Proceeds of Other Avoidance Actions – Final Order</u>. The Final Order will grant the Prepetition Secured Creditors Adequate Protection Liens on the proceeds of all other actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents.<br><br><u>Justification</u>. The SO5 Digital Debtors submit that granting liens, upon entry of an Interim Order, on the proceeds of section 549 avoidance actions, if any, is appropriate as the proceeds of such actions would inherently be the proceeds of the Prepetition Secured Creditors' Postpetition Collateral that had been transferred out of the SO5 Digital Debtors' estates post-petition without proper authority, and it would be inequitable to the Prepetition Secured Creditors to lose the collateral value of such Postpetition Collateral on the basis that it was transferred out of the estates without proper authority and later clawed back.<br><br>The SO5 Digital Debtors submit that granting liens, upon entry of a Final Order, on the proceeds in respect of Avoidance Actions is an appropriate form of adequate protection given that, with the exception of certain excluded assets, the Prepetition Secured Parties have liens on the on substantially all assets of the Prepetition Obligors including the Prepetition Collateral, and any proceeds thereof, to ensure that that such parties have the ability to look to assets beyond their existing collateral to satisfy any adequate protection claims for  any diminution in value of their collateral, which is particularly important given that the SO5 Digital Debtors do not anticipate seeking or obtaining outside postpetition financing, and will instead be financing these Chapter 11 Cases by selling inventory, a core component of the Prepetition Secured Creditors' collateral, and using those cash proceeds in accordance with the Interim Cash Collateral Order. |
| **Default Provisions and Remedies**<br><br>Complex Case Procedures, ¶ 8(e) | The Interim Order provides for certain Events of Default and Remedies upon Events of Default, including customary termination events for, among other things, breach of the terms of the Interim Order by the SO5 Digital Debtors.  *See*  Interim Order, ¶ 11-12.<br><br>The Interim Order does **not** include provisions waiving rights to challenge lenders' ability to exercise post-default remedies, or provisions limiting required proof or altering the burden of proof at post-default hearings.<br><br>The Interim Order does include a very limited modification of the stay upon an Event of Default or a Cash Collateral Termination Event to permit |

|  | the Prepetition Agent to make a Termination Declaration accelerating payment payment, effecting a Carve Out Trigger Notice, or terminating or otherwise modifying the SO5 Digital Debtors' use of Postpetition Collateral. ***However***, the Prepetition Agent would need to seek any further relief relating to the automatic stay from the Court on 5 days' emergency notice, during which period the SO5 Digital Debtors and any Committee that has been formed would have the right to seek emergency relief relating to the Termination Declaration. The Court has the discretion fashion an appropriate remedy regarding any such request for relief by the Prepetition Agent, SO5 Debtors, or Committee (if any).<br><br><u>Justification</u>. These Events of Default appropriately balance, in the SO5 Digital Debtors' view, the Prepetition Secured Parties' need for protection and the Prepetition Obligors' need to ensure continued access to Cash Collateral and do not restrict or preclude the Court's oversight of the SO5 Debtors or their estates. |
|---|---|
| **Releases of Claim Against Lender or Others**<br><br>Complex Case Procedures, ¶ 8(f) | Subject to paragraph 26 of the Interim Order, and the challenge rights granted thereunder, in the Interim Order the SO5 Digital Debtors (and certain related parties) release the "Released Parties" from: "any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), actions, suits, controversies, proceedings, losses, damages, injuries, debts, liens, actions, judgments, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, pending, or threatened, arising under, in connection with, or relating to the Prepetition Secured Obligations or the Prepetition Credit Documents, including, without limitation: (a) any so-called "lender liability" or equitable subordination claims or defenses; (b) Claims and causes of action arising under the Bankruptcy Code; and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Secured Obligations, the Prepetition Credit Documents, or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Secured Obligations that the SO5 Digital Debtors now have or may claim to have against the Released Parties, arising under, in |

