**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| SAKS GLOBAL ENTERPRISES LLC, *et al*.,[1] | Case No. 26-90103 (ARP) |
| Debtors. | (Joint Administration Requested)<br>(Emergency Hearing Requested) |

**SO5 DIGITAL DEBTORS' <u>EMERGENCY</u> MOTION FOR INTERIM AND
FINAL ORDERS (I) AUTHORIZING SO5 DIGITAL DEBTORS TO
(A) CONTINUE TO MAINTAIN THEIR CASH MANAGEMENT SYSTEM,
(B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO,
AND (C) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS;
(II) WAIVING CERTAIN OPERATING GUIDELINES; (III) SUSPENDING
TIME TO COMPLY WITH SECTION 345(b) OF THE BANKRUPTCY
<u>CODE; AND (IV) GRANTING RELATED RELIEF</u>**

---

**Emergency relief has been requested.  Relief is requested not later than 4:00 p.m. (prevailing Central Time) on January 14, 2026.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on January, 2026, at 4:00 p.m.  (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street.**

**Participation at the hearing will only be permitted by an audio and video connection.  Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number. Judge Pérez's conference room number is 282694.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Pérez's homepage.  The meeting code is "Judge Pérez".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Saks.  The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281.  The following Debtors are represented by Bradley Arant Boult Cummings LLP: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively the "<u>SO5 Digital Debtors</u>").  The remaining Debtors (collectively, the "<u>Global Debtors</u>") are represented by Haynes and Boone, LLP and Willkie Farr & Gallagher LLP.

> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Pérez's homepage.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The SO5 Digital Debtors, as debtors and debtors in possession in the above-captioned cases, respectfully represent as follows in support of this motion (the "Motion"):[2]

## RELIEF REQUESTED

1.      The SO5 Digital Debtors seek entry of interim and final orders, substantially in the forms attached hereto (the "Interim Order" and the "Final Order," and, collectively, the "Proposed Orders"), (a) authorizing, but not directing, the SO5 Digital Debtors to (i) continue to maintain their existing cash management system, including bank accounts and business forms, (ii) continue Intercompany Transactions (as defined herein) among and between the SO5 Digital Debtors and the Global Debtors or non-Debtor affiliates, including the non-debtor foreign affiliates (collectively, the "Non-Debtor Affiliates"), in the ordinary course of business, and (iii) honor certain prepetition obligations related thereto; (b) waiving certain operating guidelines; (c) suspending the time to comply with section 345(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), on an interim basis, to the extent applicable; and (d) granting related relief.

2.      To enable the SO5 Digital Debtors to carry out the relief requested, the SO5 Digital Debtors also request that the United States Bankruptcy Court for the Southern District of Texas (the "Court") authorize the Banks (as defined below) to continue to service and maintain the Bank Accounts as accounts of the SO5 Digital Debtors as debtors in possession without interruption and

---

[2]      Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the *Declaration of Andrew D.J. Hede in Support of SO5 Digital Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed concurrently herewith and incorporated herein by reference.

in the usual and ordinary course, and to receive, process, honor, and pay any and all checks and drafts drawn on, or electronic transfer requests made on, the Bank Accounts (as defined below) after the Petition Date by the holders or makers thereof, as the case may be, in accordance with the orders of the Court.  Finally, the SO5 Digital Debtors request that the Court schedule a final hearing within approximately twenty-one days after the commencement of these cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") to consider entry of the Final Order.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), to the Court's entry of a final order in connection with this Motion.

4.      Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory and legal predicates for the relief requested herein are sections 105, 345, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, rules 1075-1 and 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the *Procedures for Complex Cases for the Southern District of Texas*.

## BACKGROUND

6.      On January 14, 2026 (the "Petition Date"), the Debtors[3] filed voluntary petitions in these Chapter 11 Cases in the Court.  The Debtors are authorized to operate their businesses and

---

[3]   For the avoidance of doubt, "Debtors" means, collectively, the Global Debtors and the SO5 Digital Debtors.  In 2021, the Global Debtors and the SO5 Digital Debtors entered into a series of agreements that resulted in the SO5 Digital Debtors effectively operating as a standalone company within the broader Saks corporate group. Notwithstanding, certain operations remain consolidated within one or more of the Global Debtors.  Consequently, from time to time in the ordinary course of business, the Global Debtors make certain

manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      No official committee has been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

8.      Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration.

