United States Bankruptcy Court
Southern District of Texas

**ENTERED**

January 22, 2026

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SAKS GLOBAL ENTERPRISES LLC, *et al.*,[1] | Case No. 26-90103 (ARP) |
| Debtors. | (Jointly Administered) (Emergency Hearing Requested) |

**SECOND INTERIM ORDER (I) AUTHORIZING SO5 DIGITAL DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS, (III) MODIFYING AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] of the SO5 Digital Debtors, as debtors and debtors in possession in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***"), pursuant to sections 105, 361, 362, 363, 503, 506, and 507 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and rules 2002-1(b), 4001-1(b), and 9013-1 of the United States Bankruptcy Court for the Southern District of Texas and the Procedures for Complex Chapter 11 Bankruptcy Cases (collectively, the "***Local Rules***"), seeking entry of the first interim order [ECF No. 234] (the "***First Interim Order***") and this second interim order (this "***Second Interim Order***"), among other things:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Saks. The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281. The following Debtors are represented by Bradley Arant Boult Cummings LLP: Saks OFF 5TH Holdings, LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner, Inc., and Luxury Outlets USA, LLC (collectively the "***SO5 Digital Debtors***"). The remaining Debtors (collectively, the "***Global Debtors***") are represented by Haynes and Boone, LLP and Willkie Farr & Gallagher LLP. The term "***Debtors***" as used herein refers collectively to the SO5 Digital Debtors and the Global Debtors.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

a.      authorizing the SO5 Digital Debtors to use Prepetition Collateral and Postpetition Collateral[3] (each as defined herein), including all property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code) of the Prepetition Lenders (the "***Cash Collateral***"), that the SO5 Digital Debtors are holding or may obtain, pursuant to sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and 6004 and in accordance with the Approved Budget (as defined herein);

b.      authorizing the Prepetition Obligors (as defined herein) to provide adequate protection to the Prepetition Secured Creditors, including with respect to the extent of any Diminution in Value (each as defined herein), which adequate protection shall include certain adequate protection liens, claims, and payments described herein;

c.      approving certain stipulations by the SO5 Digital Debtors with respect to the Prepetition Credit Documents and the Prepetition Collateral (each as defined herein) as set forth herein;

d.      waiving any applicable stay and provisions for immediate effectiveness of this Second Interim Order;

---

[3]   "***Postpetition Collateral***" means all Prepetition Collateral and all personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Prepetition Obligors (as defined herein), including, without limitation: (i) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock or equivalents of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, cause of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds provided, that the rights or liens granted hereunder shall not interfere with any rights held by a landlord to insurance proceeds for damages to a landlord's property; (ii) all proceeds of leased real property; (iii) the proceeds of actions brought under section 549 of the Bankruptcy Code to recover any postpetition transfer of Postpetition Collateral; (iv) subject to entry of a Final Order (other than with respect to proceeds of actions brought under section 549 of the Bankruptcy Code which shall become Postpetition Collateral upon entry of the First Interim Order) the proceeds of actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents (subparagraphs (iii) and (iv), the "***Avoidance Actions***"); (v) subject to entry of a Final Order, proceeds of the SO5 Digital Debtors' rights under sections 506(c) (solely to the extent such rights result from the use of the Postpetition Collateral and are, therefore, enforceable against parties other than the Prepetition Secured Creditors) and 550 of the Bankruptcy Code; and (f) all Postpetition Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date. Notwithstanding the foregoing, Postpetition Collateral shall not include (i) the Debtors' real property leases (but shall include all proceeds of such leases) and no liens granted pursuant to the First Interim Order or this Second Interim Order shall attach to the Debtors' leasehold interests, and (ii) any security deposits (in possession of the landlord) or the Debtors' interests, if any, in pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents.

e.      vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Second Interim Order;

f.      granting related relief; and

g.      scheduling a second interim hearing (the "***Second Interim Hearing***") and final hearing (the "***Final Hearing***") to consider final approval of the use of Cash Collateral pursuant to a proposed final order (the "***Final Order***"), as set forth in the Motion filed with this Court (as defined herein).

This Court having considered the interim relief requested in the Motion, the exhibits attached thereto, the declaration of *Declaration Of Andrew D.J. Hede in Support of SO5 Digital Debtors' Chapter 11 Petitions and First Day Pleadings*, filed concurrently with the Motion, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on January 14, 2026 (the "***Interim Hearing***") and Second Interim Hearing held on January 22, 2026; and notice of the Interim Hearing and Second Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and all applicable Local Rules; and the Interim Hearing and Second Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by this Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the SO5 Digital Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the SO5 Digital Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the SO5 Digital Debtors' businesses and the maximization of the value of the SO5 Digital Debtors' assets; and it appearing that the SO5 Digital Debtors' use of Cash Collateral in accordance with the provisions of this Second Interim Order is a sound and

prudent exercise of the SO5 Digital Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND SECOND INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[4]

A.      _Petition Date_.  On January 14, 2026 (the "**_Petition Date_**"), each of the SO5 Digital Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**_Court_**").

B.      _Debtors in Possession_.   The SO5 Digital Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      _Jurisdiction and Venue_.  This Court has jurisdiction over the Chapter 11 Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the _Amended Standing Order of Reference from the United States District Court for the Southern District of Texas_, dated May 24, 2012.  Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      _Committee Formation_.  As of the date hereof, the United States Trustee for the Southern District of Texas (the "**_U.S. Trustee_**") has not appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "**_Committee_**").

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.       *Notice*.  Notice of the Motion and the Interim Hearing and Second Interim Hearing have been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or Second Interim Hearing or the entry of this Second Interim Order shall be required.

F.       *SO5 Digital Debtors' Stipulations*.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 26 herein, the SO5 Digital Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree, as follows (collectively, the admissions, stipulations, acknowledgements, and agreements set forth in this paragraph F, the "***SO5 Digital Debtors' Stipulations***"):

(i)       *Prepetition Secured Obligations*.  Saks OFF 5TH LLC ("***Borrower***"), Saks OFF 5TH Holdings LLC ("***Holdings***" and, together with Borrower and Luxury Outlets USA, LLC, collectively, the "***Prepetition Obligors***"), Callodine Commercial Finance, LLC, as administrative agent and collateral agent (in such capacities, the "***Prepetition Agent***"), for its own benefit and the benefit of the lenders from time to time party under the Prepetition Facility (and together with the Prepetition Agent, the "***Prepetition Lenders***," and together with the Prepetition Agent, the "***Prepetition Secured Creditors***"), are party to that certain *Term Loan Credit Agreement*, dated as of August 6, 2021 (as amended, restated, amended and restated, supplemented, replaced, or otherwise modified from time to time, the "***Prepetition Credit Agreement***," and together with the Loan Documents (as defined therein), collectively, the "***Prepetition Credit Documents***," the term loan facility thereunder, the "***Prepetition Facility***"). As of the Petition Date, the Prepetition Obligors were obligated under the Prepetition Credit Agreement to the Prepetition Lenders in the aggregate outstanding principal amount of not less

5

than approximately $20 million, plus all accrued, accruing, and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees, and financial advisors' fees, and related expenses and disbursements), indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, arising, due, owing or chargeable in respect of any of the Prepetition Obligors' obligations pursuant to, or secured by, the Prepetition Credit Documents, in each case constituting "Obligations" (as defined in the Prepetition Credit Agreement) and due and payable pursuant to the terms and conditions of the Prepetition Credit Agreement (the "***Prepetition Secured Obligations***").  The Prepetition Secured Obligations are secured by first priority security interests in and liens (the liens and security interest, the "***Prepetition Liens***") on substantially all assets of the Prepetition Obligors, including the "Collateral" (as defined in the Prepetition Credit Agreement), and all proceeds, products, accessions, rents and profits thereof, in each case whether then owned or existing thereafter acquired or arising (collectively, the "***Prepetition Collateral***"), but excluding the "Excluded Property" (as defined in the Prepetition Credit Documents) and subject only to the Prepetition Permitted Liens (as defined herein).

(ii)     *Prepetition Secured Obligations*.    Each of the SO5 Digital Debtors acknowledge that the Prepetition Secured Obligations owing to the Prepetition Secured Creditors, respectively, (a) constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Obligors, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and (b) no portion of the Prepetition Secured Obligations owing to the Prepetition Secured Creditors,

6

respectively, is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, disgorgement, impairment, recovery, subordination (equitable or otherwise), or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the SO5 Digital Debtors' Chapter 11 Cases (collectively, "***Successor Cases***").

