United States Bankruptcy Court
Southern District of Texas
**ENTERED**
January 23, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>SAKS GLOBAL ENTERPRISES LLC, *et al*.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-90103 (ARP)<br><br>(Jointly Administered)<br>(Emergency Hearing Requested) |

**INTERIM ORDER GRANTING THE SO5 DIGITAL DEBTORS' EMERGENCY
MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING
AND AUTHORIZING THE SO5 DIGITAL DEBTORS TO ENTER INTO AND
PERFORM UNDER THE CONSULTING AGREEMENT AND CONDUCT THE
LIQUIDATION SALE IN ACCORDANCE WITH THE LIQUIDATION SALE
PROCEDURES AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the SO5 Digital Debtors, as debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105(a), 363(B), and 554 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1 and 9013-1of the United States Bankruptcy Court for the Southern District of Texas and the Procedures for Complex Chapter 11 Bankruptcy Cases (collectively, the "Local Rules"), for entry of an interim order (this "Interim Order"), among other things:

    a.  approving, and authorizing the SO5 Digital Debtors to enter into and perform under the Consulting Agreement, the form of which is attached hereto as Exhibit 1;

    b.  authorizing and approving the initiation of the Liquidation Sale and related matters in accordance with the terms of the Consulting Agreement, as applicable, and the

---

[1]   A complete list of each of the SO5 Digital Debtors in these chapter 11 cases may be obtained on the website of the SO5 Digital Debtors' proposed claims and noticing agent at https://cases.stretto.com/Saks. The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the SO5 Digital Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281. The following Debtors are represented by Bradley Arant Boult Cummings LLP: Saks OFF 5TH Holdings, LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner, Inc., and Luxury Outlets USA, LLC (collectively the "SO5 Digital Debtors"). The remaining Debtors (collectively, the "Global Debtors") are represented by Haynes and Boone, LLP and Willkie Farr & Gallagher LLP. The term "Debtors" as used herein refers collectively to the SO5 Digital Debtors and the Global Debtors.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Liquidation Sale Procedures attached hereto as Exhibit 2, with such sales to be free and clear of all liens, claims, and encumbrances (collectively, the "Encumbrances") with such encumbrances attaching to the proceeds of such sales in the same priority as prior to the sale;

c.  approving the sale and/or abandonment of certain Liquidation Sale Assets (as defined below);

d.  authorizing the sale or disposition of the Liquidation Sale Assets free and clear of all Encumbrances; and

e.  granting related relief, such as more fully set out in the Motion, including scheduling a final hearing to consider approval of the Motion on a final basis.

This Court having considered the interim relief requested in the Motion, the exhibits attached thereto, the CRO Declaration and the First Day Declaration, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on January 23, 2026 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by this Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the SO5 Digital Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the SO5 Digital Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the SO5 Digital Debtors' businesses and the maximization of the value of the SO5 Digital Debtors' assets; and it appearing that the SO5 Digital Debtors' entry into and performance under the Consultant Agreement, and pursuit of a Liquidation Sale in accordance with the Liquidation Sale Procedures, all in accordance with the provisions of this Interim Order, is a sound and prudent exercise of the SO5

Digital Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.      As set forth in the Motion and at the Hearing, the SO5 Digital Debtors have sound business reasons for seeking to continue their conduct relating to the Liquidation Sale, enter into and perform under the Consulting Agreement, and adopt the Liquidation Sale Procedures on an interim basis subject to the Final Hearing (defined below). Entry into the Consulting Agreement is a reasonable exercise of the SO5 Digital Debtors' business judgment and in the best interests of the SO5 Digital Debtors and their estates.

B.      The initiation of the Liquidation Sale in accordance with the Liquidation Sale Procedures will provide an efficient means for the SO5 Digital Debtors to dispose of the Liquidation Sale Assets.

C.      The Consulting Agreement was negotiated, proposed, and entered into by the Consultant and the SO5 Digital Debtors without collusion, in good faith, and from arm's-length bargaining positions.

D.      The sale of the Liquidation Sale Assets through the conduct of the Liquidation Sale in the best interest of the SO5 Digital Debtors' estates.

E.      The SO5 Digital Debtors have represented that they are neither selling nor leasing personally identifiable information pursuant to the Motion, although the Consultant will be

---

[3]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

authorized to distribute emails and promotional materials to the SO5 Digital Debtors' customers consistent with the SO5 Digital Debtors' existing policies on the use of consumer information.

F.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the SO5 Digital Debtors and their estates and the SO5 Digital Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

G.      The entry of this Interim Order is in the best interest of the SO5 Digital Debtors and their estates, creditors, and interest holders and all other parties in interest herein.

Based upon the foregoing findings and conclusions, the Motion and the record before this Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is granted on an interim basis subject to the terms and conditions set forth in this Interim Order.

2.      Any objections to this Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.

3.      The final hearing on the Motion shall be held on February 13, 2026 at 9:00 a.m. (prevailing Central Time) (the "Final Hearing"). Any objections or responses to entry of the proposed final order shall be filed on or before 4:00 p.m. (prevailing Central Time) on February 6, 2026. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter a final order without need for the Final Hearing.

4.      The SO5 Digital Debtors' implementation and effectuation of the Liquidation Sale is approved as set forth herein, pursuant to section 105(a) and 363(b) of the Bankruptcy Code.

5.      The SO5 Digital Debtors are authorized (in consultation with the Prepetition Agent), pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and without further notice

or relief from the Court except as provided herein, to take any and all actions consistent with this Order that are necessary or appropriate in the exercise of their reasonable business judgment to implement the Liquidation Sale.

6.      The SO5 Digital Debtors are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Interim Order in consultation with the Prepetition Agent.

7.      Notwithstanding anything to the contrary contained in the Motion or this Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the SO5 Digital Debtors under the terms of each interim and final order entered by the Court in respect of the Cash Collateral Motion (the "Cash Collateral Orders"), including compliance with any approved budget or cash flow forecast in connection therewith (and any permitted variances thereto) and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Cash Collateral Orders or any approved budget set forth therein.

8.      To the extent of any conflict between this Interim Order, the Liquidation Sale Procedures, any Side Letter (as defined below), and the Consulting Agreement, the terms of any Side Letter shall control over this Interim Order, this Interim Order shall control over all other documents, and the Liquidation Sale Procedures shall control over the Consulting Agreement.

9.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective upon its entry.

## I.     Authority to Enter into and Perform under the Consulting Agreement.

11.     The SO5 Digital Debtors are authorized to enter into and perform under the Consulting Agreement pursuant to sections 363 of the Bankruptcy Code, on an interim basis including making payments to the Consultant of its fees, reimbursements of costs and expenses, and, subject to the provisions contained herein, payments of indemnification amounts (if any), in each case, as required by the Consulting Agreement without the need for any application of the Consultant or a further order of the Court.[4]

12.     Notwithstanding paragraph 7 hereof, Consultant's fees and expenses shall be paid from the gross proceeds of the Liquidation Sale but shall be subject to the terms of the Consulting Agreement itself, including as to any expense budget attached thereto.

13.     Subject to the restrictions set forth in this Interim Order and the Liquidation Sale Procedures, the SO5 Digital Debtors and the Consultant hereby are authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Liquidation Sale; and each of the transactions contemplated by the Consulting Agreement, and any actions taken by the SO5 Digital Debtors and the Consultant necessary or desirable to implement the Consulting Agreement and/or the Liquidation Sale prior to the date of this Interim Order, hereby are approved and ratified.

14.     The SO5 Digital Debtors shall indemnify the Consultant under the terms of the Consulting Agreement, as modified and limited by this Order. Notwithstanding the foregoing, the

---

[4]     NTD: All references to "Additional Goods" have been removed from form.  As noted in the Motion, the GA proposal does not appear to contemplate this generally but there are a couple of stray references to Additional Goods there.

Consultant is not indemnified for, and may not receive any contribution or reimbursement with respect to any matter that arises from the Consultant's gross negligence, willful misconduct, fraud, bad faith, self-dealing, or breach of fiduciary duty.

