## **EXHIBIT A**

**Redline of Original Proposed Interim Order to the Revised Proposed Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| SAKS GLOBAL ENTERPRISES LLC, *et al.*,[1] | Case No. 26-90103 (ARP) |
|  | (Jointly Administered) |
| Debtors | Ref. Docket ~~No~~Nos. ~~—~~513 & 515 |

**INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
GLOBAL DEBTORS TO ENTER INTO AND PERFORM UNDER THE
CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE
CLOSING SALES, (III) AUTHORIZING BONUSES FOR NON-INSIDER
EMPLOYEES OF CLOSING STORES, (IV) APPROVING MODIFICATIONS TO
CERTAIN CUSTOMER PROGRAMS, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Global Debtors for entry of an interim order (this "Interim Order"): (a) authorizing the Debtors to enter into and perform under that certain Consulting Agreement, by and between GA Retail Solutions, LLC (the "Consultant") and Saks Global Enterprises LLC, dated as of January 29, 2026 (the "Consulting Agreement"), which is attached hereto as **Exhibit 1**, (b) authorizing and approving the Store Closing Sales of the Global Debtors' Merchandise by means of "store closings," "sale on everything," "everything must go," or similar themed Sales in the Global Debtors' retail Closing Stores identified in the Consulting Agreement, with such Sales to be free and clear of all liens, claims, and encumbrances,

---

[1]   A complete list of Saks Global Enterprises LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Saks.  The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281.  Bradley Arant Boult Cummings LLP is proposed counsel for the following Debtors: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively the "SO5 Digital Debtors").  Haynes and Boone, LLP and Willkie Farr & Gallagher LLP are proposed counsel for the remaining Debtors (collectively, the "Global Debtors").

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Consulting Agreement, as applicable.

(c) authorizing the Sale of the furniture, fixtures, and equipment located in the Closing Stores or otherwise under the Global Debtors' control, (d) approving the guidelines for conducting the Store Closing Sales (the "Store Closing Procedures"), substantially in the form annexed as **Exhibit 2** to this Interim Order, (e) approving modifications to certain customer programs, (f) authorizing bonuses for certain non-insider employees, and (g) granting related relief, all as more fully set forth in the Motion; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012; and this Court having found that venue of these Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is appropriate under the circumstances and no other or further notice need be given; and this Court having determined that it may enter an order consistent with Article III of the United States Constitution; and upon the record in these Chapter 11 Cases and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Global Debtors, their estates, and their creditors; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY FOUND, CONCLUDED, AND DETERMINED THAT:[3]**

A.      The Global Debtors' decision to enter into, on an interim basis, and subject to entry of final order granting the requested relief, perform under, and make payments required by the Consulting Agreement, a copy of which is attached hereto as <u>Exhibit 1</u>, is a reasonable exercise of the Global Debtors' sound business judgment, consistent with their fiduciary duties, and is in the best interests of the Global Debtors, their estates, their creditors, and all parties in interest.

B.      The Consulting Agreement, and the consideration to be paid thereunder, was negotiated, proposed, and entered into by the Consultant and the Global Debtors without collusion, in good faith, and from arm's-length bargaining positions.  The terms and conditions set forth in the Consulting Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Global Debtors or their creditors under any applicable laws.

C.      The Store Closing Procedures, a copy of which is attached hereto as <u>Exhibit 2</u>, are reasonable and appropriate, will provide an efficient means for the Global Debtors to dispose of the Store Closure Assets, and are in the best interest of the Global Debtors' estates.

D.      The Store Closing Sales, in accordance with the Store Closing Procedures and with the assistance of the Consultant, will provide an efficient means for the Global Debtors to liquidate and dispose of the Merchandise as quickly and effectively as possible, and are in the best interest of the Global Debtors' estates.

---

[3]     The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.      The Global Debtors and the Consultant may sell the Store Closure Assets free and clear of all liens, claims, and encumbrances as provided for herein because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of any such encumbrances who did not object, or who withdrew their objections, to the entry of this Interim Order are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of any such encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having such encumbrances attach to the Global Debtors' share of proceeds from the sale of the applicable Store Closure Assets with the same validity and priority and to the same extent and amount that any such Encumbrances had with respect to such Store Closure Assets.

F.      The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

G.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Global Debtors and their estates and the Global Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

H.      The Consultant is not an "insider" of the Global Debtors as such term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling shareholders exists between the Consultant and the Global Debtors.

I.      The entry of this Interim Order is in the best interest of the Global Debtors and their estates, creditors, and all other parties in interest herein.

J.      Time is of the essence in effectuating the Consulting Agreement and the Store Closing Sales contemplated therein without interruption.  The conduct of the Store Closing Sales

in accordance with the Store Closing Procedures will provide an efficient means for the Global Debtors to dispose of the Store Closure Assets.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as provided herein.

