**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>SAKS GLOBAL ENTERPRISES LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-90103 (ARP)<br><br>(Jointly Administered) |

**THE SO5 DIGITAL DEBTORS' FIRST OMNIBUS MOTION FOR ENTRY OF ORDER, PURSUANT TO SECTIONS 105(a), 365(a), AND 554 OF THE BANKRUPTCY CODE, AUTHORIZING THE SO5 DIGITAL DEBTORS TO (I) REJECT (A) UNEXPIRED LEASE OF NONRESIDENTIAL REAL PROPERTY AND (B) CERTAIN EXECUTORY CONTRACTS, EFFECTIVE AS OF THE REJECTION DATE; AND (II) ABANDON PERSONAL PROPERTY**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**ANY PARTY RECEIVING THIS MOTION SHOULD LOCATE ITS NAME AND ITS REJECTED LEASE OR REJECTED CONTRACT IDENTIFIED ON SCHEDULE 1 OR SCHEDULE 2, RESPECTIVELY, TO THE PROPOSED ORDER ATTACHED HERETO.**

Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC as debtors and debtors in possession in the above captioned cases

[1] A complete list of each of the SO5 Digital Debtors in these chapter 11 cases may be obtained on the website of the SO5 Digital Debtors' claims and noticing agent at https://cases.stretto.com/Saks (the "Claims Agent Website"). The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the SO5 Digital Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281. Bradley Arant Boult Cummings LLP is proposed counsel for the following Debtors: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively, the "SO5 Digital Debtors"). Haynes and Boone, LLP and Willkie Farr & Gallagher LLP are proposed counsel for the remaining Debtors (collectively, the "Global Debtors"). The term "Debtors" shall refer to both the SO5 Digital Debtors and the Global Debtors.

(collectively, the "SO5 Digital Debtors"), respectfully represent as follows in support of this motion (the "Motion"):

## RELIEF REQUESTED

1. The SO5 Digital Debtors request entry of an order, substantially in the form attached hereto (the "Order"), authorizing the SO5 Digital Debtors to:

(a) reject, effective as of rejection dates set forth on **Schedule 1** and **Schedule 2** to the Order (the "Rejection Date"), the (i) unexpired lease for non-residential real property, including, without limitation, any amendments, modifications, subleases, termination agreements, or other ancillary documents related thereto, set forth on **Schedule 1** to the Order (the "Rejected Lease"), and (ii) executory contracts set forth on **Schedule 2** to the Order (such contracts, collectively, the "Rejected Contracts" and, together with the Rejected Lease, the "Rejected Agreements"); *provided that* the Global Debtors may be party to certain Rejected Agreements, related statements of work or addendums thereto, and such rejection is without prejudice to the Global Debtors' rights and obligations relating to those Rejected Agreements, to the extent the Rejected Agreements were not already terminated as of the Rejection Date and are subject to assumption or rejection under section 365 of the Bankruptcy Code, and

(b) abandon any personal property of the SO5 Digital Debtors, including, but not limited to, furniture, fixtures, and equipment (collectively, the "Personal Property") that remains, as of the Rejection Date, at Floor 26 and 27, 225 Liberty Street, New York, New York 10281 (the "Liberty Office"), subject to the Rejected Lease.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference to Bankruptcy Judges from the United States District Court for the Southern District of Texas, entered May 24, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The SO5 Digital Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Court's entry of interim and final orders in connection with this Motion.

3. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief sought herein are sections 105(a), 363, and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, Bankruptcy Rules 6003, and 6004 and rules 1075-1 and 9013-1of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the *Procedures for Complex Cases in the Southern District of Texas*.

**CASE BACKGROUND**

5. On January 14, 2026, the SO5 Digital Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in this Court. The SO5 Digital Debtors are operating their businesses and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. The United States Trustee for the Southern District of Texas Bankruptcy Court appointed an unsecured creditor's committee in these Chapter 11 Cases on January 27, 2026.

7. No request has been made for the appointment of a trustee or an examiner.

8. Additional information regarding the SO5 Digital Debtors' businesses, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of Andrew D.J. Hede in Support of SO5 Digital Debtors' Chapter 11 Petitions and First Day Pleadings* (the "Hede First Day Declaration") [Docket No. 37].

**REJECTED AGREEMENTS**

9. Additional information regarding the SO5 Digital Debtors' intention and strategy to address their financial obligations and operational issues is described in the *Declaration of Andrew D.J. Hede in Support of SO5 Digital Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Approving and Authorizing the SO5 Digital Debtors to Enter Into and Perform*

*Under the Liquidation Sale Consulting Agreement, and (II) Granting Related Relief* [ECF No. 400].

