IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SAKS GLOBAL ENTERPRISES LLC, *et al.*[1] | Case No. 26-90103 (ARP) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF AVENTURA FASHION ISLAND, L.P.,
BRIXMOR PARK SHORE SC LLC, GGP RETAIL, LLC, REGENCY
CENTERS, L.P., WFP TOWER B CO. L.P., AND WFP TOWER D CO. L.P.,
TO GLOBAL DEBTORS' MOTION FOR ENTRY OF FINAL ORDER
AUTHORIZING THE GLOBAL DEBTORS TO OBTAIN POSTPETITION FINANCING**

Aventura Fashion Island, L.P., Brixmor Park Shore SC LLC, GGP Retail, LLC, Regency Centers, L.P., WFP Tower B Co. L.P., and WFP Tower D Co. L.P. (each, a "Landlord", and collectively, the "Landlords"), by and through their undersigned counsel, Kelley Drye & Warren LLP, hereby submit this objection (the "Objection") to the *Global Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Global Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "DIP Motion").[2] In support of this Objection, the Landlords respectfully state as follows:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Saks. The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281.

[2] Docket No. 49. Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the DIP Motion.

**PRELIMINARY STATEMENT**

1.  The proposed Final Budget should be modified to provide for payment of all administrative expenses of the estates, including the immediate payment of rent for the period of January 13 through January 31 (the "Stub Rent") and rent, including "additional rent" such as common area maintenance, throughout the pendency of these chapter 11 cases (together with the Stub Rent, the "Post-Petition Rent"). Administrative solvency in these cases is uncertain, and the risk of administrative insolvency should not be improperly placed on the Landlords for the benefit of the above-captioned debtors (the "Debtors") and the pre-petition secured parties and post-petition lenders (collectively, the "Secured Parties").

2.  The Landlords are unquestionably entitled to payment of all obligations arising under or coming due post-petition pursuant to their Leases with the Debtors. Any order approving post-petition financing on a final basis should be (i) subject to the terms of, and (ii) neither impair, prejudice, nor modify the Landlords' rights under the Leases between the Debtors and the Landlords.

3.  The Debtors have been using and occupying the Leased Premises (as defined herein) for the direct benefit of the Debtors and the Secured Parties since the Petition Date. Without the ability to use the Leased Premises, the Debtors (i) would not be able to generate income from the operations of the Debtors' stores at the Leased Premises, (ii) would cease to have access to key offices from which to oversee such operations, and (iii) would have to find other locations from which to oversee operations and store or sell their inventory and personal property, including inventory that serves as the Secured Parties' collateral.

4.  The Debtors' filings to date make clear that they plan to continue using and occupying the Leased Premises for the benefit of their estates, either in the ordinary course as part

of their go-forward operations or outside of the ordinary course by conducting store closing sales at certain stores. Accordingly, the Landlords request adequate protection pursuant to sections 363(e) and 361 of the Bankruptcy Code for the Debtors' continued use of the Landlords' property both inside and outside of the ordinary course of business.

5.  The Landlords oppose the Debtors' attempt to waive the estates' rights under sections 506(c) and 552(b) of the Bankruptcy Code without providing for payment of all Post-Petition Rent. If the Court is inclined to grant such waivers, then the Landlords request that Post-Petition Rent be paid directly to the Landlords immediately upon entry of the Final DIP Order while the Debtors have more than adequate liquidity to pay the full amount of the Stub Rent or that funds sufficient to cover the amounts due to all landlords in these cases be placed in escrow as adequate protection and budgeted and directed to be paid to such landlords.

6.  The Landlords have three additional concerns with respect to the DIP Motion, which were addressed in a satisfactory manner in the Interim DIP Order (as defined below), but which the Landlords want to ensure are addressed properly in the final order.[3] Accordingly, the Landlords also object to the proposed Final DIP Order with respect to the following points:

   a. **Disallowance of Liens on Leases:** The liens granted to the Secured Parties should not be placed directly on the Leases, in violation of the express provisions of certain Leases and the financing agreements that the Landlords have with their own lenders. Instead, such liens should be limited to the proceeds of the sale or disposition of the Leases to maintain the status quo and honor the bargained-for provisions of the Leases. Specifically, the language in the Interim DIP Order at ¶ 30 should be carried into the Final DIP Order (with appropriate adjustments to reflect entry of the Final DIP Order).

   b. **Use and Occupation of the Leased Premises:** The Landlords object to any broad grant of rights and remedies to the Secured Parties to use and occupy the Leased Premises if the Debtors default under the terms of the DIP Financing, and request that

---

[3] The Landlords have requested a copy of the proposed final order from the Debtors, but have not received it as of the filing of this Objection; therefore, they file this objection out of an abundance of caution in case the final order does not adequately address these issues.

