IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>SAKS GLOBAL ENTERPRISES LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 26-90103 (ARP)<br><br>(Jointly Administered)[1] |

## LIMITED OBJECTION AND RESERVATION OF RIGHTS OF CERTAIN VENDORS TO ENTRY OF FINAL DEBTOR-IN-POSSESSION FINANCING ORDER AND REQUEST FOR CONSIGNMENT AND CONCESSION CARVE-OUT AND ADEQUATE PROTECTION

Dena Kemp, Inc., David Webb Holdings LLC, Walking Tree USA Inc., Bain Cardet Holdings, and Kentshire Galleries, Ltd. (collectively, the "Vendors")[2], by and through undersigned counsel, hereby file this limited objection and reservation of rights (the "Limited Objection") to Debtors' *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Global Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV)*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Saks. The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281. Bradley Arant Boult Cummings LLP is proposed counsel for the following Debtors: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively, the "SO5 Digital Debtors"). Haynes and Boone, LLP and Willkie Farr & Gallagher LLP are proposed counsel for the remaining Debtors (collectively, the "Global Debtors").

[2] This Limited Objection is filed on behalf of the Vendors jointly only for purposes of administrative convenience. The Vendors have not formed an ad hoc committee or other collective group, and there is no agreement among them concerning the coordination of their claims or positions in this case other than their retention of undersigned counsel.

*Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [D.E. 49] (the "DIP Financing Motion"), and respectfully state as follows:

## I. PRELIMINARY STATEMENT

This Limited Objection is narrowly focused. The Vendors do not object to the Debtors' ability to obtain debtor-in-possession financing generally pursuant to section 364 of title 11 of the United States Code (the "Bankruptcy Code"). *See* 11 U.S.C. § 364. Instead, the Vendors respectfully request that the Final DIP Order be conditioned to (a) preserve Vendors' ownership and secured interests in consigned and concession goods and proceeds from the sale thereof under applicable non-bankruptcy law, (b) prevent any use, sale, transfer, or encumbrance of such property absent consent or further order of the Court, and (c) provide adequate protection—including segregation of proceeds—pending determination of the validity, extent, and priority of Vendors' rights.

As entered, the Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Claims, (IV) Granting Adequate Protection, and (V) Granting Related Relief (the "Interim DIP Order") provides only a reservation of rights for consignors. Interim DIP Order ¶ 27 [D.E. 206].

A reservation of rights does not constitute adequate protection. Section 363(e) provides that, upon request of an entity with an interest in property, the Court "shall prohibit or condition" the use, sale, or lease of such property as is necessary to provide adequate protection. 11 U.S.C. § 363(e). Adequate protection is required to protect the value of the creditor's interest in the property. *In re Stembridge*, 394 F.3d 383, 387 (5th Cir. 2004).

The need for explicit protection is underscored by the Interim DIP Order's treatment of other third-party merchandise categories. Specifically, the Interim DIP Order expressly excludes concession merchandise and proceeds from DIP collateral: "in no event shall the DIP Collateral include (x) any Concession Merchandise or (y) any proceeds from the sale of any such Concession Merchandise…." Interim DIP Order ¶ 28 [D.E. 206].

Consigned goods and proceeds warrant comparable protection. Without an express carve-out and segregation, the Debtors' DIP financing and cash collateral regime risks sweeping consigned goods and proceeds into estate collateral and, in practical effect, converting Vendors' ownership or secured interests into unsecured claims—an outcome inconsistent with the principle that bankruptcy does not expand a debtor's rights in property. *See Mission Prod. Holds., Inc. v. Tempnology, LLC*, 587 U.S., 370, 381 (2019).

Indeed, the Vendors believe that this may have already occurred: the Debtors improperly and purposefully commingling the Vendors' collateral with the purpose of using the cash to fund the Debtors' operations.  Moreover, despite the protections set forth in the Interim DIP Order, the Vendors believe that the Debtors have also commingled proceeds from the sale of *concession* merchandise and used the cash collateral for their own purposes.  For this reason, the concession Vendors also join in this Limited Objection.

