## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SAKS GLOBAL ENTERPRISES LLC, *et al.*,[1] | Case No. 26-90103 (ARP) |
| Debtors. | (Jointly Administered) |

### FINAL ORDER (I) AUTHORIZING SO5 DIGITAL
### DEBTORS TO USE CASH COLLATERAL, (II) GRANTING
### ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS,
### (III) MODIFYING AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the SO5 Digital Debtors, as debtors and debtors in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 503, 506, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 2002-1(b), 4001-1(b), and 9013-1 of the United States Bankruptcy Court for the Southern District of Texas and the Procedures for Complex Chapter 11 Bankruptcy Cases (collectively, the "**Local Rules**"), seeking entry of the first interim order [ECF No. 234] (the "**First Interim Order**"), a second interim order [ECF No. 412] (the "**Second Interim Order**"), a third interim order [ECF No. 701] (the "**Third Interim Order**" and, together with the First Interim

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Saks.  The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281.  The following Debtors are represented by Bradley Arant Boult Cummings LLP: Saks OFF 5TH Holdings, LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner, Inc., and Luxury Outlets USA, LLC (collectively the "**SO5 Digital Debtors**").  The remaining Debtors (collectively, the "**Global Debtors**") are represented by Haynes and Boone, LLP and Willkie Farr & Gallagher LLP.  The term "**Debtors**" as used herein refers collectively to the SO5 Digital Debtors and the Global Debtors.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Order and Second Interim Order, the "***Interim Orders***"), and this final order (the "***Final Order***")

among other things:

a. authorizing the SO5 Digital Debtors to use Prepetition Collateral and Postpetition Collateral[3] (each as defined herein), including all property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code) of the Prepetition Lenders (the "***Cash Collateral***"), that the SO5 Digital Debtors are holding or may obtain, pursuant to sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and 6004 and in accordance with the Approved Budget (as defined herein);

b. authorizing the Prepetition Obligors (as defined herein) to provide adequate protection to the Prepetition Secured Creditors, including with respect to the extent of any Diminution in Value (each as defined herein), which adequate protection shall include certain adequate protection liens, claims, and payments described herein;

---

[3] "***Postpetition Collateral***" means all Prepetition Collateral and all personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Prepetition Obligors (as defined herein), including, without limitation: (i) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock or equivalents of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, cause of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds provided, that the rights or liens granted hereunder shall not interfere with any rights held by a landlord to insurance proceeds for damages to a landlord's property; (ii) all proceeds of leased real property; (iii) the proceeds of actions brought under section 549 of the Bankruptcy Code to recover any postpetition transfer of Postpetition Collateral; and (iv) upon entry of this Final Order, proceeds of the SO5 Digital Debtors ' rights under sections 506(c) (solely to the extent such rights result from the use of the Postpetition Collateral and are, therefore, enforceable against parties other than the Prepetition Secured Creditors) and 550 of the Bankruptcy Code; *provided*, that the term "Postpetition Collateral" shall not include (a) any property or assets of the SO5 Digital Debtors as of the commencement of these Chapter 11 Cases that did not constitute valid, duly perfected Prepetition Collateral at such time (but excluding from this clause (a) any proceeds of duly perfected Prepetition Collateral and any property or assets of the SO5 Digital Debtors acquired after the commencement of these Chapter 11 Cases that are of a type that would have constituted duly perfected Prepetition Collateral), and (b) the proceeds of actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents (the "***Avoidance Actions***") (the assets identified in clauses (a) and (b) of this proviso, the "***Unencumbered Assets***").  Notwithstanding the foregoing, Postpetition Collateral shall not include (i) the Debtors' real property leases (but shall include all proceeds of such leases) and no liens granted pursuant to the Interim Orders or this Final Order shall attach to the Debtors' leasehold interests, and (ii) any security deposits (in possession of the landlord) or the Debtors' interests, if any, in pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents.

c.     approving certain stipulations by the SO5 Digital Debtors with respect to the Prepetition Credit Documents and the Prepetition Collateral (each as defined herein) as set forth herein;

d.     waiving any applicable stay and provisions for immediate effectiveness of the Interim Orders;

e.     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Orders;

f.     granting related relief; and

g.     scheduling a second interim hearing (the "***Second Interim Hearing***"), third interim hearing (the "***Third Interim Hearing***"), and final hearing (the "***Final Hearing***") to consider final approval of the use of Cash Collateral pursuant to this Final Order, as set forth in the Motion filed with this Court (as defined herein).

This Court having considered the interim relief requested in the Motion, the exhibits attached thereto, the declaration of *Declaration Of Andrew D.J. Hede in Support of SO5 Digital Debtors' Chapter 11 Petitions and First Day Pleadings*, filed concurrently with the Motion, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on January 14, 2026 (the "***First Interim Hearing***" and, collectively with the Second Interim Hearing and Third Interim Hearing, the "***Interim Hearings***"), Second Interim Hearing held on January 22, 2026, Third Interim Hearing held on February 6, 2026, and Final Hearing held on February 20, 2026; and notice of the Interim Hearings and Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and all applicable Local Rules; and the Interim Hearings and Final Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by this Court; and it appearing that approval of the final relief requested in the Motion is fair and reasonable and in the best interests of the SO5 Digital Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the SO5 Digital Debtors'

3

businesses and the maximization of the value of the SO5 Digital Debtors' assets; and it appearing

that the SO5 Digital Debtors' use of Cash Collateral in accordance with the provisions of this

Final Order is a sound and prudent exercise of the SO5 Digital Debtors' business judgment; and

after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARINGS AND FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.      _Petition Date_.  On January 14, 2026 (the "**_Petition Date_**"), each of the SO5 Digital

Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the

United States Bankruptcy Court for the Southern District of Texas, Houston Division (the

"**_Court_**").

B.      _Debtors in Possession_.   The SO5 Digital Debtors have continued in the

management and operation of their businesses and properties as debtors in possession pursuant to

sections 1107 and 1108 of the Bankruptcy Code.

C.      _Jurisdiction and Venue_.  This Court has jurisdiction over the Chapter 11 Cases, the

Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and

the _Amended Standing Order of Reference from the United States District Court for the Southern

District of Texas_, dated May 24, 2012.  Venue for the Chapter 11 Cases and proceedings on the

Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[4]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.     *Committee Formation*.  The United States Trustee for the Southern District of Texas (the "***U.S. Trustee***") has appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "***Committee***").

E.     *Notice*.  Notice of the Motion, the Interim Hearings, and the Final Hearing have been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearings and Final Hearing, or the entry of this Final Order shall be required.

F.     *SO5 Digital Debtors' Stipulations*.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 27 herein, the SO5 Digital Debtors, on their behalf and on behalf of their estates (with respect to the estates, without prejudice to the rights of all parties in interest with requisite standing to assert a Challenge on behalf of such estates in accordance with and subject to the limitations set forth in paragraph 27 hereof), admit, stipulate, acknowledge, and agree, as follows (collectively, the admissions, stipulations, acknowledgements, and agreements set forth in this paragraph F, the "***SO5 Digital Debtors' Stipulations***"):

(i)     *Prepetition Secured Obligations*.  Saks OFF 5TH LLC ("***Borrower***"), Saks OFF 5TH Holdings LLC ("***Holdings***" and, together with Borrower and Luxury Outlets USA, LLC, collectively, the "***Prepetition Obligors***"), Callodine Commercial Finance, LLC, as administrative agent and collateral agent (in such capacities, the "***Prepetition Agent***"), for its own benefit and the benefit of the lenders from time to time party under the Prepetition Facility (and together with the Prepetition Agent, the "***Prepetition Lenders***," and together with the Prepetition Agent, the "***Prepetition Secured Creditors***"), are party to that certain *Term Loan Credit*

5

*Agreement*, dated as of August 6, 2021 (as amended, restated, amended and restated, supplemented, replaced, or otherwise modified from time to time, the "***Prepetition Credit Agreement***," and together with the Loan Documents (as defined therein), collectively, the "***Prepetition Credit Documents***," the term loan facility thereunder, the "***Prepetition Facility***"). As of the Petition Date, the Prepetition Obligors were obligated under the Prepetition Credit Agreement to the Prepetition Lenders in the aggregate outstanding principal amount of not less than approximately $20 million, plus all accrued, accruing, and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees, and financial advisors' fees, and related expenses and disbursements), indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, arising, due, owing or chargeable in respect of any of the Prepetition Obligors' obligations pursuant to, or secured by, the Prepetition Credit Documents, in each case constituting "Obligations" (as defined in the Prepetition Credit Agreement) and due and payable pursuant to the terms and conditions of the Prepetition Credit Agreement (the "***Prepetition Secured Obligations***").  The Prepetition Secured Obligations are secured by first priority security interests in and liens (the liens and security interest, the "***Prepetition Liens***") on substantially all assets of the Prepetition Obligors, including the "Collateral" (as defined in the Prepetition Credit Agreement), and all proceeds, products, accessions, rents and profits thereof, in each case whether then owned or existing thereafter acquired or arising (collectively, the "***Prepetition Collateral***"), but excluding the "Excluded Property" (as defined in the Prepetition Credit Documents) and subject only to the Prepetition Permitted Liens (as defined herein).

6

(ii)     *Prepetition Secured Obligations*.    Each of the SO5 Digital Debtors acknowledge that the Prepetition Secured Obligations owing to the Prepetition Secured Creditors, respectively, (a) constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Obligors, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and (b) no portion of the Prepetition Secured Obligations owing to the Prepetition Secured Creditors, respectively, is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, disgorgement, impairment, recovery, subordination (equitable or otherwise), or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the SO5 Digital Debtors' Chapter 11 Cases (collectively, "***Successor Cases***").

(iii)     *Prepetition Liens*.   The SO5 Digital Debtors acknowledge that as of the Petition Date, the Prepetition Liens granted to the Prepetition Secured Creditors (a) constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), non-avoidable, and properly perfected security interests in and liens on the Prepetition Collateral, and were granted to, or for the benefit of, the applicable Prepetition Secured Creditors for fair consideration and reasonably equivalent value, (b) are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, and (c) are senior in priority over any and all other security interests in and liens on the Prepetition Collateral; *provided* that the Prepetition Liens are subject to certain liens senior by

7

operation of law (solely to the extent such liens were valid, non-avoidable, and senior in priority

to the Prepetition Liens as of the Petition Date and properly perfected prior to the Petition Date or

perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code)

or otherwise permitted by the Prepetition Credit Documents (the "***Prepetition Permitted Liens***").

