# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SAKS GLOBAL ENTERPRISES LLC, *et al.*,[1] | Case No. 26-90103 (ARP) |
| Debtors. | (Jointly Administered) |

## GLOBAL DEBTORS' SEVENTH OMNIBUS MOTION FOR ENTRY OF ORDER, PURSUANT TO SECTIONS 105(a), 365(a), AND 554 OF THE BANKRUPTCY CODE, AUTHORIZING DEBTORS TO (I) REJECT CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) ABANDON PERSONAL PROPERTY

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **ANY PARTY RECEIVING THIS MOTION SHOULD LOCATE ITS NAME AND ITS REJECTED LEASE IDENTIFIED ON SCHEDULE 1 TO THE PROPOSED ORDER ATTACHED HERETO.**

The Global Debtors respectfully represent as follows in support of this motion (the "Motion"):[2]

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Saks. The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281. Bradley Arant Boult Cummings LLP is counsel for the following Debtors: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively, the "SO5 Digital Debtors"). Haynes and Boone, LLP and Willkie Farr & Gallagher LLP are counsel for the remaining Debtors (collectively, the "Global Debtors").

[2] Capitalized terms used but otherwise not defined herein shall have the meanings given to them in the *Declaration of Mark Weinsten in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") [D.I. 17], or the *Global Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Global Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [D.I. 49].

**RELIEF REQUESTED**

1.      The Global Debtors request entry of an order, substantially in the form attached hereto (the "Proposed Order"), authorizing the Global Debtors to (a) reject, effective as of March 31, 2026 (the "Rejection Date"), those certain unexpired leases for non-residential real property, including, without limitation, any amendments, modifications, subleases, termination agreements, Subordination, Non-Disturbance, and Attornment Agreement, or other ancillary documents related thereto, set forth on **Schedule 1** to the Proposed Order (such leases, collectively, the "Rejected Leases") and (b) abandon any personal property of the Global Debtors, including, but not limited to, furniture, fixtures, and equipment (collectively, the "Personal Property") that remains, as of the Rejection Date, in any of the Global Debtors' locations they previously leased pursuant to the Rejected Leases (collectively, the "Rejected Premises") to the extent the Rejected Leases were not already terminated as of the Rejection Date and are subject to assumption or rejection under section 365 of the Bankruptcy Code.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas (the "Court"), dated May 24, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Global Debtors confirm their consent to entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2

4.      The statutory and legal predicates for the relief sought herein are sections 105(a), 365, and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the *Procedures for Complex Cases for the Southern District of Texas.*

## BACKGROUND

### I.      General

5.      On January 13, 2026 (the "Petition Date") and January 14, 2026, the Debtors[3] filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

6.      On January 27, 2026, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [D.I. 480].  On January 29, 2026, the U.S. Trustee filed a notice amending the composition of the Committee.  [D.I. 522].

7.      No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

### II.      The Rejected Leases

8.      As further described in the First Day Declaration, the Debtors are a premier destination for luxury fashion, delivering a one-of-a-kind and highly curated shopping experience

---

[3]     For the avoidance of doubt, "Debtors" means, collectively, the Global Debtors and the SO5 Digital Debtors.

for each of its customers.  Since its inception over 100 years ago, the Debtors' in-store and, subsequently, its online presence, have featured broad selections of apparel, handbags, shoes, cosmetics, and precious and designer jewelry from premier luxury and fashion designers.  The Debtors' businesses include a diverse collection of highly recognized, market-leading, and emerging retail brands, including:  Saks Fifth Avenue, Neiman Marcus, Bergdorf Goodman, and Saks OFF 5TH.  As of the Petition Date, across all brands, the Debtors had over 150 total retail store locations and operations spanning across the globe.  To complement its store footprint, the Debtors operate a large luxury e-commerce platform.

9.      The Global Debtors operate a substantial majority of their store locations pursuant to real property lease agreements between the Global Debtors and the applicable landlords.  After careful review, the Global Debtors have determined that the Rejected Premises are no longer necessary for their business operations, are not beneficial to their estates, and the Rejected Leases subject the Global Debtors to unnecessary and burdensome rent and related liabilities.  As of the Rejection Date, the Global Debtors do not occupy any of the Rejected Premises and have surrendered the Rejected Premises to the applicable landlords.

10.      Therefore, the Global Debtors have determined that rejecting the Rejected Leases, effective as of the Rejection Date, is an appropriate exercise of their business judgment and in the best interest of their estates.

**III.    Remaining Personal Property at the Rejected Premises**

11.      In connection with the rejection of the Rejected Leases, it is possible that some Personal Property will remain on the Rejected Premises as of the Rejection Date.  The Global Debtors expect that any remaining Personal Property at the Rejected Premises will be difficult or expensive to remove and/or store, such that the economic benefits of removal of the Personal

4

Property will be exceeded by the attendant costs.  Therefore, in connection with abandoning and surrendering the Rejected Premises as of the Rejection Date, the Global Debtors intend to abandon the Personal Property and request the Court's approval to do so.

