**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| SAKS GLOBAL ENTERPRISES LLC, *et al.*,[1] | Case No. 26-90103 (ARP) |
| Debtors. | (Jointly Administered) |

**GLOBAL DEBTORS'
<u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE SALE OF ASSET TO JONES AVIATIONS LLC,
(II) AUTHORIZING PAYMENT OF BROKER FEES, AND (III) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 10:00 a.m. (prevailing Central Time) on April 14, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on April 14, 2026, at 10:00 a.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Pérez's conference room number is 282694.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Pérez's homepage.  The meeting code is "Judge Pérez".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "<u>Electronic Appearance</u>" link on Judge Pérez's homepage.  Select the case name, complete the required fields and click "<u>Submit</u>" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Saks.  The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281.  Bradley Arant Boult Cummings LLP is counsel for the following Debtors: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively, the "<u>SO5 Digital Debtors</u>").  Haynes and Boone, LLP and Willkie Farr & Gallagher LLP are counsel for the remaining Debtors (collectively, the "<u>Global Debtors</u>").

The Global Debtors respectfully represent as follows in support of this motion (this "Motion"):[2]

**RELIEF REQUESTED**

1.       By this Motion, the Global Debtors seek entry of an order (the "Sale Order"), substantially in the form attached hereto:

> i.   authorizing the sale (the "Sale") contemplated by that certain letter of intent ("LOI") attached hereto as **Exhibit A** by and between Saks Global Enterprises LLC ("Seller") and Jones Aviations LLC ("Purchaser") for a purchase price of $6,000,000 (the "Purchase Price");
>
> ii.  approving the payment of fees to Guardian Jet, LLC (the "Broker");
>
> iii. approving entry into all other ancillary documents necessary to effectuate the transactions contemplated by the LOI; and
>
> iv.  granting related relief.

**JURISDICTION AND VENUE**

2.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas (the "Court"), dated May 24, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Global Debtors confirm their consent to entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.       Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]   Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the *Declaration of Mark Weinsten in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 17] (the "First Day Declaration") or LOI, as applicable.  The First Day Declaration describes in more detail the relationship between the Global Debtors and the SO5 Digital Debtors.

4.     The statutory and legal predicates for the relief sought herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), 4002-1(e) and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the *Procedures for Complex Cases for the Southern District of Texas.*

## BACKGROUND

### I.     General Background.

5.     On January 13, 2026 (the "Petition Date") and January 14, 2026, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court. The Debtors are operating their businesses and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered for procedural purposes only.

6.     On January 27, 2026, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the Official Unsecured Creditors' Committee (the "Committee") [Docket No. 480].  On January 29, 2026, the U.S. Trustee filed a notice amending the composition of the Committee [Docket No. 522].  No request for the appointment of a trustee or an examiner has been made in these Chapter 11 Cases.

7.     On February 20, 2026, the Court entered the *Final Order (I) Authorizing the Global Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 917] (the "DIP Order").

8.      Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration.

## II.      The Asset and Marketing Process.

9.      Wilmington Trust Company (in its capacity as owner trustee for the trustor, Debtor Saks Global Enterprises LLC) (the "Owner Trustee")[3] is the owner of a 2003 Gulfstream Aerospace Model G-IV (G400), including two Rolls-Royce Deutschland Ltd & Co KG model Tay 611-8 aircraft engines (the "Asset").  The Global Debtors primarily used the Asset to facilitate business travel and to meet operational needs.  When the Asset was not in use by the Global Debtors for its business needs, the Global Debtors allowed certain current and former executives and directors of the Global Debtors to use the Asset for non-business travel pursuant to aircraft time sharing agreements (the "Time Share Agreements").  Lessees under the Time Share Agreements had access to the Asset at an agreed upon per usage cost pursuant to the terms of the Time Share Agreements when the Asset was not in use by the Global Debtors.  The Time Share Agreements were rejected by the Global Debtors pursuant to a motion filed on February 27, 2026 [Docket No. 1062]; and, more recently, the Asset has lain dormant.  The Global Debtors determined that the best course of action would be to sell the Asset and redirect funds needed to maintain and operate the Asset to other business operations.

