United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 16, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| SAKS GLOBAL ENTERPRISES LLC, *et al.*,[1] | Case No. 26-90103 (ARP) |
| Debtors. | (Jointly Administered) |
|  | **Ref. Docket No. 1155** |

**FIRST OMNIBUS ORDER (I) AUTHORIZING
THE SALE, ASSUMPTION, AND ASSIGNMENT OF
CERTAIN UNEXPIRED LEASES AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the Global Debtors, as debtors and debtors in possession in the above-captioned chapter 11 cases, for the entry of an order (this "Order"), pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code: (i) authorizing the Global Debtors to (a) sell, assume, and assign, effective as of the applicable Assignment Dates, the Assigned Leases to the Assignees, free and clear of any interests, claims, rights, and encumbrances; (b) abandon any Personal Property that remains at the Assigned Premises; and (ii) granting related relief; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012; and this Court having found that venue of these chapter 11 cases and the Motion in this District is proper pursuant

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Saks. The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281. Bradley Arant Boult Cummings LLP is counsel for the following Debtors: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively, the "SO5 Digital Debtors"). Haynes and Boone, LLP and Willkie Farr & Gallagher LLP are counsel for the remaining Debtors (collectively, the "Global Debtors").

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and this Court having determined that it may enter an order consistent with Article III of the United States Constitution; and upon the record in these chapter 11 cases and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Global Debtors, their estates, and their creditors; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND THAT:**

A.      Good and sufficient notice of the Motion has been provided and a reasonable opportunity to object or be heard regarding the proposed assumption and assignment of each Assigned Lease has been afforded to each Landlord.

B.      The sale, assumption, and assignment of the Assigned Leases to the Assignees pursuant to sections 363 and 365 of the Bankruptcy Code is in the best interests of the Global Debtors, their estates, and their creditors.

C.      Pursuant to sections 365(b)(1)(C), 365(f)(2)(B), and 365(b)(3) of the Bankruptcy Code, to the extent required, the Assignees have provided adequate assurance of future performance under the Leases.

D.      The assumption and assignment of the Assigned Leases to the Assignees complies with section 365(b)(3) of the Bankruptcy Code.

E.      Those certain Assumption and Assignment Agreements attached to this Order as **Exhibits 1** and **2** (the "Assignment Agreements") between certain of the Global Debtors

2

(the "Assignors") and the Assignees were negotiated and entered into in good faith, and from arm's-length bargaining positions.  The Assignees are found to be good faith purchasers of the applicable Assigned Leases and are found to be entitled to the protections of good faith purchasers under section 363(m) of the Bankruptcy Code.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Global Debtors are authorized to sell, assume, and assign the Assigned Leases set forth on **Schedule 1** hereto (the "Assigned Lease Schedule") to the applicable Assignees, on the terms of the applicable Assignment Agreements—all of which terms are hereby approved—effective as of the applicable Assignment Dates.  Pursuant to section 363(f) the Bankruptcy Code, effective as of the occurrence of its applicable Assignment Date, each Assigned Lease shall be sold, assumed, and assigned to the applicable Assignee free and clear of any liens, claims, rights, interests, charges, or encumbrances (each, an "Interest"), including any leasehold mortgages, subleases, licenses, holdover rights under applicable bankruptcy or non-bankruptcy law and rules, liens (including mechanics liens), bills, and rights under section 365(h) of the Bankruptcy Code, in each case to the fullest extent permitted by applicable law.  Any Interest asserted in connection with an Assigned Lease, including, for the avoidance of doubt, any liens granted pursuant to each interim and final order entered by the Court in respect of the *Global Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Global Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related*

*Relief* [Docket No. 49], will be transferred to and attach to the proceeds of such sale and assignment in the same order of priority and with the same validity, force, and effect that the applicable Interest holder held prior to the sale, subject to any claims and defenses the applicable Assignor's estate may have with respect thereto.

3.      Upon the entry of this Order and the occurrence of the applicable Assignment Date, each Assignee shall be deemed to have assumed and succeeded to the entirety of the applicable Assignor's rights and obligations in and to the applicable Assigned Leases that are first billed or accrued and become due and payable on or after the applicable Assignment Date and shall have the rights and obligations of the tenants thereunder; *provided*, *however*, that, if set forth in the applicable Assignment Agreement, an Assignee shall not be responsible for any amount due under any Assigned Lease that relates to any period prior to the Assignment Date, regardless of whether such amount remained unbilled as of the Assignment Date.

