United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 05, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| SAKS GLOBAL ENTERPRISES LLC, *et al.,*[1] | Case No. 26-90103 (ARP) |
| Debtors. | (Jointly Administered) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
APPROVING THE SO5 DIGITAL DEBTORS' DISCLOSURE STATEMENT
ON A FINAL BASIS AND CONFIRMING THE SECOND MODIFIED JOINT
CHAPTER 11 PLAN OF LIQUIDATION**

(Related to Docket Nos. 2007, 2009, 2010, 2158, 2159, 2173, 2213)

The SO5 Digital Debtors having[2]:

a. commenced, on January 14, 2026 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court");

b. continued to operate their businesses and manage their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed, on April 24, 2026,

   i. *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the SO5 Digital Debtors* [Docket No. 2009];

   ii. *Joint Chapter 11 Plan of Liquidation of the SO5 Digital Debtors* [Docket No. 2007]; and

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Saks. The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281. Bradley Arant Boult Cummings LLP is counsel for the following Debtors: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively, the "SO5 Digital Debtors"). Haynes and Boone, LLP and Willkie Farr & Gallagher LLP are counsel for the remaining Debtors (collectively, the "Global Debtors").

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Disclosure Statement, or Disclosure Statement Order (each as defined below), as applicable. The rules of interpretation set forth in Section I.B of the Plan shall apply herein.

    iii.   *Emergency Motion of the SO5 Digital Debtors for an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation Procedures and Solicitation Package; (III) Scheduling a Combined Hearing; (IV) Establishing Procedures for Objecting to the Plan and Final Approval of the Disclosure Statement; (V) Approving the Form, Manner, and Sufficiency of Notice of the Combined Hearing; and (VI) Granting Related Relief* filed on April 24, 2026 [Docket No. 2010];

d.   filed, on May 1, 2026,

    i.   *Modified Joint Chapter 11 Plan of Liquidation* [Docket No. 2158];

    ii.   *Amended Disclosure Statement for the Modified Joint Plan of Liquidation of SO5 Digital Debtors* [Docket No. 2159]; and

    iii.   *Hede Declaration in Support of Conditional Approval of Disclosure Statement* [Docket No. 2167-3];

e.   obtained, on May 1, 2026, the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation Procedures and Solicitation Package; (III) Scheduling a Combined Hearing; (IV) Establishing Procedures for Objecting to the Plan and Final Approval of the Disclosure Statement; (V) Approving the Form, Manner, and Sufficiency of Notice of the Combined Hearing; and (VI) Granting Related Relief*, [Docket No. 2173] (the "<u>Disclosure Statement Order</u>");

f.   filed on May 4, 2026,

    i.   *Notice of Modified Joint Plan of Liquidation of the SO5 Digital Debtors* [Docket No. 2184];

    ii.   *Notice of Disclosure Statement for the Modified Joint Plan of Liquidation of the SO5 Digital Debtors* [Docket No. 2185]; and

    iii.   *Notice of SO5 Digital Debtors' Notice of Filing (I) Solicitation Version of Modified Joint Chapter 11 Plan of the SO5 Digital Debtors and (II) Solicitation Version of Disclosure Statement for the Modified Joint Chapter 11 Plan of the SO5 Digital Debtors* [Docket No. 2186];

g.   filed on May 7, 2026, the *Certificate of Service re: Notice Global Debtors' Notice of Rescheduled Virtual Hearing of the Disclosure Statement Motion (Docket No. 1989), Order (I) Authorizing and Approving Global Debtors' (A) Key Employee Incentive Plan and (B) Non-Insider Compensation Program and (II) Granting Related Relief (Docket No. 1993), Order (I) Expanding Relief Sought in Employee Wages Motion and (II) Granting Related Relief (Docket No. 1994), Order (I) Authorizing Entry Into and Performance Under the New Capital Commitment Letter, (II) Approving Payment and Allowance of Related Premiums, Fees, and*

*Expenses as Administrative Expense Claims, and (III) Granting Related Relief (Docket No. 1997), Motion to Reject Lease or Executory Contract The SO5 Digital Debtor's Third Omnibus Motion for Entry of Order, Pursuant to Sections 105(a) and 365(a) of the Bankruptcy Code, Authorizing the SO5 Digital Debtors to Reject Certain Executory Contracts (Docket No. 2001), Chapter 11 Plan of Reorganization (Docket No. 2007), Motion to Reject Lease or Executory Contract Global Debtors' Eighth Omnibus Motion for Entry of Order, Pursuant to Sections 105(a) and 365(a) of the Bankruptcy Code, Authorizing Global Debtors to Reject Certain Executory Contracts, Effective as of the Rejection Date (Docket No. 2008), Disclosure Statement (Docket No. 2009), and Emergency Motion of the SO5 Digital Debtors for an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation Procedures and Solicitation Package; (III) Scheduling a Combined Hearing; (IV) Establishing Procedures for Objecting to the Plan and Final Approval of the Disclosure Statement; (V) Approving the Form, Manner, and Sufficiency of Notice of the Combined Hearing; and (VI) Granting Related Relief* [Docket No. 2222];

h.  filed, on May 7, 2026, the *Affidavit Re: Publication of the New York Times Regarding the Notice of Order (I) Conditionally Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation Procedures and Solicitation Package; (III) Scheduling a Combined Hearing; (IV) Establishing Procedures for Objecting to the Plan and Final Approval of the Disclosure Statement; (V) Approving the Form, Manner, and Sufficiency of Notice of the Combined Hearing; and (VI) Granting Related Relief* [Docket No. 2213] (the "Publication Affidavit");

i.  filed, on May 14, 2026, the *Certificate of Service re: Order (I) Conditionally Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation Procedures and Solicitation Package; (III) Scheduling a Combined Hearing; (IV) Establishing Procedures for Objecting to the Plan and Final Approval of the Disclosure Statement; (V) Approving the Form, Manner, and Sufficiency of Notice of the Combined Hearing; and (VI) Granting Related Relief (Docket No. 2173) and Notice of Disclosure Statement for the Modified Joint Plan of Liquidation of the SO5 Digital Debtors* [Docket No. 2289] (the "Solicitation Affidavit");

j.  filed, on May 26, 2026 , the *Notice of Filing of Plan Supplement* [Docket No. 2354] (the "First Plan Supplement");

k.  filed, on June 5, 2026, the *Notice of Filing of Second Amended Plan Supplement* [Docket No. 2654] (together with the First Plan Supplement, and as may be amended, amended and restated, modified, or supplemented, the "Plan Supplement" and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "Plan");

l.  filed, on June 4, 2026, the *Declaration of Leticia Sanchez on Behalf of Stretto, Inc. Regarding the Solicitation and Tabulation of Votes on the Amended Chapter 11 Plan* [Docket No. 2612] (the "Voting Report");

3

m.  filed, the *Declaration of Andrew D.J. Hede in Support of (I) Final Approval of the Amended Disclosure Statement for the Modified Joint Chapter 11 Plan of Liquidation of the SO5 Digital Debtors and (II) Confirmation of the Modified Joint Plan of Liquidation of the SO5 Digital Debtors* (the "Hede Confirmation Declaration", on June 3, 2026 [Docket No. 2566] and amended on June 4, 2026 [Docket 2641];

n.  filed, on June 4, 2026 the *Debtors' Memorandum of Law in Support of (I) Final Approval of the Disclosure Statement, and (II) Confirmation of the Second Modified Joint Chapter 11 Plan of the SO5 Digital Debtors* [Docket No. 2647] (the "Confirmation Brief").

And this Court having:

o.  entered the Disclosure Statement Order on May 1, 2026;

p.  set June 1, 2026 at 4:00 p.m. (prevailing Central Time) as the deadline for Holders of Claims in the Voting Classes to accept or reject the Plan (the "Voting Deadline");

q.  set June 1, 2026 at 4:00 p.m. (prevailing Central Time), as the deadline to file and serve objections to the confirmation of the Plan (the "Combined Objection Deadline");

r.  set June 5, 2026 at 9:00 a.m. (prevailing Central Time) as the date and time for the commencement of the Combined Hearing;

s.  reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Voting Report, Solicitation Affidavit, the Hede Confirmation Declaration, the Confirmation Brief, the Combined Hearing Notice, and all Filed pleadings, exhibits, statements, responses, and comments regarding approval of the Disclosure Statement and confirmation of the Plan, including all objections, statements, and reservations of right filed by parties in interest on the docket in these Chapter 11 Cases;

t.  held the Combined Hearing on June 5, 2026;

u.  considered all oral representations, live testimony, written direct testimony, exhibits, documents, filings, and other evidence presented at the Combined Hearing;

v.  overruled any and all objections to approval of the Disclosure Statement, the Plan, Confirmation, and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated;

w.  taken judicial notice of all papers and pleadings filed in these Chapter 11 Cases, all evidence proffered or adduced in these Chapter 11 Cases, and all arguments made

4

at hearings held before the Court during the pendency of these Chapter 11 Cases; and

x.   entered rulings on the record at the Combined Hearing.

NOW THEREFORE, the Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and confirmation of the Plan and other evidence presented at the Combined Hearing and the record in these Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      This Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code constitutes a core proceeding as defined in 28 U.S.C.

5

§ 157(b)(2). This Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

**C.      Eligibility for Relief.**

3.      The SO5 Digital Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of these Chapter 11 Cases.**

4.      On the Petition Date, each of the SO5 Digital Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code. In accordance with the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 46], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1. The SO5 Digital Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner.

**E.      Appointment of the Creditors' Committee.**

5.      On January 27, 2026, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [Docket No. 480]. No other statutory committee has been requested or appointed in these Chapter 11 Cases.

**F.      Burden of Proof—Confirmation of the Plan**

6.      The SO5 Digital Debtors, as proponents of the Plan, have met their burden of proving the applicable elements under sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard for confirmation of a plan. In

addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**G.      Judicial Notice.**

7.      The Court takes judicial notice of (and deems admitted into evidence for purposes of confirmation of the Plan) the docket of these Chapter 11 Cases maintained by the clerk of the Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases.

**H.      Notice.**

8.      As evidenced by the Solicitation Affidavit and the Voting Report, the SO5 Digital Debtors provided due, adequate, and sufficient notice of the commencement of these Chapter 11 Cases, the Disclosure Statement, the Plan, the Combined Hearing, and the opportunity to opt in or opt out of the Third-Party Release, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement and the Plan, to the full creditor matrix. Further, the Combined Hearing Notice was published in *The New York Times* on May 7, 2026 and in the *Houston Chronicle* on May 7, 2026, in compliance with Bankruptcy Rule 2002(l), as evidenced by the Publication Affidavit. Such notice was adequate and sufficient under the facts and circumstances of these Chapter 11 Cases in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002 and 3017, the Bankruptcy Local Rules, and the Disclosure Statement Order. No other or further notice is or shall be required.

**I.      Disclosure Statement.**

9.      The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section

1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the SO5 Digital Debtors, the Plan, and the transactions contemplated therein. The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b).

**J.      Ballots.**

10.      Holders of Claims in Classes 4 and 5 are entitled to vote to accept or reject the Plan (the "Voting Classes").

11.      The form of ballot attached as Exhibit 2 to the Disclosure Statement Order (the "Ballot") that the SO5 Digital Debtors used to solicit votes to accept or reject the Plan from Holders in the Voting Classes adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for Holders in the Voting Classes to vote to accept or reject the Plan.

**K.      Solicitation.**

12.      As described in the Voting Report, the solicitation of votes on the Plan complied with the Solicitation Procedures set forth in the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act.

13.      As described in the Voting Report and the Solicitation Affidavit, as applicable, the Solicitation Packages, including the Plan, the Disclosure Statement, the Combined Hearing Notice, and the Ballots were transmitted and served, including to all Holders in the Voting Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Bankruptcy Local Rules, the Disclosure Statement Order, and any applicable nonbankruptcy law. Transmission and service of the

8

Solicitation Packages was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No further notice is required.

14.     As set forth in the Voting Report and the Solicitation Affidavit, the Solicitation Packages were distributed to the Holders in the Voting Classes that held a Claim as of April 28, 2026 (the "Voting Record Date"). The establishment and notice of the Voting Record Date were reasonable and sufficient.

15.     The period during which the SO5 Digital Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for each Holder in a Voting Class to make an informed decision to accept or reject the Plan.

16.     Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Classes 1, 2, and 3 (collectively, the "Unimpaired Classes") are Unimpaired and conclusively presumed to have accepted the Plan. At the time of solicitation, the SO5 Digital Debtors were not required to solicit votes from the Holders of Claims and Interests in Classes 6, 7 and 8 (collectively, the "Deemed Rejecting Classes"), which were Impaired and deemed to reject the Plan (together with the Unimpaired Classes, the "Non-Voting Classes").

17.     The SO5 Digital Debtors served the Notice of Non-Voting Status Package, including the Release Opt-Out Form or Release Opt-In Form, as applicable and pursuant to the Plan and the Disclosure Statement Order, and the Combined Hearing Notice on all Holders of Claims or Interests in the Non-Voting Classes. The Notice of Non-Voting Status Package and Release Opt-Out Form or Release Opt-In Form, as applicable, informed recipients of (i) their status as holders or potential holders of Claims or Interests in Non-Voting Classes, (ii) provided the full text of the Third-Party Release set forth in the Plan, and (iii) included a form (or instructions to access a form) by which holders could elect to opt out of the Third-Party Release.

18.     The solicitation-related notices adequately summarized the material terms of the Plan, including classification and treatment of claims and the Third-Party Release. Further, because a Release Opt-Out Form or Release Opt-In Form, as applicable, was included in both the Ballots and the solicitation-related notices, stakeholders, including Holders in Non-Voting Classes, was provided with the means by which to opt in/opt out of the Third-Party Release whichever was applicable.

**L.     Voting.**

19.     As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement, and any applicable non-bankruptcy law. Classes 4 and 5 voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code. Based on the foregoing, and as evidenced by the Voting Report, at least one Impaired Class of Claims (excluding the acceptance by any insiders of the SO5 Digital Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

**M.     Plan Supplement.**

20.     On May 26, 2026, and June 5, 2026, the SO5 Digital Debtors filed the Plan Supplement with the Court. The Plan Supplement (including as it may be subsequently modified, supplemented, or otherwise amended pursuant to its terms), complies with the Bankruptcy Code and the terms of the Plan, and the SO5 Digital Debtors provided good and proper notice of the filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the facts and circumstances of these Chapter 11 Cases. The notice parties and Holders of Claims and Interests were provided due, adequate, and sufficient notice of the Plan Supplement. No other or further notice is or will be required with respect to the Plan Supplement. The Plan

Supplement consists of the following documents: (a) the Plan Administrator Agreement, (b) the identity and compensation of the Plan Administrator; (c) to the extent known, the identity of any insider that will be employed or retained by the Plan Administrator;(d) a schedule of the Retained Causes of Action, if any; (e) the Liquidation Trust Agreement, (f) the identity and compensation of the Liquidation Trustee; (g) the Liquidation Analysis; (h) a schedule of assumed Executory Contracts and Unexpired Leases; (i) the Schedule of Excluded Parties; (j) the compensation and benefits plans excluded from Art. V.H, (k) the Settlement Term Sheet by and between (i) the Global Debtors and (ii) the SO5 Digital Debtors (the "Global Debtors Settlement Term Sheet") and (l) any other documentation necessary to effectuate the Plan or that is contemplated by the Plan. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan and this Confirmation Order, the SO5 Digital Debtors shall have the right to alter, amend, update, or modify the Plan Supplement through the Effective Date.

**N.      Plan Modifications.**

21.      Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan, including those set forth in the *Modified Joint Chapter 11 Plan of the SO5 Digital Debtors*, filed on May 1, 2026, and any additional modifications to the Plan set forth in this Confirmation Order or in any Plan filed prior to the entry of this Confirmation Order (collectively, the "Plan Modifications") constitute technical or clarifying changes. These Plan Modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and Solicitation Packages served pursuant to the Disclosure Statement Order and notice of these Plan Modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.

22.      In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes

11

under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

**O.      Objections Overruled.**

23.      Any resolution or disposition of objections to approval of the Disclosure Statement and/or confirmation of the Plan that have not been withdrawn, waived, or settled are hereby **OVERRULED** and **DENIED** on the merits, with prejudice.

**P.      The Plan Complies with Bankruptcy Code Requirements—Section 1129(a)(1).**

24.      The Plan complies with all applicable provisions of the Bankruptcy Code, as required by Section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 thereof. Additionally, the Plan and all modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a).

**(a)      Proper Classification—Sections 1122 and 1123.**

25.      The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into eight (8) Classes. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

**(b)      Specified Unimpaired Classes—Section 1123(a)(2).**

26. The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims in the following Classes are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code.

| Class | Designation |
|-------|-------------|
| 1 | Secured Lender Claims |
| 2 | Other Secured Claims |
| 3 | Other Priority Claims |

27. Additionally, Article II of the Plan specifies that Allowed Administrative Claims (including OCP Claims and Professional Fee Claims) and Allowed Priority Tax Claims will be paid in full (unless a Holder of such Claim consents to alternative treatment) in accordance with the terms of the Plan, although these Claims are not separately classified under the Plan.

28. For the avoidance of doubt, Holders of Claims in Classes 1, 2, and 3 are Unimpaired and conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

**(c) Specified Treatment of Impaired Classes—Section 1123(a)(3).**

29. The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "Impaired Classes") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes:

| Class | Designation |
|-------|-------------|
| 4 | Consignor Claims |
| 5 | General Unsecured Claims |
| 6 | Intercompany Claims |
| 7 | Subordinated Claims |
| 8 | SO5 Digital Debtors Interests |

30.     For the avoidance of doubt, at the time of solicitation Holders of Claims in Classes 6, 7, and 8 were Impaired and deemed to reject the Plan and were thus not entitled to vote to accept or reject the Plan.

**(d)     No Discrimination—Section 1123(a)(4).**

31.     The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the SO5 Digital Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

**(e)     Adequate Means for Implementation—Section 1123(a)(5).**

32.     The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in Article IV and elsewhere in the Plan provide in detail adequate and proper means for the Plan's implementation, including regarding: (a) the consummation of the Plan, including the wind-down and dissolution of the SO5 Digital Debtors and the vesting of the assets in the Wind-Down Debtors; (b) the Settlement of Certain Administrative Claims; (c) the Sale Transactions, if any; (d) the sources of consideration for Plan distributions, including the funding of the Wind-Down Budget; (e) the appointment of the Plan Administrator; (f) the authorization for the SO5 Digital Debtors, the Wind-Down Debtors and/or the Plan Administrator, as applicable, to take all actions contemplated under or necessary, advisable, or appropriate to implement or effectuate the Plan; (g) the creation and governance of the Liquidation Trust; (h) the settlement and discharge of Claims and Interests as set forth in the Plan; (i) the good faith compromise and settlement of claims or controversies held by the SO5 Digital Debtors and the Committee; (j) the preservation and vesting of certain Retained Causes of Action in the Wind-Down Debtors, Plan Administrator, the Liquidation Trustee and/or the Liquidation Trust, as applicable; (k) the

14

treatment of Executory Contracts and Unexpired Leases; (l) the dissolution of the Wind-Down Debtors; (m) the effectuation and implementation of documents and further transactions; (n) the cancellation of existing securities and agreements; and (o) the authorization, approval, and entry of corporate actions under the Plan.

**(f)      Non-Voting Equity Securities—Section 1123(a)(6).**

33.      The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. The Plan does not provide for the issuance of equity or other securities of the SO5 Digital Debtors, including non-voting equity securities.

**(g)      Directors and Officers—Section 1123(a)(7).**

34.      The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Article IV.G of the Plan, as of the Effective Date, the existing directors and officers of the SO5 Digital Debtors shall be deemed to have resigned and the employees or officers of the SO5 Digital Debtors terminated without any further action required. From and after the Effective Date, the Plan Administrator shall be authorized to act on behalf of the Estates, provided that the Plan Administrator shall have no duties other than as expressly set forth in the Plan, this Confirmation Order, or any agreement governing the Plan Administrator's duties and responsibilities, as applicable. The identity of the Plan Administrator is disclosed in the Plan Supplement. The appointment of the Plan Administrator is consistent with the interests of creditors and with public policy.

**(h)      Debtor Is Not an Individual—Section 1123(a)(8) and 1123(c).**

35.      The SO5 Digital Debtors are not individuals. Accordingly, the requirements of sections 1123(a)(8) and 1123(c) of the Bankruptcy Code are inapplicable.

**(i)      Impairment / Unimpairment of Classes—Section 1123(b)(1).**

15

36.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article III of the Plan leaves each Class of Claims and Interests Impaired or Unimpaired.

**(j)     Treatment of Executory Contracts and Unexpired Leases—Section 1123(b)(2).**

37.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Article V of the Plan provides for the automatic rejection of the SO5 Digital Debtors' Executory Contracts and Unexpired Leases (other than Insurance Policies and  executory contracts identified in the Plan Supplement as excepted from Art. V.H. of the Plan, if any) not previously rejected, assumed, or assumed and assigned during these Chapter 11 Cases under section 365 of the Bankruptcy Code, nor scheduled to be assumed under the Plan or the Plan Supplement.

38.     The SO5 Digital Debtors' determinations regarding the assumption and rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the SO5 Digital Debtors, are necessary to the implementation of the Plan, and are in the best interests of the SO5 Digital Debtors, their Estates, Holders of Claims, and other parties in interest in these Chapter 11 Cases.

**(k)     Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).**

39.     In accordance with section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan. In addition, the compromises and settlements embodied in the Plan preserve value by enabling the SO5 Digital Debtors to avoid extended, value-eroding litigation that could delay the SO5 Digital Debtors' efforts to consummate the Plan.

40. **Debtor Release.** The release of Claims and Causes of Action by the SO5 Digital Debtors, as described in Article IX.A of the Plan in accordance with section 1123(b) of the Bankruptcy Code (the "SO5 Digital Debtor Releases"), represent a valid exercise of the SO5 Digital Debtors' business judgment. The SO5 Digital Debtor Release is integral to the Plan and is fair, reasonable, and in the best interests of the SO5 Digital Debtors, the Estates and Holders of Claims and Interests. Also, the SO5 Digital Debtor Release is: (a) in exchange for good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the claims or Causes of Action released by the SO5 Digital Debtor Releases; (c) in the best interests of the SO5 Digital Debtors, the Estates, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the SO5 Digital Debtors and after due notice and opportunity for a hearing; and (f) a bar to any of the SO5 Digital Debtors, their Estates, or the Wind-Down Debtors, as applicable, asserting a Claim or Cause of Action released pursuant to the SO5 Digital Debtor Releases. The scope of the SO5 Digital Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases. Moreover, the SO5 Digital Debtor Release is appropriate in light of, among other things, the value provided by the Released Parties to the SO5 Digital Debtors' Estates and the critical nature of the SO5 Digital Debtor Release to the Plan.

41. The SO5 Digital Debtor Release appropriately offers protection to parties that participated in the SO5 Digital Debtors' restructuring process. The Released Parties made significant concessions and/or contributions to these Chapter 11 Cases. The SO5 Digital Debtor Release for (i) any of the SO5 Digital Debtors' current directors and officers as of the Effective Date, except for Franz Buerstedde, and (ii) Genny Siller, a former officer of the SO5 Digital Debtors who is currently serving as an independent contractor for the SO5 Digital Debtors is

17

appropriate because the SO5 Digital Debtors' directors and officers share an identity of interest with the SO5 Digital Debtors, supported the Plan and these Chapter 11 Cases, actively participated in meetings and negotiations during these Chapter 11 Cases, and have provided other valuable consideration to the SO5 Digital Debtors to facilitate the negotiation and consummation of the transactions contemplated by the Plan. Ms. Siller similarly actively participated in meetings and negotiations during these Chapter 11 Cases, and has provided other valuable consideration to the SO5 Digital Debtors to facilitate the negotiation and consummation of the transactions contemplated by the Plan including, as an officer, coordinating directly with the SO5 Digital Debtors' liquidation sale consultant in running an extremely successful liquidation of the SO5 Digital Debtors' remaining inventory and, as an independent contractor, providing critical institutional knowledge about the SO5 Digital Debtors, consulting on preliminary claim assessments, and performing vendor outreach to encourage vendors to vote in favor of the Plan, which was overwhelmingly supported by voters in Class 4 and Class 5, the two Classes entitled to vote under the Bankruptcy Code.

42.     **Third-Party Release.** The release of Claims and Causes of Action by the Releasing Parties, as described in Article IX.B of the Plan (the "Third-Party Release"), was consensually provided after due notice and an opportunity for a hearing and is an essential provision of the Plan. The Third-Party Release is a critical and integral component of the creditors' agreement to support the Plan, thereby preventing significant and time-consuming litigation regarding the parties' respective rights and interests. The Third-Party Release was negotiated as a result of extensive arm's length and good faith negotiations among parties. It provides finality for the SO5 Digital Debtors, their Estates, the Plan Administrator, the Committee and its members, and the other Released Parties regarding the parties' respective obligations under the Plan and the transactions

18

contemplated therein. The Third-Party Release was instrumental in developing a Plan that maximized value for all of the SO5 Digital Debtors' stakeholders. As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the SO5 Digital Debtors' chapter 11 process by, among other things, supporting the Plan.