| | |
|---|---|
| | connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order; provided, that nothing in this Interim Order shall release any Released Party from any claim arising from such Released Party's gross negligence, fraud, or willful misconduct." |
| | "Released Parties" is defined as the "Prepetition Agent, the other Prepetition Secured Creditors, solely in their capacities as such, and each of their respective successors, assigns, affiliates" and a variety of other parties related to the Prepetition Secured Creditors. |
| | <u>Justification</u>. The SO5 Digital Debtors respectfully submit that this release is appropriate because (i) the SO5 Digital Debtors are not aware of any meaningful claims against the Released Parties, (ii) it is being given in consideration of the Prepetition Secured Creditors' consent to the SO5 Digital Debtors' use of Cash Collateral, which are essential to the SO5 Digital Debtors' ability to maximize value for their estates, and (iii) the Interim Order complies with the requirements of paragraph 8 of the Complex Case Procedures because ¶ 26 of the Interim Order provides that the releases are subject to the Challenge Deadline (*i.e.* the later of 75 days after entry of the Interim Order and 60 days after the formation of the Committee (if any)). *See* Interim Order, ¶¶ F(vii), 26. |
| **Limitations on Fees for Advisors to Official Committees**<br><br>Complex Case Procedures, ¶ 8(g) | The Interim Order does not provide for any limitation on fees for advisors to any official committee that is appointed in these Chapter 11 Cases. |
| **Priming Liens**<br><br>Complex Case Procedures, ¶ 8(h) | The Interim Order does not provide for any priming liens. |

## <u>JURISDICTION AND VENUE</u>

4.     The United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference to Bankruptcy Judges from the United States District Court for the Southern District of Texas, entered May 24, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The SO5

Digital Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Court's entry of interim and final orders in connection with this Motion.

5.      Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory and legal predicates for the relief sought herein are sections 105(a), 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, Bankruptcy Rules 4001, 6003, and 6004 and rules 1075-1, 4001-1, 4002-1, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the *Procedures for Complex Cases in the Southern District of Texas*.

## **BACKGROUND**

7.      On January 14, 2026 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.  The Debtors are operating their businesses and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

9.      No official committee has been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

10.      Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of Andrew Hede in Support of SO5 Digital Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

## THE SO5 DIGITAL DEBTORS' PREPETITION SECURED DEBT

11.     Debtor Saks OFF 5TH LLC ("Borrower"), Debtor Saks OFF 5TH Holdings LLC ("Holdings" and, together with Borrower and Luxury Outlets USA, LLC, collectively, the "Prepetition Obligors"), the Prepetition Agent, for its own benefit and the benefit of the Prepetition Lenders, are party to that certain *Term Loan Credit Agreement*, dated as of August 6, 2021 (as amended, restated, amended and restated, supplemented, replaced, or otherwise modified from time to time, the "Prepetition Credit Agreement," and together with the Loan Documents (as defined therein), collectively, the "Prepetition Credit Documents," the term loan facility thereunder, the "Prepetition Facility").

12.     As of the Petition Date, the Prepetition Obligors were obligated under the Prepetition Credit Agreement to the Prepetition Lenders in the aggregate outstanding principal amount of not less than approximately $20 million, plus all accrued, accruing, and unpaid interest with respect thereto and any additional fees, costs, premiums, or other recoverable expenses that may be due and payable pursuant to the terms and conditions of the Prepetition Credit Agreement (the "Prepetition Secured Obligations").

13.     The Prepetition Secured Obligations are secured by first priority security interests in and liens (the liens and security interest, the "Prepetition Liens") on substantially all assets of the Prepetition Obligors, including the "Collateral" (as defined in the Prepetition Credit Agreement), and all proceeds, products, accessions, rents and profits thereof, in each case whether then owned or existing thereafter acquired or arising (collectively, the "Prepetition Collateral"), but excluding the "Excluded Property" (as defined in the Prepetition Credit Documents) and subject only to the Prepetition Permitted Liens (as defined in the Interim Order).

### THE SO5 DIGITAL DEBTORS' IMMEDIATE NEED FOR ACCESS TO CASH COLLATERAL

14.     The SO5 Digital Debtors require immediate access to liquidity to ensure that they are able to continue operating their busines during these chapter 11 cases and preserve the value of their estates for the benefit of all parties in interest. Substantially all of the SO5 Digital Debtors' cash on hand as of the Petition Date is subject to the liens of the Prepetition Secured Creditors and thus constitutes Cash Collateral. The SO5 Digital Debtors are hopeful that their current cash on hand, combined with the revenue generated from ongoing operations and sale proceeds or other monetization of assets, will provide sufficient liquidity to support the SO5 Digital Debtors' business during these chapter 11 cases. Simply put, the SO5 Digital Debtors' use of Cash Collateral pursuant to the terms of the Interim Order is the SO5 Digital Debtors' best and only option to preserve the value of its assets during these Chapter 11 Cases.