## THE CASH MANAGEMENT SYSTEM

9.      In the ordinary course of business, the SO5 Digital Debtors utilize and maintain a cash management system that includes, among other things, operating, collection, and disbursement accounts (collectively, the "Cash Management System"). The Cash Management System is integral to the operation and administration of the SO5 Digital Debtors' businesses. The Cash Management System allows the SO5 Digital Debtors to efficiently collect, transfer, and disburse funds generated through the SO5 Digital Debtors' operations and to accurately record such collections, transfers, and disbursements as they are made. The Cash Management System also allows the SO5 Digital Debtors to forecast financial performance, ensure cash availability and liquidity, pay their financial obligations, and maintain reporting for the entire enterprise by way of cash sweeps, checks, automatic clearing house ("ACH") transfers, and wire transfers. The SO5

---

payments for the benefit of or allocable to the SO5 Digital Debtors for which the SO5 Digital Debtors remit reimbursement to the applicable Global Debtor. To the extent the Global Debtors make any payments for the benefit of or allocable to the SO5 Digital Debtors, in accordance with the Approved Budget set forth in the Global Debtors' DIP Orders, the Global Debtors shall be entitled to assert an administrative priority claim against the applicable SO5 Digital Debtor(s); provided that all rights and defenses of all parties in interest shall be fully preserved with respect to any payments for the benefit of or allocable to the SO5 Digital Debtors (and whether or not such payments are for the benefit of or allocable to the SO5 Digital Debtors) after the earlier of (i) the second interim hearing on the SO5 Digital Debtors' motion for use of cash collateral or (ii) fourteen (14) days after the Petition Date, or such other date as may be agreed by the Global Debtors, the SO5 Digital Debtors, the SO5 Digital Debtors prepetition agent, the DIP Agents, and the DIP Lenders (as defined in the Global Debtors' DIP Orders).

Digital Debtors maintain daily oversight over the Cash Management System. The Cash Management System includes controls for entering, processing, and releasing funds, including in connection with any Intercompany Transaction (as defined below). Given the economic and operational scale of the SO5 Digital Debtors' businesses, any disruption to the Cash Management System will have an immediate and significant adverse effect on the SO5 Digital Debtors' business and operations to the detriment of their estates and all stakeholders. The main components of the Cash Management System are described below.

**I.     The Bank Accounts and Flow of Funds.**

10.     The SO5 Digital Debtors' Bank Accounts are critical to their operations because the Bank Accounts allow the SO5 Digital Debtors to, among other things, fund operations, debt service obligations, and critical disbursements, including, but not limited to, vendor payments, certain governmental and administrative expenses, credit card payments and fees, corporate overhead expenses, and certain state and business tax obligations. The Bank Accounts also allow the SO5 Digital Debtors to engage in necessary Intercompany Transactions and efficiently maintain the Cash Management System. The SO5 Digital Debtors rely upon the timely and efficient collection, transfer, and disbursement of funds throughout the Cash Management System. In the past year, the SO5 Digital Debtors estimate that approximately $26.6 million of cash collections and $25.9 million in disbursements flow through the Cash Management System on a monthly basis. The Cash Management System is typical of e-commerce operations of a similar size and is used to manage the cash flow of the SO5 Digital Debtors' operations in a cost-effective, efficient manner. Closing or changing the SO5 Digital Debtors' existing Bank Accounts at this time would cause undue harm to the SO5 Digital Debtors' business during a period where the need for efficiency is paramount.

A.    **The Bank Accounts.**

11.    The Cash Management System includes eleven (11) bank accounts (the "<u>Bank Accounts</u>"), which the SO5 Digital Debtors maintain at Citizens Bank, N.A. ("<u>Citizens Bank</u>") and Silicon Valley Bank ("<u>SVB</u>" and, collectively with Citizens Bank, the "<u>Banks</u>," and each a "<u>Bank</u>").   The Banks are financially stable institutions and insured by the Federal Deposit Insurance Corporation ("<u>FDIC</u>").   A list of the SO5 Digital Debtors' Bank Accounts, as of the Petition Date, is attached hereto as **<u>Exhibit A</u>**.[4]

B.    **Description of Funds Processing.**

12.    The bulk of the SO5 Digital Debtors' cash on hand is comprised of proceeds from its ongoing business operations. As of the Petition Date, there is approximately $8 million cash on hand in the Bank Accounts.

13.    The SO5 Digital Debtors have a master operating account, ending in 1044, at Citizens Bank (the "<u>SO5 Digital Master Operating Account</u>").  The SO5 Digital Master Operating Account is maintained by Debtor Saks OFF 5TH LLC.

14.    As set forth in greater detailer below, in the ordinary course of business, the SO5 Digital Debtors currently operate across various accounts, including the SO5 Digital Master Operating Account, deposit accounts, collections account, and disbursement account.  As of the Petition Date, cash generally flows through the Cash Management System as follows:

*Receipts*.