(iii)      *Prepetition Liens*.   The SO5 Digital Debtors acknowledge that as of the Petition Date, the Prepetition Liens granted to the Prepetition Secured Creditors (a) constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), non-avoidable, and properly perfected security interests in and liens on the Prepetition Collateral, and were granted to, or for the benefit of, the applicable Prepetition Secured Creditors for fair consideration and reasonably equivalent value, (b) are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, and (c) are senior in priority over any and all other security interests in and liens on the Prepetition Collateral; *provided* that the Prepetition Liens are subject to certain liens senior by operation of law (solely to the extent such liens were valid, non-avoidable, and senior in priority to the Prepetition Liens as of the Petition Date and properly perfected prior to the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the Prepetition Credit Documents (the "***Prepetition Permitted Liens***").

(iv)      *No Challenges / Claims*.   No offsets, causes of action, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens

7

or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The SO5 Digital Debtors and their estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action against any of the Prepetition Secured Creditors or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the Prepetition Credit Documents, the Prepetition Secured Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, disgorgement, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents.  The Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code, and the aggregate value of the Prepetition Collateral exceeds the amount of the "Obligations" arising under and as defined in the Prepetition Credit Agreement.  The SO5 Digital Debtors have waived, discharged, and released any right to challenge any of the Prepetition Secured Obligations, the priority of the Prepetition Obligors' obligations thereunder, and the validity, extent, and priority of the Prepetition Liens.

(v)     *Cash Collateral*.  All of the Prepetition Obligors' cash, including, without limitation, the cash in their deposit accounts, wherever located, whether as original collateral or

8

proceeds of other Prepetition Collateral, constitutes Cash Collateral within the meaning of section 363(a) of the Bankruptcy Code and is Prepetition Collateral of the Prepetition Secured Creditors.

(vi)     *No Control*.  None of the Prepetition Lenders or the Prepetition Agent controls the SO5 Digital Debtors or their operations, has authority to determine the manner in which any of the SO5 Digital Debtors' operations are conducted or is a control person or "insider" (as defined in section 101(31) of the Bankruptcy Code) of the SO5 Digital Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the First Interim Order or this Second Interim Order, the Prepetition Secured Obligations, and/or the Prepetition Credit Documents.

(vii)     *Release*.  Each of the SO5 Digital Debtors, on their own behalf and on behalf of each of their past, present, and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably releases, discharges, and acquits each of the Prepetition Agent, the other Prepetition Secured Creditors, solely in their capacities as such, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, advisors, sub-fund advisors, and collateral managers, and each of their respective heirs, predecessors, successors, and assigns (collectively, the "**Released Parties**") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), actions, suits, controversies, proceedings, losses, damages, injuries, debts, liens, actions, judgments, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured

9

or contingent, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, pending, or threatened, arising under, in connection with, or relating to the Prepetition Secured Obligations or the Prepetition Credit Documents, including, without limitation: (a) any so-called "lender liability" or equitable subordination claims or defenses; (b) Claims and causes of action arising under the Bankruptcy Code; and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Secured Obligations, the Prepetition Credit Documents, or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Secured Obligations that the SO5 Digital Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of the First Interim Order; provided, that nothing in this Second Interim Order shall release any Released Party from any claim arising from such Released Party's gross negligence, fraud, or willful misconduct.

G.    *Findings Regarding the Use of Cash Collateral*.

(i)    *Request for Use of Cash Collateral*.  The SO5 Digital Debtors seek authority on an interim basis to use Cash Collateral on the terms described herein to administer the Chapter 11 Cases and fund operations.  At the Final Hearing, the SO5 Digital Debtors will seek final

10

approval of the use of Cash Collateral arrangements pursuant to a proposed Final Order, which shall be substantially in the form of this Second Interim Order and otherwise acceptable to the Prepetition Agent and the SO5 Digital Debtors.

(ii)     *Consent to Use of Cash Collateral*.  The Prepetition Lenders have either consented, or are deemed to consent, to the SO5 Digital Debtors' use of the Cash Collateral and to the subordination of the Prepetition Liens to the Carve Out on the terms and conditions set forth in this Second Interim Order.

(iii)     *Immediate Need for Use of Cash Collateral*.  The SO5 Digital Debtors' immediate need to use Cash Collateral as provided for herein is necessary and critical in order to enable the SO5 Digital Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the SO5 Digital Debtors to finance their operations, to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, to protect the value of their assets, and to otherwise finance their operations requires the use of Cash Collateral, the absence of which would immediately and irreparably harm the SO5 Digital Debtors, their estates and parties in interest.  The SO5 Digital Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the use of Cash Collateral.

(iv)     *Adequacy of the Approved Budget*.  The SO5 Digital Debtors have prepared and delivered to the Prepetition Agent, a budget, a summary copy of which is attached as **Exhibit 3** hereto (as the same may be modified from time to time consistent with the terms of this Second Interim Order, and once approved by the Prepetition Agent, the "***Approved Budget***") (it being understood that the budget summarized on **Exhibit 3** hereto has already been so approved)).  The

11

Approved Budget has been reviewed by the SO5 Digital Debtors, their management, and their advisors.  The SO5 Digital Debtors, their management, and their advisors believe the Approved Budget and the estimate of administrative expenses due or accruing during the period covered by the Approved Budget were developed using reasonable assumptions.  As a condition to the authorization to use Cash Collateral, the Prepetition Agent requires, and the SO5 Digital Debtors have agreed, that proceeds of Cash Collateral (including from Postpetition Collateral) shall be used in a manner consistent with the terms and conditions of this Second Interim Order and in accordance with the Approved Budget (subject to Permitted Variances (as defined herein)).

H.      _Adequate Protection_.  Until such time as the Prepetition Secured Obligations are Paid in Full,[5] the Prepetition Lenders are entitled to receive adequate protection pursuant to sections 361, 362 and 363 of the Bankruptcy Code and as set forth in this Second Interim Order resulting from, among other things:  (i) the use of the Prepetition Collateral; (ii)  the use, sale, lease, or depreciation or other Diminution in Value of the Prepetition Collateral; and/or (iii) the imposition of the automatic stay under the Bankruptcy Code.  The terms of the adequate protection being provided reflect the SO5 Digital Debtors' prudent exercise of business judgment and constitute a reasonable compromise for the use of the Prepetition Collateral.  As adequate protection, the Prepetition Lenders shall receive, among other things, the Adequate Protection

---

[5]     "**_Paid in Full_**" means the indefeasible repayment in full in cash of all obligations (including principal, interest, fees, prepayment premiums, expenses, indemnities, other than contingent indemnification obligations for which no claim has been asserted) under the Prepetition Credit Documents and this Second Interim Order.  No facility or its obligations thereunder shall be deemed to have been Paid in Full until such time as, (a) with respect to the applicable facility, the Challenge Deadline (as defined herein) shall have passed without the timely and proper commencement of a Challenge, or, if a Challenge is timely and properly asserted prior to the Challenge Deadline, upon the final, non-appealable disposition of such Challenge, (b) any and all applicable adequate protection payments (including the applicable Adequate Protection Payments (as defined herein)) have been made, and (c) a countersigned payoff letter has been received by the Prepetition Agent in form and substance satisfactory to the Prepetition Agent, in its reasonable discretion.

Liens (as defined herein) to secure the applicable Prepetition Secured Obligations, the Adequate Protection Superpriority Claims with respect to the applicable Prepetition Secured Obligations, and the Adequate Protection Payments (as defined herein), as applicable.

I.      *Sections 506(c) and 552(b)*.  The SO5 Digital Debtors have agreed as a condition to the use of Cash Collateral that as a material inducement to the Prepetition Agent consent to the use of Cash Collateral, and in exchange for the consensual use of Cash Collateral consistent with the Approved Budget (subject to Permitted Variances) and the terms of this Second Interim Order, subject to and upon entry of the Final Order, the Prepetition Lenders and Prepetition Agent are entitled to receive (i) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code; (ii) a waiver of unjust enrichment and similar equitable relief as set forth below; and (iii) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

J.      *Good Faith*.  The terms and conditions of this Second Interim Order: (a) are fair, reasonable, and the best available to the SO5 Digital Debtors under the circumstances; (b) reflect the SO5 Digital Debtors' exercise of prudent and sound business judgment consistent with their fiduciary duties; and (c) are supported by reasonably equivalent value and consideration.  The use of Cash Collateral was negotiated in good faith and at arm's length among the SO5 Digital Debtors and the Prepetition Secured Creditors.