15.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing these chapter 11 cases, the Consultant believes that it is entitled to the payment of any amounts by the SO5 Digital Debtors on account of the SO5 Digital Debtors' indemnification, contribution, and/or reimbursement obligations under the Consulting Agreement (as modified by this Interim Order), including the advancement of defense costs, the Consultant must file an application therefor in this Court, and the SO5 Digital Debtors may not pay any such amounts to the Consultant before the entry of an order by this Court approving the payment. All parties in interest shall retain the right to object to any demand by the Consultant for indemnification, contribution, or reimbursement.

**II.     Authority to Engage in Liquidation Sale.**

16.     The SO5 Digital Debtors are authorized, but not directed, on an interim basis pending the Final Hearing, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately conduct the Liquidation Sale in accordance with this Interim Order, the Liquidation Sale Procedures and the Consulting Agreement.

17.     The Liquidation Sale Procedures are approved in their entirety on an interim basis.

18.     All persons and entities that are presently in possession of some or all of the Merchandise or FF&E in which the SO5 Digital Debtors hold an interest that are or may be subject to the Consulting Agreement or this Interim Order hereby are directed to surrender possession of such Merchandise or FF&E to the SO5 Digital Debtors or, if applicable, the Consultant. The SO5

7

Digital Debtors shall immediately serve a copy of this Interim Order on any party alleged to be in possession of said Merchandise or FF&E.

19.     Subject to Section IV of this Interim Order, neither the SO5 Digital Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined in Bankruptcy Code section 101(27)) or landlord, to conduct the Liquidation Sale or to take the related actions authorized herein.

**III.     Conduct of the Liquidation Sale.**

20.     All advertising media in which the Liquidation Sale may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the SO5 Digital Debtors or the Consultant to conduct the Liquidation Sale and the sale of Liquidation Sale Assets pursuant to the Liquidation Sale Procedures and, if applicable, Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Liquidation Sale Assets in the manner contemplated by and in accordance with this Interim Order, the Liquidation Sale Procedures, and, if applicable, the Consulting Agreement.

21.     Subject to (i) the Dispute Resolution Procedures (as defined below) provided for in this Interim Order and (ii) any Side Letter, the SO5 Digital Debtors and the Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Liquidation Sale without necessity of further order of this Court as provided in the Consulting Agreement or the Liquidation Sale Procedures, including, but not limited to, advertising the sale as a "everything on sale", "everything must go", "going out of business", "entire site on sale", "sitewide sale", "website closing", "site closing" or other mutually

8

agreed upon themed sales (including the use of exterior banners at the eCommerce Facility) and street signage.

22.    Notwithstanding anything herein to the contrary, and in view of the importance of the use of banners and other advertising to the sale of the Merchandise or FF&E, to the extent that, prior to the Final Hearing, disputes arise during the course of such sale regarding laws regulating the use of banners or other advertising and the SO5 Digital Debtors and the Consultant are unable to resolve the matter consensually,  any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially no later than the earlier of (a) the Final Hearing or (b) within five business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

23.    Except as expressly provided in the Consulting Agreement, the sale of the Liquidation Sale Assets shall be conducted by the SO5 Digital Debtors notwithstanding any restrictive provision of any lease, sublease, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Liquidation Sale, the rejection of leases, abandonment of assets (which is hereby authorized pursuant to section 554 of the Bankruptcy Code), or "going dark" provisions.   The SO5 Digital Debtors and/or the Consultant, on the one hand, and any dealers or landlords of the eCommerce Facility, on the other hand, are authorized to enter into agreements ("Side Letters") between themselves modifying the Liquidation Sale Procedures without further order of the Court, and such Side Letters shall be binding as among the SO5 Digital Debtors and/or the Consultant, on the one hand, and dealers and any such landlords, on the other hand. Upon request (which may be by email), copies of any Side Letters will be provided to: (i) counsel for the Global Debtors, Attn: Jennifer Hardy (JHardy2@willkie.com); (ii) the United

9

States Trustee for the Southern District of Texas, Attn.: Jana Whitworth (jana.whitworth@usdoj.gov); Ha Nguyen (ha.nguyen@usdoj.gov); (iii) counsel for the Prepetition Agent, Attn: Christopher Carter (christopher.carter@morganlewis.com); and (iv) any statutory committee of unsecured creditors at such point as to provide the reasonable opportunity to object; provided that such party is subject to or agrees to become bound by reasonable confidentiality obligations to the extent requested.

24.     Except as expressly provided for herein or in the Liquidation Sale Procedures, no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Liquidation Sale, or the advertising and promotion of such sales, (including the posting of signs and exterior banners) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service providers, utilities, or creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Liquidation Sale and/or (b) instituting any action or proceeding in any court (other than in the Court) or administrative body seeking an order or judgment against, among others, SO5 Digital Debtors, the Consultant, dealers, or any landlord at the eCommerce Facility that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Liquidation Sale and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

25.     All sales of Liquidation Sale Assets shall be "as is" and final. However, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." Returns of

4916-0833-8057.15

items sold on a "final" basis, including items sold in the Liquidation Sale on a "final" basis pursuant to this Order, shall not be accepted. Notwithstanding anything herein, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

26.     The Consultant shall accept return of any goods that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within the time period proscribed by the SO5 Digital Debtors' return policy that was in effect when the merchandise was purchased, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect, which goods shall not be resold by the SO5 Digital Debtors.

27.     The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the SO5 Digital Debtors. The SO5 Digital Debtors are directed to remit all taxes arising from the Liquidation Sale to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute, the SO5 Digital Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the SO5 Digital Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. The Consultant shall collect, remit to the SO5 Digital Debtors and account for sales taxes as and to the extent provided in the Consulting Agreement. This Interim Order does not enjoin, suspend, or restrain the assessment, levy or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

28. Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the SO5 Digital Debtors, is authorized to sell, and all sales of Liquidation Sale Assets, whether by the Consultant or the SO5 Digital Debtors, shall be, free and clear of any and all of any liens, claims, encumbrances, and other interests; provided, however, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Liquidation Sale Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Liquidation Sale Assets, subject to any claims and defenses that the SO5 Digital Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreement).

29. Neither the Liquidation Sale Procedures, Consulting Agreement, nor this Interim Order authorize the transfer or sale of personal identifying information (which means information which alone or in conjunction with other information identifies an individual, including but not limited to an individual's first name (or initial) and last name, physical address, electronic address, telephone number, social security number, date of birth, government-issued identification number, account number and credit or debit card number ("PII") of any customers or employees unless such sale or transfer is permitted by the SO5 Digital Debtors' privacy policy and state, provincial or federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws"). The foregoing shall not limit the Consultant's use of the SO5 Digital Debtors' customer lists and mailing lists in accordance with the Consulting Agreement solely for purposes of advertising and promoting the Liquidation Sale. To the extent that the SO5 Digital Debtors propose to sell or abandon FF&E which may contain PII or confidential information about the SO5 Digital Debtors' employees and/or customers, the SO5 Digital Debtors shall cause the removal of the PII from such items of FF&E before such sale or abandonment.

30.      The SO5 Digital Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer property that would constitute Merchandise but for the fact that it is not located in the eCommerce Facility, to the eCommerce Facility whereupon it will constitute Merchandise pursuant to the terms of the Consulting Agreement. The Consultant is authorized to sell the SO5 Digital Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement, provided that, to the extent prohibited by applicable law, the SO5 Digital Debtors are not authorized to abandon, and the SO5 Digital Debtors are directed to remove and properly dispose of, any hazardous materials defined under applicable law of the jurisdiction in which the materials are located from any leased premises as and to the extent required by applicable law of the jurisdiction in which the leased premises lies.

31.      Notwithstanding this or any other provision of this Interim Order, nothing shall prevent or be construed to prevent the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from bidding on the SO5 Digital Debtors' assets not subject to the Consulting Agreement, pursuant to a consulting agreement, or otherwise ("Additional Assets").  The Consultant and/or its affiliates are hereby authorized to bid on and guarantee or otherwise acquire such Additional Assets notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, provided that such guarantee, transaction or acquisition is approved by separate order of this Court and provided further that the rights of the U.S. Trustee and all other parties in interest to object to any guarantee, transaction or acquisition are fully preserved.