2.      ~~To~~**In** the ~~extent~~**event** of any conflict between this Interim Order, the Store Closing Procedures, ~~and~~ the Consulting Agreement, **and any Side Letter (as defined in the Motion) with any landlord,** the terms of ~~this Interim Order~~**such Side Letter** shall control ~~over all other documents and~~.  To the extent there is a conflict between either the Store Closing Procedures ~~shall control over~~**or** the Consulting Agreement on the one hand, and this Interim Order **(as may be modified by any Side Letter) on the other hand, this Interim Order (as may be modified by an Side Letter) shall control**.

3.      Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall take effect immediately upon its entry.

**II.     Authority to Enter into and Perform under the Consulting Agreement**

4.      The Global Debtors are authorized to enter into and perform under the Consulting Agreement pursuant to section 363 of the Bankruptcy Code, on an interim basis, including making payments to the Consultant required under the Consulting Agreement (including, without limitation, payment of the Advance, the Base Fee, and the FF&E Fee), reimbursements of Consultant's reasonable costs and expenses, and, subject to the provisions contained herein, payments of indemnification amounts (if any), in each case, as required by the Consulting Agreement, without the need for any application of the Consultant or a further order of the Court.

5. Consultant's fees and expenses shall be paid from the gross proceeds of the Store Closing Sales, subject to the terms of the Consulting Agreement itself, including as to any expense budget attached thereto.

6. Subject to the restrictions set forth in this Interim Order and the Store Closing Procedures, the Global Debtors and the Consultant hereby are authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Store Closing Sales; and each of the transactions contemplated by the Consulting Agreement, and any actions taken by the Global Debtors and the Consultant necessary or desirable to implement the Consulting Agreement and/or the Store Closing Sales prior to the date of this Interim Order, hereby are approved and ratified.

7. The Global Debtors are authorized to immaterially amend the Consulting Agreement from time to time in accordance with its terms, including by extending the Sale Term (with notice to co-counsel to the Ad Hoc Group of Secured Noteholders and DIP Lenders and counsel to the Committee), without further order of this Court; provided that any material amendment of economic terms shall be subject to Court approval.

8. Notwithstanding anything to the contrary in the Consulting Agreement, including in Section 8.A thereof, the Global Debtors and their estates shall not indemnify the Consultant for any damages arising primarily out of the Consultant's fraud, willful misconduct, or gross negligence.

9. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing these Chapter 11 Cases, the Consultant believes that it is entitled to the payment of any amounts by the Global Debtors on account of the Debtors'

indemnification, contribution, and/or reimbursement obligations under the Consulting Agreement (as modified by this Interim Order), including the advancement of defense costs, the Consultant must file an application therefor in this Court, and the Global Debtors may not pay any such amounts to the Consultant before the entry of an order by this Court approving the payment. All parties in interest shall retain the right to object to any demand by the Consultant for indemnification, contribution, or reimbursement.

### III.    Authority to Engage in Store Closing Sales

10.    The Global Debtors and the Consultant are authorized, but not directed, on an interim basis pending the Final Order, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately conduct the Store Closing Sales in accordance with this Interim Order, the Store Closing Procedures, and the Consulting Agreement.

11.    The Store Closing Procedures are approved in their entirety.

12.    The Global Debtors are authorized to discontinue operations at the Closing Stores, at the conclusion of the applicable Store Closing Sales, in accordance with this Interim Order and the Store Closing Procedures.

13.    All entities that are presently in possession of some or all of the Store Closure Assets in which the Global Debtors hold an interest hereby are directed to surrender possession of such Store Closure Assets to the Global Debtors or the Consultant.

14.    Neither the Global Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined in Bankruptcy Code section 101(27)) or landlord, to conduct the Store Closing Sales and to take the related actions authorized herein.

**IV.      Conduct of the Store Closing Sales**

15.      All newspapers and other advertising media in which the Store Closing Sales may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the Global Debtors and the Consultant to conduct the Store Closing Sales and the sale of Merchandise and FF&E pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Merchandise and FF&E in the manner contemplated by and in accordance with this Interim Order, the Store Closing Procedures, and the Consulting Agreement.

16.      The Global Debtors and Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Store Closing Sales without necessity of further order of this Court as provided in the Consulting Agreement or the Store Closing Procedures, including, but not limited to, advertising the sale as a "store closing sale," "sale on everything," "everything must go," "going out of business" or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), and use of sign-walkers, A-frames, and street signage.

17.      Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, A-frames, banners, and other advertising to the sale of the Merchandise and FF&E, to the extent that, prior to the Final Hearing, disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, A-frames, banners, or other advertising and the Global Debtors and the Consultant are unable to resolve the matter consensually, any party may request a telephonic hearing with this Court pursuant to this Interim Order.  Such

hearing will, to the extent practicable, be scheduled initially no later than the earlier of (i) the Final Hearing or (ii) within three business days of such request.  This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

18.     Except as expressly provided in the Consulting Agreement, any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the store closings or the Store Closing Sales (including the sale of the Merchandise and FF&E), ~~the rejection of leases,~~ abandonment of assets, or "going dark" provisions shall not be enforceable in conjunction with the Store Closing Sales or the store closings.  Breach of any such provisions in these Chapter 11 Cases in conjunction with the store closings or the Store Closing Sales shall not constitute a default under a lease or provide a basis to terminate the lease; <u>provided</u> that the store closings and the Store Closing Sales are conducted in accordance with the terms of this Interim Order and the Store Closing Procedures.  The Global Debtors**, the Consultant,** and landlords of the closing locations are authorized to enter into Side Letters modifying the Store Closing Procedures without further order of this Court, and such Side Letters shall be binding as among the Global Debtors**, the Consultant,** and any such landlords.  In the event of any conflict between the Store Closing Procedures, this Interim Order, and any Side Letter, the terms of such Side Letter shall control.