10. The Debtors are the largest multi-brand luxury retailer in the world, comprising Saks Fifth Avenue, Saks OFF 5TH, Neiman Marcus, Neiman Marcus Last Call, Bergdorf Goodman, and Horchow.

11. In 1992, due to growing consumer demand, Saks piloted its original off-price experience, an outlet store in Franklin Mills, Pennsylvania called "Saks Clearinghouse." After the model proved successful, Saks Global expanded the concept and launched Saks OFF 5TH in 1995. In 2013, Saks OFF 5TH launched SaksOFF5TH.com, offering a broad assortment across all categories. Today, Saks OFF 5TH is a leading destination for luxury off-price fashion in stores and online at SaksOFF5TH.com, the business offers an assortment of high-end designers at accessible prices.

12. In 2021, Saks OFF 5TH's e-commerce business became a standalone company consisting of the SO5 Digital Debtors. Following the separation, the SAKS OFF 5TH brand remains the consumer-facing name for both the Saks OFF 5TH e-commerce business and Saks OFF 5TH stores. However, the SO5 Digital Debtors' e-commerce business and Saks OFF 5TH stores were established as separate operating entities and managed independently.

13. The SO5 Digital Debtors entered into a sublease with Saks & Company LLC (the "Liberty Sublandlord") relating to the Liberty Office on February 15, 2022 (the "Liberty Sublease"). After careful review, the SO5 Digital Debtors have determined that the Liberty Office is no longer necessary for their business operations as they move forward and look to maximize value to their estates, is not beneficial to their estates, and the Rejected Lease imposes unnecessary and burdensome rent and related liabilities. The SO5 Digital Debtors have provided notice to the

Global Debtors that they intend to reject the Liberty Sublease, effective February 6, 2026 and vacate the Liberty Office as of February 6, 2026. Therefore, the SO5 Digital Debtors have determined that rejecting the Liberty Sublease, effective as of February 6, 2026, is an appropriate exercise of their business judgment and in the best interest of their estates.

14. In addition to the Rejected Lease, after consulting their books and records, the SO5 Digital Debtors have identified the Rejected Contracts as contracts that are non-essential to their go-forward business operations and are uneconomic, including, but not limited to, (a) agreements that relate to information technology services and software as a service (SaaS), and (b) agreements that pertain to marketing, brand, and commerce arrangements. Under the Rejected Contracts, the SO5 Digital Debtors incur costs on account of services that no longer provide them with commensurate benefits. As a result, the SO5 Digital Debtors have determined that maintaining the Rejected Contracts would be burdensome to their estates.

15. The SO5 Digital Debtors seek authority to reject the Rejected Agreements *nunc pro tunc* to the Rejection Date. The retroactive rejection date applicable to each Rejected Agreement is appropriate to limit administrative costs associated with such Rejected Agreements that the SO5 Digital Debtors do not need for their go-forward business plan. The SO5 Digital Debtors intend to streamline operations as part of this sale process by eliminating excessive fixed costs and increasing strategic flexibility going forward, and have determined, in their business judgment, that rejecting the Rejected Agreements as provided herein will further that goal. Accordingly, the SO5 Digital Debtors request that the Court approve rejection of each Rejected Agreement identified on the Rejection Schedules be deemed effective *nunc pro tunc* to the Rejection Date.

16. Finally, in connection with the rejection of the Liberty Sublease, it is possible that some Personal Property will remain at the Liberty Office as of the Rejection Date. The SO5 Digital

Debtors expect that any remaining Personal Property at the Liberty Office may be difficult or expensive to remove and/or store, as well as difficult or unduly burdensome to allocate between the Global Debtors and the SO5 Debtors, such that the economic benefits of removal of the Personal Property will be exceeded by the attendant costs. Therefore, in connection with rejecting the Liberty Sublease as of the Rejection Date, the SO5 Digital Debtors intend to abandon the Personal Property and request the Court's approval to do so.

## BASIS FOR RELIEF REQUESTED

### I. Rejection of the Rejected Agreements is a Sound Exercise of the SO5 Digital Debtors' Business Judgment.

17. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "This provision allows a [debtor] to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco Petroleum, Inc.,* 15 F.3d 60, 62 (5th Cir. 1994)); *see also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) (superseded by statute on other grounds) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.").

18. "Section 365(a) enables the debtor (or its trustee), upon entering bankruptcy, to decide whether the contract is a good deal for the estate going forward." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 373 (2019). Generally, "[a] bankruptcy court reviews a debtor's decision to assume or reject an executory contract under the deferential 'business judgment' standard." *In re J. C. Penney Direct Mktg. Servs., L.L.C.*, 50 F.4th 532, 534 (5th Cir.