3

the Court limit such rights to what is (i) permitted by applicable non-bankruptcy law; (ii) agreed to in writing by the applicable Landlord; or (iii) ordered by the Court on motion and notice appropriate under the circumstances. Specifically, the language in the Interim DIP Order at ¶ 16(c) should be carried into the Final DIP Order (with appropriate adjustments to reflect entry of the Final DIP Order).

c. **Availability of Insurance Proceeds:** The Landlords object to any addition of parties to be named as additional insured and loss payee on the insurance policies maintained by the debtors, solely to the extent that any such addition interferes with any rights held by a Landlord to insurance proceeds for damages to Landlord's property. Specifically, the language in the Interim DIP Order at ¶ 38 should be carried into the Final DIP Order (with appropriate adjustments to reflect entry of the Final DIP Order).

## BACKGROUND

7.  The Landlords are the owners or affiliates of or managing agents for the owners of commercial properties located throughout the United States where the Debtors lease space pursuant to written leases (each, a "Lease," and, collectively, the "Leases") for the locations listed on the attached Exhibit A (collectively, the "Leased Premises"). Most of the Leased Premises are located in retail shopping centers as that term is used in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990). However, two of the Landlords lease office space to the Debtors for their New York office headquarters.

8.  On January 13 and 14, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court. The Debtors also filed numerous "first day" motions, including the DIP Motion. Since the Petition Date, the Debtors have continued to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9.  On January 15, 2026, the Debtors filed the *Debtors' Notice of Filing Revised Proposed Interim Order (I) Authorizing the Global Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection to the Prepetition*

4

*Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Revised Proposed Interim DIP Order"), which reflected certain modifications to the Interim DIP Order as ordered by the Court and as agreed by and among the Debtors, the Landlords, and various other parties.

10. On January 15, 2026, the Court entered an order (the "Interim DIP Order")[4] approving the DIP Motion on an interim basis, including the modifications set forth in the Revised Proposed Interim DIP Order, and scheduling a hearing for February 13, 2026, at 9:00 a.m. (CT) to consider entry of a final order granting the DIP Motion (the "Final DIP Order"). The Initial Interim DIP Order also approved, on an interim basis, the Debtors' initial post-petition financing budget (the "Initial Budget"), which was attached as Exhibit F to the Interim DIP Order. The Initial Budget includes only a consolidated "Total Disbursements" figure and does not separately account for the payment of Stub Rent or other Post-Petition Rent. Based on testimony at the first day hearing, there is up to $19 million in unpaid lease obligations that arose during the period from the Petition Date through January 31, 2026, no portion of which is included in the Initial Budget or will be included the Final Budget. Instead, the Debtors' plan appears to be to pay these post-petition administrative claims when the Debtors hopefully emerge from Chapter 11.

11. The Stub Rent amounts due to the Landlords are listed on Exhibit A, attached hereto, and total approximately $2.03 million.

---

[4] Docket No. 206.

**LIMITED OBJECTION**

I. **The Landlords Are Entitled to Adequate Protection Under Sections 363(e) and 361 of the Bankruptcy Code**

12. Section 363(e) of the Bankruptcy Code guarantees adequate protection to any party with an interest in property used by a debtor during the debtor's bankruptcy proceedings who makes a request for adequate protection:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

13. Section 363(e) is straightforward and non-discretionary. If a creditor with an "interest" in property used by the Debtors makes a request for adequate protection, then the court "shall" prohibit or condition the use of such property on the provision of adequate protection. 11 U.S.C. § 363(e); *see In re Worldcom, Inc.*, 304 B.R. 611, 618 (Bankr. S.D.N.Y. 2004); *see also In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("[s]ection 363(e) is not permissive or discretionary…").

14. The U.S. Supreme Court has held that the term "interest" "is the most general term that can be employed to denote a right, claim, title, or legal share in something." *Russello v. U.S.*, 464 U.S. 16, 21 (1983).