Vendors further submit that the Interim DIP Order and the Debtors' current operating framework provide insufficient clarity and protection with respect to post-petition sales and ongoing vendor relationships. Despite weeks of efforts by undersigned counsel to engage Debtors' counsel in constructive discussions to ensure that Vendors' collateral and proceeds are adequately protected, those negotiations have yielded little meaningful progress. Moreover, several Vendors have reported confusing and inconsistent communications from Debtors'

representatives regarding continued post-petition delivery and sales, including references to the "critical" importance of certain Vendor relationships and assurances of ordinary-course payment terms that have not been honored. Vendors are concerned that, absent clear Court-imposed protections, post-petition sales may continue under a cloud of uncertainty, with proceeds subject to further commingling or dissipation and Vendors left without meaningful adequate protection as required by the Bankruptcy Code. See 11 U.S.C. §§ 363(c)(2), 363(e).

Accordingly, Vendors request that the Final DIP Order: (i) provide that consigned and concession goods and proceeds are excluded from DIP collateral to the extent not property of the estate; (ii) require segregation of consignment and concession proceeds in separate accounts pending adjudication or agreement; and (iii) make clear that nothing in the DIP orders alters substantive rights under applicable non-bankruptcy law. At minimum, Vendors request the exclusionary carve-out.

## II. BACKGROUND

Prior to the Petition Date, each Vendor entered into a consignment or concession relationship with the Debtors under which the Vendor delivered merchandise to the Debtors (or directly to customers) for sale in the ordinary course of the Debtors' retail operations (the "Goods"). Under the applicable arrangements and governing non-bankruptcy law, each Vendor retained ownership of the Goods and/or holds a valid and perfected security interest in the Goods and the proceeds derived from the sale thereof. *See* U.C.C. §§ 9-102(a)(20), 9-319.

The Debtors sold certain Goods prior to the Petition Date, generating proceeds (the "Proceeds"). Vendors maintain continuing rights in such proceeds to the extent provided under applicable non-bankruptcy law. On January 15, 2026, the Court entered the Interim DIP Order. The Interim DIP Order provides an extensive adequate protection package to the Debtors'

prepetition secured lenders, including replacement liens and superpriority claims. *Id.* ¶ 11; *see* 11 U.S.C. §§ 361, 363(e), 364.

By contrast, the Interim DIP Order does not provide consignors with comparable protections. It does not (i) exclude consigned goods and proceeds from DIP collateral, (ii) require segregation or accounting for consignment proceeds, or (iii) provide replacement liens or other adequate protection to preserve Vendors' interests pending adjudication. Instead, it contains only a reservation of rights provision. Interim DIP Order ¶ 27.

Given the Debtors' ongoing retail operations and the ordinary-course sale of merchandise, the absence of segregation or other protective mechanisms creates a material risk that consignment proceeds will be commingled and spent, frustrating Vendors' ability to protect their interests and undermining the protection mandated by section 363(e). *See* 11 U.S.C. § 363(e).

## III. LEGAL STANDARD

### A. Bankruptcy Does Not Expand the Debtors' Property Rights

The commencement of a bankruptcy case does not enlarge the debtor's rights in property. *Stanley v. Trinchard*, 500 F.3d 411, 418 (5th Cir. 2007). Property interests are created and defined by state law, and the bankruptcy estate succeeds only to the debtor's interest in property as of the petition date. *See* 11 U.S.C. § 541(a); *Mission Prod.*, 580 U.S. at 381.

Accordingly, if consigned goods (or their proceeds) are not property of the estate under applicable law, they cannot properly be treated as DIP collateral. *See* 11 U.S.C. §§ 363(a), (c), 364(c), (d); *In re TMT Procurement Corp.*, 764 F.3d 512 (5th Cir. 2014) (vacating DIP financing order, in part, because lower court lacked jurisdiction to authorize liens on property that did not belong to the debtor's estate).