        (iv)   <u>*No Challenges / Claims*</u>.   No offsets, causes of action, challenges,

objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens

or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition

Secured Obligations is subject to any challenge or defense including, without limitation,

avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or

otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The SO5 Digital

Debtors and their estates have no valid Claims (as such term is defined in section 101(5) of the

Bankruptcy Code), objections, challenges, causes of action, and/or choses in action against any of

the Prepetition Secured Creditors or any of their respective affiliates, agents, attorneys, advisors,

professionals, officers, directors, and employees with respect to the Prepetition Credit Documents,

the Prepetition Secured Obligations, the Prepetition Liens, or otherwise, whether arising at law or

at equity, including, without limitation, any challenge, recharacterization, subordination,

avoidance, recovery, disallowance, disgorgement, reduction, or other claims arising under or

pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy

Code or applicable state law equivalents.  The Prepetition Secured Obligations constitute allowed,

secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code, and the

aggregate value of the Prepetition Collateral exceeds the amount of the "Obligations" arising under

and as defined in the Prepetition Credit Agreement.  The SO5 Digital Debtors have waived,

8

discharged, and released any right to challenge any of the Prepetition Secured Obligations, the priority of the Prepetition Obligors' obligations thereunder, and the validity, extent, and priority of the Prepetition Liens.

(v)     *Cash Collateral*.  All of the Prepetition Obligors' cash, including, without limitation, the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral within the meaning of section 363(a) of the Bankruptcy Code and is Prepetition Collateral of the Prepetition Secured Creditors.

(vi)    *No Control*.  None of the Prepetition Lenders or the Prepetition Agent controls the SO5 Digital Debtors or their operations, has authority to determine the manner in which any of the SO5 Digital Debtors' operations are conducted or is a control person or "insider" (as defined in section 101(31) of the Bankruptcy Code) of the SO5 Digital Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Interim Orders, the Prepetition Secured Obligations, and/or the Prepetition Credit Documents.

(vii)   *Release*.  Each of the SO5 Digital Debtors, on their own behalf and on behalf of each of their past, present, and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably releases, discharges, and acquits each of the Prepetition Agent, the other Prepetition Secured Creditors, solely in their capacities as such, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, advisors, sub-fund advisors, and collateral managers, and each of their

9

respective heirs, predecessors, successors, and assigns (collectively, the "***Released Parties***") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), actions, suits, controversies, proceedings, losses, damages, injuries, debts, liens, actions, judgments, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, pending, or threatened, arising under, in connection with, or relating to the Prepetition Secured Obligations or the Prepetition Credit Documents, including, without limitation: (a) any so-called "lender liability" or equitable subordination claims or defenses; (b) Claims and causes of action arising under the Bankruptcy Code; and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Secured Obligations, the Prepetition Credit Documents, or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Secured Obligations that the SO5 Digital Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of the First

10

Interim Order; provided, that nothing in this Final Order shall release any Released Party from any claim arising from such Released Party's gross negligence, fraud, or willful misconduct.

G.    *Findings Regarding the Use of Cash Collateral*.

(i)    *Request for Use of Cash Collateral*.  The SO5 Digital Debtors seek authority on a final basis to use Cash Collateral on the terms described herein to administer the Chapter 11 Cases and fund operations.

(ii)    *Consent to Use of Cash Collateral*.  The Prepetition Lenders have either consented, or are deemed to consent, to the SO5 Digital Debtors' use of the Cash Collateral and to the subordination of the Prepetition Liens to the Carve Out on the terms and conditions set forth in this Final Order.

(iii)    *Immediate Need for Use of Cash Collateral*.  The SO5 Digital Debtors' immediate need to use Cash Collateral as provided for herein is necessary and critical in order to enable the SO5 Digital Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the SO5 Digital Debtors to finance their operations, to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, to protect the value of their assets, and to otherwise finance their operations requires the use of Cash Collateral, the absence of which would immediately and irreparably harm the SO5 Digital Debtors, their estates and parties in interest.  The SO5 Digital Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the use of Cash Collateral.

(iv)    *Adequacy of the Approved Budget*.  The SO5 Digital Debtors have prepared and delivered to the Prepetition Agent, a budget, a summary copy of which is attached as **Exhibit 3**

11

hereto (as the same may be modified from time to time consistent with the terms of this Final Order, and once approved by the Prepetition Agent, the "*Approved Budget*") (it being understood that the budget summarized on __Exhibit 3__ hereto has already been so approved)).  The Approved Budget has been reviewed by the SO5 Digital Debtors, their management, and their advisors.  The SO5 Digital Debtors, their management, and their advisors believe the Approved Budget and the estimate of administrative expenses due or accruing during the period covered by the Approved Budget were developed using reasonable assumptions.  As a condition to the authorization to use Cash Collateral, the Prepetition Agent requires, and the SO5 Digital Debtors have agreed, that proceeds of Cash Collateral (including from Postpetition Collateral) shall be used in a manner consistent with the terms and conditions of this Final Order and in accordance with the Approved Budget (subject to Permitted Variances (as defined herein)).

H.     *Adequate Protection*.  Until such time as the Prepetition Secured Obligations are Paid in Full,[5] the Prepetition Lenders are entitled to receive adequate protection pursuant to sections 361, 362 and 363 of the Bankruptcy Code and as set forth in this Final Order resulting from, among other things:  (i) the use of the Prepetition Collateral; (ii)  the use, sale, lease, or depreciation or other Diminution in Value of the Prepetition Collateral; and/or (iii) the imposition of the automatic stay under the Bankruptcy Code.  The terms of the adequate protection being

---

[5]     "*Paid in Full*" means the indefeasible repayment in full in cash of all obligations (including principal, interest, fees, prepayment premiums, expenses, indemnities, other than contingent indemnification obligations for which no claim has been asserted) under the Prepetition Credit Documents and this Second Interim Order.  No facility or its obligations thereunder shall be deemed to have been Paid in Full until such time as, (a) with respect to the applicable facility, the Challenge Deadline (as defined herein) shall have passed without the timely and proper commencement of a Challenge, or, if a Challenge is timely and properly asserted prior to the Challenge Deadline, upon the final, non-appealable disposition of such Challenge, (b) any and all applicable adequate protection payments (including the applicable Adequate Protection Payments (as defined herein)) have been made, and (c) a countersigned payoff letter has been received by the Prepetition Agent in form and substance satisfactory to the Prepetition Agent, in its reasonable discretion.

provided reflect the SO5 Digital Debtors' prudent exercise of business judgment and constitute a reasonable compromise for the use of the Prepetition Collateral.  As adequate protection, the Prepetition Lenders shall receive, among other things, the Adequate Protection Liens (as defined herein) to secure the applicable Prepetition Secured Obligations, the Adequate Protection Superpriority Claims with respect to the applicable Prepetition Secured Obligations, and the Adequate Protection Payments (as defined herein), as applicable.

I.      *Sections 506(c) and 552(b)*.  The SO5 Digital Debtors have agreed as a condition to the use of Cash Collateral that as a material inducement to the Prepetition Agent consent to the use of Cash Collateral, and in exchange for the consensual use of Cash Collateral consistent with the Approved Budget (subject to Permitted Variances) and the terms of this Final Order, subject to and upon entry of this Final Order, the Prepetition Lenders and Prepetition Agent are entitled to receive (i) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code; (ii) a waiver of unjust enrichment and similar equitable relief as set forth below; and (iii) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

J.      *Good Faith*.  The terms and conditions of this Final Order: (a) are fair, reasonable, and the best available to the SO5 Digital Debtors under the circumstances; (b) reflect the SO5 Digital Debtors' exercise of prudent and sound business judgment consistent with their fiduciary duties; and (c) are supported by reasonably equivalent value and consideration.  The use of Cash Collateral was negotiated in good faith and at arm's length among the SO5 Digital Debtors and the Prepetition Secured Creditors.

K.      *Prepetition Permitted Liens*.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Permitted Lien is valid, senior, enforceable, prior, perfected,

13

or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to, the SO5 Digital Debtors, the Prepetition Secured Creditors, or any Committee, to challenge the validity, priority, enforceability, seniority, perfection, or extent of any alleged Prepetition Permitted Lien and/or security interests.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Prepetition Permitted Lien and is expressly subject to the Prepetition Liens.

L.    *Good Cause*.  Good cause has been shown for the entry of this Final Order.  The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the SO5 Digital Debtors, their creditors, and their estates, as its implementation will, among other things, provide the SO5 Digital Debtors with the necessary liquidity to: (a) minimize disruption to the SO5 Digital Debtors' businesses and on-going operations; (b) preserve and maximize the value of the SO5 Digital Debtors' estates for the benefit of all the SO5 Digital Debtors' creditors; and (c) avoid immediate and irreparable harm to the SO5 Digital Debtors, their creditors, their businesses, their employees, and their assets.

M.    *Immediate Entry*.  Good and sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the Motion and the record before this Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.    Motion Granted; Cash Collateral Use Approved.  The Motion is granted on a final basis, and the use of Cash Collateral on a final basis is authorized, subject to the terms and conditions set forth in this Final Order.

14

2.      Objections Overruled.   Any objections to this Final Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.

**Authorization to Use Cash Collateral**

3.      Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Order, the SO5 Digital Debtors are authorized to use Cash Collateral in accordance with the Approved Budget (subject to Permitted Variances) until the earlier of (A) 11:59 PM (CT) on May 22, 2026 (unless extended with the consent of the Prepetition Agent), (B) the date the Prepetition Secured Obligations have been Paid in Full or (C) the expiration of the Remedies Notice Period (as defined herein); provided, however, that during the Remedies Notice Period, the SO5 Digital Debtors may use Cash Collateral solely to meet payroll obligations (other than severance), if any, sales taxes, and pay expenses that are critical to keeping the SO5 Digital Debtors' business operating and administering the SO5 Digital Debtors' estates subject to the Approved Budget, or otherwise with the express written consent of the Prepetition Agent.  Nothing in this Final Order shall authorize the disposition of any assets of the SO5 Digital Debtors or their estates outside the ordinary course of business, or any of the SO5 Digital Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Final Order with the consent of the Prepetition Agent, and in accordance with the Approved Budget (subject to Permitted Variances) and to repay the Prepetition Secured Obligations.