## BASIS FOR RELIEF

**I.     Rejection of the Rejected Leases is a Sound Exercise of the Global Debtors' Business Judgment.**

12.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  "This provision allows a [debtor] to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co., 83 F.3d 735, 741 (5th Cir. 1996) (citing In re Murexco Petroleum, Inc., 15 F.3d 60, 62 (5th Cir. 1994)); see also In re Orion Pictures Corp., 4 F.3d 1095, 1098 (2d Cir. 1993) (noting that the purpose of rejection of executory contracts and unexpired leases is to permit the debtor-in-possession to renounce title to and abandon burdensome property of the estate that can otherwise impede a successful reorganization).

13.     "Section 365(a) enables the debtor (or its trustee), upon entering bankruptcy, to decide whether the contract is a good deal for the estate going forward." Mission Prod. Holdings, Inc. v. Tempnology, LLC, 587 U.S. 370, 373 (2019).  Generally, "[a] bankruptcy court reviews a debtor's decision to assume or reject an executory contract under the deferential 'business judgment' standard." In re J. C. Penney Direct Mktg. Servs., L.L.C., 50 F.4th 532, 534 (5th Cir. 2022) (citing Tempnology, LLC, 587 U.S. at 373 and Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1308–09 (5th Cir. 1985)); see also Richmond Leasing Co., 762 F.2d at 1309 ("It is well established that 'the question of whether a lease should be rejected . . . is one of business judgment."); In re Mirant Corp., 378 F.3d 511, n. 5 (5th Cir. 2004) ("The rejection decision under

§ 365 is generally left to the business judgment of the bankruptcy estate.") (citations omitted); In re Pisces Energy, LLC, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment.").

14.     The business judgment rule is a presumption that, in making a business decision, the directors of a corporation acted "on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." ASARCO LLC v. Americas Mining Corp., 396 B.R. 278, 405 (S.D. Tex. 2008) (citations omitted).  To satisfy the "business judgement" standard, a debtor merely has to show that the rejection of an unexpired lease will benefit its estate. See In re J. C. Penney Direct Mktg. Servs., L.L.C., 50 F.4th at 534 ("The correct inquiry under the business judgment standard is whether the debtor's decision regarding executory contracts benefits the debtor. . . ."); In re Idearc Inc., 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) aff'd, 662 F.3d 315 (5th Cir. 2011) (explaining that the "'business judgement test' … requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgement").  "As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." Richmond Leasing Co., 762 F.2d at 1309 (citation omitted); see also In re Idearc Inc., 423 B.R. at 162 ("In the absence of a showing of bad faith or an abuse of business discretion, the debtor's business judgment will not be altered.") (quotations and citation omitted); In re Hilltop SPV, LLC, 667 B.R. 110, 118 (Bankr. W.D. Tex. 2025) (finding that section 365 of "[t]he Code tells us a chapter 11 debtor can reject *any* executory contract so long as the Court approves … [a]nd the

Court is only to withhold approval of the chapter 11 debtor's decision if such decision is not in the best interest of the estate or constitutes bad business judgment") (internal citation omitted). Consequently, a debtor's business judgment will be upheld unless it is devoid of any rational purpose. See In re J. C. Penney Direct Mktg. Servs., L.L.C., 50 F.4th at 534 (describing shedding "onerous or unprofitable" agreements as the "long-standing purpose" of allowing debtors to reject agreements).

15.     Here, the Global Debtors' rejection of the Rejected Leases is a sound exercise of their business judgment and in the best interests of their estates.  The Rejected Leases are lease agreements for certain brick-and-mortar stores that, as of the Rejection Date, the Global Debtors no longer occupy or use in the course of their businesses.  In other words, the Rejected Leases provide no benefit to the Global Debtors and their estates, while subjecting the Global Debtors to burdensome rent and related liabilities.  Absent rejection, the Global Debtors and their estates would continue to incur administrative costs under the Rejected Leases in exchange for no meaningful benefits.