10.      After the filing of these Chapter 11 Cases, the Global Debtors engaged the Broker to facilitate the marketing process and maximize the value of the sale of the Asset. The Broker was

---

[3]      In order to ensure the eligibility of the Asset for United States registration with the Federal Aviation Administration, the Asset was placed in a trust in 2013.  The trust (the "Trust") is governed by that certain Amended and Restated Trust Agreement, dated January 16, 2018, by and among the Owner Trustee and Lord & Taylor Acquisition Inc. (now known as Saks Global Enterprises LLC). The Trust is revocable and may be terminated by the Global Debtors upon notice to the Owner Trustee.

4

founded in 2002 and has served several Fortune 100 companies with their aviation consulting, brokerage, and acquisitions expertise and is the world leader in fleet planning.  The Broker has extensive experience, and the Global Debtors believe the Broker was necessary to effectuate a sale and maximize value of the Global Debtors' estates.

11.    The Broker began a robust marketing process for the Asset in February 2026, consistent with the typical marketing process for similar assets, with the assistance of the Global Debtors.  The Broker shared the Asset with its community of potential purchasers through the International Aircraft Dealers Association and fully listed the Asset on all services available to them including AMSTAT and JetNet, two aviation multiple listing services, with additional postings on the Broker's website.  From its research, the Broker identified twenty-four prospective buyers.  These prospective buyers materialized into two offers and one showing.  The Broker and the Global Debtors engaged in negotiations with the prospective buyers and secured the best and highest sale price from the Purchaser.  As a direct result of the Broker's efforts, the Purchase Price exceeded the initial range the Broker's market research estimated the Asset would sell for at the outset of the marketing process.  The Purchase Price is thus the best offer available to the Global Debtors.  The Sale will enhance the Global Debtors' liquidity by eliminating unnecessary costs and expenses while injecting the net sale proceeds into the estates with minimal administrative burden.

12.    The Purchaser and the Global Debtors agreed to the terms of the LOI on March 27, 2026.  Entry of an order authorizing and approving the Sale will best position the Global Debtors to maximize value for the benefit of all creditors.  The Global Debtors believe that the Purchase Price is the best available for the Asset, and the Global Debtors have not received a higher or better offer for the Asset.

**SUMMARY OF THE SALE[4]**

13.     The following sets forth a summary of the material terms and conditions:

| Summary Description of the LOI | |
|---|---|
| **Seller** | Saks Global Enterprises LLC |
| **Purchaser** | Jones Aviations LLC |
| **Asset Description** | Gulfstream Aerospace model G-IV (G400) (SN: 1504) (Registration: N704SG) and two (2) Rolls-Royce Deutschland Ltd & Co KG model Tay 611-8 aircraft engines (SNs: 18143 and 18144). |
| **Purchase Price** | $6,000,000.00 |
| **Refundable Deposit** | $250,000.00 |
| **Private Sale** | The Asset will be sold via private sale.  The Sale is not subject to overbid. |
| **Bankruptcy Court Approval** | Sale subject to the Court's approval. |
| **Broker Fees** | $210,000.00 and certain additional expenses preapproved by the Global Debtors. |

**BASIS FOR RELIEF**

I.     **The Sale is a Sound Exercise of the Global Debtors' Business Judgment, is Appropriate Pursuant to Bankruptcy Rule 6004(f), is in the Best Interest of the Estate, and Should be Approved**.

14.     Section 363(b) of the Bankruptcy Code authorizes bankruptcy courts, after notice and a hearing, to permit a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1); see also In re Ionosphere Clubs, Inc., 98 B.R. 174,

---

[4]     This summary is provided for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the LOI, the LOI shall control in all respects.  This table serves as a brief overview of key terms the Court and parties in interest may find particularly important, but this is not a complete summary of all terms and is subject in all respects to the terms of the LOI and the subsequent asset purchase agreement which the Global Debtors are currently negotiating with the Purchaser.