4.      Upon entry of this Order and the occurrence of the applicable Assignment Date, each Assignee shall be deemed a good faith purchaser of the applicable Assigned Leases and shall be entitled to the protections of Bankruptcy Code section 363(m).

5.      To the extent a Cure Amount is owed to any Landlord, the Cure Amount shall be fixed in the amount set forth in the Assigned Lease Schedule and, to the extent unpaid as of the date of this Order, shall be promptly paid in accordance with the terms of the applicable Assignment Agreement and section 365(b) of the Bankruptcy Code.  Any objection of any Landlord to the sale, assumption, or assignment of an Assigned Lease, or any Cure Amount, or additional adequate assurance of future performance, to the extent not otherwise resolved by agreement or disposed of by separate order of this Court, is hereby overruled.  There shall be no accelerations, assignment fees, increases, or any other fees charged to any of the Assignees or

4

Assignors as a result of the sale, assumption, and assignment of the Assigned Leases.  Upon the remittance of a Cure Amount by an Assignee or Assignor, as applicable, pursuant to the terms of this Order, and except as may be otherwise provided in any Assignment Agreement, the Landlord in receipt of such Cure Amount shall be barred from asserting any additional cure amounts or other claims with respect to the applicable Assigned Lease arising from or related to the period prior to the applicable Assignment Date.  For the avoidance of doubt, such Landlord shall be forever (i) barred from objecting to the Cure Amount and from asserting any additional cure or other amount with respect to the applicable Assigned Lease and (ii) barred and estopped from asserting or claiming against either the applicable Assignor or Assignee, or their respective property, that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the applicable Assigned Lease, or that there is any objection or defense to the assumption or assumption and assignment of the applicable Assigned Lease.  On and after the applicable Assignment Date, the applicable Assignee shall be responsible for paying (and shall be entitled to receive any credits for) all amounts outstanding under an Assigned Lease that are first billed or accrued and become due and payable on or after such Assignment Date, and the Assignee shall be responsible for performing and discharging all obligations and duties under the Assigned Lease that first come due on or after the Assignment Date; *provided*, *however*, that, if set forth in the applicable Assignment Agreement, the Assignee shall not be responsible for any amount due under an Assigned Lease that relates to any period prior to the Assignment Date, regardless of whether such amount remained unbilled as of the Assignment Date.  Notwithstanding anything to the contrary set forth herein, nothing shall impair or prejudice the rights of any Landlord with respect to the Global Debtors' available insurance coverage for third-party claims asserted in connection with the use by

one or more of the Global Debtors of any Assigned Premises and related to events that occurred prior to each applicable Assignment Date.

6. After each Assignment Date, all persons then in possession of the Assigned Premises shall surrender possession of the Assigned Premises to the applicable Assignee. All Personal Property owned by an Assignor remaining at an Assigned Premises on or after the applicable Assignment Date shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Assignment Date. The applicable Assignee may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without notice or liability to the Assignor or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition.

7. Upon each applicable Assignment Date, subject to payment of the Cure Amount, the applicable Assignor shall be relieved from any further liability with respect to the Assigned Lease pursuant to section 365(k) of the Bankruptcy Code, except to the extent set forth herein and as may be otherwise provided in the Assignment Agreements.

8. Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Assignment Agreement.

9. Solely with respect to the transactions contemplated by this Order and the Assignment Agreements, and except as otherwise set forth herein or agreed between a Landlord and Assignee party to a particular Assigned Lease, the following provisions of any Assigned Lease shall be unenforceable against the Assignee (the "Unenforceable Provisions"):

a. a provision prohibiting the Assignee's intended use of the Premises;

b.     a provision prohibiting necessary alterations to the Premises or signage required to convert the premises to the Assignee's intended use; *provided* such alterations are necessary to conform such store consistent with Assignee's intended use of the Premises and are done in a manner consistent with the Assigned Lease;

c.     a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Assigned Lease or an increase in rent or any other penalty by reason of the Assignor's cessation of retail operations before the sale and assignment, and/or any delay by the Assignee in reestablishing retail operations after the sale and assignment, to the extent any such provision does not permit Assignee to "go dark" until the date that is 365 days after the applicable Assignment Date;

d.     a provision conditioning assignment on the Landlord's consent, or requiring any payment to the Landlord as the price of assignment, or granting the Landlord the right to recapture the Premises following the assignment;

e.     a provision effecting forfeiture or a modification of any of the Assignor's rights or obligations presently in effect under the Assigned Lease upon an assignment by the Assignor of the Assigned Lease;

f.     a provision conditioning the Assignor's ability to assign its leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

g.     a provision restricting the Assignee's ability to place reasonable signage on the Premises; *provided*, that such signage is necessary by Assignee to

7

conform such store with the Assignee's intended use of the Premises and such placement is done in a manner consistent with the terms of the Assigned Lease;

h. a provision requiring the use of a certain tradename;

i. a provision regarding minimum sales revenues required to be satisfied at the premises covered by the Assigned Lease; and

j. any radius provisions in the Assigned Lease to the extent applicable to any additional stores located near the Premises owned or operated by the Assignee or one of its affiliates.