43.     Notice of the Third-Party Release was provided to Holders of Claims and Interests as outlined in the Disclosure Statement Order and such notice was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases. The Combined Hearing Notice was sent to Holders of Claims and Interests and published in *The New York Times* on May 7, 2026 and in the *Houston Chronicle* on May 7, 2026, and the Ballots and solicitation-related notices, as applicable, sent to Holders of Claims and Interests unambiguously stated that the Plan contains the Third-Party Release and that each such Holder of Claims or Interests may elect not to grant such Third-Party Release. The SO5 Digital Debtors timely received 61 Release Opt-Out Forms that indicated an intention to opt-out of the Third-Party Releases, all of which were recognized as not granting the Third-Party Releases. Additionally, the SO5 Digital Debtors timely received 7 Release Opt-In Forms that indicated an intention to opt-in to the Third-Party Release, all of which were recognized as granting the Third-Party Releases. The release provisions of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, the Notice of Non-Voting Status Package and Release Opt-Out Form or Release Opt-In Form, as applicable, and the solicitation-related notices. The Third-Party Release provides appropriate and specific disclosure with respect to the Claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure or notice is necessary.

44.     The Third-Party Release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released

19

Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Actions released by the Third-Party Release; (e) in the best interests of the SO5 Digital Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; (h) a bar to any of the Releasing Parties' asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (i) specific in language and scope; (j) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code. Therefore, the Third-Party Release is reasonable, appropriate, and consistent with the provisions of the Bankruptcy Code and applicable law.

45.     **Exculpation.** The exculpation provision described in Article IX.C of the Plan (the "Exculpation") is necessary and appropriate to the Plan. The Exculpation is narrowly tailored to protect estate fiduciaries from inappropriate litigation and to exclude actions found to have constituted bad faith, fraud, willful misconduct, or gross negligence. The Exculpated Parties subject to the Exculpation have, and upon entry of this Confirmation Order, will be deemed to have participated in good faith and in compliance with all applicable laws with regard to the negotiation and implementation of, among others, these Chapter 11 Cases, the Disclosure Statement, the Plan, or including any contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or this Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to

20

any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted bad faith, fraud, willful misconduct, or gross negligence but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpation, including its carve-out for bad faith, fraud, gross negligence, or willful misconduct, is consistent with established practice in this jurisdiction and others.

46.     **Injunction.** The injunction provision set forth in Article IX.D of the Plan is essential to the Plan and necessary to preserve and enforce the SO5 Digital Debtor Releases, the Third-Party Release, and the Exculpation, each as set forth in Articles IX.A, IX.B, and IX.C of the Plan respectively.

47.     In accordance with section 1123(b) of the Bankruptcy Code, and except as otherwise provided in the Plan, the Liquidation Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action and Causes of Action of the SO5 Digital Debtors or the Wind-Down Debtors, whether arising before or after the Petition Date, and the Liquidation Trust's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the SO5 Digital Debtors pursuant to the releases and exculpations contained in the Plan, including in Article IX thereof, which shall be deemed released and waived by the SO5 Digital Debtors as of the Effective Date. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Retained Causes of Action.  No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that

the Plan Administrator will not pursue any and all available Causes of Action of the SO5 Digital Debtors against it.

48.     The release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interest against any property of the Estates, as described in Article IX.E. of the Plan (the "Lien Release") is necessary to implement the Plan. The provisions of the Lien Release are appropriate, fair, equitable, reasonable, and in the best interests of the SO5 Digital Debtors, the Estates, and Holders of Claim and Interests.

49.     The releases, injunctions, and exculpations set forth in the Plan, as implemented by this Confirmation Order, are fair, equitable, reasonable, and in the best interests of the SO5 Digital Debtors, their Estates, and all Holders of Claims or Interests. The record at the Combined Hearing and in these Chapter 11 Cases is sufficient to support the releases, injunctions, and exculpations provided for in Article IX of the Plan. Accordingly, the Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

### (l)     Treatment of Rights of Holders of Claims—1123(b)(5)

50.     The Plan is consistent with section 1123(b)(5) of the Bankruptcy Code. Article III of the Plan modifies or leaves unaffected, as is applicable, the rights of certain Holders of Claims, as permitted by section 1123(b)(5) of the Bankruptcy Code.

### (m)    Additional Plan Provisions—Section 1123(b)(6).

51.     The other discretionary provisions in the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**Q.      SO5 Digital Debtors Complied with Bankruptcy Code Requirements—Section 1129(a)(2).**

52.      The SO5 Digital Debtors complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court, and thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each SO5 Digital Debtor:

a.      is an eligible debtor under section 109 of the Bankruptcy Code and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

b.      has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

c.      complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Bankruptcy Local Rules, any applicable non-bankruptcy law, rule and regulation, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Packages and the Notice of Non-Voting Status Package and Release Opt-Out Form or Release Opt-In Form, as applicable, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**R.      Plan Proposed in Good Faith—Section 1129(a)(3).**

53.      The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The SO5 Digital Debtors proposed the Plan in good faith and not by any means forbidden by law. In so determining, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan, and the process leading to confirmation of the Plan, including the support of the Committee and the Holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto.

**S.      Payment for Services or for Costs and Expenses—Section 1129(a)(4).**

54.      The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the SO5 Digital Debtors in connection with

23

these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**T.    Directors, Officers, and Insiders—Section 1129(a)(5).**

55.    The identities of or process for appointment of the Wind-Down Debtors' sole director and officer proposed to serve after the Effective Date, which will be the Plan Administrator, was disclosed in the Plan Supplement. Accordingly, the SO5 Digital Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**U.    No Rate Change—Section 1129(a)(6).**

56.    Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**V.    Best Interest of the Creditors—Section 1129(a)(7).**

57.    The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The Liquidation Analysis and any other evidence related thereto in support of the Plan that was proffered or adduced in the Hede Confirmation Declaration, or any other declaration submitted prior to, or in connection with the Combined Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover more under the Plan on account of such Claim or Interest, as of the Effective Date, than such Holder would receive if the SO5 Digital Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**W.      Acceptance by Certain Classes—Section 1129(a)(8).**

58.      Classes 1, 2, and 3 are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 4 and 5 are Impaired under the Plan and have voted to accept the Plan pursuant to section 1126(c) of the Bankruptcy Code. Nevertheless, because the Plan has not been accepted by the Deemed Rejecting Classes, the SO5 Digital Debtors seek confirmation of the Plan under section 1129(b), solely with respect to the Deemed Rejecting Classes, rather than section 1129(a)(8) of the Bankruptcy Code. Although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below. As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

**X.      Treatment of Claims Entitled to Priority under Section 507(a)—1129(a)(9).**

59.      The Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code. The treatment of Allowed Administrative Claims, Professional Fee Claims, and Priority Tax Claims under Article II of the Plan and of Other Priority Claims under Article III of the Plan satisfies the requirements of, and complies in all respects with the treatment required by section 1129(a)(9) of the Bankruptcy Code for each of the various claims specified in sections 507(a)(1)–(8) of the Bankruptcy Code.

**Y.      Acceptance by at Least One Impaired Class—Section 1129(a)(10).**

60.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced in the Voting Report, Classes 4 and 5 voted to accept the Plan by the requisite numbers and amounts of Claims specified under section 1126(c) of the Bankruptcy Code,

determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**Z.      Feasibility—Section 1129(a)(11).**

61.      The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the SO5 Digital Debtors at or before the Combined Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and confirmation of the Plan is not likely to be followed by a further liquidation or the need for further financial reorganization; (d) establishes that the Plan may be implemented and has a reasonable likelihood of success; (e) establishes that the Wind-Down Debtors or Plan Administrator, as applicable, will have sufficient funds available to meet their obligations under the Plan; and (f) establishes that the Plan Administrator will have the financial wherewithal to satisfy its obligations following the Effective Date.

**AA.    Payment of Statutory Fees—Section 1129(a)(12).**

62.      The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.D of the Plan provides for the payment of all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

**BB.    Continuation of Employee Benefits—Section 1129(a)(13).**

63.      The SO5 Digital Debtors do not have any obligation to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code). Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases or the Plan.

**CC.     Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

64.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The SO5 Digital Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**DD.     "Cram Down" Requirements—Section 1129(b).**

65.     The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. *First,* all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second,* the Plan is fair and equitable with respect to the Deemed Rejecting Classes. The Plan has been proposed in good faith, is reasonable and meets the requirements that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest. Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the Deemed Rejecting Classes. *Third,* the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class. Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**EE.     Only One Plan—Section 1129(c).**

66.     The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in these Chapter 11 Cases.

**FF.    Principal Purpose of the Plan—Section 1129(d).**

67.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**GG.    No Small Business Case—Section 1129(e).**

68.    The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply.

**HH.    Good Faith Solicitation—Section 1125(e).**

69.    The SO5 Digital Debtors acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with all of their activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**II.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

70.    Each of the conditions precedent to the Effective Date, as set forth in Article VIII.A of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Article VIII.B of the Plan.

**JJ.    Implementation.**

71.    All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the SO5 Digital Debtors and their Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal, state, or local law. The SO5 Digital Debtors, the Plan Administrator, the

Liquidation Trust and the Liquidation Trustee are authorized to take any action reasonably necessary, advisable, or appropriate to consummate such agreements and the transactions contemplated thereby.

**KK.     Disclosure of All Material Facts.**

72.     The SO5 Digital Debtors disclosed all material facts regarding the Disclosure Statement, the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the SO5 Digital Debtors or the Plan Administrator, as applicable.

**LL.     Satisfaction of Confirmation Requirements.**

73.     Based on the foregoing, the Hede Confirmation Declaration, and all other pleadings and evidence proffered or adduced at or prior to the Combined Hearing, the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.

**ORDER**

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

74. **Findings of Fact and Conclusions of Law.** The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

75. **Disclosure Statement, Solicitation Packages, and Solicitation Procedures**. The Disclosure Statement, the Solicitation Packages, and the Solicitation Procedures are **APPROVED** on a final basis in all respects pursuant to section 1125 of the Bankruptcy Code.

76. **Confirmation of the Plan.** The Plan, attached hereto as Exhibit A, as and to the extent modified by this Confirmation Order, is approved and **CONFIRMED** in its entirety pursuant to section 1129 of the Bankruptcy Code. All Plan documents necessary for implementation of the Plan, including those in the Plan Supplement, are hereby approved and incorporated herein by reference as an integral part of this Confirmation Order. The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision, it being the intent of this Confirmation Order that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

77. **Headings**. Headings utilized in this Confirmation Order are for convenience of reference only and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

78.     **Objections**. All objections (including any reservations of rights contained therein) to approval of confirmation of the Plan that have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted herein, or are not otherwise resolved as stated by the SO5 Digital Debtors on the record of the Combined Hearing, are **OVERRULED** and **DENIED** on the merits and in their entirety, and all withdrawn objections are deemed withdrawn with prejudice.

79.     **Deemed Acceptance of Plan.** In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan, as modified by the Plan Modifications and this Confirmation Order. No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

80.     **No Action Required**. Under section 1142(b) of the Bankruptcy Code and any other comparable provisions under applicable law, no action of the respective directors, equity holders, managers, or members of the SO5 Digital Debtors is required to authorize the SO5 Digital Debtors to enter into, execute, deliver, File, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

81.     **Immediate Binding Effect**. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the SO5 Digital Debtors, the Plan Administrator, the Liquidation Trustee, the Liquidation Trust, the Holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns. Any action to be taken on the Effective Date may be taken on or as soon as reasonably

practicable thereafter.  All payments and transfers required to be made on the Effective Date shall be made on the Effective Date or as soon as reasonably practicable thereafter.

82.     Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Cases, all documents and agreements executed by the SO5 Digital Debtors as authorized and directed thereunder, and all motions or requests for relief by the SO5 Digital Debtors pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the SO5 Digital Debtors, the Plan Administrator, the Liquidation Trust and the Liquidation Trustee, as applicable, and their respective successors and assigns.

83.     **Classification and Treatment.** The Plan's classification scheme is approved. The terms of the Plan shall govern the classification and treatment of Claims and Interests for purposes of the distributions to be made thereunder.

84.     **Subordination of Claims.** The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the SO5 Digital Debtor, the Plan Administrator, the Liquidation Trust or the Liquidation Trustee (as applicable) reserves the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

85.     **Insurance.** Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be

made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

86. **General Settlement of Claims and Interests.** Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions, releases, and other benefits provided pursuant to the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest Holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the SO5 Digital Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

87. **Sources of Consideration for Plan Distributions.** Subject to the provisions of the Plan concerning the Professional Fee Reserve or the Wind-Down Budget, distributions under the Plan shall be funded by Cash on hand, including any amounts recovered by the Liquidation Trust that may be owed by third parties on account of security deposits or refunds. After the Effective Date, the Liquidation Trustee shall fund the Wind-Down Reserves and shall make Plan Distributions from Liquidation Trust Net Assets on account of Allowed Claims in accordance with the Plan and the Liquidation Trust Agreement.

88. **Vesting of the Assets in the Liquidation Trust.** Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, all property in each Estate, all Causes

of Action, and any property acquired by any of the SO5 Digital Debtors pursuant to the Plan shall vest in accordance with the terms of the Plan, in the Liquidation Trust free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided for in the Plan, the Liquidation Trust shall use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action, without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or this Confirmation Order.

89. **Retained Causes of Action.** In accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trust, shall retain and may enforce all rights to commence and pursue as appropriate, any and all Retained Causes of Action of the SO5 Digital Debtors, whether arising before or after the Petition Date, the Liquidation Trust's and/or Liquidation Trustee's, as applicable, rights to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the SO5 Digital Debtors pursuant to the releases and exculpations contained in the Plan, including Article IX thereof, which shall be deemed released and waived by the SO5 Digital Debtors as of the Effective Date. For the avoidance of doubt, the Retained Causes of Action shall not include any Causes of Action against the Released Parties.

90. **Corporate Action.** As of the Effective Date, the current board of managers/directors of each SO5 Digital Debtor shall be dissolved automatically without any further action required on the part of the SO5 Digital Debtors or the SO5 Digital Debtors' officers, directors, managers, shareholders, members, equity holders, or other governing bodies, and any remaining officers, directors, managers, or managing members of any SO5 Digital Debtor shall automatically be dismissed without any further action required on the part of any such SO5 Digital

Debtor, the shareholders or equity holders of the SO5 Digital Debtors, the officers, directors, managers, or other governing body, as applicable, of the SO5 Digital Debtors, or the members of any SO5 Digital Debtor; *provided*, *however*, the Plan Administrator may retain certain officers as may be required under applicable law, including for regulatory purposes. Subject in all respects to the terms of this Plan, the Wind-Down Debtors shall be dissolved as soon as practicable after the Effective Date.

91.     Upon the Effective Date, automatically and without any further action required, the Plan Administrator will become the SO5 Digital Debtors' (or Wind-Down Debtors'), as applicable, sole officer, director, manager, or other governing body as appropriate, without the need to execute any new organizational, governing, or other documents. Subject in all respects to the terms of this Plan and the Plan Administrator Agreement, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Wind-Down Debtors, and shall be authorized to: (a) file a certificate of dissolution or equivalent for any of the Wind-Down Debtors, together with all other necessary corporate and company documents, to effect the dissolution of the Wind-Down Debtors under the applicable laws of its state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and direct the Liquidation Trustee to pay per the procedures set forth in Article IV.D.4. taxes required to be paid for any of the SO5 Digital Debtors or Wind-Down Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the SO5 Digital Debtors, Wind-Down Debtors, or each of their Estates for any tax incurred during the administration of such SO5 Digital Debtors' or Wind-Down Debtor's Chapter 11 Case, as determined under applicable tax laws, and in each case, in consultation with the Liquidation Trustee. On the Effective Date and following satisfaction of the Wind-Down

Debtors' distribution and funding requirements set forth in the Plan, the Wind-Down Debtors shall be dissolved for all purposes unless the Plan Administrator determines, with the consent of the Liquidation Trustee, that dissolution can have any adverse impact on the Wind-Down; *provided*, that neither the Wind-Down Debtors nor any Entity released pursuant to Article IX herein shall be responsible for any liabilities that may arise as a result of non-dissolution of the Wind-Down Debtors.

92.     The Plan Administrator shall submit with the appropriate governmental agencies a copy of the Confirmation Order, which Confirmation Order shall suffice for purposes of obtaining a Certificate of Dissolution from the applicable Secretary of State for each State in which a Wind-Down Debtor operates.  For avoidance of doubt, the Plan Administrator shall not dissolve any of the Wind-Down Debtors without the consent of the Liquidation Trustee. The Wind-Down Debtors and the Plan Administrator shall provide not less than thirty (30) days' written notice to the Liquidation Trustee and any known professionals retained by the Liquidation Trust and obtain the consent of the Liquidation Trustee prior to filing any motion to close these Chapter 11 Cases.

93.     Without limiting the foregoing, on the Effective Date and following satisfaction of the SO5 Digital Debtors' distribution and funding requirements set forth in the Plan, the SO5 Digital Debtors shall have no further duties or responsibilities in connection with implementation of the Plan, and the directors and officers of the SO5 Digital Debtors shall be deemed to have resigned and the employees of the SO5 Digital Debtors terminated. From and after the Effective Date, the Plan Administrator shall be authorized to act on behalf of the Estates in accordance with the terms set forth in the Plan or this Confirmation Order.

94.     **Cancellation of Existing Securities and Agreements.** Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, on

the Effective Date, all prepetition credit documents, agreements, instruments, notes, certificates, indentures, mortgages, securities, and other documents evidencing any Claim or Interest, and any rights of any Holder in respect thereof, shall be deemed cancelled and of no further force or effect and the obligations of the SO5 Digital Debtors thereunder shall be deemed fully satisfied, released, and discharged, and as applicable, shall be deemed to have been surrendered to the Plan Administrator. The holders of or parties to such cancelled instruments, securities, and other documentation shall have no rights arising from or related to such instruments, securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan.

95.     **Effectuating Documents; Further Transactions.** Upon entry of this Confirmation Order, the SO5 Digital Debtors, the Wind-Down Debtors, Liquidation Trust, the Liquidation Trustee, or the Plan Administrator (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonably necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan. The SO5 Digital Debtors, the Wind-Down Debtors, the Liquidation Trustee, the Liquidation Trust, the Plan Administrator, all Holders of Claims receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

96.     **Section 1146 Exemption from Certain Taxes and Fees.** Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or other similar tax,

mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment.

97.     **Authority to Act**. Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the SO5 Digital Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state(s) in which the SO5 Digital Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the SO5 Digital Debtors or notice to, order of, nor hearing before the Court.

98.     **Separate Plans.** Notwithstanding the combination of separate plans of distribution for the SO5 Digital Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each SO5 Digital Debtor.

99.     **Settlement of Claims and Controversies.** Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the provisions of the Plan and this Confirmation Order will constitute a good faith compromise and settlement of all claims or controversies held by the Holders of Claims and Interests that are settled by the Plan. The entry of this Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such

compromise or settlement is in the best interests of the SO5 Digital Debtors and their Estates, and is fair, equitable and reasonable.

100.    Moreover, pursuant to section 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the consideration being provided by the Global Debtors under the terms of the Intercompany Claim settlement between the SO5 Digital Debtors and Global Debtors disclosed in the SO5 Digital Debtors' Amended Plan Supplement, and the Global Debtors Fourth Amended Plan Supplement [ECF No. 2607], which were extensively negotiated at arm's length with the benefit of counsel, and which were approved by the SO5 Digital Debtors' Independent Director, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise of and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the SO5 Digital Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

101.    Notwithstanding any other provision in the Plan, the settlements are approved among the parties that have agreed to them (among any other party who has expressly entered into a written settlement), and the treatment of claims and interests is being afforded pursuant to confirmation of the Plan by satisfying the requirements of Section 1129.

102.    **Assumption and Rejection of Executory Contracts and Unexpired Leases.** On the Effective Date, except as otherwise provided herein or in the Plan (which exclusion includes any Insurance Policies designated for assumption and any employee compensation or benefits plans identified in the Plan Supplement to not be rejected), and except for the Executory Contracts and Unexpired Leases listed for assumption in the Plan Supplement, all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order

39

of the Bankruptcy Court, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date.

103.     Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, and payment of any cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

104.     If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim shall be forever barred and shall not be enforceable against the SO5 Digital Debtors, the Estates, the Plan Administrator, the Liquidation Trust or the Liquidation Trustee or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent and served upon counsel to the Liquidation Trust within thirty (30) days of the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order that are not timely Filed within thirty (30) days of the Effective Date will be disallowed automatically, forever barred from assertion, and shall not be enforceable against, as applicable, the SO5 Digital Debtors, the Estates, the Plan Administrator, the Liquidation Trust or the Liquidation Trustee, or any of their respective assets and properties.**   The Notice and Claims Agent shall provide counsel to the Liquidation

Trust with a claims register and access to the Proofs of Claim promptly after the deadline for the filing of such Proofs of Claim.

105.    **Insurance Policies.** Each Insurance Policy owned by the SO5 Digital Debtors listed on the schedule of assumed Executory Contracts and Unexpired Leases filed as part of the Plan Supplement shall be deemed an Executory Contract and shall be automatically assumed or assumed and assigned by the applicable SO5 Digital Debtor to the applicable Wind-Down Debtor or the Liquidation Trust, as applicable, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code for the sole purpose of resolving any Claims covered by such insurance policies, resolving any Causes of Action retained in connection with such insurance policies, and collecting any and all outstanding deposits, restricted cash, and letters of credit related thereto to the extent reasonably necessary to implement the Wind-Down in accordance with the Plan. Each Insurance Policy owned by the SO5 Digital Debtors not listed on the schedule of assumed Executory Contracts and Unexpired Leases shall be deemed an Executory Contract and shall be rejected by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code. For the avoidance of doubt, coverage for defense and indemnity under the Insurance Policies shall remain available to all individuals within the definition of "Insured" in the Insurance Policies.

106.    To the extent the SO5 Digital Debtors are not the first named insured under any D&O Liability Insurance Policy and notwithstanding Confirmation of the Plan or the occurrence of the Effective Date (i) nothing herein shall constitute a rejection of such D&O Liability Insurance Policy, (ii) such D&O Liability Insurance Policy shall remain in full force and effect, and (iii) any and all rights of the SO5 Digital Debtors under such D&O Liability Insurance Policy shall remain in full force and effect provided, however, that nothing in Paragraphs 105 or 106 in this Order will

41

modify the terms of the Intercompany Claims Settlement. For the avoidance of doubt, the Liquidation Trust shall retain all rights of the applicable SO5 Digital Debtors (or Wind-Down Debtors, as applicable) to assert claims against the D&O Liability Insurance Policies and/or to recover the proceeds thereof, and the dissolution of the SO5 Digital Debtors or the Wind-Down Debtors, shall have no impact upon the rights of the Liquidation Trust to assert claims against the D&O Liability Insurance Policies or to recover the proceeds thereof. For the avoidance of doubt, nothing in the Plan shall impair, limit, reduce, or eliminate any right to recover from available insurance proceeds.

107.    **Employee Compensation and Benefits.** Except as otherwise set forth in the Plan Supplement, all employment policies, and all compensation and benefits plans, policies, and programs of the SO5 Digital Debtors applicable to their respective employees, retirees, and nonemployee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, Executory Contracts under the Plan and, on the Effective Date, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, to the extent permitted by applicable law.  Any plans, policies, and programs that may be applicable to any employees that may extend beyond the Effective Date shall be addressed in the Plan Supplement. Notwithstanding the preceding, to the extent that there are any employee benefits currently provided to former employees of the SO5 Digital Debtors, which are in pay status pursuant to any insurance contracts or policies, such contracts and policies and any continuing obligations thereunder shall not be deemed rejected.

108.    **Distributions.** The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the

Plan or in this Confirmation Order, the timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan, the Plan Supplement, or this Confirmation Order, as applicable. To the extent the Plan does not specify the recipient of any Estate assets or property (including in the event that the Claim of the specified recipient of such Estate assets or property is paid or otherwise satisfied in full), such Estate assets or property shall be turned over to the Liquidation Trust.

109.    **Professional Compensation.** All Professionals (other than OCPs) seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 1103 of the Bankruptcy Code shall: (a) file, on or before the date that is forty-five (45) days after the Confirmation Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred; and (b) be paid in full, in Cash, from the Professional Fee Reserve, or, if the amount in the Professional Fee Reserve is not sufficient to pay such claims, from Cash held by the SO5 Digital Debtors or Cash available in the Liquidation Trust, as applicable, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Professional Fee Claim. Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim.

110.    All requests for payment of Professional Fee Claims of OCPs shall be made pursuant to the OCP Order. To the extent any Professional Fee Claims of the OCPs have not been satisfied pursuant to the OCP Order on or before the Effective Date, the amount of Professional Fee Claims owing to the OCPs shall be paid in Cash to such OCPs by the SO5 Digital Debtors or Liquidation Trustee, as applicable, as soon as reasonably practicable after such Professional Fee

Claims are payable pursuant to the OCP Order. The SO5 Digital Debtors and Liquidation Trustee reserve the right to dispute the amount of any invoices submitted by any OCP pursuant to the OCP Order or otherwise.