15.     Absent authority to use Cash Collateral, even for a limited period of time, the continued operation of the SO5 Digital Debtors' business would suffer, causing immediate and irreparable harm to the SO5 Digital Debtors, their respective estates, and their creditors. Accordingly, the use of Cash Collateral is critical to preserve and maintain the value of the SO5 Digital Debtors.

### PREPETITION NEGOTIATIONS

16.     In the days leading up to the Petition Date, the SO5 Digital Debtors and their advisors worked closely with the Prepetition Secured Creditors and their advisors to reach agreement on the Interim Order, which will govern the use and disbursement of Cash Collateral for an interim period in these chapter 11 cases. Those negotiations resulted in an agreement allowing the SO5 Digital Debtors to use the Prepetition Secured Creditors' Cash Collateral on a consensual basis, subject to certain conditions, including an agreed-upon Approved Budget,

attached to the Interim Order as Exhibit 3.

### THE SO5 DIGITAL DEBTORS' PROPOSED USE OF CASH COLLATERAL

17.     Initially, the SO5 Digital Debtors seek authority to use Cash Collateral until the Second Interim Order has been entered by the Court (the "Interim Period"). During this Interim Period, the SO5 Digital Debtors will fund operations and the costs of administering their estates in accordance with the Approved Budget. Thereafter, the SO5 Digital Debtors will seek authority to use Cash Collateral in accordance with a Second Interim Order, a proposed form of which will submitted to the Court before the Second Interim Hearing on this Motion.

18.     Pursuant to the terms reached with the Prepetition Secured Creditors, the SO5 Digital Debtors have agreed to use Cash Collateral in accordance with the Initial Approved Budget and any subsequent Approved Budget. The Initial Approved Budget includes all reasonable and foreseeable expenses to be incurred by the SO5 Digital Debtors until entry of the Second Interim Order, and is designed to provide the SO5 Digital Debtors with adequate liquidity over such period.

19.     Following entry of a Final Order, the SO5 Digital Debtors request authority to enter into further Approved Budgets, which shall be updated, modified or supplemented not less than every four (4) weeks unless otherwise agreed to by the SO5 Digital Debtors and the Prepetition Agent.  Each such updated, modified or supplemented budget shall be in form and substance acceptable to the Prepetition Agent, and no such updated, modified or supplemented budget shall be effective until so approved (electronic mail to counsel for the SO5 Digital Debtors being sufficient) and once approved shall be deemed the Approved Budget; *provided*, *however*, that, in the event that the Prepetition Agent and the SO5 Digital Debtors cannot agree as to a new Approved Budget, the prior Approved Budget shall remain in full force and effect unless and until a new Approved Budget has been approved by the Prepetition Agent.

## RELIEF REQUESTED SHOULD BE GRANTED

**A.      The SO5 Digital Debtors Should Be Authorized to Use Cash Collateral**

20.      The SO5 Digital Debtors require use of Cash Collateral for the continued operation of the SO5 Digital Debtors' businesses and smooth entry into these chapter 11 cases. Section 363(c) of the Bankruptcy Code governs a debtors' use of a secured creditor's cash collateral. Section 363(c) provides, in pertinent part, that:

> The trustee may not use, sell, or lease cash collateral . . . unless—
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section [363].

11 U.S.C. § 363(c)(2).

21.      A bankruptcy court should, whenever possible, resolve issues in ways that allow a debtor to continue its business as a going concern. *See In re Powerwave Techs. Inc*., No. 13-10134 (MFW), 2010 WL 11814289, at *4 (Bankr. D. Del. 2010) ("[A]n immediate and critical need exists for [debtors] to use Cash Collateral to continue operations and to administer and preserve the value of its estate."). "To preserve the going concern value of its operations, the Debtor must be able to pay its expenses." *In re Wythe Berry Fee Owner LLC*, 2023 Bankr. LEXIS 645, *19 (Bankr. S.D.N.Y. 2023). Accordingly, courts have recognized that the ability of debtors to obtain liquidity through the use of the cash collateral is vital to the debtors' efforts to maximize the value of their assets.  *See In re NexPak Corp*., 2009 Bankr. LEXIS 5025, *7 (Bankr. D. Del. 2009); *see In re Noble Int'l, Ltd*., 2009 Bankr. LEXIS 5126, *2 (Bankr. E.D. Mich. 2009) (finding the debtors "need[ed] to use cash collateral to continue their efforts to maximize value by completing their asset sales and pursuing their" chapter 11 plan of liquidation).