- **SO5 Digital MMDA:**   The SO5 Digital Debtors maintain one money market deposit account, ending in 4289, at Citizens Bank (the "<u>SO5 Digital MMDA</u>").  The SO5 Digital Debtors do not utilize the SO5 Digital MMDA in the ordinary course

---

[4]    Exhibit A contains a complete list of the Bank Accounts of which the SO5 Digital Debtors are aware as of the Petition Date. To the extent that any Bank Accounts have been inadvertently omitted from the list, the SO5 Digital Debtors request that the Interim Order and the Final Order granting the relief sought herein apply to such Bank Accounts.

of business and fund the SO5 Digital MMDA account with the lowest amount necessary in order to maintain the account.

- **Credit Card Collections:**  The SO5 Digital Debtors maintain one credit card collections account, ending in 1001, at Citizens Bank (the "SO5 Digital Credit Card Collections Account").  Credit card sales from the SO5 Digital Debtors' e-commerce transactions are processed through third-party processors and the proceeds are deposited, net of fees, chargebacks, and returns, directly into the SO5 Digital Credit Card Collections Account.  Amounts are swept daily into the SO5 Digital Master Operating Account.

*Disbursements.*[5]

- **SO5 Digital Debtors' Disbursement Account:**  The SO5 Digital Debtors maintain one master disbursement account, ending in 1052, at Citizens Bank (the "SO5 Digital Disbursement Account"), into which funds are deposited from the SO5 Digital Master Operating Account and subsequently remitted to five zero balance disbursement sub-accounts (the "SO5 Digital Sub-Accounts"), also held at Citizens Bank.  The SO5 Digital Sub-Accounts remit payments that fund various daily operations (through both check and wire transfers).  When disbursements need to be made, the SO5 Digital Sub-Accounts draw down on amounts available in the SO5 Digital Disbursement Account.  Any excess funding in the SO5 Digital Disbursement Account is swept back to the SO5 Digital Master Operating Account.

## II.    The SVB Credit Cards Program.

15.    As part of their Cash Management System, the SO5 Digital Debtors have an employee purchase card program with SVB (the "SVB Credit Cards") with an aggregate spending limit of $300,000 (the "Credit Card Program").  Historical utilization has been approximately $40,000 per month.  The SO5 Digital Debtors maintain a cash balance with SVB in the amount of $300,000 (the "SVB Collateral Account") as security for any balances on the SVB Credit Cards.[6] The SVB Credit Cards have historically been used to purchase supplies, miscellaneous expenses at the distribution center, and for employee travel and expenses.

---

[5]    In addition to the Bank Accounts described herein, the SO5 Digital Debtors maintain one dormant Bank Account at Citizens Bank (ending in 6653) (the "SO5 Digital Dormant Bank Account"). The OFF 5TH Dormant Bank Account is maintained by Debtor Saks OFF 5TH Holdings LLC.  Since the OFF 5TH Dormant Bank Account holds zero funds and is not used by the Debtors for any operations, such account is not described herein.  The OFF 5TH Dormant Bank Account is reflected on Exhibit A hereto.

[6]    In addition to the collateral account at SVB, the SO5 Digital Debtors have one inactive account at SVB (ending in 9985) that collects minimal interest earned on the SVB Collateral Account and is reflected on Exhibit A hereto.

16.     The SO5 Digital Debtors seek authority, but not direction, to continue the use of the Credit Card Program and to pay prepetition or postpetition amounts, if any, owed with respect thereto, including any administrative fees and charges owed in connection therewith, in each case, in the ordinary course of business.

**III.     Intercompany Transactions.**

17.     In the ordinary course of business, the SO5 Digital Debtors engage in business relationships with the Global Debtors and Non-Debtor Affiliates (the "Intercompany Transactions").  The Intercompany Transactions arise primarily on account of operating expenses and result in intercompany receivables and payables (the "Intercompany Claims"), which are generally satisfied in cash.  Stated differently, the SO5 Digital Debtors rely upon such Intercompany Transactions to maintain operations in the ordinary course of business.

18.     The Debtors generally account for and record all Intercompany Transactions and Intercompany Claims in their respective books and records, the results of which are concurrently recorded on the SO5 Digital Debtors' balance sheets and regularly reconciled.  The SO5 Digital Debtors maintain records of the Intercompany Transactions and can ascertain, trace, and account for all Intercompany Transactions.

19.     If the Intercompany Transactions were discontinued, the Cash Management System and related administrative controls, as well as the SO5 Digital Debtors' broader business operations, would likely be disrupted to the detriment of the SO5 Digital Debtors, their estates, and their creditors.  Accordingly, the SO5 Digital Debtors seek authority, but not direction, to satisfy Intercompany Claims in the ordinary course of business, but subject to the terms of any orders entered by this Court authorizing the use of cash collateral (the "SO5 Cash Collateral Order") governing the SO5 Digital Debtors and any budget approved in connection therewith.