K.      *Prepetition Permitted Liens*.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Permitted Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to, the SO5 Digital Debtors, the Prepetition Secured Creditors, or any Committee, to challenge the validity, priority, enforceability, seniority, perfection, or extent of any alleged

13

Prepetition Permitted Lien and/or security interests.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Prepetition Permitted Lien and is expressly subject to the Prepetition Liens.

L.    *Use of Cash Collateral in Connection with Intercompany Claims*. To the extent the Global Debtors make any payments for the benefit of or allocable to the SO5 Digital Debtors, in accordance with the approved budget set forth in the Global DIP Orders,[6] the Global Debtors shall be entitled to assert an administrative priority claim against the applicable SO5 Digital Debtor(s); *provided*, that all rights and defenses of all parties in interest shall be fully preserved with respect to any payments for the benefit of or allocable to the SO5 Digital Debtors (and whether or not such payments are for the benefit of or allocable to the SO5 Digital Debtors) after the earlier of (i) the second interim hearing on the SO5 Digital Debtors' motion for use of cash collateral or (ii) fourteen (14) days after the Petition Date, or such other date as may be agreed by the Global Debtors, the SO5 Digital Debtors, the Prepetition Agent, and the Required DIP Lenders (as defined in the Global DIP Orders).

M.    *Good Cause*.  Good cause has been shown for the entry of this Second Interim Order.  The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the SO5 Digital Debtors, their creditors, and their estates, as its implementation will, among other things, provide the SO5 Digital Debtors with the necessary liquidity to: (a) minimize disruption to the SO5 Digital Debtors' businesses and on-going

---

[6]    For purposes of this Second Interim Order, Global DIP Orders means each interim and final order entered by the Court in respect of the *Global Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Global Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief.*

14

operations; (b) preserve and maximize the value of the SO5 Digital Debtors' estates for the benefit of all the SO5 Digital Debtors' creditors; and (c) avoid immediate and irreparable harm to the SO5 Digital Debtors, their creditors, their businesses, their employees, and their assets.

N.     *Immediate Entry*.   Good and sufficient cause exists for immediate entry of this Second Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the Motion and the record before this Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.     <u>Motion Granted; Cash Collateral Use Approved</u>.   The Motion is granted on an interim basis, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Second Interim Order.

2.     <u>Objections Overruled</u>.   Any objections to this Second Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.

**<u>Authorization to Use Cash Collateral</u>**

3.     <u>Authorization to Use Cash Collateral</u>.   Subject to the terms and conditions of this Second Interim Order, the SO5 Digital Debtors are authorized to use Cash Collateral in accordance with the Approved Budget (subject to Permitted Variances) until the earlier of (A) fourteen (14) days after the entry of this Second Interim Order (unless extended with the consent of the Prepetition Agent), (B) the date the Prepetition Secured Obligations have been Paid in Full or (C) the expiration of the Remedies Notice Period (as defined herein); provided, however, that during the Remedies Notice Period, the SO5 Digital Debtors may use Cash Collateral solely to meet payroll obligations (other than severance), if any, sales taxes, and pay expenses that are critical to keeping the SO5 Digital Debtors' business operating and administering the SO5 Digital Debtors'

estates subject to the Approved Budget, or otherwise with the express written consent of the Prepetition Agent.  Nothing in this Second Interim Order shall authorize the disposition of any assets of the SO5 Digital Debtors or their estates outside the ordinary course of business, or any of the SO5 Digital Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Second Interim Order with the consent of the Prepetition Agent, and in accordance with the Approved Budget (subject to Permitted Variances) and to repay the Prepetition Secured Obligations.

4.      <u>Use of Cash Collateral in Connection with Intercompany Claims.</u>

    i.      The SO5 Digital Debtors are authorized and directed to deposit $175,000 of cash in a segregated account in accordance with the Approved Budget approved in connection with the SO5 Digital Debtors' Motion (the "***Intercompany Claim Escrow***"); *provided*, such deposit is in addition to the deposits in the Intercompany Claim Escrow set forth in the First Interim Order.[7]

    ii.     The SO5 Digital Debtors are authorized, but not directed, to make payments of Intercompany Claim Escrow funds to the Global Debtors upon: (a) agreement of the SO5 Digital Debtors, Global Debtors, Prepetition Agent (as defined in the SO5 Digital Debtors' Motion), and the Required DIP Lenders (as defined in the Global DIP Orders); or (b) entry of a further order of this Court.

    iii.    The SO5 Digital Debtors will maintain any Intercompany Claim Escrow funds not paid to the Global Debtors in the Intercompany Claim Escrow until: (a) further order of this Court; or (b) agreement of the SO5 Digital Debtors, Global Debtors, Prepetition Agent, and Required DIP Lenders (as defined in the Global DIP Orders) that such funds are no longer required to be maintained in the Intercompany Claim Escrow at which time the excess funds shall be released to the SO5 Digital Debtors.  This Paragraph is without prejudice to the SO5 Digital Debtors' ability to pay intercompany claims to the Global Debtors in accordance with the Approved Budget.

---

[7]    For the avoidance of doubt, nothing in this Order or in any budget approved in connection with the SO5 Digital Debtors' Motion to approve the use of cash collateral constitutes a waiver of any defenses or other rights with respect to any claim or an admission of liability on any claim by the Global Debtors or the SO5 Digital Debtors. All parties' rights are reserved with respect to any allocation of costs between or among the SO5 Digital Debtors and Global Debtors.

iv.    The Global Debtors, at the request of the Required DIP Lenders (as defined in the Global DIP Orders), reserve all rights to cease payments on behalf of, or allocable to, the SO5 Digital Debtors. Any and all rights of the SO5 Digital Debtors, Prepetition Agent or other party-in-interest to object to, contest, or seek relief from the Court in connection with any such action by the Global Debtors are reserved and not waived.

**Adequate Protection Provisions**

5.      As adequate protection for the interest of the Prepetition Secured Creditors in the Prepetition Collateral (including Cash Collateral) on account of, among other things, the granting of the subordination, as applicable, of the Prepetition Liens to the Carve Out, the SO5 Digital Debtors' use of Cash Collateral, and any other diminution in value arising out of the imposition of the automatic stay or the SO5 Digital Debtors' use, sale, lease, depreciation, or disposition of the Prepetition Collateral and Cash Collateral during the pendency of the Chapter 11 Cases, (collectively, "***Diminution in Value***"), the Prepetition Secured Creditors shall receive adequate protection as follows:

(a)     *Adequate Protection Liens*.  To the extent of any Diminution in Value, the Prepetition Agent (for the benefit of itself and the other Prepetition Lenders) is hereby granted, pursuant to sections 361 and 363(e) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable and perfected replacement and additional postpetition security interests in, and liens on the the Postpetition Collateral (the "***Adequate Protection Liens***"), which shall be subject to the Carve Out.

(i)     The Adequate Protection Liens shall be: (A) deemed to be valid, binding, non-avoidable, enforceable, and fully perfected as of the Petition Date; and (B) in all instances, subject to the Carve Out.  Other than as set forth herein, until the Prepetition Secured Obligations have been Paid in Full, the Adequate Protection Liens shall not be made subject to or

17

*pari passu* with any lien or security interest by any court order heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases. The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases. No lien or interest avoided and preserved for the benefit of any Debtor's estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

(ii)      *Priority of Adequate Protection Liens*. The Adequate Protection Liens shall be payable from and have recourse to all Postpetition Collateral, other than the Professional Fee Reserve Account (as defined herein), and otherwise subject to the Carve Out.

(b)      *Adequate Protection Payments*. All claims (including interest and fees) arising or related to the Prepetition Secured Obligations shall continue to accrue and be paid in cash at the applicable default contract rate of interest through the Chapter 11 Cases in accordance with the Prepetition Credit Documents until such time as the Prepetition Secured Obligations are Paid in Full. The Prepetition Agent shall be entitled to the payment of all reasonable and documented fees, out-of-pocket costs and expenses and charges of the advisors to the Prepetition Agent (including, without limitation, Morgan, Lewis & Bockius LLP and Bracewell LLP (collectively, the "**Agent Advisors**")), in each case in accordance with the procedures set forth in paragraph 13 hereof (collectively, the "**Adequate Protection Payments**"); *provided*, *however*, that notwithstanding the foregoing, the Prepetition Obligors are authorized and directed to indefeasibly pay upon the entry of the First Interim Order the fees and expenses of the Agent Advisors that

18

accrued prior to and were unpaid as of the date of entry of the First Interim Order without the need for such Agent Advisors to deliver an invoice as set forth herein.