### IV.      Dispute Resolution Procedures with Governmental Units.

32.      Nothing in this Interim Order, the Consulting Agreement, or the Liquidation Sale Procedures, releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit

13

under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order. Nothing contained in this Interim Order, the Consulting Agreement, or the Liquidation Sale Procedures shall in any way (a) diminish the obligation of any entity to comply with environmental laws or (b) diminish the obligations of the SO5 Digital Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. The Liquidation Sale shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including local laws, regulations, ordinances, or police powers of general applicability regarding matters such as regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in this Interim Order, the Consulting Agreement or the Liquidation Sale Procedures, shall alter or affect obligations to comply with all applicable federal safety laws and regulations. Nothing in this Interim Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the SO5 Digital Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Interim Order, or otherwise, pursuant to paragraph 33 herein. Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

14

33.     If and to the extent that the sale of Liquidation Sale Assets is subject to any State

Sale Laws, including any federal, state, or local statute, ordinance, or rule, or licensing requirement

directed at regulating "liquidations," "going out of business" sales, similar inventory Liquidation

Sale, or bulk sale laws, including laws restricting safe, professional, and non-deceptive, customary

advertising such as signs, banners, posting of signage solely in connection with the sale and

including ordinances establishing license or permit requirements, waiting periods, time limits or

bulk sale restrictions that would otherwise apply solely to the sale of the Liquidation Sale Assets,

or any similar laws, the dispute resolution procedures in this section shall apply:

(i)     Provided that the Liquidation Sale is conducted in accordance with the terms of this Interim Order and the Liquidation Sale Procedures, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the SO5 Digital Debtors shall be presumed to be in compliance with any State Sale Laws and are authorized to conduct the Liquidation Sale in accordance with the terms of this Interim Order and the Liquidation Sale Procedures without the necessity of further showing compliance with any State Sale Laws.[5]

(ii)    Within two business days after entry of this Interim Order, the SO5 Digital Debtors shall serve copies of this Interim Order, the Consulting Agreement and the Liquidation Sale Procedures via email, facsimile, or regular mail, on the following: (i) the United States Trustee; (ii) the state attorney general's office for each state where the Liquidation Sale is being conducted; and (iii) the county consumer protection agency or similar agency for each county where the eCommerce Facility is located; (iv) the division of consumer protection for Pennsylvania, where the where the eCommerce Facility is located; (v) the chief legal counsel for the local jurisdiction where the eCommerce Facility is located; and (vi) any landlord for the eCommerce Facility.

(iii)   To the extent there is a dispute arising from or relating to the Liquidation Sale, this Interim Order, the Consulting Agreement, or the Liquidation Sale Procedures, which dispute relates to any State Sale Laws (a "Reserved Dispute"), this Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten (10) days following entry of this Interim Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute (which may be by e-mail) to counsel for the SO5 Digital Debtors so as to

---

[5]   For the avoidance of confusion, this includes any State Sale Laws relating to advertising in the event the SO5 Digital Debtors obtain approval from this Court to pursue an alternative transaction.

ensure delivery thereof within one business day thereafter. If the SO5 Digital Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days after service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

(iv)     In the event a Dispute Resolution Motion is filed, nothing in this Interim Order shall preclude the SO5 Digital Debtors, a landlord, or other interested party from asserting (i) that the provisions of any State Sale Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Interim Order nor the conduct of the SO5 Digital Debtors pursuant to this Interim Order, violates such State Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of any order or to limit or interfere with the SO5 Digital Debtors' or the Consultant's ability to conduct or to continue to conduct the Liquidation Sale pursuant to this Interim Order, absent further order of this Court. This Court grants authority for the SO5 Digital Debtors and the Consultant to conduct the Liquidation Sale pursuant to the terms of this Interim Order, the Consulting Agreement, and/or the Liquidation Sale Procedures and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its State Sale Laws or the lack of any preemption of such State Sale Laws by the Bankruptcy Code. Nothing in this Interim Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

(v)      If, at any time, a dispute arises between the SO5 Digital Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is an Applicable Sale Law, and subject to any provisions contained in this Interim Order related to the State Sale Laws, then any party to that dispute may utilize the provisions hereunder by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is an Applicable Sale Law shall be made de novo.

34.     Except as expressly provided for herein or in the Liquidation Sale Procedures, and except with respect to any Governmental Unit (as to which paragraphs 32 and 33 shall apply), no person or entity, including, but not limited to, any landlord, licensor, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Liquidation Sale, or the advertising and promotion of the Liquidation Sale, and all such parties and persons of every nature and description, including landlords, licensors, creditors, utility companies, and all those acting for or on behalf of such parties, are prohibited and enjoined from

16

(a) interfering in any way with, or otherwise impeding, the conduct of the Liquidation Sale and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the SO5 Digital Debtors, the Consultant, or the landlords that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Liquidation Sale and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

35.    Any restrictions in any lease agreement, restrictive covenant, or similar documents purporting to limit, condition, or impair the SO5 Digital Debtors' ability to conduct the Liquidation Sale shall not be enforceable, nor shall any breach of such provisions in these Chapter 11 Cases constitute a default under a lease or provide a basis to terminate the lease; provided, that the Liquidation Sale are conducted in accordance with the terms of this Interim Order and the Liquidation Sale Procedures.

36.    Subject to Paragraphs 32 and 33 above, each and every federal, state, or local agency, departmental or governmental unit with regulatory authority over the Liquidation Sale and all advertising media in which the Liquidation Sale are advertised shall consider this Interim Order as binding authority that no further approval, license, or permit of any governmental unit shall be required, nor shall the SO5 Digital Debtors be required to post any bond, to conduct the Liquidation Sale.

37.    Provided that the Liquidation Sale is conducted in accordance with the terms of this Interim Order, the Consulting Agreement, and the Liquidation Sale Procedures, and in light of the provisions in any applicable laws that exempt court-ordered sales from their provisions, the SO5 Digital Debtors and the Consultant shall be presumed to be in compliance with any State Sale Laws and are authorized to conduct the Liquidation Sale in accordance with the terms of this

17

Interim Order and the Liquidation Sale Procedures without the necessity of further showing compliance with any such State Sale Laws.

38.     To the extent that between the Petition Date and the date of the Final Hearing there is a Reserved Dispute, the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute which such Reserved Dispute will be heard at the Final Hearing, absent a party obtaining expedited relief. Nothing in this Interim Order shall constitute a ruling with respect to any issues to be raised with respect to a Reserved Dispute. Any Governmental Unit may assert a Reserved Dispute by sending a written notice (which may be by e-mail) explaining the nature of the dispute to: (a) the SO5 Digital Debtors, Attn: Legal Dept.; (b) proposed counsel to the SO5 Digital Debtors, Attn: Jarrod B. Martin (jbmartin@bradley.com); (c) the United States Trustee for the Southern District of Texas, Attn.: Jana Whitworth (jana.whitworth@usdoj.gov); Ha Nguyen (ha.nguyen@usdoj.gov); (d) counsel to any statutory committee appointed in these Chapter 11 Cases; (e) the Consultant, Attn: Timothy J. Shilling (tshilling@gagroup.com) and Rebecca Hollander (rhollander@gagroup.com); (f) counsel for the Prepetition Agent, Christopher Carter, (christopher.carter@morganlewis.com) and (f) any affected landlord and their counsel of record (if known).

### IV.     Other Provisions.

39.     The Consultant shall not be liable for any claims against the SO5 Digital Debtors, and the SO5 Digital Debtors shall not be liable for any claims against the Consultant, in each case, other than as expressly provided for in the Consulting Agreement.

40.     In the event the Court enters a subsequent order authorizing the SO5 Digital Debtors to pursue or consummate an alternative transaction which would make the termination of the Liquidation Sale appropriate, the SO5 Digital Debtors may terminate the Liquidation Sale on

18

three (3) days' notice and the Consultant's fees will be handled in accordance with the Consulting Agreement.

41.     Within 30 days of conclusion of the Liquidation Sale, the SO5 Digital Debtors shall (a) file with the Court a summary report of the Liquidation Sale process that will include the gross revenue from the Liquidation Sale Assets sold, and (b) file with the Court and serve on the U.S. Trustee and any statutory committee report showing payment of the Consultant's fees, setting forth detail and information regarding the calculation of such fees paid to the Consultant and expenses reimbursed to the Consultant.