19.     Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit (as to which paragraphs 31 and 32 herein shall apply), no person or entity, including, but not limited to, any utilities, landlords, property owners, shopping center managers and personnel, creditors, and all persons acting for or on their behalf shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder

consummation of the store closings, the Store Closing Sales, or the sale of Merchandise or FF&E, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers and A-frames) of such Store Closing Sales, and all such parties and persons of every nature and description, including, but not limited to, any utility, landlord, property owner, shopping center managers and personnel, or creditor, and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the store closings or the Store Closing Sales and/or (b) instituting any action or proceeding in any court (other than in the Court), or administrative body seeking an order or judgment against, among others, the Global Debtors, the Consultant, or the landlords, at the Closing Stores that might in any way directly or indirectly obstruct, otherwise interfere with, or adversely affect the conduct of the store closings, the Store Closing Sales or other liquidation sales at the Closing Stores, and/or seek to recover damages for breaches of covenants or other provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

20.     In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Closing Stores and all related Closing Store services, furniture, fixtures, equipment, and other assets of the Global Debtors' for the purpose of conducting the Store Closing Sales, free of any interference from any entity or person, subject to compliance with the Store Closing Procedures and this Interim Order.

21.     All Sales of Store Closure Assets shall be "as is" and final.  However, as to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

22.     The Consultant shall accept return of any goods that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within the time period proscribed by the Debtors' return policy that was in effect when the merchandise was purchased, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect, which goods shall not be resold by the Debtors.

23.     The Consultant shall not be liable for sales taxes except as otherwise expressly provided in the Consulting Agreement.  The payment of any and all sales taxes (except as expressly provided in the Consulting Agreement) is the responsibility of the Global Debtors. The Global Debtors are directed to remit all taxes arising from the Store Closing Sales to the applicable Governmental Units as and when due; provided that in the case of a *bona fide* dispute the Global Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  This Interim Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

24.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Global Debtors, is authorized to sell the Store Closure Assets, and all Sales of Store Closure Assets, whether by the Consultant or the Global Debtors, shall be free and clear of any and all liens, claims, encumbrances, and other interests; provided, however, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the Sale of the Store Closure Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closure Assets,

subject to any claims and defenses that the Global Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreement).

25.     Neither the Store Closing Procedures, Consulting Agreement, nor this Interim Order authorize the transfer or sale of personal identifying information (which means information which alone or in conjunction with other information identifies an individual, including but not limited to an individual's first name (or initial) and last name, physical address, electronic address, telephone number, social security number, date of birth, government-issued identification number, account number and credit or debit card number ("PII") of any customers or employees unless such sale or transfer is permitted by the Global Debtors' privacy policy and state, provincial or federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws"). The foregoing shall not limit the Consultant's use of the Global Debtors' customer lists and mailing lists in accordance with the Consulting Agreement solely for purposes of advertising and promoting the Store Closing Sales. To the extent that the Global Debtors propose to sell or abandon FF&E which may contain PII about the Global Debtors' employees and/or customers, the Global Debtors shall remove the PII from such items of FF&E before such sale or abandonment.

26.     The Global Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer Store Closure Assets among the Closing Stores.  The Consultant is hereby authorized to sell the Global Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement.

27.     Notwithstanding this or any other provision of this Interim Order, nothing shall prevent or be construed to prevent the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from bidding on the Global Debtors' assets not subject to the

Consulting Agreement, pursuant to a consulting agreement, or otherwise ("Additional Assets"). The Consultant and/or its affiliates are hereby authorized to bid on and guarantee or otherwise acquire such Additional Assets notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, provided that such guarantee, transaction or acquisition is approved by separate order of this Court and provided further that the rights of the U.S. Trustee and all other parties in interest to object to any guarantee, transaction or acquisition are fully preserved.

28.     Notwithstanding anything to the contrary in this Interim Order or the Consulting Agreement, the Global Debtors shall not sell or abandon any property that the Global Debtors know is not owned by a Debtor without the owner's consent, and the Global Debtors will work in good faith with the owner of any such property to arrange for the return of the property to the owner; provided that the Global Debtors and the Consultant may abandon property owned by any landlord at the applicable Closing Store in accordance with the terms of this Interim Order; provided further, that the Global Debtors shall not abandon any property against which the Global Debtors know a third party has asserted a lien without providing notice to such party.