2022) (citing *Tempnology, LLC*, 587 U.S. at 373 and *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1308–09 (5th Cir. 1985)); *see also In re Mirant Corp.*, 378 F.3d 511, n. 5 (5th Cir. 2004) ("The rejection decision under § 365 is generally left to the business judgment of the bankruptcy estate.") (citations omitted); *In re Pisces Energy, LLC*, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment."); *In re Tex. Sheet Metals, Inc.*, 90 B.R. 260, 264 (Bankr. S.D. Tex. 1988) ("The traditional business judgement standard governs the rejection of ordinary executory contracts.").

19. The business judgment rule is a presumption that, in making a business decision, the directors of a corporation acted "on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 405 (S.D. Tex. 2008) (citations omitted). To satisfy the "business judgement" standard, a debtor merely has to show that the rejection of an unexpired lease or executory contract will benefit its estate. *See In re J. C. Penney Direct Mktg. Servs., L.L.C.*, 50 F.4th at 534 ("The correct inquiry under the business judgment standard is whether the debtor's decision regarding executory contracts benefits the debtor. . . ."); *In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) *aff'd*, 662 F.3d 315 (5th Cir. 2011) (explaining that the "'business judgement test' … requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgement"). "As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." *Richmond Leasing Co.*, 762 F.2d at 1309 (citation omitted);

*see also In re Idearc Inc.*, 423 B.R. at 162 ("In the absence of a showing of bad faith or an abuse of business discretion, the debtor's business judgment will not be altered") (quotations and citation omitted); *In re Hilltop SPV, LLC*, 667 B.R. 110, 118 (Bankr. W.D. Tex. 2025) (finding that section 365 of "[t]he Code tells us a chapter 11 debtor can reject *any* executory contract so long as the Court approves … [a]nd the Court is only to withhold approval of the chapter 11 debtor's decision if such decision is not in the best interest of the estate or constitutes bad business judgment") (internal citation omitted). Consequently, a debtor's business judgment will be upheld unless it is devoid of any rational purpose. *See In re J. C. Penney Direct Mktg. Servs., L.L.C.*, 50 F.4th at 534 (describing shedding "onerous or unprofitable" agreements as the "long-standing purpose" of allowing debtors to reject contracts).

20. Here, the SO5 Digital Debtors' rejection of the Rejected Lease and the Rejected Contracts is a sound exercise of their business judgment and in the best interests of their estates. The Rejected Lease is no longer necessary for their business operations as they move forward and look to maximize value to their estates, while subjecting the SO5 Digital Debtors to burdensome rent and related liabilities. Moreover, the SO5 Digital Debtors have determined that the Rejected Contracts are uneconomic and that the services provided to the SO5 Digital Debtors under such contracts are no longer necessary to their business operations. Absent rejection, the SO5 Digital Debtors and their estates would continue to incur administrative costs under the Rejected Agreements in exchange for no meaningful benefits.

## II. The Court Should Deem the Rejected Agreements Rejected Effective as of the Rejection Date.

21. The SO5 Digital Debtors' rejection of the Rejected Agreements should be approved effective as of the dates specified in **Schedule 1**. Pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, bankruptcy courts may grant retroactive rejection of an executory contract or

unexpired lease based on a balancing of the equities of the case. *See In re O'Neil Theatres, Inc.*, 257 B.R. 806, 808 (Bankr. E.D. La. 2000) (granting retroactive relief based on the circumstances of the case); *In re Amber's Stores*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) ("[N]othing precludes a bankruptcy court, based on the equities of the case, from approving" retroactive rejection); *In re Stonebridge Techs., Inc.*, 430 F.3d 260, 273 (5th Cir. 2005) ("[W]e note that most courts have held that lease rejection may be retroactively applied."). Moreover, courts permit retroactive rejection when retroactive rejection would allow a debtor to avoid "unnecessary administrative costs for Contracts and the Leases that do not provide any benefits to the Debtor and its estate," *In re SVB Fin. Grp.*, Case No. 23-10367 (MG) (Bankr. S.D.N.Y. May 17, 2023) [Docket No. 249], and also when the non-debtor party to the contract or lease was given "unequivocal notice of [the debtor's] intent to reject," *In re Cafeteria Operators, L.P.*, 299 B.R.at 394.

22. The balance of equities favors the relief requested herein. Without a retroactive date of rejection, the SO5 Digital Debtors would be forced to incur unnecessary administrative expenses relating to the Rejected Agreements to the detriment of their estates. *See* 11 U.S.C. §§ 365(d)(3) & (5), 503(b)(1)(A).