15. Section 363(e) is not limited to secured creditors. A landlord undeniably holds an interest in the property that it owns and leases to a debtor, as well as an interest in the lease itself, the rents due under that lease, and the proceeds of the lease. *See In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (citing several cases holding that a landlord has the right to adequate protection of its right to timely payment of post-petition rent); *see also In*

*re Ernst Home Center, Inc.*, 209 B.R. 955, 965-66 (Bankr. W.D. Wash. 1997) (held that real property lessors may request adequate protection under § 363(e) and noted that the right to payment under § 365(d)(3) would be hollow without a remedy); *In re Mr. Gatti's, Inc.*, 164 B.R. 929, 946 (Bankr. W.D. Tex. 1994) (the enactment of § 365(d)(3) abrogated any argument against the entitlement of a landlord to adequate protection); *In re MS Freight Distribution, Inc.*, 172 B.R. 976, 980 (Bankr. W.D. Wash. 1994) (landlord's right to be kept current on post-petition obligations is entitled to adequate protection); *In re Ames Department Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) ("Section 363(e) of the Bankruptcy Code reserves for bankruptcy courts the discretion to condition the time, place and manner of [store closing] sales, thereby providing adequate safeguards to protect shopping center landlords and their other tenants, while allowing the Trustee to fulfill its fiduciary obligations.").

16. A landlord's interests in its lease and the premises it leases to a debtor are further evidenced by the allowance of landlords' stub rent claims in other cases pursuant to section 503(b) of the Bankruptcy Code. *See, e.g., In re Goody's Family Clothing Inc.*, 401 B.R. 656, 665 (D. Del. 2009) (affirming the allowance of stub rent claims under section 503(b)(1) of the Bankruptcy Code). Thus, with an interest in property being used by the Debtors, and the request made herein, the Landlords are entitled to receive adequate protection.

17. The plain language of section 361 of the Bankruptcy Code states that adequate protection may take one of three forms: a debtor may (i) tender an upfront cash payment or periodic cash payments, (ii) grant replacement liens, or (iii) grant other related relief (other than an administrative claim under section 503(b)(1) of the Bankruptcy Code) amounting to the indubitable equivalent of the protected party's interest in the property. Section 361(3) is also clear that adequate protection *may not* take the form of a deferred administrative claim. Under section

7

361 of the Bankruptcy Code, only a contemporaneous transfer of value satisfies the requirements of adequate protection.

19. The Debtors and the Secured Parties are using certain of the Leased Premises to store, safeguard, and liquidate the Secured Lenders' Collateral, while the Landlords are bearing the full risk that the Debtors' estates are administratively insolvent. The Landlords are essentially funding the Debtors' restructuring efforts on an involuntary and interest-free basis through the use and occupancy of the Leased Premises without certainty that the Stub Rent will be paid. No other administrative creditor is placed in such a situation.

19. In this case, there is no reasonable basis for the Debtors' and the Secured Parties' unwillingness to immediately pay Stub Rent while there is more than adequate liquidity, and the Debtors' position that Sub Rent should remain unpaid until the end of the cases unfairly shifts the burden of administrative insolvency onto the Landlords. If the Debtors and the Secured Parties insist on delaying payment of the Stub Rent in the short term, the Debtors should be required to hold funds in escrow as adequate protection for the payment of Stub Rent, so the Landlords are not forced to bear the risk that they may never be paid if a plan is not confirmed or these cases are or become administratively insolvent, and the Debtors should be authorized and directed to pay those funds to landlords at an agreed-upon time. This is entirely appropriate in these cases where the Debtors are essentially in "free fall" and there is not yet a clear path to a plan of reorganization.

20. This Court granted similar relief in a recent case, *In re CEC Entertainment, Inc.* In that case, the Court directed the debtors to place funds in a segregated account to cover certain unpaid rent due to landlords. Specifically, the order, which is attached hereto as <u>Exhibit B</u>, provided:

>> **Rent Reserve Account**. As soon as reasonably practicable following the Closing Date, the Debtors shall deposit $13 million in a segregated account (the "**Rent Reserve Account**"), the proceeds of which shall solely be used to pay post-petition claims of the Debtors' landlords as provided in the "Rent" line item of the DIP Budget for the week ending November 8, 2020, subject to adjustment or consensual reduction based upon agreements between the Debtors and the Debtors' landlords (the "**Catch-Up Payments**"). Upon payment in full of the Catch-Up Payments, any funds remaining in the Rent Reserve Account shall become available to the Debtors for use in any manner that is otherwise consistent with the DIP Order and DIP Documents.