### B. Adequate Protection Is Mandatory Under Section 363(e)

Section 363(e) provides that, upon request of an entity with an interest in property proposed to be used, sold, or leased, the Court "shall prohibit or condition" such use as necessary to provide adequate protection. 11 U.S.C. § 363(e). The word "shall" makes the protection mandatory once the interest-holder requests it. *See* 11 U.S.C. § 102(4) (rules of construction). Adequate protection may take the form of periodic cash payments, additional or replacement liens, or such other relief as will result in the "indubitable equivalent" of the entity's interest. 11 U.S.C. § 361.

Where proceeds are at risk of commingling or dissipation, segregation and restrictions on use are classic methods of conditioning use under section 363(e) to avoid irreparable diminution. *See* 11 U.S.C. § 363(e); *see also In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564–65 (3d Cir. 1994) (adequate protection must be real and sufficient; speculative or illusory protection is inadequate).

### C. DIP Financing Cannot Prime or Impair Existing Interests Without Protection

To the extent the Final DIP Order authorizes liens or superpriority claims that could attach to property in which Vendors hold interests, such relief must comply with the Bankruptcy Code, including the adequate protection requirements of sections 361 and 364(d). *See* 11 U.S.C. § 364(d). Courts reject financing structures that effectively strip or dilute existing interests without providing replacement value. *See Swedeland*, 16 F.3d at 564–65.

### D. Consignors Are Entitled to Protection of Consigned Goods and Proceeds

Courts recognize that consignors holding valid interests are entitled to protection of consigned goods and proceeds and should not be relegated to unsecured status through DIP mechanics. *See In re Valley Media, Inc.*, 279 B.R. 105, 123–24 (Bankr. D. Del. 2002). Consignments are governed by applicable state law, including Article 9 of the Uniform

6

Commercial Code, which addresses consignments and the rights of consignors in inventory and proceeds. See U.C.C. §§ 9-102(a)(20), 9-315, 9-319.

### IV. THE FINAL DIP ORDER SHOULD BE CONDITIONED TO INCLUDE (A) SEGREGATION AND (B) A VENDOR CARVE-OUT

The Interim DIP Order already reflects the principle that certain categories of third-party merchandise and proceeds cannot properly be swept into DIP collateral where such property is not property of the estate. Specifically, it provides that "in no event shall the DIP Collateral include (x) any Concession Merchandise or (y) any proceeds from the sale of any such Concession Merchandise…." Interim DIP Order ¶ 28.

Consigned goods and proceeds should be treated in the same manner. A reservation of rights is not adequate protection under section 363(e). *See* 11 U.S.C. § 363(e). Nor is it sufficient to defer protection until after an evidentiary record is developed, because section 363(e) requires the Court to condition use to prevent diminution while the case proceeds. *See* 11 U.S.C. §§ 361, 363(e).

The risk here is practical and immediate. The Debtors operate retail stores and sell merchandise in the ordinary course. If consigned goods are sold and the proceeds are deposited into general operating accounts and expended, Vendors' interests may be materially diminished or lost, and later monetary damages may be inadequate—particularly where proceeds have been commingled and spent. *See Swedeland*, 16 F.3d at 564–65.

Accordingly, the Final DIP Order should condition the Debtors' use of cash collateral and proceeds by requiring segregation of consignment proceeds in separate accounts, with appropriate reporting and restrictions on use, pending further order of the Court or agreement of the applicable Vendor. Segregation is a tailored form of protection that preserves the status quo and prevents irreparable harm while rights are adjudicated. *See* 11 U.S.C. §§ 361, 363(e).

In addition, the Final DIP Order should expressly exclude consigned goods and proceeds from DIP collateral to the extent such property is not property of the estate under applicable law. This clarification is consistent with *Butner* and ensures that DIP liens do not operate as a de facto recharacterization of third-party property interests. *See Butner v. United States*, 440 U.S. 48, 55 (1979).