4.       Use of Cash Collateral in Connection with Intercompany Claims. Any payments made by the Global Debtors for the benefit of or otherwise allocable to the SO5 Digital Debtors shall be governed by the following provisions:

> (a)      **Payment Authority.** The Global Debtors may make payments for the benefit of or allocable to the SO5 Digital Debtors in accordance with the Approved Budget set forth in the Global Debtors' DIP Orders, but only to the extent that the

15

SO5 Digital Debtors timely remit weekly payments to the Global Debtors (the "***OSA Weekly Payments***") in accordance with the Approved Budget adopted pursuant to this Final Order, or as such OSA Weekly Payments may be amended with the prior written consent of the Global Debtors (acting solely with the prior written consent of the Required SGUS DIP Lenders (as defined in the Global Debtors' DIP Orders)) and the Committee.

(b)      **No Administrative Claim if Current.** So long as the SO5 Digital Debtors make the OSA Weekly Payments in accordance with the Approved Budget under this Final Order, the Global Debtors shall not be entitled to assert an administrative priority claim against the SO5 Digital Debtors on account of any services provided, or any payments made by, the Global Debtors for the benefit of or allocable to the SO5 Digital Debtors.

(c)      **Events of Default; Reservation of Rights.** If the SO5 Digital Debtors (i) modify the Approved Budget as to the OSA Weekly Payments without the prior written consent of the Global Debtors (acting solely with the prior written consent of the Required SGUS DIP Lenders) and the Committee, or (ii) fail to make any OSA Weekly Payment as and when due under this Final Order and do not cure such failure within three (3) business days, then:

    (i)   the rights of all parties in interest shall be fully reserved with respect to any amounts that may be allocable to the SO5 Digital Debtors;

    (ii)  the Global Debtors may suspend further payments or services for the benefit of or allocable to the SO5 Digital Debtors pending emergency relief from the Court; and

    (iii) the Global Debtors shall be entitled to assert an administrative priority claim against the SO5 Digital Debtors for any services provided or payments made by the Global Debtors for the benefit of or allocable to the SO5 Digital Debtors on or after the date of such default and prior notice to cure.

(d)      **Material Change in Circumstances.** After reasonable advance notice to proposed counsel to the Committee, the Global Debtors may seek relief from the Court to modify the OSA Weekly Payments only upon a showing that (i) the actual costs incurred by the Global Debtors for services provided or payments made for the benefit of or allocable to the SO5 Digital Debtors have increased by more than 20% over any two-week period as compared to the Approved Budget, and (ii) such increase was not reasonably foreseeable at the time of entry of this Final Order; provided, that the requirement set forth in the foregoing clause (ii) that an increase not be reasonably foreseeable shall not be applicable where a party in interest seeks to modify OSA Weekly Payments for any period beyond that contemplated by the

4900-7400-7696.1

current Approved Budget.  Any motion seeking modification under this subsection (d) shall be made on not less than seven-days' notice and shall include a detailed accounting of actual costs incurred versus budgeted amounts, with supporting documentation.  Pending resolution of any such motion, the Global Debtors shall continue to make payments and provide services in accordance with the then-current Approved Budget, and the SO5 Digital Debtors shall continue to make the OSA Weekly Payments as scheduled.  Nothing in this subsection (d) shall limit the rights of the SO5 Digital Debtors or the Committee to dispute the allocation methodology or the reasonableness of any costs claimed by the Global Debtors.

(e)     The SO5 Digital Debtors are authorized and directed to release to the Global Debtors all funds previously deposited in the Intercompany Claim Escrow (as defined and provided in the Interim Orders).

### Adequate Protection Provisions

5.     As adequate protection for the interest of the Prepetition Secured Creditors in the Prepetition Collateral (including Cash Collateral) on account of, among other things, the granting of the subordination, as applicable, of the Prepetition Liens to the Carve Out, the SO5 Digital Debtors' use of Cash Collateral, and any other diminution in value arising out of the imposition of the automatic stay or the SO5 Digital Debtors' use, sale, lease, depreciation, or disposition of the Prepetition Collateral and Cash Collateral during the pendency of the Chapter 11 Cases, (collectively, "***Diminution in Value***"), the Prepetition Secured Creditors shall receive adequate protection as follows:

(a)     *Adequate Protection Liens*.  To the extent of any Diminution in Value, the Prepetition Agent (for the benefit of itself and the other Prepetition Lenders) is hereby granted, pursuant to sections 361 and 363(e) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable and perfected replacement and additional postpetition security interests in, and liens on the Postpetition Collateral and the Unencumbered Assets (the "***Adequate Protection Liens***"), which shall be subject to the Carve Out.  Subject to paragraph 32, the Prepetition Agent and the

17

Prepetition Lenders shall use reasonable efforts to exhaust remedies and collect from Postpetition Collateral other than from proceeds of Unencumbered Assets first before turning to proceeds of Unencumbered Assets.

(i)       The Adequate Protection Liens shall be: (A) deemed to be valid, binding, non-avoidable, enforceable, and fully perfected as of the Petition Date; and (B) in all instances, subject to the Carve Out.  Other than as set forth herein, until the Prepetition Secured Obligations have been Paid in Full, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases.  The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.  No lien or interest avoided and preserved for the benefit of any Debtor's estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

(ii)       *Priority of Adequate Protection Liens*.  Subject to the terms of this Final Order, the Adequate Protection Liens shall be payable from and have recourse to all Postpetition Collateral and Unencumbered Assets, other than the Professional Fee Reserve Account (as defined herein), and otherwise subject to the Carve Out.

(b)       *Adequate Protection Payments*.  All claims (including interest and fees) arising or related to the Prepetition Secured Obligations shall continue to accrue and be paid in cash at the applicable default contract rate of interest through the Chapter 11 Cases in accordance

18

with the Prepetition Credit Documents until such time as the Prepetition Secured Obligations are Paid in Full.  The Prepetition Agent shall be entitled to the payment of all reasonable and documented fees, out-of-pocket costs and expenses and charges of the advisors to the Prepetition Agent (including, without limitation, Morgan, Lewis & Bockius LLP and Bracewell LLP (collectively, the "*Agent Advisors*")), in each case in accordance with the procedures set forth in paragraph 14 hereof (collectively, the "*Adequate Protection Payments*"); *provided*, *however*, that notwithstanding the foregoing, the  Prepetition Obligors are authorized and directed to indefeasibly pay upon the entry of the First Interim Order the fees and expenses of the Agent Advisors that accrued prior to and were unpaid as of the date of entry of the First Interim Order without the need for such Agent Advisors to deliver an invoice as set forth herein.

(c)       *Adequate Protection Superpriority Claims.*

(i)       *Superpriority Claims of the Prepetition Secured Creditors*.  To the extent of any Diminution in Value, as further adequate protection of the interests of the Prepetition Agent and the other Prepetition Secured Creditors with respect to the Prepetition Secured Obligations, the Prepetition Agent (for the benefit of itself and the other Prepetition Lenders) is hereby granted an allowed administrative claim against the  Prepetition Obligors' estates under section 503 of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the  Prepetition Obligors and their estates of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 726, 1113, and 1114 of the Bankruptcy Code, as provided       for       by       section       507(b)       of       the       Bankruptcy       Code       (the

19

"***Adequate Protection Superpriority Claims***"), to the extent that the Adequate Protection Liens do not adequately protect against any Diminution in Value of the Prepetition Agents' interests in the Prepetition Collateral.

        (ii)    *Priority of Adequate Protection Superpriority Claims*.  Subject to the terms of this Final Order, the Adequate Protection Superpriority Claims shall be payable from and have recourse to all Postpetition Collateral and Unencumbered Assets, other than the Professional Fee Reserve Account (as defined herein), and otherwise subject to the Carve Out.

        (d)    *Reservations of Rights*.  Nothing contained herein shall impair or modify the Prepetition Secured Creditors' rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Creditors in the Interim Orders or this Final Order is insufficient to compensate for the Diminution in Value of the interest of the Prepetition Secured Creditors in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases.  Nothing contained in the Interim Orders or this Final Order shall be construed as an admission as to the extent of any Diminution in Value, if any, in the interest of any Prepetition Secured Creditors in the Prepetition Collateral and nothing shall impair or modify the rights of any party to contest any assertion of Diminution in Value or contest any request for additional adequate protection.

### Provisions Common to Use of Cash Collateral Authorizations

    6.    <u>Approved Budget, Testing, and Permitted Variances</u>.

        (a)    *Approved Budget.*  The Approved Budget and any modification to, or amendment or update of, the Approved Budget shall be in form and substance acceptable to the Prepetition Agent and the SO5 Digital Debtors.  The Approved Budget shall be updated, modified or supplemented by the SO5 Digital Debtors on or before fourteen (14) days following the Petition

20

Date and, thereafter, not less than every four (4) weeks unless otherwise agreed to by the SO5 Digital Debtors and the Prepetition Agent.  Each such updated, modified or supplemented budget shall be in form and substance acceptable to the Prepetition Agent (and a copy of each such budget shall be provided to the Committee contemporaneously with delivery to the Prepetition Agent), and no such updated, modified or supplemented budget shall be effective until so approved (electronic mail to counsel for the SO5 Digital Debtors being sufficient) and once approved shall be deemed the Approved Budget; *provided*, *however*, that, in the event that the Prepetition Agent and the SO5 Digital Debtors cannot agree as to a new Approved Budget, the prior Approved Budget shall remain in full force and effect unless and until a new Approved Budget has been approved by the Prepetition Agent.  The Approved Budget shall depict, on a weekly basis and line item basis (1) projected cash receipts, (2) projected cash disbursements (including ordinary course operating expenses, capital expenditures, bankruptcy-related expenses and certain other fees and expenses, and including expenses relating to the Interim Orders), (3) net cash flow, (4) total available liquidity, and (5) professional fees and disbursements with respect to the SO5 Digital Debtors' professionals and other estate professionals, for the first two (2) week period from the Petition Date and, following such period, each four (4) week period thereafter.