**II.     The Court Should Deem the Rejected Leases Rejected Effective as of the Rejection Date.**

16.     The Global Debtors' rejection of the Rejected Leases should be approved effective as of the Rejection Date.  Pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, bankruptcy courts may grant retroactive rejection of an unexpired lease based on a balancing of the equities of the case.  See In re Cafeteria Operators, L.P., 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (approving lease "rejection retroactive to the later of 1) the date Debtors' Motions were filed or 2) the date the leased space was vacated" because the debtors were not receiving any "benefit from the leased properties and by vacating the leased locations, the landlords had unequivocal notice of Debtors' intent to reject prior to the filing of the Motions"); see also In re Amber's Stores,

193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) ("[N]othing precludes a bankruptcy court, based on the equities of the case, from approving" retroactive rejection); In re Stonebridge Techs., Inc., 430 F.3d 260, 273 (5th Cir. 2005) ("[W]e note that most courts have held that lease rejection may be retroactively applied."). Moreover, courts permit retroactive rejection when retroactive rejection would allow a debtor to avoid "unnecessary administrative costs for Contracts and the Leases that do not provide any benefits to the Debtor and its estate," In re SVB Fin. Grp., Case No. 23-10367 (MG) (Bankr. S.D.N.Y. May 17, 2023) [D.I. 249], and also when the non-debtor party to the contract or lease was given "unequivocal notice of [the debtor's] intent to reject," In re Cafeteria Operators, L.P., 299 B.R. at 394.

17.     Here, for the following reasons, the balance of the equities favors the Global Debtors' rejection of the Rejected Leases effective as of the Rejection Date. *First*, absent retroactive rejection, the Global Debtors would incur unnecessary administrative charges for leases that are not necessary to their business operations or chapter 11 efforts. As discussed, the Rejected Premises are closed stores and, therefore, generate no revenue or benefits for the Global Debtors. Requiring the Global Debtors' continued performance under the Rejected Leases after the Rejection Date would impose administrative costs on the Global Debtors and their estates in exchange for no meaningful benefits.

18.     *Second*, the Global Debtors have provided or will provide the counterparties to the Rejected Leases with unequivocal notice of their intent to reject the leases as of the Rejection Date. Specifically, the Global Debtors served this Motion on the affected counterparties and/or their agents or representatives by first class mail and/or electronic mail, as applicable, in accordance with applicable rules. Additionally, the Global Debtors have concurrently sent communications to such counterparties by first class mail and/or electronic mail, thereby advising such counterparty

8

that the Global Debtors intend to reject the Rejected Leases effective as of the Rejection Date. Moreover, with respect to the Rejected Leases, the Global Debtors relinquished the keys to the Rejected Premises to the applicable landlords on or before the Rejection Date and indicated to the landlords that they were unequivocally surrendering possession of the Rejected Premises.

19.     This Court has previously authorized retroactive relief similar to the relief requested herein.  See, e.g., In re Anthology Inc., Case No. 25-90498 (ARP) (Bankr. S.D. Tex. Nov. 16, 2025) [D.I. 424] (authorizing rejection of unexpired leases to specified dates prior to the entry of the rejection order); In re Desktop Metal, Inc., Case No. 25-90268 (CML) (Bankr. S.D. Tex. Sept. 23, 2025) [D.I. 385] (same); In re Sunnova Energy Int'l Inc., Case No. 25-90160 (ARP) (Bankr. S.D. Tex. July 2, 2025) [D.I. 320] (same); In re Digit. Media Sols., Inc., No 24-90468 (ARP) (Bankr. S.D. Tex. Oct. 16, 2024) [D.I. 199] (same); In re SmileDirectClub Inc., No. 23-90786 (CML) (Bankr. S.D. Tex. Nov. 29, 2023) [D.I. 394] (same).

20.     Rejection of the Rejected Leases effective as of the Rejection Date is in the best interests of their estates, does not negatively impact the public interest, and the equities balance in favor of rejection.  Accordingly, the Global Debtors respectfully request that the Rejected Leases are deemed rejected effective as of the Rejection Date.

**III.     Authorizing the Global Debtors to Abandon Any Personal Property Remaining at the Rejected Premises as of the Rejection Date Is Appropriate.**

21.     In the event that any Personal Property remains on the Rejected Premises as of the Rejection Date, the Global Debtors request authority to abandon that Personal Property (collectively, the "Abandoned Personal Property") pursuant to section 554(a) of the Bankruptcy Code.

22.     Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of

inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Courts generally give a debtor great deference with respect to its decision to abandon property. See, e.g., In re Vel Rey Props., Inc., 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters."). Unless property is harmful to the public, once a debtor has shown that it is burdensome or of inconsequential value to the estate, a court should approve the abandonment. Id.

23. Here, the Global Debtors submit that the Abandoned Personal Property is of inconsequential value and expensive or burdensome to the Global Debtors' estates to remove. Among other things, the Global Debtors believe that the cost of retrieving, storing, marketing, and reselling the Abandoned Personal Property—to the extent there is any—outweighs any recovery that the Global Debtors and their estates could reasonably hope to attain for such Abandoned Personal Property. Moreover, the Global Debtors have determined that the Abandoned Personal Property does not pose a threat to public health or safety. As a result, the Global Debtors have determined, in their business judgment, that the abandonment of any Abandoned Personal Property, effective as of the Rejection Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Global Debtors, their estates, and creditors.