175 (Bankr. S.D.N.Y. 1989) ("Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances."). A debtor may sell estate property outside of the ordinary course of business under § 363(b) if there is a good business reason for doing so. See, e.g., In re ASARCO, L.L.C., 650 F.3d 593, 601 (5th Cir. 2011). The Fifth Circuit has recognized that "[s]ection 363(b) incorporates the 'business judgment standard' from corporate law." Official Comm. of Unsecured Creditors v. Bouchard Transp. Co., Inc., 74 F.4th 743, 750 (5th Cir. 2023) (quoting In re ASARCO, L.L.C., 650 F.3d at 601); see also In re Johns, 667 B.R. 322, 326 (Bankr. S.D. Tex. 2025) ("The standard for approval under section 363(b) is whether the debtor exercised sound business judgment.") (quotations and citation omitted).

15.     The business judgment standard "is flexible and encourages discretion." In re ASARCO, L.L.C., 650 F.3d at 601; see GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd., 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005) ("Great judicial deference is given to the [debtor in possession's] exercise of business judgment."). When the sale "'appears to enhance a debtor's estate, court approval of a [debtor in possession's] decision to sell should only be withheld if the [debtor in possession's] judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.'" GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd., 331 B.R. at 255 (quoting Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985)) (cleaned up); see also In re Johns, 667 B.R. at 325 (finding in accordance with the business judgment standard, "the Court is guided to approve the sale so long as it does not fall beneath the lowest point in the range of reasonableness") (quotations and citations omitted). Thus, the Court should approve the Sale if doing so would benefit the estate and is a reasonable exercise of the Global Debtors' business judgement.

16.     Bankruptcy Rule 6004(f) permits a debtor to conduct a private sale pursuant to section 363 of the Bankruptcy Code.  Fed R. Bankr. P. 6004(f)(1) ("A sale that is not in the ordinary course of business may be made by public auction or private sale."); see In re 9 Houston LLC, 578 B.R. 600, 618 (Bankr. S.D. Tex. 2017) ("In fact, Rule 6004(f)(1) expressly allows sales outside the ordinary course of business to be done through either a public auction or a private sale."); see also In re Cypresswood Land Partners, I, 409 B.R. 396, 436 (Bankr. S.D. Tex. 2009) ("[T]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.") (internal quotations and citation omitted).  A debtor "'has ample discretion to administer the estate, including authority to conduct public or private sales of estate property.'"  In re 9 Houston LLC, 578 B.R. at 618 (quoting In re Bakalis, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998)).  Accordingly, a debtor may conduct a private sale if a good business reason exists.  Id. (holding a debtor did not violate the Bankruptcy Code by choosing to hold a private sale in lieu of a public auction).

17.     The Global Debtors submit that selling the Asset and entry into the LOI, and subsequently into an asset purchase agreement (the "APA"), represents a reasonable exercise of sound business judgment and is in the best interests of the Global Debtors' estates.  The Purchase Price is the result of an extensive marketing process that evaluated the Seller's best option to maximize the benefit for the estate.  Moreover, the market for this type of asset is limited and requires deliberate marketing by a specialist, such as the Broker.  After locating an interested buyer, the Global Debtors engaged with the Purchaser to push forward for an expeditious closing with substantial upside.  Absent a sale, the Asset will require the Global Debtors' estates to expend significant resources in maintenance and storage costs during a drawn-out auction process.

18.     Given the unique nature of the Asset and the limited market, the Global Debtors do not believe an auction would result in any incremental value that would justify the expense and delay of such auction.  The Global Debtors believe that the Purchaser is offering the best available price for the Asset under the current circumstances.  For these reasons, the Sale is a sound exercise of the Global Debtors' business judgment and should be approved.  Courts in this jurisdiction have authorized private sales pursuant to section 363 of the Bankruptcy Code.  See, e.g., In re Office Properties Income Trust, Case No. 25-90530 (CML) (Bankr. S.D. Tex. Dec. 3, 2025) [Docket No. 241] (approving a private § 363 sale of commercial real estate property with certain land improvements for $10.7 million); In re Sunnova Energy Int'l Inc., Case No. 25-90160 (ARP) (Bankr. S.D. Tex. June 11, 2025) [Docket No. 109] (approving a private § 363 sale of certain solar systems for $15 million); In re Audacy, Inc., Case No. 24-90004 (CML) (Bankr. S.D. Tex. Feb. 20, 2024) [Docket No. 293] (approving a private § 363 sale of certain real estate property for up to $18 million).