10. Any Landlord that did not object within the time set forth in the Motion is deemed to consent to the applicable Assignee's adequate assurance of future performance pursuant to section 363(b)(3) of the Bankruptcy Code, notwithstanding the foregoing Unenforceable Provisions. For the avoidance of doubt, and except as otherwise agreed to in writing between any Landlord and an Assignee, nothing in this Order shall be deemed to annul or vary any provision of an Assigned Lease other than the Unenforceable Provisions.

11. Solely with respect to the transactions contemplated by this Order and the Assignment Agreements, none of the Unenforceable Provisions shall apply to any of the Assignees in any respect and, without limiting the generality of the foregoing, no violation by an Assignor or Assignee of the Unenforceable Provisions under any Assigned Lease shall constitute an event of default under such Assigned Lease.

12. Notwithstanding any term of an Assigned Lease to the contrary, any extension, renewal option, or other rights contained in any Assigned Lease that purports to be personal only to an Assignor or to an entity named in such Assigned Lease or to be exercisable only by an

8

Assignor or by a named entity or an entity operating under a specific trade name may be freely exercised to their full extent by the applicable Assignee, in accordance with the terms of such Assigned Lease.

13.     Upon entry of this Order, this Order and the findings herein shall be binding upon all parties to the Assigned Leases and the Assignment Agreements.

14.     Upon the entry of this Order and the occurrence of the applicable Assignment Date, each Landlord party to an Assigned Lease shall accept and honor the assignment of the Assigned Lease to the applicable Assignee.

15.     Each Landlord shall reasonably cooperate and execute and deliver, within ten (10) days of any reasonable request of an applicable Assignee and at no cost to the Landlord, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties as contemplated under the applicable Assignment Agreement.

16.     The Assignors and Assignees are authorized to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes of this Order, to transfer the Assignors' interests in and to the Assigned Leases, in accordance with the terms of the Assignment Agreements, and to carry out the terms and conditions of the Assignment Agreements.

17.     The Assignees are not successors in interest to the Assignors (other than with respect to the Assignors' rights and obligations under the Assigned Leases that are first billed and accrued and become due and payable after the Assignees take assignment thereunder as provided for under the applicable Assignment Agreements), or their bankruptcy estates as a result of the Assignees taking title or possession of the applicable Assigned Leases and Assigned Premises, and

the Assignees are not assuming any liabilities or obligations of the Assignors or their bankruptcy estates, except as may be specifically provided for in the Assignment Agreements or any side letters that may be entered into by and between applicable Assignees and Landlords.

18.     Any party that did not object within the time set forth in the Motion is deemed to consent to the sale, assumption, and assignment of the Assigned Leases, and the satisfaction of the requirements of sections 365 of the Bankruptcy Code.  Any remaining objections to the sale, assumption, and assignment of the Assigned Leases that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

19.     Any provision in an Assigned Lease regarding percentage rent to the extent of an Assignor's sales prior to the applicable Assignment Date shall not be imputed against the applicable Assignee and no percentage rent is due and owing by such Assignee for any period prior to such Assignment Date.  Such Assignee shall be liable for percentage rent, if any is due, for the prorated portion of the calendar year remaining after the Assignment Date, for a partial calendar year, as if the term began on the Assignment Date (and the Assignee shall not be liable to pay any percentage rent based upon sales that occurred prior to the Assignment Date) and no percentage rent is due and owing by the Assignee for the period prior to the Assignment Date; *provided*, *however*, such Assignee shall not be liable for percentage rent during any "go-dark" period following the Assignment Date.

20.     To the extent there is any inconsistency between the terms of this Order and the terms of an Assignment Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

21.     To the extent that an Assignee and a Landlord enter into a side letter with respect to an Assigned Lease, such side letter shall govern the rights and obligations of the Assignee and the Landlord with respect to the matters addressed in such side letter.   For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

22.     The failure to identify any particular provision of an Assignment Agreement or related document in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that such Assignment Agreement and all other related documents be authorized and approved in their entirety pursuant to this Order.

23.     The Assignment Agreements and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the applicable Assignor's estate.