111. **Compliance with Tax Requirements.** In connection with the Plan, any Entity issuing any instrument or making any distribution or payment in connection therewith, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority. In the case of a non-Cash distribution that is subject to withholding, the distributing party may require the intended recipient of such distribution to provide the withholding agent with an amount of Cash sufficient to satisfy such withholding tax as a condition to receiving such distribution or withhold an appropriate portion of such distributed property and either (1) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax) or (2) pay the withholding tax using its own funds and retain such withheld property. The distributing party shall have the right not to make a distribution under the Plan until its withholding or reporting obligation is satisfied pursuant to the preceding sentences. Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.

112. Any Entity entitled to receive any property, including cash, as an issuance or distribution under this Plan shall, upon request, deliver to the withholding agent or such other Entity designated by the Liquidation Trustee, as applicable, the appropriate IRS Form or other tax forms or documentation requested by the Liquidation Trustee to reduce or eliminate any required federal, state, or local withholding. Any Entity who fails to deliver the IRS Form or other tax forms or documentation requested by the Liquidation Trustee within thirty (30) days of a second written

44

request, shall result in such Entity forfeiting any and all rights to receive any property, including cash, as an issuance or distribution under this Plan, and such forfeited property shall revest in the Liquidation Trust, and any Claim in respect of such distribution under this Plan shall be forever barred from assertion against such SO5 Digital Debtor, Wind-Down Debtor, the Plan Administrator, Liquidation Trust, Liquidation Trustee or their respective property.

113.    Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Plan Distribution.

114.    **Procedures for Resolving Disputed Claims.** The procedures governing resolution of disputed or unliquidated claims contained in Article VII of the Plan and the Liquidation Trust Agreement shall be, and hereby are, approved in their entirety. As set forth therein, all Claims held by Entities against whom or which the SO5 Digital Debtors or Liquidation Trustee have commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. A Claim deemed Disputed pursuant to Article VII.H of the Plan shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the SO5 Digital Debtors or Liquidation Trustee, as applicable, from such Holder have been paid.

45

115.    If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until the Disputed Claim becomes an Allowed Claim.

116.    To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim. No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

117.    **Claims Register.** Any Claim that has been paid, satisfied, amended or superseded, may be adjusted or expunged on the Claims Register by the SO5 Digital Debtors, Liquidation Trust or Liquidation Trustee, as applicable, without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

118.    **Waiver or Estoppel.** Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, as an Other Secured Claim, or not subordinated, by virtue of an agreement made with the SO5 Digital Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the Plan Supplement, the Disclosure Statement, or other papers filed with the Court or evidenced by a written instrument acknowledged by the SO5 Digital Debtors or their counsel before the Confirmation Date.

119.     **SO5 Digital Debtor Releases, Third-Party Release, Exculpations, Injunction, and Related Provisions under the Plan.** The discharge, releases, injunctions, exculpations, and related provisions set forth in Article IX of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party.

120.     **SO5 Digital Debtor Release. Notwithstanding anything else contained herein to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, effective as of the Effective Date, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the SO5 Digital Debtors, the Wind-Down Debtors, and their Estates and in each case on behalf of themselves and their respective successors, assigns, and any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, and liabilities whatsoever, including any derivative claims, asserted by or assertable on behalf of any of the SO5 Digital Debtors, their Estates, or the Wind-Down Debtors, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, that the SO5 Digital Debtors, their Estates,**

47

or the Wind-Down Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a SO5 Digital Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a SO5 Digital Debtor or other Entity could have asserted on behalf of the SO5 Digital Debtors, based on or relating to, or in any manner arising from, in whole or in part: (1) the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of, as applicable, the Chapter 11 Cases, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Plan Document transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or this Confirmation Order in lieu of such legal opinion), the pursuit of confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement or Wind-Down Transaction, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, or any other post-petition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the SO5 Digital Debtors, the approval of the Disclosure Statement or Confirmation or consummation of this Plan (collectively, the "Case-Related Matters"); or (2) the SO5 Digital Debtors (including the prepetition capital structure, management, ownership, or operation thereof), the purchase,

48

**sale, amendment, or rescission of any Claim against or Interest in the SO5 Digital Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, including any prepetition financing transactions, the business or contractual arrangements between any SO5 Digital Debtor and any Released Party, the SO5 Digital Debtors' in- or out-of-court restructuring efforts, or the Debtors' intercompany transactions (collectively, the "Additional Matters"). Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, this Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any Retained Cause of Action, (3) any Claims or Causes of Action against any Excluded Party, or (4) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.**

121.    Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the SO5 Digital Debtor Releases, which include by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the SO5 Digital Debtor Releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims or Causes of Action released by the SO5 Digital Debtor Releases; (3) in the best interests of the SO5 Digital Debtors, the Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after reasonable investigation by the SO5 Digital Debtors and after due notice and opportunity for hearing; and (6) a bar to any of the SO5 Digital Debtors, their Estates, or the Wind-Down Debtors, as applicable, asserting any claim or Cause of Action released pursuant to the SO5 Digital Debtor Releases.

122. Notwithstanding anything else herein to the contrary, for the avoidance of doubt, the SO5 Digital Debtor Releases shall not in any way effect a release by any Global Debtor of any Claim or Cause of Action against any Entity.

123. **Third-Party Release. Effective as of the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, Causes of Action, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, that such Releasing Party would have been legally entitled to assert in its own right (whether individually or collectively) or otherwise based on or relating to, or in any manner arising from, in whole or in part, the Case-Related Matters or the Additional Matters. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any Cause of Action included as a Retained Cause of Action; (3) any Claims or Causes of Action against any Excluded Party; or (4) actual fraud, willful misconduct, or gross negligence as determined by a Final Order. Further, for the avoidance of doubt and notwithstanding anything herein to the contrary, nothing herein shall cause the Global Debtors to release, or result in the Global Debtors' release of, any parties, claims, or causes of action not released under the Global Debtors'**

*Third Amended Joint Chapter 11 Plan of Saks Global Enterprises LLC and its Global Debtor Affiliates* **[Docket No. 2651], as may be modified or amended from time to time.**

124. Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (4) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (5) in the best interests of the SO5 Digital Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

125. **Exculpations. Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the SO5 Digital Debtor Releases or the Third-Party Releases, and except as otherwise specifically provided in the Plan or this Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party hereby is exculpated from any claim or Cause of Action related to any act or omission in connection with, relating to, or arising out of the negotiation, solicitation, confirmation, execution, or implementation (to the extent on or prior to the Effective Date) of, as applicable, the Case-Related Matters, except for (i) claims or Causes of Action arising from any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted willful misconduct, actual fraud, or gross negligence; or (ii)**

the rights of any Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel, to the extent otherwise permitted under applicable non-bankruptcy Law, concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions. Notwithstanding anything to the contrary in the foregoing, an Exculpated Party shall be entitled to exculpation solely for actions taken from the Petition Date through the Effective Date, and the exculpation set forth above does not exculpate (1) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, this Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any Causes of Action included as a Retained Cause of Action; or (3) asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Entity that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the SO5 Digital Debtors or the Wind-Down Debtors, in each case unless otherwise expressly provided for in this Plan. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable Law or rules protecting such Exculpated Parties from liability.

126.   **Injunction. Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or this Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests for which provision is made under the Plan or claim or interests that have been released pursuant to the Plan provisions**

52

**setting forth the releases granted by the SO5 Digital Debtors or the Releasing Parties, or are subject to exculpation pursuant to the article of the Plan which provides for the exculpation of the Exculpated Parties, shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the SO5 Digital Debtors, Wind-Down Debtors, the Exculpated Parties, the Liquidation Trust or the Liquidation Trustee: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; and (4) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

127.    Upon entry of this Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan by the SO5 Digital Debtors, the Wind-Down Debtors, the Plan Administrator, the Liquidation Trust, the Liquidation Trustee, and their respective affiliates, employees, advisors, officers and directors, or agents.

128.    No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Cause of

53

Action of any kind against the Released Parties or the Exculpated Parties that relates to, or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, a Cause of Action subject to Article IX.A, Article IX.B, and Article IX.C of the Plan without first (1) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Cause of Action represents a colorable claim against a Released Party or Exculpated Party, and is not a Claim that the SO5 Digital Debtors released under the Plan, which request must attach the complaint or petition proposed to be filed by the requesting party; and (2) obtaining from the Bankruptcy Court specific authorization for such party to bring such Cause of Action against any such Released Party or Exculpated Party. Any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Cause of Action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Cause of Action.

129.     Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies, including without limitation in accordance with their regulatory or police powers, against any Released Party other than the SO5 Digital Debtors.

130.     **Release of Liens**. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be

fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the SO5 Digital Debtors and their successors and assigns. If any Holder of a Secured Claim, Other Secured Claim, Consignor Claim, or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Other Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such holder) shall take any and all steps requested by the Plan Administrator or the Liquidation Trustee that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Plan Administrator or the Liquidation Trustee shall be entitled to make any such filings or recordings on such holder's behalf.

131.    **Provision relating to the SEC.** Notwithstanding any language to the contrary in the Disclosure Statement, Plan, and/or Confirmation Order, no provision shall: (a) preclude the United States Securities and Exchange Commission ("SEC") from enforcing its police or regulatory powers; or (b) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceeding or investigations against any non-debtor person or non-debtor entity in any forum.

132.    **Provision related to the Tennessee Department of Revenue**. Consistent with 11 U.S.C. § 503(b)(1)(D), the Tennessee Department of Revenue shall not be required to file a request for the payment of an expense described in 11 U.S.C. § 503(b)(1)(B) or (C), as a condition of its being an allowed administrative expense. Notwithstanding anything to the contrary in the Plan, to the extent that the Tennessee Department of Revenue may need to amend a previously Filed Claim, they may amend such Claim only in accordance with the Bankruptcy Code and the Bankruptcy Rules.

133. **Provision relating to the Texas Comptroller of Public Accounts.** Notwithstanding anything to the contrary in the Plan or the Confirmation Order, all rights of the Texas Comptroller of Public Accounts (the "Texas Comptroller") related to any tax claims filed by the Texas Comptroller (including claims against any non-Debtor third parties, statutory or common law setoff rights in accordance with 11 U.S.C. § 553 and any Causes of Action in which the Texas Comptroller is a party) are reserved and all parties reserve all rights related thereto. The Texas Comptroller shall not be a Releasing Party and affirmatively opts out of the Third-Party Release.  The Texas Comptroller shall not be required to file any proof of claim, motion or request for payment in order to be paid any Administrative Expense Claims for taxes that arise in the ordinary course of the SO5 Digital Debtors' business, including postpetition taxes incurred by the SO5 Digital Debtors after the Petition Date (in accordance with section 503(b)(1)(B)-(D) of the Bankruptcy Code), which shall be paid in accordance with section 1129(a)(9)(A) of the Bankruptcy Code or, if not due on the Effective Date, in the ordinary course of business in accordance with applicable law. Nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Texas Comptroller's Administrative Expense Claims.

134. The Texas Comptroller's Priority Tax Claims will be paid in cash, in full, upon allowance, or alternatively, in equal monthly installments in accordance with section 1129(a)(9)(C) over a period ending not later than five (5) years after the Petition Date.  The Texas Comptroller may amend its Priority Tax Claims in accordance with applicable law to reflect the results of the actual assessment of tax liabilities without prior authorization from the Bankruptcy Court, the Plan Administrator or Liquidation Trustee.  The Plan Administrator or Liquidation Trustee will retain documents for the four-year inspection period set forth in Texas Tax Code § 111.0041(a) (or for

any pending audits, the later of four years or the time any and all Claim(s) based on such audit are resolved). For the avoidance of doubt, the Texas Comptroller will receive interest on its Priority Tax claims after the Effective Date as required by sections 511 and 1129(a)(9)(C) of the Bankruptcy Code. With respect to any Administrative Expense Claim or Priority Tax Claim of the Texas Comptroller, the interest rate shall be the statutory rate of interest.

135. **Provision Relating to Chubb**. Notwithstanding anything to the contrary in this Confirmation Order, the Plan (including, without limitation and for the avoidance of doubt, Sections V.E, V.H, and VI.N thereof and any corresponding sections of this Confirmation Order), all other Plan Documents, the Bar Date Order, any bar date notice or Claim Objection, any other document related to the foregoing or any other order of the Bankruptcy Court (including, without limitation, any provision in the foregoing that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases):

a. through the Chapter 11 plan for the Global Debtors (the "Global Debtors' Plan") and in accordance with, subject to, and on the terms set forth in the Global Debtors' Plan and any order confirming the Global Debtors' Plan (the "Global Debtors' Confirmation Order"), the Reorganized Global Debtors (as that term is defined in the Global Debtors' Plan) shall assume pursuant to sections 105 and 365 of the Bankruptcy Code each insurance policy (including as such may have been extended or renewed and all agreements, documents or instruments related thereto) that has been issued at any time by ACE American Insurance Company, and/or each of its U.S.-based affiliates and predecessor (collectively, and solely in their capacities as

insurers, as applicable, "Chubb") issued to, or providing coverage to, any of the Global Debtors (collectively, the "Chubb Insurance Program");

b.   nothing shall modify the terms and conditions of the Chubb Insurance Program, except as explicitly provided in paragraph 192 of the Global Debtors' Confirmation Order;

c.   on and after the Effective Date, to the extent obligations of the SO5 Digital Debtors and/or the Wind-Down Debtors, as applicable, under the terms and conditions of the Chubb Insurance Program are not satisfied by the Reorganized Global Debtors, the Wind-Down Debtors shall be liable solely for those obligations under the Chubb Insurance Program that are attributable or arise from claims for coverage that are specific to the SO5 Digital Debtors or the Wind-Down Debtors regardless of whether any such obligations are liquidated or become due before, on or after the Effective Date without the need or requirement for Chubb to file or serve an objection to any proposed Cure or a request, application, notice, claim, Proof of Claim, or motion for payment or allowance of any Administrative Claim; for the avoidance of doubt, the Wind-Down Debtors shall have no obligation under the Chubb Insurance Program with respect to any amounts that are solely attributable to claims for coverage specific to the Global Debtors; and

d.   from and after the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article IX of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to the extent necessary to permit: (1) (A) claimants with workers' compensation claims or (B) direct action claims against the Chubb under applicable

non-bankruptcy law to proceed with their claims against the Chubb and/or under the Chubb Insurance Program; (2) Chubb to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any of the Chubb under applicable nonbankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay and/or the injunctions set forth in Article IX of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (3) Chubb to cancel any part of the Chubb Insurance Program and take other actions relating to the Chubb Insurance Program (including effectuating a setoff and/or asserting any recoupment), provided that such actions otherwise comply with the terms and conditions of the Chubb Insurance Program.

In the event of any inconsistency between the terms of paragraph 135 of this Order and the terms of paragraph 192 in the Global Debtors' Confirmation Order as to the rights and obligations of Chubb and the Global Debtors under the Chubb Insurance Program, the terms of the Global Debtors' Confirmation Order, shall control.

136. **Provision Relating to Liberty Mutual.** For the avoidance of doubt, notwithstanding anything to the contrary in the Plan (including, without limitation, Articles V.E, VI.N.2, and IX.D thereof), the Plan Supplement, this Confirmation Order, the Global Debtors' Plan, or any order confirming the Global Debtors' Plan (the "Global Debtors' Confirmation Order"), any insurance policy and any related agreement, document, and instrument issued by Liberty Mutual Insurance Company and/or any of its subsidiaries or affiliates (collectively, "Liberty", and such policies, agreements, documents, and instruments, collectively, the "Liberty

59

Policies") to, for the benefit of, or providing coverage to any SO5 Digital Debtor that is assumed by any SO5 Digital Debtor or that is assigned, transferred, vested in, or otherwise becomes property of the Liquidation Trust or any successor, if any, on or after the Effective Date, solely with respect to Liberty Mutual and any such SO5 Digital Debtor, remain subject to all terms, conditions, limitations, exclusions, retentions, deductibles, obligations, rights, and defenses under the Liberty Policies and applicable law. Solely with respect to Liberty Mutual and any applicable SO5 Digital Debtor, nothing in the Plan, the Plan Supplement, this Confirmation Order, the Global Debtors' Plan, the Global Debtors' Confirmation Order, or any allowance, settlement, or resolution of any Claim shall determine or expand insurance coverage, establish any duty to defend or indemnify, excuse satisfaction of any self-insured retention, deductible, premium, reimbursement, collateral, or other obligation under the Liberty Policies, or otherwise impair Liberty's rights of setoff, recoupment, subrogation, reimbursement, or any other legal or equitable rights and defenses, all of which are hereby expressly reserved and preserved.

137. For the avoidance of doubt, any Liberty Policies that are assumed by the Global Debtors pursuant to the Global Debtors' Plan shall remain subject in all respects to the terms set forth in the Global Debtors' Plan and the Global Debtors' Confirmation Order as to the rights and obligations of Liberty and the Global Debtors under any such policy. In the event of any inconsistency between the terms of paragraphs 136 and 137, herein, and the terms of the Global Debtors' Confirmation Order and/or the Global Debtors' Plan as to the rights and obligations of the Global Debtors and Liberty under the Liberty Policies, the terms of the Global Debtors' Confirmation Order and/or the Global Debtors' Plan, as applicable, shall control.

138. **Provision Relating to HBC US Holdings LLC**. Notwithstanding anything to the contrary herein or in the Plan, nothing in the Plan or this Order shall impair the respective rights

of parties with respect to the settlement proceeds in the "Designated Account" established by the Interchange Settlement Order [Docket No. 1047]; provided that the Liquidation Trust's and SO5 Digital Debtors' respective rights with respect to such proceeds shall be governed by the Schedule of Retained Causes of Action. All parties' rights with respect to all other aspects of that certain August 5, 2024 participation agreement to which Saks Global Enterprises LLC (f/k/a HBC US Holdings LLC) is party (which agreement was subsequently assigned by the participant to a third party) (the "Participation Agreement") are reserved; provided that the Liquidation Trust's and the SO5 Digital Debtors' respective rights with respect to all such other aspects of the Participation Agreement shall be governed by the Schedule of Retained Causes of Action. The Bankruptcy Court shall retain jurisdiction with respect to the foregoing. For the avoidance of doubt and notwithstanding anything herein to the contrary, solely to the extent that the Participation Agreement is an Executory Contract, it shall be deemed rejected as of the Effective Date.

139. **Term of Injunctions or Stays.** Except as otherwise provided in the Plan or in this Confirmation Order, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under the Plan (1) all injunctions with respect to or stays against an action against property of the SO5 Digital Debtors or the SO5 Digital Debtors' Estates arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date this Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the SO5 Digital Debtors or the SO5 Digital Debtors' Estates; and (2) all other injunctions and stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that the Chapter 11 Cases are closed pursuant to a final order of the Bankruptcy Court, or (b) the date that the Chapter 11

Cases are dismissed pursuant to a final order of the Bankruptcy Court. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect indefinitely.

140. **Nonseverability of Plan Provisions.** Each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the SO5 Digital Debtors, Wind-Down Debtors, Liquidation Trustee, or Plan Administrator, as applicable; and (c) nonseverable and mutually dependent. If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

141. **Notice of Subsequent Pleadings.** Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date is required to be served upon only the following parties: (a) the U.S. Trustee; (b) the Wind-Down Debtors, Liquidation Trustee, and Plan Administrator, and their respective counsel; (c) any party known to be directly affected by the relief sought by such pleadings; and (d) any party that specifically requests additional notice in writing to the SO5 Digital Debtors, Wind-Down Debtors, Liquidation Trustee, or Plan Administrator, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The SO5 Digital Debtors' Notice and Claims Agent shall file updated service lists.

142. **Post-Confirmation Reports.** The Wind-Down Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, each of the Wind-Down Debtors and the Liquidation Trust, as applicable, shall remain obligated to file post-confirmation quarterly reports and to pay quarterly fees to the U.S. Trustee until the earliest of that particular Wind-Down Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to File a Proof of Claim or any other request for payment of quarterly fees.

143. **Post-Confirmation Modifications.** Following the entry of this Confirmation Order, the SO5 Digital Debtors or Wind-Down Debtors, as applicable, or after the Effective Date, the Liquidation Trustee, may, upon order of the Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

144. **Applicable Non-Bankruptcy Law.** The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law or any requirements related thereto.

145. **Government Approvals Not Required.** This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents,

instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

146. **Reporting.** After entry of this Confirmation Order, the SO5 Digital Debtors, Wind-Down Debtors, Plan Administrator or Liquidation Trust or Liquidation Trustee, as applicable, shall have no obligation to file with the Court, serve on any parties, or otherwise provide any party with any other report that the SO5 Digital Debtors were obligated to provide under the Bankruptcy Code or an order of the Court, including obligations to provide (a) any reports to any parties otherwise required under the "first" and "second" day orders entered in these Chapter 11 Cases and (b) monthly operating reports (even for those periods for which a monthly operating report was not filed before the Effective Date); *provided* that the SO5 Digital Debtors or the Liquidation Trust, as applicable, will comply with the U.S. Trustee's quarterly reporting requirements.

147. **Notice of Effective Date.** The SO5 Digital Debtors or Plan Administrator, as applicable, shall serve notice of entry of this Confirmation Order, of the occurrence of the Effective Date, and of applicable deadlines in the form attached as **Exhibit B** hereto (the "Notice of Effective Date") in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with notice of the Combined Hearing within seven (7) Business Days after the Effective Date; *provided* that no notice of any kind shall be required to be mailed or made upon any Entity to whom the SO5 Digital Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the SO5 Digital Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

148. The Notice of Effective Date will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law. The above-referenced notices are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

149. **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

150. **Dissolution of the Committee.** The Committee shall be dissolved on the later of (a) the Effective Date or (b) the effective date of any chapter 11 plan for the Global Debtors, and, for the avoidance of doubt, the Challenge Period shall be deemed to have run with respect to the Committee.

151. **Effect of Conflict.** This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

152. **Final Order.** For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Court. This Confirmation Order is a Final Order and shall be effective and enforceable immediately upon entry, and its provisions shall be self-executing.

153. **Retention of Jurisdiction.** The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and

related to, these Chapter 11 Cases, including the matters set forth in Article X of the Plan and

section 1142 of the Bankruptcy Code.

Signed: June 05, 2026

_____
Alfredo R Pérez
United States Bankruptcy Judge

**Exhibit A**
**Plan**

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>SAKS GLOBAL ENTERPRISES LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-90103 (ARP)<br><br>(Jointly Administered) |

**THIRD MODIFIED JOINT PLAN OF LIQUIDATION
OF THE SO5 DIGITAL DEBTORS**

**BRADLEY ARANT BOULT
CUMMINGS LLP**

Jarrod B. Martin (TX Bar No. 24070221)
Michael K. Riordan (TX Bar No. 24070502)
600 Travis Street, Suite 5600
Houston, TX 77002
Telephone: (713) 576-0300
Facsimile: (713) 547-0301
Email:  jbmartin@bradley.com
          mriordan@bradley.com

James B. Bailey (TX Bar No. 24108289)
1819 Fifth Avenue N.
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 488-6913
Email: jbailey@bradley.com

Alexandra E. Dugan (admitted pro hac vice)
1221 Broadway, Suite 2400
Nashville, TN 37203
Telephone: (615) 252-4638
Facsimile: (615) 252-4705
Email:  adugan@bradley.com

---

[1]  A complete list of each of the debtors in these chapter 11 cases (collectively, the "Debtors") may be obtained on the website of the SO5 Digital Debtors' proposed claims and noticing agent at https://cases.stretto.com/Saks. The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the SO5 Digital Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281. The following SO5 Digital Debtors are represented by Bradley Arant Boult Cummings LLP: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively the "SO5 Digital Debtors"). The remaining Debtors (collectively, the "Global Debtors") are represented by Haynes and Boone, LLP and Willkie Farr & Gallagher LLP.