**B.      Interests of the Prepetition Secured Creditors Are Adequately Protected**

22.      Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Further, section 362(d)(1) provides for adequate protection of interests in property due to the imposition of the automatic stay. *See* 11 U.S.C. § 362(d)(1).

23.      The Bankruptcy Code does not expressly define "adequate protection." Section 361 of the Bankruptcy Code provides a non-exhaustive list of examples of adequate protection, such as granting replacement liens and administrative claims, but courts ultimately decide what constitutes sufficient adequate protection on a case-by-case basis. *In re Energy Partners, Ltd.*, 409 B.R. 211, 236 (Bankr. S.D. Tex. 2009) (citing *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *Fed. Deposit Ins. Corp. v. Mathis (In re Mathis)*, 64 B.R. 279, 284 (N.D. Tex. 1986); *see also United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Associates, Ltd. (In re Timbers of Inwood Forest Associates, Ltd.)*, 793 F.2d 1380, 1397 (5th Cir. 1986), aff'd, 484 U.S. 365 (1988); *In re Martin*, 761 F.2d 472 (8th Cir. 1985).

24.      To induce the Prepetition Secured Creditors to permit the SO5 Digital Debtors' use of Cash Collateral pursuant to the Interim Order, the SO5 Digital Debtors have agreed to provide adequate protection to the Prepetition Secured Creditors, including in the form of (a) Adequate Protection Liens and Adequate Protection Superpriority Claims (in each case, solely to the extent of any diminution in value of the Prepetition Collateral), and (b) certain Adequate Protection Payments to be made until such time as the Prepetition Secured Obligations are Paid in Full and payment of all reasonable and documented fees, out-of-pocket costs and expenses and charges

of the advisors to the Prepetition Agent (including, without limitation, Morgan, Lewis & Bockius LLP and Bracewell LLP (collectively, the "Agent Advisors")) in each case in accordance with the procedures set forth in the Interim Order.

25.     In order to adequately protect the Prepetition Secured Creditors against the diminution of value of their collateral, the Prepetition Secured Creditors required, as a condition to permitting the use of Cash Collateral, that the Adequate Protection Liens include replacement liens on the Prepetition Collateral and the Postpetition Collateral. The SO5 Digital Debtors believe that such demand is reasonable.  To the extent there is any diminution in value of the Prepetition Secured Creditors' collateral, the SO5 Digital Debtors have no other assets from which to provide liens securing adequate protection.

26.     Courts in this district and others have approved similar adequate protection packages in recent chapter 11 cases. *See, e.g.*, *EP Energy Corporation, et al.*, No. 19-35654 (MI) (Bankr. S.D. Tex. Oct. 4, 2019) (Docket No. 62) (approving adequate protection in the form of, among other things, replacement liens on prepetition collateral, superpriority administrative claims pursuant to section 507(b), and other protections); *In re Jones Energy, Inc.*, No. 19-32112 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2019) (Docket No. 78) (same); *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. Oct. 10, 2018) (Docket No. 92) (same); *In re Seadrill Ltd.*, No. 17-60079 (DRJ) (Bankr. S.D. Tex. Sept. 13, 2017) (Docket No. 98) (same); *In re Sherwin Alumina Co., LLC*, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13, 2016) (Docket No. 76) (same). Similar relief is appropriate here.

27.     The SO5 Digital Debtors believe that the proposed adequate protection package is necessary and sufficient for the SO5 Digital Debtors to continue to use Cash Collateral. Accordingly, the Court should determine that the adequate protection package is fair and

reasonable, necessary to satisfy the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and in the best interests of the SO5 Digital Debtors and their estates.

### C. The Carve Out is Appropriate

28.     In consenting to the use of Cash Collateral, the Prepetition Secured Creditors have agreed that the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall be subject and subordinate to certain fees and expenses, including (a) fees owing to the Clerk of the Court and the U.S. Trustee incurred in connection with the SO5 Digital Debtors' case; (b) all reasonable fees and expenses up to $50,000 incurred by a trustee appointed in the SO5 Digital Debtors' cases under section 726(b) of the Bankruptcy Code; (c) professional fees and expenses incurred on and after the Petition Date and before the occurrence of a Carve Out Trigger Date; and (d) Professional Fees and Expenses incurred after the occurrence of a Carve Out Trigger Date, in an amount not to exceed $320,000 (collectively, the "Carve Out"). *See* Interim Order, ¶ 5(b). The SO5 Digital Debtors will transfer the Carve Out to a segregated account pursuant to the Interim Budget.