IV.     **Bank Fees.**

20.     In the ordinary course of business, the SO5 Digital Debtors incur periodic service charges and other fees in connection with maintaining the Cash Management System (collectively, the "Bank Fees").  During the past twelve months, the SO5 Digital Debtors paid on average approximately $12,500 in Bank Fees each month.  The SO5 Digital Debtors seek authority, but not direction, to continue paying the Bank Fees, including any prepetition Bank Fees, in the ordinary course on a postpetition basis, consistent with historical practices.

V.      **Credit Card Processors.**

21.     In the ordinary course of business, the SO5 Digital Debtors pay certain fees, charges, refunds, chargebacks, reserves, and other amounts due and owing to various credit card processors pursuant to certain merchant processing agreements (each, a "Merchant Processing Agreement").  The credit card processor collects customer payments, deducts certain amounts, including processing fees, offsets related to refunds and chargebacks, and reserve account amounts, from the customer payment amounts and then remits the remaining amounts to the SO5 Digital Debtors on the terms set forth in the applicable Merchant Processing Agreement.  Certain credit card processors may implement reserves under the Merchant Processing Agreements to protect against any chargeback exposure.

VI.     **Business Forms.**

22.     As part of the Cash Management System, the SO5 Digital Debtors utilize various pre-printed business forms, including checks, letterhead, correspondence forms, invoices, and other business forms (collectively, the "Business Forms"), in the ordinary course of business.  To minimize expenses, the SO5 Digital Debtors seek authority, but not direction, to continue to use all Business Forms in substantially the form used immediately prior to the Petition Date, without reference to the SO5 Digital Debtors' status as debtors in possession.  Given the expansive scope

of the SO5 Digital Debtors' business operations, requiring the SO5 Digital Debtors to change their existing Business Forms would impose needless expense on the SO5 Digital Debtors' estates.

## VII.   Compliance with U.S. Trustee Guidelines and Bankruptcy Code.

23.   Pursuant to the *Region 7 Guidelines for Debtors-in-Possession* established by the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee," and such guidelines, the "U.S. Trustee Guidelines"), the U.S. Trustee generally requires chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository (an "Authorized Depository") that agrees to comply with the requirements of the U.S. Trustee's office.  Further, section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  Section 345(b) of the Bankruptcy Code requires a debtor's bank to post a bond, unless a debtor's funds are "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States."  11 U.S.C. § 345(b).

24.   The majority of the SO5 Digital Debtors' financial transactions—including, but not limited to, payroll, tax payments, and the majority of vendor payments—route through Bank Accounts located at Citizens Bank, which is an Authorized Depository.  SVB is not an Authorized Depository.

## BASIS FOR RELIEF REQUESTED

## I.   Continued Use and Maintenance of the Cash Management System Is Warranted.

25.   The SO5 Digital Debtors maintain the Cash Management System in the ordinary course of their business operations, which allows them to efficiently administer their cash and financial affairs.  Maintenance of the Cash Management System, including the Credit Card

Program, is important for preserving and enhancing the value of the SO5 Digital Debtors' businesses and for administering these Chapter 11 Cases.

26.     As described herein, any disruption to the Cash Management System would have an immediate adverse impact on the SO5 Digital Debtors' businesses and would impair the SO5 Digital Debtors' ability to successfully administer these Chapter 11 Cases.  Continued maintenance of the Cash Management System is necessary to, among other things, ensure that the SO5 Digital Debtors may (a) honor obligations that accrued or any payments that were made or issued prepetition, but that remain outstanding as of the Petition Date (to the extent authorized by the Court), and (b) avoid any unnecessary interruption of their Cash Management System, including the flow of funds among and between the Debtors.  It would be time-consuming, difficult, and costly for the SO5 Digital Debtors to establish an entirely new system of accounts and a new cash management system, and particularly impractical given that the SO5 Digital Debtors anticipate moving through these Chapter 11 Cases as expeditiously as possible.  The attendant delays from revising cash management procedures, redirecting receipts and implementing new payment protocols would create unnecessary pressure on the Debtors at this critical juncture.

27.     Allowing the SO5 Digital Debtors to utilize and maintain the Cash Management System is consistent with section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business, without notice or a hearing." 11 U.S.C. § 363(c)(1).  Section 363(c)(1) is intended to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business.  See, e.g., In re HLC Props., Inc., 55 B.R. 685, 686 (Bankr. N.D. Tex. 1985) (finding "no need to further burden the docket or the staff of the Court with a superfluous order" when a transaction is in the ordinary course of business); In re Lavigne, 114 F.3d 379, 384 (2d Cir. 1997); In re Crystal

11

Apparel, Inc., 207 B.R. 406, 409 (S.D.N.Y. 1997).  Included within the purview of section 363(c) is a debtor's ability to continue the routine transactions necessitated by its cash management system.  See In re Amdura Corp., 75 F.3d 1447, 1453 (10th Cir. 1996).  Courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in relevant part, 997 F.2d 1039, 1061 (3d Cir. 1993); see also In re Southmark Corp., 49 F.3d 1111, 1114 (5th Cir. 1995) (maintaining an existing cash management system allows a debtor "to administer more effectively and efficiently its financial operations and assets").