(c)      *Adequate Protection Superpriority Claims.*

(i)      *Superpriority Claims of the Prepetition Secured Creditors*.   To the extent of any Diminution in Value, as further adequate protection of the interests of the Prepetition Agent and the other Prepetition Secured Creditors with respect to the Prepetition Secured Obligations, the Prepetition Agent (for the benefit of itself and the other Prepetition Lenders) is hereby granted an allowed administrative claim against the  Prepetition Obligors' estates under section 503 of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the  Prepetition Obligors and their estates of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 726, 1113, and 1114 of the Bankruptcy Code, as provided for by section 507(b) of the Bankruptcy Code (the "***Adequate Protection Superpriority Claims***"), to the extent that the Adequate Protection Liens do not adequately protect against any Diminution in Value of the Prepetition Agents' interests in the Prepetition Collateral.

(ii)      *Priority of Adequate Protection Superpriority Claims*.   The Adequate Protection Superpriority Claims shall be payable from and have recourse to all Postpetition Collateral, other than the Professional Fee Reserve Account (as defined herein), and otherwise subject to the Carve Out.

19

(d)     *Reservations of Rights*.   Nothing contained herein shall impair or modify the Prepetition Secured Creditors' rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Creditors in the First Interim Order or this Second Interim Order is insufficient to compensate for the Diminution in Value of the interest of the Prepetition Secured Creditors in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases.  Nothing contained in this in the First Interim Order or this Second Interim Order shall be construed as an admission as to the extent of any Diminution in Value, if any, in the interest of any Prepetition Secured Creditors in the Prepetition Collateral and nothing shall impair or modify the rights of any party to contest any assertion of Diminution in Value or contest any request for additional adequate protection.

**Provisions Common to Use of Cash Collateral Authorizations**

6.     <u>Approved Budget, Testing, and Permitted Variances</u>.

(a)     *Approved Budget*.   The Approved Budget and any modification to, or amendment or update of, the Approved Budget shall be in form and substance acceptable to the Prepetition Agent and the SO5 Digital Debtors.  The Approved Budget shall be updated, modified or supplemented by the SO5 Digital Debtors on or before fourteen (14) days following the Petition Date and, thereafter, not less than every four (4) weeks unless otherwise agreed to by the SO5 Digital Debtors and the Prepetition Agent.  Each such updated, modified or supplemented budget shall be in form and substance acceptable to the Prepetition Agent, and no such updated, modified or supplemented budget shall be effective until so approved (electronic mail to counsel for the SO5 Digital Debtors being sufficient) and once approved shall be deemed the Approved Budget; *provided*, *however*, that, in the event that the Prepetition Agent and the SO5 Digital Debtors cannot agree as to a new Approved Budget, the prior Approved Budget shall remain in full force and

20

effect unless and until a new Approved Budget has been approved by the Prepetition Agent. The Approved Budget shall depict, on a weekly basis and line item basis (1) projected cash receipts, (2) projected cash disbursements (including ordinary course operating expenses, capital expenditures, bankruptcy-related expenses and certain other fees and expenses, and including expenses relating to the First Interim Order or this Second Interim Order), (3) net cash flow, (4) total available liquidity, and (5) professional fees and disbursements with respect to the SO5 Digital Debtors' professionals and other estate professionals, for the first two (2) week period from the Petition Date and, following such period, each four (4) week period thereafter.

(b)     *Borrowing Base*. Until the Prepetition Secured Obligations have been Paid in Full, the Borrowing Base Certificate (as defined in the Prepetition Credit Agreement) shall be updated and delivered weekly to the Prepetition Agent.

(c)     *Reporting*. No less than twice a week, and at the reasonable request of the Prepetition Agent, the SO5 Digital Debtors shall consult with the Prepetition Agent regarding the SO5 Digital Debtors' ongoing sale operations and analysis of the Liquidation Sale Proposals (as defined in Exhibit 2 hereof).

(d)     *Permitted Variances*. The SO5 Digital Debtors (1) shall not, without the consent of the Prepetition Agent, permit (i) the actual non-operating disbursements for any one week period to exceed 110% of the aggregate non-operating disbursements set forth in the Approved Budget for such period, and (ii) the actual operating disbursements for any one week period to exceed 110% of the aggregate operating disbursements set forth in the Approved Budget, and (2) shall not, without the consent of the Prepetition Agent, following the Second Interim Hearing (and subject to entry of an order approving the same), permit the actual total cash receipts

21

for any one-week period (beginning the first full week after the Petition Date) to be less than 90% of the total cash receipts set forth in the Approved Budget for such period (collectively, the "**_Permitted Variances_**").  Notwithstanding the foregoing, any line-item variance shall be permitted so long as the aggregate category variance is within the Permitted Variances, and for purposes of testing compliance with subsequent Permitted Variances, unused budgeted disbursement amounts from any measurement period may be carried forward to subsequent periods.

(e)  *Variance Testing*.  The SO5 Digital Debtors shall, commencing with the first week after the Petition Date, deliver to the Prepetition Agent, by not later than Wednesday of each week, a certificate (in form and substance acceptable to the Prepetition Agent) showing a reconciliation for the prior week period, and certifying that (i) the SO5 Digital Debtors are in compliance with the covenants and requirements contained in this Paragraph 5 and (ii) to the knowledge of the SO5 Digital Debtors, no Cash Collateral Termination Event has occurred, or, if such a Cash Collateral Termination Event has occurred, specifying the nature and extent thereof and any corrective action taken or proposed to be taken with respect thereto.

7.  <u>Modification of Automatic Stay</u>.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Second Interim Order, including, without limitation, to permit the SO5 Digital Debtors to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claims.

8.  <u>Perfection of Adequate Protection Liens</u>.

(a)  The First Interim Order and this Second Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the Adequate Protection Liens and the other security interests granted herein, effective as of the Petition Date, without any further

act and without regard to any other federal, state, or local requirements or law requiring notice, execution, filing, registration, recording, or possession of the Postpetition Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, entering into any control agreements with any financial institution(s) party to a control agreement or other depository account consisting of Postpetition Collateral or requirement to register liens on any certificates of title (a "**Perfection Act**"). Notwithstanding the foregoing, if the Prepetition Agent shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, then the Prepetition Agent is authorized to perform such act, and the SO5 Digital Debtors are authorized and directed to perform such act to the extent necessary, which act or acts shall be deemed to have been accomplished as of the date and time of entry of the First Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law. The Prepetition Agent may choose to file, record, or present a certified copy of the First Interim Order or this Second Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of the First Interim Order or this Second Interim Order in accordance with applicable law. Should the Prepetition Agent so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of the First Interim Order or this Second Interim Order.

(b)      To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security interests granted and created by this the First Interim Order or this Second Interim Order (including the Adequate Protection Liens) or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of this Court; *provided, however,* that nothing herein shall excuse the SO5 Digital Debtors from payment of any local fees, if any, required in connection with such liens under the terms of the Prepetition Credit Documents.  By virtue of the terms of this the First Interim Order and this Second Interim Order, to the extent that the Prepetition Agent has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the  Prepetition Obligors, such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by the First Interim Order and this Second Interim Order without further action by the Prepetition Agent.

9.      <u>Application of Proceeds of Postpetition Collateral</u>.  The SO5 Digital Debtors shall apply the proceeds of Postpetition Collateral in accordance with the terms of the Approved Budget (including with respect to the application of such proceeds to the Prepetition Secured Obligations) and this Second Interim Order.  In addition, and notwithstanding anything to the contrary herein, but subject to paragraph 25 of this Second Interim Order, the Carve Out and the Prepetition Permitted Liens, (A) the SO5 Digital Debtors shall repay the Prepetition Obligations in the amount of $2,500,000 within two (2) business days after entry of the First Interim Order, (B) to the extent the SO5 Digital Debtors' cash balance (illustrated as the "Ending Bank" line item in the Approved

24

Budget) is in excess of $7,500,000 at the end of any week (beginning with the first full week after the Petition Date) and, following the entry of this Second Interim Order, to the extent the SO5 Digital Debtors' cash balance (illustrated as the "Ending Bank" line item in the Approved Budget) is in excess of $5,000,000 at the end of any week (beginning with the week after the Second Interim Hearing), such excess cash balance shall be applied to the Prepetition Secured Obligations (until such obligations are Paid in Full) on the first business day following such week; *provided* that any such payment shall be subject to Challenge as provided in paragraph 26 herein.  The SO5 Digital Debtors shall not, directly or indirectly, voluntarily purchase, redeem, defease, or prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the Prepetition Secured Obligations, the Adequate Protection Payments required under this Second Interim Order, and obligations authorized by an order of this Court (which may include, without limitation, obligations secured by Prepetition Permitted Liens).