42.     This Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Interim Order or the Consulting Agreement, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit the use of banners, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit the use of any advertising media, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of or against the SO5 Digital Debtors or the Consultant for protection from interference with the Liquidation Sale, (c) any other disputes related to the Liquidation Sale, and (d) to protect the SO5 Digital Debtors and/or the Consultant against any assertions of any liens, claims, encumbrances, and other interests in or to the Liquidation Sale Assets. No such parties or person shall take any action against the SO5 Digital Debtors, the Consultant, the landlords, or the Liquidation Sale until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

43.     Nothing in this Interim Order constitutes (a) an admission as to the validity of any claim against the SO5 Digital Debtors; (b) a waiver of the SO5 Digital Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the SO5 Digital Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the SO5 Digital Debtors' estates. Any payment made pursuant to this order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the SO5 Digital Debtors' rights to subsequently dispute such claim.

44.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

45.     The SO5 Digital Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this order.

46.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this order.

Signed: January 23, 2026

Alfredo R Pérez
United States Bankruptcy Judge

20

**Exhibit 1**
**Consulting Agreement**

## CONSULTING AGREEMENT

This Consulting Agreement (collectively with all Exhibits hereto, the "Agreement") is made as of **January 21, 2026**, by and between **Saks Off 5th Holdings LLC**, a Delaware limited liability company ("Merchant"), and **GA Retail Solutions, LLC**, a California limited liability company ("Consultant" and together with Merchant, the "Parties" and each a "Party").

## RECITALS

WHEREAS, Merchant operates an ecommerce platform, including a related eCommerce facility listed on **Exhibit A**, and desires that Consultant act as Merchant's consultant for the limited purposes of (i) selling all of the Merchandise (as hereinafter defined) from Merchant's eCommerce facility listed on **Exhibit A** attached hereto (the "eCommerce Facility"), by means of a "everything on sale", "everything must go", "going out of business", "entire site on sale", "sitewide sale", "website closing", "site closing" or similar themed sale, as agreed between the Parties, and (ii) disposing of the FF&E (defined below) owned by Merchant at the eCommerce Facility, except for FF&E which Merchant elects to sell, transfer, or convey to an affiliate of Merchant (e.g., a Saks Global entity), in each case on the terms and conditions set forth in this Agreement (the "Sale").

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

**Section 1.       Appointment of Consultant**

Subject to Section 3(b) of this Agreement approval of this Agreement by the Bankruptcy Court (as defined in Section 20), effective as of the date hereof, Merchant hereby appoints Consultant, and Consultant hereby agrees to serve, as Merchant's exclusive agent for the limited purpose of conducting the Sale and assisting Merchant in the sale of the Merchandise and FF&E (each as defined below) in accordance with the terms and conditions of this Agreement. Subject to the above, and to Merchant's prior approval of any advertising messaging, Consultant shall be authorized to advertise the Sale as a "everything on sale", "everything must go", "going out of business", "entire site on sale," "sitewide sale," "website closing," "site closing" or similar-themed sale approved by Merchant.

**Section 2(a).       Merchandise**

As used in this Agreement, "Merchandise" means all first quality goods, saleable in the ordinary course, located in the eCommerce Facility on the Sale Commencement Date (defined below) or delivered thereto after the Sale Commencement Date pursuant to the terms of this

1

Agreement. "Merchandise" excludes (i) goods that belong to sublessees, licensees, or concessionaires of Merchant, as identified by Merchant prior to the Sale Commencement Date; (ii) FF&E and improvements to real property that are located in the eCommerce Facility; (iii) damaged or defective goods; (4) goods held by Merchant on memo, on consignment, or as bailee as identified by Merchant prior to the Sale Commencement Date; and (5) gift cards (third party and Merchant branded).

### Section 2(b).    FF&E

As used in this Agreement, "FF&E" means the furniture, furnishings, trade fixtures, machinery, equipment, office supplies, supplies, conveyor systems, racking, rolling stock, and other tangible personal property, including raw materials, owned by Merchant and located in the eCommerce Facility.

### Section 3(a).        Sale Term

The Sale shall commence no later than three (3) business days after entry of the Approval Order (as defined below)  (the "Sale Commencement Date") and conclude no later than the eight (8) week anniversary of the Sale Commencement Date (the "Sale Termination Date"); provided, however, that the Parties (with the consent of Callodine Commercial Finance, LLC, in its capacity as administrative agent and collateral agent under the term loan facility provided to Merchant, the "Lender Agent") may mutually agree in writing (subject to the approval of the Bankruptcy Court (as defined in Section 20) to extend or terminate the Sale prior to the Sale Termination Date. The date on which the Sale has concluded is the "Sale Termination Date" and the period between the Sale Commencement Date and the Sale Termination Date, inclusive, is the "Sale Term".  The parties intend the Sale Term to be eight (8) weeks in duration unless otherwise agreed in writing by the parties and the Lender Agent; provided that extensions for delays or interruptions shall be accounted for as set forth below. To the extent that the Sale is delayed or interrupted because the eCommerce Facility is required to be closed due to the issuance of an order, rule, restriction, recommendation or regulation by a federal, state or local government agency, or similar regulatory or authoritative agency that may be imposed on any aspect of Merchant's ability to conduct the Sale at the eCommerce Facility in response to any health-related outbreak or pandemic ("Health Regulations"), the Sale Termination Date may be extended by the time period for which the Sale was delayed or interrupted by the agreement of the Parties. At the conclusion of the Sale, Consultant shall surrender the eCommerce Facility to Merchant in broom clean condition with any unsold FF&E to be left in place at the eCommerce Facility.

### Section 3(b).    Merchant's Special Termination Right

Notwithstanding anything to the contrary in this Agreement, Merchant shall have the right, in its sole and absolute discretion (subject to the consent of the Lender Agent), to terminate the Sale and Consultant's appointment as exclusive agent as described in Section 1 at any time (the "Special Termination Right") in order to pursue any alternative sale process relating to Merchant's business or the Merchandise and FF&E, including, without limitation, any sale of Merchant's

2

business or assets as a going concern, a situation where a third party agrees to purchase Merchant's existing secured indebtedness, or otherwise, or upon the effective date of a plan of reorganization or liquidation.  If exercised, Merchant shall provide Consultant with written notice of its exercise of the Special Termination Right and, upon delivery of such notice, Consultant shall discontinue all actions relating to the Sale unless otherwise mutually agreed in writing by the Parties (with the consent of the Lender Agent).

**Section 4.**       **Project Management**

(A)       Consultant's Undertakings

During the Sale Term, Consultant shall, in collaboration with Merchant: (i) provide qualified supervisors (the "Supervisors") engaged by Consultant to oversee the Sale and management of the eCommerce Facility in an effort to maximize revenue and sell all of the Merchandise prior to the end of the Sale; (ii) determine appropriate point-of-sale and external advertising, subject to the reasonable advance approval of Merchant; (iii) determine appropriate discounts of Merchandise, staffing levels, and consultation on appropriate bonus and incentive programs, if any, for the employees at the eCommerce Facility, each subject to the reasonable advance approval of Merchant; (iv) evaluate sales of Merchandise by category, provide sales reporting (but only if, and to the extent that, Merchant provides Consultant access to the point of sale data in the normal course), and monitor expenses; (v) to the extent necessary, assist Merchant in obtaining any required permits and governmental consents required to conduct the Sale; (vi) price, market, and sell the FF&E on behalf of Merchant; and (vii) provide such other related services deemed necessary or appropriate by Merchant and Consultant, including but not limited to arranging wholesale sales of the Merchandise and sharing relevant information regarding the Merchandise with potential buyers.

Merchant shall be responsible for all reasonable costs and expenses incurred by Consultant in connection with the sale of FF&E in accordance with a mutually agreed budget to be determined at a later time; for the sake of clarity, such expenses are not included in the Expense Budget attached hereto as **Exhibit B**.  Consultant shall have the right to leave in place at the eCommerce Facility any unsold FF&E.  Unless otherwise agreed to by Merchant, the sale of the FF&E at the eCommerce Facility shall conclude at the same time as Merchandise Sales conclude.

The Parties expressly acknowledge and agree that Merchant shall have no liability (other than reimbursing Consultant for the cost of supervision as an expense as provided hereunder) to the Supervisors for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination, or any other liability arising from Consultant's hiring or engagement of the Supervisors, and the Supervisors shall not be considered employees of Merchant.