29.     Within twenty days following the conclusion of the Store Closing Sales, the Global Debtors shall (on a confidential basis) provide to the U.S. Trustee, the Committee, the Ad Hoc Group and DIP Lenders:  (a) a summary report of the Store Closing process that will include (i) the list of stores closed and (ii) gross revenue from the Store Closing Assets sold, and (b) a report showing payment of the Consultant's fees, setting forth detail and information regarding the calculation of such fees and expenses, if any, reimbursed to the Consultant; provided, however, that the foregoing shall not require the Debtors, their professionals, or the Consultant to prepare or undertake to prepare any additional or new reports not otherwise being prepared.

V.      **Dispute Resolution Procedures with Governmental Units**

30.     Nothing in this Interim Order, the Consulting Agreement, or the Store Closing Procedures, releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property.  Nothing contained in this Interim Order, the Consulting Agreement, or the Store Closing Procedures shall in any way diminish the obligation of any entity to comply with environmental laws.  The store closings and the Store Closing Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").  Nothing in this Interim Order, the Consulting Agreement, or the Store Closing Procedures, shall alter or affect obligations to comply with all applicable federal safety laws and regulations.   Nothing in this Interim Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Global Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Interim Order, or otherwise, pursuant to paragraph 28 herein.  Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

31.     Provided that the Store Closing Sales are conducted in accordance with the terms of this Interim Order, the Consulting Agreement, and the Sale Closing Procedures, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, to the extent that the sale of Store Closure Assets is subject to any Restrictive Laws, including any federal, state, or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or Fast Pay Laws, bulk sale laws, including laws restricting safe, professional, and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers, and A-frames solely in connection with the Store Closing Sales and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Store Closure Assets, the Global Debtors and the Consultant will be presumed to be in compliance with any Restrictive Laws and are authorized to conduct the Store Closing Sales in accordance with the terms of this Interim Order and the Store Closing Procedures without the necessity of further showing compliance with any Restrictive Sale Laws.

32.     To the extent that between the Petition Date and the Date of the Final Hearing there is a dispute arising from or related to the Store Closing Sales, the Final Order, the Consulting Agreement, or the Store Closing Procedures, which disputes relate to any Liquidation Sales Laws, the following Dispute Resolution Procedures shall apply:

(i)     Within three business days after entry of this Interim Order, the Global Debtors will serve by first-class mail copies of this Interim Order, the Consulting Agreement, and the Store Closing Procedures on the following: (A) the Attorney General's office for each state where the Store Closing Sales are being held, (B) the county consumer protection agency or similar agency for each county where the Store Closing Sales are being held, (C) the division of consumer protection for each state where the Store Closing Sales are being held, (D) the chief legal counsel for the local jurisdiction, and (E) the landlords for the Closing

Stores **and their counsel of record (if known)** (collectively, the "Dispute Notice Parties").

(ii)    To the extent that there is a dispute arising from or relating to the Store Closing Sales, the Interim Order, or the Final Order, as applicable, the Consulting Agreement, or the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain jurisdiction to resolve the Reserved Dispute. Any time within ten (10) days following entry of the Interim Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute (the "Dispute Notice"), explaining the nature of the dispute to: (A) proposed counsel to the Global Debtors, (i) Willkie Farr & Gallagher, LLP, 787 7th Avenue, New York, NY 10019, Attn: Debra M. Sinclair, Esq. (dsinclair@willkie.com), Jennifer J. Hardy, Esq. (jhardy2@willkie.com), and Betsy L. Feldman, Esq. (bfeldman@willkie.com), and (ii) Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, TX 77010, Attn: Kelli Stephenson Norfleet, Esq. (kelli.norfleet@haynesboone.com), Kenric D. Kattner, Esq. (kenric.kattner@haynesboone.com), and Arsalan Muhammad, Esq. (arsalan.muhammad@haynesboone.com); (B) the Consultant, GA Retail Solutions, LLC, 2829 Townsgate Road, Suite 103, Westlake Village, CA 91361; (C) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, TX 77002 Attn: Jana Smith Whitworth, Esq. (jana.whitworth@usdoj.gov) and Ha Nguyen, Esq. (ha.nguyen@usdoj.gov); (D) co-counsel to the Ad Hoc Group of Secured Noteholders and DIP Lenders, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Robert A. Britton, Esq. (rbritton@paulweiss.com), Christopher Hopkins, Esq. (chopkins@paulweiss.com), Jessica Choi, Esq. (jchoi@paulweiss.com), and Martin J. Salvucci, Esq. (msalvucci@paulweiss.com) and (ii) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, TX 7702, Attn: John F. Higgins, Esq. (jhiggins@porterhedges.com), M. Shane Johnson, Esq. (sjohnson@porterhedges.com), and Megan Young-John, Esq. (myoung-john@porterhedges.com); ~~and~~ (E) counsel to any official committee appointed in these Chapter 11 Cases**; and (F) the affected landlord and their counsel of record (if known)**. If the Global Debtors, the Consultant and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