23. This Court has previously authorized retroactive relief similar to the relief requested herein. *In re LifeScan Global Corp.*, Case No. 25-90259 (ARP) (Bankr. S.D. Tex. Sept. 29, 2025) (ECF No. 383) (authorizing rejection of executory contracts effective as of the date of the rejection motion); *In re Desktop Metal, Inc.,* Case No. 25-90268 (CML) (Bankr. S.D. Tex. Sept. 23, 2025) (ECF No. 385) (authorizing rejection of unexpired leases to specified dates prior to the entry of the rejection order); *In re Sunnova Energy Int'l Inc.,* Case No. 25-90160 (ARP) (Bankr. S.D. Tex. July 2, 2025) (ECF No. 320) (authorizing rejection of executory contracts and unexpired leases

*nunc pro tunc* to the petition date); *In re Genesis Care Pty Ltd.*, No. 23-90614 (DRJ) (Bankr. S.D. Tex. July 12, 2023) (ECF 272) (authorizing rejection of executory contracts to specified dates prior to entry of rejection order).

24. Rejection of the Rejected Agreements effective as of the Rejection Date is in the best interests of their estates, does not negatively impact the public interest, and the equities balance in favor of rejection. Accordingly, the SO5 Digital Debtors respectfully request that the Rejected Agreements are deemed rejected effective as of the Rejection Date.

### III. Authorizing the SO5 Digital Debtors to Abandon Any Personal Property Remaining at the Liberty Office as of the Rejection Date Is Appropriate.

25. In the event that any Personal Property remains in the Liberty Office as of the Rejection Date, the SO5 Digital Debtors request authority to abandon that Personal Property (collectively, the "Abandoned Personal Property") pursuant to section 554(a) of the Bankruptcy Code.

26. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Courts generally give a debtor great deference with respect to its decision to abandon property. *See, e.g., In re Vel Rey Props., Inc.*, 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters."). Unless property is harmful to the public, once a debtor has shown that it is burdensome or of inconsequential value to the estate, a court should approve the abandonment. *Id.*

27. Here, the SO5 Digital Debtors submit that the Abandoned Personal Property is of inconsequential value and expensive or burdensome to the SO5 Digital Debtors' estates to remove. Among other things, the SO5 Digital Debtors believe that the cost of retrieving, storing, marketing,

and reselling the Abandoned Personal Property—to the extent there is any—outweighs any recovery that the SO5 Digital Debtors and their estates could reasonably hope to attain for such Abandoned Personal Property. Moreover, the SO5 Digital Debtors have determined that the Abandoned Personal Property does not pose a threat to public health or safety. As a result, the SO5 Digital Debtors have determined, in their business judgment, that the abandonment of any Abandoned Personal Property, effective as of the Rejection Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the SO5 Digital Debtors, their estates, and creditors.

## IV. The Motion Satisfies the Requirements of Bankruptcy Rules 6006(e) and 6006(f)

28. Under Bankruptcy Rule 6006(e)(2), a debtor may join requests for authority to reject multiple executory contracts or unexpired leases in one motion, subject to Rule 6006(f). *See* Fed. R. Bankr. P. 6006(e)(2). Motions to assume or reject multiple executory contracts or unexpired leases must satisfy six (6) procedural requirements, namely, they must:

1. state in a conspicuous place that the parties' names and their contracts or leases are listed in the motion;
2. list parties alphabetically and identify the corresponding contract or lease;
3. specify the terms, including how a default will be cured, for each requested assumption or assignment;
4. specify the terms, including the assignee's identity and the adequate assurance of future performance by each assignee, for each requested assignment;
5. be numbered consecutively with other omnibus motions to reject, assume, or assign executory contracts or unexpired leases; and
6. be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f). This Motion, together with the schedules of Rejected Agreements attached to the Order, satisfies the procedural requirements of Bankruptcy Rule 6006(f).[2] Accordingly, the omnibus rejection of the Rejected Agreements should be approved.

**Reservation of Rights**

29. Nothing in the Order or the Motion (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the SO5 Digital Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the SO5 Digital Debtors, their estates, or any other party in interest with respect to the validity, priority, or amount of any claim against the SO5 Digital Debtors and their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the SO5 Digital Debtors, their estates, or any other party in interest with respect to any and all claims or causes of action; or (d) shall be construed as a promise to pay a claim.

30. Nothing in the Order or this Motion shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of any SO5 Digital Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

31. Nothing in the Order or this Motion shall create, nor is intended to create, any rights in favor of or enhance the priority or status of any claim held by any party.