*In re CEC Entertainment, Inc. et al.*, Case No. 20-33163 (MI) (Bankr. S.D. Tex. 2020) [Docket No. 1118] at 39.

## II. The Debtors Should Not Be Permitted to Waive the Estates' Rights Under Sections 506(c) and 552(b) of the Bankruptcy Code

21. The Landlords object to the DIP Motion and entry of any final order on the DIP Motion or approval of any Final Budget that (i) includes waivers of sections 506(c) and 552(b) of the Bankruptcy Code and (ii) fails to direct the Debtors to immediately pay or escrow Stub Rent to the affected Landlords. Absent such modifications, the requested waivers should be denied.

22. Waiver of the estates' rights under sections 506(c) and 552(b) of the Bankruptcy Code would be inappropriate in these cases. Section 506(c) of the Bankruptcy Code allows a debtor to surcharge a lender's collateral for the cost of preserving or disposing of that collateral. 11 U.S.C. § 506(c). The provision ensures that the cost of liquidating a secured lender's collateral is not paid from unsecured creditor recoveries. *See In re Visual Indus., Inc.*, 57 F.3d 321, 325 (3d Cir. 1995) (noting that "[section] 506(c) is designed to prevent a windfall to the secured creditor at the expense of the claimant"); *see also In re Skuna River Lumber, LLC*, 564 F.3d 353, 355 (5th Cir. 2009) (noting that the Bankruptcy Code "allows administrative expenses to be surcharged against a creditor's collateral"); *see also Kivitz v. CIT Group/Sales Fin., Inc.*, 272 B.R. 332, 334 (D. Md. 2000) ("The reason for [section 506(c)] is that unsecured creditors should

9

not be required to bear the cost of protecting property that is not theirs and to require the secured party to bear the cost of preserving or disposing of its own collateral."); *In re Codesco Inc.*, 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("The underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs.").

23. In a tenant-debtor context, courts may surcharge lenders for post-petition rents and storage charges for storing lender's collateral, as necessary and directly beneficial to the lender. *See In re Scopetta-Senra Partnership III*, 129 B.R. 700, 701 (Bankr. S.D. Fla. 1991) (determining that landlord who provided post-petition lease space provided benefit to the secured creditor by storing its collateral and ensuring the debtor's continued operations); *see also In re World Wines, Ltd.*, 77 B.R. 653, 658 (Bankr. N.D. Ill. 1987) (finding that landlord was entitled to payment from the bank for the use and occupancy of its premises for storage of wine pursuant to section 506(c)).

24. Similarly, the "equities of the case" exception in section 552(b) of the Bankruptcy Code allows a debtor, committee, or other party-in-interest to exclude post-petition proceeds from pre-petition collateral on equitable grounds, including to avoid having unencumbered assets fund the cost of a secured lender's foreclosure. 11 U.S.C. § 552(b).

25. The Debtors have been using the Leased Premises for the direct benefit of the Secured Parties since the Petition Date. The post-petition rent owed to Landlords is a reasonable and necessary cost for the preservation of the Secured Parties' collateral. Without the ability to use the Leased Premises, the Debtors would have to find other locations from which to oversee operations and store or sell their inventory and personal property, including inventory that

serves as the Secured Parties' collateral, and such inventory and personal property would likely not be liquidated in a value-maximizing manner.

26. The preemptive waivers of sections 506(c) and 552(b) could also affect the recoveries of unsecured creditors, where there may be insufficient liquidity to fund administrative claims. It is unreasonable to ask the Landlords to bear any potential shortfall in the payment of administrative claims as a result of the Debtors' wavier of rights under section 506(c). At least one court has refused to enforce such a waiver. *See In re Lockwood Corp.*, 223 B.R. 170, 176 (B.A.P. 8th Cir. 1998) (holding that a provision in the financing order purporting to immunize the post-petition lender from section 506(c) surcharge was unenforceable).