At minimum, if the Court is not inclined to impose segregation, it should enter an express consignment carve-out providing that consigned goods and proceeds are excluded from DIP collateral to the extent not property of the estate, and that the Debtors may not use, sell, transfer, or encumber such property absent consent or further order after notice and a hearing. *See* 11 U.S.C. §§ 361, 363(e).

### V. NEIMAN MARCUS CONFIRMS THAT DIP FINANCING CAN PROCEED WHILE EXPRESSLY PRESERVING LIMITATIONS AND CARVE-OUTS

This Court has previously approved DIP financing structures in major retail cases that include express limitations and carve-outs, confirming that robust DIP financing can coexist with clear protections for specific categories of property and proceeds.

In *In re Neiman Marcus Group LTD LLC*, Case No. 20-32519 (DRJ) (Bankr. S.D. Tex.), the Court entered a Final DIP Order authorizing post-petition financing and cash collateral use. Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief, Docket No. 850 (entered June 16, 2020).

The Neiman Marcus DIP Order expressly limited the attachment of adequate protection claims to certain categories of proceeds, providing: "the Adequate Protection Claims shall not attach to (or be payable from) the MyT Causes of Action or the MyT Avoidance Actions Proceeds…." Neiman Marcus DIP Order ¶ 9(h). It likewise made clear that lien priorities were

expressly subject to the carve-out: "each such Lien… shall be subject and subordinate to the Carve Out in all respects." *Id*. at ¶ 10.

These provisions demonstrate that DIP orders routinely include affirmative limitations designed to prevent overreach and to preserve designated rights and priorities. The Vendors do not seek to import Neiman Marcus wholesale, but it confirms that conditioning DIP relief with explicit carve-outs and protections is appropriate, workable, and consistent with this Court's prior practice in large retail cases.

Here, the requested relief is modest by comparison. Vendors ask only that the Final DIP Order (i) preserve the status quo as to consigned goods and proceeds pending adjudication, (ii) require segregation to prevent dissipation, and (iii) at minimum, exclude such property from DIP collateral to the extent it is not property of the estate.

## VI. DEBTORS' UNAUTHORIZED USE AND COMMINGLING OF VENDORS' CASH COLLATERAL REQUIRES IMMEDIATE ADEQUATE PROTECTION

The Vendors' concerns are not hypothetical or merely prospective. The Vendors believe that the Debtors have failed to segregate proceeds from the sale of consigned and concession merchandise both prior to and following entry of the Interim DIP Order, and instead have commingled those proceeds in general operating accounts and used those funds to operate the Debtors' business.

Under applicable consignment and concession agreements and governing non-bankruptcy law, Vendors retained ownership of, and/or valid perfected security interests in, the Goods and the proceeds thereof. See U.C.C. §§ 9-315(a)(2), 9-319. Those proceeds constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code because they are cash proceeds in which Vendors hold an interest. See 11 U.S.C. § 363(a); *In re Delco Oil, Inc.*, 599

F.3d 1255, 1258–59 (11th Cir. 2010) (cash proceeds subject to security interest are cash collateral).

The Bankruptcy Code is unequivocal: a debtor may not use cash collateral unless (i) each entity with an interest in such collateral consents, or (ii) the Court authorizes such use and provides adequate protection. 11 U.S.C. § 363(c)(2). Vendors did not consent to the use of their proceeds. To the extent such proceeds were used without segregation and without adequate protection, that use was unauthorized under section 363(c)(2).

Vendors understand that the Debtors' commingling and use of proceeds has not been limited to consignment proceeds. Despite the express language of the Interim DIP Order excluding concession merchandise and proceeds from DIP collateral— "in no event shall the DIP Collateral include (x) any Concession Merchandise or (y) any proceeds from the sale of any such Concession Merchandise….," Interim DIP Order ¶ 28—Vendors believe that proceeds from concession merchandise likewise have not been segregated and instead have been commingled and expended in operations.