(b)    *Borrowing Base*.  Until the Prepetition Secured Obligations have been Paid in Full, the Borrowing Base Certificate (as defined in the Prepetition Credit Agreement) shall be updated and delivered weekly to the Prepetition Agent.

(c)    *Reporting*.  No less than twice a week, and at the reasonable request of the Prepetition Agent, the SO5 Digital Debtors shall consult with the Prepetition Agent regarding the SO5 Digital Debtors' ongoing sale operations.  All reporting provided to the Prepetition Agent

pursuant to this Final Order or in connection with the Prepetition Secured Obligations shall be provided contemporaneously to the Committee.

(d)     *Permitted Variances.*  The SO5 Digital Debtors (1) shall not, without the consent of the Prepetition Agent, permit (i) the actual non-operating disbursements for any one week period to exceed 110% of the aggregate non-operating disbursements set forth in the Approved Budget for such period, and (ii) the actual operating disbursements for any one week period to exceed 110% of the aggregate operating disbursements set forth in the Approved Budget, and (2) shall not, without the consent of the Prepetition Agent, following the Second Interim Hearing and entry of the Second Interim Order, permit the actual total cash receipts for any one-week period (beginning the first full week after the Petition Date) to be less than 90% of the total cash receipts set forth in the Approved Budget for such period (collectively, the "***Permitted Variances***").  Notwithstanding the foregoing, any line-item variance shall be permitted so long as the aggregate category variance is within the Permitted Variances, and for purposes of testing compliance with subsequent Permitted Variances, unused budgeted disbursement amounts from any measurement period may be carried forward to subsequent periods.

(e)     *Variance Testing.*  The SO5 Digital Debtors shall, commencing with the first week after the Petition Date, deliver to the Prepetition Agent and the Committee, by not later than Wednesday of each week, a certificate (in form and substance acceptable to the Prepetition Agent) showing a reconciliation for the prior week period, and certifying that (i) the SO5 Digital Debtors are in compliance with the covenants and requirements contained in this Paragraph 6 and (ii) to the knowledge of the SO5 Digital Debtors, no Cash Collateral Termination Event has

22

occurred, or, if such a Cash Collateral Termination Event has occurred, specifying the nature and extent thereof and any corrective action taken or proposed to be taken with respect thereto.

7.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to permit the SO5 Digital Debtors to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claims.

8.    <u>Perfection of Adequate Protection Liens</u>.

(a)    The Interim Orders and this Final Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the Adequate Protection Liens and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, execution, filing, registration, recording, or possession of the Postpetition Collateral or Unencumbered Assets, or other act to validate or perfect such security interest or lien, including, without limitation, entering into any control agreements with any financial institution(s) party to a control agreement or other depository account consisting of Postpetition Collateral or Unencumbered Assets or requirement to register liens on any certificates of title (a "***Perfection Act***"). Notwithstanding the foregoing, if the Prepetition Agent shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, then the Prepetition Agent is authorized to perform such act, and the SO5 Digital Debtors are authorized and directed to perform such act to the extent necessary, which act or acts shall be deemed to have been accomplished as of the date and time of entry of the First Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file,

23

or record any document in regard to such act in accordance with applicable law. The Prepetition Agent may choose to file, record, or present a certified copy of one or more of the Interim Orders in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copies of the Interim Orders in accordance with applicable law. Should the Prepetition Agent so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of the Interim Orders and this Final Order.

(b)     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security interests granted and created by the Interim Orders and this Final Order (including the Adequate Protection Liens) or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of this Court; *provided, however,* that nothing herein shall excuse the SO5 Digital Debtors from payment of any local fees, if any, required in connection with such liens under the terms of the Prepetition Credit Documents. By virtue of the terms of the Interim Orders and this Final Order, to the extent that the Prepetition Agent has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Prepetition Obligors, such filings shall be deemed to properly perfect its liens and security interests

24

granted and confirmed by the Interim Orders and this Final Order without further action by the Prepetition Agent.

9.     <u>Application of Proceeds of Postpetition Collateral</u>.  The SO5 Digital Debtors shall apply the proceeds of Postpetition Collateral in accordance with the terms of the Approved Budget (including with respect to the application of such proceeds to the Prepetition Secured Obligations) and this Final Order.  In addition, and notwithstanding anything to the contrary herein, but subject to paragraph 27 of this Final Order, the Carve Out and the Prepetition Permitted Liens, the SO5 Digital Debtors shall repay the Prepetition Secured Obligations (A) in the amount of $2,500,000 within two (2) business days after entry of the First Interim Order, (B) to the extent the SO5 Digital Debtors' cash balance (illustrated as the "Ending Bank" line item in the Approved Budget) is (i) in excess of $7,500,000 at the end of any week (beginning with the first full week after the Petition Date until entry of the Second Interim Order) (ii) following the entry of the Second Interim Order, to the extent the SO5 Digital Debtors' cash balance (illustrated as the "Ending Bank" line item in the Approved Budget) is in excess of $5,000,000 at the end of any week (beginning with the week after the Second Interim Hearing), and (iii) following the entry of the Final Order, to the extent the SO5 Digital Debtors' cash balance (illustrated as the "Ending Bank" line item in the Approved Budget) is in excess of $4,000,000 *plus* (x) the liability owed for sales of Postpetition Consigned Merchandise in the prior week (which proceeds, to the extent of a Postpetition Consignor's interests in the sale of Postpetition Consigned Merchandise (such proceeds, excluding any proceeds of consignment merchandise to which the SO5 Digital Debtors are entitled to receive and retain under any Postpetition Consignment Agreements (as defined below), the "***Consignment Proceeds***"), shall be solely for the benefit of such Postpetition Consignor and paid to such

25

Postpetition Consignor in accordance with the Approved Budget) and (y) proceeds of the Settlement Payments[6] (if received) on hand at the end of any week (beginning with the week after the Final Hearing), with each such payment to be made on the first business day following such week (until such obligations have been reduced to zero or Paid in Full); *provided* that any such payment shall be subject to Challenge as provided in paragraph 27 herein; *provided further* that the application of the proceeds of the Settlement Payments shall be in accordance with paragraph 32 herein. The SO5 Digital Debtors shall not, directly or indirectly, voluntarily purchase, redeem, defease, or prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the Prepetition Secured Obligations, the Adequate Protection Payments required under the Interim Orders or this Final Order, and obligations authorized by an order of this Court (which may include, without limitation, obligations secured by Prepetition Permitted Liens).

10.   <u>Proceeds of Subsequent Financing</u>.  If the SO5 Digital Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in the Chapter 11 Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code at any time prior to the Prepetition Secured Obligations having been Paid in Full, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to any or all of the SO5 Digital Debtors and the SO5 Digital Debtors ' estates, then the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition Agent to be applied as set forth in paragraph 9 herein.

---

[6] The term "Settlement Payments" as used herein is defined in the *Debtors' Joint Motion for Order (I) Approving and Authorizing Debtors' Entry Into Settlement Agreements with the Interchange Defendants and (II) Granting Related Relief* [ECF No. 642].

26

11.    <u>Maintenance of Postpetition Collateral and Prepetition Collateral</u>.   Until the Prepetition Secured Obligations have been Paid in Full, the SO5 Digital Debtors shall: (a) insure the Prepetition Collateral and the Postpetition Collateral as required under the Prepetition Credit Documents; and (b) maintain the cash management system in effect as of the Petition Date or as otherwise agreed to by the Prepetition Agent (subject to this Final Order and any orders of this Court in respect of the cash management system).

12.    <u>Events of Default</u>.   The failure of the Prepetition Obligors to comply with the "Milestones" on **Exhibit 2** hereto, or the occurrence of any of the events of default listed on **Exhibit 1** hereto, shall each constitute an "Event of Default" and a "Cash Collateral Termination Event" under this Final Order.

13.    <u>Rights and Remedies Upon Event of Default</u>.   Immediately upon the occurrence and during the continuation of an Event of Default or a Cash Collateral Termination Event, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from this Court, but subject to the terms of this Final Order, including, without limitation, the funding of the Carve Out and the Remedies Notice Period (as defined herein), the Prepetition Agent may declare (the "***Termination Declaration***," and the date of such Termination Declaration, the "***Termination Declaration Date***") (A) all Prepetition Secured Obligations (and applicable Adequate Protection Payments and applicable Adequate Protection Superpriority Claims) to be immediately due and payable, (B) that the application of the Carve Out has occurred through delivery of the Carve Out Trigger Notice (as defined below), and (C) a termination, reduction, or restriction on the ability of the SO5 Digital Debtors to use Postpetition Collateral, including, without limitation, the Postpetition Collateral (except as

27

otherwise provided in this Second Interim Order or the Prepetition Credit Documents). Any Termination Declaration shall not be effective until notice has been provided by electronic mail (or other electronic means) to counsel to the SO5 Digital Debtors, counsel to any Committee and the U.S. Trustee. The Prepetition Agent shall be entitled to file a motion with the Court seeking emergency relief from the automatic stay (the "***Stay Relief Motion***") on at least five (5) business days' written notice to counsel to the SO5 Digital Debtors, the U.S. Trustee, and counsel to the Committee (such five business day period, the "***Remedies Notice Period***"); *provided, however*, that during the Remedies Notice Period, the SO5 Digital Debtors and/or the Committee shall be entitled to seek an emergency hearing from the Court regarding any Termination Declaration, a request for use of Cash Collateral, or any other similar relief, and upon and after the delivery of the Termination Declaration, the Prepetition Agent is deemed to have consented to such emergency hearing. At the hearing on the Stay Relief Motion or any relief sought by the SO5 Digital Debtors and/or the Committee, the Court may fashion an appropriate remedy. For the avoidance of doubt, the Prepetition Agent may only enter upon leased premises of the SO5 Digital Debtors after an Event of Default or Cash Collateral Termination Event in accordance with (1) a separate written agreement among the Prepetition Agent and the applicable landlord for the leased premises, (2) pre-existing rights of the Prepetition Agent under applicable non-bankruptcy law, (3) written consent of the applicable landlord for the leased premises, or (4) entry of an order by this Court approving such access to the leased premises after notice and an opportunity to be heard for the applicable landlord for the leased premises.