**IV. The Motion Satisfies the Requirements of Bankruptcy Rules 6006(e) and 6006(f)**

24. Under Bankruptcy Rule 6006(e)(2), a debtor may join requests for authority to reject multiple unexpired leases in one motion, subject to Rule 6006(f). See Fed. R. Bankr. P. 6006(e)(2). Motions to assume or reject multiple unexpired leases must satisfy six procedural requirements, namely, they must:

1. state in a conspicuous place that the parties' names and their contracts or leases are listed in the motion;

2. list parties alphabetically and identify the corresponding contract or lease;

3. specify the terms, including how a default will be cured, for each requested assumption or assignment;

4. specify the terms, including the assignee's identity and the adequate assurance of future performance by each assignee, for each requested assignment;

5. be numbered consecutively with other omnibus motions to reject, assume, or assign executory contracts or unexpired leases; and

6. be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f). This Motion, together with the schedule of Rejected Leases attached to the Proposed Order, satisfies the procedural requirements of Bankruptcy Rule 6006(f).[4] Accordingly, the omnibus rejection of the Rejected Leases should be approved.

## **RESERVATION OF RIGHTS**

25. Nothing in the Proposed Order or the Motion (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Global Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Global Debtors, their estates, or any other party in interest with respect to the validity, priority, or amount of any claim against the Global Debtors and their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Global Debtors, their estates, or any other party in interest with respect to any and all claims or causes of action; or (d) shall be construed as a promise to pay a claim.

26. Nothing in the Proposed Order or this Motion shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of any Global Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

---

[4] Bankruptcy Rules 6006(f)(3) and 6006(f)(4) are inapplicable to the relief requested in this Motion because the Global Debtors do not seek to assume any of the leases listed on the schedule of Rejected Leases.

27.     Nothing in the Proposed Order or this Motion shall create, nor is intended to create, any rights in favor of or enhance the priority or status of any claim held by any party.

## NOTICE

28.     Notice of this Motion has been or will be provided to:  (a) the U.S. Trustee; (b) the United States Attorney's Office for the Southern District of Texas; (c) counsel for the Committee; (d) counsel to the DIP Agents; (e) counsel to the Ad Hoc Group of Secured Noteholders and DIP Lenders; (f) counsel to the lenders under the ABL DIP Facility; (g) the counterparties to the Rejected Leases (by first class mail and/or electronic mail); and (h) all parties who have requested notice in these Chapter 11 Cases as listed on the most recent Master Service List filed with the Court.  In light of the nature of the relief requested herein, the Global Debtors submit that no other or further notice is necessary.

*[Remainer of Page Left Intentionally Blank]*

12

## CONCLUSION

WHEREFORE, the Global Debtors request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: March 27, 2026
      Houston, Texas

/s/ Kelli S. Norfleet
**HAYNES AND BOONE, LLP**
Kelli S. Norfleet (TX Bar No. 24070678)
Kenric D. Kattner (TX Bar No. 11108400)
Arsalan Muhammad (TX Bar No. 24074771)
Kourtney P. Lyda (TX Bar No. 24013330)
David Trausch (TX Bar No. 24113513)
1221 McKinney Street, Suite 4000
Houston, TX 77010
Telephone: (713) 547-2000
Facsimile: (713) 547-2600
Email:    kelli.norfleet@haynesboone.com
        kenric.kattner@haynesboone.com
        arsalan.muhammad@haynesboone.com
        kourtney.lyda@haynesboone.com
        david.trausch@haynesboone.com

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (admitted *pro hac vice*)
Robin Spigel (admitted *pro hac vice*)
Allyson B. Smith (admitted *pro hac vice*)
Betsy L. Feldman (admitted *pro hac vice*)
Jessica D. Graber (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email:    dsinclair@willkie.com
        rspigel@willkie.com
        absmith@willkie.com
        bfeldman@willkie.com
        jgraber@willkie.com

-and-

Jennifer J. Hardy (TX Bar No. 24096068)
600 Travis Street
Houston, TX 77002
Telephone: (713) 510-1766
Facsimile: (713) 510-1799
Email:    jhardy2@willkie.com

-and-

Ryan Blaine Bennett (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, IL 60654
Telephone: (312) 728-9123
Facsimile: (312) 728-9199
Email:    rbennett@willkie.com

*Co-Counsel to the Global Debtors*
*and Global Debtors in Possession*

*Co-Counsel to the Global Debtors*
*and Global Debtors in Possession*

13

## Certificate of Service

I certify that on the date hereof, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas. Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' claims agent.

*/s/ Kelli S. Norfleet*
Kelli S. Norfleet