II.     **The Proposed Sale of the Asset Should Be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code.**

19.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if:  (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  See 11 U.S.C. § 363(f).  Because section 363(f) is stated in the disjunctive, "a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied." In re Nature Leisure Times, LLC, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007); see In re Kellstrom

Indus., Inc., 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

20.     Here, the Global Debtors' interests in the Trust are encumbered by liens under the ABL DIP Credit Agreement and the OpCo DIP Credit Agreement (together, the "DIP Credit Agreements") and such interests constitute Term Loan Priority Collateral (as defined in the ABL DIP Credit Agreement).  The Global Debtors, however, will either meet the requirements set forth in the DIP Credit Agreements to effectuate the Sale, or, in the alternative, have received the consent of the applicable DIP lenders to effectuate the Sale.  Accordingly, the Global Debtors have satisfied § 363(f).

**III.     The Purchaser is a Good-Faith Purchaser and is Entitled to the Full Protection of Section 363(m) of the Bankruptcy Code.**

21.     Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith."  11 U.S.C. § 363(m).  The Fifth Circuit has defined a good faith purchaser in two ways: (a) "one who purchases the assets for value, in good faith, and without notice of adverse claims;" and (b) "a conduct-based definition, meaning one who does not engage in misconduct including, *inter alia*, fraud, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders."  In re RE Palm Springs II, L.L.C., 65 F.4th 752, 759 (5th Cir. 2023) (cleaned up) (quoting In re TMT Procurement Corp., 764 F.3d 512, 521 (5th Cir. 2014)).

22.     The Global Debtors submit that the Purchaser is a good faith purchaser under § 363(m) and meets the Fifth Circuit's definition in both respects.  The terms and conditions of the

10

LOI and the Sale have been negotiated by the Global Debtors and the Buyer at arm's length and in good faith.  The Buyer is represented by qualified counsel and the Global Debtors believe that the Buyer has not engaged in any conduct that would indicate or constitute a lack of good faith. Accordingly, the Global Debtors believe that the Buyer is entitled to the protections that Bankruptcy Code § 363(m) provides to a good faith purchaser.

**IV.      The Broker's Fees Should be Approved.**

23.      The Global Debtors listed and obtained the Court's approval of the Broker as an ordinary course professional.   See Order Approving Procedures for the Retention and Compensation of Ordinary Course Professionals [Docket No. 940] (the "OCP Order"). Subsequently, the Broker filed its Declaration of Matt Walter in Support of Employment of Guardian Jet, LLC as a Professional Utilized in the Ordinary Course of Business [Docket No. 987]. The Global Debtors intend to pay the Broker's fees as listed in the engagement letter attached hereto as **Exhibit B** in accordance with the terms of the OCP Order.

24.      The Global Debtors submit that engaging the Broker was necessary to accomplish the Sale given the Asset's limited and unique market.  The Broker provided valuable professional services that the Global Debtors would not have been able to replicate on their own.  Additionally, the Global Debtors believe that hiring the Broker and paying the Broker's fees represent a reasonable exercise of sound business judgment and is in the best interests of the Global Debtors' estates.  Accordingly, the Broker's fees should be approved.

**V.      Relief Under Bankruptcy Rule 6004(h) is Appropriate.**

25.      Bankruptcy Rule 6004(h) states that an "order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered."  Fed. R. Bankr. P. 6004(h).  Waiver of the fourteen-day stay period is appropriate where there is no objection to procedure.  See, e.g., In re Weiss Multi-Strategy Advisers LLC, 665 B.R. 578, 594 (Bankr.

11

S.D.N.Y. 2024) (citing 10 Collier on Bankruptcy P. 6004.10); <u>see</u> <u>also</u> <u>In re Borders Grp., Inc.</u>, 453 B.R. 477, 486 (Bankr. S.D.N.Y. 2011) ("Since the purpose of the rule is to protect the rights of an objecting party, the court should eliminate the 14-day stay period and allow the sale or other transaction to close immediately where there has been no objection to the procedure.").