24.     If any Assignor has deposited monies with a Landlord as a security deposit or other arrangement, such Landlord may not setoff or recoup or otherwise use such deposit without the prior authority of this Court.

25.     Notwithstanding anything to the contrary in this Order, any Assignment Agreement or any side letters, none of the Assignors' insurance policies (and/or any agreements related thereto between any of the Assignors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) related to any Premises shall be abandoned, sold, assigned, or otherwise transferred without the prior written consent of the applicable Assignee and the applicable insurer and/or third-party administrator, such consent not to be unreasonably withheld.

11

26.     Except as otherwise set forth herein, with respect to each Assigned Lease, nothing in this Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Global Debtor that did not exist as of the applicable Assignment Date, (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Assignment Date, or (c) create any rights in favor of or enhance the priority or status of any claim held by any party.

27.     The requirements of Bankruptcy Rules 2002, 6006, and 6007 are satisfied.

28.     Notice of the Motion as set forth therein is good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures are satisfied by such notice.

29.     The Global Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

30.     Notwithstanding the applicability of Bankruptcy Rule 6004(h) and 6006(d), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry. Time is of the essence in effecting the sale and assignment transactions contemplated herein, and the Assignors and Assignees intend to close the Assigned Lease sale transactions as soon as practicable.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

31.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, including the Assignment Agreements, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith; *provided*, *however*, that this Court shall not have jurisdiction over landlord/tenant disputes arising subsequent to the applicable Assignment Date

13

that do not involve this Order or the applicable Assignor, including but not limited to disputes arising under any side letter entered into between any Assignee and any Landlord.

Signed: April 16, 2026

_____
Alfredo R Pérez
United States Bankruptcy Judge

13

## Schedule 1

| Assignee | Consideration | Assignor | Landlord | Address | Store Number | Cure Amount |
|---|---|---|---|---|---|---|
| Ross Dress for Less, Inc. | $2,000,000.00 | Saks & Company LLC | Metro Pointe Retail Associates II | 901 S. Coast Dr., Ste. 100, Costa Mesa, CA 92626 | 814 | $16,136.30 |
| | | Saks & Company LLC | Pacific/Youngman-Woodland Hills | 21500 Victory Blvd., Woodland Hills, CA 91367 | 846 | $100,694 |
| Cavender Stores, L.P. | $500,000 *plus* assumption of Cure Amount | Saks & Company LLC | BVA Rim GP LLC | 5819 Worth Pkwy. San Antonio, TX 78257 | 739 | $64,524 |

**Exhibit 1**

**Ross Assumption and Assignment Agreement**

## <u>AMENDED AND RESTATED ASSUMPTION AND ASSIGNMENT AGREEMENT</u>

This AMENDED AND RESTATED ASSUMPTION AND ASSIGNMENT AGREEMENT (this "<u>Agreement</u>"), dated as of April 13, 2026, is between Saks & Company LLC, a Delaware limited liability company ("<u>Assignor</u>") and Ross Dress For Less, Inc., a Virginia corporation ("<u>Assignee</u>").

### <u>RECITALS</u>

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (such title, the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District Texas (the "<u>Bankruptcy Court</u>"), which chapter 11 case is being jointly administered under the lead case captioned *In re Saks Global Enterprises LLC, et al.*, Case No. 26-90103 (ARP) (the "<u>Bankruptcy Case</u>");

WHEREAS, subject in all events to entry of one or more final orders of the Bankruptcy Court in the Bankruptcy Case (each, an "<u>Approval Order</u>") approving and authorizing Assignor's execution of this Agreement and the consummation of the transactions contemplated by this Agreement (the "<u>Transactions</u>"), Assignor has agreed to assign and Assignee has agreed to assume the real property leases listed on the attached **<u>Schedule A</u>** (each referred to as a "<u>Lease</u>" and, together, the "<u>Leases</u>") with respect to the premises set forth on **<u>Schedule A</u>** (the "<u>Premises</u>"); and

WHEREAS, this Agreement amends and restates that certain Assumption and Assignment Agreement, dated as of March 10, 2026, by and between the Assignor and the Assignee.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties ("<u>Parties</u>") hereto agree as follows:

### <u>AGREEMENT</u>

1. <u>Assumption and Assignment</u>. Effective upon (a) entry of the applicable Approval Order, (b) the Parties' execution of this Agreement, and (c) payment of the Purchase Price, as set forth herein:

(a) Assignor shall sell, transfer, convey, assign and set over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to each Lease or Leases assignment of which was authorized in the applicable Approval Order, free and clear, in each case, to the extent provided in the applicable Approval Order, of leasehold mortgages (if any), subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims liens, mechanics liens, bills, interests, any rights under Section 365(h) of the Bankruptcy Code, and any other rights or encumbrances, in each case to the fullest extent permitted by applicable law.