# TABLE OF CONTENTS

**ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION**............................ 1

    A.   DEFINED TERMS ....................................................................................................... 1
    B.   RULES OF INTERPRETATION ...................................................................................... 14
    C.   COMPUTATION OF TIME ........................................................................................... 15
    D.   REFERENCE TO MONETARY FIGURES ....................................................................... 15
    E.   CONTROLLING DOCUMENT ...................................................................................... 15

**ARTICLE II. ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES**..................................................................................................... 16

    A.   ADMINISTRATIVE CLAIMS ...................................................................................... 16
    B.   PROFESSIONAL FEE CLAIMS ................................................................................... 17
        1.   *Final Fee Applications and Payment of Professional Fee Claims* ............................ 17
        2.   *Administrative Claims of OCPs*.................................................................................. 17
        3.   *Post-Confirmation Date Fees and Expenses* ............................................................ 17
        4.   *Professional Fee Reserve* .......................................................................................... 17
    C.   PRIORITY TAX CLAIMS ........................................................................................... 18
    D.   U.S. TRUSTEE STATUTORY FEES ............................................................................ 18

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**..................................................................................................................... 19

    A.   CLASSIFICATION OF CLAIMS AND INTERESTS ......................................................... 19
    B.   TREATMENT OF CLAIMS AND INTERESTS ............................................................... 19
        1.   *Class 1 – Secured Lender Claims* .............................................................................. 19
        2.   *Class 2 – Other Secured Claims* ............................................................................... 20
        3.   *Class 3 – Other Priority Claims* ............................................................................... 20
        4.   *Class 4 – Consignor Claims* ...................................................................................... 21
        5.   *Class 5 – General Unsecured Claims* ........................................................................ 21
        6.   *Class 6 – Intercompany Claims* ................................................................................ 21
        7.   *Class 7 – Subordinated Claims* ................................................................................. 22
        8.   *Class 8 – SO5 Digital Debtor Interests* .................................................................... 22
    C.   RESERVATION OF RIGHTS REGARDING CLAIMS AND INTERESTS............................. 22
    D.   ELIMINATION OF VACANT CLASSES ....................................................................... 22
    E.   VOTING CLASSES, PRESUMED ACCEPTANCE BY NON-VOTING CLASSES.......................... 23
    F.   CONTROVERSY CONCERNING IMPAIRMENT............................................................. 23
    G.   SUBORDINATION OF CLAIMS ................................................................................... 23
    H.   CONFIRMATION PURSUANT TO SECTION 1129(B) OF THE BANKRUPTCY CODE.................. 23
    I.   POSTPETITION INTEREST ON CLAIMS ..................................................................... 23

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ................................. 24

    A.   GENERAL SETTLEMENT OF CLAIMS AND INTERESTS; INTERCOMPANY CLAIM SETTLEMENT
        24
    B.   SOURCES OF CONSIDERATION FOR PLAN DISTRIBUTIONS ....................................... 24
    C.   SALE TRANSACTIONS............................................................................................... 24
    D.   WIND DOWN ........................................................................................................... 25
        1.   *[Reserved]*................................................................................................................. 25

i

2.   Plan Administrator.................................................................................... 25
3.   Authority of the Plan Administrator and Wind-Down Debtors ................................. 26
4.   Wind-Down Budget; Liquidation Trustee Remitting the Plan Administrator Fees and Expenses.................................................................................................. 26
E.   LIQUIDATION TRUST ......................................................................................... 27
1.   Creation and Governance of the Liquidation Trust.................................................. 27
2.   Liquidation Trust Agreement.................................................................................. 30
3.   Books and Records; Preservation of Privilege ....................................................... 30
4.   Liquidation Trust Fees and Expenses ..................................................................... 31
5.   Dissolution of the Liquidation Trust ....................................................................... 31
6.   Single-Satisfaction of Claims................................................................................. 32
7.   Cooperation by the Debtors, Wind-Down Debtors, Plan Administrator, Liquidation Trust, and Liquidation Trustee .............................................................................. 32
8.   Abandonment of Liquidation Trust Assets ............................................................. 33
9.   Tax Treatment of Liquidation Trust........................................................................ 33
F.   RETAINED CAUSES OF ACTION ......................................................................... 35
G.   WAIVER AND RELEASE OF AVOIDANCE ACTIONS ............................................. 35
H.   CORPORATE ACTION ....................................................................................... 35
I.   CANCELLATION OF EXISTING SECURITIES AND AGREEMENTS ............................ 36
J.   EFFECTUATING DOCUMENTS; FURTHER TRANSACTIONS................................... 36
K.   SECTION 1146 EXEMPTION FROM CERTAIN TAXES AND FEES .......................... 36
L.   SEPARATE PLANS ........................................................................................... 37
M.   CLOSING THE CHAPTER 11 CASES ................................................................. 37

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................................................................................................ 37
A.   ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....... 37
B.   CLAIMS BASED ON REJECTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES ........ 38
C.   RESERVATION OF RIGHTS ................................................................................ 38
D.   PREEXISTING OBLIGATIONS TO THE SO5 DIGITAL DEBTORS UNDER EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................................................... 39
E.   INSURANCE POLICIES ...................................................................................... 39
F.   MODIFICATIONS, AMENDMENTS, SUPPLEMENTS, RESTATEMENTS, OR OTHER AGREEMENTS 40
G.   NONOCCURRENCE OF EFFECTIVE DATE ........................................................... 40
H.   EMPLOYEE COMPENSATION AND BENEFITS...................................................... 40

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ....................................... 40
A.   DISTRIBUTIONS ON ACCOUNT OF CLAIMS ALLOWED AS OF THE EFFECTIVE DATE ............. 40
B.   COMPLIANCE WITH TAX REQUIREMENTS......................................................... 41
C.   DATE OF DISTRIBUTIONS................................................................................. 42
D.   LIQUIDATION TRUSTEE AS DISBURSING AGENT ............................................... 42
E.   RIGHTS AND POWERS OF DISBURSING AGENT.................................................. 42
F.   SURRENDER OF INSTRUMENTS ........................................................................ 42
G.   DELIVERY OF DISTRIBUTIONS AND UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS ...... 42
H.   MANNER OF PAYMENT .................................................................................... 43
I.   FOREIGN CURRENCY EXCHANGE RATE............................................................ 43

J.   S ETOFFS AND R ECOUPMENT..................................................................................... 43
K.   M INIMUM D ISTRIBUTION .................................................................................... 43
L.   A LLOCATIONS ..................................................................................................... 44
M.   D ISTRIBUTIONS F REE AND C LEAR ...................................................................... 44
N.   C LAIMS P AID OR P AYABLE BY T HIRD P ARTIES .................................................. 44
    1.   *Claims Paid by Third Parties*................................................................ *44*
    2.   *Claims Payable by Third Parties* .......................................................... *44*
    3.   *Applicability of Insurance Policies* ....................................................... *45*

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
AND DISPUTED CLAIMS**.................................................................................... **45**

A.   A LLOWANCE OF C LAIMS ..................................................................................... 45
B.   C LAIMS A DMINISTRATION R ESPONSIBILITIES ..................................................... 45
C.   E STIMATION OF C LAIMS AND I NTERESTS............................................................ 46
D.   A DJUSTMENT TO C LAIMS OR I NTERESTS W ITHOUT O BJECTION .......................... 46
E.   T IME TO F ILE O BJECTIONS TO C LAIMS .............................................................. 46
F.   D ISALLOWANCE OF C LAIMS OR I NTERESTS ........................................................ 46
G.   D ISALLOWANCE OF L ATE C LAIMS ...................................................................... 47
H.   D ISPUTED C LAIMS P ROCESS ............................................................................... 47
I.   A MENDMENTS TO C LAIMS .................................................................................. 47
J.   N O D ISTRIBUTIONS P ENDING A LLOWANCE ........................................................ 47
K.   D ISTRIBUTIONS A FTER A LLOWANCE ................................................................... 47

**ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**................... **48**

A.   C ONDITIONS P RECEDENT TO THE E FFECTIVE D ATE ............................................ 48
B.   W AIVER OF C ONDITIONS..................................................................................... 48

**ARTICLE IX. RELEASE, INJUNCTION, AND RELATED PROVISIONS**...................... **49**

A.   SO5 D IGITAL D EBTOR R ELEASES........................................................................ 49
B.   T HIRD P ARTY R ELEASES .................................................................................... 50
C.   E XCULPATIONS ................................................................................................... 51
D.   I NJUNCTION ....................................................................................................... 52
E.   R ELEASE OF L IENS ............................................................................................. 52

**ARTICLE X. RETENTION OF JURISDICTION** ...................................................... **53**

**ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** **55**

A.   M ODIFICATION AND A MENDMENT ...................................................................... 55
B.   E FFECT OF C ONFIRMATION ON M ODIFICATIONS ................................................. 55
C.   R EVOCATION OR W ITHDRAWAL OF P LAN .......................................................... 55

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ................................................... **56**

A.   I MMEDIATE B INDING E FFECT ............................................................................. 56
B.   A DDITIONAL D OCUMENTS .................................................................................. 56
C.   D ISSOLUTION OF THE C OMMITTEE AND A NY O THER S TATUTORY C OMMITTEE .................. 56
D.   S UBSTANTIAL C ONSUMMATION.......................................................................... 56
E.   R ESERVATION OF R IGHTS ................................................................................... 57
F.   S UCCESSORS AND A SSIGNS ................................................................................ 57

G.   DETERMINATION OF TAX LIABILITIES ...................................................................... 57
H.   NOTICES ...................................................................................................................... 57
I.    TERM OF INJUNCTIONS OR STAYS ............................................................................ 58
J.    ENTIRE AGREEMENT ................................................................................................... 58
K.   PLAN SUPPLEMENT .................................................................................................... 58
L.    GOVERNING LAW ....................................................................................................... 58
M.  NONSEVERABILITY OF PLAN PROVISIONS ............................................................... 59

**INTRODUCTION**

The SO5 Digital Debtors propose this chapter 11 plan under section 1121 of the Bankruptcy Code. The SO5 Digital Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Supplemental agreements and documents referenced in this Plan and the Disclosure Statement are available for review on both the Bankruptcy Court's docket and on the SO5 Digital Debtors' case information website: https://cases.stretto.com/saks/.

Although proposed jointly for administrative purposes, this Plan constitutes a separate chapter 11 plan for each SO5 Digital Debtor for the treatment and resolution of outstanding Claims against and Interests in such SO5 Digital Debtor pursuant to the Bankruptcy Code. Unless otherwise set forth herein, the classification and treatment of Claims against and Interests in the SO5 Digital Debtors set forth in Article III of this Plan apply separately with respect to each SO5 Digital Debtor. Each SO5 Digital Debtor is a proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code. This Plan does not contemplate substantive consolidation of any of the SO5 Digital Debtors.

Reference is made to the Disclosure Statement Filed contemporaneously with the Plan for a discussion of the SO5 Digital Debtors' history, business, prepetition capital structure, and liquidation analysis, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under this Plan.

Subject to section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and this Plan, the SO5 Digital Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to substantial consummation.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

**ARTICLE I.**
**DEFINED TERMS AND RULES OF INTERPRETATION**

A.    **Defined Terms**

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

1.    "Administrative Claims Reserve" means a reserve created on or before the Effective Date of the Plan, which amount shall be used to fund the total of Allowed or estimated Administrative Claims (other than Professional Fee Claims, and Claims for U.S. Trustee Statutory Fees).

2.    "Administrative Claim" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the SO5 Digital Debtors incurred on or after the Petition

1

Date and through the Effective Date; (b) Professional Fee Claims; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code.

3.      "Administrative Claims Bar Date" means the deadline for Filing all requests for allowance and payment of Administrative Claims, which, except in the case of Professional Fee Claims, shall be thirty (30) days after the Effective Date; provided, however, (a) Professional Fee Claims shall be filed in accordance with the provisions of Article II.B. herein; and (b) Section 503(b)(9) Claims shall be filed in accordance with the provisions of the Bar Date Order.

4.      "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such entity was a debtor in a case under the Bankruptcy Code.

5.      "Allowed" means, with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the applicable Bar Date; (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been Filed; or (c) a Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if, and to the extent that, with respect to such Claim, no objection to the allowance thereof has been Filed by the SO5 Digital Debtors or Liquidation Trustee, as applicable, or any other party in interest within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection was so Filed and the Claim shall have been Allowed by a Final Order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the SO5 Digital Debtors. "Allow" and "Allowing" shall have correlative meanings.  Any Claim that has been listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim has been timely Filed, is not considered Allowed and is hereby expunged without further action and without any further notice to or action, order, or approval of the Court.

6.      "Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, or remedies held by the SO5 Digital Debtors pursuant to (a) any applicable section of the Bankruptcy Code including, without limitation, §§ 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553, or 724 of the Bankruptcy Code or (b) applicable non-bankruptcy law, including any state or foreign law governing fraudulent or otherwise avoidable obligations, transfers, or conveyances.

7.      "Ballots" means ballots provided to each of the Holders of Claims entitled to vote to accept or reject the Plan, including the Release Opt-Out Form.

8.      "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

9.      "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas.

2

10.     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time.

11.     "Bar Date" means, as applicable, the Administrative Claims Bar Date, and any other date or dates established by an order of the Bankruptcy Court by which Proofs of Claim must be Filed, including the general bar date, including for Section 503(b)(9) Claim(s), of April 24, 2026 and the bar date for Governmental Units of July 13, 2026, each as set forth by the Bar Date Order. Notwithstanding the foregoing, the Professional Fee Claims shall be Filed in accordance with Article II.B. herein and shall not otherwise be subject to the Bar Date.

12.     "Bar Date Order" means the *Order (I) Establishing Deadlines for Filing Proofs of Claim, Including Requests for Payment under Section 503(b)(9); (II) Approving the Form and Manner for Filing Proofs of Claim; (III) Approving the Form and Manner of Notice Thereof, Including Section 503(b)(9) Requests; and (IV) Granting Related Relief* [Docket No. 1158].

13.     "Business Day" means any day other than a Saturday, Sunday, or "Legal Holiday" as such term is defined in Bankruptcy Rule 9006(a).

14.     "Cash" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

15.     "Cash Collateral Order" means the *Final Order (I) Authorizing SO5 Digital Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Creditors, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Docket No. 919].

16.     "Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) claims pursuant to federal securities law; (c) the right to object to or otherwise contest Claims or Interests and any Claims Objections; (d) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (f) any Avoidance Actions; and (g) claims pursuant to section 505 of the Bankruptcy Code.

17.     "Chapter 11 Cases" means these chapter 11 cases Filed by the SO5 Digital Debtors on the Petition Date in the Bankruptcy Court.

18.     "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code, against the SO5 Digital Debtors or the Estates.

19.     "Claim Objection" means an objection to the allowance of a claim as set forth in section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and/or any Bankruptcy Court order regarding omnibus claims objections.

20.     "Claim Objection Bar Date" means the date that is three hundred sixty-five (365) days after the Effective Date, which date may be extended upon presentment of an order to the Bankruptcy Court by the Liquidation Trustee.

21.     "Claims Register" means the register managed by the Notice and Claims Agent reflecting Filed Proofs of Claim.

22.     "Class" means a category of Claims or Interests as established by and set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

23.     "Committee" means the official committee of unsecured creditors appointed in these Chapter 11 Cases by the U.S. Trustee under section 1102(b) of the Bankruptcy Code on January 27, 2026 [Docket No. 480].

24.     "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket in these Chapter 11 Cases.

25.     "Confirmation Hearing" means a hearing conducted by the Bankruptcy Court to consider confirmation of the proposed Plan under section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

26.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27.     "Consignor Claim" means any Claim against a SO5 Digital Debtor arising from the Holder of such Claim's provision of consignment goods to such SO5 Digital Debtor for sale secured by a properly perfected security interest in such goods.

28.     "Consignor Claims Reserve" means a reserve created on or before the Effective Date of the Plan, which amount shall be used to fund the total of Allowed or estimated Consignor Claims.

29.     "Consummation" means the occurrence of the Effective Date.

30.     "Cure" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed or assumed and assigned by the SO5 Digital Debtors.

31.     "D&O Liability Insurance Policies" means, collectively, all insurance policies (including any "tail policies") issued at any time to or providing coverage to any of the SO5 Digital Debtors for current or former directors', managers', employees', and/or officers' liability, and all agreements, documents, or instruments related thereto.

4

32.      "<u>Debtors</u>" means the SO5 Digital Debtors and Global Debtors.

33.      "<u>Disclosure Statement</u>" means the *Disclosure Statement Relating to the Modified Joint Chapter 11 Plan of Liquidation of the SO5 Digital Debtors*, dated June 5, 2026 (as such may be amended, supplemented, or modified from time to time thereafter), including all exhibits and schedules thereto.

34.      "<u>Disputed</u>" means, with respect to any Claim or Interest, any Claim or Interest: (a) listed on the Schedules as unliquidated, disputed or contingent, unless a Proof of Claim has been Filed in a liquidated and non-contingent amount and no objection to such Proof of Claim has been timely filed; (b) included in a Proof of Claim as to which an objection or request for estimation has been timely filed, or as to which the SO5 Digital Debtors or Liquidation Trustee, as applicable, or other parties in interest retain the ability to interpose a timely objection or request for estimation; or (c) which is otherwise disputed by the SO5 Digital Debtors or Liquidation Trustee, in accordance with applicable law and for which the objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order. Claims that are Allowed by the Plan or that have been Allowed by a Final Order shall not be Disputed Claims.

35.      "<u>Distribution Record Date</u>" means the date for determining which Holders of Claims are eligible to receive distributions under the Plan, which date shall be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

36.      "<u>Effective Date</u>" means the date that all conditions precedent to the occurrence of the Effective Date have been satisfied or waived in accordance with the Plan.

37.      "<u>Entity</u>" has the meaning set forth in section 101(15) of the Bankruptcy Code.

38.      "<u>Estate</u>" means the estate of any SO5 Digital Debtor or Wind-Down Debtor, as applicable, created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

39.      "<u>Excluded Party</u>" means collectively, (a) all Entities other than a Released Party, and (b) the Entities identified in the Schedule of Excluded Parties; provided, that the failure to identify any Entity as an Excluded Party in the Schedule of Excluded Parties or otherwise shall not result in such Entity being or being deemed to be a Released Party.

40.      "<u>Exculpated Party</u>" means collectively, and in each case, in its capacity as such, each of: (a) the SO5 Digital Debtors; (b) the Committee; and (c) the members of the Committee; <u>provided</u> that no Excluded Party shall be an Exculpated Party.

41.      "<u>Executory Contract</u>" means a contract to which any of the SO5 Digital Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

42.      "<u>Existing Equity Interests</u>" means the existing Interests in each SO5 Digital Debtor.

43.      "<u>File</u>," "<u>Filed</u>," or "<u>Filing</u>" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or in the case of a Proof of Claim, means file, filed, or filing with the Notice and Claims Agent or Bankruptcy Court.

44.      "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

45.      "General Unsecured Claims" means any Claim other than a(n): (a) Administrative Claim; (b) Professional Fee Claim; (c) Priority Tax Claim; (d) Secured Lender Claim; (e) Other Secured Claim; (f) Consignor Claim; (g) Other Priority Claim; (h) Intercompany Claim; or (i) Subordinated Claim. For the avoidance of doubt, General Unsecured Claims shall include deficiency claims arising from Consignor Claims, if any.

46.      "Global Debtors" means the Debtors other than the SO5 Digital Debtors. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Notice and Claims Agent at https://cases.stretto.com/Saks.

47.      "Global Debtors' Plan" means the *Amended Joint Chapter 11 Plan of Saks Global Enterprises LLC and its Global Debtor Affiliates* [Docket No. 2178], as may be amended, supplemented or otherwise modified from time to time.

48.      "Governmental Unit" means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

49.      "Holder" means an Entity holding a Claim against or an Interest in any of the SO5 Digital Debtors.

50.      "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

51.      "Insider" has the meaning set forth in section 101(31) of the Bankruptcy Code.

52.      "Insurance Policies" means all insurance policies that have been issued at any time to the SO5 Digital Debtors or to another Entity, such as a Global Debtor, to provide coverage to the SO5 Digital Debtors, including any directors and officers liability policy or any "tail" policy, and all agreements, documents, or instruments relating thereto.

53.      "Intercompany Claim" means any Claim held by a SO5 Digital Debtor or a Global Debtor against a SO5 Digital Debtor.

54. "Intercompany Claim Settlement" means the settlement between the SO5 Digital Debtors and the Global Debtors regarding, among other things, the treatment of intercompany claims between them under their respective Chapter 11 plans, as documented in the Plan Supplement.

55. "Interest(s)" or "SO5 Digital Debtor Interests" mean any equity security (as defined in section 101(16) of the Bankruptcy Code) in any of the SO5 Digital Debtors, including any and all issued or unissued share of common stock, preferred stock, or other instrument evidencing any fixed or contingent equity, ownership or profits interest in any of the SO5 Digital Debtors, whether or not transferable, including membership interests in limited liability companies and partnership interests in partnerships, and any option, warrant, or other security or right, contractual or otherwise, to acquire or subscribe for or which are convertible into any shares (or any class thereof) of, any such interest in the SO5 Digital Debtors, whether fully vested or vesting in the future, including without limitation, equity or equity-based incentives, grants, any award of stock options, restricted stock units, equity appreciation rights, restricted equity, or other instruments issued, granted, or promised to be grated to current or former employees, directors, officers, or contractors of the SO5 Digital Debtors, to acquire any such interest in the SO5 Digital Debtors pursuant to any equity plan maintained by the Debtors or under any existing employment agreement that existed immediately before the Effective Date.

56. "IRS Form" means IRS Form W-9, W-8BEN, any acceptable substitute, or any other tax form, including information form, that the Plan Administrator or Wind-Down Debtors, as applicable, may require from a holder of a Claim for a distribution under the Plan.

57. "Lien" means a "lien," as defined in section 101(37) of the Bankruptcy Code.

58. "Liquidation Analysis" means the analysis of a liquidation scenario under chapter 7 of the Bankruptcy Code for these SO5 Digital Debtors (as such analysis may be updated, amended, or modified from time to time thereafter).

59. "Liquidation Trust" means the trust, of which the Liquidation Trustee shall serve as trustee, formed for the benefit of the Liquidation Trust Beneficiaries pursuant to this Plan, the Liquidation Trust Agreement, and the Confirmation Order to receive, hold, and administer the Liquidation Trust Assets; make distributions to holders of Allowed Claims; object to Claims, if any, as provided in this Plan and prosecute such objections; resolve, compromise and/or settle any objections to the amount, validity, priority, treatment or allowance of Claims; and enforce and prosecute claims, interests, rights, and privileges under the Retained Causes of Action.

60. "Liquidation Trust Agreement" means the agreement, to be included in the Plan Supplement, as it may be amended, effective on the Effective Date, that establishes and sets forth the terms and conditions which shall, in conjunction with this Plan and the Confirmation Order, govern the administration of the Liquidation Trust, which agreement shall be in a form reasonably acceptable to the Committee.

61. "Liquidation Trust Assets" means (a) all Cash of the SO5 Digital Debtors as of the Effective Date; (b) the Retained Causes of Action; and (c) any other assets of the SO5 Digital Debtors Estates not previously liquidated or abandoned.

62. "Liquidation Trust Beneficiaries" means Holders of Allowed Class 5 General Unsecured Claims.

63. "Liquidation Trust Expenses" means all reasonable and documented fees, expenses, and costs (including any taxes imposed on or payable by the Liquidation Trust and any U.S. Trustee Statutory Fees payable by the Liquidation Trust or Liquidation Trustee) incurred by the Liquidation Trust, any Entity or professional retained by the Liquidation Trust, and any additional amount determined necessary by the Liquidation Trustee to adequately reserve for the operating expenses of the Liquidation Trust, all of which shall be paid out of the Liquidation Trust Assets, in connection with carrying out the purpose of the Liquidation Trust and otherwise in accordance with the Liquidation Trust Agreement.

64. "Liquidation Trust Interests" means, collectively, non-certified beneficial interests in the Liquidation Trust granted to each Liquidation Trust Beneficiary, which shall entitle each Liquidation Trust Beneficiary to its *pro rata* share of the Liquidation Trust Net Assets, subject to the terms and conditions of this Plan and the Liquidation Trust Agreement.

65. "Liquidation Trust Net Assets" means the Liquidation Trust Assets *less* the Liquidation Trust Expenses and the Wind-Down Reserves.

66. "Liquidation Trustee" means, in its capacity as such, the Entity designated by the Committee in consultation with the SO5 Digital Debtors to serve as the trustee of the Liquidation Trust, and any successor thereto appointed in accordance with the terms of the Plan, the Confirmation Order, and the Liquidation Trust Agreement.

67. "Loan Documents" has the meaning set forth in the Prepetition Credit Agreement.

68. [RESERVED].

69. "Notice and Claims Agent" means Stretto, Inc., in its capacity as claims, noticing, and solicitation agent for the Debtors, or any successor claims and noticing agent.

70. "Notice of Non-Voting Status Package" means the materials sent to Holders of Claims and Interests not entitled to vote to accept or reject the Plan, including the Release Opt-Out Form and Release Opt-In Form, provided, however, that Holders of Class 6 Intercompany Claims will not receive a Release Opt-Out Form or Release Opt-In Form.

71. "OCP" means an ordinary course professional whose retention and compensation has been authorized by the Bankruptcy Court by entry of an OCP Order.

72. "OCP Order" means the Order Approving Procedures for the Retention and Compensation of Ordinary Course Professionals [Docket No. 940].

73. "Other Priority Claim" means a Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

74.     "Other Priority Claim Reserve" means a reserve created on or before the Effective Date of the Plan, which amount shall be used to fund the total of Allowed or estimated Other Priority Claims.

75.     "Other Secured Claim" means any Claim, other than a Secured Lender Claim or Consignor Claim, against a SO5 Digital Debtor where, pursuant to section 506(a) of the Bankruptcy Code, the Claim is secured by a valid, perfected, and enforceable Lien, which is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title, or interest of the SO5 Digital Debtor in and to property of the Estate, to the extent of the value of So5 Digital Debtors' interest in such property as of the relevant determination date.

76.     "Other Secured Claims Reserve" means a reserve created on or before the Effective Date of the Plan from the proceeds of the collateral of Holders of Other Secured Claims, which amount shall be used to fund the total of Allowed or estimated Other Secured Claims.

77.     "Petition Date" the date on which each of the Debtors Filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing these Chapter 11 Cases.

78.     "Plan" means this joint plan of distribution under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time, including all exhibits and schedules hereto.

79.     "Plan Administrator Agreement" means the agreement, to be included in the Plan Supplement, as may be amended from time to time, effective on the as of the Effective Date, that establishes and sets forth the terms and conditions which shall, in conjunction with this Plan and the Confirmation Order, govern the administration of the Wind-Down Debtors, which agreement shall be in a form reasonably acceptable to the SO5 Digital Debtors.