29.     The Carve Out is similar to other similar arrangements made for professional fees that have been found to be reasonable and necessary to ensure that a debtors' estate and any statutory committee can retain assistance from counsel. *See In re Ames Dep't Stores Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990); *see also In re Las Torres Dev., L.L.C.*, 413 B.R. at 694 (noting that a carve out "is often incorporated into a cash collateral order agreed to by the debtors and the secured lender"); *In re Lil' Things, Inc.,* 243 B.R. 278, 280 (N.D. Tex. 2000) (referencing bankruptcy court order acknowledging that carve outs for attorneys' fees are "a normal and enforceable provision in a cash collateral stipulation").

30.     Without the Carve Out, the SO5 Digital Debtors' estates and other parties in interest may be deprived of possible rights and powers because all of the SO5 Digital Debtors' assets

would be subject to prior security interests. *See In re Ames Dep't Stores Inc.*, 115 B.R. at 38 (observing that courts insist on carve outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). The Carve Out also protects against the possibility of administrative insolvency by ensuring that assets remain available for the payment of statutory and professional fees.

### D. The Intercreditor Claim Escrow is Appropriate

31. In 2021, the Global Debtors and the SO5 Digital Debtors entered into a series of agreements that resulted in the SO5 Digital Debtors effectively operating as a standalone company within the broader Saks corporate group. Notwithstanding, certain operations remain consolidated within one or more of the Global Debtors. Consequently, from time to time in the ordinary course of business, the Global Debtors make certain payments for the benefit of or allocable to the SO5 Digital Debtors for which the SO5 Digital Debtors remit reimbursement to the applicable Global Debtor.

32. By agreement of the Global Debtors, the SO5 Digital Debtors, the Prepetition Agent, and the Required DIP Lenders (as defined in the Global DIP Orders), to the extent the Global Debtors make any payments for the benefit of or allocable to the SO5 Digital Debtors, in accordance with the approved budget set forth in the Global DIP Orders,[5] the Global Debtors shall be entitled to assert an administrative priority claim against the applicable SO5 Digital Debtor(s); *provided*, that all rights and defenses of all parties in interest shall be fully preserved with respect to any payments for the benefit of or allocable to the SO5 Digital Debtors (and whether or not such

---

[5]    For purposes of this Interim Order, Global DIP Orders means each interim and final order entered by the Court in respect of the *Global Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Global Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief.*

payments are for the benefit of or allocable to the SO5 Digital Debtors) after the earlier of (i) the second interim hearing on the SO5 Digital Debtors' motion for use of cash collateral or (ii) fourteen (14) days after the Petition Date, or such other date as may be agreed by the Global Debtors, the SO5 Digital Debtors, the Prepetition Agent, and the Required DIP Lenders (as defined in the Global DIP Orders).

33.     In connection with this agreement, these parties have also agreed to establish an escrow <u>in connection with intercompany claims for the initial interim period as set forth in the Interim Order, which provides that:</u>

 a. The SO5 Digital Debtors are authorized and directed to deposit $350,000 of cash in a segregated account in accordance with the Approved Budget approved in connection with the SO5 Digital Debtors' Motion (the "***Intercompany Claim Escrow***").[6]

 b. The SO5 Digital Debtors are authorized, but not directed, to make payments of Intercompany Claim Allocation Escrow funds to the Global Debtors upon: (a) agreement of the SO5 Digital Debtors, Global Debtors, Prepetition Agent (as defined in the SO5 Digital Debtors' Motion), and the Required DIP Lenders (as defined in the Global DIP Orders); or (b) entry of a further order of this Court.

 c. The SO5 Digital Debtors will maintain any Intercompany Claim Escrow funds not paid to the Global Debtors in the Intercompany Claim Escrow until: (a) further order of this Court; or (b) agreement of the SO5 Digital Debtors, Global Debtors, Prepetition Agent, and Required DIP Lenders (as defined in the Global DIP Orders) that such funds are no longer required to be maintained in the Intercompany Claim Escrow at which time the excess funds shall be released to the SO5 Digital Debtors.  This Paragraph is without prejudice to the SO5 Digital Debtors' ability to pay intercompany claims to the Global Debtors in accordance with the Approved Budget.

 d. The Global Debtors, at the request of the Required DIP Lenders (as defined in the Global DIP Orders), reserve all rights to cease payments on behalf of, or allocable to, the SO5 Digital Debtors. Any and all rights of the SO5 Digital Debtors, Prepetition Agent or other party-in-interest to object to, contest, or seek relief from the Court in connection with any such action by the Global Debtors are reserved and not waived.