28.     The Court may also exercise its equitable powers to grant the relief requested herein.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); see also In re Trevino, 615 B.R. 108, 143 (Bankr. S.D. Tex. 2020) (emphasizing that section 105(a) grants courts authority to grant injunctive relief and other equitable remedies to ensure the orderly conduct of reorganization proceedings); In re Wilborn, 401 B.R. 872, 896 (Bankr. S.D. Tex. 2009) (same); CoServ, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (noting that section 105 of the Bankruptcy Code provides the authority for a debtor in possession to pay prepetition claims).

29.     To minimize the disruption caused by the filing of these Chapter 11 Cases and maximize the value of the SO5 Digital Debtors' estates, the SO5 Digital Debtors request authority to continue to utilize the Cash Management System during the pendency of these Chapter 11 Cases. The SO5 Digital Debtors have used the Cash Management System for years.  Parties in interest will not be harmed by the SO5 Digital Debtors' continued maintenance of the Cash Management

System, including the Bank Accounts, because the SO5 Digital Debtors will implement appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred prior to the Petition Date.   Specifically, with the assistance of their professionals and consistent with prior practice, the SO5 Digital Debtors will continue to maintain detailed records of all transfers of cash, if any, and record all transactions on applicable accounts. Therefore, the SO5 Digital Debtors should be permitted to maintain their cash and transfer funds among the Bank Accounts, if needed, in accordance with the Cash Management System.

**II.     The Court Should Authorize the SO5 Digital Debtors to Maintain the Bank Accounts.**

30.     The U.S. Trustee Guidelines require that the debtor in possession open new bank accounts and close all existing accounts.  This requirement was designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and to help protect against the inadvertent payment of prepetition claims and payments.  The U.S. Trustee Guidelines also require opening a separate operating account and a special tax payment account into which all funds that may be collected and/or payable during the pendency of a debtor's case will be deposited.  This requirement is meant to provide cash collateral for, and ensure payment of, certain priority tax claims such as federal and state payroll taxes and sales taxes.

31.     To avoid disruption to the SO5 Digital Debtors' operations, the SO5 Digital Debtors request that they be permitted to continue to maintain the existing Bank Accounts. Allowing the SO5 Digital Debtors to maintain the Bank Accounts will assist the Debtors in accomplishing a smooth transition to operations under chapter 11.  Moreover, through their internal controls, the SO5 Digital Debtors can distinguish between prepetition and postpetition obligations and payments without closing the Bank Accounts and opening new ones.  In addition, Citizens Bank, where the SO5 Digital Debtors maintain their operating and disbursement Bank Accounts, has been or is in the process of being advised not to honor checks, advises, drafts, or

13

other requests for payment issued prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and as directed by the SO5 Digital Debtors.  Therefore, the goals of the U.S. Trustee Guidelines can be satisfied, and the SO5 Digital Debtors' creditors can be protected, without closing the Bank Accounts.

32.     Although the SO5 Digital Debtors are requesting a waiver of the requirement that they close all Bank Accounts, the SO5 Digital Debtors may determine, in their business judgment, that opening new bank accounts and/or closing existing Bank Accounts is in the best interests of the estates.  Nothing contained herein should prevent the SO5 Digital Debtors from opening any additional bank accounts, or closing any existing Bank Accounts, as they may deem necessary and appropriate.  Any new bank account opened by the SO5 Digital Debtors will be established at an institution that is a party to a Uniform Depository Agreement with the U.S. Trustee, at one of the SO5 Digital Debtors' existing Banks, or is willing to immediately execute a Uniform Depository Agreement.

33.     As part of the requested relief, the SO5 Digital Debtors also seek a waiver of the requirement to establish specific bank accounts for tax payments.  The SO5 Digital Debtors' tax obligations can be paid out of the Bank Accounts, and the U.S. Trustee can adequately monitor the flow of funds into, among, and out of the accounts, through the SO5 Digital Debtors' required reporting.  Moreover, the creation of a new debtor in possession account designated solely for tax obligations would be unnecessary and inefficient.