10.     Proceeds of Subsequent Financing.  If the SO5 Digital Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in the Chapter 11 Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code at any time prior to the Prepetition Secured Obligations having been Paid in Full, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to any or all of the SO5 Digital Debtors and the SO5 Digital Debtors ' estates, then the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition Agent to be applied as set forth in paragraph 8 herein.

11.     Maintenance of Postpetition Collateral and Prepetition Collateral.   Until the Prepetition Secured Obligations have been Paid in Full, the SO5 Digital Debtors  shall: (a) insure

the Prepetition Collateral and the Postpetition Collateral as required under the Prepetition Credit Documents; and (b) maintain the cash management system in effect as of the Petition Date or as otherwise agreed to by the Prepetition Agent (subject to any orders of this Court in respect of the cash management system).

12.    <u>Events of Default</u>.  The failure of the Prepetition Obligors to comply with the "Milestones" on **<u>Exhibit 2</u>** hereto, or the occurrence of any of the events of default listed on **<u>Exhibit 1</u>** hereto, shall each constitute an "Event of Default" and a "Cash Collateral Termination Event" under this Second Interim Order.

13.    <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default or a Cash Collateral Termination Event, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from this Court, but subject to the terms of this Second Interim Order, including, without limitation, the funding of the Carve Out and the Remedies Notice Period (as defined herein), the Prepetition Agent may declare (the "***Termination Declaration***," and the date of such Termination Declaration, the "***Termination Declaration Date***") (A) all Prepetition Secured Obligations (and applicable Adequate Protection Payments and applicable Adequate Protection Superpriority Claims) to be immediately due and payable, (B) that the application of the Carve Out has occurred through delivery of the Carve Out Trigger Notice (as defined below), and (C) a termination, reduction, or restriction on the ability of the SO5 Digital Debtors to use Postpetition Collateral, including, without limitation, the Postpetition Collateral (except as otherwise provided in this Second Interim Order or the Prepetition Credit Documents). Any Termination Declaration shall not be effective until notice has been provided by electronic

26

mail (or other electronic means) to counsel to the SO5 Digital Debtors, counsel to any Committee and the U.S. Trustee.  The Prepetition Agent shall be entitled to file a motion with the Court seeking emergency relief from the automatic stay (the "***Stay Relief Motion***") on at least five (5) business days' written notice to counsel to the SO5 Digital Debtors, the U.S. Trustee, and counsel to the Committee (if appointed) (such five business day period, the "***Remedies Notice Period***"); *provided, however*, that during the Remedies Notice Period, the SO5 Digital Debtors and/or a Committee (if appointed) shall be entitled to seek an emergency hearing from the Court regarding any Termination Declaration, a request for use of Cash Collateral, or any other similar relief, and upon and after the delivery of the Termination Declaration, the Prepetition Agent is deemed to have consented to such emergency hearing.  At the hearing on the Stay Relief Motion or any relief sought by the SO5 Digital Debtors and/or a Committee (if appointed), the Court may fashion an appropriate remedy.  For the avoidance of doubt, the Prepetition Agent may only enter upon a leased premises of the Debtors after an Event of Default or Cash Collateral Termination Event in accordance with (1) a separate written agreement among the Prepetition Agent and the applicable landlord for the leased premises, (2) pre-existing rights of the Prepetition Agent under applicable non-bankruptcy law, (3) written consent of the applicable landlord for the leased premises, or (4) entry of an order by this Court approving such access to the leased premises after notice and an opportunity to be heard for the applicable landlord for the leased premises.

14.     <u>Prepetition Agent Expenses</u>.  Counsel and/or professionals to the Prepetition Agent seeking payment pursuant to and in accordance with this Second Interim Order shall each deliver an invoice in summary form (which shall not be required to include time entry detail, but shall include a general description of the nature of the matters for which services were performed, and

may be redacted for privileged information; *provided*, *however*, that the U.S. Trustee and any Committee reserve their rights to request additional detail regarding the services rendered and expenses incurred by such professionals) to the SO5 Digital Debtors, counsel to the SO5 Digital Debtors, the U.S. Trustee, and counsel to any Committee.  If no written objection is received by 5:00 p.m., prevailing Eastern Time, on the date that is ten (10) days after delivery of such invoice to the SO5 Digital Debtors, counsel to the SO5 Digital Debtors, the U.S. Trustee, and counsel to any Committee (the "***Review Parties***"), the SO5 Digital Debtors shall promptly pay such fees and expenses in full.  If an objection is timely received from a Review Party, the SO5 Digital Debtors shall promptly pay the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Counsel and/or professionals to the Prepetition Agent shall not be required to file applications or motions with, or obtain approval of, this Court for the payment of any of its fees or out-of-pocket expenses (other than with respect to disputed amounts).  Payments of any amounts set forth in this paragraph are not subject to avoidance, subordination, or disgorgement (and payments of any amounts to the Agent Advisors are not subject to, or capped by, the Approved Budget).

15.    <u>Proofs of Claim</u>.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases, neither the Prepetition Agent or any of the Prepetition Secured Creditors shall be required to file proofs of claim in the Chapter 11 Cases or any Successor Cases in order to assert claims for payment of any of the Prepetition Secured Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts payable, whether accrued prepetition or postpetition,

under the Prepetition Credit Documents or this Second Interim Order.  None of the Prepetition

Secured Creditors will be required to file proofs of claim or requests for approval of administrative

expenses in any of the Chapter 11 Cases or Successor Cases, and the provisions of this Second

Interim Order relating to the relevant Adequate Protection Superpriority Claims, the Prepetition

Secured Obligations and the SO5 Digital Debtors' Stipulations shall constitute timely filed proofs

of claim and/or administrative expense requests (as applicable) in each of the Chapter 11 Cases.

16.    Carve Out.

(a)    *Priority of Carve Out.*    Each of the Prepetition Liens, the Adequate

Protection Liens, and the Adequate Protection Superpriority Claims shall be subject and

subordinate to payment of the Carve Out.  The Carve Out shall be senior to all claims and liens

over all assets of the SO5 Digital Debtors, including any Postpetition Collateral.

(b)    *Definition of Carve Out.*  As used in this Second Interim Order, the "***Carve***

***Out***" means the sum of (i) all fees required to be paid to the Clerk of this Court and to the U.S.

Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory

rate (without regard to the notice set forth in (iii) below); (ii) all reasonable Court-allowed fees

and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code

(without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether

by interim order, procedural order, or otherwise, but subject in all instances to and capped by the

Approved Budget, all unpaid fees and expenses, other than any restructuring, sale, success, or other

transaction fee (the "***Allowed Professional Fees***") incurred by Persons or firms retained by the

SO5 Digital Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "***Debtor***

***Professionals***") and any Committee appointed pursuant to section 328 or 1103 of the Bankruptcy

29

Code in the SO5 Digital Debtors cases (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first Business Day following delivery by the Prepetition Agent of a Carve Out Trigger Notice, whether allowed by this Court prior to or after delivery of a Carve Out Trigger Notice (the amounts set forth in clauses (i) through (iii), the "**Pre-Carve Out Trigger Notice Cap**"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $320,000 incurred on and after the first Business Day following delivery by the Prepetition Agent of a Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in clauses (iv) being the "**Post-Carve Out Trigger Notice Cap**").   For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Agent to the SO5 Digital Debtors, their restructuring counsel, the U.S. Trustee, and counsel to any Committee, which notice may be delivered only following the occurrence and during the continuation of an Event of Default or Cash Collateral Termination Event on the Termination Declaration Date.

(c)     *Professional Fee Reserve Account.* Commencing with the first full week after the Petition Date, and on or before the Thursday of each week thereafter until the Termination Declaration Date, the SO5 Digital Debtors shall deposit and hold an amount equal to the sum of the aggregate amount of outstanding and unpaid Allowed Professional Fees contemplated to be incurred through the current week under the Approved Budget in a segregated account designated by the SO5 Digital Debtors, exclusively for the payment of unpaid Allowed Professional Fees, and not subject to (i) the control of the Prepetition Agent, (ii) any liens in favor of the Prepetition Secured Creditors, or (iii) any and all other liens, security interests, or claims that may be asserted

30

against the SO5 Digital Debtors, to pay such Allowed Professional Fees ("***Professional Fee Reserve Account***").