Consultant shall report directly to the Chief Restructuring Officer of Merchant (the "Merchant Contact").  Consultant shall use its commercially reasonable efforts to sell all the Merchandise and dispose of the FF&E in accordance with the terms of this Agreement; provided, however, subject to the foregoing, Merchant acknowledges and agrees that Consultant does not

3

warrant or guarantee any particular results or outcomes in connection with the Sales. The Parties further acknowledge that Consultant does not warranty or guarantee that it will be able to assist Merchant in obtaining all of the permits and governmental consents required to conduct the Sale, and Consultant shall have no liability to Merchant or any permitting or governmental agencies for the payment of any fines, costs or assessments that may be charged to Merchant or Consultant to the extent that any such required permits or governmental consents are not properly or timely obtained.

    (B)    <u>Merchant's Undertakings</u>

During the Sale Term, Merchant or its affiliates shall (i) be the employer of the employees based at the eCommerce Facility, other than the Supervisors; (ii) pay all taxes, costs, expenses, accounts payable, and other liabilities relating to the eCommerce Facility, the employees and other representatives of Merchant; (iii) prepare and process all tax forms and other documentation; (iv) collect all sales taxes and pay them to the appropriate taxing authorities; (v) use reasonable efforts to cause Merchant's (or its affiliates') employees based at the eCommerce Facility to cooperate with Consultant and the Supervisors; (vi) execute all agreements determined by Merchant and Consultant to be necessary or desirable for the operation of the eCommerce Facility during the Sale; (vii) arrange for the ordinary maintenance in order to maintain in good working order all point-of-sale equipment, HVAC systems, other mechanical devices and overall facilities reasonably required to allow for the conduct of the Sale and operation of the eCommerce Facility; (viii) provide peaceful use and occupancy of, and full access (including reasonable before and after hours access and normal utilities/phone service) to, the eCommerce Facility, for the purpose of preparing for, conducting, and completing the Sale, and performing its obligations under this Agreement; (ix) with Merchant's consent, and to the extent of Merchant's access, right and ability to use and sublicense any access, right, and use, Consultant shall have reasonable access, right, and ability to use, until the Sale Termination Date, the trade names, logos, e-mail lists, mailing lists, customer lists, including wholesale customer lists, social media sites such as Facebook, and X relating to and used in connection with the operation of the Merchant's eCommerce business, solely for the purposes of advertising the Sale, selling Merchandise and FF&E, and otherwise conducting the Sale in accordance with the terms of the Agreement, but for no other purpose; and (x) use commercially reasonable efforts to provide that Consultant has quiet use and enjoyment of the eCommerce Facility for the Sale Term in order to perform its obligations under this Agreement.

Merchant shall provide throughout the Sale Term central administrative services necessary for the Sale, including internal payroll processing, MIS services, cash and inventory reconciliation, data processing and reporting, email preparation and distribution, information technology updates, functionality, and maintenance, and accounting, all at no cost to Consultant.

Consultant shall have no liability to, and Merchant shall indemnify and hold Consultant harmless from, any claim by or on behalf of Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees, and such employees shall not be considered employees of Consultant.

The Parties acknowledge the ongoing nature of the COVID-19 pandemic, as well as other emerging infectious diseases and health-related outbreaks, and that local, state and national laws and responses are continuously developing, often in unpredictable ways. Merchant hereby agrees that, while Consultant will fully cooperate with Merchant to adhere to any health regulations, the responsibility and expense of complying with any such laws, regulations, or orders, including their enforcement and implementation, shall be the sole responsibility of Merchant. Examples of such restrictions, regulations or recommendations may include, without limitation: (i) providing protective gear (such as masks, sanitizers, and similar items) aimed at reducing the spread of the virus to Merchant's employees, customers, vendors, etc.; (ii) implementing physical restrictions with regard to operations at the eCommerce Facility; and (iii) enforcing daily cleaning and sanitizing procedures at the eCommerce Facility. Merchant and its employees shall be solely responsible to facilitate, enforce, and implement any such restrictions or regulations, at Merchant's sole cost and expense.

**Section 5.**      **The Sale**

All sales of Merchandise and FF&E shall be made on behalf of, and solely in the name of, Merchant. Consultant does not have, nor shall it have, any right, title, or interest in Merchandise or FF&E. All sales of Merchandise or FF&E shall be by cash, gift card, gift certificate, merchandise credit, debit card, or credit card and, at Merchant's discretion, by check or otherwise in accordance with Merchant's policies, and shall be "final" with no returns accepted or allowed, unless otherwise directed by Merchant.

**Section 6.**      **Consultant Fee and Expenses in Connection with the Sale**

(A)      Gross Proceeds.

With respect to Merchandise or FF&E, as applicable, that is sold through the Sale, whether sold at retail or wholesale, "Gross Proceeds" means the sum of all gross proceeds thereof (including, as a result of the redemption of any gift card, gift certificate, merchandise credit, or loyalty vouchers (i.e., $10 off) (collectively, "Gift Cards") as well as wholesale sales to third parties) during the Sale Term, after the application of all discounts and net only of sales taxes. During the Sale Term, Merchant will allow customers to elect to take advantage of either (i) the discounts afforded to customers in connection with Merchant's loyalty/membership program benefits and/or Merchant's coupons that are valid at the time of sale (collectively, "Merchant Discounts") or the then-prevailing discounts being offered.  For the avoidance of doubt; Merchant will not allow customers to apply both forms of discounts at the time of purchase, on a cumulative basis. Merchant will accept Gift Cards and Merchant Discount pursuant to any orders entered by the Bankruptcy Court (as defined in Section 20).

(B)      Consultant's Fee

a.   As consideration for its services under this Agreement, Merchant shall pay to Consultant a fee equal to a percentage of all Gross Proceeds of Merchandise

and FF&E sold in the Sale, in accordance with the fee structure below, each calculated from the first dollar recovered:

   i. For the sale of Merchandise during the Sale, Merchant shall pay Consultant a base fee ("Retail Base Fee") based upon gross recoveries on cost as set forth below:

| Consultant's Retail Base Fee | Gross Recovery on Cost Thresholds (calculated as Gross Proceeds divided by cost of Merchandise sold) |
|---|---|
| 2.0% | Below 110% of Cost |
| 2.25% | 110% of Cost or More |

Notwithstanding the foregoing, Consultant shall only earn the 2.25% Base Fee on Sales that occur during the first 8 weeks following the Sale Commencement Date unless mutually agreed in writing (email being sufficient) by the parties and the Lender Agent.

Notwithstanding anything to the contrary in this Agreement, Consultant shall be entitled to a minimum Base Fee of $250,000 (the "Minimum Base Fee"), which Minimum Base Fee shall, for the avoidance of doubt, be due and payable even if the Merchant exercises its Special Termination Right;

   ii. Merchant shall pay Consultant a fee in an amount equal to five percent (5%) of all Gross Proceeds of Merchandise sold through wholesale channels ("Wholesale Base Fee" and, together with the Retail Base Fee, the "Base Fee"), calculated from the first dollar recovered; provided, however, that no more than five percent (5%) of all Merchant's Merchandise may be sold through wholesale channels by Consultant without the prior written consent of Merchant and the Lender Agent (email being sufficient); and

   iii. For the sale of FF&E during the Sale, a fee equal to fifteen percent (15%) of all Gross Proceeds of FF&E sales ("FF&E Fee"), provided that no FF&E Fee shall be payable with respect to any sale of FFE to an affiliate of Merchant (e.g., a Saks Global entity)

     "Cost Value" shall mean the unit cost set forth in the following file, or any updated files (subject to the Parties' consent, email being sufficient): Current Inventory by SKU as of 01.05.2026.

For the avoidance of doubt, unless otherwise agreed in writing by the parties, if either party exercises its termination right or if Merchant exercises the Special Termination Right, Merchant shall only be obligated to pay Consultant for (i) its reimbursable pre-termination expenses consistent with the Expense Budget and Section 6(D) and (ii) the Minimum Base Fee *plus* any undisputed amounts of the Retail Base Fee (in excess of the Minimum Base Fee), the Wholesale Base Fee, and the FF&E Fee, if any, due under this Agreement arising in connection with sales of Merchandise and FF&E occurring prior to the termination date, which date shall be specified in Merchant's notice of its exercise of the Special Termination Right, which shall only include portions of the Retail Base Fee, Wholesale Base Fee, and FF&E Fee, as the case may be, earned on sales of such items on or prior to the date of termination.