(iii)   In the event that a Dispute Resolution Motion is filed, nothing in this Interim Order or the Final Order, as applicable, shall preclude the Global Debtors, a landlord, or any other interested party from asserting (A) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (B) that neither the terms of this Interim Order or the Final Order nor the conduct of the Global Debtors pursuant to this Interim Order or the Final Order violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein

shall not be deemed to affect the finality of any Interim Order or Final Order or to limit or interfere with the Global Debtors' or the Consultant's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Interim Order or the Final Order, absent further order of the Court.  Upon the entry of the Interim Order or the Final Order, as applicable, the Court grants authority for the Global Debtors and the Consultant to conduct the Store Closing Sales pursuant to the terms of this Interim Order or the Final Order, as applicable, the Consulting Agreement, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in this Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

(iv)    If, at any time, a dispute arises between the Global Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Interim Order or the Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (ii) and (iii) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

33.    Any restrictions in any lease agreement, restrictive covenant, or similar documents purporting to limit, condition, or impair the Global Debtors' ability to conduct the Store Closing Sales shall not be enforceable, nor shall any breach of such provisions in these Chapter 11 Cases constitute a default under a lease or provide a basis to terminate the lease; provided, that the Store Closing Sales are conducted in accordance with the terms of this Interim Order and the Store Closing Procedures.

34.    Subject to paragraphs 31 and 32 above, each and every federal, state, or local agency, departmental or Governmental Unit with regulatory authority over the Store Closing Sales and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Interim Order as binding authority that no further approval, license,

or permit of any Governmental Unit shall be required, nor shall the Global Debtors or the Consultant be required to post any bond, to conduct the Store Closing Sales.

35.     Provided that the Store Closing Sales are conducted in accordance with the terms of this Interim Order, the Consulting Agreement, and the Store Closing Procedures, and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Global Debtors and the Consultant shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Store Closing Sales in accordance with the terms of this Interim Order and the Store Closing Procedures without the necessity of further showing compliance with any such Liquidation Sale Laws; provided that the Consultant and the Global Debtors are not authorized to abandon, and are directed to remove, any hazardous materials defined under applicable law from any leased premises as and to the extent they are required to do so by applicable law.

36.     Within three business days of entry of this Interim Order, the Global Debtors shall serve copies of this Interim Order, the Consulting Agreement, and the Store Closing Procedures via E-mail, facsimile or regular mail, on: (a) the U.S. Trustee; (b) the United States Attorney's Office for the Southern District of Texas; (c) any party that has requested notice pursuant to Bankruptcy Rule 2002; (d) proposed counsel to the Committee; (e) counsel to the DIP Agents; (f) co-counsel to the Ad Hoc Group of Secured Noteholders and DIP Lenders; (g) the Internal Revenue Service; (h) the Attorney General's office for each state where the Store Closing Sales are being held; (i) the division of consumer protection for each state where the Store Closing Sales are being held; (j) the chief legal counsel for the local jurisdiction; and (k) the landlords for the Closing Stores..  Such notice shall be deemed good and sufficient notice of the Motion, the

terms of the Interim Order and the Final Hearing under the circumstances and the requirements of Bankruptcy Rules 2002 and 6004(a) and the Local Rules are satisfied by such notice.

**VI.     Customer Program Provisions[4]**

37.     <u>Returns</u>.   The Closing Stores and SaksOFF5TH.com will accept returns of merchandise sold in the ordinary course of business prior to the initiation of the Store Closing Sales, so long as the return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price being offered in connection with the Store Closing Sales. Items sold during the Store Closing Sales will be sold on a "as final" basis and returns will not be accepted for such items.  During the Store Closing Sales, the Go-Forward Stores will continue to accept returns of merchandise in the ordinary course of business in accordance with the Debtors' return policies in effect as of the date such item was purchased.  Gift cards may not be returned for cash.

38.     <u>Gift Cards</u>.   For the first 15 days following the initiation of the Store Closing Sales, the Closing Stores and SaksOFF5TH.com will accept validly issued gift cards.  Subject to any applicable laws to the contrary, after the expiration of the first 15 days following the initiation of the Store Closing Sales, the Closing Stores and SaksOFF5TH.com will no longer accept gift cards.  For the avoidance of doubt, during the Store Closing Sales, the Go-Forward Stores will continue to accept gift cards in the ordinary course of business regardless of branding

---

[4]     For the purposes of this Section VI of this Interim Order, and only this Section VI of this Interim Order, references to "Store Closing Sales" include the "Liquidation Sale" authorized and approved in the Court's *Interim Order Granting the SO5 Digital Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Approving and Authorizing the SO5 Digital Debtors to Enter into and Perform Under the Consulting Agreement and Conduct the Liquidation Sale in Accordance with the Liquidation Sale Procedures and (II) Granting Related Relief* [Docket No. 435] to the extent that they may apply to SaksOFF5TH.com or the SO5 Digital Debtors.

in the ordinary course of business, consistent with existing policies prior to the initiation of the Store Closing Sales.  Notwithstanding any policy or state law to the contrary, the gift cards are not redeemable for cash at any time.**5**