**NOTICE**

32. Notice of this Motion has been or will be provided to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the United States Attorney's Office for the

[2] Bankruptcy Rules 6006(f)(3) and 6006(f)(4) are inapplicable to the relief requested in this Motion because the Debtors do not seek to assume any of the contracts or leases listed on the schedules of Rejected Agreements.

Southern District of Texas; (c) counsel to the Committee; (d) counsel to the SO5 Digital Debtors' term loan lender, (e) any party entitled to notice pursuant to Bankruptcy Rule 2002" the counterparties to the Rejected Agreements (by first class mail and/or electronic mail as noted on **Schedule 1** and **Schedule 2**) and (f) all parties entitled to notice pursuant to Bankruptcy Rule 2002.. In light of the nature of the relief requested herein, the SO5 Digital Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the SO5 Digital Debtors request entry of the Order, granting the relief requested herein and such other and further relief as is just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: February 6, 2026

Respectfully submitted,

*/s/ Jarrod B. Martin*

**BRADLEY ARANT BOULT CUMMINGS LLP**
Jarrod B. Martin (TX Bar No. 24070221)
Michael K. Riordan (TX Bar No. 24070502)
600 Travis Street, Suite 5600
Houston, Texas 77060
Telephone: (713) 576- 0300
Facsimile: (713) 547-0301
Email: jbmartin@bradley.com
mriordan@bradley.com

-and-

James Bailey (TX Bar No. 24108289)
1819 Fifth Avenue N.
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 488-6913
Email: jbailey@bradley.com

*Proposed Counsel to the SO5 Digital Debtors and SO5 Digital Debtors in Possession*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on February 6, 2026, a true and correct copy of the foregoing Notice was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification. Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' claims agent.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

**Schedule 1**

Rejected Lease[1]

| Counterparty | Counterparty's Address | Rejected Agreement/Property | Rejection Date |
|---|---|---|---|
| SAKS & Company LLC | 225 Liberty Street, New York, New York 10281<br>Attn: Senior Vice President, General Counsel Real Estate | Sublease dated February 15, 2022; Floor 26 & 27, 225 Liberty Office- sublease to SAKS Off 5th LLC | 2/6/2026 |

[1] Each, as may be amended, modified, or supplanted from time to time and together with any schedules thereto.

## Schedule 2

Rejected Contracts[1]

| No. | Counterparty | Counterparty's Address | Rejected Agreement | Rejection Date |
|---|---|---|---|---|
| 1 | Bolt Financial, Inc. | Bolt Financial, Inc. c/o C T Corporation System 1505 Corporation 1209 Orange Street In Wilmington, De 19801<br><br>legal@bolt.com | Agreements regarding payment processing software | 1/14/2026 |
| 2 | China Luxury Advisors, Inc. | 2110 Artesia Blvd; Ste B647 Redondo Beach, CA 90278 | Agreement regarding market entry services on project-by-project basis | 1/14/2026 |
| 3 | Code Climate, Inc. | Code Climate, Inc.<br>228 PARK AVENUE SOUTH<br>SUITE 90591<br>New York, NY 10003 | Master services agreement relating to licensing of software | 1/14/2026 |
| 4 | dentsu X, LLC | 150 East 42nd Street<br>New York, NY 10017<br>Attn: Chief Financial Officer<br><br>150 East 42nd Street<br>New York, NY 10017<br>Attn: General Counsel | Agreement regarding marketing | 1/14/2026 |

[1] Each, as may be amended, modified, or supplanted from time to time and together with any schedules thereto.

| No. | Counterparty | Counterparty's Address | Rejected Agreement | Rejection Date |
|---|---|---|---|---|
| 5 | dentsu X, LLC | 150 East 42nd Street<br>New York, NY 10017<br>Attn: Chief Financial Officer<br><br>150 East 42nd Street<br>New York, NY 10017<br>Attn: General Counsel | Agreement regarding marketing | 1/14/2026 |
| 6 | LogRocket, Inc. | LogRocket, Inc., 87 Summer Street, 3rd Floor, Boston MA 02110 | Agreement regarding SaaS | 1/14/2026 |
| 7 | Reputation.com, Inc. | Reputation.com, Inc., 6111 Bollinger Canyon Road, Suite 500, San Ramon, CA 94583<br><br>legalnotices@reputation.com | Agreement regarding SaaS | 1/14/2026 |
| 8 | True Sight Consulting LLC | True Sight Consulting LLC<br>115 Broadway, 5th Floor, New York, NY 10006 | Agreement regarding marketing | 1/14/2026 |