27. Absent a consensual Final Budget that (i) reserves specific and clear amounts sufficient to account for both Stub Rent and the go-forward Post-Petition Rent and (ii) ensures (a) immediate payment to the Landlords or escrow of the Stub Rent, (b) administrative solvency, and (c) a controlled exit from these chapter 11 cases, the Debtors should not be allowed to waive their statutory ability to surcharge the Secured Parties' collateral and/or recover costs, including Stub Rent, as adequate protection or under the equities of the case. *See, e.g., In re Mortgage Lenders Network USA, Inc.*, Case No. 07-10146 (PJW) (Bankr. D. Del. Mar. 20, 2007) [Docket No. 346], Hearing Transcript at 20-21, (recognizing that 506(c) waivers require creditor consent); *see also In re Townsends, Inc.*, Case No. 10-14092 (CSS) (Bankr. D. Del. Jan. 21, 2011) [Docket No. 338], Hearing Transcript at 23-25 (refusing to approve financing for a sale process that would leave the estate administratively insolvent); *In re NEC Holdings Corp.*, Case No. 10-11890 (PJW) (Bankr. D. Del. July 13, 2010) [Docket No. 224], Hearing Transcript at 100 (requiring that secured creditors pay the "freight" of the bankruptcy by ensuring an administratively solvent estate).

28. As the Bankruptcy Court for the District of Delaware did in *In re Sports Authority Holding*, this Court should deny the advance waivers of sections 506(c) and 552(b) sought by the Debtors and Secured Parties. *In re Sports Authority Holdings*, Case No. 16-10527 (MFW) (Bankr. D. Del. Apr. 26, 2016) [Docket No. 1415] (the "Hearing Transcript"). In that case, the debtors requested approval of a post-petition lending facility that rolled up the entire prepetition secured debt, proposed to pay off the prepetition lenders immediately upon an expedited sale, granted the post-petition lenders a surcharge waiver, and failed to adequately fund administrative and priority claims, including rent and 503(b)(9) claims. In denying the surcharge waiver, Judge Walrath ruled:

> But in a case where the landlords and other administrative claims are clearly not budgeted or being paid while the . . . secured lenders' collateral is being liquidated and their secured claim is being paid, I have a serious problem with that. And I think the fix is no 506(c) waiver for anybody. And to the extent that administrative claims are not paid at the end of this case, there will be a claim against the lenders for those costs under 506(c) to the extent they were necessary for the preservation or realization of their collateral.

*See* Hearing Transcript at 195:6-16 (relevant pages attached hereto as Exhibit C). While this authority is only persuasive and not controlling, the Landlords respectfully submit that Judge Walrath's ruling appropriately addresses the waiver issue.

29. The Secured Parties will substantially benefit from the Debtors' continued use and occupancy of the Leased Premises. Therefore, the Secured Parties should be required to fund the expenses of those benefits, rather than escape any responsibility for Post-Petition Rent through waivers of the estate's rights under sections 506(c) and 552 of the Bankruptcy Code. *See In re Domistyle, Inc.*, 811 F.3d 691, 696 (5th Cir. 2015) ("a secured creditor should not reap the benefit of actions taken to preserve the secured creditor's collateral without shouldering the cost") (citation omitted); *see also In re Isaac Cohen Clothing Corp.*, 39 B.R. 199, 201 (Bankr. S.D.N.Y.

1984) (granting surcharge because lender "clearly benefited from the property being stored on the [landlord's] premises").

**III.     Any Liens on Leasehold Interests Must Comply with the Terms of the Leases**

30. The Landlords object to any attempt by the Debtors and Secured Parties to render unenforceable any provisions in the Leases that prohibit or restrict placing a lien directly on the Leases. Anti-lien provisions in leases are enforceable under state law, bargained for at arm's-length, and critical to a landlord's ability to prevent a tenant from encumbering its lease when the applicable landlord's mortgage or loan documents prohibit such liens.

31. Section 365 of the Bankruptcy Code mandates that the Debtors must "timely perform all of the obligations" under the Leases until such time that the Debtors assume or reject the Leases. 11 U.S.C. § 365(d)(3). The Debtors have neither assumed nor rejected any of the Leases; therefore, the Debtors must comply with those Leases, including provisions prohibiting liens on such Leases. In addition, the imposition of direct liens on the Leases would run counter to the provisions in the Leases that subordinate the Leases and any related liens to any existing or potential liens granted by the Landlords against the Leased Premises.