If true, such conduct is in direct tension with both the Interim DIP Order and the Bankruptcy Code's cash collateral protections. The Interim DIP Order recognizes that concession proceeds are not DIP collateral. Yet if those proceeds have been commingled and used in the same manner as consignment proceeds, the practical effect is to collapse the distinction drawn by the Order and to expose Vendors' collateral to the same dissipation risk.

The Debtors cannot now rely on their own failure to segregate to argue that Vendors' interests are diminished or defeated because proceeds are commingled. Article 9 expressly provides that a security interest continues in identifiable proceeds. U.C.C. § 9-315(a)(2). Courts routinely reject attempts to use commingling as a sword against secured creditors. *See Hugo v.*

*United States*, 58 B.R. 903, 908-09 (Bankr. E.D. Mich. 1986); *see also In re Oriental Rug Warehouse Club, Inc.*, 205 B.R. 407, 411–12 (Bankr. D. Minn. 1997) (secured creditor does not lose interest merely because proceeds were commingled).

Permitting the Debtors to expend Vendors' proceeds and then argue that Vendors lack sufficient identification of funds would invert the adequate protection framework of section 363(e), which mandates that the Court "shall prohibit or condition" use as necessary to protect the secured party's interest. 11 U.S.C. § 363(e).

The appropriate remedy for unauthorized use and commingling is not to diminish Vendors' rights, but to impose meaningful adequate protection going forward, including:

1. Immediate segregation of all proceeds from the sale of consigned and concession merchandise;

2. Restrictions on further use absent consent or Court order;

3. A full accounting of proceeds received, transferred, and expended; and

4. Replacement liens or other relief necessary to restore the value of Vendors' collateral to the extent it has been impaired. *See* 11 U.S.C. §§ 361, 363(e).

Vendors further expressly reserve all rights to pursue recovery of proceeds improperly used, to seek surcharge or turnover where appropriate, to assert claims for unauthorized use of cash collateral, and to pursue any other remedies available under the Bankruptcy Code, applicable non-bankruptcy law, or the governing agreements. Nothing in this Limited Objection shall be deemed a waiver of any such rights, claims, or remedies.

Given the Debtors' ongoing retail operations and continued sales activity, immediate conditioning of further use is essential to prevent additional dissipation of Vendors' collateral and to ensure compliance with sections 361 and 363(e) of the Bankruptcy Code.

## VII. DEBTORS' MISLEADING COMMUNICATIONS WITH VENDORS CAUSING UNNECESSARY CONFUSION AND UNCERTAINTY

For weeks, the Vendors have attempted in good faith to resolve these issues consensually. Debtors' counsel, however, has not engaged with the Vendors.

Rather than working toward a negotiated framework, the Debtors have continued operating in a manner that leaves Vendors without clarity regarding the treatment of their collateral, the handling of proceeds, or the protections that will exist pending adjudication of Vendors' rights. This lack of engagement has unnecessarily prolonged uncertainty and increased the risk of further commingling or dissipation of proceeds.

Compounding these concerns, a number of the Vendors have reported confusing and inconsistent communications from the Debtors' buyer representatives regarding the continuation of post-petition business relationships. Debtors' personnel have, in at least one instance, mistakenly referred to Vendors as "critical vendors," despite the fact that no such designation has been made by the Court and no critical vendor relief has been granted with respect to these parties. In another instance, such buyers have promised net 30 payment terms for new shipments and then failed to timely pay the Vendor.

Such communications have created uncertainty and, in some cases, have appeared designed to encourage Vendors to continue supplying goods or participating in post-petition sales based on assurances of payment or priority treatment that may not in fact exist under the Bankruptcy Code or the Court's orders.