14. <u>Prepetition Agent Expenses</u>. Counsel and/or professionals to the Prepetition Agent seeking payment pursuant to and in accordance with this Final Order shall each deliver an invoice

in summary form (which shall not be required to include time entry detail, but shall include a general description of the nature of the matters for which services were performed, and may be redacted for privileged information; *provided*, *however*, that the U.S. Trustee and any Committee reserve their rights to request additional detail regarding the services rendered and expenses incurred by such professionals) to the SO5 Digital Debtors, counsel to the SO5 Digital Debtors, the U.S. Trustee, and counsel to any Committee.  If no written objection is received by 5:00 p.m., prevailing Eastern Time, on the date that is ten (10) days after delivery of such invoice to the SO5 Digital Debtors, counsel to the SO5 Digital Debtors, the U.S. Trustee, and counsel to any Committee (the "***Review Parties***"), the SO5 Digital Debtors shall promptly pay such fees and expenses in full.  If an objection is timely received from a Review Party, the SO5 Digital Debtors shall promptly pay the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Counsel and/or professionals to the Prepetition Agent shall not be required to file applications or motions with, or obtain approval of, this Court for the payment of any of its fees or out-of-pocket expenses (other than with respect to disputed amounts).  Payments of any amounts set forth in this paragraph are not subject to avoidance, subordination, or disgorgement (and payments of any amounts to the Agent Advisors are not subject to, or capped by, the Approved Budget).

15.    <u>Proofs of Claim</u>.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases, neither the Prepetition Agent or any of the Prepetition Secured Creditors shall be required to file proofs of claim in the Chapter 11 Cases or any Successor Cases in order to assert claims for payment of any

of the Prepetition Secured Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts payable, whether accrued prepetition or postpetition, under the Prepetition Credit Documents, the Interim Orders, or this Final Order.  None of the Prepetition Secured Creditors will be required to file proofs of claim or requests for approval of administrative expenses in any of the Chapter 11 Cases or Successor Cases, and the provisions of the Interim Orders and this Final Order relating to the relevant Adequate Protection Superpriority Claims, the Prepetition Secured Obligations and the SO5 Digital Debtors' Stipulations shall constitute timely filed proofs of claim and/or administrative expense requests (as applicable) in each of the Chapter 11 Cases.

16.     Carve Out.

(a)     *Priority of Carve Out.*  Each of the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve Out.  The Carve Out shall be senior to all claims and liens over all assets of the SO5 Digital Debtors, including any Postpetition Collateral or Unencumbered Assets (other than the Consignment Proceeds).

(b)     *Definition of Carve Out.*  As used in this Second Interim Order, the "***Carve Out***" means the sum of (i) all fees required to be paid to the Clerk of this Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable Court-allowed fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, but subject in all instances to and capped by the

30

Approved Budget, all unpaid fees and expenses, other than any restructuring, sale, success, or other transaction fee (the "***Allowed Professional Fees***") incurred by Persons or firms retained by the SO5 Digital Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "***Debtor Professionals***") and the Committee appointed pursuant to section 328 or 1103 of the Bankruptcy Code in the SO5 Digital Debtors' cases (the "***Committee Professionals***" and, together with the Debtor Professionals, the "***Professional Persons***") at any time before or on the first Business Day following delivery by the Prepetition Agent of a Carve Out Trigger Notice, whether allowed by this Court prior to or after delivery of a Carve Out Trigger Notice (the amounts set forth in clauses (i) through (iii), the "***Pre-Carve Out Trigger Notice Cap***"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $385,000 incurred on and after the first Business Day following delivery by the Prepetition Agent of a Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in clauses (iv) being the "***Post-Carve Out Trigger Notice Cap***").   For purposes of the foregoing, "***Carve Out Trigger Notice***" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Agent to the SO5 Digital Debtors, their restructuring counsel, the U.S. Trustee, and counsel to the Committee, which notice may be delivered only following the occurrence and during the continuation of an Event of Default or Cash Collateral Termination Event on the Termination Declaration Date.

(c)      ***Professional Fee Reserve Account.*** Commencing with the first full week after the Petition Date, and on or before the Thursday of each week thereafter until the Termination Declaration Date, the SO5 Digital Debtors shall deposit and hold an amount equal to the sum of the aggregate amount of outstanding and unpaid Allowed Professional Fees contemplated to be

31

incurred through the current week under the Approved Budget in a segregated account designated by the SO5 Digital Debtors, exclusively for the payment of unpaid Allowed Professional Fees, and not subject to (i) the control of the Prepetition Agent, (ii) any liens in favor of the Prepetition Secured Creditors, or (iii) any and all other liens, security interests, or claims that may be asserted against the SO5 Digital Debtors, to pay such Allowed Professional Fees ("***Professional Fee Reserve Account***").

(d)      *Carve Out Reserves.*  On a Termination Declaration Date, the Carve Out Trigger Notice shall be deemed, notwithstanding the occurrence and continuation of an Event of Default, a demand to fund an amount equal to the Pre-Carve Out Trigger Notice Cap from Postpetition Collateral (less any unused amounts in the Professional Fee Reserve Account at that time).  The SO5 Digital Debtors shall deposit and hold such amounts in the Professional Fee Reserve Account exclusively for the payment of unpaid Allowed Professional Fees, and not subject to (i) the control of the Prepetition Agent, (ii) any liens in favor of the Prepetition Secured Creditors (the "***Pre-Carve Out Trigger Notice Reserve***"), or (iii) any and all other liens, security interests, or claims that may be asserted against the SO5 Digital Debtors, their assets, or estates.  On a Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed, notwithstanding the occurrences and continuation of an Event of Default, a demand to fund an amount equal to the Post-Carve Out Trigger Notice Cap, after fully funding the amounts equal to the Pre-Carve Out Trigger Notice Cap (which amounts shall be funded from the Postpetition Collateral).  The  SO5 Digital Debtors shall deposit and hold such amounts in the Professional Fee Reserve Account, exclusively for the payment of unpaid Allowed Professional Fees, and not subject to (i) the control of the Prepetition Agent, (ii) any liens in favor of the Prepetition Secured

32

Creditors, or (iii) any and all other liens, security interests, or claims that may be asserted against the SO5 Digital Debtors, their assets, or estates, to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "***Post-Carve Out Trigger Notice Reserve***" and, together with the Pre-Carve Out Trigger Notice Reserve, the "***Carve Out Reserves***") prior to any and all other claims.  On the first Business Day after the delivery of the Carve Out Trigger Notice, all Postpetition Collateral shall be made available to fund the Carve Out Reserves.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "***Pre-Carve Out Amounts***") in the manner set forth in this paragraph, but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to the Prepetition Agent, unless the Prepetition Secured Obligations have been Paid in Full.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "***Post-Carve Out Amounts***") in the manner set forth in this paragraph, and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, first to pay any Pre-Carve Out Amounts until indefeasibly paid in full, and then to the Prepetition Agent, unless the Prepetition Secured Obligations have been Paid in Full.  Notwithstanding anything to the contrary in the Interim Orders or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts and manner set forth in this paragraph 16, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount and in the manner set forth in this paragraph 16, prior to making any payments

33

to the Prepetition Agent or Prepetition Secured Creditors, as applicable; *provided* that if, following delivery of a Carve Out Trigger Notice and any reallocation of amounts in the Carve Out Reserves pursuant to the immediately preceding clause, either of the Carve Out Reserves is funded in an amount that does not cover actually incurred Allowed Professional Fees up to the Pre-Carve Out Trigger Notice Cap and the Post-Carve Out Trigger Notice Cap, as applicable, then such Carve Out Reserves will be funded (pursuant to the terms of this paragraph) in an amount that will be equal to the value of actually incurred Allowed Professional Fees up to the Pre-Carve Out Trigger Notice Cap and the Post-Carve Out Trigger Notice Cap, as applicable, as soon as practicable but no later than two (2) Business Days following discovery of such shortfall by the SO5 Digital Debtors. Notwithstanding anything to the contrary in the Interim Orders or this Final Order, following delivery of a Carve Out Trigger Notice, the Prepetition Agent shall not sweep or foreclose on cash (including, without limitation, cash received as a result of the sale or other disposition of any assets) of the SO5 Digital Debtors until the Carve Out Reserves have been fully funded, and any residual funds in the Carve Out Reserves shall be paid to the Prepetition Agent for application in accordance with the terms hereof. Further, notwithstanding anything to the contrary in the Interim Orders or this Final Order, the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out.

(e)     *No Direct Obligation to Pay Allowed Professional Fees*. None of the Prepetition Secured Creditors shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of this Court incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in the Interim Orders, this Final Order, or otherwise

34

shall be construed to obligate the Prepetition Secured Creditors, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the SO5 Digital Debtors have sufficient funds to pay such compensation or reimbursement.

(f)     *Payment of Carve Out on or After the Termination Declaration Date*.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

(g)     *Reservation of Rights*.  Nothing in the Interim Orders or this Final Order shall be construed as a waiver of any right of the Prepetition Secured Creditors with respect to any fee statement, interim application or monthly application issued or filed by the Professional Persons.   Notwithstanding anything to the contrary herein, the payment of any Allowed Professional Fees pursuant to the Carve Out shall not (i) reduce any SO5 Digital Debtor's obligations owed to the Prepetition Agent and the Prepetition Secured Creditors (whether under this Second Interim Order or otherwise) or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties (whether granted under this Second Interim Order or otherwise) in the Prepetition Collateral or the Postpetition Collateral (or their claims against the SO5 Digital Debtors).

17.     <u>Limitation on Use of Postpetition Collateral (Including Cash Collateral)</u>.  For the avoidance of doubt and notwithstanding any other provision of the Interim Orders, this Final Order, or any other order entered by this Court to the contrary, no portion of the Carve Out, or the Postpetition Collateral (including Cash Collateral) may be used directly or indirectly in connection with: (i) the investigation, initiation, or prosecution of any claims, causes of action, motions,

adversary proceedings, or other litigation against any of the Prepetition Secured Creditors or Prepetition Agent (whether in such capacity or otherwise) challenging the amount, validity, perfection, priority, or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the Prepetition Credit Documents or in connection with the Prepetition Loan Facility, including, in each case without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (ii) attempts to modify any of the rights granted to the Prepetition Agent or the other Prepetition Secured Creditors with respect to the Prepetition Loan Facility the Interim Orders, or this Final Order; or (iii) attempts to prevent, hinder, or otherwise delay any of the Prepetition Secured Creditors' (as applicable) assertion, enforcement, or realization upon any Prepetition Collateral in accordance with the Prepetition Credit Documents, the Interim Orders, and this Final Order once a Cash Collateral Termination Event has occurred and any applicable Remedies Notice Period has expired; *provided, however*, that the proceeds of the Postpetition Collateral (including Cash Collateral) may be used by any Committee to investigate prior to the Challenge Deadline, but not to prosecute, (A) the claims and liens of the Prepetition Secured Creditors, and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Creditors, up to an aggregate cap of no more than $100,000.