26.     The Global Debtors request that, upon entry of the Sale Order, the Court waive the fourteen-day stay requirement of Bankruptcy Rule 6004(h).  The waiver of the fourteen-day stay imposed by Bankruptcy Rules 6004(h) will allow the Sale to close as soon as possible and prevent further delay in the administration of these cases.

**EMERGENCY CONSIDERATION**

27.     Pursuant to Local Rule 9013-1 and Bankruptcy Rules 2002(a)(2) and 6004(b), the Global Debtors request emergency consideration of this Motion.  Bankruptcy Rule 2002(a)(2) authorizes a court to approve a use of property of the estate on an emergency basis "for cause." The Global Debtors seek such relief to avoid expending unnecessary estate resources.  Any delay in the Sale will require the Global Debtors to pay for administrative costs associated with keeping the Asset without any benefit to the Global Debtors' estates.  Selling the Asset as quickly as possible will maximize the Sale's benefit to the estates.  As such the Global Debtors maintain that they have shown "cause" under Bankruptcy Rules 2002 and 6004, and the Global Debtors believe that emergency consideration is necessary and appropriate under the circumstances.

**NOTICE**

28.     Notice of this Motion has been or will be provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to the DIP Agents; (d) counsel to the lenders under the ABL DIP Facility; (e) counsel to the Ad Hoc Group of Secured Noteholders and DIP Lenders; (f) the Notice Parties; (g) the Global Debtors' thirty (30) largest unsecured creditors; and (h) all

parties who have requested notice in these Chapter 11 Cases as listed on the most recent Master Service List filed with the Court or that are required to receive notice pursuant to Bankruptcy Rule 2002.  The Global Debtors submit that no other or further notice is necessary or required.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, the Global Debtors respectfully request that the Court enter the Sale Order

granting the relief requested herein and such other and further relief as is just and proper.

Houston, Texas
Dated: April 5, 2026


*/s/ Kelli S. Norfleet*

**HAYNES AND BOONE, LLP**
Kelli S. Norfleet (TX Bar No. 24070678)
Kenric D. Kattner (TX Bar No. 11108400)
Arsalan Muhammad (TX Bar No. 24074771)
Kourtney P. Lyda (TX Bar No. 24013330)
David Trausch (TX Bar No. 24113513)
1221 McKinney Street, Suite 4000
Houston, TX 77010
Telephone:  (713) 547-2000
Facsimile:  (713) 547-2600
Email:       kelli.norfleet@haynesboone.com
             kenric.kattner@haynesboone.com
             arsalan.muhammad@haynesboone.com
             kourtney.lyda@haynesboone.com
             david.trausch@haynesboone.com

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (admitted *pro hac vice*)
Robin Spigel (admitted *pro hac vice*)
Allyson B. Smith (admitted *pro hac vice*)
Betsy L. Feldman (admitted *pro hac vice*)
Jessica D. Graber (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
Email:       dsinclair@willkie.com
             rspigel@willkie.com
             absmith@willkie.com
             bfeldman@willkie.com
             jgraber@willkie.com

-and-

Jennifer J. Hardy (TX Bar No. 24096068)
600 Travis Street
Houston, TX 77002
Telephone:  (713) 510-1766
Facsimile:  (713) 510-1799
Email:       jhardy2@willkie.com

-and-

Ryan Blaine Bennett (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, IL 60654
Telephone:  (312) 728-9123
Facsimile:  (312) 728-9199
Email:       rbennett@willkie.com

*Co-Counsel to the Global Debtors*
*and Global Debtors in Possession*

*Co-Counsel to the Global Debtors*
*and Global Debtors in Possession*

**Certificate of Accuracy**

In accordance with Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency with respect to the Global Debtors are true and accurate to the best of my knowledge.

*/s/ Kelli S. Norfleet*
Kelli S. Norfleet


**Certificate of Service**

I certify that on the date hereof, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas. Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' claims agent.

*/s/ Kelli S. Norfleet*
Kelli S. Norfleet