(b) Assignee assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to each Lease assigned to Assignee arising from and after the applicable Closing Date.

(c)     The assumption and assignment of each Lease pursuant to this Agreement (each, a "Closing") shall occur on or before the date that is seven business days following entry of the applicable Approval Order for such Lease or Leases (each, a "Closing Date").  On a Closing Date, Assignor shall deliver possession of the applicable Premises to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for each such Premises to Assignee.

2.      Payment of Purchase Price.

(a)     Prior to the date hereof, Assignee delivered by wire transfer to Citizens Bank NA (the "Escrow Account") $420,000.00 (the "Deposit") and Assignor acknowledges receipt of the Deposit.  The Deposit shall not bear any interest and shall be held in the Escrow Account and shall be credited and applied toward payment of the Purchase Price at the Closing.  In addition to all other rights and/or remedies to which Assignor may be entitled under the circumstances, Assignor shall be entitled to receive and retain the Deposit in the event the Transactions fail to close by reason of Assignee's material breach of this Agreement.  Assignee shall be entitled to the return of the Deposit in all other events.

(b)     Assignee shall, on or before each Closing Date, deliver by wire to Assignor (in accordance with such written wire transfer instructions as Assignor may provide to Assignee) that portion of the aggregate purchase price of $3,000,000.00 for the applicable Lease(s) set forth on **Schedule A** (the "Purchase Price") which is in excess of the amount of the Deposit (such amount in excess of the Deposit, the "Remaining Price").

(c)     If Assignor has paid any rent and other charges under a Lease for the month in which the applicable Closing Date occurs and any subsequent months, there shall be an adjustment or pro-ration of the Purchase Price on account of any such rent or other charges paid by Assignor under the Lease for the month in which such Closing Date occurs and any subsequent months such that, Assignee shall pay Assignor, in addition to the Purchase Price, for any such rent or other charges paid by Assignor with respect to any periods occurring after the Closing Date, which amounts shall be pro-rated on a daily basis.

(d)     Except as set forth in Section 2(c) of this Agreement, Assignee shall have no obligation to pay any amounts to cure any monetary defaults (including any failure to pay any item of rent including CAM, real estate taxes, and insurance and actual pecuniary losses incurred by the landlord/lessor under the Leases (the "Landlords")) or non-monetary defaults under the Leases that arose or occurred prior to the mutual execution of this Agreement, pursuant to section 365(b) of the Bankruptcy Code (the "Cure Costs"), and the payment of the Cure Costs shall be the sole responsibility of the Assignor and be paid by the Assignor to the Landlords from the Purchase Price.

(e)     If a Closing has not occurred by April 30, 2026 (the "Outside Date"), then either Assignor or Assignee may terminate this Agreement with respect to the applicable Lease without any liability hereunder upon written notice to the other, the Lease may be rejected by Assignor in the Bankruptcy Case and the remaining Deposit (if any) will be returned to Assignee in full; *provided*, *however*, that a Party whose material breach of this Agreement caused the failure of the Closing to occur prior to the Outside Date shall not have the right to terminate this

2

Agreement.  A material breach shall mean: (i) as to Assignor: (x) the Assignor's failure to use commercially reasonable efforts to obtain Bankruptcy Court approval of this Agreement or entry of an Approval Order; or (y) Assignor's refusal to undertake the Closing upon satisfaction of all conditions set forth in Section 5(b), and (ii) as to Assignee, the failure to pay the Remaining Price, or any other amounts payable by Assignee pursuant to this Agreement upon satisfaction of all conditions set forth in Section 5(a) or Assignee's failure to provide "adequate assurance of future performance" of the applicable Lease to the satisfaction of the Bankruptcy Court.  A Party asserting the occurrence of a material breach by the other Party hereto shall provide such other Party written notice of such breach at the applicable email address(es) set forth on the signature page of this Agreement and in the event (and only in the event) that such breach is curable during such period, not less than three (3) days to cure such breach.

3.      No Further Liability.  From and after each Closing Date, Assignor shall have no further obligations and duties with respect to the applicable Leases except Assignor's obligation to pay all Cure Costs as required pursuant to Section 2(d) of this Agreement.  Assignee shall be responsible for paying (and shall be entitled to receive any credits for) all amounts outstanding under such Leases due or becoming due on or after the applicable Closing Dates and shall be responsible for performing and discharging all obligations and duties under the Leases that first accrue or come due on or after such Closing Dates; *provided, however*, that Assignee shall not be responsible for any amount due under a Lease that relates to any period prior to the Lease's Closing Date, regardless of whether such amount remained unbilled as of the Closing Date, including, but not limited to, accrued but unbilled adjustments for CAM, real estate taxes, and insurance arising from or related to any period prior to the Closing Date.