80.     "Plan Administrator" means the Entity selected by the SO5 Digital Debtors and appointed on the Effective Date to administer the wind-up of the SO5 Digital Debtors in accordance with the terms of Article IV.D hereof, or any successor thereto appointed in accordance with the terms of the Plan, the Confirmation Order, and the Plan Administrator Agreement.

81.     "Plan Administrator Expenses" means all documented fees, expenses, and costs of, or incurred by the Plan Administrator, the Wind-Down Debtors and/or any professional engaged by the Plan Administrator arising from or in connection with the Wind Down or in connection with carrying out the purposes of the Plan, including (a) any monetary obligation necessary or appropriate for the dissolution of the Wind-Down Debtors in compliance with applicable law, (b) any expenses incurred in connection with or under any operational services agreements with the Global Debtors, (c) the preparation of appropriate tax returns, and (d) closing the Chapter 11 Cases, all of which shall be paid in accordance with the Wind-Down Budget out of the Wind-Down Budget Reserve; *provided*, that the aggregate amount of Plan Administrator Expenses shall not exceed the Wind-Down Cap without the prior written consent of the Liquidation Trustee, which shall not be unreasonably withheld.

82.     "Plan Distribution" means a payment or distribution to holders of Allowed Claims or other eligible Entities under this Plan.

83.     "Plan Documents" means (a) the Plan; (b) the Confirmation Order; (c) the Disclosure Statement; (d) the Disclosure Statement Order; (e) the Plan Supplement; (f) the Liquidation Trust Agreement; (g) the Plan Administrator Agreement; and (h) any other agreements, documentation or instruments necessary or advisable to implement, consummate, or document the transactions contemplated by the Plan (in each case, including all exhibits, schedules, amendments, modifications, supplements, appendices, annexes, instructions, and attachments thereto).

84.     "Plan Supplement" means a supplemental appendix to the Plan consisting of documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall be Filed by the SO5 Digital Debtors no later than May 26, 2026. The Plan Supplement shall include, among other things, (a) the Plan Administrator Agreement, (b) the identity and compensation of the Plan Administrator; (c) to the extent known, the identity of any insider that will be employed or retained by the Plan Administrator; (d) the Wind-Down Budget; (e) a schedule of the Retained Causes of Action, if any; (f) a schedule of assumed Executory Contracts and Unexpired Leases; (g) the identity and compensation of the Liquidation Trustee; (h) to the extent known, the identity of any insider that will be employed or retained by the Liquidation Trustee; (i) the Liquidation Trust Agreement; (j) the Liquidation Analysis; (k) financial projections for the Wind-Down Debtors; (l) the Schedule of Excluded Parties; and (m) any other documentation necessary to effectuate the Plan or that is contemplated by the Plan. The SO5 Digital Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement prior to the Effective Date; provided that the documents contained in the Plan Supplement shall be in form and substance reasonably acceptable to the Committee, unless otherwise provided herein.

85.     "Prepetition Agent" means Callodine Commercial Finance, LLC, as administrative agent and collateral agent, for its own benefit and the benefit of the lenders from time to time party under the Prepetition Facility (and together with the Prepetition Agent, the "Prepetition Secured Lenders").

86.     "Prepetition Credit Agreement" means that certain Term Loan Credit Agreement, dated as of August 6, 2021 (as amended, restated, amended and restated, supplemented, replaced, or otherwise modified from time to time) together with the Loan Documents (as defined therein)

87.     "Prepetition Facility" means the term loan facility under the Prepetition Credit Agreement.

88.     "Prepetition Lender Collateral" as used herein, has the meaning ascribed to the term "Prepetition Collateral" in the Cash Collateral Order.

89.     "Post-Petition Lender Collateral" as used herein, has the meaning ascribed to the term "Post-Petition Collateral" in the Cash Collateral Order.

90.     "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

91.     "Priority Tax Claim Reserve" means the reserve established and funded by the SO5 Digital Debtors prior to the Effective Date to satisfy Allowed and estimated Priority Tax Claims.

10

92.      "Privileges" means all evidentiary privileges of any type or nature whatsoever, including a client privilege, the work product privilege or doctrine, common interest privilege or doctrine, any other privilege or immunity attaching to any documents or communications in any form, including electronic data hosted on remote servers, and any other applicable evidentiary privileges of each of the foregoing.

93.      "Professional" means an Entity: (a) employed by the Digital Debtors pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code in the Chapter 11 Cases.

94.      "Professional Fee Claim" means a Claim (a) by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred after the Petition Date and on or before the Confirmation Date under sections 328, 330, 331, or 503(b)(2) of the Bankruptcy Code, as applicable; or (b) by an OCP for compensation for services rendered or reimbursement of expenses incurred after the Petition Date and on or before the Confirmation Date pursuant to the OCP Order.

95.      "Professional Fee Reserve" means the reserve established and funded by the SO5 Digital Debtors prior to the Effective Date to satisfy the accrued but unpaid Professional Fee Claims.

96.      "Proof of Claim" means a proof of Claim substantially conforming with Official Form 410 (except as otherwise provided by a Final Order) Filed against a SO5 Digital Debtor in these Chapter 11 Cases.

97.      "Related Party" means, collectively with respect to any Entity, in each case solely in its capacity as such with respect to such Entity, such Entity's predecessors, successors, assigns, and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time, and any Entity claiming by or through any of them, including such Related Parties' respective heirs, executors, estates, servants, and nominees, similarly in each case in their capacity as such. For the avoidance of doubt, the Liquidation Trust, Liquidation Trustee, and Plan Administrator constitute Related Parties.  No Excluded Party shall constitute a Related Party and no Entity that is not a "Released Party" in the Global Debtors' Plan shall constitute a Related Party.

98.      "Release Opt-In Form" means the box included in each of the Notice of Non-Voting Status Packages to Classes 7 and 8, which permit both those Holders of Claims and Interests not entitled to vote on the Plan the right to opt into the Third Party Release set forth in Article IX.B. herein.

11

99.     "Release Opt-Out Form" means the box included in each of the Ballots and Notice of Non-Voting Status Packages, which permit both those Holders of Claims and Interests entitled to vote on the Plan and those not entitled to vote on the Plan in Classes 1, 2, and 3 the right to opt out of the Third Party Release set forth in Article IX.B. herein.

100.     "Released Party" means, each of, and in each case in its capacity as such: (a) any current director or officer of the SO5 Digital Debtors on the Effective Date, except for Franz Buerstedde; (b) the Committee and each of its members; (c) the Prepetition Agent and Prepetition Secured Lenders; (d) the Professionals as of the Effective Date; (e) the Plan Administrator; (f) the Liquidation Trustee; (g)  Genny Siller; and (h) each Related Party of each Entity in clauses (a) through (g) above; provided, that no Released Party will be an Excluded Party; provided, further that no SO5 Digital Debtor shall be a Released Party, provided, further, that Ian Putnam is not a Released Party. For the avoidance of doubt, each current director or officer of the SO5 Digital Debtors in clause (a) above constitutes a Released Party in their capacity as a director or officer of the SO5 Digital Debtors.

101.     "Releasing Party" means each of, and in each case in its capacity as such: (a) the Committee and its members, each in their capacities as such; (b) the Prepetition Agent and Prepetition Secured Lenders; (c) any other Releasing Party; and (d) each Related Party of each Entity in clauses (a) through (d) for which such Entity is legally entitled to bind such Related Party to the releases contained in this Plan under applicable non-bankruptcy law; provided, that, in each case, an Entity within the scope of clauses (a) through (d) shall not be a Releasing Party if it: (i) is a Holder of a Claim in Classes 1, 2, 3, 4, or 5 that elects to opt out of the Third-Party Releases as provided in the Release Opt-Out Form included with Ballots and Notice of Non-Voting Status Packages; (ii) is a Holder of a Claim or Interest in Classes 7 or 8 that elects not to opt into the Third-Party Releases as provided in the Release Opt-In Form included with Notice of Non-Voting Status Packages to those Classes; or (iii) timely objects to the releases provided by the Plan through a formal objection Filed on the docket of these Chapter 11 Cases that is not resolved before the Confirmation Hearing. For the avoidance of confusion, no SO5 Digital Debtor will be a Releasing Party.

102.     "Retained Causes of Action" means the Causes of Action, if any, that shall be retained pursuant to the Plan and set forth in a schedule contained in the Plan Supplement, which in each case shall be in form and substance reasonably acceptable to the Committee.

103.     "Sale Transactions" means any sales under section 363(f) of the Bankruptcy Code of the SO5 Digital Debtors', Wind-Down Debtors', or Liquidation Trust's property (or the property of any successor of any of the foregoing Entities).

104.     "Schedule of Excluded Parties" means the schedule of Excluded Parties, which will be contained in the Plan Supplement.

105.     "Schedules" means, collectively, the schedule of assets and liabilities and statement of financial affairs Filed by each SO5 Digital Debtor pursuant to section 521 of the Bankruptcy Code, the Bankruptcy Rules, and the official bankruptcy forms, as the same may be amended, modified, or supplemented from time to time.

12

106. "Section 503(b)(9) Claim(s)" means any Administrative Claim(s) based on or arising from section 503(b)(9) of the Bankruptcy Code.

107. "Securities Act" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

108. "Secured Lender Claim" means a Claim under the Prepetition Facility that is secured by first priority security interests in the Prepetition Lender Collateral and Post-Petition Lender Collateral.

109. "SO5 Digital Debtors" means Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC, each as a debtor and debtor in possession.

110. "SO5 Digital Debtor Releases" means the releases set forth in Article IX.A herein.

111. "Subordinated Claim(s)" means any Claim(s) subordinated by order of the Bankruptcy Court pursuant to section 510 of the Bankruptcy Code or other applicable law.

112. "Third Party Release" means the release of Claims or Causes of Action provided by the Releasing Parties to the Released Parties, as set forth in Article IX.B. herein.

113. "U.S. Trustee" means the Office of the United States Trustee for the Southern District of Texas.

114. "U.S. Trustee Statutory Fees" means all fees due and payable pursuant to section 1930 of Title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the United States Code, to the extent applicable.

115. "Unexpired Lease" means a lease to which any of the SO5 Digital Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

116. "Unimpaired" means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

117. "Voting Deadline" means the date and time by which all ballots to accept or reject the Plan must be received to be counted, which date shall be June 1, 2026.

118. "Wind Down" means the post-Effective Date wind-down process, as described more fully in Article IV.D hereof, by which the Plan Administrator and Wind-Down Debtors shall seek to complete any tasks required to wind down the affairs of the SO5 Digital Debtors or Wind-Down Debtors, as applicable and otherwise close these Chapter 11 Cases, as described in more detail in Article IV hereof.

119. "Wind-Down Cap" means $[200,000]; *provided* that, after the Effective Date, at the reasonable request of the Plan Administrator, the Wind-Down Cap may be increased by the Liquidation Trustee in his discretion, without any further notice to or action, order, or approval of

13

the Bankruptcy Court. For the avoidance of doubt, any taxes arising post-Effective Date and payable by the Wind-Down Debtors that are paid by the Liquidation Trustee per the procedures set forth in Article IV.D.4. or otherwise will not count toward the Wind-Down Cap.

120. "Wind-Down Budget" means a budget for the Plan Administrator Expenses and other costs and expenses necessary to effectuate the Wind-Down, as determined by the SO5 Digital Debtors or the Plan Administrator, as applicable, but in form and substance reasonably acceptable to the Committee, that is included as an exhibit in the Plan Supplement; *provided* that, after the Effective Date, the Wind-Down Budget may be amended, modified, or supplemented from time to time by the Plan Administrator, with the written consent of the Liquidation Trustee, without any further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the foregoing, the Liquidation Trustee shall have the sole right, in consultation with the Plan Administrator, to amend, modify, or supplement any amounts allocated to tax compliance, tax return preparation, audit services, and related professional fees and expenses in the Wind-Down Budget.

121. "Wind-Down Budget Reserve" means a reserve created on or before the Effective Date of the Plan with the consent of the Committee, in an amount not to exceed the Wind-Down Cap, which shall be used to fund the Wind Down pursuant to the Wind-Down Budget in accordance with the terms of the Plan and the Confirmation Order.

122. "Wind-Down Debtors" means, on or after the Effective Date, any SO5 Digital Debtor or any successor or assign thereto, by merger, consolidation, or otherwise.

123. Wind-Down Reserves" means (a) the Administrative Claims Reserve; (b) the Professional Fee Reserve; (c) the Priority Tax Claim Reserve; (d) the Other Secured Claims Reserve; (e) the Other Priority Claims Reserve; (f) the Consignor Claims Reserve; and (g) the Wind-Down Budget Reserve. On or before the Effective Date, the SO5 Digital Debtors may modify the amount of funds in one or more Wind-Down Reserves with the consent of the Committee or the Liquidation Trustee, as applicable, from time to time as appropriate in carrying out its duties under the Plan and Plan Documents.

124. "Wind-Down Transaction" means any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan including (1) executing and delivering appropriate agreements or other documents of consolidation, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (2) completing and filing any tax return required to be filed by the SO5 Digital Debtors or the Wind-Down Debtors, as applicable; and (3) any and all other actions that the SO5 Digital Debtors, the Wind-Down Debtors, Plan Administrator, Liquidation Trust, or Liquidation Trustee, as applicable, collectively determine are necessary or appropriate to effectuate the Plan including in connection with making filings or recordings that may be required by applicable law in connection with the Plan.

### B.     **Rules of Interpretation**

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in or exhibit to this Plan, as the same may be amended, waived, or modified from time to

time in accordance with the terms hereof. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in this Plan," "of this Plan," "to this Plan," and "under this Plan," respectively. The words "includes" and "including" are not limiting. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (4) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (5) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the SO5 Digital Debtors or the Wind-Down Debtors shall mean the SO5 Digital Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

**C.      Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply. Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

**D.      Reference to Monetary Figures**

All references in this Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

**E.      Controlling Document**

In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document. In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control. The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided*, that if there is determined to be any inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan.  To the extent that the terms of the Liquidation Trust Agreement are inconsistent with the terms set forth in this Plan, then the terms of the Liquidation Trust Agreement shall govern and control.  To the extent that the terms of the Liquidation Trust Agreement are inconsistent with the terms set forth in the Confirmation Order, then the terms of the Confirmation Order shall govern and control.

15

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

### A.     Administrative Claims

Except to the extent that a Holder of an Allowed Administrative Claim and the SO5 Digital Debtors (in consultation with the Committee) or Liquidation Trustee agree to a less favorable treatment for such Holder,[2] each Holder of an Allowed Administrative Claim (other than a Professional Fee Claim) shall receive, in full and final satisfaction of such Claim, an amount of Cash equal to the amount of such Allowed Administrative Claim from the Administrative Claims Reserve in accordance with the following: (1) if Allowed on or prior to the Effective Date, then on the later of when such Allowed Administrative Claim is due and the Effective Date or as soon as reasonably practicable thereafter, (2) if not Allowed as of the Effective Date, then no later than forty-five (45) days after the date on which an order Allowing such Administrative Claim becomes a Final Order or as soon as reasonably practicable thereafter, (3) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Liquidation Trust or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except for Professional Fee Claims and Section 503(b)(9) Claims, and notwithstanding any prior Filing, applications seeking the allowance and payment of Administrative Claims must be Filed and served on the SO5 Digital Debtors or the Liquidation Trustee, as applicable, and their counsel by no later than the Administrative Claims Bar Date pursuant to the procedures set forth in the Confirmation Order and the notice of the occurrence of the Effective Date. The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claims.

**Except as otherwise provided herein, holders of Administrative Claims that do not File and serve an application for payment of administrative expenses requesting the allowance of an Administrative Claim by the Administrative Claims Bar Date (or the general bar date under the Bar Date Order with respect to Section 503(b)(9) Claims) shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the SO5 Digital Debtors, the Wind-Down Debtors, the Plan Administrator, the Liquidation Trust, the Estates, or the assets and properties of the SO5 Digital Debtors, the Wind-Down Debtors, or the Liquidation Trust, and any Administrative Claims shall be deemed disallowed as of the Effective Date unless otherwise ordered by the Bankruptcy Court.**

---

[2]     Any agreement between a Holder of an Allowed Administrative Claim and the SO5 Digital Debtors that would result in such Holder receiving Liquidation Trust Interests or becoming a Liquidation Trust Beneficiary on account of such Allowed Claim shall require the prior written consent of the Committee or the Liquidation Trustee, as applicable.

B.   **Professional Fee Claims**

1.   **Final Fee Applications and Payment of Professional Fee Claims**

All Professionals (other than OCPs) seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 1103 of the Bankruptcy Code shall: (a) file, on or before the date that is forty five (45) days after the Confirmation Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred; and (b) be paid in full, in Cash, from the Professional Fee Reserve, or, if the amount in the Professional Fee Reserve is not sufficient to pay such claims, from Cash held by the SO5 Digital Debtors or Cash available in the Liquidation Trust, as applicable, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Professional Fee Claim. Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim.

2.   **Administrative Claims of OCPs**

All requests for payment of Professional Fee Claims of OCPs shall be made pursuant to the OCP Order. To the extent any Professional Fee Claims of the OCPs have not been satisfied pursuant to the OCP Order on or before the Effective Date, the amount of Professional Fee Claims owing to the OCPs shall be paid in Cash to such OCPs by the SO5 Digital Debtors or Liquidation Trustee, as applicable, as soon as reasonably practicable after such Professional Fee Claims are payable pursuant to the OCP Order. The SO5 Digital Debtors and Liquidation Trustee reserve the right to dispute the amount of any invoices submitted by any OCP pursuant to the OCP Order or otherwise.

3.   **Post-Confirmation Date Fees and Expenses**

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the SO5 Digital Debtors, Wind-Down Debtors, the Liquidation Trust, or the Liquidation Trustee (as applicable) shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the SO5 Digital Debtors, Wind-Down Debtors, Plan Administrator, Liquidation Trust, or Liquidation Trustee, as applicable. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the SO5 Digital Debtors, Wind-Down Debtors, Plan Administrator, Liquidation Trust, or Liquidation Trustee, as applicable, may employ and pay subject to the Wind-Down Budget any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

4.   **Professional Fee Reserve**

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the SO5 Digital Debtors before and as

of the Confirmation Date, and shall deliver such estimate to the SO5 Digital Debtors no later than one (1) Business Day before the Confirmation Date; *provided*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professionals' final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the SO5 Digital Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The SO5 Digital Debtors shall fund from their Cash, including any funds remaining in any professional fee account authorized under the Cash Collateral Order, and reserve the Professional Fee Reserve until payment in full of all Allowed Professional Fee Claims. If the Professional Fee Reserve is insufficient to fund the full Allowed amounts of Professional Fee Claims, the remaining unpaid Allowed Professional Fee Claims shall be paid by the SO5 Digital Debtors or Liquidation Trustee, as applicable, in Cash. For the avoidance of doubt, the Professional Fee Reserve cannot be used to pay any secured, priority, non-priority, or Administrative Claims until all Professional Fee Claims are satisfied or otherwise reserved for.

### C.      Priority Tax Claims

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed Priority Tax Claim and the SO5 Digital Debtors (in consultation with the Committee) or Liquidation Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Priority Tax Claim, each Holder thereof will receive payment in Cash of a total value as of the Effective Date equal to the Allowed amount of such Claim from the Priority Tax Claim Reserve.

### D.      U.S. Trustee Statutory Fees

On the Effective Date, the SO5 Digital Debtors shall pay: (i) all U.S. Trustee Statutory Fees due and payable, pursuant to 28 U.S.C. § 1930(a), prior to and on the Effective Date; (ii) all estimated U.S. Trustee Statutory Fees arising pursuant to 28 U.S.C. § 1930(a) based on disbursements made by the SO5 Digital Debtors on or prior to the Effective Date that are not yet due and payable on the Effective Date.

After the Effective Date, the Liquidation Trustee shall pay any and all U.S. Trustee Statutory Fees payable by the Liquidation Trust or Liquidation Trustee, pursuant to 28 U.S.C. § 1930(a) as Liquidation Trust Expenses, when due and payable, and shall file with the Bankruptcy Court quarterly reports for the Liquidation Trust in a form reasonably acceptable to the U.S. Trustee. The Liquidation Trustee shall remain obligated to file post-confirmation quarterly reports and to pay quarterly fees to the U.S. Trustee on behalf of the Liquidation Trust until the earliest of: (a) dissolution of the Liquidation Trust; or (b) each of the SO5 Digital Debtors cases being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. In the event that the amounts paid by the SO5 Digital Debtors on the Effective Date are not sufficient to satisfy all U.S. Trustee Statutory Fees arising from disbursements made by the SO5 Digital Debtors on or prior to the Effective Date, the Liquidation Trustee shall pay such amounts as a Liquidation Trust Expense.  For the avoidance of doubt, no U.S. Trustee Statutory Fees shall be payable more than once with respect to the same disbursement, including where funds are transferred by the SO5 Digital Debtors to the Liquidation Trust and are subsequently distributed by the Liquidation Trust.

Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to File a Proof of Claim or any other request for payment of quarterly fees.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    Classification of Claims and Interests

Except for the Claims addressed in Article III herein, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in any other Class to the extent that any portion of the Claim or Interest qualifies within the description of such other Class. A Claim also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been otherwise paid, released, or satisfied at any time.

The classification of Claims against and Interests in the SO5 Digital Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Secured Lender Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 | Consignor Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Subordinated Claim(s) | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | SO5 Digital Debtor Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

### B.    Treatment of Claims and Interests

#### 1.    Class 1 – Secured Lender Claims

a.    *Classification*: Class 1 consists of all Secured Lender Claims against the SO5 Digital Debtors.

19

b.      *Treatment*: On the Effective Date, except to the extent that a Holder of an Allowed Secured Lender Claim and the SO5 Digital Debtors (in consultation with the Committee) or Liquidation Trustee, as applicable, agree to less favorable treatment for such Holder each Holder of a Secured Lender Claim will be deemed paid in full by payments made by the SO5 Digital Debtors on account of the Secured Lender Claims prior to the Effective Date in full and final satisfaction of such Claim.

c.      *Voting*: Class 1 is Unimpaired, and Holders of Secured Lender Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Secured Lender Claims are not entitled to vote to accept or reject the Plan.

### 2.      Class 2 – Other Secured Claims

a.      *Classification:* Class 2 consists of all Other Secured Claims against the SO5 Digital Debtors.

b.      *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Secured Claim and the SO5 Digital Debtors (in consultation with the Committee) or Liquidation Trustee, as applicable,  agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Secured Claim, each Holder thereof will receive: (i) payment in full in Cash; (ii) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; or (iii) such other treatment rendering such Claim Unimpaired.

c.      *Voting*: Class 2 is Unimpaired, and Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

### 3.      Class 3 – Other Priority Claims

a.      *Classification*: Class 3 consists of all Other Priority Claims against the SO5 Digital Debtors.

b.      *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the SO5 Digital Debtors (in consultation with the Committee) or Liquidation Trustee, as applicable, agree to a different treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, an amount of Cash equal to the amount of such Allowed Other Priority Claim or such other treatment as would render the Claim Unimpaired.

c.      *Voting*: Class 3 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 3 Other Priority Claims are not entitled to vote to accept or reject the Plan.

**4.      Class 4 – Consignor Claims**

a.      *Classification*: Class 4 consists of all Consignor Claims against the SO5 Digital Debtors.

b.      *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Consignor Claim and the SO5 Digital Debtors (in consultation with the Committee) or Liquidation Trustee, as applicable, agree to a different treatment, each Holder of an Allowed Consignor Claim shall receive, in full and final satisfaction, release, compromise, settlement, release and discharge of such Claim, regular installment payments in Cash of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim over a period ending not later than two (2) years after the Petition Date and in a manner not less favorable than the most favored nonpriority unsecured claim provided for in the Plan.

c.      *Voting*: Class 4 is impaired, and Holders of Consignor Claims are entitled to vote to accept or reject the Plan.

**5.      Class 5 – General Unsecured Claims**

a.      *Classification*: Class 5 consists of the General Unsecured Claims against the SO5 Digital Debtors, including any unsecured deficiency Claims.

b.      *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the SO5 Digital Debtors (prior to the Effective Date, subject to the consent of the Committee) or the Liquidation Trustee (after the Effective Date), as applicable, agree to less favorable treatment for such Holder, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, its *pro rata* share of the Liquidation Trust Interests.

c.      *Voting*: Class 5 is Impaired, and Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

**6.      Class 6 – Intercompany Claims**

a.      *Classification*: Class 6 consists of any Intercompany Claim against a SO5 Digital Debtor.

b.      *Treatment*: On the Effective Date, all Intercompany Claims shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Claims shall not receive any distribution, property, or other value under the Plan on account of such Claims.

c.      *Voting*: Class 6 is Impaired, and Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject the Plan.

21

7.      **Class 7 – Subordinated Claims**

a.      *Classification*: Class 7 consists of any Subordinated Claim against a SO5 Digital Debtor.

b.      *Treatment*: On the Effective Date, all Subordinated Claims shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Claims shall not receive any distribution, property, or other value under the Plan on account of such Claims. Notwithstanding anything to the contrary herein, no Holder of a Class 7 Subordinated Claim (in its capacity as such) shall be a Releasing Party, Released Party, or Exculpated Party.

c.      *Voting*: Class 7 is Impaired, and Holders of Subordinated Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 7 Subordinated Claims are not entitled to vote to accept or reject the Plan.