---

[6] For the avoidance of doubt, nothing in the Interim Order or in any budget approved in connection with the SO5 Digital Debtors' Motion to approve the use of cash collateral constitutes a waiver of any defenses or other rights with respect to any claim or an admission of liability on any claim by the Global Debtors or the SO5 Digital Debtors. All parties' rights are reserved with respect to any allocation of costs between or among the SO5 Digital Debtors and Global Debtors.

34.     The Intercompany Claim Escrow is the result of negotiations among the SO5 Digital Debtors, Global Debtors, Prepetition Agent, and the Required DIP Lenders (as defined in the Global DIP Orders) and provides a mechanism for the reconciliation and payment the value of payments made by the Global Debtors on behalf or for the benefit of the SO5 Digital Debtors. Absent such an agreement, the SO5 Digital Debtors could potentially lose access to operational functions handled by the Global Debtors, threatening its ability to conduct operations and putting the SO5 Digital Debtors' efforts to maximize the value of the estate for its creditors at serious risk.

### E.     Automatic Stay Should Be Modified to a Limited Extent

35.     The Interim Order contemplates a modification of the automatic stay to effectuate the terms and provisions of the Interim Order, including, to permit the SO5 Digital Debtors to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claims, and to permit the Prepetition Agent to make a Termination Declaration upon an Event of Default or a Cash Collateral Termination Event, but requires the Prepetition Agent to obtain any further relief from the automatic stay from the Court, after notice and a hearing, at which the Court can craft appropriate relief.

36.     Stay modifications of this kind are typically approved by courts when requested in connection with a debtors' request to use Cash Collateral.  *See, e.g.*, *EP Energy Corporation, et al.*, No. 19-35654 (MI) (Bankr. S.D. Tex. Oct. 4, 2019) (Docket No. 62) (approving provision modifying automatic stay in connection with debtors' use of cash collateral); *In re Jones Energy, Inc.*, No. 19-32112 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2019) (Docket No. 78) (same);  *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. Oct. 10, 2018) (Docket No. 92) (same); *In re Seadrill Ltd.*, No. 17-60079 (DRJ) (Bankr. S.D. Tex. Sept. 13, 2017) (Docket No. 98) (same); *In re Sherwin Alumina Co., LLC*, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13,

2016) (Docket No. 76) (same).

37.     Here, the stay relief provisions are a reasonable exercise of the SO5 Digital Debtors' business judgment, are appropriate under the present circumstances, and, accordingly, should be approved.

### F.     Interim Relief Should Be Granted

38.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than fourteen days after the service of such motion. Upon request, however, the Court is authorized to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral where, as here, interim relief is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing."   Fed. R. Bankr. P. 4001(b)(2). Furthermore, the Complex Case Procedures provide that "[o]n motion by the debtors, a hearing (the "Initial Financing Hearing") will routinely be conducted as a first-day hearing to consider . . . cash collateral use[.]" Complex Case Procedures, ¶ C.5.

39.     In evaluating requests for interim relief, courts generally apply the same business judgment standard applicable to other business decisions. *See, e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. at 40. Courts in this district routinely authorize debtors to use cash collateral on an interim basis to prevent immediate and irreparable harm to their estates. *See, e.g.*, *EP Energy Corporation, et al.*, No. 19-35654 (MI) (Bankr. S.D. Tex. Oct. 4, 2019) (Docket No. 62) (approving debtors' use of cash collateral on an interim basis); *In re Jones Energy, Inc.*, No. 19-32112 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2019) (Docket No. 78) (same); *In re Westmoreland CoalCo.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. Oct. 10, 2018) (Docket No. 92) (same); *In re  Seadrill Ltd.*, No. 17-60079 (DRJ) (Bankr. S.D. Tex. Sept. 13, 2017) (Docket No. 98) (same); *In re Sherwin Alumina Co., LLC*, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13, 2016) (Docket No. 76) (same).