**III.     The Court Should Authorize the SO5 Digital Debtors to Pay Prepetition Amounts Related to Bank Fees.**

34.     In connection with the Cash Management System, the SO5 Digital Debtors request authorization to continue to pay, honor, or deduct from the appropriate account certain Bank Fees. Payment of the Bank Fees will minimize disruption to the SO5 Digital Debtors' operations and is

therefore in the best interests of their estates.  Absent payment of the Bank Fees, the Banks might assert setoff rights against the funds in the Bank Accounts, freeze the Bank Accounts, and/or refuse to provide banking services to the Debtors.  Accordingly, the SO5 Digital Debtors should be permitted, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, to pay and/or reimburse the Banks in the ordinary course of business for any Bank Fees arising prior to or after the Petition Date.

## IV.     The SO5 Digital Debtors Should Be Authorized to Use Existing Check Stock and Related Business Forms.

35.     To avoid material disruption of the Cash Management System and minimize expenses to their estates, the SO5 Digital Debtors request authority to continue using their existing prepetition Business Forms without reference to their status as debtors in possession or any other alteration.  As discussed above, the SO5 Digital Debtors utilize various Business Forms in the ordinary course of their business.  However, the SO5 Digital Debtors make the majority of their cash payments via wires or other electronic transfers rather than via check.  Furthermore, most— if not all—parties doing business with the SO5 Digital Debtors undoubtedly will be aware of the SO5 Digital Debtors' status as debtors in possession.  As a result, changing Business Forms would be an unnecessary additional expense and unduly burdensome.  A failure to permit the SO5 Digital Debtors to maintain and utilize their existing check stock and related Business Forms as set forth herein would:  (a) disrupt the ordinary financial affairs and business operations of the SO5 Digital Debtors; (b) delay the administration of the SO5 Digital Debtors' estates; (c) compromise the SO5 Digital Debtors' internal controls and accounting system; and (d) require the estates to unnecessarily spend money to create new Business Forms.  Accordingly, the requested relief is warranted under the circumstances.

**V.      The Court Should Authorize the Banks to Continue to Service and Administer the SO5 Digital Debtors' Bank Accounts.**

36.      In connection with the foregoing, the SO5 Digital Debtors respectfully request that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the SO5 Digital Debtors, as debtors in possession, without interruption and in the ordinary course of business.  In this regard, the Banks should be authorized (a) to receive, process, honor, and pay all checks and transfers issued by the SO5 Digital Debtors in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) to provide that the Banks may rely on the representations of the SO5 Digital Debtors with respect to whether any check or transfer issued or made by the SO5 Digital Debtors before the Petition Date should be honored pursuant to this Motion (such Banks having no liability to any party for relying on such representations by the SO5 Digital Debtors provided for herein); and (c) to authorize the SO5 Digital Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

37.      The SO5 Digital Debtors respectfully request that the Court authorize the Banks to receive, process, honor, and pay any and all checks, ACH payments and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, whether such checks, drafts, wires, or ACH payments are dated prior to or subsequent to the Petition Date consistent with any order of the Court and governing law; provided, however, that any check, advise, draft, or other notification that the SO5 Digital Debtors advised the Banks to have drawn, issued, or otherwise presented prior to the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

16

38.     The SO5 Digital Debtors also request that, to the extent the Banks honor a prepetition check or other item drawn on any account that is the subject of this Motion either (a) at the direction of the SO5 Digital Debtors; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as the result of an innocent mistake despite the above-described protective measures, such Banks will not be deemed to be liable to the SO5 Digital Debtors, their estates, or any other party on account of such prepetition check or other item honored postpetition.

39.     Both as part of this Motion and in other motions that have been concurrently filed, the SO5 Digital Debtors are requesting authority, but not direction, to pay certain prepetition obligations.  With respect to some of these obligations, the SO5 Digital Debtors may have issued checks prior to the Petition Date that have yet to clear the banking system.  In other instances, the SO5 Digital Debtors will create the relevant check once the Court enters an order permitting the SO5 Digital Debtors to do so.  The SO5 Digital Debtors intend to inform the Banks which checks should be so honored.  Therefore, the SO5 Digital Debtors request that the Banks be authorized to rely on the representations of the SO5 Digital Debtors with respect to whether any check or other payment order drawn or issued by the SO5 Digital Debtors prior to the Petition Date should be honored.  The SO5 Digital Debtors respectfully submit that such relief is reasonable and appropriate because the Bank is not in a position to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

**VI.  A Suspension of Time to Comply with the Requirements of Section 345(b) of the Bankruptcy Code Is Warranted.**

40.     Pursuant to section 345(b) of the Bankruptcy Code, any deposit or other investment made by a debtor, except those insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United