(d)     *Carve Out Reserves.*  On a Termination Declaration Date, the Carve Out Trigger Notice shall be deemed, notwithstanding the occurrence and continuation of an Event of Default, a demand to fund an amount equal to the Pre-Carve Out Trigger Notice Cap from Postpetition Collateral (less any unused amounts in the Professional Fee Reserve Account at that time).  The SO5 Digital Debtors shall deposit and hold such amounts in the Professional Fee Reserve Account exclusively for the payment of unpaid Allowed Professional Fees, and not subject to (i) the control of the Prepetition Agent, (ii) any liens in favor of the Prepetition Secured Creditors (the "***Pre-Carve Out Trigger Notice Reserve***"), or (iii) any and all other liens, security interests, or claims that may be asserted against the SO5 Digital Debtors, their assets, or estates.  On a Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed, notwithstanding the occurrences and continuation of an Event of Default, a demand to fund an amount equal to the Post-Carve Out Trigger Notice Cap, after fully funding the amounts equal to the Pre-Carve Out Trigger Notice Cap (which amounts shall be funded from the Postpetition Collateral).  The  SO5 Digital Debtors shall deposit and hold such amounts in in the Professional Fee Reserve Account, exclusively for the payment of unpaid Allowed Professional Fees, and not subject to (i) the control of the Prepetition Agent, (ii) any liens in favor of the Prepetition Secured Creditors, or (iii) any and all other liens, security interests, or claims that may be asserted against the SO5 Digital Debtors, their assets, or estates, to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "***Post-Carve Out Trigger Notice Reserve***" and, together with the Pre-Carve Out Trigger Notice Reserve, the "***Carve Out Reserves***") prior to any

31

and all other claims.  On the first Business Day after the delivery of the Carve Out Trigger Notice, all Postpetition Collateral shall be made available to fund the Carve Out Reserves.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "***Pre-Carve Out Amounts***") in the manner set forth in this paragraph, but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to the Prepetition Agent, unless the Prepetition Secured Obligations have been Paid in Full.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "***Post-Carve Out Amounts***") in the manner set forth in this paragraph, and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, first to pay any Pre-Carve Out Amounts until indefeasibly paid in full, and then to the Prepetition Agent, unless the Prepetition Secured Obligations have been Paid in Full.  Notwithstanding anything to the contrary in this Second Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts and manner set forth in this paragraph 15, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount and in the manner set forth in this paragraph 15, prior to making any payments to the Prepetition Agent or Prepetition Secured Creditors, as applicable; *provided* that if, following delivery of a Carve Out Trigger Notice and any reallocation of amounts in the Carve Out Reserves pursuant to the immediately preceding clause, either of the Carve Out Reserves is funded in an amount that does not cover actually incurred Allowed Professional Fees up to the Pre-Carve Out

32

Trigger Notice Cap and the Post-Carve Out Trigger Notice Cap, as applicable, then such Carve Out Reserves will be funded (pursuant to the terms of this paragraph) in an amount that will be equal to the value of actually incurred Allowed Professional Fees up to the Pre-Carve Out Trigger Notice Cap and the Post-Carve Out Trigger Notice Cap, as applicable, as soon as practicable but no later than two (2) Business Days following discovery of such shortfall by the SO5 Digital Debtors. Notwithstanding anything to the contrary in this Second Interim Order, following delivery of a Carve Out Trigger Notice, the Prepetition Agent shall not sweep or foreclose on cash (including, without limitation, cash received as a result of the sale or other disposition of any assets) of the SO5 Digital Debtors until the Carve Out Reserves have been fully funded, and any residual funds in the Carve Out Reserves shall be paid to the Prepetition Agent for application in accordance with the terms hereof. Further, notwithstanding anything to the contrary in this Second Interim Order, the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out.

(e) *No Direct Obligation to Pay Allowed Professional Fees*. None of the Prepetition Secured Creditors shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of this Court incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Second Interim Order or otherwise shall be construed to obligate the Prepetition Secured Creditors, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the SO5 Digital Debtors have sufficient funds to pay such compensation or reimbursement.

(f)     *Payment of Carve Out on or After the Termination Declaration Date.*  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

(g)     *Reservation of Rights.*  Nothing in this Second Interim Order shall be construed as a waiver of any right of the Prepetition Secured Creditors with respect to any fee statement, interim application or monthly application issued or filed by the Professional Persons. Notwithstanding anything to the contrary herein, the payment of any Allowed Professional Fees pursuant to the Carve Out shall not (i) reduce any Debtor's obligations owed to the Prepetition Agent and the Prepetition Secured Creditors (whether under this Second Interim Order or otherwise) or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties (whether granted under this Second Interim Order or otherwise) in the Prepetition Collateral or the Postpetition Collateral (or their claims against the SO5 Digital Debtors).

17.     <u>Limitation on Use of Postpetition Collateral (Including Cash Collateral).</u>  For the avoidance of doubt and notwithstanding any other provision of this Second Interim Order or any other order entered by this Court to the contrary, no portion of the Carve Out, or the Postpetition Collateral (including Cash Collateral) may be used directly or indirectly in connection with:  (i) the investigation, initiation, or prosecution of any claims, causes of action, motions, adversary proceedings, or other litigation, (A) against any of the Prepetition Secured Creditors or Prepetition Agent (whether in such capacity or otherwise), or (B) challenging the amount, validity, perfection, priority, or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the Prepetition Credit Documents or in connection

34

with the Prepetition Loan Facility, including, in each case without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (ii) attempts to modify any of the rights granted to the Prepetition Agent or the other Prepetition Secured Creditors with respect to the Prepetition Loan Facility or this Second Interim Order; or (iii) attempts to prevent, hinder, or otherwise delay any of the Prepetition Secured Creditors' (as applicable) assertion, enforcement, or realization upon any Prepetition Collateral in accordance with the Prepetition Credit Documents, this Second Interim Order, and the Final Order once a Cash Collateral Termination Event has occurred and any applicable Remedies Notice Period has expired; *provided, however*, that the proceeds of the Postpetition Collateral (including Cash Collateral) may be used by any Committee to investigate prior to the Challenge Deadline, but not to prosecute, (A) the claims and liens of the Prepetition Secured Creditors, and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Creditors, up to an aggregate cap of no more than $50,000.

18. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Second Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

19. <u>Release</u>. Subject to paragraph 26 hereof, and the challenge rights granted thereunder, each of the Released Parties is released as provided in paragraph F hereof.

20. <u>Section 506(c) Claims</u>. Upon entry of the Final Order, and subject to approval by this Court therein, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or Successor Cases at any time shall be charged against the Prepetition Lenders, the Prepetition Agent, or the Postpetition Collateral pursuant to sections 105

35

or 506(c) of the Bankruptcy Code, or otherwise and all rights to surcharge the Prepetition Lenders, the Prepetition Agent, and/or the Postpetition Collateral under section 105 or 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the SO5 Digital Debtors and all parties in interest in the Chapter 11 Cases or any Successor Case.

21.    <u>No Marshaling / Applications of Proceeds</u>.  Upon entry of the Final Order, and subject to approval by this Court therein, the Prepetition Lenders and the Prepetition Agent shall not be subject to the equitable doctrine of "marshaling" nor any other similar doctrine with respect to any of the Postpetition Collateral.

22.    <u>Section 552(b)</u>.  The Prepetition Agent and Prepetition Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  Upon entry of the Final Order, and subject to approval by this Court therein, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agent and Prepetition Lenders with respect to proceeds, products, offspring, or profits of any of the Postpetition Collateral.

23.    <u>Limits on Lender Liability</u>.  Nothing in this Second Interim Order, any of the Prepetition Credit Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Agent, or the Prepetition Secured Creditors of any liability for any claims arising from any activities by the SO5 Digital Debtors in the operation of their businesses or in connection with the administration of the Chapter 11 Cases.  The Prepetition Agent and the Prepetition Secured Creditors shall not, solely by reason of having permitted the use of Cash Collateral, as applicable, be deemed in control of

36

the operations of the SO5 Digital Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the SO5 Digital Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in this Second Interim Order or the Prepetition Credit Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Agent or the Prepetition Secured Creditors of any liability for any claims arising from the prepetition or postpetition activities of any of the SO5 Digital Debtors.

24. <u>Joint and Several Liability</u>.  Nothing in this Second Interim Order shall be construed to constitute a substantive consolidation of any of the SO5 Digital Debtors' estates, it being understood, however, that the SO5 Digital Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of this Second Interim Order.