(C)     <u>Gross Rings</u>

For purposes of calculating Gross Proceeds, the Base Fee, and FF&E Fee, the Parties shall use the "Gross Rings" method, wherein Consultant and Merchant shall jointly keep (i) a strict count of gross receipts less applicable sales taxes recorded through the eCommerce site, and (ii) invoices of sales made through wholesale channels, if any.  Register receipts show for each item sold the retail price (as reflected on Merchant's books and records) for such item, and the markdown or other discount granted in connection with such sale.  All such records and reports shall be made available to Consultant and Merchant during regular business hours upon reasonable notice.

(D)     <u>Expenses</u>

Merchant shall be responsible for all costs and expenses of the Sale, including but not limited to all operating expenses and outside legal expenses up to the budgeted amount.  To control the Sale expenses, Merchant and Consultant have established a budget (the "<u>Expense Budget</u>") of certain expenses in connection with the Sale, including payment of the reasonable costs of supervision (including Supervisors' wages, fees, travel, and deferred compensation), advertising costs, and Consultant's corporate travel/legal expenses, which aggregate sum Consultant shall not exceed absent Merchant's and the Lender Agent's prior written consent.  The Expense Budget is attached hereto as **<u>Exhibit B</u>**.  The Expense Budget may only be modified by mutual written agreement of the Parties (email being acceptable) and with the consent of the Lender Agent.

(E)     <u>[Reserved]</u>

(F)     <u>Reconciliation</u>

Consultant shall submit invoices to Merchant (and Merchant shall simultaneously deliver such invoices to the Lender Agent) on a weekly basis setting forth (i) the Base Fee and/or FF&E Fee earned during the preceding week, and (ii) any expenses incurred by Consultant during the preceding week for which Consultant is entitled to reimbursement. No later than two (2) business days after submission, the Base Fee, FF&E Fee, and any expenses shall be paid in full by Merchant via wire transfer to Consultant.

7

The Parties shall complete a final reconciliation and settlement of all amounts payable to Consultant under this Agreement (including, without limitation, Expense Budget items and fees) (the "Final Reconciliation") no later than forty-five (45) days following the Sale Termination Date, provided Merchant shall reasonably consult with the Lender Agent regarding the Final Reconciliation. The Parties shall cooperate in good faith to resolve any disputes with regard to such reconciliation.

**Section 7.**       **[Reserved]**

**Section 8.**       **Indemnification and Limitation on Liability**

(A)       Merchant's Indemnification

Merchant hereby indemnifies, defends, and holds Consultant and its affiliates and its and their respective members, managers, partners, officers, directors, employees, attorneys, advisors, principals, consultants and Supervisors (collectively, the "Consultant Indemnified Parties") harmless from and against all liabilities, claims, demands, damages, costs, and expenses (including reasonable attorneys' fees) (collectively, "Losses") arising from or related to (i) the acts or omissions of Merchant or Merchant Indemnified Parties (as defined below); (ii) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any eCommerce Facility employees (under a collective bargaining agreement or otherwise), or any other person (excluding the Consultant Indemnified Parties) against Consultant or any Consultant Indemnified Party, except claims arising from Consultant's own gross negligence or willful misconduct; (iii) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious, or otherwise actionable treatment of any Consultant Indemnified Parties or Merchant's customers by Merchant or any Merchant Indemnified Parties; (iv) Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law; (v) any claims of Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees; (vi) any liability or other claims arising out of liens, claims, interests and encumbrances asserted against the Merchandise or FF&E by any third parties; and/or (vii) any claims by any Consultant Indemnified Parties relating to exposure to hazardous materials in connection with the services rendered under this Agreement. Further, Merchant hereby agrees to promptly reimburse the Consultant Indemnified Parties for any legal fees or other expenses reasonably incurred by the Consultant Indemnified Parties in connection with such claims as they are incurred. Such indemnification and expense advancement/reimbursement shall survive the completion of the engagement and/or the expiration or termination of this engagement or this Agreement.

(B)       Consultant's Indemnification

Consultant hereby indemnifies, defends, and holds Merchant and its affiliates and its and their respective members, managers, partners, officers, directors, employees, attorneys, advisors, principals, and consultants (other than Consultant or the Consultant Indemnified Parties)

(collectively, the "Merchant Indemnified Parties") harmless from and against all Losses arising from or related to (i) the willful misconduct or grossly negligent acts or omissions of Consultant or Consultant Indemnified Parties; (ii) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious, or otherwise actionable treatment of any Merchant Indemnified Parties or Merchant's customers by Consultant or any Consultant Indemnified Parties; (iv) Consultant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Consultant on account of Consultant's income during the Sale Term in accordance with applicable law; and (v) any claims of Consultant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Consultant's employment, hiring or retention of its employees. Further, Consultant hereby agrees to promptly reimburse the Merchant Indemnified Parties for any legal fees or other expenses reasonably incurred by the Merchant Indemnified Parties in connection with such claims as they are incurred. Such indemnification and expense advancement/reimbursement shall survive the completion of the engagement and/or the expiration or termination of this engagement or this Agreement.

(C)     Limitation on Liability

CONSULTANT SHALL NOT BE RESPONSIBLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, PUNITIVE OR OTHER SPECIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS AND DAMAGE TO REPUTATION OR BUSINESS) ARISING UNDER OR BY REASON OF THIS AGREEMENT, THE SERVICES OR ANY ACT OR OMISSION HEREUNDER. FURTHERMORE, IN NO EVENT SHALL CONSULTANT'S LIABILITY PURSUANT TO THIS AGREEMENT EXCEED THE AMOUNT OF FEES PAID TO CONSULTANT HEREUNDER.    THE LIMITATIONS SET FORTH IN THE PRECEDING TWO SENTENCES SHALL NOT APPLY IN THE CASE OF CONSULTANT'S OR THE CONSULTANT INDEMNIFIED PARTIES' GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD, BREACH OF CONFIDENTIALITY OBLIGATIONS OWED TO MERCHANT, OR MISAPPROPRIATION OF FUNDS.

**Section 9.**     **Insurance**

(A)     Merchant's Insurance Obligations

Merchant shall maintain, throughout the Sale Term, liability insurance policies (including, without limitation, products liability, comprehensive commercial general liability insurance, and auto liability insurance), with at least the coverage limits currently existing thereunder, covering injuries to persons and property in or in connection with the eCommerce Facility and/or the Merchandise, and shall cause Consultant to be named an additional insured with respect to all such policies. At Consultant's request, Merchant shall provide Consultant with a certificate or certificates evidencing the insurance coverage required hereunder and that Consultant is an additional insured thereunder. In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all

9

4934-3480-1799.13

applicable statutory requirements.  Required coverages shall be maintained with insurers with an AM Best rating of at least A-VII.

      (B)      <u>Consultant's Insurance Obligations</u>

Consultant shall maintain, throughout the Sale Term, comprehensive commercial general liability insurance in an amount of at least one million dollars ($1,000,000) per occurrence and at least five million dollars ($5,000,000) in the aggregate covering injuries to persons and property in or in connection with Consultant's provision of services at the eCommerce Facility. Consultant shall cause Merchant and its affiliates to be named an additional insured with respect to all such policies. At Merchant's request, Consultant shall provide Merchant with a certificate or certificates evidencing the insurance coverage required hereunder and that Merchant and its affiliates are additional insureds thereunder. In addition, Consultant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all applicable statutory requirements.  Required coverages shall be maintained with insurers with an AM Best rating of at least A-VII.

**Section 10.**      <u>**Representations, Warranties, Covenants and Agreements**</u>

      (A)      <u>Merchant's Representations, Warranties, Covenants and Agreements</u>.