39.    Credit Cards.   Upon commencement of the Store Closing Sales, the Closing Stores and SaksOFF5TH.com will no longer accept applications for Saks **OFF 5TH**and Neiman **Marcus** branded credit cards.  During the Store Closing Sales, the Go-Forward Stores will continue to accept credit card applications in the ordinary course of business.  **In addition, the Global Debtors shall cease accepting in-store payments on Saks and Neiman Marcus branded credit card balances at the Closing Stores.  The Closing Stores, Go-Forward Stores, and SaksOFF5TH.com will continue to accept customer payments using credit cards for purchases of Merchandise issued under the Debtors' existing credit card programs.**

40.    Customer  Rewards  **Programs**Program.   Upon  commencement  of  the  Store Closing  Sales,  purchases  made  at  the  Closing  Stores,  the  Go-Forward  Stores,  and SaksOFF5TH.com will not be eligible to earn rewards under the **OFF 5TH** Rewards Program **(the "Rewards Program")**.  For the first 30 days following the initiation of the Store Closing Sales, the  Closing  Store,  the  Go-Forward  Stores,  and  SaksOFF5TH.com  will  continue  to  accept redemptions of rewards points in connection with their existing policies under the Rewards Program, after which the Closing Stores, the Go-Forward Stores, and SaksOFF5TH.com will no longer accept redemptions of points earned under the Rewards Program.

---

**5**    **For the avoidance of confusion, prior to entry of this Interim Order, the SO5 Digital Debtors stopped selling gift cards on SaksOFF5TH.com under the authority of, and in accordance with, the Court's** *Interim Order Authorizing Debtors to Maintain and Administer Their (A) Existing Customer Programs and (B) Charitable Donation Programs; (II) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related Thereto; and (III) Granting Related Relief* **[Docket No. 251].**

41.  <u>Employee Discount</u>.  During the Store Closing Sales, both the Closing Stores and the Go-Forward Stores will continue to honor employee discounts in the ordinary course of business, consistent with existing policies in place prior to the initiation of the Store Closing Sales.

42.  The Debtors and the Consultant shall post conspicuous signs on the website and in the Closing Stores, including at their cash registers, explaining the above "consumer provisions" to customers, including the return policies and gift card policy, which shall remain posted throughout the duration of the Store Closing Sales.

**VII.  Other Provisions**

43.  Subject to final order, the Global Debtors are authorized, but not directed, to implement and make payments under the Store Bonus Program.  For the avoidance of doubt, no Store Closing Bonuses shall be paid to any executives, directors, or "insiders," as that term is defined in the Bankruptcy Code, absent further Court order.

44.  The Global Debtors are authorized to transfer inventory to ~~the~~ Closing Stores **<u>only from Saks OFF 5TH and Last Call inventory held at distribution centers, other Closing Stores and the additional twenty-three (23) Saks OFF 5TH stores that they plan to close</u>** and are authorized to enter into postpetition agreements (any such agreement, an "<u>Augment Agreement</u>") for the receipt of augment merchandise on consignment (the "<u>Augment Merchandise</u>") to support the Store Closing Sales, in each case pursuant to section 363 of the Bankruptcy Code and consistent with their business judgment.  Any such Augment Agreement is hereby approved without further order of this Court pursuant to section 363 of the Bankruptcy Code.

45.     Upon written notice by an Augment Provider to the Global Debtors of an event of default under an Augment Agreement, the Global Debtors shall immediately cease further sales of Augment Merchandise unless otherwise agreed to in writing by the applicable Augment Provider, subject to further order of this Court.

46.  In the event of any conflict between the Store Closing Procedures, the Consulting Agreement, and any Side Letter with any landlord, the terms of such Side Letter shall control.  To the extent there is a conflict between either the Store Closing Procedures, the Consulting Agreement, or the Side Letter on the one hand, and this Interim Order, this Interim Order shall control.

46.    47. At the conclusion of the Sale at each Closing Store (the "Termination Date"), the Consultant shall vacate such Store; provided that Consultant may abandon any FF&E not sold in the Sale at such Store, without cost or liability of any kind to the Consultant.  The Global Debtors will have the option to remove the FF&E prior to the Termination Date.

47.    48. The Consultant shall not be liable for any claims against the Global Debtors, and the Global Debtors shall not be liable for any claims against the Consultant, in each case, other than as expressly provided for in the Consulting Agreement, as modified by this Interim Order.

48.    49. To the extent the Global Debtors are subject to any state "fast pay" laws in connection with the Store Closing Sales, the Global Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of: (a) the Global Debtors' next regularly scheduled payroll; and (b) seven calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

49.   50. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Global Debtors' or any other party-in-interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Global Debtors' rights or the rights of any other person under the Bankruptcy Code or any other applicable law; or (g) a concession by the Global Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Global Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

50.   51. Except as otherwise provided herein with respect to the payments to the Consultant under the consulting agreement, nothing herein shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

51.   52. Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

52.   53. Notice of the Motion as provided therein and in this Interim Order is deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the local rules of this Court are satisfied by such notice.