32. The DIP Motion cites no authority that would authorize the Court to render any Lease provision unenforceable, including lease subordination or anti-lien language. It is settled law that a trustee "takes the contracts of the debtor subject to their terms and conditions." *Thompson v. Texas Mexican Ry. Co.*, 328 U.S. 134, 141 (1946). Accordingly, to the extent that the Leases contain subordination clauses, any new liens granted by the Court must be subordinated to any existing or potential liens against the affected Leased Premises.

33. Although the Landlords object to the improper attempt to grant the Secured Parties liens or security interests that are prohibited by the Leases, the Landlords do not object to granting the Secured Parties a lien on the proceeds of the sale of the Leases. A lien on the potential

proceeds of the disposition of the Debtors' leases more than adequately protects the Secured Parties' interests. The "bonus value" of the leases has been recognized as property of the bankruptcy estate, *see, e.g., In re Ernst Home Center, Inc.*, 221 B.R. 243, 249 (B.A.P. 9th Cir. 1998) (Russel, J., concurring), and a security interest in that bonus value, in the form of a lien on the proceeds of the disposition of leases, strikes a balance between the Secured Parties' economic interests, the Debtors' need for financing, and the Landlords' rights under the Leases and the Bankruptcy Code.

34. The Landlords respectfully request that the proposed liens attach only to the proceeds of the sale, assignment, or other disposition of the Leases. This provides the Secured Parties with a lien on what they desire – the economic value of the Leases – and does not otherwise prejudice the Debtors or the Landlords.

35. Accordingly, the language agreed in paragraph 30 of the Interim DIP Order should be carried forward into any Final DIP Order (with appropriate adjustments to reflect entry of the Final DIP Order) to preserve the status quo, specifically:

> Real Property Leases. Notwithstanding anything to the contrary in this Interim Order, the DIP Credit Agreements, or the DIP Documents, all of the liens granted pursuant to this Interim Order shall not include or attach prior to the entry of the Final Order to: (a) any of the Global Debtors' real property leases (but shall include all proceeds of such leases) and no liens granted pursuant to this Interim Order shall attach to the Global Debtors' real property leaseholds; (b) any insurance or proceeds therefrom for damage to a landlord's property; and (c) any security deposits (in possession of the landlord) or the Global Debtors' interests, if any, in any pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents.

Interim DIP Order at ¶ 30.

**IV.**     **The Secured Parties' Default Use and Occupancy Rights Must Be Limited**

36. The Secured Parties should not be granted the unfettered right, in the event of a default, to occupy and use the Leased Premises without performing the Debtors' obligations under the Leases or providing the Landlords with adequate assurance of future performance as required in connection with an assignment of the Lease pursuant to section 365 of the Bankruptcy Code. The Secured Parties are not the tenants under the Leases and do not have the right to use the Leased Premises to liquidate their collateral without complying with all of the obligations under the Leases, and the Debtors provide no authority that would support such a request.

37. Any final order on the DIP Motion should clarify that the Secured Parties do not have unrestricted rights of access to use and occupy the Leased Premises following a default under the DIP Facilities. There is no basis for a bankruptcy court to grant a non-debtor party rights to use and occupy real property leased by a debtor outside the parameters of Section 365. *See, e.g., In re Antwerp Diamond, Inc.*, 138 B.R. 865, 866-69 (Bankr. N.D. Ohio 1992).

38. The Landlords respectfully request that the Final DIP Order contain the same limitations on access by the Secured Parties that are contained in paragraph 16(d) of the Interim DIP Order, specifically:

> Rights and Remedies Upon Event of Default.
>
> [ … ]
>
> (d)     Subject to this Interim Order and unless otherwise ordered by this Court, upon the earlier of (i) the expiration of the Remedies Notice Period or (ii) this Court's ruling that an Event of Default has occurred and is continuing, if any, subject to the DIP Intercreditor Agreement and the Prepetition Intercreditor Agreements and terms and conditions set forth in paragraph 16 of this Interim Order, the DIP Secured Parties, and any professional retained by any of the DIP Secured Parties, will have the right to access and utilize (i) at no cost or expense, any trade names, trademarks, copyrights or other intellectual property and (ii) any warehouse, distribution centers, stores, or other locations, in each case to the extent reasonably