The Bankruptcy Code requires transparency and compliance with ordinary course obligations, particularly where the Debtors seek to continue retail operations using property and proceeds in which third parties hold interests. *See* 11 U.S.C. §§ 363(c)(2), 363(e). Vendors should not be placed in the untenable position of being encouraged to support ongoing operations

without clear protections, while simultaneously facing the risk that proceeds will continue to be commingled, expended, or subjected to competing claims.

The continued confusion and uncertainty underscores the need for this Court to impose clear, enforceable protections in the Final DIP Order, including segregation of proceeds, exclusion of Vendors' property from DIP collateral, and an orderly framework governing the treatment of consigned and concession merchandise and proceeds pending further order.

Absent such protections, Vendors may have no choice but to curtail or suspend post-petition dealings with the Debtors, to the detriment of the Debtors' ongoing operations and restructuring efforts.

## VIII. REQUESTED RELIEF

For the foregoing reasons, the Vendors respectfully request that the Court sustain this Limited Objection and condition entry of the Final DIP Order on inclusion of enforceable adequate protection sufficient to preserve Vendors' ownership and secured interests in consigned and concession goods and the proceeds thereof, pending further order of the Court.

Specifically, Vendors request that the Final DIP Order provide:

(a) **Segregation of Proceeds.** The Debtors shall be required to segregate all proceeds from the sale of consigned and concession merchandise into separate accounts, and shall be prohibited from commingling, transferring, or dissipating such proceeds absent the express written consent of the applicable Vendor or further order of the Court after notice and a hearing. See 11 U.S.C. §§ 361, 363(c)(2), 363(e).

(b) **Accounting and Reporting.** The Debtors shall provide an accounting of proceeds received, deposited, transferred, and expended from the sale of consigned and concession goods,

sufficient to permit Vendors and other parties in interest to evaluate the preservation of collateral and compliance with the Bankruptcy Code's cash collateral restrictions.

(c) **Exclusion from DIP Collateral (Minimum Relief).** At a minimum, the Final DIP Order shall expressly provide that consigned and concession goods, and the proceeds thereof, are excluded from DIP Collateral to the extent such property is not property of the Debtors' estates under applicable non-bankruptcy law, and that the Debtors may not use, sell, transfer, or encumber such property absent consent or further order of the Court.

(d) **Reservation of Rights.** Nothing in the Final DIP Order, the Interim DIP Order, or this Limited Objection shall be deemed to waive, prejudice, or impair any rights, remedies, or claims of the Vendors, all of which are expressly reserved, including without limitation the right to seek recovery, turnover, surcharge, adequate protection, replacement liens, or other relief arising from any unauthorized use, commingling, or dissipation of Vendors' cash collateral or proceeds, including with respect to the improper conduct of the Debtors and DIP lenders.

The relief requested is narrowly tailored, preserves the status quo pending adjudication of Vendors' rights, and is necessary to ensure compliance with the Bankruptcy Code's mandatory adequate protection requirements. See 11 U.S.C. §§ 361, 363(e).

## IX. CONCLUSION

For the foregoing reasons, the Vendors respectfully request that the Court sustain this Limited Objection and condition entry of the Final DIP Order on inclusion of the requested consignment carve-out and adequate protection, including segregation of proceeds, or at minimum, exclusion from DIP collateral to the extent not property of the estate.

Dated: February 18, 2026

**JAYARAM LAW**

/s/ John Gravante
John Gravante (S.D.Tx. Fed.
ID No. 3953236)
JAYARAM LAW
3800 NE 1st Ave
Suite 500
Miami, Florida 33137
john@jayaramlaw.com

*Counsel for Dena Kemp, Inc., David Webb
Holdings LLC, Kentshire Galleries, Ltd.,
Walking Tree USA Inc., and Bain Cardet
Holdings d/b/a Matthew Bain Co.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 18, 2026, a true and correct copy of the foregoing was served via the Court's ECF system on those parties entitled to notice through the Court's ECF system.

s/ John Gravante

John Gravante (S.D.Tx. Fed.
ID No. 3953236)