18.     No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

19.     Release.   Subject to paragraph 27 hereof, and the challenge rights granted thereunder, each of the Released Parties is released as provided in paragraph F hereof.

36

20.     <u>Section 506(c) Claims</u>.   Upon entry of this Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or Successor Cases at any time shall be charged against the Prepetition Lenders, the Prepetition Agent, or the Postpetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise and all rights to surcharge the Prepetition Lenders, the Prepetition Agent, and/or the Postpetition Collateral under section 105 or 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the SO5 Digital Debtors and all parties in interest in the Chapter 11 Cases or any Successor Case.

21.     <u>No Marshaling / Applications of Proceeds</u>.   Upon entry of this Final Order (but subject to paragraph 32 herein), the Prepetition Lenders and the Prepetition Agent shall not be subject to the equitable doctrine of "marshaling" nor any other similar doctrine with respect to any of the Postpetition Collateral.

22.     <u>Section 552(b)</u>.  The Prepetition Agent and Prepetition Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  Upon entry of this Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agent and Prepetition Lenders with respect to proceeds, products, offspring, or profits of any of the Postpetition Collateral.

23.     <u>Limits on Lender Liability</u>.  Nothing in the Interim Orders, this Final Order, any of the Prepetition Credit Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Agent, or the Prepetition Secured Creditors of any liability for any claims arising from any activities by the SO5 Digital Debtors in the postpetition operation of their businesses or in connection with the

37

administration of the Chapter 11 Cases.  The Prepetition Agent and the Prepetition Secured Creditors shall not, solely by reason of having permitted the use of Cash Collateral, as applicable, be deemed in control of the operations of the SO5 Digital Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the SO5 Digital Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in the Interim Orders, this Final Order, or the Prepetition Credit Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Agent or the Prepetition Secured Creditors of any liability for any claims arising from the postpetition activities of any of the SO5 Digital Debtors.

24.     <u>Joint and Several Liability</u>.  Nothing in the Interim Orders or this Final Order shall be construed to constitute a substantive consolidation of any of the SO5 Digital Debtors' estates, it being understood, however, that the SO5 Digital Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the Interim Orders and this Final Order.

25.     <u>Discharge Waiver</u>.  The obligations of the SO5 Digital Debtors with respect to adequate protection hereunder, including granting the Adequate Protection Liens and the Adequate Protection Superpriority Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been Paid in Full on or before the effective date of such confirmed plan of reorganization, or each of the Prepetition Secured Creditors, as applicable, has otherwise agreed in writing.  None of the SO5 Digital Debtors shall

propose or support any plan of reorganization or sale of all or substantially all of the SO5 Digital

Debtors' assets, or order confirming such plan or approving such sale, that does not require the

payment of the  SO5 Digital Debtors ' obligations with respect to the adequate protection provided

for the Prepetition Secured Creditors herein, in full in cash within a commercially reasonable

period of time without the written consent of the Prepetition Secured Creditors, in accordance with

the Prepetition Credit Documents and this Final Order.

26.     <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of

this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:

(a) the Prepetition Secured Creditors' right to seek any other or supplemental relief in respect of

the SO5 Digital Debtors (including, the right to seek additional or different adequate protection);

(b) the rights of any of the Prepetition Secured Creditor to seek the payment by the SO5 Digital

Debtors of postpetition interest or fees pursuant to section 506(b) of the Bankruptcy Code; or

(c) any of the rights of the Prepetition Secured Creditors under the Bankruptcy Code or under

non-bankruptcy law, including, without limitation, the right to (i) request modification of the

automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter

11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7,

or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) seek an injunction,

(iv) oppose any request for use of Cash Collateral, (v) object to any sale of assets, or (vi) propose,

subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans;

*provided*, that the rights of the Prepetition Secured Creditors with respect to sections (i)–(iii) of

this paragraph 26 shall be subject to the Carve Out.  Other than as expressly set forth in this Final

Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Secured Creditors are preserved.

27.   <u>Binding Effect of Interim Orders</u>.  Immediately upon entry of the First Interim Order, the stipulations (including the SO5 Digital Debtors' Stipulations), terms and provisions of the First Interim Order (including, without limitation, the Adequate Protection Liens, Adequate Protection Payments, and the Adequate Protection Superpriority Claims) shall become valid and binding upon and inure to the benefit of the SO5 Digital Debtors, the Prepetition Secured Creditors, all other creditors of any of the SO5 Digital Debtors, the Committee, if any, and all other parties in interest and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases or any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case, unless, and solely to the extent that:  (a) a party in interest that has sought and obtained standing and the requisite authority to commence a Challenge[7] (other than the SO5 Digital Debtors, as to which any Challenge is hereby irrevocably waived and relinquished) and has timely commenced a Challenge by March 16, 2026 (the "***Challenge Deadline***"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Agent or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline; *provided*

---

[7]   "***Challenge***" as used herein shall mean an adversary proceeding or contested matter (subject to the limitations contained herein) (a) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens, or (b) asserting or prosecuting any Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses against any Prepetition Secured Creditors or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof in connection with or related to the Prepetition Credit Documents, the Prepetition Secured Obligations, the Prepetition Liens and the Prepetition Collateral.

40

that if the Chapter 11 Cases are converted to chapter 7 or a chapter 7 or chapter 11 trustee is appointed or elected prior to the expiration of the Challenge Deadline, any such estate representative or trustee shall receive the full benefit of any remaining time before expiration of the Challenge Deadline, which, solely if not yet expired, shall be extended for a period of sixty (60) days; and (b) this Court enters judgment in favor of the plaintiff or movant in any such timely commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.  The filing of a motion seeking standing to file a Challenge before the Challenge Deadline, which attaches a proposed Challenge (a "***Standing Motion***"), shall extend the Challenge Deadline (solely with respect to the party that files such timely Standing Motion) until two (2) Business Days after this Court rules on the Standing Motion, or such other time period ordered by this Court in approving the Standing Motion.  For the avoidance of doubt, any chapter 7 trustee appointed or elected in these cases shall, until the Challenge Deadline, and thereafter for the duration of a Challenge (to the extent such Challenge is commenced by the chapter 7 trustee prior to the Challenge Deadline), be deemed to be a party in interest other than the SO5 Digital Debtors and shall not, for purposes of such Challenge, be bound by the SO5 Digital Debtors' Stipulations.

28.     <u>Cash Collection</u>.  From and after the date of the entry of the First Interim Order, and except as provided in the Interim Orders, all collections and proceeds of any Postpetition Collateral that shall at any time come into the possession, custody, or control of any of the SO5 Digital Debtors, or to which any of the SO5 Digital Debtors is now or shall become entitled at any time, shall be promptly deposited in the same deposit accounts into which the collections and

41

proceeds of the Prepetition Collateral were deposited under the Prepetition Credit Documents (or in such other accounts as are designated by the Prepetition Agent from time to time).

29.     <u>No Modification of Orders</u>.  Until and unless the Prepetition Secured Obligations have been Paid in Full, the SO5 Digital Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the Prepetition Agent (i) any reversal, modification, stay, vacatur, or amendment to the Interim Orders or this Final Order or (ii) a priority claim for any administrative expense or unsecured claim against the SO5 Digital Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases or Successor Cases, equal or superior to the Adequate Protection Superpriority Claims, other than the Carve Out; (b) any order, other than the Interim Orders or this Final Order, allowing use of Cash Collateral resulting from Postpetition Collateral; *provided, however*, the SO5 Digital Debtors reserve the right to seek use of Cash Collateral following any Termination Declaration as provided herein; and (c) except as set forth in the Interim Orders or this Final Order (including with respect to the Carve Out), any lien on any of the Postpetition Collateral or Prepetition Collateral with priority equal or superior to Prepetition Liens.  The SO5 Digital Debtors irrevocably waive any right to seek any amendment, modification or extension of the Interim Orders without the prior written consent, as provided in the foregoing, of the Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the Prepetition Agent.

30.     <u>Consignment Inventory</u>.

(a)      Subject to the terms (including any consent rights of the Prepetition Agent) of this Final Order, the SO5 Digital Debtors are hereby authorized to enter into consignment agreements (including any Trade Agreements, to the extent related to consignment merchandise) or arrangements (such agreements or arrangements, the "**Postpetition Consignment Agreements**") and to issue orders for consignment merchandise with all such contracts and orders being deemed to be in the ordinary course of business, without further order of this Court.  The Postpetition Consignment Agreements are hereby authorized and approved and shall constitute valid and binding obligations of the applicable SO5 Digital Debtors, enforceable against the SO5 Digital Debtors and their Estates and the counterparties thereto in accordance with their terms.  The following shall be subject and subordinate in all respects to amounts owed by the SO5 Digital Debtors under the Postpetition Consignment Agreements on account of Postpetition Consigned Merchandise (as defined below): the Prepetition Liens, Prepetition Secured Obligations, the Adequate Protection Superpriority Claims, the Adequate Protection Liens, and all other administrative claims of the SO5 Digital Debtors' Estates.