4.      Approval of the Bankruptcy Court.  Assignor shall, at its sole cost and expense, use Assignor's commercially reasonable efforts to obtain entry of each Approval Order and comply with all of the procedures and other requirements (including notice requirements) contained in any order of the Bankruptcy Court governing the assumption and assignment of the Leases.

5.      Conditions to Closing.

(a)      Assignee's obligations under this Agreement are subject to the timely fulfillment of the conditions set forth in this Section 5(a) on or before each Closing Date. Each condition may be waived in whole or in part only by written notice of such waiver from Assignee to Assignor:

(i)      Assignor shall have performed and complied in all material respects with all of the other terms of this Agreement to be performed and complied with by it prior to or at a Closing including, without limitation, Assignor's obligation to pay any Cure Cost to the Landlord under the applicable Lease, and Assignor's obligation to deliver possession of the respective Premises to Assignee as provided in Section 1(c) of this Agreement.

(ii)      An Approval Order shall have been entered in the Bankruptcy Case and be acceptable to Assignee in its reasonable discretion, and the Approval Order shall be unstayed.

3

(b)     Assignor's obligations under this Agreement are subject to the timely fulfillment of the conditions set forth in this Section 5(b) on or before a Closing Date. Each condition may be waived in whole or in part only by written notice of such waiver from Assignor to Assignee:

(i)     Assignee shall have performed and complied in all material respects with all of the other terms of this Agreement to be performed and complied with by Assignee prior to or at the Closing, including, without limitation, having delivered the Remaining Price and all other amounts payable to Assignor by Assignee under this Agreement.

(ii)     An Approval Order shall have been entered in the Bankruptcy Case and be acceptable to Assignor.

6.     Further Assurances.  At any time and from time to time after the date this Agreement is mutually executed, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents (collectively, "Instruments") and take such other action as Assignee may reasonably request and to the extent necessary in order to more effectively transfer, convey, and assign to Assignee Assignor's rights in, to, or under the Leases; *provided*, *however*, in no event shall the foregoing be deemed to require Assignor to take any action or to execute and/or deliver any Instrument which would cause Assignor to incur any material cost or expense or otherwise impose upon Assignor any greater obligations than those which are imposed upon Assignor pursuant to the other provisions of this Agreement.  Assignee shall cooperate in all reasonable respects, in Assignor's efforts to obtain entry of each Approval Order and otherwise consummate the Transactions (including, without limitation, providing such information as may be required to demonstrate "adequate assurance of future performance" of the Leases to the satisfaction of the Bankruptcy Court).

7.     "As Is Where Is" Transactions.  Assignee acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Leases.  Without limiting the foregoing, Assignor disclaims any warranty (express or implied) of merchantability or fitness for the Premises.  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Premises and all such other matters relating to or affecting the Leases as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Leases, Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Leases "AS IS" and "WHERE IS."

8.     Abandonment.  Subject to Bankruptcy Court approval, upon a Closing, any personal property remaining at the applicable Premises is deemed abandoned and Assignee is free to dispose of or utilize any personal property without further notice or liability to the Assignor or third parties; *provided* that Assignee shall provide Assignor fourteen (14) days' notice of the removal of any point-of-sale ("POS") systems from the Premises, during which time Assignee shall not utilize or dispose of any such POS systems and shall use commercially reasonable efforts to provide access to the Premises to Assignor to remove any such POS systems.

9.      Broker Obligations.  Assignor and Assignee each represent and warrant to the other that (other than A&G Realty Partners, LLC ("A&G"), for whose commission, fees, or other compensation (the "A&G Commission") Assignor shall be solely responsible pursuant to a separate agreement with A&G), such Party has not incurred any liability to any broker or agent with respect to the payment of any commission or other compensation regarding the consummation of the Transactions.  If any claims for commissions, fees or other compensation, including, without limitation, brokerage fees, finder's fees, or commissions are ever asserted against Assignor or Assignee in connection with the Transactions (other than the A&G Commission, which shall be handled and paid by Assignor, as set forth above), all such claims shall be handled and paid by the Party whose actions form the basis of such claim and such Party shall indemnify, defend (with counsel reasonably satisfactory to the Party entitled to indemnification hereunder), protect and save and hold the other harmless from and against any and all such claims or demands asserted by any person, firm or corporation in connection with the Transactions.  The indemnification obligations under this Section 9 shall survive (and continue in full force and effect following) the consummation of the Transactions.