8.      **Class 8 – SO5 Digital Debtor Interests**

a.      *Classification*: Class 8 consists of all SO5 Digital Debtor Interests in the SO5 Digital Debtors.

b.      *Treatment*: On the Effective Date, all SO5 Digital Debtor Interests shall be either reinstated, or canceled, released, extinguished, and of no further force or effect without any distribution as determined by the SO5 Digital Debtors, Wind-Down Debtors, or Plan Administrator, as applicable. Notwithstanding anything to the contrary herein, no Holder of a Class 8 SO5 Digital Debtor Interest (in its capacity as such) shall be a Releasing Party, Released Party, or Exculpated Party.

c.      *Voting*: Class 8 is Impaired, and Holders of SO5 Digital Debtor Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 8 SO5 Digital Debtor Interests are not entitled to vote to accept or reject the Plan.

C.      **Reservation of Rights Regarding Claims and Interests**

Except as otherwise provided in this Plan or in other Final Orders of the Bankruptcy Court, nothing under this Plan shall affect the rights of the Liquidation Trust or the Liquidation Trustee, as applicable, with respect to any Claims or Interests, including all legal and equitable defenses to, or setoffs or recoupments against, any such Claims or Interests.

D.      **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class. For the avoidance of

22

confusion, application of this Art. III.D. to a given Class is without prejudice to a Claim later being determined to properly belong in such Class by order of the Court (or other court of competent jurisdiction) and such Claim receiving the treatment set forth in this Plan for Claims in such Class.

### E.   Voting Classes, Presumed Acceptance by Non-Voting Classes

With respect to each SO5 Digital Debtor, if a Class contained Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject this Plan, this Plan shall be presumed accepted by the holders of such Claims in such Class.

### F.   Controversy Concerning Impairment

If a controversy arises as to whether any Claim or any Class of Claims is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Hearing.

### G.   Subordination of Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any intercreditor agreements and any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the SO5 Digital Debtors, and Liquidation Trustee (as applicable) reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### H.   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to this Article III of the Plan. The SO5 Digital Debtors hereby request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. The SO5 Digital Debtors reserve the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any voting Class that votes to reject the Plan, in consultation with the Committee.

### I.   Postpetition Interest on Claims

Except as required by applicable bankruptcy law or otherwise expressly provided in the Plan, postpetition interest will not accrue or be payable on account of any Claim, including any Disputed Claims.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.  General Settlement of Claims and Interests; Intercompany Claim Settlement

Pursuant to section 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions, releases, and other benefits provided pursuant to this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest Holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the SO5 Digital Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

Moreover, pursuant to section 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the consideration being provided by the Global Debtors under the terms of the Intercompany Claim settlement between the SO5 Digital Debtors and Global Debtors disclosed in the SO5 Digital Debtors' Amended Plan Supplement [ECF No. [__]], and the Global Debtors Fourth Amended Plan Supplement [ECF No. 2607], which were extensively negotiated at arms-length with the benefit of counsel, and which were approved by the SO5 Digital Debtors' Independent Director, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise of and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the SO5 Digital Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

Notwithstanding any other provision in the Plan, the settlements are approved among the parties that have agreed to them (among any other party who has expressly entered into a written settlement), and the treatment of claims and interests is being afforded pursuant to Confirmation by satisfying the requirements of section 1129 of the Bankruptcy Code.

### B.  Sources of Consideration for Plan Distributions

Subject to the provisions of the Plan concerning the Professional Fee Reserve or the Wind-Down Budget, distributions under the Plan shall be funded by Cash on hand, including any amounts recovered by the Trust that may be owed by third parties on account of security deposits or refunds.  After the Effective Date, the Liquidation Trustee shall fund the Wind-Down Reserves and shall make Plan Distributions from Liquidation Trust Net Assets on account of Allowed Claims in accordance with the Plan and the Liquidation Trust Agreement.

### C.  Sale Transactions

Following the Effective Date, the Liquidation Trust, may monetize the Liquidation Trust Assets, and may enter into one or more Sale Transactions without further order of or notice to the Bankruptcy Court, the proceeds of which shall be Liquidation Trust Assets.

D.     **Wind Down**

Before, on, and after the Effective Date, the SO5 Digital Debtors, the Wind-Down Debtors, the Plan Administrator, the Liquidation Trust, or the Liquidation Trustee, as applicable, shall enter into any transaction and shall take any actions as may be necessary or appropriate to effectuate the Wind-Down Transactions, provided that the Plan Administrator shall confer with the Liquidation Trustee prior to taking any such actions.

1.     **[Reserved]**

2.     **Plan Administrator**

(a) Appointment; Duties. On the Effective Date, the Plan Administrator shall be automatically appointed without any further action required, shall be the sole director, manager, officer and fiduciary, as applicable, of each of the Wind-Down Debtors, and shall assume all of its obligations, powers and authority under the Plan to exercise such power and authority as set forth herein or as may be set forth in the Confirmation Order, in each case, in consultation with and subject to the agreement of the Liquidation Trustee and subject to the Wind-Down Budget and the Wind-Down Cap.

(b) Qualifications; Plan Administrator Agreement. The Plan Administrator shall be a fiduciary of the Wind-Down Debtors, shall have such qualifications and experience as are sufficient to enable the Plan Administrator to perform its obligations under this Plan and under the Plan Administrator Agreement, and shall be compensated and reimbursed for expenses as set forth in, and in accordance with, the Plan Administrator Agreement, but subject to the Wind-Down Budget and the Wind-Down Cap. To the extent necessary, following the Effective Date, the Plan Administrator shall be deemed to be the representative of the Estates for the SO5 Digital Debtors or Wind-Down Debtors, as applicable, as a party-in-interest in the Chapter 11 Cases. The Plan Administrator shall not be liable for any action it takes or omits to take that it believes in good faith to be authorized or within its rights or powers unless it is ultimately and finally determined by Final Order of a court of competent jurisdiction that such action or inaction was the result of fraud, gross negligence or willful misconduct.

The Plan Administrator Agreement and the Confirmation Order shall provide that: (i) the Plan Administrator shall be a fiduciary and sole officer of the Wind-Down Debtors as of the Effective Date; and (ii) neither the SO5 Digital Debtors, Wind-Down Debtors (except as expressly set forth in the Plan Administrator Agreement) nor their respective boards of directors, managements, employees and professionals shall have any liability for any action taken or omitted to be taken by the Plan Administrator and all Entities are enjoined from pursuing any claims against the foregoing pursuant to this Plan on account of any such action taken or omitted to be taken.

(c) Resignation, Death or Removal. The Plan Administrator may be removed by the Bankruptcy Court upon application by any party-in-interest for good cause shown. The Plan Administrator may resign upon notice to the Bankruptcy Court and request for appointment of a successor Plan Administrator, with such resignation effective as of the date the successor is appointed. In the event of the resignation or removal, liquidation, dissolution, death or incapacity of the Plan Administrator, the Bankruptcy Court shall designate another Entity to become Plan

25

Administrator and thereupon the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of its predecessor.

### 3.      Authority of the Plan Administrator and Wind-Down Debtors

(a) Other than with respect to the Liquidation Trust and the Liquidation Trust Assets, the Plan Administrator shall oversee the Wind Down in accordance with the Plan and the Confirmation Order. Neither the Wind-Down Debtors nor the Plan Administrator shall be required to post a bond in favor of the United States.

(b) As set forth in the Plan Administrator Agreement, the Plan Administrator shall have the power and authority to perform the following acts with respect to the Wind-Down Debtors, in addition to any powers granted by law or conferred by any other provision of the Plan and orders of the Bankruptcy Court and subject to the Wind-Down Budget and the Wind-Down Cap: (i) comply with this Plan and the obligations hereunder; (ii) if necessary, employ, retain, or replace professionals to represent it with respect to its responsibilities; (iii) prepare and file applicable tax returns for the Wind-Down Debtors; (iv) purchase insurance protecting the Plan Administrator; (v) seek entry of a final decree in any of the Wind-Down Debtors' Chapter 11 Cases at the appropriate time and in consultation with and subject to the consent of the Liquidation Trustee; (vi) take appropriate steps to dissolve the Wind-Down Debtors, at the appropriate time and in consultation with and subject to the consent of the Liquidation Trustee; and (vii) take such other action as the Plan Administrator may in consultation with the Liquidation Trustee determine to be necessary or desirable to carry out the purpose of this Plan.

(c) On and after the Effective Date, the Wind-Down Debtors shall continue in existence solely to enable the Plan Administrator to (i) wind down the SO5 Digital Debtors' business and affairs as expeditiously as reasonably possible, including, but not limited to, surrendering licenses, (ii) file appropriate tax returns, and (iii) administer this Plan, as set forth herein.

Following the Effective Date, none of the Wind-Down Debtors shall engage in any business activities or take any actions except those necessary to effectuate the Plan and the terms of the Plan Administrator Agreement and to administer the Wind-Down.

### 4.      Wind-Down Budget; Liquidation Trustee Remitting the Plan Administrator Fees and Expenses

The Plan Administrator may retain and employ professionals and other Entities, in his sole discretion and without the need for approval of the Bankruptcy Court, to aid the implementation of the Plan and the Wind Down, subject to the Wind-Down Budget.

From and after the Effective Date, the Liquidation Trustee, may in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash any fees and expenses related to implementation of the Plan and any Wind-Down Transactions, including the Plan Administrator Expenses, from the Wind-Down Budget Reserve, subject to the following procedures and other applicable provisions of this Plan: The Plan Administrator shall, in his discretion, direct the Liquidation Trustee in writing (including by e-mail) to make payment of any Plan Administrator Expense, either to the Plan Administrator, the Wind-Down Debtors, or a third-party (or parties'), provided that the Plan Administrator shall

include (a) a copy of any invoice or other reasonable evidence of such Plan Administrator Expense, (b) the exact amount required to be paid, (c) the name and address of the Entity to whom payment should be made, (d) the address to which payment should be delivered (or wire/ACH instructions for payment to be made, provided that detailed contact information is provided to confirm), and (e) the date by which such payment should be made. The Liquidation Trustee shall use best-efforts to make such payment in accordance with the Plan Administrator's instruction by the time designated by the Plan Administrator.

### 5. Dissolution of Governing Bodies of the SO5 Digital Debtors

As of the Effective Date, the current board of managers/directors of each SO5 Digital Debtor shall be dissolved automatically without any further action required on the part of the SO5 Digital Debtors or the SO5 Digital Debtors' officers, directors, managers, shareholders, members, equity holders, or other governing bodies, and any remaining officers, directors, managers, or managing members of any SO5 Digital Debtor shall automatically be dismissed without any further action required on the part of any such SO5 Digital Debtor, the shareholders or equity holders of the SO5 Digital Debtors, the officers, directors, managers, or other governing body, as applicable, of the SO5 Digital Debtors, or the members of any SO5 Digital Debtor; *provided*, *however*, the Plan Administrator may retain certain officers as may be required under applicable law, including for regulatory purposes. Subject in all respects to the terms of this Plan, the Wind-Down Debtors shall be dissolved as soon as practicable after the Effective Date.

Upon the Effective Date, automatically and without any further action required, the Plan Administrator will become the SO5 Digital Debtors' (or Wind-Down Debtors'), as applicable, sole officer, director, manager, or other governing body as appropriate, without the need to execute any new organizational, governing, or other  documents.  Subject in all respects to the terms of this Plan and the Plan Administrator Agreement, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Wind-Down Debtors, and shall be authorized to: (a) file a certificate of dissolution or equivalent for any of the Wind-Down Debtors, together with all other necessary corporate and company documents, to effect the dissolution of the Wind-Down Debtors under the applicable laws of its state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and direct the Liquidation Trustee to pay per the procedures set forth in Article IV.D.4. taxes required to be paid for any of the SO5 Digital Debtors or Wind-Down Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the SO5 Digital Debtors, Wind-Down Debtors, or each of their Estates for any tax incurred during the administration of such SO5 Digital Debtors' or Wind-Down Debtor's Chapter 11 Case, as determined under applicable tax laws, and in each case, in consultation with the Liquidation Trustee.

### E. Liquidation Trust

### 1. Creation and Governance of the Liquidation Trust

On or before the Effective Date, the SO5 Digital Debtors or Wind-Down Debtors, as applicable, shall irrevocably transfer all of their rights, title, and interest in and to the Liquidation Trust Assets to the Liquidation Trust, which Liquidation Trust Assets or interests in the

Liquidation Trust Assets shall automatically and irrevocably vest or shall be deemed to automatically and irrevocably vest in the Liquidation Trust as of the Effective Date. The SO5 Digital Debtors and the Liquidation Trustee shall execute the Liquidation Trust Agreement and shall take all steps necessary to establish the Liquidation Trust and the Liquidation Trust Interests, in each case, in accordance with the Plan and the Liquidation Trust Agreement, including on the Effective Date, the transfer of the Liquidation Trust Assets to the Liquidation Trust. In the event of any conflict between the terms of the Plan and the terms of the Liquidation Trust Agreement, the terms of the Liquidation Trust Agreement shall govern. On the Effective Date, the Liquidation Trust Assets shall automatically and irrevocably vest in the Liquidation Trust as provided herein, without further action by any Entity, free and clear of all Claims, Liens, Interests, charges, and other encumbrances, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax.

After the Effective Date, neither the SO5 Digital Debtors, the Wind-Down Debtors, nor any other Entity shall have any interest in the Liquidation Trust Assets except as expressly set forth herein. The Liquidation Trust shall be established solely for the benefit of the Liquidation Trust Beneficiaries. To the extent the Wind-Down Debtors are holding or receive any Liquidation Trust Assets on or after the Effective Date, they shall hold such Liquidation Trust Asset in trust for the benefit of the Liquidation Trust and promptly turnover such Liquidation Trust Asset to the Liquidation Trust in accordance with the Plan. To the extent that any Liquidation Trust Assets cannot be transferred to the Liquidation Trust because of a restriction on transferability under applicable non-bankruptcy law or the Plan that is not superseded or preempted by the Bankruptcy Code, the Liquidation Trust's interest in any such Liquidation Trust Assets shall be a lien upon and security interest in such Liquidation Trust Asset, perfected without any need to file financing statements, mortgages, or any similar recordation, and such Liquidation Trust Asset shall be deemed to have been retained by the SO5 Digital Debtors or Wind-Down Debtors, as applicable, and the Liquidation Trustee shall be deemed to have been designated as a representative of the Wind-Down Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely to recover, enforce, and pursue such Liquidation Trust Asset on the behalf of the Wind-Down Debtors.

The Liquidation Trustee shall be the exclusive administrator of the assets of the Liquidation Trust (including the Liquidation Trust Assets) for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as a representative of the Estate of each of the Wind-Down Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to any matters involving (a) the allowance, administration, settlement, or compromise of Claims that were not otherwise Allowed or satisfied by the SO5 Digital Debtors on or before the Effective Date, (b) the investigation, prosecution, pursuit, settlement, or compromise of the Retained Causes of Action, and (c) as a party in interest with respect to each of the Wind-Down Debtors with respect to any matters involving the foregoing and for the purpose of carrying out the Liquidation Trustee's duties under the Liquidation Trust Agreement. The Liquidation Trustee shall be a party-in-interest under section 1109(b) of the Bankruptcy Code for the purposes of (a) the claims reconciliation process, including administering, settling, compromising, or objecting to Claims that were not otherwise Allowed or satisfied by the SO5 Digital Debtors on or before the Effective Date and (b) any other matter affecting the Liquidation Trust or the Liquidation Trust Assets; *provided* that the Liquidation Trustee may otherwise be a party-in-interest with the prior written consent of the Wind-Down Debtors or Plan Administrator, as applicable, or as otherwise ordered by the Bankruptcy Court. The Liquidation Trust shall be deemed to be substituted as the party-in-lieu of

28

the SO5 Digital Debtors in all matters affecting the Liquidation Trust or the Liquidation Trust Assets, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Liquidation Trust to file motions or substitutions of parties or counsel in each such matter.

The Liquidation Trust shall be governed by the Liquidation Trust Agreement and administered by the Liquidation Trustee. The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and shall include, without limitation, the authority and responsibility to take the actions set forth in this Article IV.E. Among other things, the Liquidation Trustee shall have the sole power and responsibility to (i) hold the assets of the Liquidation Trust for the benefit of the Liquidation Trust Beneficiaries; (ii) hold, manage, sell and distribute Cash or non-Cash assets of the Liquidation Trust obtained through the exercise of its power and authority in accordance with the Plan and Liquidation Trust Agreement; (iii) distribute and allocate the Liquidation Trust Net Assets to the Liquidation Trust Beneficiaries on account of such beneficiaries' Liquidation Trust Interests in accordance with the treatment set forth in the Plan for Class 5 General Unsecured Claims; (iv) take all steps and execute all instruments and documents necessary to make distributions to holders of Allowed Claims that the SO5 Digital Debtors or the Wind-Down Debtors are responsible for payment of pursuant to the terms of this Plan; (v) reconcile and object to Claims, as provided in this Plan and prosecute such objections; (vi) resolve, compromise and/or settle any objections to the amount, validity, priority, treatment or allowance of Claims (including Administrative Claims, Professional Fee Claims and OCP Claims), or Interests; (vii) investigate, prosecute and resolve, in the name of the SO5 Digital Debtors and/or the name of the Liquidation Trustee, any Retained Cause of Action and to enter into arrangements to fund such litigation with third parties and/or certain holders of beneficial interests in such Liquidation Trust on such terms as are determined to be reasonable and in the interest of the Liquidation Trust (provided, that any such funding with respect to the Retained Causes of Action shall have recourse solely to the proceeds of the Retained Causes of Action); and (viii) perform such other functions in accordance with the Plan.  The Liquidation Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Liquidation Trust and the Liquidation Trustee; *provided* that, for the avoidance of doubt, any such indemnification shall be by the Liquidation Trust and the Liquidation Trustee alone and shall not implicate the SO5 Digital Debtors, the Wind-Down Debtors, or the Plan Administrator. The Liquidation Trust may retain and employ Entities and professionals, in the Liquidation Trustee's sole discretion and without the need for approval of the Bankruptcy Court, to aid the Liquidation Trust in carrying out its purpose as set forth in the Plan. The Liquidation Trust or Liquidation Trustee may purchase or continue insurance protecting the Liquidation Trust, the Liquidation Trust Assets, or the Liquidation Trustee. For the avoidance of doubt, notwithstanding anything in the Plan to the contrary, distributions to the Holders of Liquidation Trust Interests shall be governed by the Liquidation Trust Agreement.

Any and all of the Liquidation Trust Interests shall be non-transferable other than if transferred by will, intestate, succession, or otherwise by operation of law. The Liquidation Trust will operate in compliance with federal and state securities laws and SEC staff guidance, including those regarding liquidating trusts, if applicable.  In addition, any and all Liquidation Trust Interests will not be registered pursuant to the Securities Act or any applicable state or local securities law pursuant to section 1145 of the Bankruptcy Code, and will be exempt from the Investment

Company Act of 1940, as amended, pursuant sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code, to the extent applicable.

## 2.       Liquidation Trust Agreement

A substantially final draft of the Liquidation Trust Agreement will be filed with the Plan Supplement and generally will provide for, among other things: (a) the automatic and irrevocable transfer of the Liquidation Trust Assets to the Liquidation Trust, free and clear of any Claims, Liens, Interests, charges, or other encumbrances; and (b) the administration of claims according to the terms and conditions set forth in this Article IV.E. The Liquidation Trust Agreement may include reasonable and customary provisions that allow for the limitation of liability of the Liquidation Trustee and its professionals, agents, and advisors, among others, and for indemnification of such Entities by the Liquidation Trust. Any such indemnification shall be the sole responsibility of the Liquidation Trust and shall constitute Liquidation Trust Expenses payable solely from the Liquidation Trust Assets. The Liquidation Trustee shall be responsible for all decisions and duties with respect to the Liquidation Trust and the Liquidation Trust Assets, except as otherwise expressly provided for in the Plan, the Confirmation Order, or the Liquidation Trust Agreement. Upon the Effective Date, the Liquidation Trust Agreement shall conclusively be deemed binding upon and enforceable against each Holder of a Claim and each of the Liquidation Trust Beneficiaries, without any further action by any Entity.

## 3.       Books and Records; Preservation of Privilege

The Liquidation Trust shall be given access by the SO5 Digital Debtors, Wind-Down Debtors, and Plan Administrator and their professionals (at no expense to the Liquidation Trust) to all information the Liquidation Trustee determines is necessary to prosecute, investigate, pursue, compromise, settle, sell, transfer, or convey any of the Retained Causes of Action and to benefit from any relevant Privileges and to review, reconcile, object to, or otherwise address any and all issues relating to Claims.[3]  Prior to the Effective Date, at the sole cost of the SO5 Digital Debtors, the SO5 Digital Debtors shall deliver or cause to be delivered to the Liquidation Trust any and all books and records and all other documents, files, electronic data, tangible objects, and communications, or copies of the same relating to, supporting, in connection with or evidencing the Claims and Liquidation Trust Assets, including any Retained Causes of Action (the "SO5 Digital Debtors Records"). The SO5 Digital Debtors shall not destroy, abandon, or otherwise render the SO5 Digital Debtors Records unavailable. The Wind-Down Debtors, the Plan Administrator, the Liquidation Trust, and the Liquidation Trustee shall enter into a common interest agreement (which may be this Plan or the Confirmation Order) whereby the foregoing Entities will be able to share documents, information, or communications (whether written or oral) relating to Claims, the Retained Causes of Action, the Plan, Wind-Down Transactions, Case-Related Matters (as defined in Article IX), Additional Matters (as defined in Article IX), and other appropriate subject matter. The Liquidation Trust and Liquidation Trustee shall seek to preserve and protect all applicable Privileges attaching to any such documents, information, or

---

[3]    Provided, however, that any fees or costs incurred by the Plan Administrator in connection with such access will constitute Plan Administrator Expenses.

communications. The Liquidation Trust's or Liquidation Trustee's receipt of such documents, information or communications shall not constitute a waiver of any Privilege.

The Liquidation Trust shall stand in the same position as the SO5 Digital Debtors and their estates and the Committee as to all Privileges, and shall succeed to all of the rights of the SO5 Digital Debtors and their estates and the Committee to preserve, assert, or waive any such Privileges, and shall be deemed to be the assignee by each SO5 Digital Debtor and its respective estate and the Committee of each such Privilege as of and on the Effective Date.

For the avoidance of doubt, the Privileges shall be shared with, and shall vest in, the Liquidation Trust. Notwithstanding the SO5 Digital Debtors, the Committee, or any party-in-interest providing any privileged information to the Liquidation Trust or the Liquidation Trustee, such privileged information shall be without waiver in recognition of the joint and/or successor interest in investigating and prosecuting the Claims and Retained Causes of Action and shall remain subject to the Privileges.

### 4.     Liquidation Trust Fees and Expenses

From and after the Effective Date, the Liquidation Trustee, on behalf of the Liquidation Trust, shall, in the ordinary course of business and without the necessity of any approval by or notice to the Bankruptcy Court, pay the Liquidation Trust Expenses from the Liquidation Trust Assets. The Liquidation Trust Expenses shall be payable from Liquidation Trust Assets on a consolidated basis without allocation among the SO5 Digital Debtors' Estates. The Wind-Down Debtors and the Plan Administrator shall not be responsible for any costs, fees, or expenses of the Liquidation Trust.

### 5.     Dissolution of the Liquidation Trust

The Liquidation Trust shall be dissolved and its affairs wound up and the Liquidation Trustee shall make the final distributions, upon the earlier of (a) the date which is five (5) years after the Effective Date, and (b) that date when, in the reasonable judgment of the Liquidation Trustee, substantially all of the Liquidation Trust Assets have been liquidated, all Distributions required to be made by the Liquidation Trustee under the Plan and this Agreement have been made and there are no substantial potential sources of additional Cash for Distribution.  Notwithstanding the foregoing, on or prior to a date not less than six (6) months prior to such termination, the Court, upon motion by the Liquidation Trustee, may extend the term of the Liquidation Trust for one or more finite terms (not to exceed five (5) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel satisfactory to the Liquidation Trustee that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for U.S. federal income tax purposes) based upon the particular facts and circumstances present at that time, if an extension is necessary to the liquidating purpose of the Liquidation Trust, provided that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust within the meaning of Section 301.7701-4(d) of the Treasury Regulations for federal income tax purposes.

Upon dissolution of the Liquidation Trust, any remaining Liquidation Trust Net Assets shall be distributed to Holders of Allowed Class 5 General Unsecured Claims in accordance with

31

the Plan and the Liquidation Trust Agreement, subject to the terms and conditions set forth herein, the Liquidation Trust Agreement and in the Confirmation Order; *provided*, *however*, that if the Liquidation Trustee reasonably determines that such remaining Liquidation Trust Net Assets are insufficient to render a further distribution practicable, the Liquidation Trustee may: (a) reserve any amount necessary to dissolve the Liquidation Trust, (b) donate any balance to a charitable organization (i) described in Section 501(c)(3) of the Internal Revenue Code, (ii) exempt from U.S. federal income tax under Section 501(a) of the Internal Revenue Code, (iii) not a "private foundation" as defined in Section 509(a) of the Internal Revenue Code, and (iv) that is unrelated to the SO5 Digital Debtors, the Wind-Down Debtors, the Liquidation Trust, and any insider of the Liquidation Trustee.