40.     Here, the SO5 Digital Debtors and their estates will suffer immediate and

irreparable harm if the relief requested herein is not granted on an interim basis. The SO5 Digital Debtors have insufficient cash to fund their operations and administer the cases without access to Cash Collateral during the Interim Period. Accordingly, the Court should grant the relief requested herein on an interim basis.

### G. Court Should Schedule a Second Interim Hearing and Final Hearing

41.     Pursuant to Bankruptcy Rule 4001(b)(2), the SO5 Digital Debtors request that the Court schedule a hearing to consider entry of the Second Interim Order, and ultimately a Final Hearing to consider a Final Order on use of cash collateral.   The SO5 Digital Debtors request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first class mail upon the notice parties listed below and that such notice of the Final Hearing be deemed sufficient under Bankruptcy Rule 4001(b)(3).  The SO5 Digital Debtors further request that the Court consider such notice of the Second Interim Hearing to be sufficient notice under Bankruptcy Rule 4001(b)(2).

### EMERGENCY CONSIDERATION

42.     Pursuant to Bankruptcy Local Rule 9013-1, the SO5 Digital Debtors respectfully request emergency consideration of this Motion under Bankruptcy Rule 6003, which provides that the Court may grant relief within the first twenty-one (21) days after the Petition Date to the extent such relief is necessary to avoid immediate and irreparable harm.  As described herein and in the First Day Declaration, the relief requested is essential to avoid the immediate and irreparable harm that would be caused by the SO5 Digital Debtors' inability to transition smoothly into chapter 11.  Accordingly, the SO5 Digital Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

### REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

43.     To implement the foregoing successfully, the SO5 Digital Debtors request that the

Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the SO5 Digital Debtors.  Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## RESERVATION OF RIGHTS

44.     Nothing contained herein is intended to be or shall be deemed, as applicable, as (i) an implication or admission as to the validity of any claim against the SO5 Digital Debtors, (ii) a waiver or limitation of the SO5 Digital Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of, any claim, (iii) a waiver or limitation of the SO5 Digital Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) a waiver of the obligation of any party in interest to file a proof of claim, (v) an agreement or obligation to pay any claims, (vi) a waiver of any claims or causes of action that may exist against any creditor or interest holder, or (vii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be, and should not be construed as, an admission as to the validity of any claim or a waiver of the SO5 Digital Debtors' or any other party in interest's rights to dispute such claim subsequently.

## NOTICE

45.     Notice of this Motion has been or will be provided to: (a) the U.S. Trustee; (b) the United States Attorney's Office for the Southern District of Texas; (c) those creditors holding the

thirty largest unsecured claims against the Debtors' estates; (d) counsel to the DIP Agents; (e) counsel to the DIP Lenders; and (f) counsel to the SO5 Digital Debtors' term loan lender.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

<h3 style="text-align:center"><u>NO PREVIOUS REQUEST</u></h3>

46.     No previous request for the relief sought herein has been made by the SO5 Digital Debtors to this or any other court.

WHEREFORE the SO5 Digital Debtors respectfully request entry of an order in substantially the form as the Interim Order filed herewith and granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

*[Remainder of page intentionally blank]*

Dated: January 14, 2026
      Houston, Texas

                             Respectfully submitted,

                        */s/ Jarrod B. Martin*
                        **BRADLEY ARANT BOULT CUMMINGS LLP**
                        Jarrod B. Martin (TX Bar No. 24070221)
                        Michael K. Riordan (TX Bar No. 24070502)
                        600 Travis Street, Suite 5600
                        Houston, Texas 77060
                        Telephone:    (713) 576- 0300
                        Facsimile:     (713) 547-0301
                        Email: jbmartin@bradley.com
                                mriordan@bradley.com

                        -and-

                        James Bailey (TX Bar No. 24108289)
                        1819 Fifth Avenue N.
                        Birmingham, AL 35203
                        Telephone: (205) 521-8000
                        Facsimile: (205) 488-6913
                        Email:      jbailey@bradley.com

                        *Proposed Counsel to the SO5 Digital Debtors and SO5*
                        *Digital Debtors in Possession*

**<u>CERTIFICATE OF ACCURACY</u>**

In accordance with Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency with respect to the SO5 Digital Debtors are true and accurate to the best of my knowledge.


/s/ *Jarrod B. Martin*
Jarrod B. Martin



**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


/s/ *Jarrod B. Martin*
Jarrod B. Martin