17

States, must be secured by a bond in favor of the United States that is secured by the undertaking of a corporate surety approved by the U.S. Trustee or by the deposit of securities of the kind specified in 31 U.S.C. § 9303.  <u>See</u> 11 U.S.C. § 345(b).  Section 345(b) provides further, however, that a bankruptcy court may allow the use of alternatives to these approved investment guidelines "for cause."  <u>Id.</u>; <u>see</u> also <u>In re Serv. Merch. Co.</u>, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

41.     In <u>Service Merchandise</u>, the court identified the following factors for determining whether cause exists to suspend the requirements of Bankruptcy Code section 345(b):

(a)     the sophistication of the debtor's business;

(b)     the size of the debtor's business operations;

(c)     the amount of investments involved;

(d)     the bank ratings of the financial institutions where the debtor's funds are held;

(e)     the complexity of the case;

(f)     the safeguards in place within the debtor's own business for insuring the safety of the funds;

(g)     the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

(h)     the benefit to the debtor of current practices;

(i)     the harm, if any, to the estate; and

(j)     the reasonableness of the debtor's request for relief from the section 345(b) requirements in light of the overall circumstances of the case.

<u>Service Merchandise</u>, 240 B.R. at 896.  Examining these factors, the <u>Service Merchandise</u> court concluded that "cause" existed in that case because the debtors were "large, sophisticated [companies] with a complex cash management system," with the ability to shift money as needed to insure the safety of their funds.  <u>Id</u>.  Moreover, the benefits to the debtor of suspending the section 345(b) requirements far outweighed any potential harm to the estate, and the failure to

suspend the requirements "would needlessly handcuff this debtor's reorganization efforts."  Id. at 896–97.

42.     As in Service Merchandise, the SO5 Digital Debtors operate a sophisticated enterprise with a complex Cash Management System—inclusive of complex systems within their Cash Management System—that provides the SO5 Digital Debtors with the ability to transfer funds rapidly to ensure their safety.  In light of the Service Merchandise factors and the safety of the Banks that the SO5 Digital Debtors propose to utilize as a continuation of their prepetition practices, the SO5 Digital Debtors believe that sufficient cause exists to allow deviation from the investment guidelines set forth in section 345(b) of the Bankruptcy Code.  Satisfaction of those requirements would impose needless costs on the SO5 Digital Debtors' estates and the process of satisfying those requirements would lead to inefficiencies in the management of the SO5 Digital Debtors' business.

43.     Given the scope of the SO5 Digital Debtors' operations and cash management requirements, it will prove difficult to consolidate all cash activities to the narrow group of financial institutions approved in the U.S. Trustee Guidelines.  Furthermore, any effort to reconfigure the SO5 Digital Debtors' entire Cash Management System could have significant tax or regulatory impacts in numerous jurisdictions and will require extensive time and resources of the SO5 Digital Debtors' estates, to the detriment of all creditors.  The SO5 Digital Debtors' estates and creditors, however, will not be harmed by the SO5 Digital Debtors' maintenance of the status quo as modified by the relief requested herein because of the relatively safe and prudent practices already utilized by the SO5 Digital Debtors.

44.     Moreover, the SO5 Digital Debtors submit that they are in substantial compliance with section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines with respect to the

SO5 Digital Debtors' Bank Accounts.  Pursuant to the U.S. Trustee Guidelines, the U.S. Trustee generally requires chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee's Office.  Here, the vast majority of the SO5 Digital Debtors' cash is held in Bank Accounts at Citizens Bank, which is an Authorized Depository.  The remaining cash in the amount of $300,000 is held at SVB and FDIC insured up to $250,000.  The Banks are well-positioned to perform the depository and cash management functions during these Chapter 11 Cases.

45.     As a result, to the extent that the requirements of section 345 of the Bankruptcy Code are inconsistent, or otherwise conflict, with the SO5 Digital Debtors' Cash Management System or any action taken by the SO5 Digital Debtors in accordance with an order of this Court, the SO5 Digital Debtors respectfully request a thirty day (or such longer period as the SO5 Digital Debtors may request) suspension of time to address any questions that the U.S. Trustee may have regarding the Cash Management System and the SO5 Digital Debtors' compliance with section 345(b) of the Bankruptcy Code to allow the SO5 Digital Debtors to continue their existing cash management practices.  The SO5 Digital Debtors will work in good faith with the U.S. Trustee to address any concerns regarding the continued use of the SO5 Digital Debtors' Bank Accounts on a postpetition basis and, should the U.S. Trustee have concerns regarding the Bank Accounts, make such arrangements as are acceptable to the U.S. Trustee (without prejudice to the SO5 Digital Debtors' right to request further suspensions of time by motion in this Court).