25. <u>Discharge Waiver</u>.  The obligations of the  SO5 Digital Debtors with respect to adequate protection hereunder, including granting the Adequate Protection Liens and the Adequate Protection Superpriority Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been Paid in Full on or before the effective date of such confirmed plan of reorganization, or each of the Prepetition Secured Creditors, as applicable, has otherwise agreed in writing.  None of the SO5 Digital Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the SO5 Digital Debtors' assets, or order confirming such plan or approving such sale, that does not require the payment of the  SO5 Digital Debtors ' obligations with respect to the adequate protection provided

37

for the Prepetition Secured Creditors herein, in full in cash within a commercially reasonable period of time without the written consent of the Prepetition Secured Creditors, in accordance with the Prepetition Credit Documents and this Second Interim Order.

26.     <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Second Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the Prepetition Secured Creditors' right to seek any other or supplemental relief in respect of the SO5 Digital Debtors (including, the right to seek additional or different adequate protection); (b) the rights of any of the Prepetition Secured Creditor to seek the payment by the SO5 Digital Debtors of postpetition interest or fees pursuant to section 506(b) of the Bankruptcy Code; or (c) any of the rights of the Prepetition Secured Creditors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) seek an injunction, (iv) oppose any request for use of Cash Collateral, (v) object to any sale of assets, or (vi) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; *provided*, that the rights of the Prepetition Secured Creditors with respect to sections (i)–(iii) of this paragraph 25 shall be subject to the Carve Out.  Other than as expressly set forth in this Second Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Secured Creditors are preserved.

27.     <u>Binding Effect of First and Second Interim Order</u>.  Immediately upon entry of the First Interim Order, the stipulations (including the SO5 Digital Debtors' Stipulations), terms and

provisions of the First Interim Order (including, without limitation, the Adequate Protection Liens, Adequate Protection Payments, and the Adequate Protection Superpriority Claims) shall become valid and binding upon and inure to the benefit of the SO5 Digital Debtors, the Prepetition Secured Creditors, all other creditors of any of the SO5 Digital Debtors, the Committee, if any, and all other parties in interest and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases or any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case, unless, and solely to the extent that: (a) a party in interest that has sought and obtained standing and the requisite authority to commence a Challenge[8] (other than the SO5 Digital Debtors, as to which any Challenge is hereby irrevocably waived and relinquished) and has timely commenced a Challenge by the date that is the later of: (i) seventy-five (75) days from the date of entry of the First Interim Order, or (ii) sixty (60) days after the formation of a Committee (the "***Challenge Deadline***"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Agent or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline; *provided* that if the Chapter 11 Cases are converted to chapter 7 or a chapter 7 or chapter 11 trustee is appointed or elected prior to the expiration of the Challenge Deadline, any such estate representative or trustee shall receive the full benefit of any

---

[8] "***Challenge***" as used herein shall mean an adversary proceeding or contested matter (subject to the limitations contained herein) (a) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens, or (b) asserting or prosecuting any Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses against any Prepetition Secured Creditors or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof in connection with or related to the Prepetition Credit Documents, the Prepetition Secured Obligations, the Prepetition Liens and the Prepetition Collateral.

remaining time before expiration of the Challenge Deadline, which, solely if not yet expired, shall be extended for a period of sixty (60) days; and (b) this Court enters judgment in favor of the plaintiff or movant in any such timely commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.  The filing of a motion seeking standing to file a Challenge before the Challenge Deadline, which attaches a proposed Challenge (a "Standing Motion"), shall extend the Challenge Deadline (solely with respect to the party that files such timely Standing Motion) until two (2) Business Days after this Court rules on the Standing Motion, or such other time period ordered by this Court in approving the Standing Motion.  For the avoidance of doubt, any chapter 7 trustee appointed or elected in these cases shall, until the Challenge Deadline, and thereafter for the duration of a Challenge (to the extent such Challenge is commenced by the chapter 7 trustee prior to the Challenge Deadline), be deemed to be a party in interest other than the SO5 Digital Debtors and shall not, for purposes of such Challenge, be bound by the SO5 Digital Debtors' Stipulations.

28.    <u>Cash Collection</u>.  From and after the date of the entry of the First Interim Order, and except as provided in the First Interim Order or this Second Interim Order, all collections and proceeds of any Postpetition Collateral that shall at any time come into the possession, custody, or control of any of the SO5 Digital Debtors, or to which any of the SO5 Digital Debtors is now or shall become entitled at any time, shall be promptly deposited in the same deposit accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Credit Documents (or in such other accounts as are designated by the Prepetition Agent from time to time).

40

29.     <u>No Modification of Second Interim Order</u>.  Until and unless the Prepetition Secured Obligations have been Paid in Full, the SO5 Digital Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the Prepetition Agent (i) any reversal, modification, stay, vacatur, or amendment to the First Interim Order or this Second Interim Order or (ii) a priority claim for any administrative expense or unsecured claim against the SO5 Digital Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases or Successor Cases, equal or superior to the Adequate Protection Superpriority Claims, other than the Carve Out; (b) any order, other than the First Interim Order, this Second Interim Order, or the Final Order, allowing use of Cash Collateral resulting from Postpetition Collateral; *provided, however*, the SO5 Digital Debtors reserve the right to seek use of Cash Collateral following any Termination Declaration as provided herein; and (c) except as set forth in the First Interim Order, the Second Interim Order or the Final Order (including with respect to the Carve Out), any lien on any of the Postpetition Collateral or Prepetition Collateral with priority equal or superior to Prepetition Liens. The SO5 Digital Debtors irrevocably waive any right to seek any amendment, modification or extension of this Second Interim Order without the prior written consent, as provided in the foregoing, of the Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the Prepetition Agent.

30.     <u>Consignment Inventory</u>. The rights of the SO5 Digital Debtors, the Prepetition Agent, and consignors to seek a determination as to the validity of an asserted consignment right

41

and/or the return of consigned goods or the traceable proceeds from the sale thereof are expressly reserved.

31.    <u>Second Interim Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the Prepetition Credit Documents or this Second Interim Order, the provisions of this Second Interim Order shall govern and control.

32.    <u>Survival</u>.  The provisions of this Second Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases.  The terms and provisions of this Second Interim Order, including, without limitation, the claims, liens, security interests, and other protections granted to the Prepetition Secured Creditors pursuant to this Second Interim Order, notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Second Interim Order until all Prepetition Secured Obligations have been Paid in Full.

33.    <u>Third Interim Hearing</u>.  The hearing to consider entry of a third interim order on the Motion is scheduled for February 6, 2026 at 9:00 a.m. (prevailing Central Time).  Any objections or responses to the Motion shall be filed on or prior to February 2, 2026 at 4:00 p.m. (prevailing Central Time).  Any party objecting to the relief sought at the Second Interim Hearing shall file and serve (via mail and e-mail) written objections, which objections shall be served on (i) proposed counsel to the SO5 Digital Debtors: Bradley Arant Boult Cummings LLP, 600 Travis Street, Suite 5600,

42

Houston, Texas 77060, Attn: Jarrod B. Martin, Esq. (jbmartin@bradley.com) and Michael K. Riordan, Esq. (mriordan@bradley.com) ; (ii) counsel to the Prepetition Agent: (a) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110, Attn: Christopher L. Carter, and (b) Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, TX 77002, Attn: William A. (Trey) Wood III; (iii) counsel to the Committee (if appointed); and (iv) the U.S. Trustee.

34.    _Effectiveness_.  This Second Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable _nunc pro tunc_ to the Petition Date immediately upon entry hereof.

35.    _Retention of Jurisdiction_.  This Court has and will retain jurisdiction to enforce this Second Interim Order according to its terms.