Merchant warrants, represents, covenants, and agrees, subject to the approval of the Bankruptcy Court (as defined in Section 20 below), that (i) Merchant is a company duly organized, validly existing, and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder and maintains its principal executive office at the address set forth herein; (ii) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Merchant and this Agreement constitutes a valid and binding obligation of Merchant enforceable against Merchant in accordance with its terms and conditions, and the consent of no other entity or person is required for Merchant to fully perform all of its obligations herein; (iii) the eCommerce Facility and the Merchant's eCommerce platform will be operated in the ordinary course of business in all respects other than those expressly agreed to by Merchant and Consultant; (vi) Merchant has legal title to the Merchandise and FF&E and has legal authority to sell these items to the general public free and clear of any liens, claims or encumbrances; and (vii) in the event any third parties have recorded or asserted any lien or encumbrance against the Merchandise and/or FF&E, Merchant represents that it has obtained the consent of such parties to the sale of these assets free and clear of any such liens.

      (B)      <u>Consultant's Representations, Warranties, Covenants and Agreements</u>.

Consultant warrants, represents, covenants and agrees that: (i) Consultant is a company duly organized, validly existing, and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform Consultant's obligations hereunder, and maintains its principal executive office at the addresses set forth herein;

(ii) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Consultant and this Agreement constitutes a valid and binding obligation of Consultant enforceable against Consultant in accordance with its terms and conditions, and the consent of no other entity or person is required for Consultant to fully perform all of its obligations herein; (iii) Consultant shall conduct the sale and perform its services hereunder in accordance with the terms of this Agreement and any Bankruptcy Court (as defined in Section 20) order and in compliance with all applicable federal, state, and local laws, rules, and regulations; and (iv) Consultant will not take any disciplinary action against any employee of Merchant.

**Section 11.**     **Termination**

The following shall constitute "Termination Events" hereunder:

(A)     Merchant's or Consultant's failure to perform any of their respective material obligations hereunder, which failure remains uncured for seven (7) days after receipt of written notice thereof to the defaulting Party;

(B)     Any representation or warranty made by Merchant or Consultant is untrue in any material respect as of the date made or at any time and throughout the Sale Term; or

(C)     Except as contemplated by Section 3(b), the Sale is terminated or materially interrupted or impaired for any reason other than as set forth in Section 11 (A) or (B) by Consultant or Merchant.

If a Termination Event occurs, the non-defaulting Party (in the case of an event of default) or either Party (if the Sale is otherwise terminated or materially interrupted or impaired) may, in its discretion, elect to terminate this Agreement by providing seven (7) days' written notice thereof to the other Party and, in the case of an event of default, in addition to terminating this Agreement, pursue any and all rights and remedies and damages resulting from such default. Notwithstanding anything to the contrary in this Agreement, Consultant, in its sole and reasonable business judgement, may elect to terminate this Agreement at any time on fourteen (14) days' prior written notice to the Merchant.

**Section 12.**     **Notices**

All notices and communications provided for pursuant to this Agreement shall be in writing, and sent by hand, facsimile, recognized overnight delivery service, or email, as follows:

If to Consultant:

GA Retail Solutions, LLC
2829 Townsgate Road, Suite 103
Westlake Village, CA 91361
Attention: Scott K. Carpenter and Tim Shilling
Tel: (818) 746-9309

Email: scarpenter@gagroup.com, tshilling@gagroup.com, legal@gagroup.com

If to the Merchant:

Saks Off 5th Holdings LLC
One Vanderbilt Avenue, 24th Floor
New York, NY 10017
Attention: Andrew Hede
Email: ahede@accordion.com

**Section 13.**   **Independent Consultant**

Consultant's relationship to Merchant is that of an independent contractor without the capacity to bind Merchant in any respect, except with respect to ordinary course sales of Merchandise and FF&E through the Sale. No employer/employee, principal/agent, joint venture, or other such relationship is created by this Agreement. Merchant shall have no control over the hours that Consultant or its employees or assistants or the Supervisors work or the means or manner in which the services that will be provided are performed and Consultant is not authorized to enter into any contracts or agreements on behalf of Merchant or to otherwise create any obligations of Merchant to third parties, unless authorized in writing to do so by Merchant.

**Section 14.**   **Non-Assignment**

Merchant may not assign this Agreement without the express written consent of Consultant.  No modification, amendment, or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon either Party unless made in writing and signed by a duly authorized representative or agent of such Party.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, legal representatives, successors, and permitted assigns.  Upon written notice to Merchant, Consultant may syndicate the transactions contemplated by this Agreement with one or more third parties.

**Section 15.**   **Severability**

If any term or provision of this Agreement, as applied to either Party or any circumstance, for any reason shall be declared by a court of competent jurisdiction to be invalid, illegal, unenforceable, inoperative, or otherwise ineffective, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.  If the surviving portions of the Agreement fail to retain the essential understanding of the Parties, the Agreement may be terminated by mutual consent of the Parties.

4934-3480-1799.13

**Section 16.**     <u>Governing Law  and Jury Waiver</u>

This Agreement and its validity, construction and effect shall be governed by and enforced in accordance with the internal laws of the State of Texas (without reference to the conflict of laws provisions therein). **MERCHANT AND CONSULTANT WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY OF ANY CAUSE OF ACTION, CLAIM, COUNTERCLAIM, OR CROSS-COMPLAINT IN ANY ACTION, PROCEEDING, AND/OR HEARING BROUGHT BY EITHER PARTY AGAINST THE OTHER ON ANY MATTER WHATSOEVER ARISING OUT OF, OR IN ANY WAY CONNECTED WITH, THIS AGREEMENT, THE RELATIONSHIP BETWEEN MERCHANT AND CONSULTANT, ANY CLAIM OF INJURY OR DAMAGE OR THE ENFORCEMENT OF ANY REMEDY UNDER ANY LAW, STATUTE, OR REGULATION, EMERGENCY OR OTHERWISE, NOW OR HEREAFTER IN EFFECT.**

**Section 17.**     <u>Entire Agreement</u>

This Agreement, together with all additional schedules and exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the Parties concerning the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party except as specifically set forth in this Agreement.  All prior agreements, discussions, and negotiations with respect to the subject matter of this Agreement are entirely superseded by this Agreement.

**Section 18.**     <u>Execution</u>

This Agreement may be executed simultaneously in counterparts (including by means of electronic mail, facsimile, or portable document format (pdf) signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same instrument. This Agreement, and any amendments hereto, to the extent signed and delivered by means of electronic mail, a facsimile, or electronic transmission in portable document format (pdf), shall be treated in all manner and respects as an original thereof and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

**Section 19.**     <u>Confidentiality</u>

This Agreement is confidential to the Parties and their representatives and is subject to the confidentiality agreement entered into between Merchant and Consultant on January 21, 2026, which continues in full force and effect.

**Section 20.**     <u>Bankruptcy Court Approval</u>

On January 13 and 14, 2026, Merchant and certain of its affiliates commenced cases under chapter

13

11 of title 11 of the United States Code (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Southern District of Cases (the "Bankruptcy Court") which cases are being jointly administered under lead Case No. 26-90103 (ARP) (collectively, the "Bankruptcy Cases"). In light of the filing of the Bankruptcy Cases, Merchant shall file a motion to assume this Agreement under sections 363 and/or 365 of the Bankruptcy Code, and utilize its commercially reasonable efforts to ensure that such motion is approved by an order (the "Approval Order") that provides, among other things, for the following relief: (i) approval and/or assumption of this Agreement; (ii) the payment of all fees and reimbursement of expenses hereunder to Consultant without further order of the Bankruptcy Court, free and clear of all liens, claims and encumbrances, on a weekly basis without further order of the Bankruptcy Court and otherwise in accordance with this Agreement; (iii) approval of the transaction contemplated hereby; (iv) the payment of all fees and reimbursement of all expenses to Consultant required to be paid under this Agreement, as well as the remittance of the proceeds of Additional Goods, to Consultant shall be included and accounted for in any approved debtor-in-possession, cash collateral, or other post-petition financing budget, provided that, notwithstanding the foregoing, the Merchant shall pay all such fees and reimburse all such expenses regardless of any limitations set forth in any such budget; (v) authorization of the Sale without the necessity of complying with state and local rules, laws, ordinances and regulations, including, without limitation, permitting and licensing requirements, that could otherwise govern the Sale; (vi) authorization of the Sale notwithstanding restrictions in leases, reciprocal easement agreements or other contracts that purport to restrict the Sale or that otherwise purport to require any third party consents; (vii) the conduct of the Sale as "everything on sale", "everything must go", "going out of business", entire site on sale" "sitewide sale" "website closing" "site closing" or similar themed sale; (viii) the sale of Additional Goods in accordance with the terms and conditions set forth in this Agreement; (ix) if all fees and expenses are not timely paid or reimbursed, as applicable, Consultant may, at its election, suspend the provision of services until the Merchant has paid all such outstanding amounts, or terminate this Agreement and, in either case, Consultant shall have no further obligation to perform services under this Agreement during such suspension period or after such termination, as applicable, and, furthermore, Consultant shall have no liability for any claims arising from such suspension or termination and all such claims are released and Consultant shall be indemnified for any damages caused by the suspension or termination of services; (x) Consultant shall have the right to file a motion or request, on expedited basis with two (2) days' notice with an expedited hearing (subject to court availability) to compel payment of any unpaid fees and expenses; and (xi) authorization of Merchant to take such further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement. In the event of a bankruptcy filing, any legal action, suit, or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Bankruptcy Court having jurisdiction over Merchant, and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue, and/or forum non conveniens. From and after entry of the Approval Order, Consultant shall conduct the Sale in accordance with the terms of the Approval Order in all material respects.