**53.** ~~54.~~ Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

**54.** ~~55.~~ Cause exists to shorten the notice period set forth in Bankruptcy Rule 2002.

**55.** ~~56.~~ The Global Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order.

**56.** ~~57.~~ This Court shall retain jurisdiction with regard to all issues or disputes relating to this Interim Order, the Consulting Agreement, or any Augment Agreements, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner, A-frame, and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Global Debtors, the landlords and/or the Consultant for protection from interference with the store closings or Store Closing Sales, (c) any other disputes related to the store closings or Store Closing Sales, and (d) protect the Global Debtors and/or the Consultant against any assertions of any liens, claims, encumbrances, and other interests.  No such parties or person shall take any action against the Global Debtors, the Consultant, the landlords, the store closings, or the Store Closing Sales until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

**57.** ~~58.~~ A final hearing on the relief sought in the Motion shall be conducted on **[_____], 2026 at [_____](CT)** (the "Final Hearing").  Any party-in-interest objecting to the relief sought at the Final Hearing or the Final Order shall file and serve a written objection, which objection shall be served upon (a) proposed co-counsel for the Global Debtors, (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Debra M.

Sinclair, Esq. (dsinclair@willkie.com), Jennifer J. Hardy, Esq. (jhardy2@willkie.com), and Betsy L. Feldman, Esq. (bfeldman@willkie.com), and (ii) Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000 Houston, TX 77010, Attn: Kelli Stephenson Norfleet, Esq. (kelli.norfleet@haynesboone.com), Kenric D. Kattner, Esq. (kenric.kattner@haynesboone.com), and Arsalan Muhammad, Esq. (arsalan.muhammad@haynesboone.com); (b) proposed counsel to the Committee; (c) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, TX 77002 Attn: Jana Smith Whitworth, Esq. (jana.whitworth@usdoj.gov) and Ha Nguyen, Esq. (ha.nguyen@usdoj.gov); (d) counsel to the DIP Agents, (i) Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004, Attn: Ronald A. Hewitt, Esq. (hewitt@sewkis.com), (ii) Morgan Lewis Bockius, One Federal St., Boston, MA 02110, Attn: Matthew Furlong, Esq. (matthew.furlong@morganlewis.com), Marjorie Crider, Esq. (marjorie.crider@morganlewis.com), and Gregory Gunther, Esq. (gregory.ginther@morganlewis.com), and (iii) Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Daniel F. Fiorillo, Esq. (dfiorillo@otterbour.com), Matthew J. Stockl, Esq. (mstockl@otterbourg.com), and Antonio J. Aguilera, Esq. (aaguilera@otterbourg.com); (e) co-counsel to the Ad Hoc Group of Secured Noteholders and DIP Lenders, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Robert A. Britton, Esq. (rbritton@paulweiss.com), Christopher Hopkins, Esq. (chopkins@paulweiss.com), Jessica Choi, Esq. (jchoi@paulweiss.com), and Martin J. Salvucci, Esq. (msalvucci@paulweiss.com) and (ii) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, TX 7702, Attn: John F. Higgins, Esq. (jhiggins@porterhedges.com), M. Shane Johnson, Esq. (sjohnson@porterhedges.com), and Megan Young-John, Esq. (myoung-john@porterhedges.com), in each case no later than _____, 2026 at 4:00

p.m. (CT).  If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

**58.** ~~59.~~ The Global Debtors and the Consultant are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Interim Order.

Dated _____, 2026
Houston, Texas                                        _____
                                                      ALFREDO R. PÉREZ
                                                      UNITED     STATES     BANKRUPTCY
JUDGE

**EXHIBIT 1**

**Consulting Agreement**

**<u>EXHIBIT 2</u>**

**Store Closing Procedures**

## Store Closing Procedures[1]

1.      The Store Closing Sales will be conducted during normal business hours or such hours as otherwise permitted by the applicable unexpired lease.

2.      The Store Closing Sales will be conducted in accordance with applicable state and local "Blue Laws," and thus, where such a law is applicable, no Store Closing Sales will be conducted on Sunday unless the Global Debtors have been operating such stores on Sundays.

3.      On "shopping center" property, neither the Global Debtors nor the Consultant shall distribute handbills, leaflets, or other written materials to customers outside of any Closing Stores' premises, unless permitted by the applicable lease or if distribution is customary in the "shopping center" in which such Closing Store is located; provided that the Global Debtors and the Consultant may solicit customers in the Closing Stores themselves.   On "shopping center" property, neither the Global Debtors nor the Consultant shall use any flashing lights or amplified sound to advertise the Store Closing Sales or solicit customers, except as permitted under the applicable lease or agreed in writing by the landlord.

4.      The Global Debtors and the Consultant shall have the right to use and sell the FF&E. The Global Debtors and the Consultant may advertise the sale of the FF&E in a manner consistent with these Store Closing Procedures.  The purchasers of any FF&E sold during the Store Closing Sales shall be permitted to remove the FF&E either through the back or alternative shipping areas at any time, or through other areas after Closing Store business hours; provided, however, that the foregoing shall not apply to *de minimis* FF&E sales made whereby the item can be carried out of the Closing Store in a shopping bag.