15

> necessary or appropriate in order to sell, lease or otherwise dispose of any of the DIP Collateral, including pursuant to any Sales Process and in all cases subject to existing license agreements. Notwithstanding the foregoing or anything in this Interim Order, the DIP Credit Agreements, or the DIP Documents, the DIP Secured Parties and Prepetition Secured Parties, as applicable, may only enter upon a leased premises of the Debtors after an Event of Default in accordance with (1) a separate written agreement among the DIP Secured Parties or the Prepetition Secured Parties, as applicable, and the applicable landlord for the leased premises, (2) pre-existing rights of the DIP Secured Parties or Prepetition Secured Parties under applicable non-bankruptcy law, (3) written consent of the applicable landlord for the leased premises, or (4) entry of an order by this Court approving such access to the leased premises after notice and an opportunity to be heard for the applicable landlord for the leased premises.

Interim DIP Order at ¶ 16(d).

39. At a minimum, if the Court authorizes the Secured Parties to use and occupy the Leased Premises to liquidate their collateral, the Final DIP Order should provide that, if the Secured Parties use and occupy the Leased Premises, then they must timely perform all of the obligations arising under the Leases going forward as required by section 365(d)(3) of the Bankruptcy Code, and cure all existing defaults as required by sections 365(b)(1) and (b)(3) of the Bankruptcy Code when a lease is assumed and assigned.

V. **The Final DIP Order Should Not Alter Landlord Rights to Insurance Proceeds**

40. The Landlords also object to any attempt by the Debtors and Secured Parties to eliminate unspecified provisions from the Leases setting forth the rights of the parties in connection with insurance policies that the Debtors are required, per the Leases, to maintain for the Leased Premises. The provisions of the Leases that require the Debtors to maintain insurance policies on the Leased Premises and to name the Landlords as additional insured and/or loss payee are enforceable under state law and were bargained for at arm's-length during the Lease negotiations. The Debtors have not provided any support for the notion that such provisions should

16

be modified or that the Secured Parties should be given any rights in connection with the recovery of insurance proceeds that the Landlords are entitled to under the Leases.

41. The Landlords request that the Final DIP Order approving the DIP Motion limit the Secured Parties' interference with the Debtors' insurance policies for the Leased Premises. The Interim DIP Order states:

> Insurance. Until the DIP Obligations and Prepetition Secured Obligations have been Paid in Full, at all times the Global Debtors shall maintain casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date and otherwise in accordance with the DIP Documents. To the fullest extent provided by applicable law, each DIP Agent and Prepetition Agent shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Global Debtors to the extent that such policy in any way relates to the DIP Collateral securing the obligations under the credit facility for which such DIP Agent or Prepetition Agent, as applicable, serves as agent; *provided* that, subject to entry of the Final Order, the rights or liens granted hereunder shall not interfere with any rights held by a landlord to insurance proceeds for damages to a landlord's property.

Interim DIP Order at ¶ 38.

42. The Landlords respectfully request that their rights as to insurance proceeds continue to be preserved by the Final Order.

## **RESERVATION OF RIGHTS**

43. The Landlords reserve their right to amend and/or supplement this Objection and to raise any additional objections to the DIP Motion at the final hearing.

17

**CONCLUSION**

**WHEREFORE**, the Landlords request that the Court (i) deny the DIP Motion unless the Final DIP Order and the Final Budget are modified as requested herein; and (ii) grant such other and further relief as this Court deems just and proper.

Dated: February 17, 2026
Houston, TX

**KELLEY DRYE & WARREN LLP**

By: *Robert L. LeHane*
Robert L. LeHane

Robert L. LeHane (TX Bar No. 24077962)
Jennifer D. Raviele (admitted *pro hac vice*)
Charles Fendrych (admitted *pro hac vice*)
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800
Email: rlehane@kelleydrye.com
jraviele@kelleydrye.com
cfendrych@kelleydrye.com

*Attorneys for Aventura Fashion Island, L.P., Brixmor Park Shore SC LLC, GGP Retail LLC, Regency Centers, L.P., WFP Tower B Co. L.P., and WFP Tower D Co. L.P.*

**CERTIFICATE OF SERVICE**

       I hereby certify that on this February 17, 2026, a copy of the foregoing Objection was served via CM/ECF on all parties registered to receive such notice in the above-captioned cases.

                                                */s/ Robert L. LeHane*
                                                Robert L. LeHane