(b)      With respect to any merchandise (i) consigned and delivered to the SO5 Digital Debtors on or after the Petition Date and prior to the effective date of a chapter 11 plan, or (ii)(A) consigned and delivered to the SO5 Digital Debtors prior to the Petition Date and (B) in the SO5 Digital Debtors' possession and not sold as of the Petition Date (merchandise satisfying the foregoing criteria, (excluding any proceeds of consignment merchandise to which the SO5 Digital Debtors are entitled to receive and retain under any Postpetition Consignment Agreements) the "**Postpetition Consigned Merchandise**", and the vendor thereof, the "**Postpetition Consignor**") as to which the vendor thereof (x) shall either (1) state (or have stated) on its invoice,

43

memo, or similar document that the merchandise identified therein is being provided to the SO5 Digital Debtors "on consignment" or "on memo" or (2) ship (or have shipped) such merchandise pursuant to an existing or hereafter entered into consignment agreement or arrangement (including a Postpetition Consignment Agreement) between the vendor and the SO5 Digital Debtors, and (y) shall be authorized but not required to file UCC financing statements to perfect its rights with respect to such merchandise; *provided* that, each Postpetition Consignor's interest in the applicable Postpetition Consigned Merchandise and the Consignment Proceeds shall be deemed valid and perfected, with first priority, as against all other parties in interest (including the SO5 Digital Debtors, their Estates, and the Prepetition Secured Parties) without the need for any such filing; *provided, further*, that the Prepetition Agent and the Prepetition Lenders shall not be liable or responsible with respect to the application of the proceeds of Postpetition Consigned Merchandise against the Prepetition Secured Obligations to the extent such application occurred from and after the Petition Date in accordance with the Interim Orders or this Final Order.

(c)      Notwithstanding anything in the Interim Orders or this Final Order to the contrary, (i) the Prepetition Secured Obligations, and the Prepetition Liens (A) shall attach to and encumber Postpetition Consigned Merchandise, but shall be junior and subordinate to the applicable Postpetition Consignor's interests in such Postpetition Consigned Merchandise, and (B) shall attach to and encumber any proceeds of the Postpetition Consigned Merchandise to which the SO5 Digital Debtors are entitled to receive and retain under the Postpetition Consignment Agreements or applicable law, and (ii) the Prepetition Liens, Prepetition Secured Obligations, the Adequate Protection Superpriority Claims, the Adequate Protection Liens, and all other administrative claims of the SO5 Digital Debtors' Estates shall be subject and subordinate in all

44

respects to the payment of amounts owed by the SO5 Digital Debtors to Postpetition Consignors on account of such Postpetition Consigned Merchandise.

(d)     Notwithstanding anything in the Interim Orders or this Final Order to the contrary, the SO5 Digital Debtors may pay in their discretion any consignor (a "***Prepetition Consignor***") on account of merchandise consigned and delivered to the SO5 Digital Debtors prior to the Petition Date and sold prior to the Petition Date (the "***Prepetition Consignment Sale Claims***"), consistent with the terms of the *Order (I) Authorizing Debtors to Pay Certain Prepetition Claims of Certain (A) Lien Claimants and (B) Customs and Regulatory Claimants, and (II) Granting Related Relief*, dated January 14, 2026 [ECF No. 152] and the Approved Budget.

(e)     Notwithstanding anything in the Interim Orders or this Final Order to the contrary, in no event shall the Prepetition Agent and the Prepetition Lenders be liable or responsible with respect to the application of the proceeds of Postpetition Consigned Merchandise against the Prepetition Secured Obligations or the adequate protection obligations to the extent such application occurred from and after the Petition Date in accordance with the Interim Orders or this Final Order.

(f)     The provisions of this paragraph 30 are entered on a final basis and shall be binding on the SO5 Digital Debtors and their Estates, each Prepetition Consignor and Postpetition Consignor, any assignee or successor, any Trustee, and the Prepetition Agent.

(g)     Notwithstanding anything in the Interim Orders or this Final Order to the contrary, nothing contained herein shall constitute or be deemed to constitute an assumption or an assumption and assignment of any agreement between any Debtor and any consignor pursuant to section 365 of the Bankruptcy Code.

45

(h)     Notwithstanding anything in the Interim Orders or this Final Order to the contrary, but subject to the rights of all parties in interest under paragraph 27 hereof, (i) the rights of all parties with respect to any Prepetition Consignment Sale Claims (including any rights of setoff with respect thereto) are hereby fully reserved, and (ii) to the extent that any party held, as of the Petition Date, a valid, duly perfected, first priority lien or interest in any merchandise giving rise to a Prepetition Consignment Sale Claim, nothing in this Order shall be deemed to prejudice, impair, subordinate, or prime such lien or interest.

31.     <u>Committee Reservation of Rights</u>. All rights of the Committee to object to or otherwise contest the allowance, validity, priority, extent, classification, or payment of any administrative expense claim or other claim asserted by or between the Global Debtors and the SO5 Digital Debtors, including intercompany claims of any kind whether arising before or after the Petition Date, are fully preserved.  Nothing herein shall be deemed to allow, approve, or grant priority to any such claim.

46

32.    <u>Use of Interchange Settlement Payments</u>.  Notwithstanding anything to the contrary in this Final Order, and solely to the extent the Prepetition Secured Obligations have not been Paid in Full, the SO5 Digital Debtors shall not apply proceeds of any Unencumbered Assets or the Settlement Payments without the consent of the Prepetition Agent and the Committee or further order of this Court; *provided* that the Prepetition Agent, Committee, and/or the SO5 Digital Debtors may (at any time) seek emergency relief from the Court to seek approval for application of such proceeds and all parties' rights are reserved with respect to such relief; *provided further* that, following the receipt of the Settlement Payments by the SO5 Digital Debtors, to the extent the remaining balance of the Prepetition Secured Obligations is less than the proceeds of the Settlement Payments received by the SO5 Digital Debtors, and there are sufficient proceeds of Postpetition Collateral to cause the Prepetition Secured Obligations to be Paid in Full, then such proceeds of Postpetition Collateral shall be applied to satisfy the Prepetition Secured Obligations until Paid in Full notwithstanding anything in paragraph 9 of this Final Order to the contrary. Notwithstanding anything to the contrary in this Final Order, the Settlement Payments and any proceeds thereof are expressly excluded from, and shall not be subject to, the SO5 Digital Debtors' Stipulations.

33.    <u>Chubb Reservation of Rights</u>.  For the avoidance of doubt, (a) neither the Interim Orders, nor this Final Order authorize the SO5 Digital Debtors to grant liens on and/or security interests in (i) any property received and/or held by ACE American Insurance Company and/or any of its U.S.-based affiliates (collectively, together with each of their successors, and solely in their roles as insurers or third party administrators, "***Chubb***") in accordance with the terms of any insurance policy, or any related agreements or (ii) any insurance policy issued by Chubb; (b)

47

neither the Interim Orders, nor this Final Order grant the SO5 Digital Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to secure obligations under any insurance policies and any related agreements; (c) the Adequate Protection Liens shall only attach to proceeds of any insurance policy issued by Chubb to the extent such proceeds are payable to the Debtors (as opposed to a third party claimant) pursuant to the terms of any such applicable insurance policy; *provided, however*, that the SO5 Digital Debtors shall pursue any such claim for insurance proceeds or request in accordance with the terms of the applicable insurance policy, or any related agreements; *provided further* that Chubb shall not have any duty to effectuate or turnover such property or payment of any such insurance proceeds directly to the Prepetition Agent or any other third party; and (d) nothing, including the Interim Orders and/or this Final Order, including subsection (c) hereof or any other order of this Court, alter or modify the terms and conditions of any insurance policies or any related agreements issued by Chubb.

34.     Survival.  The provisions of the Interim Orders and this Final Order and any actions taken pursuant thereto shall survive entry of any order which may be entered: (a) confirming any plan in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases.  The terms and provisions of the Interim Orders and this Final Order, including, without limitation, the claims, liens, security interests, and other protections granted to the Prepetition Secured Creditors pursuant to the Interim Orders or this Final Order, notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their

priority as provided by the Interim Orders or Final Order until all Prepetition Secured Obligations have been Paid in Full.

35.    <u>Effectiveness</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.

36.    <u>Retention of Jurisdiction</u>.  This Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Signed: February 20, 2026

Alfredo R Pérez
United States Bankruptcy Judge

49

## Exhibit 1

## Events of Default

The occurrence of any of the following events, unless consented to or waived (as applicable) by the Prepetition Agent in advance, in writing, in its sole and absolute discretion shall constitute an Event of Default and/or a Cash Collateral Termination Event under this Final Order:

1. The failure of the SO5 Digital Debtors to perform, in any respect, any of the material terms, provisions, conditions, covenants, or obligations under this Final Order;

2. The failure to achieve any Milestone;

3. The filing of a motion or any plan of reorganization or disclosure statement attendant thereto by any of the SO5 Digital Debtors: (i) to obtain financing under section 364(d) of the Bankruptcy Code not otherwise permitted pursuant to this Final Order or that does not satisfy the Prepetition Secured Obligations in full at the time of closing of such financing; (ii) to grant any lien other than Prepetition Permitted Liens upon or affecting any Postpetition Collateral; or (iii) except as provided in this Final Order, to use Cash Collateral under section 363(c) of the Bankruptcy Code;

4. The entry of an order amending, supplementing, staying, vacating or otherwise modifying the Final Order or the Cash Management Order, the filing by the SO5 Digital Debtors of a motion for reconsideration with respect to the Final Order or the Cash Management Order, or the Final Order shall cease to be in full force and effect;

5. The payment of, or application by the SO5 Digital Debtors for authority to pay, any prepetition claim unless in accordance with an order of the Court and the Approved Budget;

6. The appointment of an interim or permanent trustee in the Cases or any Successor Cases;

7. The termination or modification of the Consulting Agreement (as defined below) without the consent of the Prepetition Agent;

8. The entry of an order approving, relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor (other than the Prepetition Agent) to execute upon or enforce a lien on any Prepetition Collateral or Postpetition Collateral, (ii) approving any settlement or other stipulation with any secured creditor of any Prepetition Obligor providing for payments as adequate protection or otherwise to such secured creditor, or (iii) with respect to any lien on or the granting of any lien on any Prepetition Collateral or Postpetition Collateral to any federal, state or local environmental or regulatory agency or authority;

9. The entry of any order of the Court authorizing any claims or charges, entitled to

superpriority administrative expense claim status pursuant to section 364 of the Bankruptcy Code *pari passu* with or senior to the claims of the Prepetition Secured Creditors under this Final Order, or there shall arise or be granted by the Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code or (ii) any lien on the Prepetition Collateral or Postpetition Collateral or Unencumbered Assets having a priority senior to or *pari passu* with the liens and security interests referenced herein, except, in each case, as expressly provided in this Final Order;