10.      Authority to Act. Each of the Parties respectively represents and warrants that each such Party has the absolute and unfettered power, right and authority to enter into this Agreement take all actions contemplated by this Agreement.

11.      Entire Agreement.  This Agreement, the exhibits hereto and the other items to be delivered as conditions precedent to the effectiveness of this Agreement, contain the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.

12.      Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to conflicts of law principles that would require the application of laws of another jurisdiction.

13.      Jurisdiction.  The Parties consent to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters arising under or relating to this Agreement.  The Parties irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.  For the avoidance of doubt, Assignee does not consent to the jurisdiction of the Bankruptcy Court regarding any dispute between Assignee and a Landlord arising under or related to a Lease following the applicable Closing.

14.      No Reliance.  Each Party represents and warrants that in entering into this Agreement, it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  Each of the Parties respectively represents and warrants that no other Party to this Agreement, nor any agent or attorney of any such Party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any Party to execute this Agreement.  Each of the Parties further acknowledges that such Party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

5

15.     Construction.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

16.     Execution in Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Electronic signature systems such as "PDF" or "DocuSign" format may be used in place of wet signatures and shall have the same force and effect for all purposes as original signatures, even if the dates or time stamps on the document are not identical in all respects.  Each Party intends to be legally bound by the signatures on such PDF or DocuSign documents, is aware that the other Party will be rely on the PDF or DocuSign signatures and waives all defenses to the enforcement of this Agreement based on the use of PDF or DocuSign Signature.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail or DocuSign or similar electronic delivery system, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces and will be binding upon such Party.

17.     Attorneys' Fees. In the event that either Party brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that action or proceeding shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.  As used herein, the term "prevailing Party" shall mean the Party in whose favor a judgment, decree or final order is rendered, whether or not damages are actually awarded to such Party.

18.     Miscellaneous.

(a)     The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an instrument in writing signed by each of the Parties to this Agreement.

(b)     This Agreement and each of its provisions are binding upon and shall inure to the benefit of Assignor's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)     Each of the Parties shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(d)     Each of the Parties respectively represents and warrants that each such Party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the Parties to this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**

**Saks & Company LLC**

By: _____

Name: _____

Its:_____

**Email:**

**ASSIGNEE:**

**Ross Dress for Less, Inc.**

By: _____

Name: Jeff Sealy_____

Its: Group Senior Vice President, Real Estate_____

**Email: Jeff.Sealy@ross.com**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**

**Saks & Company LLC**

By: *Mindy Novack*

Name: Mindy Novack

Its: Authorized Signatory

**Email:mindy.novack@saks.com**

**ASSIGNEE:**

**Ross Dress for Less, Inc.**

By: _____

Name: Jeff Sealy

Its: Group Senior Vice President, Real Estate

**Email: Jeff.Sealy@ross.com**

## SCHEDULE A

| Store # | Address | Landlord | Assignor | Consideration |
|---|---|---|---|---|
| 814 | 901 S. Coast Drive, Suite 100 Costa Mesa, CA 92626 | Metro Pointe Retail Associates II | Saks & Company LLC | $1,000,000 |
| 846 | 21500 Victory Blvd. Woodland Hills, CA 91367 | Pacific/Youngman-Woodland Hills | Saks & Company LLC | $1,000,000 |
| 414 | 356 Chimney Rock Road Bridgewater, NJ 08805 | Bridgewater Regency, LLC | Saks & Company LLC | $1,000,000 |

## Exhibit 2

**Cavender's Assumption and Assignment Agreement**

**AMENDED AND RESTATED ASSUMPTION AND ASSIGNMENT AGREEMENT**

This AMENDED AND RESTATED ASSUMPTION AND ASSIGNMENT AGREEMENT (this "Agreement"), dated as of April 8, 2026, is by and between the Saks & Company LLC (the "Assignor") and Cavender Stores, L.P. ("Assignee").