### 6. Single-Satisfaction of Claims

Notwithstanding anything to the contrary herein, in no event shall holders of Claims administered by the Liquidation Trust recover, on account of any such Claim, more than 100% of their Allowed Claim from the Liquidation Trust. Notwithstanding the foregoing, solely for distribution purposes, (a) holders of Allowed Claims entitled to a distribution under the Plan shall be entitled to a single Claim with respect to any particular debt owed by a SO5 Digital Debtor; (b) any and all Claims based on joint and several liability or a guaranty by the SO5 Digital Debtors shall be deemed eliminated and extinguished; and (c) Liquidation Trust Beneficiaries shall be entitled to only one recovery under the Plan from the Liquidation Trust on account of such Claims without regard to which SO5 Digital Debtor was originally liable for such Claim.

### 7. Cooperation by the Debtors, Wind-Down Debtors, Plan Administrator, Liquidation Trust, and Liquidation Trustee

The Global Debtors, SO5 Digital Debtors, Wind-Down Debtors, or Plan Administrator, as applicable, upon reasonable notice, shall reasonably cooperate with the Liquidation Trust, Liquidation Trustee, and any professionals retained by the Liquidation Trust in the administration of the Liquidation Trust, including by providing to the Liquidation Trustee and any professionals retained by the Liquidation Trust reasonable access to (i) officers, directors, employees, personnel, advisors, and contact information for former employees, and (ii) subject to Article IV.E.3, any and all books and records and all other documents, files, electronic data, tangible objects, and communications, or copies of the same (the "Books and Records") held by or under the control of the Global Debtors, SO5 Digital Debtors, Wind-Down Debtors, or Plan Administrator; provided, however, that nothing in this Article IV.E.7. shall impose duties upon the Global Debtors outside the scope of the plan support and cooperation terms of the Intercompany Claim Settlement provided, further, that to the extent additional support or services may be required by the Liquidation Trustee or Plan Administrator, the Liquidation Trustee or Plan Administrator may request such additional services and/or support of the Global Debtors and the parties shall engage in commercially reasonable, good-faith negotiations to determine if the requested services will be provided by the Global Debtors and, if so, warrant additional compensation. Such negotiations and determination of additional compensation, if any, shall be conducted in good faith and commercially reasonable terms and in all respects subject to the terms of the Intercompany Claims Settlement.

The SO5 Digital Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, shall not destroy, abandon, or otherwise render such Books and Records unavailable without the express written consent of the Committee or Liquidation Trustee, as applicable, provided, however, that such consent shall not be unreasonably withheld. The SO5 Digital Debtors, Wind-Down Debtors, or Plan Administrator, as applicable, shall endeavor to work constructively with the Liquidation Trustee and any professionals retained by the Liquidation Trust to provide access to witnesses and Books and Records so as not to adversely impact the Liquidation Trust's ability to pursue any objections to Claims and the Retained Causes of Action. Such cooperation shall include reasonably attempting to identify and facilitate access to (i) evidence and information the Liquidation Trustee and any professionals retained by the Liquidation Trust reasonably requests with advance written notice (including reasonable access to the Books and Records) in connection with the Claims and Retained Causes of Actions and (ii) current or former employees or professionals of the Debtors with knowledge regarding the Retained Causes of Actions. At the reasonable request of the Liquidation Trustee or any professionals retained by the Liquidation Trust, SO5 Digital Debtors, Wind-Down Debtors, or Plan Administrator, as applicable, shall use reasonable efforts to search for, collect, copy, and transfer to the Liquidation Trust Books and Records that are reasonably necessary and responsive to the request and related to the Claims or Retained Causes of Action, even if only part of such Books and Records is relevant, including, for the avoidance of doubt, both privileged and non-privileged Books and Records or other information.  The terms "reasonable", "reasonably" or "reasonably necessary" means relevant to and proportional with the needs of the Liquidation Trust in connection with pursuing, evaluating, prosecuting, resolving, and liquidating the Claims and Retained Causes of Action, considering the importance of the issues at stake, the amount in controversy, and relative access to relevant information. When transferring the Books and Records, the SO5 Digital Debtors, Wind-Down Debtors, or Plan Administrator, as applicable, shall identify each set of documents provided, identify to which specific request(s) they relate, and provide all corresponding available metadata.

The Wind-Down Debtors and the Plan Administrator agree to provide not less than thirty (30) days' written notice to the Liquidation Trustee and any known professionals retained by the Liquidation Trust and obtain the consent of the Liquidation Trustee prior to filing any motion to close these Chapter 11 Cases.

### 8.      Abandonment of Liquidation Trust Assets

If, in the Liquidation Trustee's reasonable judgment, the Liquidation Trustee believes in good faith that any of the Liquidation Trust Assets have inconsequential value to the Liquidation Trust or the Liquidation Trust Beneficiaries, the Liquidation Trustee shall have the right to cause the Liquidation Trust to abandon or otherwise dispose of such property, including, but not limited to, by way of donation to a non-profit 501(c)(3) organization that the Liquidation Trustee may select in its discretion.

### 9.      Tax Treatment of Liquidation Trust

The Liquidation Trust shall be classified for federal (and applicable state and local) income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Sections 671 through 679 of the U.S. Internal

33

Revenue Code of 1986, as amended (the "Tax Code") (except with respect to any DOF (as defined below)). In furtherance of this objective, the Liquidation Trustee shall, in its business judgment, endeavor in good faith not to unduly prolong the duration of the Liquidation Trust.  For all federal income tax purposes, except with respect to any DOF, all parties (including the SO5 Digital Debtors, the Wind-Down Debtors, the Plan Administrator, the Liquidation Trustee, and the Beneficiaries) shall treat the transfer of the Liquidation Trust Assets allocable to the Beneficiaries as a transfer to such Beneficiaries of their proportionate interests in the Liquidation Trust Assets followed by a transfer by such Beneficiaries of such interests in the Liquidation Trust Assets to the Liquidation Trust in exchange for beneficial interests in the Liquidation Trust.  Except with respect to any DOF, the Beneficiaries under the Liquidation Trust will be treated as the deemed owners of the Liquidation Trust.  All such Beneficiaries shall use the valuation of the Liquidation Trust Assets transferred to the Liquidation Trust as established by the Liquidation Trustee for all federal income tax purposes.

The Liquidation Trustee shall file tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation § 1.671-4(a) and any other applicable laws or regulations.  On an annual basis, the Liquidation Trustee shall send to each Beneficiary a statement setting forth the Beneficiary's share of items of income, gain, loss, deduction or credit and will instruct all such Holders to report such items on their federal income tax returns.  Such a statement also shall be sent to each Beneficiary after the dissolution of the Liquidation Trust.  The Liquidation Trust's taxable income, gain, loss, deduction or credit will be allocated (subject to provisions of the Plan and Confirmation Order relating to Disputed Claims) to the Beneficiaries in accordance with their relative beneficial interests in the Liquidation Trust, as determined pursuant to this Plan and/or the Liquidation Trust Agreement, as applicable.  As soon as practicable after the Effective Date, the Liquidation Trustee (to the extent that it deems it necessary or appropriate in the reasonable exercise of its discretion) shall, in good faith, value the Liquidation Trust Assets, and shall apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including the SO5 Digital Debtors, the Wind-Down Debtors, the Plan Administrator, the Liquidation Trustee and the Beneficiaries) for all federal income tax purposes.  The Court shall resolve any dispute regarding the valuation of the Liquidation Trust Assets.

The Liquidation Trustee may, at the Liquidation Trustee's sole discretion, elect to treat any Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 ("DOF") and make any appropriate elections consistent with such tax treatment.  The Liquidation Trustee shall be the administrator of any such applicable Disputed Claims within the meaning of Treasury Regulation section 1.468B-9(b)(2) and shall be responsible for all tax reporting and withholding required by any such disputed claims reserves.  The Liquidation Trust shall be responsible for payment, out of Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust (including any Disputed Claims) or the Liquidation Trust Assets.

The Liquidation Trust shall continue to have all of the rights and powers granted to the Liquidation Trust as set forth in this Plan and applicable non-bankruptcy law, and the Liquidation Trustee shall also have the rights, powers, and obligations set forth in the Liquidation Trust Agreement.

### F. Retained Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trust or Liquidation Trustee, as applicable, shall retain and may enforce all rights to commence, prosecute, pursue, settle and compromise as appropriate, any and all Retained Causes of Action of the SO5 Digital Debtors that are not otherwise expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), whether arising before or after the Effective Date, and the Liquidation Trust's or Liquidation Trustee's, as applicable, rights to commence, prosecute, pursue, compromise or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against it as any indication that the SO5 Digital Debtors, Wind-Down Debtors, Plan Administrator, the Liquidation Trust, or Liquidation Trustee, as applicable, will not pursue any and all available Causes of Action of the SO5 Digital Debtors against it. In pursuing any claim, right, or Retained Causes of Action, the Liquidation Trust shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code and shall succeed to the SO5 Digital Debtors' rights with respect to the time periods in which a Cause of Action may be brought under the Bankruptcy Code. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Retained Causes of Action. Moreover, any Holder of a Claim that timely filed a Proof of Claim is not required, under section 108 of the Bankruptcy Code or applicable law, to commence or continue any action in a non-bankruptcy forum in order to further toll or satisfy any limitations period with respect to any such Holder's Claim that had not expired prior to the Petition Date.

### G. Waiver and Release of Avoidance Actions

To the extent set forth in the Intercompany Claim Settlement, as of the Effective Date, the SO5 Digital Debtors shall be deemed to waive and release any and all Avoidance Actions held by the SO5 Digital Debtors against any landlord, trade creditor, service provider, or vendor of the SO5 Digital Debtors, other than as may be preserved with the consent of the Committee; provided that, for the avoidance of doubt, such waiver and release shall not apply to any claims or causes of action against (i) any current or former director, officer, manager, employee, or other insider of any SO5 Digital Debtor, (ii) any affiliate, equity holder, or former equity holder of any SO5 Digital Debtor, or (iii) any Entity to the extent arising from or relating to conduct outside such Entity's capacity as a landlord or a trade counterparty, unless and to the extent that the foregoing constitute Released Parties or receive releases under the terms of the Intercompany Claim Settlement.

### H. Corporate Action

On the Effective Date and following satisfaction of the Wind-Down Debtors' distribution and funding requirements set forth in the Plan, the Wind-Down Debtors shall be dissolved for all purposes unless the Plan Administrator determines, with the consent of the Liquidation Trustee, that dissolution can have any adverse impact on the Wind-Down; *provided*, that neither the Wind-Down Debtors nor any Entity released pursuant to Article IX herein shall be responsible for any liabilities that may arise as a result of non-dissolution of the Wind-Down Debtors. The Plan Administrator shall submit with the appropriate governmental agencies a copy of the Confirmation

Order, which Confirmation Order shall suffice for purposes of obtaining a Certificate of Dissolution from the applicable Secretary of State for each State in which a Wind-Down Debtor operates.  For avoidance of doubt, the Plan Administrator shall not dissolve any of the Wind-Down Debtors without the consent of the Liquidation Trustee.

Without limiting the foregoing, on the Effective Date and following satisfaction of the Wind-Down Debtors' distribution and funding requirements set forth in the Plan, the Wind-Down Debtors shall have no further duties or responsibilities in connection with implementation of this Plan, and the directors and officers of the Wind-Down Debtors shall be deemed to have resigned and the employees, if any, of the Wind-Down Debtors terminated. From and after the Effective Date, the Plan Administrator shall be authorized to act on behalf of the Estates in accordance with the terms set forth in the Plan or the Confirmation Order.

## I.        Cancellation of Existing Securities and Agreements

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan and subject in all respect to any applicable intercreditor agreement, on the Effective Date, all prepetition credit documents, agreements, instruments, notes, certificates, indentures, mortgages, securities, and other documents evidencing any Claim or Interest, and any rights of any Holder in respect thereof, shall be deemed cancelled and of no further force or effect and the obligations of the SO5 Digital Debtors thereunder shall be deemed fully satisfied, released, and discharged and, as applicable, shall be deemed to have been surrendered to the Plan Administrator. The holders of or parties to such cancelled instruments, securities, and other documentation shall have no rights arising from or related to such instruments, securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan; *provided* that the cancellation hereunder shall not itself alter the obligations or rights among third parties other than the SO5 Digital Debtors or the Wind-Down Debtors, as applicable.

## J.        Effectuating Documents; Further Transactions

Upon entry of the Confirmation Order, the SO5 Digital Debtors, the Wind-Down Debtors, the Plan Administrator, or the Liquidation Trustee (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan. The SO5 Digital Debtors, the Wind-Down Debtors, Liquidation Trustee, the Plan Administrator, all Holders of Claims receiving distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

## K.        Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan or the Liquidation Trust Agreement shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer

36

tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment.

## L.        Separate Plans

Notwithstanding the combination of separate plans of distribution for the SO5 Digital Debtors set forth in this Plan for purposes of economy and efficiency, this Plan constitutes a separate chapter 11 plan for each SO5 Digital Debtor. Accordingly, if the Bankruptcy Court does not confirm this Plan with respect to one or more SO5 Digital Debtors, it may still confirm this Plan with respect to any other SO5 Digital Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

## M.        Closing the Chapter 11 Cases

The Wind-Down Debtors shall, as soon as practicable following the date on which the Plan is substantially consummated, and subject to the consent of the Liquidation Trustee and the Wind-Down Budget, file with the Bankruptcy Court all pleadings and documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases; *provided* that, as of the Effective Date, the Wind-Down Debtors may submit separate orders to the Bankruptcy Court closing certain individual Chapter 11 Cases and changing the caption of the Chapter 11 Cases accordingly, *provided further* that matters concerning Claims and other appropriate matters may be heard and adjudicated in the case of Saks Global Enterprises, LLC, Case No. 26-90103 (ARP) or one of the SO5 Digital Debtors' Chapter 11 Cases that remains open regardless of whether the applicable Claim or other appropriate matter pertains to a SO5 Digital Debtor in a Chapter 11 Case that is closed. Nothing in this Plan shall authorize the closing of any case effective as of a date that precedes the date any such order is entered. Any request for such relief shall be made on motion served on the U.S. Trustee and the Liquidation Trustee, and the Bankruptcy Court shall rule on such request after notice and a hearing. Upon the filing of a motion to close the last Chapter 11 Case remaining open, the Wind-Down Debtors, in consultation with the Liquidation Trustee, shall file a final report with respect to all of the Chapter 11 Cases.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.        Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided herein, any Executory Contracts or Unexpired Leases not listed on the schedule of assumed Executory Contracts and Unexpired Leases filed as part of the Plan Supplement or not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or Final Order, and payment of any cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

For the avoidance of confusion, rejection by the SO5 Digital Debtors of an Executory Contract or Unexpired Lease with a non-Debtor counterparty to which a Global Debtor is also a party is without prejudice to the rights of such Global Debtor under such Executory Contract or Unexpired Lease provided, however, that a Global Debtor being a party to an Executory Contract or Unexpired Lease to which an SO5 Digital Debtor is also a party shall not prevent or otherwise impair or prejudice the SO5 Digital Debtors' rejection of such Executory Contract or Unexpired Lease.

## B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim shall be forever barred and shall not be enforceable against the SO5 Digital Debtors or Wind-Down Debtors, as applicable, the Estates, the Plan Administrator, the Liquidation Trust, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent or claims register of the Bankruptcy Court and served upon counsel to the Liquidation Trustee and Plan Administrator within thirty (30) days of the Effective Date.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable. Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as Class 5 General Unsecured Claims and shall, if Allowed, be treated in accordance with the provisions herein.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order that are not timely Filed within thirty (30) days of the Effective Date will be disallowed automatically, forever barred from assertion, and shall not be enforceable against, as applicable, the SO5 Digital Debtors or Wind-Down Debtors, as applicable, their Estates, the Plan Administrator, the Liquidation Trust, or any of their respective assets and properties.**

## C.     Reservation of Rights

Neither the exclusion nor the inclusion by the SO5 Digital Debtors of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the SO5 Digital Debtors or Wind-Down Debtors that any such contract or lease is or is not an Executory Contract or Unexpired Lease or

that the SO5 Digital Debtors, Wind-Down Debtors, the Plan Administrator, Liquidation Trust, or their respective Affiliates and other Related Parties have any liability thereunder. Except as explicitly provided in this Plan, nothing in this Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the SO5 Digital Debtors, Wind-Down Debtors, the Plan Administrator, Liquidation Trust, or Liquidation Trustee under any executory or non-executory contract or unexpired or expired lease. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under this Plan, SO5 Digital Debtors, Wind-Down Debtors, the Plan Administrator, Liquidation Trust, or Liquidation Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

### D.     Preexisting Obligations to the SO5 Digital Debtors Under Executory Contracts and Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the SO5 Digital Debtors or Wind-Down Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, the SO5 Digital Debtors, the Wind-Down Debtors, Plan Administrator, the Liquidation Trust, and Liquidation Trustee, as applicable, expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnity, or continued maintenance obligations. The SO5 Digital Debtors, the Wind-Down Debtors, Plan Administrator, the Liquidation Trust, and Liquidation Trustee, as applicable, also expressly reserve any and all rights with respect to the applicability (or non-applicability) of any non-bankruptcy laws to the contrary.

### E.     Insurance Policies

Each Insurance Policy owned by the SO5 Digital Debtors listed on the schedule of assumed Executory Contracts and Unexpired Leases filed as part of the Plan Supplement shall be deemed an Executory Contract and shall be automatically assumed or assumed and assigned by the applicable SO5 Digital Debtor to the applicable Wind-Down Debtor or the Liquidation Trust, as applicable, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code for the sole purpose of resolving any Claims covered by such insurance policies, resolving any Causes of Action retained in connection with such insurance policies, and collecting any and all outstanding deposits, restricted cash, and letters of credit related thereto to the extent reasonably necessary to implement the Wind-Down in accordance with the Plan. Each Insurance Policy owned by the SO5 Digital Debtors not listed on the schedule of assumed Executory Contracts and Unexpired Leases shall be deemed an Executory Contract and shall be rejected by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code.

For the avoidance of doubt, coverage for defense and indemnity under the Insurance Policies shall remain available to all individuals within the definition of "Insured" in the Insurance Policies.

To the extent the SO5 Digital Debtors are not the first named insured under any D&O Liability Insurance Policy and notwithstanding Confirmation of the Plan or the occurrence of the

Effective Date (i) nothing herein shall constitute a rejection of such D&O Liability Insurance Policy, (ii) such D&O Liability Insurance Policy shall remain in full force and effect, and (iii) any and all rights of the SO5 Digital Debtors under such D&O Liability Insurance Policy shall remain in full force and effect. For the avoidance of doubt, the Liquidation Trust shall retain all rights of the applicable SO5 Digital Debtors (or Wind-Down Debtors, as applicable) to assert claims against the D&O Liability Insurance Policies and/or to recover the proceeds thereof, and the dissolution of the SO5 Digital Debtors or the Wind-Down Debtors, shall have no impact upon the rights of the Liquidation Trust to assert claims against the D&O Liability Insurance Policies or to recover the proceeds thereof. For the avoidance of doubt, nothing in the Plan shall impair, limit, reduce, or eliminate any right to recover from available insurance proceeds.

### F.        Modifications, Amendments, Supplements, Restatements, or Other Agreements

Modifications, amendments, supplements, and restatements to a prepetition Executory Contract and/or Unexpired Lease that have been executed by the SO5 Digital Debtors or Wind-Down Debtors, as applicable, during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease.

### G.        Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

### H.        Employee Compensation and Benefits

Except as otherwise set forth in the Plan Supplement, all employment policies, and all compensation and benefits plans, policies, and programs of the SO5 Digital Debtors applicable to their respective employees, retirees, and nonemployee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, Executory Contracts under this Plan and, on the Effective Date, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, to the extent permitted by applicable law.  Any plans, policies, and programs that may be applicable to any employees that may extend beyond the Effective Date shall be addressed in the Plan Supplement. Notwithstanding the preceding, to the extent that there are any employee benefits currently provided to former employees of the SO5 Digital Debtors, which are in pay status pursuant to any insurance contracts or policies, such contracts and policies and any continuing obligations thereunder shall not be deemed rejected.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.        Distributions on Account of Claims Allowed as of the Effective Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the SO5 Digital Debtors, or their

40

respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests. The Liquidation Trustee shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Liquidation Trustee shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

Except as otherwise provided herein, the Liquidation Trustee shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on (a) any Proof of Claim Filed by that Holder, (b) if no Proof of Claim is Filed, the Schedules, or (c) the address set forth in any written notice of an address change delivered to the Liquidation Trustee; *provided*, that the manner of such distributions shall be determined at the discretion of the Liquidation Trustee.  For the avoidance of doubt, the fact that a Claim has not been objected to by the Distribution Record Date does not mean that such Claim is Allowed.  The Liquidation Trustee shall have the right to object to any Claim that has not been Allowed by Final Order of the Court.

## B.      **Compliance with Tax Requirements**

In connection with this Plan, any Entity issuing any instrument or making any distribution or payment in connection therewith, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority. In the case of a non-Cash distribution that is subject to withholding, the distributing party may require the intended recipient of such distribution to provide the withholding agent with an amount of Cash sufficient to satisfy such withholding tax as a condition to receiving such distribution or withhold an appropriate portion of such distributed property and either (1) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax) or (2) pay the withholding tax using its own funds and retain such withheld property. The distributing party shall have the right not to make a distribution under this Plan until its withholding or reporting obligation is satisfied pursuant to the preceding sentences. Any amounts withheld pursuant to this Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

Any Entity entitled to receive any property, including cash, as an issuance or distribution under this Plan shall, upon request, deliver to the withholding agent or such other Entity designated by the Liquidation Trustee, as applicable, the appropriate IRS Form or other tax forms or documentation requested by the Liquidation Trustee to reduce or eliminate any required federal, state, or local withholding. Any Entity who fails to deliver the IRS Form or other tax forms or documentation requested by the Liquidation Trustee within thirty (30) days of a second written request, shall result in such Entity forfeiting any and all rights to receive any property, including cash, as an issuance or distribution under this Plan, and such forfeited property shall revest in the Liquidation Trust, and any Claim in respect of such distribution under this Plan shall be forever barred from assertion against such SO5 Digital Debtor, Wind-Down Debtor, the Plan Administrator, Liquidation Trust, Liquidation Trustee or their respective property.

Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction

41

and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Plan Distribution.

### C. Date of Distributions

Distributions made after the Effective Date to holders of Allowed Claims shall be deemed to have been made on the Effective Date and no interest shall accrue or be payable with respect to such Claims or any distribution related thereto. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D. Liquidation Trustee as Disbursing Agent

All distributions under this Plan shall be made by the Liquidation Trustee or its designee (in such capacity, the "Disbursing Agent"), as applicable, on and after the Effective Date and as provided herein. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of their duties. The SO5 Digital Debtors, Wind-Down Debtors, and Liquidation Trust shall use commercially reasonable efforts to provide the Disbursing Agent with the amounts of Claims and the identities and addresses of Holders of Claims applicable to the Disbursing Agent responsibilities consistent with Section VI.A. hereof. The SO5 Digital Debtors, Wind-Down Debtors, and Liquidation Trust shall cooperate in good faith with the Disbursing Agent to comply with the reporting and withholding requirements outlined in the Plan.

### E. Rights and Powers of Disbursing Agent

The Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan; (2) make all Distributions contemplated hereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### F. Surrender of Instruments

As a condition precedent to receiving any distribution under this Plan, each Holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent. Any Holder of such instrument or note that fails to (1) surrender the instrument or note; or (2) execute and deliver an affidavit of loss or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent within six (6) months of being entitled to such distribution shall be deemed to have forfeited all rights and claims and may not participate in any distribution hereunder.

### G. Delivery of Distributions and Undeliverable or Unclaimed Distributions

Subject to applicable Bankruptcy Rules, all distributions to Holders of Allowed Claims shall be made by the Liquidation Trustee or its designee in the capacity of Disbursing Agent capacity, who shall transmit such distributions to the applicable Holders of Allowed Claims.

42

If any distribution to a holder of an Allowed Claim (1) is returned as undeliverable for lack of a current address or otherwise and remains undeliverable for ninety (90) days after such distribution is returned as undeliverable; or (2) is not cashed or otherwise presented for collection by the holder of the Allowed Claim within six months of the date of such distribution, such distribution shall be deemed unclaimed property within the meaning of section 347(b) of the Bankruptcy Code, the holder of such Claim shall cease to be entitled to the undeliverable distribution or uncashed distribution, the Allowed Claim of such holder shall be deemed disallowed and expunged for purposes of further distributions under the Plan, and any title to and beneficial interest in the Liquidation Trust Assets represented by any such undeliverable distributions shall be cancelled and revert to and/or remain in the Liquidation Trust automatically and without need for a further order by the Court (notwithstanding any applicable federal, provincial or state escheat, abandoned or unclaimed property laws to the contrary).  Neither the Liquidation Trustee nor the Disbursing Agent shall be required to make any attempt to determine a Holder's current address or otherwise locate a Holder.