## VII.   Cause Exists to Permit Continued Use of Intercompany Transactions.

46.     As described above, the Debtors enter into certain Intercompany Transactions in the ordinary course of business that are essential to the operations of the SO5 Digital Debtors' businesses.  If the Intercompany Transactions were to be discontinued, the SO5 Digital Debtors'

operations, Cash Management System, and related administrative controls would be disrupted, causing irreparable harm to the SO5 Digital Debtors.

47.     The continuation of the Intercompany Transactions will not prejudice the SO5 Digital Debtors' estates or their creditors.  Among other things, the Intercompany Transactions are part of the normal course of operation of the SO5 Digital Debtors' businesses, which allows the SO5 Digital Debtors' to function effectively and efficiently, thereby benefitting all stakeholders. Further, the SO5 Digital Debtors maintain strict records of transfers of cash and can ascertain, trace, and account for all such Intercompany Transactions.  Accordingly, the SO5 Digital Debtors believe that the continuation of the Intercompany Transactions is in the best interest of the SO5 Digital Debtors' estates and creditors.

48.     Because the SO5 Digital Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among similar enterprises, the SO5 Digital Debtors believe that the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, therefore, do not require the Court's approval.  Yet, precisely because of their routine nature, the continuation of such transactions is integral to the SO5 Digital Debtors' ability to operate their business.  Accordingly, out of an abundance of caution, the SO5 Digital Debtors are seeking authority, but not the obligation, to continue Intercompany Transactions and satisfy any Intercompany Claim in the ordinary course to the extent consistent with any orders entered by this Court authorizing the use of cash collateral governing the SO5 Digital Debtors and any budget approved in connection therewith.

## EMERGENCY CONSIDERATION

49.     Pursuant to Local Rule 9013-1, the SO5 Digital Debtors request emergency consideration of this Motion under Bankruptcy Rule 6003.  Bankruptcy Rule 6003 empowers a

court to grant relief within the first twenty-one days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).  For the reasons discussed above and in the First Day Declaration, an immediate and orderly transition into chapter 11 is critical to the viability of the SO5 Digital Debtors' operations.  The requested relief is necessary for the SO5 Digital Debtors to operate their business in the ordinary course, preserve the ongoing value of their operations, and maximize the value of their estates for the benefit of all stakeholders.  The SO5 Digital Debtors have demonstrated that the requested relief "is needed to avoid immediate and irreparable harm" as contemplated by Bankruptcy Rule 6003, and, as a result, the SO5 Digital Debtors request that the Court approve the relief requested in this Motion on an emergency basis.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

50.     The SO5 Digital Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the SO5 Digital Debtors seek in this Motion is necessary for the SO5 Digital Debtors to operate their business without interruption and to preserve the value of their estates.  Accordingly, the SO5 Digital Debtors respectfully request that the Court waive the fourteen day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## **RESERVATION OF RIGHTS**

51.     Nothing in the Proposed Order or this Motion (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the SO5 Digital Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the SO5 Digital Debtors and their estates with respect to the validity, priority, or amount of any claim against the SO5 Digital Debtors and their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the SO5 Digital Debtors and their estates with respect to any and all claims or causes of action; or (d) shall be construed as a promise to pay a claim.

## **NOTICE**

52.     Notice of this Motion has been or will be provided to:  (a) the U.S. Trustee; (b) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates; (c) counsel to the DIP Agent; (d) counsel to the DIP Lenders; (e) the Internal Revenue Service; (f) counsel to the SO5 Digital Debtors' term lender; and (g) the Banks.  In light of the nature of the relief requested herein, the SO5 Digital Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## <u>CONCLUSION</u>

WHEREFORE, the SO5 Digital Debtors request that the Court enter the Proposed Orders,

granting the relief requested herein and such other and further relief as is just and proper.

Houston, Texas
Dated: January 14, 2026

<u>/s/ Jarrod B. Martin</u>
**BRADLEY ARANT BOULT CUMMINGS LLP**
Jarrod B. Martin (TX Bar No. 24070221)
Michael K. Riordan (TX Bar No. 24070502)
600 Travis Street, Suite 5600
Houston, Texas 77060
Telephone:     (713) 576- 0300
Facsimile:     (713) 547-0301
Email: jbmartin@bradley.com
          mriordan@bradley.com

-and-

James Bailey (TX Bar No. 24108289)
1819 Fifth Avenue N.
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 488-6913
Email:      jbailey@bradley.com

*Proposed Counsel to the SO5 Digital Debtors*

**<u>Certificate of Accuracy</u>**

In accordance with Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency with respect to the Global Debtors are true and accurate to the best of my knowledge.

/s/ <u>*Jarrod B. Martin*</u>
Jarrod B. Martin

**<u>Certificate of Service</u>**

I certify that on the date hereof, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ <u>*Jarrod B. Martin*</u>
Jarrod B. Martin