Signed: January 22, 2026

Alfredo R Pérez
United States Bankruptcy Judge

43

**Exhibit 1**

**Events of Default**

The occurrence of any of the following events, unless consented to or waived (as applicable) by the Prepetition Agent in advance, in writing, in its sole and absolute discretion shall constitute an Event of Default and/or a Cash Collateral Termination Event under this Second Interim Order:

1. The failure of the SO5 Digital Debtors to perform, in any respect, any of the material terms, provisions, conditions, covenants, or obligations under this Second Interim Order;

2. The failure to achieve any Milestone;

3. The filing of a motion or any plan of reorganization or disclosure statement attendant thereto by any of the SO5 Digital Debtors: (i) to obtain financing under section 364(d) of the Bankruptcy Code not otherwise permitted pursuant to this Second Interim Order or that does not satisfy the Prepetition Secured Obligations in full at the time of closing of such financing; (ii) to grant any lien other than Prepetition Permitted Liens upon or affecting any Postpetition Collateral; or (iii) except as provided in this Second Interim Order, to use Cash Collateral under section 363(c) of the Bankruptcy Code;

4. The entry of an order amending, supplementing, staying, vacating or otherwise modifying the Second Interim Order or the Cash Management Order, the filing by the SO5 Digital Debtors of a motion for reconsideration with respect to the Second Interim Order or the Cash Management Order, or the Second Interim Order shall cease to be in full force and effect;

5. The payment of, or application by the SO5 Digital Debtors for authority to pay, any prepetition claim unless in accordance with an order of the Court and the Approved Budget;

6. The appointment of an interim or permanent trustee in the Cases or any Successor Cases;

7. The termination of the Consulting Agreement (as defined below) without the consent of the Prepetition Agent;

8. The entry of an order approving, relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor (other than the Prepetition Agent) to execute upon or enforce a lien on any Prepetition Collateral or Postpetition Collateral, (ii) approving any settlement or other stipulation with any secured creditor of any Prepetition Obligor providing for payments as adequate protection or otherwise to such secured creditor, or (iii) with respect to any lien on or the granting of any lien on any Prepetition Collateral or Postpetition Collateral to any federal, state or local environmental or regulatory agency or authority;

9. The entry of any order of the Court authorizing any claims or charges, entitled to superpriority administrative expense claim status pursuant to section 364 of the Bankruptcy Code *pari passu* with or senior to the claims of the Prepetition Secured Creditors under this Second Interim Order, or there shall arise or be granted by the Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code or (ii) any lien on the Prepetition Collateral or Postpetition Collateral

having a priority senior to or *pari passu* with the liens and security interests referenced herein, except, in each case, as expressly provided in this Second Interim Order;

10. The SO5 Digital Debtors shall file a motion for entry of an order materially adversely impacting the rights and interests of the Prepetition Secured Creditors;

11. Any of the SO5 Digital Debtors shall challenge, support or encourage a challenge of any payments made with respect to the Prepetition Secured Obligations;

12. The entry of any order by the Court granting, or the filing by any of the SO5 Digital Debtors of any motion or other request with the Court seeking authority for, the use of cash proceeds of any Prepetition Collateral or Postpetition Collateral other than as set forth in this Second Interim Order or to obtain any financing under section 364(d) of the Bankruptcy Code not otherwise permitted under the Second Interim Order or that does not satisfy the Prepetition Secured Obligations in full at the time of closing of such financing;

13. Any of the SO5 Digital Debtors or any person on behalf of any of the SO5 Digital Debtors shall file any motion seeking authority to consummate a sale of Prepetition or Postpetition Collateral outside the ordinary course of business not otherwise permitted hereunder or without the consent of the Prepetition Agent; and

14. Any of the SO5 Digital Debtors shall make any payment of principal or interest or otherwise provide any credit on account of any prepetition indebtedness or payables other than payments (i) under customary "first day orders" or other order of the Court as approved by the Prepetition Agent in writing, and (ii) payments approved by the Prepetition Agent in writing, in each case in accordance with the Approved Budget.

## Exhibit 2

### Interim Milestones

The SO5 Digital Debtors must achieve each of the following milestones (as the same may be extended from time to time with the consent of the Prepetition Agent):

1. On or before the Petition date, the SO5 Digital Debtors shall solicit proposals ("***Liquidation Sale Proposals***") from one or more nationally recognized consultants to conduct a self-liquidating sale of the SO5 Digital Debtors' inventory pursuant to "store closing", "everything on sale", "everything must go", "going out of business" or similar themed sale and the SO5 Digital Debtors shall provide each of the Liquidation Sale Proposals to the Prepetition Agent immediately upon receipt (and in any event not less than one day after receipt);

2. On the Petition Date, the SO5 Digital Debtors shall file a motion seeking approval of the use of Cash Collateral, in form and substance acceptable to the Prepetition Agent;

3. On or before three (3) business days after the Petition Date, the First Interim Order shall have been entered by the Court;

4. On or before seven (7) days after the Petition Date, the SO5 Digital Debtors shall receive all Liquidation Sale Proposals;

5. On or before the Second Interim Hearing, the SO5 Digital Debtors shall, in consultation with the Prepetition Agent, select one or more Liquidation Sale Proposals and file a motion (in form and substance acceptable to the Prepetition Agent) with the Court for approval of an order (or interim and final order) authorizing (a) the SO5 Digital Debtors' entry into the approved Liquidation Sale Proposal (the "***Consulting Agreement***"), and (b) the procedures for the SO5 Digital Debtors' self-liquidating sale of inventory (the "***Liquidation Sale Procedures***");

6. On or before fourteen (14) days after the Petition date, the SO5 Digital Debtors shall have obtained the Court's approval of a second interim order approving the Motion (in form and substance acceptable to the Prepetition Agent), subject to court availability;

7. On or before seventeen (17) days after the Petition date, the SO5 Digital Debtors shall have obtained the Court's approval of the interim order approving the Liquidation Sale Procedures, subject to Court availability; and

8. On or before February 13, 2026, the SO5 Digital Debtors shall have obtained the Final Order (in form and substance acceptable to the Prepetition Agent).

## Exhibit 3

**Approved Budget**

Saks OFF 5TH Digital
Second Interim Budget
$ in 000s

| | | Filing Actual 1/17 | Forecast 1/24 | Forecast 1/31 | Forecast 2/7 | Forecast 2/14 | Forecast 2/21 | 1/24 - 2/21 Forecast |
|---|---|---|---|---|---|---|---|---|
| | **Operating Receipts** | | | | | | | |
| 1.) | Sales Receipts | 2,209 | 2,730 | 3,059 | 4,649 | 5,010 | 4,743 | 20,191 |
| 2.) | **Total Operating Receipts** | **2,209** | **2,730** | **3,059** | **4,649** | **5,010** | **4,743** | **20,191** |
| | **Operating Disbursements** | | | | | | | |
| 3.) | Merch A/P | - | - | - | - | - | - | - |
| 4.) | Expense AP | (13) | (579) | (978) | (954) | (905) | (897) | (4,313) |
| 5.) | SG Paid Expenses | - | - | - | - | - | - | - |
| 6.) | Rent | - | - | - | - | - | - | - |
| 7.) | Sales Tax | (1,074) | (634) | - | (632) | (155) | (596) | (2,017) |
| 8.) | Liquidator Fees | - | - | (85) | (147) | (117) | (128) | (477) |
| 9.) | Other Operating / WD Team | (13) | - | - | - | (13) | - | (13) |
| 10.) | Wind Down Costs | - | - | - | - | - | - | - |
| 11.) | **Total Operating Disbursements** | **(1,100)** | **(1,213)** | **(1,063)** | **(1,733)** | **(1,189)** | **(1,621)** | **(6,819)** |
| 12.) | **Operating Cash Flow** | **1,109** | **1,517** | **1,996** | **2,916** | **3,821** | **3,122** | **13,372** |
| | **Non-Operating Disbursements** | | | | | | | |
| 13.) | Professional Fee Escrow | - | (320) | (320) | (320) | (320) | (320) | (1,600) |
| 14.) | Saks Global TSA Escrow | - | (350) | (175) | (175) | (175) | (175) | (1,050) |
| 15.) | 503(b)(9) | - | - | - | - | - | - | - |
| 16.) | FILO Interest | - | - | - | - | - | - | - |
| 17.) | **Non-Operating Disbursements** | **-** | **(670)** | **(495)** | **(495)** | **(495)** | **(495)** | **(2,650)** |
| 18.) | **Net Cash Flow** | **1,109** | **847** | **1,501** | **2,421** | **3,326** | **2,627** | **10,722** |
| | **Cash Balance** | | | | | | | |
| 19.) | Beginning Book | 8,044 | 6,189 | 7,036 | 5,000 | 5,000 | 5,000 | 6,189 |
| 20.) | - Prepetition Disbursements | (464) | - | - | - | - | - | - |
| 21.) | + Net Cash Flow | 1,109 | 847 | 1,501 | 2,421 | 3,326 | 2,627 | 10,722 |
| 22.) | - Paydown of FILO | (2,500) | - | (3,537) | (2,421) | (3,326) | (2,627) | (11,911) |
| 23.) | **Ending Bank** | **6,189** | **7,036** | **5,000** | **5,000** | **5,000** | **5,000** | **5,000** |
| | **FILO** | | | | | | | |
| 24.) | Beginning FILO | 20,000 | 17,500 | 17,500 | 13,963 | 11,542 | 8,215 | 17,500 |
| 25.) | - Paydown | (2,500) | - | (3,537) | (2,421) | (3,326) | (2,627) | (11,911) |
| 26.) | **Ending FILO** | **17,500** | **17,500** | **13,963** | **11,542** | **8,215** | **5,589** | **5,589** |