In agreeing to seek an Approval Order, Merchant acknowledges that it believes that Consultant's liquidation experience and expertise, its knowledge of the liquidation markets and its liquidation capabilities will inure to the benefit of Merchant, that the value to Merchant of Consultant's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the fees set forth herein are reasonable regardless of the

14

number of hours to be expended by Consultant's professionals in the performance of the services to be provided hereunder.

Merchant shall provide Consultant with a copy of the pleadings in connection with requesting any Approval Order prior to submission to the Bankruptcy Court for Consultant's review and comment (without limiting the foregoing, Merchant shall use best efforts to give Consultant at least 5 days' prior notice of such filing) and advise Consultant of any objection or hearings pertaining to Consultant's retention. Any Approval Order must be acceptable to Consultant and the continuation of Consultant's obligations hereunder will be conditioned upon entry of such Approval Order. If an acceptable Approval Order is not obtained within 60 days from the date that it is filed, either Consultant or Merchant shall have the right to terminate this Agreement at any time thereafter. In the event that Merchant is unable to obtain an acceptable Approval Order, and the Agreement is terminated or rejected, Consultant reserves the right to seek a substantial contribution claim for any obligations reasonably incurred or accrued in connection with this Agreement prior to such termination or rejection.

Notwithstanding anything to the contrary in this Agreement, during the pendency of the Bankruptcy Cases, any legal action, suit or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Bankruptcy Court, and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue, and/or forum non conveniens. From and after entry of an Approval Order, Consultant shall render the services in accordance with the terms of the Approval Order in all material respects.

[remainder of page left intentionally blank]

IN WITNESS WHEREOF, Consultant and Merchant hereby execute this Agreement by their duly authorized representatives as a sealed instrument as of the day and year first written above.

**GA Retail Solutions, LLC**

*Timothy J. Shilling*
_____
By:  Timothy J. Shilling
Its:  President

**Saks Off 5th Holdings LLC**

*Andrew Hede*
_____
By:  Andrew Hede
Its:  Chief Restructuring Officer

16

**<u>Exhibit A</u>**

**eCommerce Facility**

25 Keystone Blvd., Pottsville PA 17901

**<u>Exhibit B</u>**

**Expense Budget**

Consultant Expense Budget

| | |
|---|---|
| Advertising | $2,190,000 |
| Supervision, Legal, Misc | 162,000 |
| Total Budget | **$2,352,000** |

## Exhibit 2
## Liquidation Sale Procedures

1.      The SO5 Debtors and the Consultant shall have the right to use and sell the FF&E. The SO5 Debtors and, if applicable, the Consultant may advertise the sale of the FF&E in a manner consistent with these Liquidation Sale Procedures. The purchasers of any FF&E sold during the Liquidation Sale shall be permitted to remove the FF&E either through marked exits or entrances designated by the Consultant, or through other areas after eCommerce Facility business hours; provided, however, that the foregoing shall not apply to de minimis FF&E sales made whereby the item can be carried out of the eCommerce Facility in a bag.

2.      Sales of FF&E will be conducted during normal business hours or such hours as otherwise permitted by the applicable unexpired lease.

3.      Sales of FF&E will be conducted in accordance with applicable state and local "Blue Laws," and thus, where such a law is applicable, no FF&E sales will be conducted on Sunday unless the SO5 Digital Debtors have been operating such locations on Sundays.

4.      The SO5 Digital Debtors and the Consultant may, but are not required to, advertise the Liquidation Sale as "liquidation sale," "sale on everything," "everything must go," or such other mutually agreed upon themed sale throughout the Sale Term on the Website or in advertising media.

5.      The SO5 Digital Debtors and the Consultant shall be permitted to utilize hanging signs in connection with the Liquidation Sale; provided that such hanging signs shall be professionally produced and hung in a professional manner. Neither the SO5 Digital Debtors nor the Consultant shall use neon or day-glo on its hanging signs if prohibited by the applicable lease or applicable law. In addition, the SO5 Digital Debtors and the Consultant shall be permitted to utilize exterior banners at the eCommerce Facility, *provided*, however, that such banners shall be located or hung so as to make clear that the Liquidation Sale is being conducted only at the eCommerce Facility and shall not be wider than the "storefront" of the eCommerce Facility. Nothing contained in these Liquidation Sale Procedures shall be construed to create or impose upon the SO5 Digital Debtors or the Consultant any additional restrictions not contained in the applicable lease agreement.

6.      Neither the SO5 Digital Debtors nor the Consultant shall make any alterations to the "storefront," roof, or exterior walls of the eCommerce Facility, or to interior or exterior lighting, except as authorized by the applicable lease. The hanging of in-facility signage shall not constitute an alteration to the eCommerce Facility.

7.      Affected landlords will have the ability to negotiate with the SO5 Digital Debtors, or at the SO5 Digital Debtors' direction, the Consultant, modifications to the Liquidation Sale Procedures. The SO5 Digital Debtors and the landlord of the eCommerce Facility are authorized to enter into agreements ("Side Letters") without further order of the Court, provided that Side Letters do not have a material adverse effect on the SO5 Digital Debtors or their estates.

8.      Nothing contained in these Liquidation Sale Procedures shall be construed to create or impose upon the SO5 Digital Debtors or the Consultant any additional restrictions not contained in the applicable law.

9.      To the extent relevant, conspicuous notices will be posted in the eCommerce Facility and on the SO5 Digital Debtors' website to the effect that all sales in the Liquidation Sale are "final."

10.     The SO5 Digital Debtors will keep facility premises and surrounding areas clear and orderly, consistent with past practices.

11.     An unexpired nonresidential real property lease will not be deemed rejected by reason of a Liquidation Sale or the adoption of these Liquidation Sale Procedures.

12.     The rights of landlords against the SO5 Digital Debtors for any damages to the eCommerce Facility shall be reserved in accordance with the provisions of the applicable lease.

13.     If and to the extent that the landlord of the eCommerce Facility contends that the SO5 Digital Debtors or the Consultant are in breach of or default under these Liquidation Sale Procedures, such landlord shall provide at least five (5) days' written notice, served by email or overnight delivery, of:

**If to the SO5 Digital Debtors:**

Bradley Arant Boult Cummings LLP
Attn: Jarrod B. Martin, James Bailey, Michael K. Riordan,
600 Travis Street, Suite 5600
Houston, Texas 77060
Telephone: (713) 576- 0300
Email:  jbmartin@bradley.com
         jbailey@bradley.com
         mriordan@bradley.com

**If to the Consultant:**

GA Retail Solutions, LLC
2829 Townsgate Road, Suite 103
Westlake Village, CA 91361
Attn: General Counsel
legal@gagroup.com

If the parties are unable to resolve the dispute, either the landlord or the SO5 Digital Debtors shall have the right to schedule a hearing before the Court on no less than five (5) days' written notice to the other party, served by email or overnight delivery.