5.      The Global Debtors and the Consultant may, but are not required to, advertise all of the Store Closing Sales as "store closing," "sale on everything," "everything must go," or similarly themed sales.   The Global Debtors and the Consultant may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Store Closing Procedures.

6.      The Global Debtors and the Consultant shall be permitted to utilize sign walkers, displays, hanging signs, and interior banners in connection with the Store Closing Sales; provided that such sign walkers, displays, hanging signs, and interior banners shall be professionally produced and hung in a professional manner and such sign walkers shall be used in a safe and professional manner.  Neither the Global Debtors nor the Consultant shall use neon or day-glo on its sign walkers, displays, hanging signs, or interior banners if prohibited by the applicable lease or applicable law.  Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Store Closing Procedures.  In addition, the Global Debtors and the Consultant shall be permitted to utilize exterior banners at (a)

---

[1]     Capitalized terms used but not defined in these Store Closing Procedures shall have the meanings ascribed to them in the Interim Order or the Motion, as applicable.

non-enclosed mall Closing Stores and (b) enclosed mall Closing Stores to the extent the entrance to the applicable Closing Store does not require entry into the enclosed mall common area; provided, however, that such banners shall be located or hung so as to make clear that the Store Closing Sale is being conducted only at the affected Store, and shall not be wider than the storefront of the Store.

7.     Neither the Global Debtors nor the Consultant shall make any alterations to the storefront, roof, or exterior walls of any Closing Stores or shopping centers, or to interior or exterior store lighting, except as authorized by the applicable lease.  The hanging of in-store signage shall not constitute an alteration to a Closing Store.

8.     Affected landlords will have the ability to negotiate with the Global Debtors, or at the Global Debtors' direction, with the Consultant, any particular modifications to the Store Closing Procedures.  The Global Debtors and the landlord of any Closing Store are authorized to enter into Side Letters without further order of the Court, provided that such agreements do not have a material adverse effect on the Global Debtors or their estates. Nothing contained in these Store Closing Procedures shall be construed to create or impose upon the Global Debtors or the Consultant any additional restrictions not contained in the applicable lease agreement.

9.     To the extent applicable, conspicuous signs will be posted in each of the affected stores to the effect that all sales are "final."

10.    The Global Debtors will keep store premises and surrounding areas clear and orderly, consistent with past practices.

11.    An unexpired nonresidential real property lease will not be deemed rejected by reason of a Store Closing Sale, Store Closing or the adoption of these Store Closing Procedures.

12.    The rights of landlords against the Global Debtors for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease.

13.    If and to the extent that the landlord of any Closing Store contends that the Global Debtors or the Consultant is in breach of or default under these Store Closing Procedures, such landlord shall provide at least five (5) days' written notice, served by E-mail or overnight delivery, on:

If to the Global Debtors:

Saks Global Enterprises LLC
225 Liberty Street, 31st Floor
New York, New York 10281
Attention: Brandy Richardson
Email: brandy.richardson@saksglobal.com
with copies (which shall not constitute notice) to:

Haynes & Boone LLP
1221 McKinney St., Suite 4000

Houston, TX 77010
Attention:    Kelli Stephenson Norfleet, Esq. (kelli.norfleet@haynesboone.com)
               Arsalan Muhammad, Esq. (arsalan.muhammad@haynesboone.com)
               Kenric Kattner, Esq. (Kenric.kattner@haynesboone.com)

<u>and</u>

Willkie Farr & Gallagher LLP
787 Seventh Ave.
New York, New York 10019
Attention:    Debra M. Sinclair (dsinclair@willkie.com)
               Jennifer J. Hardy (jhardy2@willkie.com)
               Betsy L. Feldman (bfeldman@willkie.com)

<u>If to the Consultant</u>:

GA Retail Solutions, LLC
2829 Townsgate Road, Suite 103
Westlake Village, CA 91361
Tel: 818-746-9309

Attention: Scott K. Carpenter and Tim Shilling
Email: scarpenter@gagroup.com, tshilling@gagroup.com, legal@gagroup.com

If the parties are unable to resolve the dispute, either the landlord or the Global Debtors shall have the right to schedule a hearing before the Court on no less than five (5) days' written notice to the other party, served by E-mail, or overnight delivery.

| Summary report: Litera Compare for Word 11.12.0.83 Document comparison done on 1/30/2026 1:43:08 PM | |
|---|---|
| **Style name:** Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://uswork.willkie.com/us1/134596027/1 - Saks - Store Closing Procedures Order (Saks OFF 5TH Stores).docx | |
| **Modified DMS:** iw://uswork.willkie.com/us1/134596027/6 - Saks - Store Closing Procedures Order (Saks OFF 5TH Stores).docx | |
| **Changes:** | |
| **Add** | 37 |
| **Delete** | 30 |
| Move From | 2 |
| Move To | 2 |
| **Table Insert** | 0 |
| **Table Delete** | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 4 |
| **Total Changes:** | 75 |