10. The SO5 Digital Debtors shall file a motion for entry of an order materially adversely impacting the rights and interests of the Prepetition Secured Creditors;

11. Any of the SO5 Digital Debtors shall challenge, support or encourage a challenge of any payments made with respect to the Prepetition Secured Obligations;

12. The filing by the SO5 Digital Debtors or the Committee of a Challenge or a pleading seeking relief from the Court to apply (or restrict the application of) the proceeds of the Settlement Payment without the consent of the Prepetition Agent;

13. The entry of any order by the Court granting, or the filing by any of the SO5 Digital Debtors of any motion or other request with the Court seeking authority for, the use of cash proceeds of any Prepetition Collateral or Postpetition Collateral or Unencumbered Assets other than as set forth in this Final Order or to obtain any financing under section 364(d) of the Bankruptcy Code not otherwise permitted under this Final Order or that does not satisfy the Prepetition Secured Obligations in full at the time of closing of such financing;

14. Any of the SO5 Digital Debtors or any person on behalf of any of the SO5 Digital Debtors shall file any motion seeking authority to consummate a sale of Prepetition or Postpetition Collateral outside the ordinary course of business not otherwise permitted hereunder or without the consent of the Prepetition Agent; and

15. Any of the SO5 Digital Debtors shall make any payment of principal or interest or otherwise provide any credit on account of any prepetition indebtedness or payables other than payments (i) under customary "first day orders" or other order of the Court as approved by the Prepetition Agent in writing, and (ii) payments approved by the Prepetition Agent in writing, in each case in accordance with the Approved Budget.

**Exhibit 2**

**Interim Milestones**

The SO5 Digital Debtors must achieve each of the following milestones (as the same may be extended from time to time with the consent of the Prepetition Agent):

1. On or before the Petition date, the SO5 Digital Debtors shall solicit proposals ("***Liquidation Sale Proposals***") from one or more nationally recognized consultants to conduct a self-liquidating sale of the SO5 Digital Debtors' inventory pursuant to "store closing", "everything on sale", "everything must go", "going out of business" or similar themed sale and the SO5 Digital Debtors shall provide each of the Liquidation Sale Proposals to the Prepetition Agent immediately upon receipt (and in any event not less than one day after receipt);

2. On the Petition Date, the SO5 Digital Debtors shall file a motion seeking approval of the use of Cash Collateral, in form and substance acceptable to the Prepetition Agent;

3. On or before three (3) business days after the Petition Date, the First Interim Order shall have been entered by the Court;

4. On or before seven (7) days after the Petition Date, the SO5 Digital Debtors shall receive all Liquidation Sale Proposals;

5. On or before the Second Interim Hearing, the SO5 Digital Debtors shall, in consultation with the Prepetition Agent, select one or more Liquidation Sale Proposals and file a motion (in form and substance acceptable to the Prepetition Agent) with the Court for approval of an order (or interim and final order) authorizing (a) the SO5 Digital Debtors' entry into the approved Liquidation Sale Proposal (the "***Consulting Agreement***"), and (b) the procedures for the SO5 Digital Debtors' self-liquidating sale of inventory (the "***Liquidation Sale Procedures***");

6. On or before fourteen (14) days after the Petition date, the SO5 Digital Debtors shall have obtained the Court's approval of the Second Interim Order approving the Motion (in form and substance acceptable to the Prepetition Agent), subject to court availability;

7. On or before seventeen (17) days after the Petition date, the SO5 Digital Debtors shall have obtained the Court's approval of the interim order approving the Liquidation Sale Procedures, subject to Court availability; and

8. On or before February 20, 2026, the SO5 Digital Debtors shall have obtained the Final Order (in form and substance acceptable to the Prepetition Agent).

9. On or before March 31, 2026, the Prepetition Secured Obligations shall have been Paid in Full.

## Exhibit 3

**Approved Budget**

Saks OFF 5th Digital
Cash Flow Forecast

$'s in '000s

| | Week 1 Forecast 2/21 | Week 2 Forecast 2/28 | Week 3 Forecast 3/7 | Week 4 Forecast 3/14 | Week 5 Forecast 3/21 | Week 6 Forecast 3/28 | Week 7 Forecast 4/4 | Week 8 Forecast 4/11 | Week 9 Forecast 4/18 | Week 10 Forecast 4/25 | Week 11 Forecast 5/2 | 11-Week Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Receipts** | | | | | | | | | | | | |
| 1.) Sales Receipts | $3,955 | $3,514 | $3,224 | $2,393 | $1,806 | $1,041 | $548 | $214 | $– | $– | $– | $16,695 |
| 2.) Other Receipts | | | | | 3,510 | | | 1,142 | | | | 4,652 |
| 3.) **Total Operating Receipts** | **$3,955** | **$3,514** | **$3,224** | **$2,393** | **$5,316** | **$1,041** | **$548** | **$1,356** | **$–** | **$–** | **$–** | **$21,347** |
| **Operating Disbursements** | | | | | | | | | | | | |
| 4.) Expense AP | ($2,185) | ($1,107) | ($943) | ($915) | ($863) | ($616) | ($378) | ($483) | $– | $– | ($40) | ($7,530) |
| 5.) Consignment | (498) | (232) | (232) | (232) | (232) | (232) | – | – | – | – | – | (1,658) |
| 6.) Sales Tax | (1,107) | – | – | (637) | (637) | – | – | (224) | (224) | – | – | (2,830) |
| 7.) Saks Global OSA | (488) | (488) | (488) | (488) | (488) | (25) | (1,415) | (25) | (25) | (25) | (25) | (3,980) |
| 8.) Liquidator Fees | (111) | (95) | (85) | (72) | (51) | (44) | (13) | (11) | – | – | – | (481) |
| 9.) HBC India | – | – | (450) | – | – | – | – | – | – | – | – | (450) |
| 10.) **Total Operating Disbursements** | **($4,390)** | **($1,922)** | **($2,198)** | **($2,344)** | **($2,271)** | **($918)** | **($1,805)** | **($743)** | **($249)** | **($25)** | **($65)** | **($16,930)** |
| 11.) **Operating Cash Flow** | **($435)** | **$1,592** | **$1,026** | **$49** | **$3,044** | **$123** | **($1,258)** | **$613** | **($249)** | **($25)** | **($65)** | **$4,417** |
| **Non-Operating Disbursements** | | | | | | | | | | | | |
| 12.) Debtor Professional Fee Escrow | ($320) | ($320) | ($320) | ($320) | ($320) | ($320) | ($320) | ($320) | ($320) | ($320) | ($320) | ($3,520) |
| 13.) UCC Professional Fee Escrow | (130) | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | (780) |
| 14.) Saks Global Escrow | (1,390) | – | – | – | – | – | – | – | – | – | – | (1,390) |
| 15.) FILO Interest | – | – | (61) | – | – | – | (23) | – | – | – | – | (84) |
| 16.) **Non Operating Disbursements** | **($1,840)** | **($385)** | **($446)** | **($385)** | **($385)** | **($385)** | **($408)** | **($385)** | **($385)** | **($385)** | **($385)** | **($5,774)** |
| **Restructuring Disbursements** | | | | | | | | | | | | |
| 17.) Professional Fees | ($116) | $– | $– | ($99) | $– | $– | $– | ($110) | $– | $– | $– | ($325) |
| 18.) US Trustee | – | – | – | – | – | – | – | (250) | – | – | (60) | (310) |
| 19.) 503(b)(9) | – | – | – | – | – | – | – | – | – | – | (60) | (60) |
| 20.) **Restructuring Disbursements** | **($116)** | **$–** | **$–** | **($99)** | **$–** | **$–** | **$–** | **($360)** | **$–** | **$–** | **($120)** | **($695)** |
| 21.) **Net Cash Flow** | **($2,391)** | **$1,207** | **$580** | **($435)** | **$2,659** | **($262)** | **($1,666)** | **($132)** | **($634)** | **($410)** | **($570)** | **($2,052)** |
| **Cash Balance** | | | | | | | | | | | | |
| 22.) Beginning Book | $9,837 | $3,094 | $4,301 | $4,813 | $3,797 | $6,456 | $6,195 | $2,072 | $1,940 | $1,306 | $896 | $9,837 |
| 23.) + Net Cash Flow | (2,391) | 1,207 | 580 | (435) | 2,659 | (262) | (1,666) | (132) | (634) | (410) | (570) | (2,052) |
| 24.) - Paydown of FILO | (4,353) | – | (69) | (580) | – | – | (2,457) | – | – | – | – | (7,459) |
| 25.) **Ending Book** | **$3,094** | **$4,301** | **$4,813** | **$3,797** | **$6,456** | **$6,195** | **$2,072** | **$1,940** | **$1,306** | **$896** | **$326** | **$326** |
| 26.) + Checks O/S | – | – | – | – | – | – | – | – | – | – | – | – |
| 27.) **Ending Bank** | **$3,094** | **$4,301** | **$4,813** | **$3,797** | **$6,456** | **$6,195** | **$2,072** | **$1,940** | **$1,306** | **$896** | **$326** | **$326** |
| **FILO** | | | | | | | | | | | | |
| 28.) Beginning FILO | $7,459 | $3,106 | $3,106 | $3,037 | $2,457 | $2,457 | $2,457 | $– | $– | $– | $– | $7,459 |
| 29.) - Paydown | (4,353) | – | (69) | (580) | – | – | (2,457) | – | – | – | – | (7,459) |
| 30.) **Ending FILO** | **$3,106** | **$3,106** | **$3,037** | **$2,457** | **$2,457** | **$2,457** | **$–** | **$–** | **$–** | **$–** | **$–** | **$–** |
| **Saks Global Escrow** | | | | | | | | | | | | |
| 31.) Beginning Escrow | $350 | $– | $– | $– | $– | $– | $– | $– | $– | $– | $– | $350 |
| 32.) + Additions | 1,390 | – | – | – | – | – | – | – | – | – | – | 1,390 |
| 33.) - Payments | (1,740) | – | – | – | – | – | – | – | – | – | – | (1,740) |
| 34.) **Ending Escrow** | **$–** | **$–** | **$–** | **$–** | **$–** | **$–** | **$–** | **$–** | **$–** | **$–** | **$–** | **$–** |