**RECITALS**

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (such title, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District Texas (the "Bankruptcy Court"), which cases are being jointly administered under the lead case captioned *In re Saks Global Enterprises LLC, et al.*, Case No. 26-90103 (ARP);

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the real property lease listed on **Schedule A** attached hereto (the "Lease") with respect to the premises set forth on **Schedule A** (the "Premises," and such transaction, the "Transaction") pursuant to the terms and conditions of an order of the Bankruptcy Court approving such assignment; and

WHEREAS, this Agreement amends and restates that certain Assumption and Assignment Agreement, dated as of March 11, 2026, by and between the Assignor and the Assignee.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties ("Parties") hereto agree as follows:

**AGREEMENT**

1.      Assumption and Assignment.  Effective upon (a) the Bankruptcy Court's approval of the Transaction and the and Assignee's entry into and performance under this Agreement and (b) receipt of the payment of the Purchase Price as set forth below:

(a)      Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Lease.

(b)      Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Lease.

2.      Payment of Purchase Price.  Assignee shall, on or before the date upon which the Closing occurs, deliver the purchase price for the Lease in the amount of five hundred thousand dollars and 00/100 cents ($500,000) (the "Purchase Price"), net of any deposits made prior to the date hereof in respect of this Agreement, in immediately available funds wired to the account specified by Assignor.  Together with the Purchase Price, Assignee shall pay to Assignor a purchase price adjustment respecting rent and other charges paid by Assignor under the Lease for the months in which the Closing (hereinafter defined) occurs and any subsequent months.  If the assumption and assignment of the Lease does not occur by April 30, 2026, Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were

in fact paid in connection with the Lease on and after April 30, 2026.  The Parties acknowledge that if the assumption and assignment of the Lease (the "Closing") does not occur before April 30, 2026, the Lease may thereafter be rejected in the Bankruptcy Court proceeding referenced above.

3.      Assumption of Liabilities.   In addition to assuming all remaining obligations that exist with respect to the Lease, including, but not limited to, accrued but unbilled adjustments for CAM, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Lease.

4.      No Further Liability of Assignor.  From and after Closing, Assignor shall have no further obligations and duties with respect to the Lease.

5.      Further Assurances.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Lease.

6.      "As Is Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Lease.  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for the Premises.  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Premises and all such other matters relating to or affecting the Lease as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Lease, Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Lease "AS IS" and "WHERE IS."

7.      Abandonment.  Subject to Bankruptcy Court approval, upon Closing, any personal property remaining at the Premises is deemed abandoned and Assignee is free to dispose of or utilize any personal property without further notice or liability to the Assignor or third parties; *provided* that Assignee shall provide Assignor fourteen (14) days' notice of the removal of any point-of-sale ("POS") systems from the Premises, during which time Assignee shall not utilize or dispose of any such POS systems and shall use commercially reasonable efforts to provide access to the Premises to Assignor to remove any such POS systems.

8.      Compliance With Law.   Assignee hereby agrees to comply with all applicable laws.  Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

9.      Authority to Act.  Each of the Parties respectively represents and warrants that each such Party has the absolute and unfettered power, right and authority to enter into this Agreement take all actions contemplated hereby.

10.     Entire Agreement.  This Agreement, the exhibits hereto and the other items to be delivered as conditions precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.

2

11.     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to conflicts of law principles that would require the application of laws of another jurisdiction.

12.     Jurisdiction.  The Parties consent to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

13.     No Reliance.  Each Party represents and warrants that in entering into this Agreement, it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  Each of the Parties respectively represents and warrants that no other Party to this Agreement, nor any agent or attorney of any such Party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any Party to execute this Agreement.  Each of the Parties further acknowledges that such Party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

14.     Construction.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

15.     Execution in Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

16.     Attorneys' Fees.  Each of the Parties agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing Party shall be entitled to recover its costs and attorneys' fees.

17.     Miscellaneous.

(a)     The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the Parties hereto.

(b)  This Agreement and each of its provisions are binding upon and shall inure to the benefit of Assignor's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)  Each of the Parties shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the Parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)  Each of the Parties shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)  Assignor acknowledges and agrees that Assignee shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Assignor with respect to this Agreement.

(f)  Each of the Parties respectively represents and warrants that each such Party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the Parties to this Agreement.

*[Signatures appear on following page]*

4

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR**
**SAKS & COMPANY LLC**

By:_____

Print Name:_____

Its:_____

**ASSIGNEE**
**CAVENDER STORES, L.P.**

By:_____

Print Name:_*R. TODD NODEN*_

Its:_*COO & CFO*_

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.


**ASSIGNOR**
**SAKS & COMPANY LLC**

By:

Print Name: Mindy Novack

Its: Authorized Signatory


**ASSIGNEE**
**CAVENDER STORES, L.P.**

By:

Print Name:

Its:

## Schedule A

| Site # | Address | Landlord |
|--------|---------|----------|
| 739 | 5819 Worth Parkway<br>San Antonio, TX 78257 | BVA Rim GP LLC |