## H.      **Manner of Payment**

Except as specifically provided herein, at the option of the Disbursing Agent, any Cash payment to be made under this Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the SO5 Digital Debtors, Wind-Down Debtors, or Liquidation Trust, as applicable.

## I.      **Foreign Currency Exchange Rate**

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal*, on the Petition Date.

## J.      **Setoffs and Recoupment**

The Liquidation Trust and Liquidation Trustee, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code) and any other applicable law, shall be entitled to assert all of the SO5 Digital Debtors' rights, claims, defenses, offsets, rights of recoupment, setoffs, rights of disallowance, subrogation, recharacterization, and equitable subordination and counterclaims with respect to Claims without the approval of the Bankruptcy Court; *provided*, that neither the failure to assert or otherwise effect any such rights nor the allowance of any Claim hereunder shall constitute a waiver or release by the SO5 Digital Debtors, their Estates, the Liquidation Trust, or Liquidation Trustee of any such rights or any claims the SO5 Digital Debtors, their Estates, the Liquidation Trust, or Liquidation Trustee may have against the holder of such Claim.  Nothing in the Plan, the Confirmation Order, or the Plan Supplement, shall be deemed to affect, diminish, or impair any party's legal and equitable defenses and rights to setoffs and/or recoupment, and all such rights are expressly preserved.

## K.      **Minimum Distribution**

No payment of Cash in an amount of less than one hundred U.S. dollars ($100.00) shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan and the Wind-Down Budget. If the Cash available for the final

43

distribution is less than the cost to distribute such funds, the Liquidation Trustee may donate such funds to the unaffiliated charity of its choice.

### L.      Allocations

Except as otherwise provided in this Plan or as otherwise required by law, distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

### M.      Distributions Free and Clear

Except as otherwise provided in this Plan, any distribution or transfer made under this Plan, including distributions to any Holder of an Allowed Claim, shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to this Plan.

### N.      Claims Paid or Payable by Third Parties

#### 1.      Claims Paid by Third Parties

If a Holder of a Claim receives a payment or other satisfaction of its Claim other than through the SO5 Digital Debtors or Liquidation Trustee, as applicable, on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, and if the Claim was paid or satisfied in full other than through the SO5 Digital Debtors or Liquidation Trustee, as applicable, then such Claim shall be disallowed and any recovery in excess of a single recovery in full shall be paid over to the Liquidation Trustee for the benefit of the Liquidation Trust, as applicable, without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the SO5 Digital Debtors or Liquidation Trustee, as applicable, on account of such Claim, such Holder shall, within fourteen (14) calendar days of receipt thereof, repay or return the distribution to the SO5 Digital Debtors or Liquidation Trustee, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

#### 2.      Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to an Insurance Policy until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. If an applicable Insurance Policy has a self-insured retention ("SIR") or a deductible, the Holder of an Allowed Claim that is

44

payable pursuant to such insurance policy, upon the Allowance of such Claim, shall have an Allowed General Unsecured Claim up to the amount of the SIR or deductible amount that may be established upon the liquidation of the Claim, and such Holder's recovery shall be solely in the form of its distribution on account of such Allowed General Unsecured Claim under this Plan. Such SIR or deductible shall be considered satisfied pursuant to this Plan through allowance of the General Unsecured Claim solely up to the amount of the applicable SIR or deductible, if any.  For the avoidance of doubt, nothing herein obligates the SO5 Digital Debtors, Wind-Down Debtors, or any of their successors or assigns to satisfy any SIR or deductible under any insurance policy, including any D&O Liability Insurance Policies. Any recovery on account of the claim in excess of the SIR or the deductible established upon the liquidation of the Claim shall be recovered solely from and to the extent of any insurance coverage under an Insurance Policy and any proceeds thereof. For the avoidance of doubt, nothing herein or in the Confirmation Order shall modify or impair any of the SO5 Digital Debtors or Global Debtors' insurers' rights to be reimbursed or paid in the ordinary course according to the terms of the applicable assumed insurance policy, including, without limitation, with respect to any amounts owed to such insurers under an applicable SIR. Nothing in this Plan shall be construed to limit, extinguish, expand, or diminish the insurance coverage that may exist or shall be construed as a finding that liquidates any Claim payable pursuant to an insurance policy. Nothing herein relieves any Entity from the requirement to timely File a Proof of Claim by the applicable Bar Date.

### 3. Applicability of Insurance Policies

Except as set forth in Article IX herein, nothing in this Plan shall constitute or be deemed a waiver of any Cause of Action that the SO5 Digital Debtors or any Entity, including the Wind-Down Debtors, the Plan Administrator, Liquidation Trust, or Liquidation Trustee may hold against any other Entity, including insurers under any Insurance Policy, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

### A. Allowance of Claims

After the Effective Date, the Liquidation Trustee shall have and retain any and all rights and defenses that the SO5 Digital Debtors or their Estates had with respect to any Claim or Interest immediately prior to the Effective Date.

### B. Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidation Trustee shall have the sole authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

45

### C.        Estimation of Claims and Interests

Before or after the Effective Date, the SO5 Digital Debtors or Liquidation Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or disallowed from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the SO5 Digital Debtors or Liquidation Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### D.        Adjustment to Claims or Interests Without Objection

Any Claim that has been paid or satisfied or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the SO5 Digital Debtors or Liquidation Trustee, as applicable, without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### E.        Time to File Objections to Claims

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the Claim Objection Bar Date (as such date may be extended upon presentment of an order to the Bankruptcy Court by the Liquidation Trustee).

### F.        Disallowance of Claims or Interests

Except as otherwise expressly set forth herein, all Claims and Interests of any Entity from which property is sought by the SO5 Digital Debtors or Liquidation Trustee under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the SO5 Digital Debtors or Liquidation Trustee, as applicable, allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (1) the Entity, on the one hand, and the SO5 Digital Debtors or Liquidation Trustee, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (2) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or final order.

46

G.       **Disallowance of Late Claims**

Except as provided herein or otherwise agreed to by the SO5 Digital Debtors or Liquidation Trustee, as applicable, any holder of a Claim Filed via Proof of Claim after the applicable Bar Date shall not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

H.       **Disputed Claims Process**

All Claims held by Entities against whom or which the SO5 Digital Debtors or Liquidation Trustee have commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject this Plan. A Claim deemed Disputed pursuant to this Article VII.H shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the SO5 Digital Debtors or Liquidation Trustee, as applicable, from such Holder have been paid.

I.       **Amendments to Claims**

Except as provided herein, on or after the Effective Date, without the prior authorization of the Bankruptcy Court or the Liquidation Trustee, a Claim may not be Filed or amended and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

J.       **No Distributions Pending Allowance**

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until the Disputed Claim becomes an Allowed Claim.

K.       **Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim by the Disbursing Agent in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim. No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

47

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A.      Conditions Precedent to the Effective Date

The occurrence of the Effective Date of this Plan is subject to each of the following conditions precedent:

1.      The Cash Collateral Order shall not have been vacated, stayed, or modified without the prior written consent of the Prepetition Agent.

2.      All of the Secured Lender Claims shall have been paid in full in accordance with the terms and conditions set forth in the Cash Collateral Order.

3.      The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

4.      The Bankruptcy Court shall have entered the Confirmation Order, which shall not have been stayed, reversed, vacated, amended, supplemented, or otherwise modified.

5.      The Plan Administrator shall have been appointed and accepted his or her appointment.

6.      The Liquidation Trust Agreement shall have been executed, the Liquidation Trust shall have been formed, and the Liquidation Trust Assets shall have irrevocably vested or be deemed to have vested in the Liquidation Trust.

7.      All requisite filings with governmental authorities and third parties shall have become effective, and all such governmental authorities and third parties shall have approved or consented to the transactions contemplated herein, to the extent required.

8.      All documents contemplated hereby to be executed and delivered on or before the Effective Date shall have been executed and delivered.

9.      All Wind-Down Reserves shall have been fully funded pursuant to the terms of this Plan.

### B.      Waiver of Conditions

Unless otherwise specifically provided for in this Plan, the conditions set forth in Article VIII.A. may be waived, in whole or in part, in writing by the SO5 Digital Debtors (in consultation with the Committee) and, with respect to VIII.A.1-2, the Prepetition Agent, and with respect to VIII.A.4-6, 9, the Committee, each in their respective sole and absolute discretion, without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

## ARTICLE IX.
### RELEASE, INJUNCTION, AND RELATED PROVISIONS

#### A.        SO5 Digital Debtor Releases

**Notwithstanding anything else contained herein to the contrary, but subject to the second paragraph of this Section IX.A, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, effective as of the Effective Date, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the SO5 Digital Debtors, the Wind-Down Debtors, and their Estates and in each case on behalf of themselves and their respective successors, assigns, and any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, and liabilities whatsoever, including any derivative claims, asserted by or assertable on behalf of any of the SO5 Digital Debtors, their Estates, or the Wind-Down Debtors, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, that the SO5 Digital Debtors, their Estates, or the Wind-Down Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a SO5 Digital Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a SO5 Digital Debtor or other Entity could have asserted on behalf of the SO5 Digital Debtors, based on or relating to, or in any manner arising from, in whole or in part: (1) the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of, as applicable, the Chapter 11 Cases, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Plan Document transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the pursuit of confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement or Wind-Down Transaction, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, or any other post-petition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the SO5 Digital Debtors, the approval of the Disclosure Statement or Confirmation or consummation of this Plan (collectively, the "Case-Related Matters"); or (2) the SO5 Digital Debtors (including the prepetition capital structure, management, ownership, or operation thereof), the purchase, sale, amendment, or rescission of any Claim against or Interest in the SO5 Digital Debtors,**

49

the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, including any prepetition financing transactions, the business or contractual arrangements between any SO5 Digital Debtor and any Released Party, the SO5 Digital Debtors' in- or out-of-court restructuring efforts, or the Debtors' intercompany transactions (collectively, the "**Additional Matters**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any Retained Cause of Action, (3) any Claims or Causes of Action against any Entity that is not a Released Party, or (4) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the SO5 Digital Debtor Releases, which include by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the SO5 Digital Debtor Releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims or Causes of Action released by the SO5 Digital Debtor Releases; (3) in the best interests of the SO5 Digital Debtors, the Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after reasonable investigation by the SO5 Digital Debtors and after due notice and opportunity for hearing; and (6) a bar to any of the SO5 Digital Debtors, their Estates, or the Wind-Down Debtors, as applicable, asserting any claim or Cause of Action released pursuant to the SO5 Digital Debtor Releases.

Notwithstanding anything else herein to the contrary, for the avoidance of doubt, the SO5 Digital Debtor Releases shall not in any way effect a release by any Global Debtor of any Claim or Cause of Action against any Entity.

B.     **Third Party Releases**

Effective as of the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, Causes of Action, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, that such Releasing Party would have been legally entitled to assert in its own right (whether individually or collectively) or otherwise based on or relating to, or in any manner arising from, in whole or in part, the Case-Related Matters or the Additional Matters. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan

50

Supplement) executed to implement the Plan; (2) any Cause of Action included as a Retained Cause of Action; (3) any Claims or Causes of Action against any Entity that is not a Released Party; or (4) actual fraud, willful misconduct, or gross negligence as determined by a Final Order. Further, for the avoidance of doubt and notwithstanding anything herein to the contrary, nothing herein shall cause the Global Debtors to release, or result in the Global Debtors' release of, any parties, claims, or causes of action not released under the Global Debtors' *Second Amended Joint Chapter 11 Plan of Saks Global Enterprises LLC and its Global Debtor Affiliates* Docket No. [2600], as may be modified or amended from time to time.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (4) a good faith settlement and compromise of the claims or Causes of Action released by the Third Party Release; (5) in the best interests of the SO5 Digital Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third Party Release.

## C.    Exculpations

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the SO5 Digital Debtor Releases or the Third Party Releases, and except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party hereby is exculpated from any claim or Cause of Action related to any act or omission in connection with, relating to, or arising out of the negotiation, solicitation, confirmation, execution, or implementation (to the extent on or prior to the Effective Date) of, as applicable, the Case-Related Matters, except for (i) claims or Causes of Action arising from any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted willful misconduct, actual fraud, or gross negligence; or (ii) the rights of any Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel, to the extent otherwise permitted under applicable non-bankruptcy Law, concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions. Notwithstanding anything to the contrary in the foregoing, an Exculpated Party shall be entitled to exculpation solely for actions taken from the Petition Date through the Effective Date, and the exculpation set forth above does not exculpate (1) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any Causes of Action included as a Retained Cause of Action; or (3) asserting and enforcing any claims, obligations, suits,

51

**judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Entity that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the SO5 Digital Debtors or the Wind-Down Debtors, in each case unless otherwise expressly provided for in this Plan. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable Law or rules protecting such Exculpated Parties from liability.**

### D.  Injunction

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests for which provision is made under the Plan or claims or interests that have been released pursuant to the Plan provisions setting forth the releases granted by the SO5 Digital Debtors or the Releasing Parties, or are subject to exculpation pursuant to the article of the Plan which provides for the exculpation of the Exculpated Parties, shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the SO5 Digital Debtors, Wind-Down Debtors, the Exculpated Parties, the Liquidation Trust or the Liquidation Trustee: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; and (4) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

**Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan by the SO5 Digital Debtors, the Wind-Down Debtors, the Plan Administrator, the Liquidation Trust, the Liquidation Trustee, and their respective affiliates, employees, advisors, officers and directors, or agents.**

### E.  Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the SO5 Digital Debtors or Wind-Down Debtors, as applicable, and their successors and assigns.

If any Holder of a Secured Lender Claim, Other Secured Claim, or Consignor Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such holder) shall take any and all steps requested by the Plan Administrator or the Liquidation Trustee, as applicable, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Plan Administrator or the Liquidation Trustee, as applicable, shall be entitled to make any such filings or recordings on such Holder's behalf.

**ARTICLE X.**
**RETENTION OF JURISDICTION**

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, other than with respect to the Retained Causes of Action (for which the Bankruptcy Court's jurisdiction shall not be exclusive), pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in or related to the Chapter 11 Cases for, among other things, the following purposes:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

2.      Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation and distribution.

3.      Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan.

4.      Resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a SO5 Digital Debtor or Wind-Down Debtor is party or with respect to which a SO5 Digital Debtor may be liable and to hear, determine, and, if necessary, liquidate, any cure amount arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the SO5 Digital Debtors or Wind-Down Debtors that may be pending on the Effective Date.

6.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

7.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters.

8.     Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement.

9.     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan.

10.     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan.

11.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

12.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

13.     Determine any other matters that may arise in connection with or related to the Prepetition Credit Agreement and Loan Documents, the Disclosure Statement, the Plan, and the Confirmation Order.

14.     Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan.

15.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any holder for amounts not timely repaid.

16.     Adjudicate any and all disputes arising from or relating to distributions under the Plan.

17.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order.

18.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order.

19.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

20.     To recover all assets of the SO5 Digital Debtors, Wind-Down Debtors, or Liquidation Trust, as applicable, and property of the Estates, wherever located.

21.     To hear and determine any motions, adversary proceedings, contested, or litigated matters, any Causes of Action and any other matters that may be brought by the Liquidation Trust or Liquidation Trustee.

22.     To hear and determine any other rights, claims, or Causes of Action held by or accruing to the SO5 Digital Debtors that shall be vested in the Liquidation Trust, pursuant to the Bankruptcy Code or any applicable state or federal statute or legal theory.

23.     Adjudicate, decide, or resolve any and all matters related to the Liquidation Trust or the Liquidation Trust Assets.

24.     Enter an order or final decree concluding or closing the Chapter 11 Cases.

25.     Enforce all orders previously entered by the Bankruptcy Court.

26.     Hear any other matter over which the Court has jurisdiction.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.     Modification and Amendment

This Plan may be amended, modified, or supplemented by the SO5 Digital Debtors or Wind-Down Debtors, as applicable, in consultation with the Committee or Liquidation Trustee, as applicable, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the SO5 Digital Debtors or Wind-Down Debtors, as applicable, in consultation with the Committee or Liquidation Trustee, as applicable, may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan, and any Holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

### B.     Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### C.     Revocation or Withdrawal of Plan

The SO5 Digital Debtors reserve the right to, in consultation with the Committee, revoke or withdraw this Plan prior to the Effective Date as to any or all of the SO5 Digital Debtors. If, with respect to a SO5 Digital Debtor, this Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date as to such SO5 Digital Debtor does not occur on the Effective Date, then, with respect to such SO5 Digital Debtor (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or unexpired leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (3) nothing contained in this Plan shall (a) constitute a waiver or release of any Claim by or against, or any Interest in, such SO5 Digital Debtor or any other Entity, (b) prejudice in any manner the

55

rights of such SO5 Digital Debtor or any other Entity, or (c) constitute an admission of any sort by any SO5 Digital Debtor or any other Entity.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.      Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the SO5 Digital Debtors, Wind-Down Debtors, Plan Administrator, Liquidation Trust, Liquidation Trustee, the holders of Claims and Interests, the Released Parties, the Releasing Parties and each of their respective successors and assigns. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

### B.      Additional Documents

On or before the Effective Date, the SO5 Digital Debtors or Wind-Down Debtors, as applicable, may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The SO5 Digital Debtors, Wind-Down Debtors, Plan Administrator, or Liquidation Trustee, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### C.      Dissolution of the Committee and Any Other Statutory Committee

On the later of the (i) Effective Date, or (ii) the effective date of any chapter 11 plan for the Global Debtors, the Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve automatically and the members thereof and the Professionals retained by the Committee shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code; provided, that, the Committee shall continue to exist, and its Professionals shall continue to be retained, after the Effective Date and have standing and a right to be heard for the following limited purposes: (a) requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred prior to the Effective Date, and (b) any appeals of the Confirmation Order or other appeal or pending litigation to which the Committee is a party.

### D.      Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

### E.      Reservation of Rights

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the SO5 Digital Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the SO5 Digital Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

### F.      Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Entity.

### G.      Determination of Tax Liabilities

As of the Effective Date, the Plan Administrator will be responsible for preparing and filing any tax forms or returns on behalf of the SO5 Digital Debtors' or Wind-Down Debtors' Estates; *provided*, that the Plan Administrator shall not be responsible for preparing or filing any tax forms for Holders of Interests in the SO5 Digital Debtors, but shall provide such Holders with any information reasonably required to prepare such forms. The SO5 Digital Debtors, the Plan Administrator, and the Liquidation Trust shall have the right to request an expedited determination of any tax liability pursuant to section 505 of the Bankruptcy Code, including on any unpaid liability of the SO5 Digital Debtors' or Wind-Down Debtors' Estates for any tax incurred during the administration of these Chapter 11 Cases.

As of the Effective Date, the Liquidation Trustee will be responsible for preparing and filing any tax forms or returns on behalf of the Liquidation Trust *provided*, that the Liquidation Trustee shall not be responsible for preparing or filing any tax forms for Holders of Interests in the SO5 Digital Debtors or any Holder of Liquidation Trust Interests, but shall provide such Holders with any information reasonably required to prepare such forms solely to the extent such information is not otherwise available from the Plan Administrator.

### H.      Notices

In order for all notices, requests, and demands to or upon the Wind-Down Debtors, Liquidation Trustee, or Plan Administrator, as applicable, to be effective such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the contact parties identified in the Plan Supplement.

After the Effective Date, Entities that wish to continue to receive pleadings pursuant to Bankruptcy Rule 2002 must File a renewed request pursuant to Bankruptcy Rule 2002. Notice of all pleadings Filed after the Effective Date shall be limited to the following parties: (i) Wind-Down Debtors, Liquidation Trustee, and Plan Administrator, and their respective counsel; (ii) the U.S. Trustee, (iii) those Entities who Filed a renewed request to receive notice pursuant to Bankruptcy

57

Rule 2002 after the Effective Date, and (iv) any party known to be directly affected by the relief sought.

### I.       Term of Injunctions or Stays

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under this Plan (1) all injunctions with respect to or stays against an action against property of the SO5 Digital Debtors or the Estates arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the SO5 Digital Debtors, the SO5 Digital Debtors' Estates or the Liquidation Trust; and (2) all other injunctions and stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that the Chapter 11 Cases are closed pursuant to a final order of the Bankruptcy Court, or (b) the date that the Chapter 11 Cases are dismissed pursuant to a final order of the Bankruptcy Court. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

### J.       Entire Agreement

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### K.       Plan Supplement

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. Copies of such exhibits and documents shall be made available upon written request to the SO5 Digital Debtors' counsel or the Plan Administrator's counsel (as applicable) at the address above or by downloading such exhibits and documents free of charge from the Notice and Claims Agent's website. All documents in the Plan Supplement are considered an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

### L.       Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise

set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

### M.      Nonseverability of Plan Provisions

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the SO5 Digital Debtors, Wind-Down Debtors, Plan Administrator, or Liquidation Trustee, as applicable; and (iii) nonseverable and mutually dependent.

Dated: June 5, 2026

Respectfully submitted,

/s/ Andrew D.J. Hede
By: Andrew D.J. Hede
Chief Restructuring Officer
SO5 Digital Debtors

**Exhibit B**
**Notice of Effective Date**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| SAKS   GLOBAL   ENTERPRISES LLC, *et al.*,[3] | Case No. 26-90103 (ARP) |
| | (Jointly Administered) |
| Debtors. | |

**NOTICE OF (I) ENTRY OF ORDER APPROVING DISCLOSURE STATEMENT ON A
FINAL BASIS AND CONFIRMING THE SECOND MODIFIED JOINT CHAPTER 11
PLAN OF LIQUIDATION AND (II) OCCURRENCE OF THE EFFECTIVE DATE**

On [●], 2026, the Honorable Alfredo R. Pérez, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"),[4] entered the *Order Approving the SO5 Digital Debtors' Disclosure Statement on a Final Basis and Confirming the Second Modified Joint Chapter 11 Plan of Liquidation of the SO5 Digital Debtors* [Docket No. [●]] (the "Confirmation Order") (i) approving, on a final basis, the *Disclosure Statement* (the "Disclosure Statement") and (ii) confirming the *Modified Joint Chapter 11 Plan of Liquidation of the SO5 Digital Debtors* (as supplemented or amended, the "Plan");

The Effective Date of the Plan occurred on [●].

Copies of the Plan, the Disclosure Statement, the Plan Supplement, and this Confirmation Order may be obtained free of charge by visiting the website maintained by Stretto at https://cases.stretto.com/saks/. Parties may also obtain any documents filed in the Chapter 11 Cases for a fee via PACER at https://www.pacer.gov/. Please note that a PACER password and login are required to access documents via PACER.

The Plan and the provisions thereof are binding on the SO5 Digital Debtors, the Wind-Down Debtors, any holder of a Claim against, or Interest in, any of the SO5 Digital Debtors and

---

[3]   A complete list of each of the debtors in these chapter 11 cases (collectively, the "Debtors") may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Saks. The location of Debtor Saks Global Enterprises LLC's corporate headquarters and the Debtors' service address in these chapter 11 cases is 225 Liberty Street, 31st Floor, New York, NY 10281. Bradley Arant Boult Cummings LLP is counsel for the following Debtors: Saks OFF 5TH Holdings LLC, Saks OFF 5TH LLC, Saks OFF 5TH Midco Partner Inc., and Luxury Outlets USA, LLC (collectively, the "SO5 Digital Debtors"). Haynes and Boone, LLP and Willkie Farr & Gallagher LLP are co-counsel for the Global Debtors.

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

such holder's respective successors and assigns, whether or not such Claim or Interest is Impaired under the Plan and whether or not such holder voted to accept or reject the Plan.

The Bankruptcy Court has approved the discharge, release, exculpation, injunction, and related provisions in Article IX of the Plan.

Pursuant to Article XII.H of the Plan, any Entity that desires to receive notices or other documents pursuant to Bankruptcy Rule 2002 must file a renewed request to receive documents with the Bankruptcy Court to be added to the post-Confirmation service list. Entities not on such post-Confirmation service list may not receive notices or other documents filed in the Chapter 11 Cases after the Effective Date. An Entity who provides an e-mail address may be served only by e-mail after the Effective Date.

The Plan and this Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the Plan and this Confirmation Order in their entirety.

Houston, Texas
Dated: June 5, 2026

/s/ DRAFT
**BRADLEY ARANT BOULT CUMMINGS LLP**
Jarrod B. Martin (TX Bar No. 24070221)
Michael K. Riordan (TX Bar No. 24070502)
600 Travis Street, Suite 5600
Houston, Texas 77002
Telephone: (713) 576-0300
Facsimile: (713) 547-0301
Email:      jbmartin@bradley.com
            mriordan@bradley.com

-and-

James B. Bailey (TX Bar No. 24108289)
1819 Fifth Avenue N
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 488-6913
Email:      jbailey@bradley.com

-and-

Alexandra E. Dugan (admitted *pro hac vice*)
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
Telephone: (615) 252-4638
Facsimile: (615) 252-6380
Email:      adugan@bradley.com

*Counsel to the SO5 Digital Debtors as Debtors and Debtors in Possession*